# ORIGINAL

Guido Saveri (#22349)
R. Alexander Saveri (#173102)
Geoffrey C. Rushing (#126910)
Cadio Zirpoli (#179108)
SAVERI & SAVERI, INC.
111 Pine Street, Suite 1700
San Francisco, CA  94111-5619
Telephone:  (415) 217-6810

Steve W. Berman (*pro hac vice*)
Anthony D. Shapiro (*pro hac vice*)
Craig R. Spiegel (122000)
HAGENS BERMAN LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone:  (206) 623-7292
Facsimile:  (206) 623-0594

Fred Taylor Isquith
Mary Jane Fait (*pro hac vice*)
WOLF, HALDENSTEIN, ADLER,
    FREEMAN & HERZ
270 Madison Avenue
New York, NY  10016
Telephone:  (212) 545-4600

Co-Lead Counsel for Plaintiffs

[Additional Counsel on Signature Page]

FILED

OCT 0 1 2003

RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT,
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE DRAM ANTITRUST LITIGATION | Master File No. M-02-1486PJH |
| | MDL No. 1486 |
| This Document Relates to: | **CONSOLIDATED AMENDED CLASS ACTION COMPLAINT** |
| ALL ACTIONS | **JURY TRIAL DEMANDED** |

[M-02-1486PJH] CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

## I.    NATURE OF THE ACTION

1.      This action is brought as a class action on behalf of a plaintiff class (the "Class") consisting of all persons and entities who purchased in the United States Dynamic Random Access Memory chips or modules ("DRAM") directly from the named defendants during the period from approximately November 1, 2001 through at least June 30, 2002 (the "Class Period").

2.      Defendants are the leading manufacturers of semiconductor memory products, including DRAM, and control the majority of the memory chip industry which annually generates worldwide revenues in excess of $20 billion.  Plaintiffs allege that during the Class Period, defendants conspired, combined and contracted to fix, raise, maintain, and stabilize the price at which DRAM were sold in the United States.  As a result of defendants' unlawful conduct, plaintiffs and the other members of the Class paid artificially inflated prices for DRAM during the Class Period.  Such prices exceeded the amount they would have paid if the price for DRAM had been determined by a competitive market.

## II.    JURISDICTION AND VENUE

3.      Plaintiffs bring this action under §§ 4, 12 and 16 of the Clayton Act (15 U.S.C. §§ 15, 22 and 26) for treble damages and injunctive relief, as well as reasonable attorneys' fees and costs with respect to the injuries sustained by plaintiff arising from violations by defendants of the federal antitrust laws, including § 1 of the Sherman Antitrust Act (15 U.S.C. § 1).

4.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1337(a) and 1367.

5.      Venue is proper in this judicial district pursuant to 15 U.S.C. §§ 15 and 22, and 28 U.S.C. § 1391(b) and (c), in that at least one of the defendants resides in this judicial district, is licensed to do business or is doing business in this judicial district.

## III.    PARTIES

**Plaintiffs**

6.      Plaintiff onShore, Inc. is a Delaware corporation with its principal place of business in Chicago, Illinois.  During the Class Period onShore purchased DRAM from defendant Crucial Technology, Inc. ("Crucial"), a wholly owned subsidiary of defendant Micron Technology, Inc.

[M-02-1486 PJH] CONSOLIDATED AMENDED CLASS ACTION COMPLAINT                    1

1   7.   Plaintiff Internet Integration, Inc. is a California corporation with its principal place

2   of business in Los Angeles.  During the Class Period Internet Integration purchased DRAM from

3   Crucial.

4   8.   Plaintiff Kevin Irwin d/b/a Kevin's Computer and Photo is a business entity with its

5   principal place of business in Pittsburgh, Pennsylvania.  During the Class Period Kevin Irwin d/b/a

6   Kevin's Computer and Photo purchased DRAM from Crucial.

7   9.   Plaintiff PC Doctor, Inc. is a Pennsylvania corporation with its principal place of

8   business in Pittsburgh, Pennsylvania.  During the Class Period PC Doctor, Inc. purchased DRAM

9   from Crucial.

10   10.   Plaintiff Advanced Technology, Inc. is a corporation which during the class period

11   purchased DRAM from Crucial.

12   11.   Plaintiff Network Business Solutions, Inc. is a Maryland corporation with its

13   principal place of business in Baltimore, Maryland.  During the Class Period Network Business

14   Solutions, Inc. purchased DRAM from Crucial.

15   12.   Plaintiff JEM Electronics Distributors, Inc. is a Pennsylvania corporation.  During

16   the Class Period JEM Electronics Distributors, Inc. purchased DRAM from Crucial.

17   13.   Plaintiff C3 Information Technology, LLC is a Pennsylvania corporation with its

18   principal place of business in Conshohocken, Pennsylvania.  During the Class Period C3

19   Information Technology, LLC purchased DRAM from Crucial.

20   14.   Plaintiff Daniel Clement purchased DRAM during the Class Period from Crucial.

21   15.   Plaintiff Web Ideals, LLC is a Pennsylvania Limited Liability Corporation with its

22   principal place of business in Doylestown, Pennsylvania.  During the Class Period Web Ideals,

23   LLC purchased DRAM from Crucial.

24   16.   Plaintiff 5207, Inc. is a corporation with its principal place of business in Skokie,

25   Illinois.  During the Class Period 5207, Inc. purchased DRAM from Crucial.

26   **Defendants**

27   17.   Defendant Micron Technology, Inc. is a Delaware corporation with its principal

28   place of business at 8000 South Federal Way, Boise, Idaho 83707.  During the time period covered

[M-02-1486 PJH] CONSOLIDATED AMENDED CLASS ACTION COMPLAINT          2

1  in this complaint, Micron Technology, Inc. designed, developed, manufactured, sold and

2  distributed DRAM throughout the United States.  DRAM is Micron's primary semiconductor

3  product.

4         18.    Defendant Micron Semiconductor Products, Inc. is an Idaho corporation located at

5  8000 South Federal Way, Boise, Idaho and is a wholly owned and controlled subsidiary of

6  defendant Micron Technology, Inc. (collectively referred to as "Micron").  During the time period

7  covered in this complaint, Micron sold DRAM through its Crucial Technology retail sales division

8  to computer manufacturers and other end users throughout the United States.

9         19.    Defendant Crucial Technology, Inc. ("Crucial") is a corporation with its principal

10  place of business in Boise, Idaho.  Crucial is a wholly owned subsidiary of Micron which operates

11  the distribution business of Micron Technologies, Inc.

12         20.    Defendant Infineon Technologies AG, a German corporation, maintains its

13  headquarters at St. Martin-Str. 53, 81669, Munich, Germany.  During the time period covered in

14  this complaint, Infineon Technologies AG manufactured, sold, and distributed DRAM throughout

15  the world, including the United States.

16         21.    Defendant Infineon Technologies North America Corp. is a Delaware corporation

17  which maintains offices at 1730 North First Street, San Jose, CA  95112.  Infineon Technologies

18  North America Corp. is a wholly owned and controlled subsidiary of defendant Infineon

19  Technologies AG (collectively referred to as "Infineon").  During the time period in this

20  complaint, Infineon Technologies North America Corp. sold and distributed DRAM throughout

21  the United States.

22         22.    Defendant Hynix Semiconductor, Inc. maintains its head offices at SAN 136-1,

23  Ami-Ri Bubal-eub, Ichon-si, Kyoungki-do, Korea.  During the time covered in this complaint,

24  Hynix Semiconductor, Inc. manufactured, sold and distributed DRAM throughout the world,

25  including the United States.

26         23.    Defendant Hynix Semiconductor America, Inc. is a California corporation located

27  at 3101 North First Street, San Jose, California 95134.  Hynix Semiconductor America, Inc. is a

28  wholly owned and controlled subsidiary of defendant Hynix Semiconductor, Inc. (collectively

1   referred to as "Hynix"). During the time period covered by this complaint, Hynix Semiconductor

2   America, Inc. sold and distributed DRAM throughout the United States.

3         24.    Defendant Samsung Electronics Co., Ltd., a Korean corporation, maintains its

4   executive offices at Samsung Main Building, 250-2 ga, Taepyung-ro Chung-gu, Seoul, Korea.

5   During the time period covered in this complaint, Samsung Electronics Co., Ltd. manufactured,

6   sold and distributed DRAM throughout the world, including the United States.

7         25.    Defendant Samsung Semiconductor, Inc. is a California corporation located at 3655

8   North First Street, San Jose, California 95134. Samsung Semiconductor, Inc. is a wholly owned

9   and controlled subsidiary of defendant Samsung Electronics Co., Ltd. (collectively referred to as

10  "Samsung"). During the time period covered by this complaint, Samsung Semiconductor, Inc.

11  sold and distributed DRAM throughout the United States.

12        26.    Defendant Mosel-Vitelic Corporation maintains its headquarters at No. 19 Li Hsin

13  Road, Hsinchu Science Based Industrial Park, Hsinchu, Taiwan, R.O.C. During the time period

14  covered by this complaint, Mosel-Vitelic Corporation sold and distributed DRAM throughout the

15  United States.

16        27.    Defendant Mosel-Vitelic Corporation (USA) is a California corporation located at

17  3910 North First Street, San Jose, California 95134. Mosel-Vitelic (USA) is a wholly owned and

18  controlled subsidiary of defendant Mosel-Vitelic Corporation. During the time period covered by

19  this complaint, Mosel-Vitelic (USA) sold and distributed DRAM throughout the United States.

20        28.    Defendant Nanya Technology Corporation is a Taiwanese corporation which

21  maintains its headquarters at HWA YA Technology Park, 669, Fu Hsing 3rd Rd. Keuishan,

22  Taoyuan, Taiwan, R.O.C. During the time period covered by this complaint, Nanya Technology

23  Corporation sold and distributed DRAM throughout the United States.

24        29.    Defendant Nanya Technology Corporation USA is located at 675 E. Brokaw Road,

25  San Jose, California 95112. Nanya Technology Corporation USA is a branch office of defendant

26  Nanya Technology Corporation. In addition to the sales and marketing office in San Jose, Nanya

27  Technology Corporation operates memory design centers in San Jose and Houston, Texas. During

28

1    the time period covered by this complaint, Nanya Technology Corporation USA sold and
2    distributed DRAM throughout the United States.

3            30.     Defendant Winbond Electronics Corporation ("Winbond"), is headquartered at 4,
4    Creaton Road, 111, Science-Based Industrial park, Hsinchu, Taiwan, R.O.C.  During the time
5    period covered in this complaint, Winbond manufactured, sold and distributed DRAM throughout
6    the United States.

7            31.     Defendant Winbond Electronics Corporation America, located at 2727 North First
8    Street, San Jose, CA 95134, is a wholly-owned subsidiary of Winbond which sold and distributed
9    DRAM throughout the United States during the time period covered in this complaint.

10           32.     Defendant Elpida Memory, Inc. ("Elpida") maintains its executive offices at
11   Sumitomo Seimei Yaesu Bldg., 3F, 2-1 Yaseu 2-chome, Chuo-ku, Tokyo, Japan.  During the time
12   period covered in this complaint, Elpida manufactured, sold and distributed DRAM throughout the
13   United States.

14           33.     Defendant Elpida Memory (USA) Inc., located at 2001 Walsh Avenue, Santa Clara,
15   CA 95050, is a wholly owned subsidiary of Elpida which sold and distributed DRAM throughout
16   the United States during the time period covered in this complaint.

17           34.     Defendant NEC Electronics America, Inc. ("NEC") maintains its corporate
18   headquarters at 2880 Scott Boulevard, Santa Clara, California 95050-2554 and its manufacturing
19   plant in Roseville, California.  It is a wholly owned subsidiary of NEC Electronics Corporation.
20   During the time period covered in this complaint, NEC manufactured, sold and distributed DRAM
21   throughout the United States.

22           35.     Various other individuals, partnerships, corporations, and other business entities,
23   unknown to the plaintiffs, have participated in the violations alleged herein and have performed
24   acts and made statements in furtherance thereof.

25           36.     The acts charged in this Complaint have been done by defendants or were ordered
26   or done by defendants' officers, agents, employees, or representatives, while actively engaged in
27   the management of defendants' affairs.

28

## IV.   CLASS ACTION ALLEGATIONS

37.   Plaintiffs bring this action both on behalf of themselves, and as a class action pursuant to Federal Rules of Civil Procedure, Rule 23(a) and (b)(3), on behalf of the following class (the "Class").

> All individuals and entities who, during the period from approximately November 1, 2001 through at least June 30, 2002 (the "Class Period"), purchased DRAM in the United States directly from the defendants or their subsidiaries.  Excluded from the class are defendants and their parents, subsidiaries, affiliates, all governmental entities, and co-conspirators.

38.   Plaintiffs do not know the exact number of class members because such information is in the exclusive control of defendants.  Plaintiffs believe that, due to the nature of the trade and commerce involved, there are most likely hundreds of thousands of class members, geographically dispersed throughout the United States such that joinder of all class members is impracticable.

39.   Plaintiffs' claims are typical of the claims of the class in that plaintiffs are direct purchasers of DRAM, all class members were damaged by the same wrongful conduct of defendants and their co-conspirators as alleged herein, and the relief sought is common to the class.

40.   Numerous questions of law or fact arise from defendants' anticompetitive conduct that are common to the class.  Among the questions of law or fact common to the class are:

a.   whether defendants engaged in a contract, combination or conspiracy among themselves to fix, maintain or stabilize the prices of, or allocate the market for, DRAM sold in the United States;

b.   whether the conduct of defendants caused prices of DRAM to be artificially inflated to non-competitive levels; and

c.   whether plaintiff and other members of the class were injured by the conduct of defendants and, if so, the appropriate class-wide measure of damages and appropriate injunctive relief.

41.   These common questions of law or fact are common to the class, and predominate over any other questions affecting only individual class members.

42.     Plaintiffs will fairly and adequately represent the interests of the class in that plaintiffs are typical direct purchasers of DRAM and have no conflicts with any other member of the class.  Furthermore, plaintiffs have retained competent counsel experienced in antitrust and class action litigation.

43.     A class action is superior to the alternatives, if any, for the fair and efficient adjudication of this controversy.

44.     Prosecution of separate actions by individual class members would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for the defendants.

45.     Injunctive relief is appropriate as to the class as a whole because defendants have acted or refused to act on grounds generally applicable to the class.

46.     Plaintiffs reserve the right to expand, modify or alter the class definition in response to information learned during discovery.

## V.     TRADE AND COMMERCE

47.     During the Class Period, defendants sold and shipped substantial quantities of DRAM in a continuous and uninterrupted flow of interstate and international commerce to customers located in states other than the states in which defendants are located.

48.     The business activities of defendants that are the subject of this Complaint were within the flow of, and substantially affected, interstate trade and commerce.

49.     During the Class Period, defendants, amongst whom are the four largest DRAM producers in the world, have most of the DRAM sales in the global market.

## VI.     STATEMENT OF FACTS

The DRAM Industry

50.     DRAM are high density, low-cost-per bit, random access memory components that store digital information and provide high-speed storage and retrieval of data used in personal computers, printers, digital cameras, wireless telephones, and other electronic devices as a storage module to hold data as it is processed.  DRAM is the most common kind of random access

1  memory chip sold both in new computers and computer upgrades in the United States.  DRAM is

2  sold in individual chips or modules with several chips attached to the module.

3       51.  DRAM revenue is currently expected to be approximately $20 billion for 2003,

4  with defendants, the world's top four markers of DRAM, controlling roughly 70% of the market,

5  and with the top six manufacturers controlling 96% of the market.  As of 2000, Samsung was the

6  top DRAM manufacturer with 23% of the market share, followed by Micron with 21%, Hynix

7  with 19% and Toshiba with 7%.  At the end of 2001, Micron acquired Toshiba's DRAM

8  production, further consolidated the industry and the dominant market position exercised by

9  defendants.  Thereafter, Infineon became the fourth largest DRAM maker.

10  DRAM Prices Fall Steadily Prior to the Class Period

11       52.  During the period 1999-2001, the prices of DRAM declined dramatically.

12       53.  On information and belief, each of the defendants had experienced material

13  decreases in selling prices and were selling DRAM throughout 2001 at or below manufacturing

14  costs.  Thus, by the end of 2001, all of the defendants were facing an uncertain future if prices

15  continued to decline with potential bankruptcy as a possibility for some, and a continuing erosion

16  of profits for others.

17  Price Fixing and the Rise in DRAM Prices During the Class Period

18       54.  In view of the economic conditions of the industry, the defendants agreed to reduce

19  the price decline that existed in the industry since 1999.  Thus, as described below, defendants

20  reached an agreement to artificially raise the prices for DRAM.

21       55.  Sometime in the fall of 2001, realizing the economic trends of the industry,

22  defendants agreed to reduce supply in order to artificially raise prices.  As part of their agreement,

23  each defendant agreed to cut production so that, as supplies were restrained by their agreement,

24  prices for DRAM would increase.  Thus, in or about the beginning of the Class Period, Defendants

25  entered into an agreement or understanding regarding the sale and marketing of DRAM, the

26  purpose of which was to raise, fix and stabilize the prices for DRAM.

27       56.  A news article on the DRAM industry reported that defendant Mosel Vitelic and

28  other DRAM producers had met to discuss measures that could be taken to halt "the downward

[M-02-1486 PJH] CONSOLIDATED AMENDED CLASS ACTION COMPLAINT    8

1  spiral of DRAM prices." Defendant Mosel Vitelic's Vice President Chang indicated in September
2  2001 that "a basis for understanding had been reached" between chip makers to "trim some
3  production starting September." Chang stated that all DRAM makers would have to agree for the
4  plan to have the desired effect of raising prices.

5      57.    On or about November 2001, prices for DRAM rose dramatically, and by February
6  2002, prices had risen as high as $4.50.

7      58.    It has been reported in the press that an officer of DRAM manufacturer Mosel-
8  Vitelic admitted that price fixing meetings occurred, and that an agreement had been reached
9  between the major DRAM producers to push prices up by reducing supply. According to press
10 reports, Hynix and Samsung executives visited both Mosel-Vitelic and Nanya Technology
11 executives to discuss these agreements.

12     59.    The ability of DRAM makers to fix the price of their product was confirmed by
13 defendant Mosel Vitelic Vice President Thomas Chang's statements reported in the Detroit News
14 and the Taipei Times on May 16 and May 17, 2002, respectively. According to the reports, Mosel
15 Vitelic Inc., Taiwan's third-largest memory-chip maker, said it agreed with rivals to restrict spot
16 market sales, aiming to boost chip prices." The reports indicated that DRAM makers were
17 attempting to "encourage a price of $3" for DRAM chips. Chang stated "You don't need to have a
18 meeting, you just need to have a phone call." The reports indicated that there was no formal
19 meeting of DRAM makers because according to Chang, "Everybody knows each other. We just
20 said try not to sell below $3."

21          **VII.    VIOLATIONS ALLEGED**

22     60.    Plaintiffs incorporate by reference as if fully set forth, the preceding allegations of
23 this Complaint.

24     61.    Beginning in or about November 2001, the exact date being unknown to plaintiffs,
25 defendants, by and through their officers, directors, employees, agents, or other representatives,
26 entered in a continuing contract, combination or conspiracy to unreasonably restrain trade and
27 commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

28

62.     Defendants, by their unlawful conspiracy, artificially raised, inflated and maintained the market price of DRAM as herein alleged.

63.     The contract, combination or conspiracy consisted of a continuing agreement, understanding and concert of action among defendants and their co-conspirators, the substantial terms of which were to fix, raise, maintain and stabilize the prices of, and/or allocate the market for, DRAM they sold in the United States.

64.     Upon information and belief, for the purpose of formulating and effectuating their contract, combination or conspiracy, defendants and their co-conspirators did those things they contracted, combined or conspired to do, including:

a.     participating in meetings and conversations to discuss the prices of and/or allocate the market for DRAM;

b.     agreeing to manipulate prices and supply so as to boost sagging DRAM sales in a manner that deprived direct purchasers of free and open competition;

c.     issuing price announcements and price quotations in accordance with the agreements reached; and

d.     selling DRAM to customers in the United States at non-competitive prices.

65.     As a direct result of the unlawful conduct of defendants and their co-conspirators in furtherance of their continuing contract, combination or conspiracy, plaintiffs and other members of the class have been injured in their business and property in that they have paid more for DRAM than they would have paid in the absence of defendants' price fixing.

66.     On June 18, 2002, defendant Micron announced it had been cooperating with the Department of Justice's antitrust investigation of the DRAM industry.

67.     By June 20, 2002, defendants Samsung, Hynix and Infineon confirmed that they had received subpoenas from a grand jury which has been publicly reported as having been led in this District.

68.     On September 12, 2003, defendants Elpida Memory and NEC Electronics America announced that they had received subpoenas from the grand jury investigating manipulation of the market for DRAM.

69.     In addition, analysts have indicated that the Department of Justice may be investigating DRAM producers, including defendants, to determine whether memory producers combined to lower prices in order to drive smaller, weaker rivals out of the market. The result of this illegal anticompetitive activity is to limit the number of DRAM producers and stifle future competition and result in irreversible price increases.

70.     Published reports indicate that the Department of Justice's investigation is broad in scope and includes numerous DRAM makers including all of the defendants herein.

## VIII.   EFFECTS

71.     The above combination and conspiracy has had the following effects, among others:

a.     price competition in the sale of DRAM by defendants and their co-conspirators has been restrained, suppressed and eliminated throughout the United States;

b.     prices for DRAM sold by defendants have been raised, fixed, maintained and stabilized at artificially high and noncompetitive levels throughout the United States; and

c.     direct purchasers of DRAM from defendants have been deprived of the benefit of free and open competition in the purchase of DRAM.

72.     As a direct and proximate result of the unlawful conduct of defendants, plaintiffs and other members of the class have been injured in their business and property in that they paid more for DRAM than they otherwise would have paid in the absence of the unlawful conduct of defendants.

## IX.   DAMAGES

73.     During the Class Period, plaintiffs and the other members of the class purchased DRAM directly from defendants, or their subsidiaries, agents, and/or affiliates, and, by reason of the antitrust violations herein alleged, paid more for such products than they would have paid in the absence of such antitrust violations. As a result, plaintiffs and the other members of the class have sustained damages to their business and property in an amount to be determined at trial.

## X.    PRAYER FOR RELIEF

WHEREFORE, plaintiff demands judgment against defendants as follows:

A.    A declaration that this action is a proper class action under Federal Rules of Civil Procedure, Rule 23(b)(3) on behalf of the class as defined herein, and an Order directing that reasonable notice of this action, as provided by Federal Rules of Civil Procedure, Rule 23(c)(2), be given to each member of the class;

B.    A declaration that the unlawful combination and conspiracy alleged herein is an unreasonable restraint of trade of commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1;

C.    An injunction enjoining, preliminarily and permanently, defendants from continuing the unlawful combination and conspiracy alleged herein;

D.    An award to plaintiffs and each member of the class damages, as provided by law, and joint and several judgments in favor of plaintiff and each member of the class against defendants, and each of them, in an amount to be trebled in accordance with the antitrust laws;

E.    An award to plaintiffs and the class for the costs of this suit (including expert fees), and reasonable attorneys' fees, as provided by law; and

F.    An award for such other and further relief as the nature of this case may require or as this court deems just, equitable and proper.

/ / /

/ / /

/ / /

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JURY DEMAND**

Plaintiffs demand a jury trial, pursuant to Federal Rules of Civil Procedure, Rule 38(b), of all triable issues.

DATED:  October 1, 2003

SAVERI & SAVERI, INC.


By_____
   Guido Saveri

R. Alexander Saveri
Geoffrey C. Rushing
Cadio Zirpoli
111 Pine Street, Suite 1700
San Francisco, CA  94111-5619
Phone:  (415) 217-6810
Fax:  (415) 217-6813


HAGENS BERMAN LLP


By_____
   Steve W. Berman

Anthony D. Shapiro
 Craig R. Spiegel
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Phone:  (206) 623-7292
Fax:  (206) 623-0594

WOLF, HALDENSTEIN, ADLER,
   FREEMAN & HERZ


By_____
   Fred Taylor Isquith

270 Madison Avenue
New York, NY  10016
Phone:  (212) 545-4600
Fax:  (212) 545-4653

[M-02-1486 PJH] CONSOLIDATED AMENDED CLASS ACTION COMPLAINT          13

-and-

Mary Jane Fait
WOLF HALDENSTEIN ADLER
    FREEMAN & HERZ
656 West Randolph Street, Suite 500W
Chicago, IL  60661
Phone:  (312) 466-9200
Fax:  (312) 466-9292

**Plaintiffs' Co-Lead Counsel**

Joseph J. Tabacco, Jr.
Susan G. Kupfer
BERMAN DEVALERIO PEASE
    TABACCO BURT & PUCILLO
425 California Street, Suite 2025
San Francisco, CA  94104
Phone:  (415) 433-3200
Fax:  (415) 433-6382

**Plaintiffs' Liaison Counsel**

Christopher Lovell
Christopher J. Gray
LOVELL STEWART HALEBIAN, LLP
500 Fifth Avenue
New York, NY  10100
Phone:  (212) 608-1900
Fax:  (212) 719-4677

-and-

Merrick Scott Rayle
LOVELL STEWART HALEBIAN, LLP
505 Montgomery Street, Suite 1138
San Francisco, CA  94111
Phone:  (415) 874-3636
Fax:  (415) 874-3124

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Bruce Simon
Steven N. Williams
Peter E. Borkon
COTCHETT, PITRE, SIMON & McCARTHY
San Francisco Airport Office Center
840 Malcom Road, Suite 200
Burlingame, CA  94010
Phone:  (650) 697-6997
Fax:  (650) 697-0577

Steve Kanner
Douglas A. Millen
MUCH, SHELIST, FREED, DENENBERG,
    AMENT & RUBENSTEIN, PC
200 North LaSalle Street, Suite 2100
Chicago, IL  60601
Phone:  (312) 521-2000
Fax:  (312) 521-2100

Leonard B. Simon
Bonny E. Sweeney
Christopher M. Burke
Susan G. Taylor
MILBERG WEISS BERSHAD HYNES
    & LERACH LLP
401 "B" Street, Suite 1700
San Diego, CA  92101
Phone:  (619) 231-1058
Fax:  (619) 231-7423

Eugene A. Spector
Jeffrey J. Corrigan
John A. Macoretta
SPECTOR, ROSEMAN & KODROFF, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Phone:  (215) 496-0300
Fax:  (215) 496-6611

Joseph J. Tabacco, Jr.
Susan G. Kupfer
BERMAN DEVALERIO PEASE
    TABACCO BURT & PUCILLO
425 California Street, Suite 2025
San Francisco, CA 94104
Phone: (415) 433-3200
Fax: (415) 433-6382

**Plaintiffs' Executive Committee Counsel**

**Additional Plaintiffs' Counsel**

Ann D. White
Jayne A. Goldstein
Michael J. Kane
MAGER WHITE & GOLDSTEIN, LLP
165 Township Line Road, Suite 2400
Jenkintown, PA 19046
Phone: (215) 481-0273
Fax: (215) 481-0271

David R. Scott
James E. Miller
SCOTT & MILLER, LLC
108 Norwich Avenue
Colchester, CT 06415
Phone: (860) 537-5537
Fax: (860) 537-4432

Charles J. Piven
LAW OFFICES OF CHARLES J. PIVEN
The World Trade Center – Baltimore
401 E. Pratt Street
Baltimore, MD 21202
Phone: (410) 332-0030
Fax: (410) 685-1300

Philip H. Gordon
GORDON LAW OFFICES
623 West Hays St.
Boise, ID 83702
Phone: (208) 345-7100
Fax: (208) 345-0050

Andrew B. Sacks
SACKS WESTON SMOLINSKY ALBERT
    & LUBER
510 Walnut Street, Suite 400
Philadelphia, PA  19106
Phone:  (215) 925-8200
Fax:  (215) 925-0508

J. Mitchell Clark
LAW OFFICES OF J. MITCHELL CLARK
Frost Bank Plaza, 21st Floor
802 North Carancahau
Corpus Christi, TX  78470
Phone:  (361) 887-8500
Fax:  (361) 882-4500

William R. Edwards, III
THE EDWARDS LAW FIRM LLP
1400 Frost Bank Plaza
802 North Carancahua
Corpus Christi, TX  78403
Phone:  (361) 698-7600
Fax:  (361) 698-7614

Mark S. Goldman
WEINSTEIN, KITCHENOFF, SCARLOTO
    AND GOLDMAN, LTD.
1845 Walnut Street, Suite 1100
Philadelphia, PA  19103
Phone:  (215) 545-7200
Fax:  (215) 545-6535

James A. Bashian
LAW OFFICES OF JAMES A. BASHIAN
500 Fifth Avenue, Suite 2700
New York, NY  10110
Phone:  (212) 921-4110
Fax:  (212) 921-4249

William M. Audet
Ryan M. Hagan
ALEXANDER, HAWES & AUDET
300 Montgomery Street, Suite 400
San Francisco, CA  94104
Phone:  (415) 982-1776
Fax:  (415) 576-1776

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Roy L. Jacobs
292 Madison Avenue, 15th Floor
New York, NY  10017
Phone:  (212) 759-4600
Fax:  (212) 486-2093

Michael D. Hausfeld
COHEN MILSTEIN HAUSFELD & TOLL
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, DC  20005-3934
Phone:  (202) 408-4600
Fax:  (202) 408-4699

Linda P. Nussbaum
COHEN MILSTEIN HAUSFELD
    & TOLL PLLC
825 Third Avenue, 30th Floor
New York, NY  10022
Phone:  (212) 838-7797
Fax:  (212) 838-7745

Michael E. Criden
HANZMAN & CRIDEN, P.A.
220 Alhambra Circle, Suite 400
Coral Gables, FL  33134
Phone:  (305) 357-9000
Fax:  (305) 357-9050

Robert C. Gilbert
ROBERT C. GILBERT, P.A.
Commercebank Center, Suite 400
220 Alhambra Circle
Coral Gables, FL  33134
Phone:  (305) 529-9100
Fax:  (305) 529-1612

Robert C. Schubert
Juden Justice Reed
William F. Jonckher
SCHUBERT & REED, LLP
Two Embarcadero Center, Suite 1660
San Francisco, CA  94111
Phone:  (415) 788-4220
Fax:  (415) 788-0161

1

2   Marvin A. Miller
    MILLER FAUCHER & CAFFERTY LLP
3   30 North LaSalle Street, Suite 3200
    Chicago, IL 60602
4   Phone: (312) 782-4880
    Fax: (312) 782-4485

5

6   Bernard Persky
    GOODKIND LABATON, RUDOFF &
7       SUCHAROW, LLP
    100 Park Avenue
8   New York, NY 10017-5563
    Phone: (212) 907-0700
9   Fax: (212) 818-0477

10

11  Mark Reinhardt
    Mark A. Wendorf
12  Garrett D. Blanchfield, Jr.
    REINHARDT WENDORF &
13      BLANCHFIELD
    E-1250 First National Bank Building
14  322 Minnesota Street
    St. Paul, MN 55101
15  Phone: (651) 287-2100
    Fax: (651) 287-2103

16

17  Martin D. Chitwood
    CHITWOOD & HARLEY
18  2900 Promenade II
    1230 Peachtree Street, N.E.
19  Atlanta, GA 30309
    Phone: (404) 873-3900
20  Fax: (404) 876-4476

21

22  Brian P. Murray
    RABIN & PECKEL LLP
23  275 Madison Avenue
    New York, NY 10016
24  Phone: (212) 682-1818
    Fax: (212) 682-1892

25

26

27

28

[M-02-1486 PJH] CONSOLIDATED AMENDED CLASS ACTION COMPLAINT          19

Karl L. Cambronne
CHESTNUT & CAMBRONNE
3700 Piper Jaffrey Tower
222 South Ninth Street
Minneapolis, MN 55402
Phone: (612) 339-7300
Fax: (612) 336-2940

Laurence D. King
Lori E. Sambol
KAPLAN FOX & KILSHEIMER LLP
601 Montgomery Street, Suite 300
San Francisco, CA 94111
Phone: (415) 772-4700
Fax: (415) 772-4707

Robert N. Kaplan
Gregory K. Arenson
KAPLAN FOX & KILSHEIMER, LLP
805 Third Avenue, 22nd Floor
New York, NY 10022
Phone: (212) 687-1980
Fax: (212) 687-7714

Mr. Gary Specks
KAPLAN FOX & KILSHEIMER LLP
203 North LaSalle Street, Suite 2100
Chicago, IL 60601
Phone: (312) 558-1584
Fax: (312) 558-1585

Lawrence Walner
LAWRENCE WALNER &
    ASSOCIATES, LTD.
150 North Wacker Drive, Suite 1870
Chicago, IL 60606
Phone: (312) 201-1616
Fax: (312) 201-1538

John Peter Zavez
ADKINS, KELSTON & ZAVEZ, P.C.
90 Canal Street, Suite 500
Boston, MA 02114
Phone: (617) 367-1040
Fax: (617) 742-8280

Joseph C. Kohn
William E. Hoese
KOHN, SWIFT & GRAF, P.C.
One S. Broad Street, Suite 2100
Philadelphia, PA  19107
Phone:  (215) 238-1700
Fax:  (215) 238-1968

Gregory P. Hansel
PRETI, FLAHERTY, BELIVEAU
    PACHIOS & HALEY, LLC
One City Center
P.O. Box 9546
Portland, ME  04112
Phone:  (207) 791-3000
Fax:  (207) 791-3111

Steven D. Irwin
Patrick Sorek
LEECH, TISHMAN, FUSCALDO
    & LAMPL, LLC
1800 Frick Building
Pittsburg, PA  15219
Phone:  (412) 261-1600
Fax:  (412) 227-5551

Diane M. Nast
Michael G. Nast
RODA & NAST P.C.
801 Estelle Drive
Lancaster, PA  17601
Phone:  (717) 892-3000
Fax:  (717) 892-1200

Roger M. Schrimp
Clinton P. Walker
Gene J. Stonebarger
DAMRELL, NELSON, SCHRIMP,
    PALLIOS PACHER & SILVA
1601 "T" Street, 5th Floor
Modesto, CA  95354
Phone:  (209) 526-3500
Fax:  (209) 526-3534

Jeremiah F. Hallisey
HALLISEY & JOHNSON
300 Montgomery Street, Suite 538
San Francisco, CA  94104-1901
Phone:  (415) 433-5300
Fax:  (415) 433-5342

Randy Renick
LAW OFFICES OF RANDY RENICK
The Marine Building
128 N. Fair Oaks Ave., Suite 204
Pasadena, CA 91023
Phone:  (626) 585-9608
Fax:  (626) 577-7079

Leonard Barrack
Jeffrey B. Gittleman
BARRACK, RODOS & BACINE
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA  19103
Phone:  (215) 963-0600
Fax:  (215) 963-0838

Krishna B. Narine
SCHIFFRIN & BARROWAY LLP
Three Bala Plaza East, Suite 400
Bala Cynwyd, PA  19004
Phone:  (610) 667-7706
Fax:  (610) 667-7056

Isacc Diel
DIEL & SEELAM, p.c.
4121 W. 83rd Street, Suite 254
Prairie Village, KS  66208
Phone:  (913) 383-8711
Fax:  (913) 383-8712

Joel C. Meredith
Steven J. Greenfogel
MEREDITH COHEN GREENFOGEL &
    SKIRNICK, PC
117 S. 17th Street, 22nd Floor
Philadelphia, PA  19103
Phone:  (215) 564-5182
Fax:  (215) 569-0958

Richard A. Lockridge
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Ave S.
Minneapolis, MN 55401-2179
Phone: (612) 339-6900
Fax: (612) 339-0981