Guido Saveri (#22349)
R. Alexander Saveri (#173102)
Geoffrey C. Rushing (#126910)
Cadio Zirpoli (#179108)
SAVERI & SAVERI, INC.
111 Pine Street, Suite 1700
San Francisco, CA 94111-5619
Telephone: (415) 217-6810
guido@saveri.com
rick@saveri.com

Steve W. Berman (*pro hac vice*)
Anthony D. Shapiro (*pro hac vice*)
Craig R. Spiegel (122000)
HAGENS BERMAN LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Fred Taylor Isquith
Mary Jane Fait (*pro hac vice*)
WOLF, HALDENSTEIN, ADLER,
    FREEMAN & HERZ
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600

Co-Lead Counsel for Plaintiffs

[Additional Counsel on Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE DRAM ANTITRUST LITIGATION | Master File No. M-02-1486PJH |
| | MDL No. 1486 |
| This Document Relates to: | **THIRD CONSOLIDATED AMENDED CLASS ACTION COMPLAINT** |
| ALL ACTIONS | **JURY TRIAL DEMANDED** |

## I.   NATURE OF THE ACTION

1.     This action is brought as a class action on behalf of a plaintiff class (the "Class") consisting of all persons and entities who purchased in the United States Dynamic Random Access Memory chips or modules ("DRAM") directly from the named defendants during the period from approximately April 1, 1999 through at least June 30, 2002 (the "Class Period").

2.     Defendants are the leading manufacturers of semiconductor memory products, including DRAM, and control the majority of the memory chip industry which annually generates worldwide revenues in excess of $20 billion.  Plaintiffs allege that during the Class Period, defendants conspired, combined and contracted to fix, raise, maintain, and stabilize the price at which DRAM were sold in the United States.  As a result of defendants' unlawful conduct, plaintiffs and the other members of the Class paid artificially inflated prices for DRAM during the Class Period.  Such prices exceeded the amount they would have paid if the price for DRAM had been determined by a competitive market.

## II.   JURISDICTION AND VENUE

3.     Plaintiffs bring this action under §§ 4, 12 and 16 of the Clayton Act (15 U.S.C. §§ 15, 22 and 26) for treble damages and injunctive relief, as well as reasonable attorneys' fees and costs with respect to the injuries sustained by plaintiff arising from violations by defendants of the federal antitrust laws, including § 1 of the Sherman Antitrust Act (15 U.S.C. § 1).

4.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1337(a) and 1367.

5.     Venue is proper in this judicial district pursuant to 15 U.S.C. §§ 15 and 22, and 28 U.S.C. § 1391(b) and (c), in that at least one of the defendants resides in this judicial district, is licensed to do business or is doing business in this judicial district.

## III.   PARTIES

**Plaintiffs**

6.     Plaintiff onShore, Inc. is a Delaware corporation with its principal place of business in Chicago, Illinois.  During the Class Period onShore purchased DRAM from defendant Crucial

Technology, Inc. ("Crucial"), a wholly owned subsidiary of defendant Micron Technology, Inc.

7.    Plaintiff Internet Integration, Inc. is a California corporation with its principal place of business in Los Angeles.  During the Class Period Internet Integration purchased DRAM from Crucial.

8.    Plaintiff Kevin Irwin d/b/a Kevin's Computer and Photo is a business entity with its principal place of business in Pittsburgh, Pennsylvania.  During the Class Period Kevin Irwin d/b/a Kevin's Computer and Photo purchased DRAM from Crucial.

9.    Plaintiff PC Doctor, Inc. is a Pennsylvania corporation with its principal place of business in Pittsburgh, Pennsylvania.  During the Class Period PC Doctor, Inc. purchased DRAM from Crucial.

10.    Plaintiff Advanced Technology, Inc. is a corporation which during the class period purchased DRAM from Crucial.

11.    Plaintiff Network Business Solutions, Inc. is a Maryland corporation with its principal place of business in Baltimore, Maryland.  During the Class Period Network Business Solutions, Inc. purchased DRAM from Crucial.

12.    Plaintiff JEM Electronics Distributors, Inc. is a Pennsylvania corporation.  During the Class Period JEM Electronics Distributors, Inc. purchased DRAM from Crucial.

13.    Plaintiff C3 Information Technology, LLC is a Pennsylvania corporation with its principal place of business in Conshohocken, Pennsylvania.  During the Class Period C3 Information Technology, LLC purchased DRAM from Crucial.

14.    Plaintiff Daniel Clement purchased DRAM during the Class Period from Crucial.

15.    Plaintiff Web Ideals, LLC is a Pennsylvania Limited Liability Corporation with its principal place of business in Doylestown, Pennsylvania.  During the Class Period Web Ideals, LLC purchased DRAM from Crucial.

16.    Plaintiff 5207, Inc. is a corporation with its principal place of business in Skokie, Illinois.  During the Class Period 5207, Inc. purchased DRAM from Crucial.

[M-02-1486PJH] THIRD CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

**Defendants**

17.     Defendant Micron Technology, Inc. is a Delaware corporation with its principal place of business at 8000 South Federal Way, Boise, Idaho 83707.  During the time period covered in this complaint, Micron Technology, Inc. designed, developed, manufactured, sold and distributed DRAM throughout the United States.  DRAM is Micron's primary semiconductor product.

18.     Defendant Micron Semiconductor Products, Inc. is an Idaho corporation located at 8000 South Federal Way, Boise, Idaho and is a wholly owned and controlled subsidiary of defendant Micron Technology, Inc. (collectively referred to as "Micron").  During the time period covered in this complaint, Micron sold DRAM through its Crucial Technology retail sales division to computer manufacturers and other end users throughout the United States.

19.     Defendant Crucial Technology, Inc. ("Crucial") is a corporation with its principal place of business in Boise, Idaho.  Crucial is a wholly owned subsidiary of Micron which operates the distribution business of Micron Technologies, Inc.

20.     Defendant Infineon Technologies AG, a German corporation, maintains its headquarters at St. Martin-Str. 53, 81669, Munich, Germany.  During the time period covered in this complaint, Infineon Technologies AG manufactured, sold, and distributed DRAM throughout the world, including the United States.

21.     Defendant Infineon Technologies North America Corp. is a Delaware corporation which maintains offices at 1730 North First Street, San Jose, CA  95112.  Infineon Technologies North America Corp. is a wholly owned and controlled subsidiary of defendant Infineon Technologies AG (collectively referred to as "Infineon").  During the time period in this complaint, Infineon Technologies North America Corp. sold and distributed DRAM throughout the United States.

22.     Defendant Hynix Semiconductor, Inc. maintains its head offices at SAN 136-1, Ami-Ri Bubal-eub, Ichon-si, Kyoungki-do, Korea.  During the time covered in this complaint, Hynix Semiconductor, Inc. manufactured, sold and distributed DRAM throughout the world,

1   including the United States.

2       23.     Defendant Hynix Semiconductor America, Inc. is a California corporation located

3   at 3101 North First Street, San Jose, California 95134. Hynix Semiconductor America, Inc. is a

4   wholly owned and controlled subsidiary of defendant Hynix Semiconductor, Inc. (collectively

5   referred to as "Hynix"). During the time period covered by this complaint, Hynix Semiconductor

6   America, Inc. sold and distributed DRAM throughout the United States.

7       24.     Defendant Samsung Electronics Co., Ltd., a Korean corporation, maintains its

8   executive offices at Samsung Main Building, 250-2 ga, Taepyung-ro Chung-gu, Seoul, Korea.

9   During the time period covered in this complaint, Samsung Electronics Co., Ltd. manufactured,

10  sold and distributed DRAM throughout the world, including the United States.

11      25.     Defendant Samsung Semiconductor, Inc. is a California corporation located at 3655

12  North First Street, San Jose, California 95134. Samsung Semiconductor, Inc. is a wholly owned

13  and controlled subsidiary of defendant Samsung Electronics Co., Ltd. (collectively referred to as

14  "Samsung"). During the time period covered by this complaint, Samsung Semiconductor, Inc.

15  sold and distributed DRAM throughout the United States.

16      26.     Defendant Mosel-Vitelic Corporation maintains its headquarters at No. 19 Li Hsin

17  Road, Hsinchu Science Based Industrial Park, Hsinchu, Taiwan, R.O.C. During the time period

18  covered by this complaint, Mosel-Vitelic Corporation sold and distributed DRAM throughout the

19  United States.

20      27.     Defendant Mosel-Vitelic Corporation (USA) is a California corporation located at

21  3910 North First Street, San Jose, California 95134. Mosel-Vitelic (USA) is a wholly owned and

22  controlled subsidiary of defendant Mosel-Vitelic Corporation. During the time period covered by

23  this complaint, Mosel-Vitelic (USA) sold and distributed DRAM throughout the United States.

24      28.     Defendant Nanya Technology Corporation is a Taiwanese corporation which

25  maintains its headquarters at HWA YA Technology Park, 669, Fu Hsing 3rd Rd. Keuishan,

26  Taoyuan, Taiwan, R.O.C. During the time period covered by this complaint, Nanya Technology

27  Corporation sold and distributed DRAM throughout the United States.

28

4

29.     Defendant Nanya Technology Corporation USA is located at 675 E. Brokaw Road, San Jose, California 95112.  Nanya Technology Corporation USA is a branch office of defendant Nanya Technology Corporation.  In addition to the sales and marketing office in San Jose, Nanya Technology Corporation operates memory design centers in San Jose and Houston, Texas.  During the time period covered by this complaint, Nanya Technology Corporation USA sold and distributed DRAM throughout the United States.

30.     Defendant Winbond Electronics Corporation ("Winbond"), is headquartered at 4, Creaton Road, 111, Science-Based Industrial park, Hsinchu, Taiwan, R.O.C.  During the time period covered in this complaint, Winbond manufactured, sold and distributed DRAM throughout the United States.

31.     Defendant Winbond Electronics Corporation America, located at 2727 North First Street, San Jose, CA 95134, is a wholly-owned subsidiary of Winbond which sold and distributed DRAM throughout the United States during the time period covered in this complaint.

32.     Defendant Elpida Memory, Inc. ("Elpida") maintains its executive offices at Sumitomo Seimei Yaesu Bldg., 3F, 2-1 Yaesu 2-chome, Chuo-ku, Tokyo, Japan.  During the time period covered in this complaint, Elpida manufactured, sold and distributed DRAM throughout the United States.

33.     Defendant Elpida Memory (USA) Inc., located at 2001 Walsh Avenue, Santa Clara, CA 95050, is a wholly owned subsidiary of Elpida which sold and distributed DRAM throughout the United States during the time period covered in this complaint.

34.     Defendant NEC Electronics America, Inc. ("NEC") maintains its corporate headquarters at 2880 Scott Boulevard, Santa Clara, California 95050-2554 and its manufacturing plant in Roseville, California.  It is a wholly owned subsidiary of NEC Electronics Corporation. During the time period covered in this complaint, NEC manufactured, sold and distributed DRAM throughout the United States.

35.     Various other individuals, partnerships, corporations, and other business entities, unknown to the plaintiffs, have participated in the violations alleged herein and have performed

1   acts and made statements in furtherance thereof.

2   36.   The acts charged in this Complaint have been done by defendants or were ordered

3   or done by defendants' officers, agents, employees, or representatives, while actively engaged in

4   the management of defendants' affairs.

5   ## IV.   CLASS ACTION ALLEGATIONS

6   37.   Plaintiffs bring this action both on behalf of themselves, and as a class action

7   pursuant to Federal Rules of Civil Procedure, Rule 23(a) and (b)(3), on behalf of the following

8   class (the "Class").

> All individuals and entities who, during the period from approximately
> April 1, 1999 through at least June 30, 2002 (the "Class Period"),
> purchased DRAM in the United States directly from the defendants or
> their subsidiaries.  Excluded from the class are defendants and their
> parents, subsidiaries, affiliates, all governmental entities, and co-
> conspirators.

38.   Plaintiffs do not know the exact number of class members because such information

is in the exclusive control of defendants.  Plaintiffs believe that, due to the nature of the trade and

commerce involved, there are most likely hundreds of thousands of class members, geographically

dispersed throughout the United States such that joinder of all class members is impracticable.

39.   Plaintiffs' claims are typical of the claims of the class in that plaintiffs are direct

purchasers of DRAM, all class members were damaged by the same wrongful conduct of

defendants and their co-conspirators as alleged herein, and the relief sought is common to the

class.

40.   Numerous questions of law or fact arise from defendants' anticompetitive conduct

that is common to the class.  Among the questions of law or fact common to the class are:

a.   whether defendants engaged in a contract, combination or conspiracy among

themselves to fix, maintain or stabilize the prices of, or allocate the market for, DRAM sold in the

United States;

b.     whether the conduct of defendants caused prices of DRAM to be artificially inflated to non-competitive levels; and

c.     whether plaintiff and other members of the class were injured by the conduct of defendants and, if so, the appropriate class-wide measure of damages and appropriate injunctive relief.

41.     These common questions of law or fact are common to the class, and predominate over any other questions affecting only individual class members.

42.     Plaintiffs will fairly and adequately represent the interests of the class in that plaintiffs are typical direct purchasers of DRAM and have no conflicts with any other member of the class. Furthermore, plaintiffs have retained competent counsel experienced in antitrust and class action litigation.

43.     A class action is superior to the alternatives, if any, for the fair and efficient adjudication of this controversy.

44.     Prosecution of separate actions by individual class members would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for the defendants.

45.     Injunctive relief is appropriate as to the class as a whole because defendants have acted or refused to act on grounds generally applicable to the class.

46.     Plaintiffs reserve the right to expand, modify or alter the class definition in response to information learned during discovery.

## V.     TRADE AND COMMERCE

47.     During the Class Period, defendants sold and shipped substantial quantities of DRAM in a continuous and uninterrupted flow of interstate and international commerce to customers located in states other than the states in which defendants are located.

48.     The business activities of defendants that are the subject of this Complaint were within the flow of, and substantially affected, interstate trade and commerce.

49.     During the Class Period, defendants, amongst whom are the four largest DRAM

1   producers in the world, have most of the DRAM sales in the global market.

2   <center>**VI.   STATEMENT OF FACTS**</center>

3   **A.   The DRAM Industry**

4   50.   DRAM are high density, low-cost-per bit, random access memory components that

5   store digital information and provide high-speed storage and retrieval of data used in personal

6   computers, printers, digital cameras, wireless telephones, and other electronic devices as a storage

7   module to hold data as it is processed.  DRAM is the most common kind of random access

8   memory chip sold both in new computers and computer upgrades in the United States.  DRAM is

9   sold in individual chips or modules with several chips attached to the module.

10   51.   DRAM revenue exceeds $20 billion a year.  The world's top four makers of

11   DRAM, defendants herein, control roughly 70% of the market; the top six manufacturers,

12   defendants herein, control 96% of the market.  As of 2000, Samsung was the top DRAM

13   manufacturer with 23% of the market share, followed by Micron with 21%, Hynix with 19% and

14   Toshiba with 7%.  At the end of 2001, Micron acquired Toshiba's DRAM production, further

15   consolidated the industry and the dominant market position exercised by defendants.  Thereafter,

16   Infineon became the fourth largest DRAM maker.

17   **B.   DRAM Prices Fall Steadily Prior to the Class Period**

18   52.   At certain times beginning at least as early as 1999, the prices of DRAM declined

19   dramatically.

20   53.   On information and belief, as a result of these price declines, each of the defendants

21   had experienced material decreases in selling prices, and, at times, were selling DRAM at or below

22   manufacturing costs.  All of the defendants were facing an uncertain future if prices continued to

23   decline with potential bankruptcy as a possibility for some, and a continuing erosion of profits for

24   others.

25   **C.   Price Fixing and the Rise in DRAM Prices During the Class Period**

26   54.   In view of the economic conditions of the industry, the defendants entered into

27   agreements designed to combat the price decline in the industry. These agreements had the effect

<center>8</center>
<center>[M-02-1486PJH] THIRD CONSOLIDATED AMENDED CLASS ACTION COMPLAINT</center>

both of artificially limiting the rate of DRAM price declines, and, at other times, of artificially increasing the DRAM price.

55.     For example, sometime in the Spring or early summer of 1999, and again sometime in the fall of 2001, realizing the economic trends of the industry, defendants agreed to reduce supply in order to artificially raise prices. As part of their agreement, each defendant agreed to cut production so that, as supplies were restrained by their agreement, prices for DRAM would increase. Thus, throughout the Class Period, Defendants entered into agreements or understandings regarding the sale and marketing of DRAM, the purpose of which was to raise, fix and stabilize the prices for DRAM.

56.     A news article on the DRAM industry reported that defendant Mosel Vitelic and other DRAM producers had met to discuss measures that could be taken to halt "the downward spiral of DRAM prices." Defendant Mosel Vitelic's Vice President Chang indicated in September 2001 that "a basis for understanding had been reached" between chip makers to "trim some production starting September." Chang stated that all DRAM makers would have to agree for the plan to have the desired effect of raising prices.

57.     On or about November 2001, prices for DRAM rose dramatically, and by February 2002, prices had risen as high as $4.50.

58.     It has been reported in the press that an officer of DRAM manufacturer Mosel-Vitelic admitted that price fixing meetings occurred, and that an agreement had been reached between the major DRAM producers to push prices up by reducing supply. According to press reports, Hynix and Samsung executives visited both Mosel-Vitelic and Nanya Technology executives to discuss these agreements.

59.     The ability of DRAM makers to fix the price of their product was confirmed by defendant Mosel Vitelic Vice President Thomas Chang's statements reported in the Detroit News and the Taipei Times on May 16 and May 17, 2002, respectively. According to the reports, Mosel Vitelic Inc., Taiwan's third-largest memory-chip maker, said it agreed with rivals to restrict spot market sales, aiming to boost chip prices." The reports indicated that DRAM makers were

9
[M-02-1486PJH] THIRD CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

1   attempting to "encourage a price of $3" for DRAM chips.  Chang stated "You don't need to have a

2   meeting, you just need to have a phone call."  The reports indicated that there was no formal

3   meeting of DRAM makers because according to Chang, "Everybody knows each other.  We just

4   said try not to sell below $3."

## VII.   VIOLATIONS ALLEGED

60.     Plaintiffs incorporate by reference as if fully set forth, the preceding allegations of
this Complaint.

61.     Beginning in or about April 1, 1999, the exact date being unknown to plaintiffs,
defendants, by and through their officers, directors, employees, agents, or other representatives,
entered in a continuing contract, combination or conspiracy to unreasonably restrain trade and
commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

62.     Defendants, by their unlawful conspiracy, artificially raised, inflated and
maintained the market price of DRAM as herein alleged.

63.     The contract, combination or conspiracy consisted of a continuing agreement,
understanding and concert of action among defendants and their co-conspirators, the substantial
terms of which were to fix, raise, maintain and stabilize the prices of, and/or allocate the market
for, DRAM they sold in the United States.

64.     Upon information and belief, for the purpose of formulating and effectuating their
contract, combination or conspiracy, defendants and their co-conspirators did those things they
contracted, combined or conspired to do, including:

a.     participating in meetings and conversations to discuss the prices of and/or
allocate the market for DRAM;

b.     agreeing to manipulate prices and supply so as to boost sagging DRAM
sales in a manner that deprived direct purchasers of free and open competition;

c.     issuing price announcements and price quotations in accordance with the
agreements reached; and

d.     selling DRAM to customers in the United States at non-competitive prices.

65.    As a direct result of the unlawful conduct of defendants and their co-conspirators in furtherance of their continuing contract, combination or conspiracy, plaintiffs and other members of the class have been injured in their business and property in that they have paid more for DRAM than they would have paid in the absence of defendants' price fixing.

66.    On June 18, 2002, defendant Micron announced it had been cooperating with the Department of Justice's antitrust investigation of the DRAM industry.

67.    By June 20, 2002, defendants Samsung, Hynix and Infineon confirmed that they had received subpoenas from a grand jury which has been publicly reported as having been led in this District.

68.    On September 12, 2003, defendants Elpida Memory and NEC Electronics America announced that they had received subpoenas from the grand jury investigating manipulation of the market for DRAM.

69.    In addition, analysts have indicated that the Department of Justice may be investigating DRAM producers, including defendants, to determine whether memory producers combined to lower prices in order to drive smaller, weaker rivals out of the market.  The result of this illegal anticompetitive activity is to limit the number of DRAM producers and stifle future competition and result in irreversible price increases.

70.    Published reports indicate that the Department of Justice's investigation is broad in scope and includes numerous DRAM makers including all of the defendants herein.

71.    On or about September 14, 2004, defendant Infineon Technologies AG entered into a plea agreement with the government pursuant to which it agreed to plead guilty to conspiring to fix prices in the DRAM market from July 1, 1999 through June 15, 2002.

72.    On or about April 20, 2005, defendant Hynix Semiconductor Inc. entered into a plea agreement with the government pursuant to which it agreed to plead guilty to conspiring to fix prices in the DRAM market from April 1, 1999 through June 15, 2002.

## VIII.   EFFECTS

73.    The above combination and conspiracy has had the following effects, among others:

11

      a.     price competition in the sale of DRAM by defendants and their co-conspirators has been restrained, suppressed and eliminated throughout the United States;

      b.     prices for DRAM sold by defendants have been raised, fixed, maintained and stabilized at artificially high and noncompetitive levels throughout the United States; and

      c.     direct purchasers of DRAM from defendants have been deprived of the benefit of free and open competition in the purchase of DRAM.

74.    As a direct and proximate result of the unlawful conduct of defendants, plaintiffs and other members of the class have been injured in their business and property in that they paid more for DRAM than they otherwise would have paid in the absence of the unlawful conduct of defendants.

## IX.    FRAUDULENT CONCEALMENT

75.    Plaintiffs had no knowledge of the combination and conspiracy alleged herein, or of any facts that might have led to the discovery thereof in the exercise of reasonable diligence, prior to June, 2002 when defendants Micron, Samsung, Hynix and Infineon announced that the Department of Justice was investigating the DRAM industry.

76.    Plaintiffs could not have discovered the existence of the combination and conspiracy alleged herein at an earlier date by the exercise of reasonable due diligence because of the deceptive practices and techniques of secrecy employed by the defendants and their co-conspirators to avoid detection and affirmatively conceal such violations including, without limitation, falsely attributing price increases to increased demand, shortages in supply, increased manufacturing costs, increased prices of labor and of raw materials, and/or insufficient production capacity. Defendants and their co-conspirators also falsely informed their customers that they were unable to sell their products at a lower price due to increased manufacturing costs, increased prices of labor and of raw materials, and insufficient production capacity.

77.    These false statements included, without limitation:

      a.     in an article in Electronic News on September 13, 1999, defendants attributed DRAM price increases to increased demand due to strong sales of low PCs incorporating

large quantities of DRAM.  Avo Kanadjian, vice president of marketing of defendant Samsung
Semiconductor, Inc. said: "Because we see the value PC and free PCs entering the market at
extraordinary numbers, DRAM oversupply has silently gone into a shortage."  Chee-Wai Ho,
director of product marketing for memory products at defendant Infineon Technologies AG
agreed.

    b.  in an interview on December 4, 2001, published on Simmtester.com, Steve
Appleton, chief executive officer of defendant Micron Technology, Inc., was asked why prices had
recently increased sharply and suddenly.  He answered:

> I have no idea.  There clearly was a belated increase in demand as the seasonal
> rebound we had expected two-and-a-half months earlier finally kicked in. And,
> clearly the Japanese are cutting back their DRAM production.  Even Hynix, which
> is so unpredictable, cut some production by temporarily closing its Eugene, Ore.,
> fab. When it was running at 40K wafer capacity a month, that fab alone probably
> had about 2.5% of the world's DRAM production.

    c.  in a press release issued on April 15, 2002, Hynix cited increased demand in
the DRAM market as the reason for an increase in revenue.

    78.  Plaintiffs had no reason to disbelieve these statements which on their face appeared
to be reasonable explanations for the pricing of DRAM.  Furthermore, most of the explanations
provided by defendants involved non-public and/or proprietary information completely in
defendants' control such that plaintiffs and members of the class could not verify their accuracy.
Defendants' purported reasons for the price increases of DRAM were materially false and
misleading and were made for the purpose of concealing defendants' anti-competitive scheme as
alleged herein.  In truth, at all relevant times, the price of DRAM was artificially inflated and
maintained as a direct result of the defendants' anti-competitive scheme, the operation of which
was a substantial (but undisclosed) factor in the pricing of DRAM during the class period.

    79.  As a result of the fraudulent concealment of the conspiracy, Plaintiffs assert the
tolling of the applicable statute of limitations affecting the causes of action by Plaintiffs and the

[M-02-1486PJH] THIRD CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

1 | member of the class.

## X.   DAMAGES

80.   During the Class Period, plaintiffs and the other members of the class purchased DRAM directly from defendants, or their subsidiaries, agents, and/or affiliates, and, by reason of the antitrust violations herein alleged, paid more for such products than they would have paid in the absence of such antitrust violations.  As a result, plaintiffs and the other members of the class have sustained damages to their business and property in an amount to be determined at trial.

## XI.   PRAYER FOR RELIEF

WHEREFORE, plaintiff demands judgment against defendants as follows:

A.   A declaration that this action is a proper class action under Federal Rules of Civil Procedure, Rule 23(b)(3) on behalf of the class as defined herein, and an Order directing that reasonable notice of this action, as provided by Federal Rules of Civil Procedure, Rule 23(c)(2), be given to each member of the class;

B.   A declaration that the unlawful combination and conspiracy alleged herein is an unreasonable restraint of trade of commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1;

C.   An injunction enjoining, preliminarily and permanently, defendants from continuing the unlawful combination and conspiracy alleged herein;

D.   An award to plaintiffs and each member of the class damages, as provided by law, and joint and several judgments in favor of plaintiffs and each member of the class against defendants, and each of them, in an amount to be trebled in accordance with the antitrust laws;

E.   An award to plaintiffs and the class for the costs of this suit (including expert fees), and reasonable attorneys' fees, as provided by law; and

F.   An award for such other and further relief as the nature of this case may require or as this court deems just, equitable and proper.

1

**JURY DEMAND**

2      Plaintiffs demand a jury trial, pursuant to Federal Rules of Civil Procedure, Rule 38(b), of

3  all triable issues.

4  DATED:  June 9, 2005.

5                                          SAVERI & SAVERI, INC.

6

7                                          By _____
                                              Guido Saveri

8                                          R. Alexander Saveri
9                                          Geoffrey C. Rushing
                                           Cadio Zirpoli
10                                         111 Pine Street, Suite 1700
                                           San Francisco, CA  94111-5619
11                                         Phone:  (415) 217-6810
                                           Fax:  (415) 217-6813
12

13                                         HAGENS BERMAN LLP

14

15                                         By _____
                                              Steve W. Berman
16

17                                         Anthony D. Shapiro
                                            Craig R. Spiegel
18                                         1301 Fifth Avenue, Suite 2900
                                           Seattle, WA  98101
19                                         Phone:  (206) 623-7292
                                           Fax:  (206) 623-0594
20
                                           WOLF, HALDENSTEIN, ADLER,
21                                             FREEMAN & HERZ

22

23                                         By _____
                                              Fred Taylor Isquith
24

25                                         270 Madison Avenue
                                           New York, NY  10016
26                                         Phone:  (212) 545-4600
                                           Fax:  (212) 545-4653
27
                                                    -and-
28

Mary Jane Fait
WOLF HALDENSTEIN ADLER
    FREEMAN & HERZ
656 West Randolph Street, Suite 500W
Chicago, IL 60661
Phone: (312) 466-9200
Fax: (312) 466-9292

**Plaintiffs' Co-Lead Counsel**

Joseph J. Tabacco, Jr.
Susan G. Kupfer
BERMAN DEVALERIO PEASE
    TABACCO BURT & PUCILLO
425 California Street, Suite 2025
San Francisco, CA 94104
Phone: (415) 433-3200
Fax: (415) 433-6382

**Plaintiffs' Liaison Counsel**

Christopher Lovell
Christopher J. Gray
LOVELL STEWART HALEBIAN, LLP
500 Fifth Avenue
New York, NY 10100
Phone: (212) 608-1900
Fax: (212) 719-4677

-and-

Merrick Scott Rayle
LOVELL STEWART HALEBIAN, LLP
505 Montgomery Street, Suite 1138
San Francisco, CA 94111
Phone: (415) 874-3636
Fax: (415) 874-3124

Bruce Simon
Steven N. Williams
Peter E. Borkon
COTCHETT, PITRE, SIMON & McCARTHY
San Francisco Airport Office Center
840 Malcom Road, Suite 200
Burlingame, CA 94010
Phone: (650) 697-6997
Fax: (650) 697-0577

Steve Kanner
Douglas A. Millen
MUCH, SHELIST, FREED, DENENBERG,
    AMENT & RUBENSTEIN, PC
200 North LaSalle Street, Suite 2100
Chicago, IL  60601
Phone:  (312) 521-2000
Fax:  (312) 521-2100

Leonard B. Simon
Bonny E. Sweeney
Christopher M. Burke
Susan G. Taylor
MILBERG WEISS BERSHAD HYNES
    & LERACH LLP
401 "B" Street, Suite 1700
San Diego, CA  92101
Phone:  (619) 231-1058
Fax:  (619) 231-7423

Eugene A. Spector
Jeffrey J. Corrigan
John A. Macoretta
SPECTOR, ROSEMAN & KODROFF, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Phone:  (215) 496-0300
Fax:  (215) 496-6611

Joseph J. Tabacco, Jr.
Susan G. Kupfer
BERMAN DEVALERIO PEASE
    TABACCO BURT & PUCILLO
425 California Street, Suite 2025
San Francisco, CA  94104
Phone:  (415) 433-3200
Fax:  (415) 433-6382

**Plaintiffs' Executive Committee Counsel**

**Additional Plaintiffs' Counsel**

Ann D. White
Jayne A. Goldstein
Michael J. Kane
MAGER WHITE & GOLDSTEIN, LLP
165 Township Line Road, Suite 2400
Jenkintown, PA  19046
Phone: (215) 481-0273
Fax: (215) 481-0271

David R. Scott
James E. Miller
SCOTT & MILLER, LLC
108 Norwich Avenue
Colchester, CT  06415
Phone:  (860) 537-5537
Fax:  (860) 537-4432

Charles J. Piven
LAW OFFICES OF CHARLES J. PIVEN
The World Trade Center – Baltimore
401 E. Pratt Street
Baltimore, MD  21202
Phone:  (410) 332-0030
Fax:  (410) 685-1300

Philip H. Gordon
GORDON LAW OFFICES
623 West Hays St.
Boise, ID  83702
Phone:  (208) 345-7100
Fax:  (208) 345-0050

Andrew B. Sacks
SACKS WESTON SMOLINSKY ALBERT
    & LUBER
510 Walnut Street, Suite 400
Philadelphia, PA  19106
Phone:  (215) 925-8200
Fax:  (215) 925-0508

J. Mitchell Clark
LAW OFFICES OF J. MITCHELL CLARK
Frost Bank Plaza, 21st Floor
802 North Carancahau
Corpus Christi, TX  78470
Phone:  (361) 887-8500
Fax:  (361) 882-4500

William R. Edwards, III
THE EDWARDS LAW FIRM LLP
1400 Frost Bank Plaza
802 North Carancahua
Corpus Christi, TX  78403
Phone:  (361) 698-7600
Fax:  (361) 698-7614

Mark S. Goldman
WEINSTEIN, KITCHENOFF, SCARLOTO
    AND GOLDMAN, LTD.
1845 Walnut Street, Suite 1100
Philadelphia, PA 19103
Phone: (215) 545-7200
Fax: (215) 545-6535

James A. Bashian
LAW OFFICES OF JAMES A. BASHIAN
500 Fifth Avenue, Suite 2700
New York, NY 10110
Phone: (212) 921-4110
Fax: (212) 921-4249

William M. Audet
Ryan M. Hagan
ALEXANDER, HAWES & AUDET
300 Montgomery Street, Suite 400
San Francisco, CA 94104
Phone: (415) 982-1776
Fax: (415) 576-1776

Roy L. Jacobs
292 Madison Avenue, 15th Floor
New York, NY 10017
Phone: (212) 759-4600
Fax: (212) 486-2093

Michael D. Hausfeld
COHEN MILSTEIN HAUSFELD & TOLL
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, DC 20005-3934
Phone: (202) 408-4600
Fax: (202) 408-4699

Linda P. Nussbaum
COHEN MILSTEIN HAUSFELD
    & TOLL PLLC
825 Third Avenue, 30th Floor
New York, NY 10022
Phone: (212) 838-7797
Fax: (212) 838-7745

Michael E. Criden
HANZMAN & CRIDEN, P.A.
220 Alhambra Circle, Suite 400
Coral Gables, FL 33134
Phone: (305) 357-9000
Fax: (305) 357-9050

1   Robert C. Gilbert
    ROBERT C. GILBERT, P.A.
2   Commercebank Center, Suite 400
    220 Alhambra Circle
3   Coral Gables, FL  33134
    Phone:  (305) 529-9100
4   Fax:  (305) 529-1612

5   Robert C. Schubert
    Juden Justice Reed
6   William F. Jonckher
    SCHUBERT & REED, LLP
7   Two Embarcadero Center, Suite 1660
    San Francisco, CA  94111
8   Phone:  (415) 788-4220
    Fax:  (415) 788-0161
9
    Marvin A. Miller
10  MILLER FAUCHER & CAFFERTY LLP
    30 North LaSalle Street, Suite 3200
11  Chicago, IL  60602
    Phone:  (312) 782-4880
12  Fax:  (312) 782-4485

13
    Bernard Persky
14  GOODKIND LABATON, RUDOFF &
        SUCHAROW, LLP
15  100 Park Avenue
    New York, NY  10017-5563
16  Phone:  (212) 907-0700
    Fax:  (212) 818-0477
17
    Mark Reinhardt
18  Mark A. Wendorf
    Garrett D. Blanchfield, Jr.
19  REINHARDT WENDORF &
        BLANCHFIELD
20  E-1250 First National Bank Building
    322 Minnesota Street
21  St. Paul, MN  55101
    Phone:  (651) 287-2100
22  Fax:  (651) 287-2103

23  Martin D. Chitwood
    CHITWOOD & HARLEY
24  2900 Promenade II
    1230 Peachtree Street, N.E.
25  Atlanta, GA  30309
    Phone:  (404) 873-3900
26  Fax:  (404) 876-4476

27

28

[M-02-1486PJH] THIRD CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

Brian P. Murray
RABIN & PECKEL LLP
275 Madison Avenue
New York, NY  10016
Phone:  (212) 682-1818
Fax:  (212) 682-1892

Karl L. Cambronne
CHESTNUT & CAMBRONNE
3700 Piper Jaffrey Tower
222 South Ninth Street
Minneapolis, MN  55402
Phone:  (612) 339-7300
Fax:  (612) 336-2940

Laurence D. King
Lori E. Sambol
KAPLAN FOX & KILSHEIMER LLP
601 Montgomery Street, Suite 300
San Francisco, CA  94111
Phone:  (415) 772-4700
Fax:  (415) 772-4707

Robert N. Kaplan
Gregory K. Arenson
KAPLAN FOX & KILSHEIMER, LLP
805 Third Avenue, 22nd Floor
New York, NY  10022
Phone:  (212) 687-1980
Fax:  (212) 687-7714

Mr. Gary Specks
KAPLAN FOX & KILSHEIMER LLP
203 North LaSalle Street, Suite 2100
Chicago, IL  60601
Phone:  (312) 558-1584
Fax:  (312) 558-1585

Lawrence Walner
LAWRENCE WALNER &
    ASSOCIATES, LTD.
150 North Wacker Drive, Suite 1870
Chicago, IL  60606
Phone:  (312) 201-1616
Fax: (312) 201-1538

John Peter Zavez
ADKINS, KELSTON & ZAVEZ, P.C.
90 Canal Street, Suite 500
Boston, MA  02114
Phone:  (617) 367-1040
Fax:  (617) 742-8280

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Joseph C. Kohn
William E. Hoese
KOHN, SWIFT & GRAF, P.C.
One S. Broad Street, Suite 2100
Philadelphia, PA  19107
Phone:  (215) 238-1700
Fax:  (215) 238-1968

Gregory P. Hansel
PRETI, FLAHERTY, BELIVEAU
    PACHIOS & HALEY, LLC
One City Center
P.O. Box 9546
Portland, ME  04112
Phone:  (207) 791-3000
Fax:  (207) 791-3111

Steven D. Irwin
Patrick Sorek
LEECH, TISHMAN, FUSCALDO
    & LAMPL, LLC
1800 Frick Building
Pittsburg, PA  15219
Phone:  (412) 261-1600
Fax:  (412) 227-5551

Diane M. Nast
Michael G. Nast
RODA & NAST P.C.
801 Estelle Drive
Lancaster, PA  17601
Phone:  (717) 892-3000
Fax:  (717) 892-1200

Roger M. Schrimp
Clinton P. Walker
Gene J. Stonebarger
DAMRELL, NELSON, SCHRIMP,
    PALLIOS PACHER & SILVA
1601 "T" Street, 5th Floor
Modesto, CA  95354
Phone:  (209) 526-3500
Fax:  (209) 526-3534

Jeremiah F. Hallisey
HALLISEY & JOHNSON
300 Montgomery Street, Suite 538
San Francisco, CA  94104-1901
Phone:  (415) 433-5300
Fax:  (415) 433-5342

1    Randy Renick
  LAW OFFICES OF RANDY RENICK
2    The Marine Building
  128 N. Fair Oaks Ave., Suite 204
3    Pasadena, CA  91023
  Phone:  (626) 585-9608
4    Fax:  (626) 577-7079

5    Leonard Barrack
  Jeffrey B. Gittleman
6    BARRACK, RODOS & BACINE
  3300 Two Commerce Square
7    2001 Market Street
  Philadelphia, PA  19103
8    Phone:  (215) 963-0600
  Fax:  (215) 963-0838
9

10    Krishna B. Narine
  SCHIFFRIN & BARROWAY LLP
11    Three Bala Plaza East, Suite 400
  Bala Cynwyd, PA  19004
12    Phone:  (610) 667-7706
  Fax:  (610) 667-7056
13

14    Isacc Diel
  DIEL & SEELAM, p.c.
15    4121 W. 83rd Street, Suite 254
  Prairie Village, KS  66208
16    Phone:  (913) 383-8711
  Fax:  (913) 383-8712
17

18    Joel C. Meredith
  Steven J. Greenfogel
  MEREDITH COHEN GREENFOGEL &
19      SKIRNICK, PC
  117 S. 17th Street, 22nd Floor
20    Philadelphia, PA  19103
  Phone:  (215) 564-5182
21    Fax:  (215) 569-0958

22    Richard A. Lockridge
  LOCKRIDGE GRINDAL NAUEN P.L.L.P.
23    100 Washington Ave S.
  Minneapolis, MN 55401-2179
24    Phone: (612) 339-6900
  Fax: (612) 339-0981
25  Ram.215

26

27

28

1

**CERTIFICATE OF SERVICE**

2      I, Mary McGuire, declare under penalty of perjury that the foregoing is true and correct:

3   I am over the age of 18 years and not a party to the above-entitled cause.  I am employed in the County

4   of San Francisco; my business address is One Eleven Pine Street, Suite 1700, San Francisco, California

5   94111.

6      On June 30, 2005, I caused to be served a true and correct copy of the following document(s):

7   **THIRD CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

8   by transmission to Electronic Case Filing system for the Northern District of California  for service on

9   all counsel of record by electronic service pursuant to Order of the Court.

10      Executed in San Francisco, California this 30th day of June, 2005.

11

12   
                              Mary McGuire

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CERTIFICATE OF SERVICE