UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re DYNAMIC RANDOM ACCESS MEMORY (DRAM) ANTITRUST LITIGATION_____/ | No. C 02-1486 PJH<br><br>**ORDER GRANTING MOTIONS TO DISMISS AND DENYING JURISDICTIONAL DISCOVERY** |

This document Relates to:

Elias v. Micron et al. (C 05-475 PJH)
Weisburgh v. Micron et al. (C 05-1227 PJH)
Kongkham v. Micron et al. (C 05-2013 PJH)
Kinkade v. Micron et al. (C 05-1883 PJH)
Greene v. Elpida et al. (C 05-1884 PJH)
Microprocessor Designs v. Micron et al. (C 05-2903 PJH)
Kaplan v. Micron et al. (C 05-2907 PJH)
_____/

      Before this court are several defendants' motions to dismiss for lack of personal jurisdiction. The moving defendants include the following: Hynix Semiconductor Inc. ("HSI"); Elpida Memory, Inc. ("Elpida Japan"); Elpida Memory (USA) Inc. ("Elpida USA"); NEC Electronics Corporation ("NEC Japan"); NEC Electronics America, Inc. ("NECELAM"); Nanya Technology Corporation ("Nanya"); Winbond Electronics Corporation ("Winbond Taiwan"), and Winbond Electronics Corporation America ("WECA") (collectively "defendants"). Defendants' motions, which were individually filed, seek dismissal as to various of the underlying complaints against them.[1]

      Given the common questions of law and fact among defendants, the motions to dismiss were consolidated for briefing and hearing. The motions came on for hearing on October 19, 2005 before this court. Defendants appeared through their respective counsel,

---

[1] HSI, Nanya, and Winbond Taiwan move for dismissal in Kaplan v. Micron et al. and Kongkham v. Micron et al. (North Carolina actions). HSI, Nanya, Winbond Taiwan, and WECA move for dismissal in Greene v. Elpida et al., Kinkade v. Micron et al., and Elias v. Micron et al. (Tennessee actions). HSI, Elpida Japan, Elpida USA, NECELAM, NEC Japan, Winbond Taiwan, and WECA move for dismissal in Weisburgh v. Micron et al. and Microprocessor Designs v. Micron et al. (Vermont actions).

Steven H. Morrissett, Ian Simmons, Jonathan E. Swartz, and Howard M. Ullman.  Plaintiffs appeared through their respective counsel, Josef Cooper, and Allan Steyer.

Having read the papers and carefully considered the relevant legal authority, the court hereby rules as follows on the motions to dismiss, for the reasons stated below and for the reasons stated at the hearing:  Defendants' motions to dismiss are GRANTED, and plaintiffs' request for jurisdictional discovery is DENIED.

## BACKGROUND

Defendants are either foreign corporations, or U.S. subsidiaries of foreign corporations, all of whom engage in the manufacture and sale of dynamic random access memory (i.e., "DRAM").  Plaintiffs are indirect purchasers of DRAM residing in either North Carolina, Tennessee, or Vermont.

Plaintiffs filed the various underlying actions in these three states, alleging that defendants (along with other co-defendants not before the court on these motions) conspired to unlawfully fix prices for DRAM, in violation of state antitrust laws.  Subsequently, each of the actions was transferred to this court for consolidated pre-trial proceedings, pursuant to the multidistrict litigation ("MDL") procedures set forth in 28 U.S.C. § 1407.

Defendants now seek an order pursuant to Federal Rule of Civil Procedure 12(b)(2) dismissing the claims asserted against them for lack of personal jurisdiction.  Plaintiffs oppose the motion, and assert that they are entitled to jurisdictional discovery in any event, prior to the grant of any of defendants' motions.

## DISCUSSION

### I.   Motions to Dismiss

**A.   Legal Standard**

On a motion to dismiss the complaint for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant.  See, e.g., Harris Rutsky & Co Ins. Serv., Inc. v. Bell & Clement Ltd., 328 F.3d 1122, 1128-29 (9th Cir. 2003).  Where the court decides the jurisdictional issue on the basis of the pleadings and supporting declarations, without holding an evidentiary

2

hearing on the issue, "the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant." Doe v. Unocal, 248 F.3d 915, 922 (9th Cir. 2001). The court will resolve all disputed facts in favor of the plaintiff, and plaintiff's version of the facts is accepted as true. Id. The court need not, however, assume the truth of allegations in a pleading that is contradicted by sworn affidavit. See Data Disc, Inc. v. Systems Tech. Assoc., Inc., 557 F.2d 1280, 1289 n.5 (9th Cir. 1977).

In MDL actions such as this one, the court is entitled to exercise personal jurisdiction over each defendant only to the same degree that the original transferor court could have. See Maricopa County v. Am. Petrofina, Inc., 322 F. Supp. 467, 469 (N.D. Cal. 1971). Accordingly, this court must evaluate the nature of defendants' contacts in the relevant forum states with regard to the long-arm statutes of those states. Since North Carolina, Tennessee, and Vermont all have long-arm statutes that authorize the exercise of personal jurisdiction to the fullest extent authorized by constitutional due process, personal jurisdiction is to be assessed with regards to federal due process law. And since federal law accordingly controls, this court will look to its own circuit as the source for federal law. See, e.g., Menowitz v. Brown, 991 F.2d 36, 40 (2d Cir. 1993)("a transferee federal court should apply its interpretations of federal law, not the constructions of federal law of the transferor circuit").

With this in mind, it is well-established that federal due process requires that a non-resident defendant have sufficient minimum contacts with the forum state such that imposition of personal jurisdiction "does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 315 (1945). Furthermore, the relationship between the defendant and the forum must be such that it is "reasonable . . . to require the [defendant] to defend the particular suit which is brought there." Id. at 317.

Due process is traditionally determined under either a general or specific jurisdiction analysis. Helicopteros Nacionales de Colombia S.A. v. Hall, 466 U.S. 408, 414 (1984). Plaintiffs stated at the hearing, and defendants raised no objection, that they are proceeding before the court here only on specific jurisdiction grounds. As such, the only relevant inquiry is whether plaintiffs have made, or can make, a factual showing that warrants the exercise of

3

specific personal jurisdiction under the standards espoused by the Ninth Circuit.

### B. The Parties' Factual Showing

Accordingly, the crux of these motions comes down to the factual showing made by both parties regarding defendants' minimum contacts, and whether that showing is sufficient to confer specific jurisdiction over defendants. Defendants set forth, through numerous affidavits, their showing as to why plaintiffs cannot establish specific personal jurisdiction. Plaintiffs, in their consolidated opposition, offer up additional evidence with the aim of proving the opposite.

Taken as a whole, the factual showing as to each defendant is as follows:

    a.    <u>Hynix Semiconductor Inc. ("HSI")</u>.

HSI is a South Korean corporation with its principal place of business in South Korea. HSI is not registered to do business in, and does not own any property in, the states of North Carolina, Tennessee, or Vermont. It has not manufactured DRAM, or any other product, in any of those states, nor has it operated any offices, plants, or warehouses there. It has not delivered, distributed or sold DRAM to any customers in those states. HSI has not advertised any product or otherwise solicited business there, nor has it employed representatives or sales agents there. HSI does not maintain a shipping address, telephone listing, or bank accounts there, and has not paid income or property taxes in the those states. HSI has no designated agent for service of process there.

HSI owns substantially all shares of its subsidiary company, Hynix Semiconductor America ("HSA"). The two companies have two directors in common who serve on the board. Otherwise, the two companies are separately incorporated and direct their own day to day activities. HSI sells DRAM to HSA, a California corporation, who in turn sells DRAM to manufacturers in the United States. HSA is a registered foreign corporation in North Carolina, and one of HSA's distributors has an office in North Carolina and provides a toll-free number for manufacturers that covers North Carolina, Tennessee, and Vermont.

    b.    <u>Nanya Technology Corp. ("Nanya")</u>.

Nanya is a Taiwanese corporation with headquarters in Taiwan. Nanya has not sold or

4

contracted to sell any goods or services (including DRAM) in either North Carolina or Tennessee, nor has it advertised any goods or services there. It does not conduct or transact any business there. Nanya does not own or rent property in those states, and it has no offices, facilities, bank accounts, telephone listings, mailing addresses, or agents or employees in those states. It pays no taxes to either state, and has no designated agent for service of process there.

Nanya owns its subsidiary company, Nanya USA, although the two companies are separately incorporated and direct their own day to day activities. Nanya USA is listed as one of Nanya's worldwide sales offices on Nanya's website. Nanya sells the DRAM that it manufactures in Taiwan through Nanya USA. Nanya USA markets and distributes its DRAM product to a network of manufacturers throughout the United States. One of Nanya USA's distributors has an office in North Carolina and offices throughout the US that serve a "worldwide" region.

      c.  Elpida Memory (USA) Inc. ("Elpida USA").

Elpida USA is a Delaware corporation with its principal place of business in Santa Clara, California. Elpida USA sells DRAM to manufacturers in selected states within the United States. Elpida USA has never sold DRAM or any other products or services to Vermont residents, nor has it ever regularly transacted or solicited any business in Vermont, or derived substantial revenue from the sale of any goods or services in Vermont. It has never employed anyone in the state. Elpida USA does not maintain telephone listings, mailing addresses, or bank accounts in Vermont, nor does it own, lease, or possess any property there. It is not licensed or authorized to do business in the state, and has no registered agent for service of process there.

Elpida USA is a subsidiary of Elpida Japan. The two are separate and distinct entities, with independent control over their day to day activities.

      d.  Elpida Memory Inc. ("Elpida Japan").

Elpida Japan is a Japanese corporation with its principal place of business in Tokyo. It manufactures DRAM. It has never sold DRAM or any other products or services to Vermont

5

residents, it has never transacted or solicited business in Vermont, and it has never received any revenue from goods used or consumed in Vermont. Elpida Japan has never directed any advertising or marketing efforts to Vermont residents. It does not own, lease, or possess any property in the state of Vermont, nor does it maintain telephone listings, mailing addresses, or bank accounts there. Elpida Japan pays no taxes to the state of Vermont, is not licensed or authorized to do business there, and has no registered agent for service of process.

Elpida Japan owns Elpida USA, though the two are separate and distinct entities, with independent control over their day to day activities.

e.   NEC Electronics America, Inc. ("NECELAM").

NECELAM is a California corporation with its headquarters and principal place of business in California. NECELAM has never sold DRAM to any Vermont residents, nor has it sold any goods or services at all to Vermont residents since 1999. It has not transacted or solicited any significant business in Vermont, nor derived substantial revenue from the sale of goods or services in Vermont since 1999. It does not own, lease, or possess any property in the state of Vermont, and has never paid any taxes there. It does not maintain telephone listings, mailing addresses, or bank accounts there. NECELAM has never employed anyone in Vermont, is not licensed or authorized to do business there, and does not maintain any registered agent there for the service of process.

NECELAM is a wholly owned subsidiary of NEC Japan. NECELAM has an extensive sales, representative, and distributor network that serves customers throughout the United States. Any customer from anywhere in the United States can purchase electronic components from NECELAM online, although DRAM itself is not available for sale online, and no online sales of any product have ever been made by NECELAM to Vermont residents.

f.   NEC Electronics Corp. ("NEC Japan").

NEC Japan is a Japanese corporation with headquarters and principal place of business in Kanagawa, Japan. It was formed on November 1, 2002. It does not own, lease, or possess any property in the state of Vermont, does not regularly transact or solicit substantial business with the state of Vermont, and does not maintain any registered agent for

6

the service of process there.

           g.      <u>Winbond Electronics Corp. ("Winbond Taiwan")</u>.

Winbond Taiwan is a Taiwanese corporation with headquarters in Hsinchu, Taiwan. It manufactures and sells DRAM in Taiwan. It conducts no business in North Carolina, Tennessee, or Vermont, and has never received any revenue from any of the three states. It does not make any products using DRAM there nor does it receive any income from sales of DRAM products in North Carolina, Tennessee, or Vermont. Winbond Taiwan has no business license, employees, sales representatives, or agents in those states, nor does it have any property there. It maintains no addresses, telephone numbers, or physical presence of any sort in those states. It has never contracted for any goods or services there, has never paid taxes there, and conducts no advertising or marketing there.

Winbond Taiwan sells the DRAM it makes in Taiwan to its subsidiary and sole US distributor, Winbond Electronics Corp. America ("WECA"). Both companies share two directors on their respective boards.

WECA, a Delaware corporation, in turn markets and sells Winbond Taiwan's DRAM to others in the United States.

           h.      <u>Winbond Electronics Corp. America ("WECA")</u>.

WECA is a Delaware corporation, with its headquarters in San Jose, California. WECA conducts no business at all in the states of Tennessee and Vermont, and has sold no DRAM in those states from 1999 to the present. It does not sell any products or services there or obtain products or services there, and it has no business license or employees in those states. WECA maintains no addresses, telephone numbers, or physical presence of any sort there, and has never paid taxes there. WECA maintains a passive internet site, but conducts no business through the internet with any Tennessee or Vermont residents. WECA does not conduct advertising or marketing for sales of any product in Tennessee and Vermont, and receives no revenue from either state.

WECA is a wholly owned subsidiary of Winbond Taiwan. WECA and Winbond Taiwan share two directors on their respective boards. Otherwise, the two companies are separate

7

1  entities that maintain their own books and day to day activities.

2  WECA has distributors that in turn service Vermont and Tennessee.

**C.   Legal Analysis**

Plaintiffs contend that the above showing sufficiently establishes specific jurisdiction. The Ninth Circuit applies a three-part test to determine whether a defendant's activities are sufficiently related to the forum state to establish specific jurisdiction: (1) whether the defendant purposefully availed itself of the privileges of conducting activities within the forum state; (2) whether the underlying claims arise out of or result from the defendant's forum-related conduct; and (3) whether the exercise of personal jurisdiction would be reasonable. See Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co., 284 F.3d 1114, 1123 (9th Cir. 2002).

**1.   Purposeful Availment**

Even a cursory review of the facts here demonstrates that insufficient minimum contacts exist to satisfy the "purposeful availment" element of the Ninth Circuit test. This is because, in view of defendants' affidavits and declarations (which plaintiffs fail to controvert), plaintiffs can make no showing that defendants have "performed [any] type of affirmative conduct which allows or promotes the transaction of business within the forum state[s]." Doe v. Unocal Corp., 248 F.3d 915, 924 (9th Cir. 2001). Indeed, defendants' affidavits and declarations affirmatively establish the opposite, and prove that defendants have never availed themselves of the privileges of doing business in any of the foreign states.

Despite this, plaintiffs argue that purposeful availment can be shown under (1) the effects test, (2) the stream of commerce theory, (3) the agency test, and (4) the conspiracy theory doctrine. For the reasons explained below, plaintiffs' argument fails as to each.

a.   The Effects Test

Plaintiffs argue that minimum contacts are satisfied here – even though defendants have no physical contact with the forum states – under the 'effects' test, first enunciated by the U.S. Supreme Court in Calder v. Jones. See 465 U.S. 783 (1984). Specifically, plaintiffs argue that under Calder, defendants' alleged intentional participation in the underlying price-

8

fixing conspiracy constitutes a foreign act that is both aimed at and has effect in the forum states, such that the purposeful availment prong is satisfied. See generally id.

Under the Ninth Circuit's interpretation of Calder, a defendant meets the 'effects' test if (1) the defendant has committed an intentional act, which is (2) expressly aimed at the forum state, and (3) causes harm, the brunt of which is suffered and which the defendant knows is likely to be suffered in the forum state. See Bancroft & Masters, Inc. v. Augusta Nat. Inc., 223 F.3d 1082, 1087 (9th Cir. 2000). With respect to the "express aiming" requirement in particular, the Ninth Circuit has held that it is satisfied only when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state. Id.

This test is not satisfied here. Although plaintiffs allege that defendants have committed an intentional act by way of their participation in a price-fixing conspiracy, plaintiffs fail to allege that defendants' conspiratorial acts were individually targeted towards any plaintiff *whom defendants knew to be residents of* North Carolina, Tennessee, or Vermont. Nor can plaintiffs do so, given the uncontroverted testimony offered by defendants demonstrating that they have never manufactured nor sold any DRAM in any of the forum states, nor do they maintain any business or corporate formalities in the forum states, nor do they receive any substantial revenue from the sale of DRAM (or any other products) in the forum states. In short, nothing exists here that can establish the wrongful targeting of a known forum resident, as required by Ninth Circuit law. See also Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 419-420 (9th Cir. 1997)(describing similar fact pattern and holding no personal jurisdiction exists under effects test).

Accordingly, jurisdiction cannot be conferred under the effects test.

          b.      <u>Stream of Commerce</u>

Plaintiffs next try to prove purposeful availment through the stream of commerce theory. Under this theory, a nonresident defendant's placement of a product into the stream of commerce, with the expectation that the product will end up in the forum state (and the product does injury in the forum state), suffices to establish purposeful availment for purposes of the

9

jurisdictional analysis. See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286 (1980); Asahi Metal Indus. Co., Ltd. v. Superior Court, 480 U.S. 102, 112 (1987) (plurality opinion).

Mere placement into the stream of commerce, however, is not enough. In Asahi, the Supreme Court held that additional conduct on the defendant's part indicating an intent or purpose to serve the market in the forum state, was required to establish personal jurisdiction. Asahi, 480 U.S. at 112-13. While Asahi was a plurality opinion, the Ninth Circuit has since adopted similar reasoning, and held that defendant must have actually known that a given product would reach a forum state, before the stream of commerce theory will support an exercise of jurisdiction. See, e.g., Terracom v. Valley Nat'l. Bank, 49 F.3d 555, 560-61 (9th Cir. 1995).

Here, plaintiffs' failure to offer any evidence that defendants knew that DRAM products related to them would reach the forum states prohibits application of the stream of commerce theory. The best plaintiffs offer up in their opposition are several website pages that indicate a general intent to serve the United States market, or at the very most indicate the presence of *third party* connections to the forum states. This is plainly insufficient to overcome defendants' sworn testimony, which (1) demonstrates only the barest of contacts with the forum states at issue, and (2) expressly disclaims any and all attempts to market, advertise, or sell any DRAM product to the forum states.

Accordingly, no purposeful availment can be found based on stream of commerce.

        c.      Agency Test

Next, plaintiffs argue that purposeful availment, and therefore personal jurisdiction, may be found upon closer look at the parent/subsidiary relationships that the defendants have. Specifically, plaintiffs argue that the foreign parent defendants (all except for WECA, NECELAM, and Elpida USA, who are the American subsidiary defendants) use their subsidiaries as agents, such that the subsidiary agent's minimum contacts may be imputed to the foreign parent defendants, and personal jurisdiction may be exercised under the agency theory of jurisdiction.

Preliminarily, the court notes that this argument presupposes that the subsidiary defendants have sufficient minimum contacts with the forum states, such that those contacts may confer jurisdiction. As described here and elsewhere in this order, however, this is simply not the case, particularly in view of defendants' uncontroverted factual showing. Nonetheless, even considering the merits of the agency test as plaintiffs purport to apply it here, plaintiffs argument fails as described below.

The Ninth Circuit has held that the agency test is satisfied by a showing that the subsidiary functions as the parent corporation's representative in that it performs services that are "sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services." Doe v. Unocal Corp., 248 F.3d at 928. The essence of this inquiry is whether, "in the truest sense, the subsidiaries' presence substitutes for the presence of the parent" in the forum state. Id. at 929. At an "irreducible minimum," the subsidiary must "perform some service or engage in some meaningful activity in the forum state on behalf of its principal." Id. at 930.

That cannot be said here. None of plaintiffs' evidence is sufficient to refute defendants' sworn testimony demonstrating that each foreign parent defendant who maintains an American subsidiary also maintains an independent and separate existence, controls its own day to day activities, controls its own books, and maintains its own revenues.

Indeed, the only real evidence plaintiffs point to for support is the fact that both HSI and HSA have two directors that overlap on their boards, as do Winbond Taiwan and WECA. But a mere overlap in directors is insufficient as a matter of law to prove the type of parental control that approximates physical presence in the forum state. See Doe, 248 F.3d at 926. As for the rest of plaintiffs' purported proof, it consists only of vague references on the foreign parent corporations' websites, in which they allude to the generalized duties of their American subsidiaries (e.g., WECA is responsible for marketing and selling all Winbond products in the U.S., and Elpida USA is referred to as one of Elpida Japan's "sales and marketing operations"). This generalized proof is not enough to overcome defendants' sworn testimony

11

1 that none of the parent/subsidiary relationships among the defendants should be viewed
2 through the agency prism.

3     Accordingly, specific jurisdiction may not be premised on agency.

    d.  <u>Conspiracy Theory Doctrine</u>

Finally, plaintiffs attempt to establish purposeful availment by way of the conspiracy theory doctrine. Specifically, plaintiffs argue that the allegedly criminal acts of defendants' alleged co-conspirators (co-defendants in the underlying actions) in the forum states are sufficient to impute jurisdiction to defendants in the forum states.

The conspiracy theory doctrine is not a generally accepted theory. There is a split among circuits between those who have adopted it as a valid means of invoking personal jurisdiction, and those who have rejected it. The Ninth Circuit has not directly ruled on the merits of the theory, though it considered it fairly recently, in <u>Underwager v. Channel 9 Australia</u>, 69 F.3d 361, 364 (9th Cir. 1995). <u>Underwager</u>, however, is of limited value, as the Ninth Circuit refused to reach the merits of the conspiracy theory, since no conspiracy allegations had been made. Nonetheless, consideration of Ninth Circuit district court case law argues in favor of rejecting this theory of jurisdiction. <u>See, e.g., Kipperman v. McCone</u>, 422 F. Supp. 860, 873 n.14 (N.D. Cal. 1976) ("[P]ersonal jurisdiction over any non-resident individual must be premised upon forum-related acts personally committed by the individual. Imputed conduct is a connection too tenuous to warrant the exercise of personal jurisdiction."). Moreover, it is at least somewhat persuasive that in <u>Piedmont Label Co. v. Sun Garden Packing Co.</u>, 598 F.2d 491, 492 (9th Cir. 1979), the Ninth Circuit rejected an analogous conspiracy theory to establish venue.

Accordingly, the court declines plaintiffs' invitation to adopt the conspiracy theory of personal jurisdiction. Furthermore, not only does the court believe that precedent warrants its rejection, but plaintiffs' conspiracy allegations are insufficient in that they are wholly conclusory. As defendants pointed out in their papers and at the hearing, plaintiffs' allegations in the underlying actions are overly generalized and make almost no reference to specific or individualized allegations of participation in the conspiracy on the part of <u>these</u> defendants.

Accordingly, no personal jurisdiction exists based on plaintiffs' conspiracy allegations.

### 2. Arise out of, Relate to

Given that plaintiffs have failed to make a prima facie showing that any minimum contacts exist – under any theory – it is not possible for plaintiffs to satisfy the second requirement for specific jurisdiction; there is no claim that can arise out of, or relate to, non-existent contacts with the forum states at issue. See, e.g., Glencore Grain, 284 F.3d at 1123.

### 3. Reasonableness

The court need not consider this final requirement, given plaintiffs' failure to establish the first two requirements for specific jurisdiction. Even if it did, however, the court would find that the exercise of jurisdiction over defendants here would be unreasonable. Given the lack of defendants' minimum contacts with the forum states, the majority of defendants' status as foreign corporations (and the corresponding hardship to defendants in litigating the underlying actions), and the continuation of the underlying suit as to all other defendants in the underlying cases, the balance of factors weighs in favor of a finding that personal jurisdiction is not reasonable in this instance. See, e.g., CE Distribution, LLC v. New Sensor Corp., 380 F.3d 1107, 1112 (9th Cir. 2004)(setting forth factors to be considered in assessing reasonableness).

Accordingly, and for all the reasons enumerated above, the court finds that personal jurisdiction cannot be asserted over the moving defendants.

## II.   Jurisdictional Discovery

### A. Legal Standard

The court has discretion to order jurisdictional discovery. Jurisdictional discovery "should be granted where pertinent facts bearing on the question of jurisdiction are controverted . . . or where a more satisfactory showing of the facts is necessary." Wells Fargo & Co 13. v. Wells Fargo Express Co., 556 F.2d 406, 430 n. 24 (9th Cir. 1977). Where, however, a plaintiff's claim of personal jurisdiction appears to be "attenuated and based on bare allegations in the face of specific denials made by defendants," the court need not permit even limited discovery. See Terracom v. Valley Nat'l Bank, 49 F.3d at 562.

13

**B.    Legal Analysis**

Plaintiffs argue that they are entitled to jurisdictional discovery as a matter of course prior to the grant of defendants' motions to dismiss. Specifically, plaintiffs argued at the hearing that they are entitled to test the credibility of defendants' declarants and affiants, in order to determine whether jurisdictional facts exist. Defendants, for their part, argue that jurisdictional discovery is not to be had for the taking. Rather, plaintiffs must first make some showing as to the facts that plaintiff expects to uncover through jurisdictional discovery – something that plaintiffs have not done here.

Defendants are correct. Where, as here, plaintiffs have made no showing that any sworn testimony presented by defendants is disputed, and have not pointed out the existence of any facts that, if shown, would warrant the exercise of personal jurisdiction, the court is within its discretion to deny discovery. See, e.g., Terracom v. Valley Nat'l Bank, 49 F.3d at 562. This court does so now.

Rutsky & Co. Insurance Services v. Bell & Clements, cited by plaintiffs at the hearing on defendants' motions, does not change this result. See 328 F.3d 1122 (9th Cir. 2003). In Rutsky, although the appellate court reversed the district court's denial of jurisdictional discovery, it did so because the record was not sufficiently developed to enable the court to determine whether a jurisdictional basis was met. That is not the case here.

**CONCLUSION**

For the reasons set forth above, the court hereby GRANTS defendants' motions to dismiss plaintiffs' complaints as follows:

1.  HSI, Nanya, and Winbond Taiwan's motions to dismiss, as filed in Kaplan v. Micron et al., Case No. C 05-2907 PJH, and Kongkham v. Micron et al., Case No. C 05-2013 PJH, are GRANTED. Plaintiffs' complaints are dismissed with prejudice as to these defendants.

2.  HSI, Nanya, Winbond Taiwan, and WECA's motions to dismiss, as filed in Greene v. Elpida et al., Case No. C 05-1884 PJH, Kinkade v. Micron et al., Case No. C 05-1883 PJH, and Elias v. Micron et al., Case No. C 05-475 PJH, are

14

1  GRANTED. Plaintiffs' complaints are dismissed with prejudice as to these
2  defendants.
3  3. HSI, Elpida Japan, Elpida USA, NECELAM, NEC Japan, Winbond Taiwan, and
4  WECA's motions to dismiss, as filed in <u>Weisburgh v. Micron et al</u>., Case No. C
5  05-1227 PJH, and <u>Microprocessor Designs v. Micron et al</u>., Case No. C 05-2903
6  PJH, are GRANTED. Plaintiffs' complaints are dismissed with prejudice as to
7  these defendants.
8  Plaintiffs' request for jurisdictional discovery is DENIED.

**IT IS SO ORDERED.**

Dated: November 7, 2005

_____
PHYLLIS J. HAMILTON
United States District Judge