SHEPPARD MULLIN RICHTER & HAMPTON LLP
  A Limited Liability partnership
  Including Professional Corporations
Gary L. Halling, Cal. Bar No. 66087
James L. McGinnis, Cal. Bar No. 95788
Thomas D. Nevins, Cal. Bar No. 111874
Four Embarcadero Center, 17th Floor
San Francisco, CA  94111-4106
Telephone:  (415) 434-9100
Facsimile:  (415) 434-3947
ghalling@sheppardmullin.com
jmcginnis@sheppardmullin.com
tnevins@sheppardmullin.com

Attorneys for Defendants
SAMSUNG ELECTRONICS COMPANY, LTD.
and SAMSUNG SEMICONDUCTOR, INC.

and On Behalf of All Served Defendants

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| In re Dynamic Random Access Memory (DRAM) Antitrust Litigation | Case No. M-02-1486-PJH<br>MDL No. 1486<br><br>**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS CENTERPRISE COMPLAINT**<br><br>Date:  January 25, 2006<br>Time:  9:00 a.m.<br>Courtroom:  3, 17th Floor<br>Judge:  Hon. Phyllis J. Hamilton |
|---|---|
| THIS DOCUMENT RELATES TO:<br><br>Civil Action No. 05-3026,<br>Centerprise Int'l Ltd. | |

# TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION ................................................................................................................1

II. ARGUMENT .....................................................................................................................3

    A. Centerprise's Claims Fail Because Its Alleged Injury Was Not Caused By Any Allegedly Anticompetitive Effects In the United States. ...................3

    B. Centerprise Lacks Standing Because Any Alleged Injury Does Not Arise From Participation In A Market Within the United States And Is Too Remote. ...............................................................................................................7

    C. Amendment Of The Complaint Would Be Futile. ............................................8

III. CONCLUSION ...................................................................................................................9

# TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

American Ad Management, Inc. v. General Telephone Co. of California,
 190 F.3d 1051 (9th Cir. 1999) .................................................................................8

Associated General Contractors of California, Inc. v.
 California State Council of Carpenters,
 459 U.S. 519 (1983) .............................................................................................2, 7

de Atucha v. Commodity Exchange, Inc.,
 608 F. Supp. 510 (S.D.N.Y. 1985) ..........................................................................8

Den Norske Stats Oljeselskap AS v. Heeremac VOF,
 241 F.3d 420 (5th Cir. 2001), *cert. denied*, 534 U.S. 1127 (2002) ...................5, 8

Empagran S.A. v. F. Hoffman-LaRoche, Ltd.,
 417 F.3d 1267 (D.C. Cir. 2005) ....................................................................1, 3, 4, 6

F. Hoffman-LaRoche, Ltd. v. Empagran S.A.,
 542 U.S. 155 (2004) .........................................................................................1, 3, 6, 7

Galavan Supplements, Ltd. v. Archer Daniels Midland Co.,
 1997 WL 732498 (N.D. Cal. 1997) .........................................................................8

Matsushita Elec. Ind. Co. v. Zenith Radio Corp.,
 475 U.S. 574 (1986) .................................................................................................3

In re Microsoft Corp. Antitrust Litigation,
 127 F. Supp. 2d 702 (D. Md. 2001) .........................................................................3

In re Monosodium Glutamate Antitrust Litig.,
 2005 WL 2810682 (D. Minn. 2005) .........................................................................5

Papst Mortoren GMbH & Co. KG v. Kanematsu-Goshu (U.S.A.), Inc.,
 629 F. Supp. 864 (S.D.N.Y. 1986) ...........................................................................7

Pfizer, Inc. v. Gov't of India,
 434 U.S. 308 (1978) ..............................................................................................3, 4

United Phosphorous, Ltd. v. Angus Chemical Co.,
 131 F. Supp. 2d 1003 (N.D. Ill. 2001) .....................................................................6

### FEDERAL STATUTE

15 U.S.C. §6a(2) .................................................................................................................3

### LEGISLATIVE HISTORY

H.R. Rep. No. 97-686, 97th Cong., 2d Sess. (1982), 1982 WL. 25066 ......................1, 4

-iii-

| | BRIEF |
|---|---|
| | United Kingdom Amicus Brief, 2004 WL 226597 .................................................................2 |

# I.

# INTRODUCTION

Centerprise's opposition confirms, as defendants asserted in their opening memorandum, that Centerprise's theory is that "Defendants' knew that they could not maintain price increases or market allocations in one area (such as the United States or Taiwan) unless they did the same in another." *E.g.*, Plaintiff's Opposition ("Pltf's Opp.") at 2. While Centerprise argues that United States prices were the "source" for worldwide prices, the only explanation for this theory is that increasing prices in the United States was necessary to facilitate price fixing for sales outside the United States. This is precisely the "arbitrage" type theory of causation that was rejected as insufficient to establish subject matter jurisdiction in *Empagran S.A. v. F. Hoffman-LaRoche, Ltd.*, 417 F.3d 1267, 1270-71 (D.C. Cir. 2005) ("*Empagran II*"). In *Empagran II*, the court rejected Centerprise's theory that jurisdiction is proper when allegedly artificially high prices in the United States were assertedly necessary to the implementation of price fixing that injured plaintiff in foreign commerce. 417 F.3d at 1271 (rejecting argument "that the U.S. effects of the [defendants'] conduct – i.e., increased prices in the United States – proximately caused the foreign [plaintiffs'] injuries").

*Empagran II* sets forth the test under the FTAIA as follows: A foreign plaintiff must show that its injuries arose directly from anticompetitive effects in the United States marketplace. *Id.* at 1269. That test, which can be applied "simply and expeditiously" as intended by Congress (H.R. Rep. No. 97-686, 97th Cong., 2d Sess. 2 (1982), 1982 WL 25066, *2), necessarily precludes jurisdiction over Centerprise's claim for an asserted injury that admittedly arose overseas from its participation in foreign markets.

Principles of comity, stressed by the Supreme Court in *F. Hoffman-LaRoche, Ltd. v. Empagran S.A.*, 542 U.S. 155 (2004) ("*Empagran I*"), would be overridden were plaintiff's theory to be accepted. It would allow virtually any foreign purchaser to sue for an injury suffered in a foreign country as long as the price-fixed products were also sold in

-1-

the United States. Due to the interdependency of markets and prices in a global economy, and the prominent role of the United States economy, almost any rise in prices in the United States could theoretically have some effect on prices in other markets around the world.

So vast an expansion of the Sherman Act's application would not only contravene the FTAIA, it would also intrude on the enforcement roles of other governments. Plaintiff alleges that it is a United Kingdom ("U.K.") corporation. The U.K., in its amicus brief in *Empagran I*, flatly opposed the type of claim that Centerprise seeks to bring. Discussing private antitrust cases, such as this, "where foreign claimants seek to recover from foreign defendants solely for foreign injuries not incurred in the country in which the private suit is filed," the U.K.'s position was as follows:

> Such litigation contravenes basic principles of international law and may impede trade and investment as well as undermine public enforcement by the Governments of their competition laws. It also would interfere with a sovereign nation's right to regulate conduct within its territory.

U.K. amicus brief, 2004 WL 226597 at *2. Comity, therefore, also counsels against the expansive interpretation of the FTAIA that plaintiff seeks.

Finally, in its unsuccessful attempt to satisfy the requirements for jurisdiction under the FTAIA, Centerprise must argue that its alleged injuries were not caused directly by alleged price fixing in the U.S., but only indirectly because they were the "source" of and facilitated price increases in foreign markets. This makes its asserted injuries too remote from and indirectly connected to the alleged violations of United States law through alleged price fixing in the United States market, thereby depriving it of standing under *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519 (1983) ("*AGC*"). Either way, Centerprise's lawsuit must be dismissed.

/ /

/ /

## II.

## ARGUMENT

A. Centerprise's Claims Fail Because Its Alleged Injury Was Not Caused By Any Allegedly Anticompetitive Effects In the United States.

Centerprise's opposition memorandum admits, as defendants set forth in their opening memorandum, that Centerprise cannot claim an injury arising directly from any alleged injury to competition within the United States. Centerprise has alleged no involvement in the United States marketplace. It transacted business abroad, took title abroad, and has alleged that it suffered injury abroad. Centerprise therefore cannot satisfy the FTAIA's requirement that a foreign plaintiff must "demonstrate therefore that the U.S. effects of the appellees' allegedly anti-competitive conduct 'gave rise to' their claims." *Empagran II*, 417 F.3d at 1269, *citing* 15 U.S.C. §6a(2); *Empagran I*, 542 U.S. at 165 (antitrust laws "reflect a legislative effort to redress *domestic* antitrust injury that foreign anticompetitive conduct has caused." (Court's emphasis)); *accord Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 582 n. 6 (1986) ("The Sherman Act does reach conduct outside our borders, but only when the conduct has an effect on American commerce").

Centerprise does not allege that it suffered from any asserted effects felt in the United States economy. Instead, its claim asserts an injury that arose entirely in a foreign marketplace, and so cannot be maintained here under the United States antitrust laws. *In re Microsoft Corp. Antitrust Litigation*, 127 F.Supp.2d 702, 715 (D. Md. 2001) (rejecting argument "that jurisdiction exists if the plaintiff actually makes a purchase abroad and does not otherwise participate in the U.S. market").

Plaintiff relies heavily on *Pfizer, Inc. v. Gov't of India*, 434 U.S. 308 (1978). However, *Pfizer* is consistent with the test mandated by the FTAIA. The *Pfizer* plaintiff asserted that it was injured by anticompetitive conduct *during its participation in the United States, not a foreign, marketplace. Id.* at 315, 318 ("When a foreign nation enters

-3-

our commercial markets as a purchaser of goods or services, it can be victimized by anticompetitive practices just as surely as a private person or a domestic State"); H.R. Rep. No. 97-686, 1982 WL 25066, at *10 (citing *Pfizer* for proposition that "[f]oreign purchasers should enjoy the protection of our antitrust laws in the *domestic* marketplace" [Emphasis added]).[1] Centerprise does not and cannot allege that it transacted business in commercial markets of the United States, and so *Pfizer* does not support jurisdiction over its claim. Centerprise's allegations of a global conspiracy, with foreign injury dependent on the existence of an asserted conspiracy that also injured commerce in the United States, do not establish an injury caused by domestic effects, as required for jurisdiction by the FTAIA. *E.g.*, Complaint ¶ 76.

It is mere wordplay for plaintiff to assert that United States prices were used as the "source" of foreign prices. Plaintiff's Opposition and the Complaint itself make clear that its "source of" theory is identical to the "arbitrage" theory rejected in *Empagran II*: allegedly inflated prices in the United States were necessary to facilitate higher, inflated prices abroad. *Compare*, *Empagran II*, 417 F.3d at 1271 (FTAIA precluded foreign purchaser's claim asserting that fixing of prices in the United States made price fixing abroad possible); and Pltf's Opp. at 2 ("Defendants knew that they could not maintain price increases or market allocations in one area (such as the United States or Taiwan) unless they did the same in another") and Complaint ¶ 76 ("Defendants used these supra-competitive prices of DRAM in the United States to raise prices worldwide and to maintain their international price fixing arrangement").

The Complaint allegations Centerprise quotes at pages 8 and 9 of its Opposition as explaining its causation theory likewise are indistinguishable from the

---

[1] *Pfizer*, of course, did not construe the FTAIA, and held "only that a foreign nation otherwise entitled to sue in our courts is entitled to sue for treble damages under the antitrust laws to the same extent as any other plaintiff." 434 U.S. at 320. The Court dealt only with an issue of statutory interpretation: whether a foreign government plaintiff was a "person" within the meaning of section 4 of the Clayton Act. *Id.* at 309-12.

-4-

1  theory of causation rejected in *Empagran II*, 417 F.3d at 1270-71.  Pltf's Opp. at 8-9
2  (*quoting* Complaint ¶¶ 74, 76 and 77).  Paragraph 74 of the Complaint, for example,
3  alleges:

> Plaintiff and class members sought to purchase DRAM at the best available price from suppliers around the world, including in the United States.  The international conspiracy included . . . the deliberate fixing of prices in the United States to extract cartel profits from plaintiff and class members abroad to prevent these purchasers from buying DRAM at the best price either in the United States or elsewhere.

*See also*, Complaint ¶ 76 ("Without these supra-competitive prices for DRAM in the United States, plaintiff and class members located outside of the United States would not have paid artificially inflated prices"); ¶ 77 ("Plaintiff and Class members were injured in that they paid more for DRAM than they otherwise would have paid in the absence of the unlawful conduct of Defendants and were precluded from buying products from or selling products in the United States and the worldwide market at competitive prices").

Centerprise importunes the Court to refuse to follow the proximate cause test of *Empagran II*, but *Empagran II* does not stand alone in requiring that a foreign plaintiff establish that its injury was caused by the effect on domestic commerce.  *E.g., Den Norske Stats Oljeselskap AS v. Heeremac VOF*, 241 F.3d 420, 427 (5th Cir. 2001) (Sherman Act claims of plaintiff alleging global conspiracy, affecting both the North Sea and the United States, dismissed where plaintiff conducted business exclusively in the North Sea: "the effect on United States commerce . . . must give rise to the claim that [plaintiff] asserts"), *cert. denied*, 534 U.S. 1127 (2002); *In re Monosodium Glutamate Antitrust Litig.*, 2005 WL 2810682, *3 (D. Minn. 2005) ("The global price-fixing cartel theory establishes only an indirect relationship between United States prices and the prices paid in foreign markets. . . .  Plaintiffs are unable to show that the domestic effect proximately caused their injuries").

The holding of *Empagran II* was compelled by the focus on domestic antitrust injury in *Empagran I*, where the Court stated that allegations of a single, worldwide conspiracy did not suffice to confer jurisdiction:

> The price-fixing conduct significantly and adversely affects both customers outside of the United States and customers within the United States, but the adverse foreign effect is independent of any adverse domestic effect. In these circumstances, we find the FTAIA exception does not apply (and thus the Sherman Act does not apply) . . . .

*Empagran I*, 542 U.S. at 164. Plaintiff's bare allegations of interrelated markets, therefore, are not sufficient under both *Empagran I* and *II*. *Empagran II*, 417 F.3d at 1271 (foreseeability of effects on foreign commerce "does not establish that 'U.S. effects' proximately caused the [plaintiffs'] harm").

Plaintiff asserts that its claim should be permitted to proceed because it would promote deterrence of antitrust violations, and because the importance of the antitrust laws supports jurisdiction over injury suffered abroad by a foreign plaintiff. However, the Supreme Court questioned whether allowing suits such as this one would on balance increase, or decrease deterrence of anticompetitive conduct. *See Empagran I*, 542 U.S. at 167-69, 174 (citing "important experience-backed" concerns of foreign enforcement agency *amici* that redress of foreign-caused, foreign anticompetitive injury in United States courts would hinder foreign antitrust enforcement). In addition, deterrence and subject matter jurisdiction are separate inquiries. Deterrence considerations cannot be addressed unless subject matter jurisdiction is established.

Moreover, nothing in the FTAIA or its legislative history suggests that Congress intended to broaden Sherman Act subject matter jurisdiction through the FTAIA so as to increase deterrence. *See Empagran I*, 542 U.S. at 169 ("the FTAIA's language and history suggest that Congress designed the FTAIA to clarify, perhaps to limit, but not *to expand* in any significant way, the Sherman Act's scope as applied to foreign commerce") (Court's emphasis).[2]

---

[2] Plaintiff mentions that it purportedly sold in the United States computers that incorporated DRAM that Centerprise purchased overseas. Such an asserted injury is too remote to support the proximate causation essential for jurisdiction, and so it has been repeatedly rejected based on the FTAIA. *E.g., United Phosphorous, Ltd.*

Nor can the importance of the antitrust laws justify United States jurisdiction over Centerprise's claim. The Supreme Court has expressly rejected using the antitrust laws' purposes to justify the intrusion of such laws into wholly foreign transactions:

> Congress might have hoped that America's antitrust laws . . . would commend themselves to other nations as well. But, if America's antitrust policies could not win their own way . . ., Congress, we must assume, would not have tried to impose them, in an act of legal imperialism, through legislative fiat.

*Empagran I*, 542 U.S. at 169.

### B. Centerprise Lacks Standing Because Any Alleged Injury Does Not Arise From Participation In A Market Within the United States And Is Too Remote.

Centerprise's complaint should be dismissed for the additional reason that plaintiff also lacks antitrust standing under *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519 (1983) ("*AGC*"). It is not enough for plaintiff to assert that it has standing due to its claimed status as a direct purchaser of DRAM from defendants overseas, which plaintiff advances as a panacea on the standing issue despite its absence of ties to the United States marketplace. Pltf. Memo. at 17-20. Plaintiff must establish standing to sue for violations of United States antitrust law, *i.e*, fixing of prices in the United States market. As shown above, the Sherman Act is not intended to reach conduct occurring wholly in foreign commerce, even if such conduct would be actionable had it taken place here.

In its attempt to establish jurisdiction under the FTAIA, plaintiff repeatedly argues that its purported injury flows from the fact that United States prices are the "source

---

*v. Angus Chemical Co.*, 131 F.Supp.2d 1003, 1014 (N.D. Ill. 2001) ("The FTAIA explicitly bars antitrust actions alleging that restraints in foreign markets for inputs . . . that are used abroad to manufacture downstream products . . . that may later be imported into the United States"); *Papst Mortoren GMbH & Co. KG v. Kanematsu-Goshu (U.S.A.), Inc.*, 629 F.Supp. 864, 869 (S.D.N.Y. 1986) (plaintiff's later sale of products in the United States not sufficient because "jurisdiction over Sherman Act claims 'is not supported by every conceivable repercussion of the action objected to on United States commerce'" [Citation omitted]).

-7-

of" prices abroad, because increased US prices are necessary to facilitate foreign price increases. Complaint, ¶¶ 74, 76, 77. While this is not sufficient to establish jurisdiction for these foreign purchases, it also establishes that the only alleged connection of plaintiff's foreign injury to the alleged violations of United States antitrust law in the U.S. market are too indirect, remote and consequential to satisfy *AGC*, resting as it does on an alleged diminution of competition in foreign markets. Further, a foreign plaintiff assertedly injured outside of the United States may not assert a claim based on the domestic injury allegedly suffered by someone else.

*American Ad Management, Inc. v. General Telephone Co. of California*, 190 F.3d 1051 (9th Cir. 1999), provides no support for Centerprise's assertion that it has standing. The plaintiff there was a participant, as a sales agent, in a domestic market that allegedly had suffered a restraint of trade. Centerprise concededly cannot assert that it suffered injury in a domestic United States market in which competition allegedly was injured. *American Ad Management. Id.* at 1057 ("Antitrust injury requires the plaintiff to have suffered its injury in the market where competition is being restrained"). Here, plaintiff cannot be a participant in a market subject to the Sherman Act because the Sherman Act does not reach "an individual who traded, and was injured entirely outside of United States commerce." *Galavan Supplements, Ltd. v. Archer Daniels Midland Co.*, 1997 WL 732498, at *4 (N.D. Cal. 1997), *quoting de Atucha v. Commodity Exchange, Inc.*, 608 F.Supp. 510, 518 (S.D.N.Y. 1985) (conspiracy's effect on silver prices on United States exchange did not "give rise" to plaintiff's injury on London exchange).

C.  Amendment Of The Complaint Would Be Futile.

There is no point in permitting Centerprise leave to amend. Such an amendment would be futile. Plaintiff has only offered to allege in more detail that the prices it paid abroad assertedly bore a relationship to United States prices. Pltf's Opp. at 20-21. Such allegations could not cure the defect that is fatal to plaintiff's claim: Centerprise cannot allege that its injuries arose directly from the domestic effects of a restraint of trade in the United States marketplace. *Den Norske*, 241 F.3d at 427 ("[W]hile

-8-

we recognize that there may be a connection and an interrelatedness between high prices paid for services in the [United States] and the high prices paid in the North Sea, the FTAIA requires more than a 'close relationship' between the domestic injury and the plaintiff's claim; it demands that the domestic effect 'give rise' to the claim").

## III.
## CONCLUSION

For the foregoing reasons, defendants respectfully request that Centerprise's claims be dismissed with prejudice.

Dated: January 9, 2006              SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By        /S/ Gary L. Halling
          _____
          GARY L. HALLING
          Attorneys for Defendants
          SAMSUNG ELECTRONICS COMPANY, LTD. and
          SAMSUNG SEMICONDUCTOR, INC.

          and On Behalf of All Served Defendants