UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re DYNAMIC RANDOM ACCESS MEMORY (DRAM) ANTITRUST LITIGATION _____/ This document Relates to: Centerprise Int'l, Ltd. v. Micron et al. (C 05-3026 PJH) _____/ | No. C 02-1486 PJH **ORDER GRANTING MOTION TO DISMISS** |

Before this court are several defendants' joint motion to dismiss for lack of subject matter jurisdiction. The moving defendants include the following: Micron Technology, Inc.; Micron Semiconductor Products, Inc.; Crucial Technology, Inc.; Samsung Electronics Col., Ltd.; Samsung Semiconductor, Inc.; Mosel-Vitelic Corporation; Mosel-Vitelic Corporation (USA); Infineon Technologies AG; Infineon Technologies North America, Corp.; Hynix Semiconductor Inc.; Hynix Semiconductor America, Inc.; Elpida Memory, Inc.; Elpida Memory (USA) Inc.; NEC Electronics America, Inc.; Nanya Technology Corporation; Nanya Technology Corporation USA; Winbond Electronics Corporation; and Winbond Electronics Corporation America (collectively "defendants").

Defendants' motion came on for hearing before this court on January 25, 2006. Defendants appeared through their respective counsel, Michael D. Blechman, Julian Brew, William Farmer, Raphael M. Goldman, Gary L. Halling, Lisa Kimmel, Steven Morrissette, Joel S. Sanders, Ian Simmons, and Howard Ullman. Plaintiff appeared through its counsel, James C. Shah. Having read the papers filed in conjunction with the motion and carefully considered the arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS defendants' motion, for the reasons stated below and for the

reasons stated at the hearing.

## BACKGROUND

On May 6, 2005, plaintiff filed the instant action against defendants, on behalf of itself and all others similarly situated, alleging violations of the Sherman Antitrust Act, 15 U.S.C. § 1. See Class Action Complaint for Violation of the Sherman Act ("Complaint").

Specifically, plaintiff – a British corporation – alleges that defendants engaged in a global conspiracy to fix prices for DRAM, an electronic microchip frequently used in computers. See, e.g., id. at ¶¶ 2, 32-57. According to plaintiff, the international conspiracy operated to deliberately fix DRAM prices in the United States, in order to extract cartel prices from plaintiff and other DRAM purchasers located outside the United States. Id. at ¶¶ 75, 80-81. As a result of the conspiracy, plaintiff alleges that it and others similarly situated were injured because they were forced to pay more for DRAM than they otherwise would have, and were further precluded from buying or selling DRAM products at competitive prices, both in the United States and abroad. Id. at ¶¶ 77, 85-86.

Defendants assert that plaintiff's complaint fails to set forth allegations supporting subject matter jurisdiction, or in the alternative, standing, and they collectively seek dismissal of the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1).

## DISCUSSION

### A. Legal Standards

The plaintiff bears the burden of demonstrating that subject matter jurisdiction exists over the complaint when challenged under Fed. R. Civ. P. 12(b)(1). See, e.g., Tosco Corp. v. Communities for a Better Env't, 236 F.3d 495, 499 (9th Cir. 2001). The defendant may either challenge jurisdiction on the face of the complaint or provide extrinsic evidence demonstrating lack of jurisdiction on the facts of the case. White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000). Here, since the defendants challenge jurisdiction on the face of the complaint, all allegations of the complaint are taken as true and all disputed issues of fact are resolved in favor of the non-moving party. See Love v. United States, 915 F.2d 1242,

1245 (9th Cir. 1990).

Plaintiff also bears the burden of demonstrating that it has standing to pursue the claims alleged in the complaint. See United States v. Hays, 515 U.S. 737, 743 (1995) (burden on plaintiff "clearly to allege facts demonstrating that [plaintiff] is a proper party to invoke judicial resolution of the dispute"). In antitrust actions such as this one, plaintiff must allege antitrust injury in order to have standing – i.e., "injury of the type the antitrust laws were intended to prevent." See, e.g., Atl. Richfield Co. v. USA Petroleum Co., 495 U.S. 328, 334 (1990).

### B. Subject Matter Jurisdiction

Section 1 of the Sherman Act prohibits all unlawful restraints of trade, including price-fixing agreements. See 15 U.S.C. § 1. Since the language of section 1 is broad, and could conceivably limit all restraints of trade, Congress and the courts have limited the reach of section 1. In 1982, Congress enacted the Foreign Trade Antitrust Improvements Act of 1982 ("FTAIA"), which amended the Sherman Act to preclude its application to conduct involving trade or commerce with foreign nations unless two jurisdictional prerequisites are met. First, the conduct must have a "direct, substantial, and reasonably foreseeable" effect on US domestic commerce. See 15 U.S.C. § 6a. Second, the "direct, substantial, and reasonably foreseeable" effect must "give rise to" a Sherman Act claim. Id.

In construing the FTAIA, it is well-settled that antitrust jurisdiction under the Sherman Act may be asserted over wholly foreign conduct on the basis of the economic effects of that conduct within the United States. See., e.g., Hartford Fire Ins. Co. v. California, 509 U.S. 764, 796 (1993) ("the Sherman Act applies to foreign conduct that was meant to produce and did in fact produce some substantial effect in the United States."); United States v. Aluminum Co. of Am. (Alcoa), 148 F.2d 416 (2d Cir. 1945). What is less settled, however, are the standards by which courts must determine the magnitude and type of domestic effect necessary for jurisdiction to be exercised over foreign conduct.

Here, plaintiff is a foreign national who does not directly participate in the US market,

3

and who suffered a wholly foreign injury (i.e., paying inflated prices for DRAM in the UK) as a result of a global price-fixing conspiracy allegedly put in place by defendants, which conspiracy purportedly affected US prices for DRAM and in turn, worldwide prices. See Complaint, ¶¶ 5, 74-77, 80-86. Accordingly, the issue for the court is whether plaintiff has sufficiently alleged US domestic effects giving rise to its foreign injury – i.e., that the two-prong jurisdictional prerequisites set forth under the FTAIA have been met. For the reasons below, the court finds that plaintiff ultimately has not, and cannot, meet them.

1. Direct, substantial, and reasonably foreseeable.

First, plaintiff must sufficiently allege that defendants' conduct had a "direct, substantial, and reasonably foreseeable" effect on US domestic commerce. See U.S.C. § 6a. A domestic effect is "direct" if it "follows as an immediate consequence of the defendant's activity," and it will be considered "substantial" if it involves a sufficient volume of US commerce and is not a mere "spillover effect." See United States v. LSL Biotechnologies, 379 F.3d 672, 680 (9th Cir. 2004) (expressly declaring "direct" within meaning of FTAIA to mean "immediate consequence"); United Phosphorous Ltd. v. Angus Chem. Co., 131 F. Supp. 2d 1003, 1011-12 (N.D. Ill. 2001).

Here, plaintiff has alleged that defendants' conduct resulted in higher prices in the United States. Specifically, plaintiff alleges that defendants' conspiracy resulted in "the deliberate fixing of prices in the United States," and further alleges that at least two defendants have already pled guilty to charges in the United States that they participated in an international conspiracy to fix prices. See Complaint, ¶¶ 72-74, 76. Plaintiff also makes allegations as to the large volume of DRAM commerce that defendants were engaged in. Id. at ¶ 30. These allegations sufficiently describe, if taken as true, that as a result of defendants' conspiracy, the prices for DRAM in the United States went up. As such, plaintiff has sufficiently alleged a "direct, substantial, and reasonably foreseeable" effect on domestic commerce.

4

2.  <u>Whether conduct "gives rise to" a Sherman Act claim</u>.

The second element – which requires plaintiff to allege that the domestic "effect" in question also "gives rise to" a Sherman Act claim – is harder for plaintiff to establish.

Courts that have had occasion to consider this element of the FTAIA have generally concluded that jurisdiction under the FTAIA exists only when the injury for which the plaintiff seeks redress arises from the direct, substantial, and reasonably foreseeable US effect. <u>See, e.g., Den Norske Stats Oljeselskap As v. HeereMac Vof</u>, 241 F.3d 420, 429 n.13 (5th Cir. 2001) (affirming decision that no subject matter jurisdiction existed under FTAIA because foreign plaintiff's injury (paying higher prices in the North Sea) did not arise from domestic effect (higher prices in the domestic market)).  The controlling precedent on this issue, as acknowledged by the parties, is the Supreme Court's opinion in <u>F. Hoffman-La Roche Ltd. v. Empagran S.A.</u>, 542 U.S. 155 (2004) (*Empagran I*).

*Empagran I* dealt with facts very similar to the case at bar here.  There, plaintiffs alleged that defendants, a group of vitamin sellers, engaged in a global conspiracy to fix the prices for vitamins, leading to higher vitamin prices in the United States and independently leading to higher vitamin prices in other countries, like Ecuador.  In passing on whether subject matter jurisdiction existed under the FTAIA as to certain foreign purchaser plaintiffs, the Supreme Court held that "a purchaser in the United States could bring a Sherman Act claim under the FTAIA based on domestic injury, but a purchaser in Ecuador could not bring a Sherman Act claim based on foreign harm."  <u>See</u> 542 U.S. at 159.  The *Empagran I* court held that where the foreign harm suffered by plaintiff is independent of any adverse domestic effect (e.g., higher prices in the US), no jurisdiction can lie.  <u>Id</u>. at 165.  The *Empagran I* court, however, expressly left open the question whether the Sherman Act may apply to claims "linked to" domestic effects (i.e., claims in which the foreign injury is *not* independent of the domestic effect).  <u>Id</u>. at 175.

The Supreme Court remanded the case for further proceedings, and the case was eventually decided by the D.C. Circuit in <u>Empagran S.A. v. F. Hoffman-La Roche Ltd.</u>, 417

5

1  F.3d 1267 (D.C. Cir. 2005), *cert. denied* (*Empagran II*).  The *Empagran II* court, in
2  considering whether a sufficient link existed between the allegedly anticompetitive conduct
3  and the harm to the foreign plaintiffs, held that in order to prove the requisite nexus
4  between domestic effect and foreign injury, plaintiffs needed to allege more than a mere
5  link between domestic effect and foreign injury.  Rather, proximate causation is the
6  standard.  See 417 F.3d at 1271.  The *Empagran II* court then employed the proximate
7  causation standard and found that plaintiffs had failed to sufficiently allege that the
8  domestic effects cited by plaintiffs – i.e., increased prices in the US – gave rise to their
9  foreign injury.  Specifically, the court found that "while maintaining super-competitive prices
10 in the United States may have facilitated the appellees' scheme to charge comparable
11 prices abroad, this fact demonstrates at most but-for causation... that establishes only an
12 indirect connection between the US prices and the prices [plaintiffs] paid when they
13 purchased vitamins abroad."  Id.

14       Plaintiff here alleges no more than the plaintiffs in *Empagran I* and *II*.  In sum,
15 plaintiff alleges: that plaintiff was "required to track the DRAM prices in dollars, which was
16 the only available measure due to Defendants' sales and distribution practices, then work
17 on dollar exchange rates in order to buy the DRAM at the best available price worldwide";
18 that "the United States prices were the source of, and substantially affected the worldwide
19 DRAM prices;" that "defendants used th[e] supra-competitive prices of DRAM in the United
20 States to raise prices worldwide... and without these supra-competitive prices for DRAM in
21 the United States, Plaintiff and class members located outside of the United States would
22 not have paid artificially inflated prices;" and finally, that plaintiff and the proposed class
23 members were injured "in that they paid more for DRAM than they otherwise would have
24 paid in the absence of the unlawful conduct of defendants and were precluded from buying
25 products from or selling products in the United States and in the worldwide market at
26 competitive prices."  See Complaint, ¶¶ 75-77.

27       Without more, these allegations constitute no more than the 'but for' causation that
28

6

the *Empagran* cases find objectionable.  Plaintiff attempts to distinguish the *Empagran* litigation by pointing out that *Empagran I* expressly left unanswered the question whether subject matter jurisdiction exists where, as here, plaintiff's foreign injury is purportedly intertwined with the domestic effects, and that the holding in *Empagran II* does not determine resolution of the issue on the facts before this court.  These arguments, however, are unpersuasive.  First, as defendants urge and at least one subsequent court has found, the "proximate causation" standard enunciated in *Empagran II* is more consistent with (1) principles of prescriptive comity and (2) general antitrust principles than a "but for" standard, factors which argue in favor of adoption of that standard.  See Latino Quimica-Amtex S.A. v. Akzo Nobel Chem. B.V., 2005 WL 2207017 (S.D. N.Y. 2005).  Second, the cases applying the *Empagran* holdings since issuance of *Empagran II* have not only similarly adopted that standard, but also expressly considered – and rejected – the very same factual scenarios and arguments that plaintiff raises here.  See id.; see also In re Monosodium Glutamate, 2005 WL 2810682 (D. Minn. 2005) (granting defendants' motion for reconsideration and reversing earlier decision to deny defendants' motion to dismiss on subject matter jurisdiction grounds).

    Indeed, In re Monosodium Glutamate involved allegations which are essentially identical to those made by plaintiff here:  that defendants "fixed United States prices and controlled United States markets not merely to capture cartel profits in the United States, but also to allow the cartel to be effective anywhere in the world;" and that defendants knowingly did so with the understanding that their conspiracy would not succeed unless they "coordinated their prices and market shares in markets across the world."  See 2005 WL 2810682 at * 1.  There, the court found that a "global price-fixing cartel theory establishes only an indirect relationship between United States prices and the prices paid in foreign markets."  See id., 2005 WL 2810682 at *3.

    So here.  There is simply no persuasive authority that plaintiff can muster to support an argument that plaintiff's global price-fixing conspiracy sufficiently alleges causation –

7

and a claim under the FTAIA – post *Empagran I* and *II*.

Accordingly, since plaintiff cannot sufficiently allege that its foreign injury was dependent upon, or somehow directly linked to, the domestic effect at issue (i.e., higher US prices), the court GRANTS defendants' motion to dismiss for lack of subject matter jurisdiction.

### C. Standing

Defendants also argue that plaintiff lacks standing to assert antitrust claims. Antitrust standing is an issue separate from the jurisdictional question discussed above. In Assoc. Gen'l Contractors v. Cal. State Council of Carpenters, 459 U.S. 519 (1983), the Supreme Court set forth the factors a court must consider in determining whether a plaintiff has standing to bring a claim for violation of the antitrust laws. These are (1) whether there is a causal connection between the alleged antitrust violation and the harm plaintiff allegedly suffered, and whether defendants intended to cause that harm; (2) whether the nature of plaintiff's injury is the type the antitrust laws were intended to forestall; (3) the directness of the injury; (4) the existence of more direct victims; (5) the risk of duplicative recovery; and (6) the complexity of apportioning damages. Id. at 538-47; see also American Ad Mgmt v. Gen. Tel. Col. of Cal., 190 F.3d 1051, 1054 (9th Cir. 1999).

Defendants focus on the majority of these factors, arguing that the allegations in plaintiff's complaint fail to establish that plaintiff has suffered "antitrust injury" – i.e., the type of injury that "the antitrust laws were intended to prevent"; that there is no direct link between the domestic effects of defendants' alleged anticompetitive conduct and plaintiffs' injury; plaintiffs' claim rests on a "speculative" and "abstract conception" of harm, since there is no direct proximate causation; and that the domestic direct purchasers are more "appropriate plaintiffs" here. See, e.g., Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 489 (1977). Plaintiff responds by arguing that, contrary to defendants' arguments, each factor is satisifed.

The same considerations that mandate a finding of no subject matter jurisdiction

weigh against a finding of antitrust standing. However, in view of the disposition of the Sherman Act claim, above, there is no need for consideration of defendants' alternative claim that plaintiff lacks standing. See Verizon Communications, Inc. v. Law Offices of Curtis v. Trinko LLP, 540 U.S. 398, 416 n.5 (2004).

Accordingly, and in conclusion, defendants' motion to dismiss is GRANTED.

### D.   Leave to Amend

Federal Rule of Civil Procedure 15(a) provides that leave to amend a pleading "shall be freely given when justice so requires." Fed. R. Civ. Proc. 15(a). Leave to amend will be denied, however, where the amendment would be futile, or where the amended complaint would be subject to dismissal. See Saul v. U.S., 928 F.2d 829, 843 (9th Cir. 1991); Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990).

If granted leave to amend here, plaintiff proposes adding additional allegations regarding the correlation between "U.S. prices during the conspiracy and those in Europe and Asia-Pacific." Opp. Br. at 20:14-15. Such allegations, however, while providing more detail, do not substantively change plaintiff's theory of recovery – i.e., that plaintiff's injury was caused by a global price-fixing conspiracy with the purpose and effect of raising U.S. prices and in turn, worldwide prices. Without a different theory of recovery altogether, plaintiff cannot escape a finding that no subject matter jurisdiction exists. See Latino Quimica-Amtex , 2005 WL 2207017 at **12-13 ("[U]nder the FTAIA, the mere interdependence of markets cannot be sufficient to satisfy the requirement that a domestic effect "gives rise" to the plaintiff's claim) (denying leave to amend as futile).

Accordingly, since the court would lack subject matter jurisdiction over the case as pleaded in a proposed amended complaint, the court finds that amendment would be futile, and DENIES plaintiff leave to amend.

### E.   Conclusion

For the above reasons, the court hereby GRANTS defendants' motion to dismiss for lack of subject matter jurisdiction, and DENIES plaintiff leave to amend. Plaintiff's

9

complaint is accordingly dismissed with prejudice.

**IT IS SO ORDERED.**

Dated: March 1, 2006

_____
PHYLLIS J. HAMILTON
United States District Judge