GUIDO SAVERI (22349)
R. ALEXANDER SAVERI (173102)
GEOFFREY C. RUSHING (126910)
CADIO ZIRPOLI (179108)
SAVERI & SAVERI, INC.
111 Pine Street, Suite 1700
San Francisco, CA 94111-5619
Telephone: (415) 217-6810
Facsimile: (415) 217-6813
*guido@saveri.com*
*rick@saveri.com*

STEVE W. BERMAN (*pro hac vice*)
ANTHONY D. SHAPIRO (*pro hac vice*)
GEORGE W. SAMPSON
CRAIG R. SPIEGEL (122000)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile No.: (206) 623-0594

FRED TAYLOR ISQUITH (*pro hac vice*)
MARY JANE FAIT (*pro hac vice*)
FRANCIS A. BOTTINI, JR.
WOLF, HALDENSTEIN, ADLER,
    FREEMAN & HERZ
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 545-4653

Co-Lead Counsel for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE DYNAMIC RANDOM ACCESS MEMORY (DRAM) ANTITRUST LITIGATION | Master File No. M-02-1486PJH<br><br>MDL No. 1486<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS WITH SAMSUNG AND INFINEON DEFENDANTS; MEMORANDUM OF LAW IN SUPPORT THEREOF** |
| This Document Relates To:<br><br>    All Direct Purchaser Actions | Time:   9:00 a.m.<br>Date:   May 10, 2006<br>Judge:  Hon. Phyllis J. Hamilton<br>Courtroom: 3 |

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS
WITH SAMSUNG AND INFINEON DEFENDANTS AND MEMORANDUM OF LAW IN SUPPORT THEREOF –
Master File No. M-02-1486 PJH

**TABLE OF CONTENTS**

| | | Page |
|---|---|---|
| I. | INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 1 |
| II. | FACTUAL BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 3 |
| III. | DISCOVERY CONDUCTED BY PLAINTIFFS . . . . . . . . . . . . . . . . . . . . . . . . | 4 |
| IV. | THE TERMS OF THE SETTLEMENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 6 |
| | A. The Infineon Settlement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 7 |
| | B. The Samsung Settlement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 8 |
| V. | THE SETTLEMENTS SHOULD BE PRELIMINARILY APPROVED. . . . . . . . . | 9 |
| VI. | THE PROPOSED NOTICE TO CLASS MEMBERS IS ADEQUATE. . . . . . . . . . . | 12 |
| VII. | THE COURT SHOULD PROVISIONALLY CERTIFY THE SETTLEMENT CLASS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 13 |
| | A. The Requirements of Rule 23 In the Context of the Settlement Class. . . . . . . | 14 |
| | B. The Requirements of Rule 23(a) Are Satisfied In This Case. . . . . . . . . . . . . | 15 |
| |     1. The Class Is So Numerous That Joinder of All Members Is Impracticable. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 15 |
| |     2. This Case Involves Questions of Law and Fact Common to the Class. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 16 |
| |     3. The Claims of the Representative Parties are Typical of the Claims of the Class. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 17 |
| |     4. The Representative Plaintiffs Will Fairly and Adequately Protect the Interests of the Class. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 18 |
| | C. The Proposed Class Satisfies The Requirements Of Rule 23(B)(3). . . . . . . . . . | 19 |
| |     1. Common Questions of Law and Fact Predominate Over Individual Questions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 19 |
| |     2. A Class Action Is Superior to Other Available Methods for the Fair and Efficient Adjudication of this Case. . . . . . . . . . . . . . . . . . . . . . . . . | 21 |
| | D. The Court Should Appoint the Plaintiffs' Current Counsel as Counsel for the Class. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 22 |
| VIII. | CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 23 |

## TABLE OF AUTHORITIES

<u>CASES</u>                                                                           <u>Page(s)</u>

*Armstrong v. Bd. Of School Dir.'s,*
   616 F. 2d 305 (7th Cir. 1980)…………………..…………………………      2,10

*Amchem Prods., Inc. v. Windsor,*
   521 U.S. 591 (1997).……………………………………………………….     15,19,21

*Blackie v. Barrack,*
   524 F.2d 891 (9th Cir. 1975)……………………………………………      15,16

*Carnegie v. Household International, Inc.,*
   376 F. 3d 656  (7th Cir. 2004)……………………………………………      15, 21

*Churchill Village, L.L.C. v. General Elec.,*
   361 F.3d 566  (9th Cir. 2004)……………………………………………..      10

*Estate of Jim Garrison v. Warner Bros., Inc.,*
   1996 WL 407849  (C.D. Cal. 1996)……………………………………      17,21

*Flat Glass Cases,*
   191 F.R.D. at 478……………………………………………………………      16,17

*Felzen v. Andreas,*
   134 F.3d 873, 875 (7th Cir. 1998)………………………………………      2

*Fisher Bros. v. Phelps Dodge Industries, Inc.,*
   604 F.Supp. 446 (E.D. Pa. 1985) ………………………………………      11

*Fisher Bros. v. Mueller Brass Co.,*
   630 F.Supp. 493  (E.D. Pa. 1985)………………………………………      11

*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011 (9th Cir. 1998)……………………………………………      passim

*In re Cardizem CD Antitrust Litigation,*
   200 F.R.D. 326 (E.D. Mich. 2001)………………………………………..      20

*In re Cement and Concrete Antitrust Litig.,*
   1979 WL 1595  (D. Ariz. 1979)……………………………………………      20

*In re Chlorine & Caustic Soda Antitrust Litig,*
   116 F.R.D. 622 (E.D. Pa. 1987)………………………………………      18

*In re Citric Acid Antitrust Litig.,*
   1996 WL 655791 (N.D. Cal. 1996)…………………………………………      14,18,20

*In re Corrugated Container Antitrust Litig.,*
   1981 WL 2093 (S.D. Tex. June 4, 1981)……………………………………..      11,13

*In re Flat Glass Antitrust Litigation, ,*
    191 F.R.D. 472 (W.D. Pa. 1999)……………………………………… 16

*In re Initial Public Offering Securities Litigation,*
    226 F.R.D. 186………………………………………………………… 15

*In re Linerboard Antitrust Litigation,*
    203 F.R.D. 197 (E.D. Pa. 2001)………………………………………... 11

*In re Lorazepam & Clorazepate Antitrust Litigation,*
    202 F.R.D. 12 (D.D.C. 2001)…………………………………………... 20

*In re Methionine Antitrust Litig.,*
    Master File No. C-99-3491-CRB (N.D. Cal.)………………………… 14

*In re Mid-Atlantic Toyota Antitrust Litig.,*
    564 F.Supp 1379, 1386 (D. Md. 1983)……………………………… 11

*In re NASDAQ Market-Makers Antitrust Litigation,*
    169 F.R.D. 493 (S.D.N.Y. 1996)……………………………………… 20,21

*In re Plastic Tableware Antitrust Litig.,*
    1995 WL 723175, at *1 (E.D. Pa. October 25, 1995)………………….. 11

*In re Relafen Antitrust Litig.,*
    231 F.R.D. 52, 68 (D. Mass. 2005) …………………………………….. 15

*In re Rubber Chemicals Antitrust Litigation*
    __ F.R.D. __, 2005 WL 2649292 (N.D. Cal. 2005)……………………… passim

*In re Shopping Carts Antitrust Litig.,*
    1983 WL 1950, at *9 (S.D.N.Y. Nov. 18, 1983)……………………… 11

*In re Sodium Gluconate Antitrust Litig.,*
    Master File No. C 97-4142 CW (N.D. Cal.) (Sept. 24, 1998)…………….. 14

*In re Sorbates Direct Purchaser Antitrust Litig.,*
    Case No. C 98-4886 (N.D. Cal. 2002)……………………………… 14

*In re Sugar Industry Antitrust Litig., ,*
    1976 WL 1374 (N.D. Cal. 1976)……………………………………… 16,20

*In re Vitamins Antitrust Litigation*
    209 F.R.D. 251 (D.D.C. 2002)………………………………………….. 10

*In Re Warfarin Sodium Antitrust Litig.,*
    391 F.3d 516, 528 (3rd Cir. 2004)……………………………………… 19

*Lerwill v. Inflight Motion Pictures, Inc.,*
    582 F.2d 507 (9th Cir. 1978)………………………………………… 18

*Local Joint Executive Board of Culinary/Bartender Trust Fund,*
    244 F.3d at 1163……………………………………………………… 20,22

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS WITH SAMSUNG AND
INFINEON DEFS.; MEMORANDUM OF LAW IN SUPPORT THEREOF – Master File No. M-02-1486 PJH

iii

mentSegment

*Miller v. Mackey Int'l, Inc.,*
    452 F.2d 424  (5th Cir. 1971)………………………………………..  15

*Mularkey v. Holsum Bakery, Inc.,*
    120 F.R.D. 118  (D. Ariz. 1988)……………………………………….  20

*Northwestern Fruit Co. v. A. Levy & J. Zentner Co.,*
    116 F.R.D. 384 (E.D. Cal. 1986)……………………………………..  22

*Officers for Justice v. Civil Service Com'n,*
    688 F.2d 615 (9th Cir. 1982)………………………………………  12

*Oregon Laborers-Employers Health & Welfare Trust Fund v. Philip Morris, Inc.,*
    188 F.R.D. 365 (D. Ore. 1998)……………………………………  16,18

*Van Bronkhorst v. Safeco Corp.,*
    529 F.2d 943 (9th Cir. 1976)………………………………………..  10

*Wellman v. Dickinson,*
    497 F.Supp. 824(S.D.N.Y. 1980)………………………………………..  10

*Wilkerson v. Martin Marietta Corp.,*
    171 F.R.D. 273(D.Colo. 1997)………………………………………..  12

**TREATISES**

5 Moore's Federal Practice
    (3d Ed. 2003) at §23.63………………………………………….  13

Manual for Complex Litigation
    (Fourth) § 13.14 at 173……………………………………………..  2,10

Newberg on Class Actions (4th ed.) ……………………………………..  12

**TO THE PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on May 10, 2006, at 9:00 a.m. or at a time subject to the Court's calendar, before the Honorable Phyllis J. Hamilton, United States District Court, Northern District of California, 450 Golden Gate Avenue, San Francisco, California, Plaintiffs will and hereby do move the Court, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, for an Order: (i) granting preliminary approval of each of the settlement agreements plaintiffs have executed with (a) defendants Infineon Technologies AG and Infineon Technologies North America Corp.; and (b) defendant Samsung Semiconductor, Inc.; (ii) certifying a class for settlement purposes; (iii) approving the manner and forms of giving notice of the settlement agreements to class members; and (iv) establishing a timetable for publishing the class notice, lodging objections to the terms of the settlement agreements, if any, and the plan of allocation, and holding a hearing regarding final approval of the settlement agreements.

This motion is based upon this Notice of Motion and Motion, the following Memorandum of Law, the Declaration of Guido Saveri and the Proposed Order Preliminarily Approving Class Action Settlements with Infineon and Samsung, the complete files and records in this action, and such other written or oral arguments that may be presented to the Court.

The settlement agreement with the Infineon defendants is attached hereto as exhibit A. The settlement agreement with defendant Samsung Semiconductor, Inc. is attached as exhibit B.

## MEMORANDUM OF LAW

### I.      INTRODUCTION

Plaintiffs have entered into separate settlement agreements ("Settlement(s)") with (a) defendants Infineon Technologies AG and Infineon Technologies North America Corp. (collectively "Infineon") and (b) defendant Samsung Semiconductor, Inc., ("Samsung") (collectively "Settling Defendants"). In return for a release of class members' claims, Infineon has agreed to pay $20,750,000.  Samsung has agreed to pay $67,000,000. These amounts exceed

1    10.5% and 12.3 %, respectively, of Settling Defendants' sales of DRAM[1] to class members which

2    remain in the case.[2]    In addition, Settling Defendants' sales remain in the case for purposes of

3    computing the treble damages claim against non-settling defendants and Settling Defendants have

4    agreed to cooperate with plaintiffs in their prosecution of the case against the remaining

5    defendants. (Samsung Settlement ¶¶ 24, 30; Infineon Settlement ¶¶ 24, 29.)  The Settlements were

6    achieved only after extensive arms-length negotiations and represent outstanding recoveries for the

7    class.[3]

8        Through this motion, plaintiffs seek <u>preliminary</u> approval of each of the Settlements.  The

9    Court is not being asked to determine whether the Settlements are fair, reasonable and adequate at

10   this time.  Instead, the question is simply whether the Settlements are sufficiently within the range

11   of possible approval to justify sending and publishing notice of the Settlements to class members

12   and scheduling final approval proceedings. *Armstrong v. Bd. Of School Dir.'s*, 616 F. 2d 305, 314

13   (7th Cir. 1980) (overruled on different grounds in *Felzen v. Andreas*, 134 F.3d 873, 875 (7th Cir.

14   1998)); *Manual for Complex Litigation* (Fourth) § 13.14 at 173 ("First, the judge reviews the

15   proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing.

16   If so, the final decision on approval is made after the hearing.").

17       If preliminary approval is granted, the proposed settlement class members will be notified

18   of the terms of the Settlements and informed of their rights in connection therewith, including their

19   right to appear and be heard at the final approval hearing.  The following is a proposed schedule:

---

[1] "DRAM" means dynamic random access memory components, including without limitation, synchronous dynamic random access memory ("SDRAM"), Rambus dynamic random access memory ("RDRAM"), asynchronous dynamic random access memory ("ASYNC"), FPM DRAM, EDO DRAM, BEDO DRAM, and double data rate semiconductor devices and modules ("DDR").
[2] Settling Defendants have entered into settlements with some of their larger customers thus reducing Settling Defendants' sales at issue in this case.  The Settlements allow plaintiffs to verify the Settling Defendants' sales during the Class Period and their settlements with their customers. (Samsung Settlement, ¶¶ 16, 24; Infineon Settlement, ¶¶ 16, 24.) Infineon has also agreed that, if sales of Infineon products to class members which have not already been settled exceed $208.1 million, it will increase its payment by 10.53% of the excess. (Infineon Settlement, ¶16.)
[3] Plaintiffs are engaged in settlement negotiations with other defendants. If these discussions are completed satisfactorily, the parties may ask the Court to address additional proposed settlements at the preliminary approval hearing.

| Date | Event |
|------|-------|
| May 10, 2006 | Hearing on motion for preliminary approval of settlements; |
| May 31, 2006 | Mailed notice sent to class members; |
| June 7, 2006 | Summary notice published in Wall Street Journal; |
| July 22, 2006 | Deadline for opting out of class or objecting to Settlements, or plan of allocation; |
| August 8, 2006 | Deadline for filing briefing in support of Settlements, etc.; |
| August 29, 2006 | Hearing on final approval of Settlements. |

Accordingly, plaintiffs seek an order: (i) granting preliminary approval of the Settlements; (ii) certifying the settlement class (the "Class"); (iii) approving the manner and forms of giving notice to the Class; and (iv) establishing the above timetable for consummation of the Settlements.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

The Third Consolidated Amended Complaint filed on June 30, 2005 ("Complaint") alleges an over-arching horizontal conspiracy among defendants to fix prices for DRAM and to allocate markets and customers for the sale of DRAM in the United States from April 1, 1999 through June 30, 2002 (the "Class Period"). Plaintiffs and members of the Class were injured because they paid more for DRAM than they would have absent defendants' illegal conspiracy.  (Compl. ¶ 65.)

Defendants are domestic and foreign entities that manufactured, marketed, and/or sold DRAM in the United States during the class period.[4]  (Compl. ¶¶ 17-34.)  Five defendants – Samsung Electronics Co., Ltd., Samsung Semiconductor, Inc., Infineon Technologies AG, Hynix Semiconductor, Inc. and Elpida Memory, Inc. – along with several of their officers, have pled guilty to participating in a price-fixing conspiracy in the DRAM market in violation of criminal

---

[4] Defendants are Micron Technology, Inc. and its two wholly owned subsidiaries Micron Semiconductor Products, Inc. and Crucial Technology, Inc. (collectively "Micron"); Infineon Technologies AG and its wholly owned subsidiary Infineon Technologies North America Corp.; Hynix Semiconductor, Inc. and its wholly owned subsidiary Hynix Semiconductor America, Inc.; Samsung Electronics Co., Ltd. and its wholly owned subsidiary Samsung Semiconductor, Inc.; Mosel-Vitelic Corporation and its wholly owned subsidiary Mosel-Vitelic Corporation (USA); Nanya Technology Corporation and its wholly owned subsidiary Nanya Technology Corporation USA; Winbond Electronics Corporation and its wholly owned subsidiary Winbond Electronics Corporation America; Elpida Memory, Inc. and its wholly owned subsidiary Elpida Memory(USA) Inc.; and NEC Electronics America, Inc. (Comp., ¶¶ 17-34.)

1  antitrust laws.  In addition, another defendant – Micron – has announced its cooperation with the

2  Department of Justice ("DOJ") investigation.

3      Plaintiffs and members of the Class are direct purchasers of DRAM from defendants and/or

4  their subsidiaries.  (Compl. ¶¶ 6-16.)  Plaintiffs seek, among other things, injunctive relief and

5  treble damages pursuant to Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26.

6  (Compl., Prayer for Relief, ¶¶ C, D.)

7  **III.     DISCOVERY CONDUCTED BY PLAINTIFFS**

8      The complaints in these actions were filed on or after June 21, 2002 in District Courts

9  around the country.  They were consolidated and transferred to this District by the Judicial Panel

10  on Multidistrict Litigation.  Because the DOJ's investigation was continuing, general discovery

11  was stayed until July 14, 2005.  Plaintiffs, however, were allowed access to the millions of pages of

12  documents defendants had produced to the DOJ, and were allowed to propound limited

13  interrogatories to determine the amount of defendants' sales during the Class Period.

14      On July 11, 2003, the parties entered into a Stipulation and Protective Order concerning the

15  disclosure of confidential and highly confidential information.  Shortly thereafter, and pursuant to

16  the Order Limiting the Scope of Discovery, defendants began producing copies of documents they

17  had turned over to the Grand Jury in response to subpoenas.  The defendants' document production

18  took place on a rolling basis.  To date, defendants have produced over **four million pages** from

19  both domestic and foreign entities.  Many of the documents are in Korean, Japanese, Chinese, and

20  German and have been translated prior to being indexed, analyzed, and entered into a database.

21  (Declaration of Guido Saveri in Support of Plaintiffs' Motion for Preliminary Approval of Class

22  Action Settlements With Samsung and Infineon ("Saveri Decl."), ¶3.)

23      Plaintiffs' counsel dedicated numerous lawyers and paralegals, and considerable other

24  resources (including third-party vendors and technical staff) to the translation, analysis, and

25  electronic coding of the documents produced by defendants.  During the first phase of the

26  document review, teams consisting of five to twelve attorneys from various law firms gathered in a

27  document depository at Cotchett Pitre Simon & McCarthy in Burlingame, California, to review the

28

documents produced by defendants.  In total, plaintiffs counsel reviewed and analyzed thousands of boxes of defendants' documents.  (Saveri Decl. ¶4.)

During the second phase of the document review, over 20 paralegals at three locations around the nation inputted and coded the relevant subjective and objective data from the attorney review into a single, consolidated database.  This consolidated database then provided plaintiffs' counsel the ability to run sophisticated queries regarding the documents and significant issues in the case. (Saveri Decl. ¶5.)

In addition to reviewing the content of all produced documents, plaintiffs organized certain "key" documents by subject matter category, and documents relating to more than 100 potential deponents were compiled in preparation for depositions.  These efforts were vital to plaintiffs' preparation of motions, meet and confer efforts, damage analysis, and ability to timely respond to complex legal and factual issues that arose during this litigation.  This type of preparation and organization has allowed plaintiffs to avoid piecemeal appearances before the Court, and allowed the Court to concentrate on the outstanding issues presented by this case.  It also enhanced plaintiffs' counsel's negotiations with Settling Defendants as plaintiffs' counsel were armed with a full understanding of the strengths and weaknesses of their case.  (Saveri Decl. ¶5.)

Plaintiffs' counsel frequently met and conferred with opposing counsel regarding certain inadequacies in their document productions, and particularly about defendants' consistent and uniform refusal to produce documents they claimed were unrelated to the U.S. DRAM market. (Saveri Decl., ¶6.)

In addition to the review of documents produced to the Grand Jury, plaintiffs propounded separate Requests for Production of Documents and Interrogatories to all defendants.  Pursuant to Judge Spero's February 28, 2006 Discovery Plan Order, all parties were required to complete their productions and to supplement their interrogatories by March 15, 2006.  In response, plaintiffs have received thousands of pages of additional documents that are currently being reviewed. (Saveri Decl. ¶7.)

Through the diligent analysis of the documents and other evidence produced, plaintiffs identified more than 100 current and former employees of the defendants with knowledge of the relevant issues in this case.  As a result, plaintiffs have noticed the depositions of approximately 75 witnesses.  In July of 2005, plaintiffs also served notices of deposition pursuant to Rule 30(b)(6) on the domestic and foreign defendants.  To date, plaintiffs have taken six depositions of Micron witnesses, as well as depositions pursuant to Rule 30(b)(6) for three groups of defendants.  Plaintiffs anticipate taking approximately 80 depositions prior to the May 2006 discovery cut-off.  (Saveri Decl. ¶8.)

Throughout 2005 and up to the present, plaintiffs' counsel worked extensively with consultants and experts in preparation for trial and future motions.  Plaintiffs' counsel have spent considerable time working with Professor Roger Noll, an economist, in preparation for the motion for class certification.  (Saveri Decl. ¶9.)

On December 8, 2005, plaintiffs filed a motion for class certification.  On March 10, 2006, non-settling defendants filed their joint opposition.  A hearing is set for May 17, 2006.

After a substantial amount of the discovery and analysis described above had been completed, as well as a thorough consideration of applicable law, Class counsel began settlement negotiations with Infineon in August 2004.  (Saveri Decl. ¶10.)  The negotiations were vigorous and non-collusive.  After numerous face to face meetings and many telephone conferences and other communications, the Infineon Settlement was concluded on September 2, 2005.  (Saveri Decl. ¶10.)

Negotiations with Samsung were similarly protracted and difficult.  The first settlement meeting occurred in June, 2005.  Again, after numerous face to face meetings and many telephone conversations, the Samsung Settlement was concluded on February 24, 2006.  (Saveri Decl. ¶12.)

Despite the Settlements, Settling Defendants maintain that they have meritorious defenses to plaintiffs' claims.

## IV.    THE TERMS OF THE SETTLEMENTS

While the terms of the Settlements are similar, each is completely independent of the other.

## A.      The Infineon Settlement.

In exchange for dismissal with prejudice and a release of all claims asserted in the Complaint, as noted above, Infineon has agreed to pay $20,750,000 plus 10.53% of the amount by which their sales to class members which have not already been settled exceed $208.1 million. (Infineon Settlement ¶16.)  Infineon has already deposited $20.75 million into an escrow account earning interest for the benefit of class members.

The Infineon Settlement requires the certification of a settlement class consisting of:

> All individuals and entities who, during the period beginning April 1, 1999 and continuing through June 30, 2002, purchased DRAM in the United States directly from the defendants or their subsidiaries.  Excluded from the class are defendants and their parents, subsidiaries, affiliates, all governmental entities, and co-conspirators.

(Infineon Settlement ¶¶ 1,9,10.)  Upon the Settlement becoming final, plaintiffs and Class members will relinquish any claims they have against Infineon based, in whole or in part, on matters alleged or that might have been alleged in this litigation. (Infineon Settlement ¶¶13-15.)  The release, however, excludes claims for product liability or breach of contract, indirect purchaser claims, or claims based on purchases of DRAM outside the United States. (Infineon Settlement ¶30.)  The Settlement becomes final upon: (i) the Court's approval of the Settlement pursuant to Rule 23(e) and the entry of a final judgment of dismissal with prejudice as to Infineon; and (ii) the expiration of the time for appeal or, if an appeal is taken, the affirmance of the judgment with no further possibility of appeal. (Infineon Settlement ¶11.)

The Settlement also requires Infineon to assist plaintiffs in the prosecution of this case against the remaining defendants by producing documents and making its employees available for depositions and trial, including supplying witnesses necessary to testify as to the authenticity and admissibility of documents. (Infineon Settlement ¶24.)

Finally, the Settlement provides that Infineon will pay an additional sum of as much as $200,000 for notice and administrative costs (Infineon Settlement ¶19.).

Subject to the approval and direction of the Court, the Settlement payment, plus accrued interest thereon, will be used to: (i) make a distribution to Class members in accordance with a

proposed plan of allocation to be approved by the Court at final approval based on the dollar value of each Class members' DRAM purchases proportionate to the total claims filed; (ii) pay Class Counsel's attorneys' fees, costs, and expenses as may be awarded by the Court; and (iii) pay future costs incurred in the administration and distribution of the Settlement payments, including the payment of taxes on any interest earned.  (Infineon Settlement ¶¶ 21-23.)[5]

### B.    The Samsung Settlement.

Samsung has agreed to pay $67,000,000 to the Class in return for a dismissal with prejudice and release of itself and its parent, defendant Samsung Electronics Co., Ltd. (Samsung Agreement, ¶6.)  Samsung is required to deposit $67,000,000 in an interest bearing escrow account within 10 (ten) business days of the filing of this motion. (Samsung Settlement ¶16.)

The Settlement requires the certification of a settlement class consisting of:

> All individuals and entities who, at any time during the period beginning April 1, 1999 and continuing through June 30, 2002, purchased DRAM in the United States directly from the defendants or their subsidiaries.  Excluded from the class are defendants and their parents, subsidiaries, affiliates, all governmental entities, and alleged co-conspirators.[6]

(Samsung Settlement ¶¶ 1,9,10.)  Like the Infineon Settlement, plaintiffs and Class members will relinquish any claims they have against Samsung based, in whole or in part, on matters alleged or that might have been alleged in this litigation, excluding claims for product liability or breach of contract, indirect purchaser claims, or claims based on purchases of DRAM outside the United States. (Samsung Settlement ¶¶13-15, 31.)  The Settlement becomes final upon: (i) the Court's approval of the Settlement pursuant to Rule 23(e) and the entry of a final judgment of dismissal with prejudice as to Samsung and related companies; and (ii) the expiration of the time for appeal or, if an appeal is taken, the affirmance of the judgment with no further possibility of appeal.

---

[5] At the present time, Class counsel do not plan to distribute any Settlement funds until the termination of the case since plaintiffs are continuing to litigate against all non-settling defendants and since piecemeal distribution of partial settlements is expensive, time-consuming and prone to confuse Class members. Pending distribution, the Settlement funds will accrue interest for the benefit of the Class.

[6] The class definition contained in the Samsung Settlement differs from the one in the Infineon Settlement in two ways.  First, it contains the words "at any time" in the second clause of the first sentence.  Second, the word "alleged" is inserted before the last word of the second sentence. Plaintiffs believe that these differences are not material.  The proposed order of preliminary approval contains the definition contained in the Infineon Settlement.

1   (Samsung Settlement ¶11.)

2   　　　The Settlement also requires Samsung to assist plaintiffs in the prosecution of this case

3   against the remaining defendants by producing documents and making its employees available for

4   depositions and trial, including supplying witnesses necessary to testify as to the authenticity and

5   admissibility of documents. (Samsung Settlement ¶24.) The Samsung Settlement also authorizes

6   the use of $200,000 of the settlement fund for notice and administrative purposes, and $1 million

7   for expenses incurred in the prosecution of this case against the remaining defendants. (Samsung

8   Settlement ¶20.)

9   　　　Subject to the approval and direction of the Court, the Settlement payment, plus accrued

10  interest thereon, will be used to: (i) make a distribution to Class members in accordance with a

11  proposed plan of allocation to be approved by the Court at final approval based on the dollar value

12  of each Class members' DRAM purchases proportionate to the total claims filed; (ii) pay Class

13  Counsel's attorneys' fees, costs, and expenses as may be awarded by the Court; and (iii) pay future

14  costs incurred in the administration and distribution of the settlement payments, including the

15  payment of taxes on any interest earned.  (Samsung Settlement ¶¶ 21-23.)

16  　　　Finally, the Samsung Settlement requires plaintiffs to use their "best efforts to negotiate

17  settlements equal to or in excess of the percentage of remaining non-excluded sales represented in

18  this settlement" with "comparably situated other major suppliers." (Samsung Settlement ¶ 17.)  It

19  also provides that if Class members who purchased more than 15% of Samsung's remaining sales

20  opt out of the Settlement Class, "the parties shall meet and confer in good faith in order to

21  negotiate an appropriate adjustment to the settlement amount in light of such opt-outs. If the parties

22  are unable to agree, [Samsung] may elect to terminate the Agreement . . ." (Samsung Settlement,

23  ¶19.)

24  **V.　　THE SETTLEMENTS SHOULD BE PRELIMINARILY APPROVED**

25  　　　The approval of class action settlements required by Federal Rule of Civil Procedure 23(e)

26  is a two-step process.  Preliminary approval requires only that the terms of the proposed settlement

27  fall within the "range of possible approval." *Armstrong*, 616 F. 2d at 314.  It amounts to a

28

determination that the terms of the proposed settlement warrant consideration by members of the class and a full examination at a final approval hearing. *Manual for Complex Litigation* (Fourth) § 13.14 at 173. After notice to the class, preliminary approval is followed by a review of the fairness of the settlement at final approval, and, if appropriate, a finding that it is "fair, reasonable and adequate." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1027 (9th Cir. 1988). Because it is provisional, courts grant preliminary approval where the proposed settlement lacks "obvious deficiencies" raising doubts about the fairness of the settlement. *See e.g., In re Vitamins Antitrust Litig.,* 2001 WL 856292, at *4 (D.D.C. July 25, 2001) (quoting *Manual for Complex Litigation* (Third) §30.41).

It is well-recognized that "[v]oluntary out of court settlement of disputes is 'highly favored in the law' and approval of class action settlements will be generally left to the sound discretion of the trial judge." *Wellman v. Dickinson,* 497 F.Supp. 824, 830 (S.D.N.Y. 1980) (citation omitted).

> It hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits which are now an ever increasing burden to so many federal courts and which frequently present serious problems of management and expense.

*Van Bronkhorst v. Safeco Corp.,* 529 F.2d 943, 950 (9th Cir. 1976); *see also Churchill Village, L.L.C. v. General Elec.,* 361 F.3d 566, 576 (9th Cir. 2004).

The Settlements before the Court amply meet the requirements for preliminary approval. First, the consideration for each Settlement is substantial. The Infineon Settlement provides for a cash payment of approximately 10.53% of its remaining sales to class members during the Class Period. The payment required by the Samsung Settlement is approximately 12.3 % of the same amount. (Saveri Decl., ¶¶ 9, 11) The Settlements therefore compare favorably to settlements finally approved in other price-fixing cases. *See, e.g., In re Plastic Tableware Antitrust Litig.,* 1995 WL 723175, at *1 (E.D. Pa. October 25, 1995) (3.5% of sales); *In re Linerboard Antitrust Litigation,* 321 F.Supp. 2d 619, 627 (E. D. Pa. 2004) (1.62% of sales); *In re Shopping Carts Antitrust Litig.,* 1983 WL 1950, at *9 (S.D.N.Y. Nov. 18, 1983) (3% of sales); *Fisher Bros. v. Phelps Dodge Industries, Inc.,* 604 F.Supp. 446, 451 (E.D. Pa. 1985) (3% of sales); *Fisher Bros. v.*

1   *Mueller Brass Co.,* 630 F.Supp. 493, 499 (E.D. Pa. 1985) (recoveries equal to .1%, .2%,  2%, .3%,

2   .65%, .88%, and 2.4% of defendants' total sales).

3     In *Rubber Chemicals*, a horizontal price fixing case in which some of the defendants had

4   entered guilty pleas in related criminal proceedings, Judge Jenkins, in the course of granting final

5   approval, recently characterized a settlement payment of 4% of a defendant's sales as "an excellent

6   recovery."  (Saveri Decl., Ex. A).

7     In addition to these payments, the Settlements provide that the non-settling defendants

8   remain jointly and severally liable for damages caused by the alleged conspiracy, including those

9   from sales by the Settling Defendants. (Samsung Settlement ¶ 30; Infineon Settlement ¶ 29.) The

10   Settlements, therefore, while providing a significant, certain and early recovery for class plaintiffs,

11   do not reduce the total amount of damages recoverable in the case.  *See In re Corrugated*

12   *Container Antitrust Litig.,* 1981 WL 2093, at *17 (S.D. Tex. June 4, 1981).

13     Finally, both Settlements require Settling Defendants to cooperate in plaintiffs' prosecution

14   of this case against the remaining defendants. This is a valuable benefit to class members because it

15   will save time, reduce costs, and provide access to information and documents to which they might

16   not otherwise have access. *See In re Mid-Atlantic Toyota Antitrust Litig.,* 564 F.Supp 1379, 1386

17   (D. Md. 1983) (. . .  the commitment [the] Distributor defendants have made to cooperate with

18   plaintiffs will certainly benefit the clases, and is an appropriate factor for a court to consider in

19   approving a settlement.").

20     The Settlements were the product of intense and thorough arms-length negotiations by

21   experienced and informed counsel.  Each of the negotiations occurred over a span of months and

22   involved telephonic and face to face meetings. They were contested and conducted in the utmost

23   good faith. Class counsel negotiated the Settlements based on their review and analysis of millions

24   of pages of defendants' documents, their own substantial investigations, and the analysis of expert

25   consultants. (Saveri, Decl. ¶¶ 10-13.)  Counsel's judgment that the Settlements are fair and

26   reasonable is entitled to great weight.  *Officers for Justice v. Civil Service Com'n,* 688 F.2d 615,

27   625 (9th Cir. 1982); *Rutter & Wilbanks Corp. v. Shell Oil Co.,* 314 F.3d 1180, 1188 (10th Cir.

28

2002); *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 288-89 (D.Colo. 1997).  Indeed, there is generally "an initial presumption of fairness when a proposed class settlement, which was negotiated at arms' length by counsel for the class, is presented for court approval." 4 *Newberg on Class Actions* at 11.41 (4th ed.).

In light of these risks, and the $87.75 million in cash payments guaranteed by the Settlements, it is plain that the Settlements are worthy of preliminary approval.  They provide substantial and certain benefits to the class members and they avoid – at least with regard to Settling Defendants – the risks, delay and expense of further litigation.  And while plaintiffs believe their case is strong, Settling Defendants have not conceded liability and would vigorously defend themselves at trial.

## VI.    THE PROPOSED NOTICE TO CLASS MEMBERS IS ADEQUATE

Class members are entitled to the "best notice practicable under the circumstances" of any proposed settlement before it is finally approved by the Court.  Federal Rule of Civil Procedure 23(c)(2)(b).  The notice must state in plain, easily understood language:

- the nature of the action,
- the definition of the class certified,
- the class claims, issues, or defenses,
- that a class member may enter an appearance through counsel if the member so desires,
- that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded, and
- the binding effect of a class judgment on class members under Rule 23(c)(3).

*Id.*

Plaintiffs propose that direct notice in the form attached as Exhibit A to the Proposed Order ("Notice") be given by mail or email to each Class Member who may, by reasonable efforts, be identified.  The Settlements require Settling Defendants to provide lists of all their customers who are potential class members. (Samsung Settlement ¶ 9; Infineon Settlement ¶ 9.)  Additionally, plaintiffs have filed concurrently with this motion, a Motion to Facilitate Dissemination of Notice which seeks an order compelling non-settling defendants to provide plaintiffs with a list of all of their customers who are potential class members.

In addition, plaintiffs propose that a Summary Notice in the form attached as Exhibit B to the Proposed Order be published in the national edition of the Wall Street Journal, and that both notices, along with the settlement agreements, be posted on a website accessible to class members. Such notice plans are commonly used in class actions like this one and constitute valid, due and sufficient notice to class members, and constitute the best notice practicable under the circumstances. *See, e.g., 5 Moore's Federal Practice* (3d Ed. 2003) at §23.63[8][a], §23.63[8][b]; Saveri Decl. ¶14.

The content of the proposed notices complies with the requirements of Rule 23(c)(2)(B). The Notice clearly and concisely explains the nature of the action and the terms of the Settlements. It provides a clear description of who is a member of the class and the binding effects of class membership. It explains how to exclude oneself from the class, how to object to the Settlements, how to obtain copies of papers filed in the case and how to contact Class counsel.

The Summary Notice also identifies class members and explains the basic terms of the Settlements and the consequences of class membership. It also explains how to obtain more information about the Settlements. The Summary Notice will be published as soon as reasonably practicable after preliminary approval and after the Notice is mailed.

Plaintiffs will propose to the class that class members share in the Settlements on a proportionate basis based on the dollar value of each claimant class member's DRAM purchases during the Class Period compared to the total dollar value of DRAM purchased by all class members who submit claims. Such a proposed plan of allocation is virtually identical to that approved in *In re Corrugated Container Antitrust Litigation*, 643 F.2d 195, 218-220 (5th Cir. 1981).

The contents of the notices and the proposed plan of allocation fulfill the requirements of Rule 23 and due process. Accordingly, the Court should preliminarily approve both.

## VII.   THE COURT SHOULD PROVISIONALLY CERTIFY THE SETTLEMENT CLASS

The Court should provisionally certify the settlement classes required by the Settlements. (Samsung Settlement ¶¶ 1, 8-10; Infineon Settlement ¶¶ 1, 8-10.) It is well-established that price-fixing actions like this one are appropriate for class certification and many courts, including courts

1     in the Northern District of California, have so held.  *See, e.g., In re Rubber Chemicals Antitrust*

2     *Litigation,* 232 F.R.D. 346, 350 (N.D. Cal. 2005) ("*Rubber Chemicals*"); *In re Citric Acid Antitrust*

3     *Litig.*, 1996 WL 655791 (N.D. Cal. 1996) ("*Citric Acid*"); *In re Sorbates Direct Purchaser*

4     *Antitrust Litig.*, Case No. C 98-4886 MMC (N.D. Cal.) (Order Granting Plaintiffs' Motion for

5     Class Certification; Vacating Hearing (Mar. 11, 2002) (Chesney, J.)) ("*Sorbates*"); *In re*

6     *Methionine Antitrust Litig.*, Master File No. C-99-3491-CRB (N.D. Cal.) (Order Granting Motion

7     for Class Certification (Dec. 21, 2000) (Breyer, J.)) ("*Methionine*"); *In Re: Sodium Gluconate*

8     *Antitrust Litig.*, Master File No. C 97-4142 CW (N.D. Cal.) (Order Granting Class Certification)

9     (Sept. 24, 1998) (Wilken, J.)) ("*Sodium Gluconate*").[7]

10          **A.      The Requirements of Rule 23 In the Context of the Settlement Class**

11          Rule 23 provides that a court must certify an action as a class action where, as here,

12    plaintiffs satisfy the four prerequisites of Rule 23(a), and one of the three criteria set forth in Rule

13    23(b).  Rule 23(a) provides that a class may be certified if:

14          (1)     the class is so numerous that joinder of all members is
                    impracticable;

15
            (2)     there are questions of law or fact common to the class;

16
            (3)     the claims or defenses of the representative parties are typical
17                  of the claims or defenses of the class; and

18          (4)     the representative parties will fairly and adequately protect
                    the interests of the class.
19
      Fed. R. Civ. P. 23(a).
20
            Plaintiffs also must satisfy Rule 23(b)(3), which provides that "an action may be maintained
21
      as a class action" if:
22
            the court finds that the questions of law or fact common to the
23          members of the class predominate over any questions affecting only
            individual members, and that a class action is superior to other
24          available methods for the fair and efficient adjudication of the
            controversy.
25
            The Rule 23(b)(3) "manageability" requirements, however, need not be satisfied in order to
26

27    _____
      [7] Copies of the orders in *Sorbates, Methionine,* and *Sodium Gluconate* are attached as Exhibits B-D
28    to the Saveri Decl.

      _____

certify a class in the settlement context: "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 68 (D. Mass. 2005) (same). As Judge Posner has explained, manageability concerns that might preclude certification of a litigated class may be disregarded with a settlement class "because the settlement might eliminate all the thorny issues that the court would have to resolve if the parties fought out the case." *Carnegie v. Household International, Inc.*, 376 F. 3d 656, 660 (7th Cir. 2004) (citing *Amchem*, 521 U.S. at 620; *see also In re Initial Public Offering Securities Litigation*, 226 F.R.D. 186, 190, 195 (settlement class may be broader than litigated class because settlement resolves manageability/predominance concerns).

A Rule 23 determination is procedural and does not concern whether a plaintiff will ultimately prevail on the substantive merits of his or her claims. *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975), *cert. den'd*, 429 U.S. 816 (1976). In ruling on a motion for class certification, the substantive allegations in plaintiffs' complaint must be accepted as true. *Id.*; *Rubber Chemicals*, 232 F.R.D at 350. Therefore, the only issue on a motion for class certification is whether plaintiff is asserting a claim which, assuming its merit, will satisfy the requirements of Rule 23. *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 178 (1974), *quoting*, *Miller v. Mackey Int'l, Inc.*, 452 F.2d 424, 427 (5th Cir. 1971).

**B.      The Requirements of Rule 23(a) Are Satisfied In This Case.**

**1.      The Class Is So Numerous That Joinder of All Members Is Impracticable**

The first requirement for maintaining a class action under Rule 23 is that the class be so numerous that joinder of all members would be "impracticable." Fed. R. Civ. P. 23(a)(1). To satisfy this prerequisite, plaintiffs need not allege the precise number or identity of class members. *Rubber Chemicals*, 232 F.R.D. at 350 ("Plaintiffs do not need to state the exact number of potential class members, nor is a specific number of class members required for numerosity."); *In re Sugar Industry Antitrust Litig.*, 1976 WL 1374 at *12 (N.D. Cal. 1976) (same). Rather, a finding of

1    numerosity may be supported by common sense assumptions.  *Rubber Chemicals,* 232 F.R.D. at

2    350; *Citric Acid,* 1996 WL 655791 at *3.

3            Courts have not defined the exact number of putative class members that is required for

4    class certification but have generally found that the numerosity requirement is satisfied when class

5    members exceed forty.  6 Alba Conte & Herbert B. Newberg, *Newberg On Class Actions* §18:4 (4th

6    ed. 2002); *see also Oregon Laborers-Employers Health & Welfare Trust Fund v. Philip Morris,*

7    *Inc.*, 188 F.R.D. 365, 372-73 (D. Ore. 1998).  Geographic dispersal of plaintiffs may also support a

8    finding that joinder is "impracticable." *Rubber Chemicals*, 232 F.R.D. at 350-51.

9            In this case, defendants' customer lists indicate that the Class contains thousands of

10   members dispersed across the country.  (Saveri Decl. ¶19.)  Thus, the proposed Class readily

11   satisfies the numerosity requirement of Rule 23.

12           **2.      This Case Involves Questions of Law and Fact Common to the Class**

13           The second requirement for class certification under Rule 23 is that "there are questions of

14   law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  A court must assess if "the class is

15   united by a common interest in determining whether a defendant's course of conduct is in its broad

16   outlines actionable." *Blackie*, 524 F.2d at 902.  This requirement, however, is easily met: it is

17   satisfied by the existence of a single common issue. *In re Flat Glass Antitrust Litig.,* 191 F.R.D.

18   472, 478 (W.D. Pa. 1999).

19           The commonality requirement is readily satisfied here.  "Courts consistently have held that

20   the very nature of a conspiracy antitrust action compels a finding that common questions of law

21   and fact exist." *Rubber Chemicals,* 232 F.R.D. at 351 (quoting *In re Sugar Industry*, 1976 WL

22   1374 at *13)(internal quotations omitted).

23           Here, there are numerous questions of law and fact common to the Class which are at the

24   heart of this case.  They include:

25                   (1)      whether defendants and their co-conspirators conspired to
                              raise, fix, stabilize or maintain the prices of DRAM sold in
26                            the United States;

27                   (2)      whether the alleged conspiracy violated Section 1 of the
                              Sherman Act;

28

(3)     the duration and extent of the conspiracy;

(4)     whether defendants' conduct caused prices of DRAM to be set at artificially high and non-competitive levels; and

(5)     whether defendants' conduct injured Plaintiffs and other members of the Class and, if so, the appropriate class-wide measure of damages.

These issues constitute a common core of questions focusing on the central issue of the existence and effect of the alleged conspiracy and plainly satisfy the commonality requirement of Rule 23(a)(2). *Estate of Jim Garrison*, 1996 WL 407849 at *2 (Plaintiffs' allegations "which constitute the classic hallmark of antitrust class actions under Rule 23 . . . are more than sufficient to satisfy the commonality requirement"); *Flat Glass*, 191 F.R.D. at 479 ("[g]iven plaintiffs' allegation of a § 1 conspiracy, the existence, scope and efficacy of the alleged conspiracy are certainly questions that are common to all class members.")

**3.      The Claims of the Representative Parties are Typical of the Claims of the Class**

The third requirement for maintaining a class action under Rule 23(a) is that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon,* 150 F.3d at 1020. "Typicality determines whether a sufficient relationship exists between the injury to the named Plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Oregon Laborers-Employers*, 188 F.R.D. at 373-74 (internal quotations and citations omitted).

Courts have generally found the typicality requirement to be satisfied in horizontal price-fixing cases.  As explained in *In re Chlorine & Caustic Soda Antitrust Litig.*:

Plaintiffs seek to recover treble damages from defendants measured by the alleged overcharge resulting from defendants' conspiracy to fix prices.  In order to prevail on the merits in this case the plaintiffs will have to prove the same major elements that the absent members of the class would have to prove.  Those elements are a conspiracy, its effectuation and resulting damages.  As such, the claims of the plaintiffs are not antagonistic to and are typical of the claims of the other putative class members.

116 F.R.D. 622, 626 (E.D. Pa. 1987); *see also Rubber Chemicals,* 232 F.R.D. at 351; *Citric Acid,* 1996 WL 655791 at *3 ("The alleged underlying course of conduct in this case is defendants' conspiracy to fix the price of citric acid and to allocate customers among themselves . . . The legal theory Plaintiffs that rely on is antitrust liability.  Because plaintiffs and all class members share these claims and this theory, the representatives' claims are typical of all.").

Plaintiffs here allege a conspiracy to fix, raise, maintain and stabilize the price of DRAM. Class members' claims are based on the same legal theories.  Plaintiffs would have to prove the same elements that absent members would have to prove: the existence, scope, and efficacy of the conspiracy.  The typicality requirement of Rule 23(a)(3) is plainly satisfied.

**4.     The Representative Plaintiffs Will Fairly and Adequately Protect the Interests of the Class**

The fourth requirement of Rule 23 mandates that the representative plaintiff fairly and adequately represent the class.  Fed. R. Civ. P. 23(a)(4).  The adequacy requirement consists of two separate inquiries.  First, the representative plaintiffs must not possess interests which are antagonistic to the interests of the class.  Second, plaintiffs must be represented by counsel of sufficient diligence and competence to fully litigate the claim.  *Hanlon,* 150 F.3d at 1020; *Lerwill v. Inflight Motion Pictures, Inc.,* 582 F.2d 507, 512 (9th Cir. 1978).

The representative plaintiffs here meet both aspects of the adequacy test.  There are no actual or potential conflicts of interest between the representative parties and the members of the class.  Plaintiffs, as well as each member of the class, were overcharged for DRAM and have a mutual interest in establishing liability and recovering damages.  The gravamen of the claims against defendants is a price-fixing conspiracy that artificially raised the prices charged to every Class member, each of whom directly purchased DRAM from one or more of the defendants during the Class Period. Defendants, therefore, allegedly injured plaintiffs and the Class members in the same manner.  Plaintiffs seek relief substantially identical to that sought by every other Class member.  Accordingly, the interests of the representative plaintiffs and the putative class members in recovering the overcharges are the same.

1    Moreover, plaintiffs have retained highly capable and well-recognized counsel with

2    extensive experience in antitrust cases.  Plaintiffs' counsel have successfully prosecuted numerous

3    antitrust class actions on behalf of injured purchasers throughout the United States.  Plaintiffs'

4    counsel are capable of, and committed to, prosecuting this action vigorously on behalf of the Class.

5    Plaintiffs' counsel's prosecution of this case, and, indeed, the Settlements, amply demonstrate their

6    diligence and competence.  (*See* Saveri Decl. ¶¶ 3-13)

7    The named plaintiffs satisfy the requirements of Rule 23(a)(4).

8    **C.    The Proposed Class Satisfies The Requirements Of Rule 23(B)(3)**

9    Once it is determined that the proposed class satisfies the requirements of Rule 23(a), a

10   class must be certified under Rule 23(b)(3) if "the court finds that the questions of law or fact

11   common to the members of the class predominate over any questions affecting only individual

12   members, and that a class action is superior to other available methods for the fair and efficient

13   adjudication of the controversy."  "Judicial economy and fairness are the focus of the

14   predominance and superiority requirements."  *Oregon Laborers-Employers*, 188 F.R.D. at 375.

15   Plaintiffs' claims meet these requirements.

16   **1.    Common Questions of Law and Fact Predominate Over Individual**
     **Questions**

17

18   As the United States Supreme Court has noted, predominance is a test that is "readily met"

19   in antitrust cases.  *Amchem Prods.,* 521 U.S. at 625; *see also In Re Warfarin Sodium Antitrust*

20   *Litig.*, 391 F.3d 516, 528 (3rd Cir. 2004).  The overwhelming weight of authority holds that in

21   horizontal price-fixing cases, the predominance requirement is readily satisfied.

22   In determining whether common questions predominate in a price fixing case, "the focus of

23   this court should be principally on issues of liability."  *In re Sugar Industry,* 1976 WL 1374 at *22;

24   *Citric Acid,* 1996 WL 655791 at *6; *see also Local Joint Executive Board of Culinary/Bartender*

25   *Trust Fund v. Las Vegas,* 244 F.3d 1152, 1163 (9th Cir. 2001); *Hanlon,* 150 F.3d at 1022

26   ("common nucleus of facts and potential legal remedies dominates this litigation").  Common

27   questions need only predominate; they do not need to be dispositive of the litigation as a whole.

28

1    *Lorazepam*, 202 F.R.D. at 29; *In re Cardizem CD Antitrust Litigation*, 200 F.R.D. 326, 339 (E.D.

2    Mich. 2001); *Potash* 159 F.R.D. at 693.  The predominance standard is met "unless it is clear that

3    individual issues will overwhelm the common questions and render the class action valueless."  *In*

4    *re NASDAQ Market-Makers Antitrust Litigation*, 169 F.R.D. 493, 517 (S.D.N.Y. 1996).

5            In section 1 Sherman Act class cases, the existence of a conspiracy has been recognized as

6    the overriding issue common to all plaintiffs.  As the court acknowledged in *Rubber Chemicals*:

7    "the great weight of authority suggests that the dominant issues in cases like this are whether the

8    charged conspiracy existed and whether price-fixing occurred."  232 F.R.D. at 353 (quoting *Citric*

9    *Acid*, 1006 U.S. Dist. Lexis 16409 at *21); *see also In re Cement and Concrete,* 1979 WL 1595 at

10   *2 ("the asserted nationwide price fixing conspiracy presents questions of law and fact common to

11   the class members which predominate over any questions affecting only individual members"); *In*

12   *re Sugar Industry,* 1976 WL 1374 at *23 ("It is the allegedly unlawful horizontal price-fixing

13   arrangement among defendants that, in it its broad outlines, comprises the predominating, unifying

14   common interest as to these purported Plaintiff representatives and all potential class members");

15   *Mularkey v. Holsum Bakery, Inc.,* 120 F.R.D. 118, 122 (D. Ariz. 1988).  Courts in this district and

16   elsewhere have held that this issue alone is sufficient to satisfy the Rule 23(b)(3) predominance

17   requirement.  *See, e.g., Rubber Chemicals*, 232 F.R.D. at 353; *Citric Acid*, 1996 WL 655791 at *8.

18           Furthermore, courts have uniformly found predominant common questions of law or fact

19   with respect to the existence, scope, and effect of the alleged conspiracy.  *See In re Citric Acid*,

20   1996 WL 655791 at *6 (common questions include whether there was a conspiracy, whether prices

21   were fixed pursuant to the conspiracy, and whether the prices plaintiffs' paid were higher than they

22   should have been); *Estate of Jim Garrison*, 1996 WL 407849 at *3 ("Antitrust price fixing

23   conspiracy cases by their nature deal with common legal and factual questions of the existence,

24   scope and effect of the alleged conspiracy." (citation omitted)); *In re NASDAQ Market-Makers*

25   *Antitrust Litg.*, 169 F.R.D. at 518.

26           Common issues relating to the existence and effect of the conspiracy predominate over any

27   questions arguably affecting only individual Class members because they are the central issue in

28

the case and proof is identical for every member of the Class.   If separate actions were to be filed by each Class member, each would have to establish the existence of the same conspiracy and would depend on identical evidence, and each would prove damages using identical "textbook" economic models. These issues pose predominant common questions of law and fact.

Finally, as explained above, the Court need not concern itself with questions of the manageability of a trial because the Settlements dispose of the need for a trial with regard to Settling Defendants, along with any "thorny issues" that might arise.  *See Amchem,* 521 U.S. at 620; *Carnegie,* 376 F. 3d at 660.

### 2.   A Class Action Is Superior to Other Available Methods for the Fair and Efficient Adjudication of this Case

Rule 23(b)(3) provides that certification of a case is appropriate if class treatment "is superior to other available methods for the fair and efficient adjudication of the controversy." It sets forth four factors to be considered:  (1) the interest of members of the class in individually controlling the prosecution of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by members of the class; (3) the desirability of concentrating the litigation of the claims in a particular forum; and (4) the difficulties likely to be encountered in the management of a class action.  Fed. R.Civ.P. 23(b)(3).  Prosecuting this action as a class action is clearly superior to other methods of adjudicating this matter.

The alternative to a class action – many duplicative individual actions – would be inefficient and unfair.  "Numerous individual actions would be expensive and time-consuming and would create the danger of conflicting decisions as to persons similarly situated." *Lerwill*, 582 F.2d at 512.  Further, it would deprive many class members of any practical means of redress.  Because prosecution of an antitrust conspiracy case against economically powerful defendants is difficult and expensive, class members with all but the largest claims would likely choose not to pursue their claims. *See Local Joint Executive Board of Culinary/Bartender Trust Fund*, 244 F.3d at 1163. Most class members would be effectively foreclosed from pursuing their claims absent class certification.  *Hanlon*, 150 F.3d at 1023 ("many claims [that] could not be successfully asserted

individually … would not only unnecessarily burden the judiciary, but would prove uneconomic for potential plaintiffs"); *Northwestern Fruit Co.,* 116 F.R.D. at 389 ("Multiple lawsuits . . . would be costly and inefficient, and the exclusion of every class member that cannot afford separate representation would be neither 'fair' nor an 'adjudication' of their claims.").[8]

The proposed class satisfies the requirements of Rule 23(b)(3).

### D.   The Court Should Appoint the Plaintiffs' Current Counsel as Counsel for the Class

Fed. R. Civ. P. 23(c)(1)(B) states that "[a]n order certifying a class action … must appoint class counsel under Rule 23(g)."  Rule 23(g)(1)(C) states that "[i]n appointing class counsel, the court (i) must consider:  [1] the work counsel has done in identifying or investigating potential claims in the action, [2] counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, [3] counsel's knowledge of the applicable law, [4] the resources counsel will commit to representing the class."

The current co-lead counsel, Saveri & Saveri, Inc.; Hagens Berman Sobol Shapiro LLP; and Wolf, Haldenstein, Adler, Freeman & Herz seek to be appointed as Counsel for the Class. Pursuant to this Court's order, these firms have served as co-lead counsel thus far and are willing and able to vigorously prosecute this action and to devote all necessary resources to obtain the best possible result.  The work done to date supports the conclusion that they should be appointed as Class Counsel for purposes of the Settlements.[9]  Each firm meets the criteria of Rule 23(g)(1)(C)(i).[10]

## IV.   CONCLUSION.

For the foregoing reasons, plaintiffs respectfully submit that the Court should grant preliminary approval to the Settlements, conditionally certify the settlement Class, and order that notice be given to the Class and a hearing on final approval be scheduled according to the schedule

---

[8] In this regard, it is worth noting that the defendants who have thus far pled guilty to criminal violations of the antitrust laws avoided restitution to their victims based in part on the expectation of a recovery in this action.

[9] *See, e.g., Harrington v. City of Albuquerque*, 222 F.R.D. 505, 520 (D.N.M. 2004).

[10] See note 7 above.  *Cf. Farley v. Baird, Patrick & Co., Inc.* 1992 WL 321632*5 (S.D.N.Y. 1992) ("[c]lass counsel's competency is presumed absent specific proof to the contrary by defendants").

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS WITH SAMSUNG AND INFINEON DEFS.; MEMORANDUM OF LAW IN SUPPORT THEREOF – Master File No. M-02-1486 PJH

- 22 -

1    set forth above.

2    Dated:  March 31, 2006                    Respectfully submitted,

3

4                                              /s/ *Guido Saveri*
                                               Guido Saveri (22349)
5                                              R. Alexander Saveri (173102)
                                               Geoffrey C. Rushing (126910)
6                                              Cadio Zirpoli (179108)
                                               SAVERI & SAVERI, INC.
7                                              111 Pine Street, Suite 1700
                                               San Francisco, CA  94111-5619
8                                              Telephone:  (415) 217-6810
                                               Facsimile:  (415) 217-6813
9                                              *guido@saveri.com*
                                               *rick@saveri.com*

10

11                                             Steve W. Berman (*pro hac vice*)
                                               Anthony D. Shapiro (*pro hac vice*)
12                                             George W. Sampson
                                               Craig R. Spiegel (122000)
13                                             HAGENS BERMAN SOBOL SHAPIRO LLP
                                               1301 Fifth Avenue, Suite 2900
14                                             Seattle, Washington  98101
                                               Telephone: (206) 623-7292
15                                             Facsimile No.: (206) 623-0594

16                                             Fred Taylor Isquith (*pro hac vice*)
                                               Mary Jane Fait (*pro hac vice*)
17                                             WOLF, HALDENSTEIN, ADLER,
                                                   FREEMAN & HERZ
18                                             270 Madison Avenue
                                               New York, NY  10016
19                                             Telephone:  (212) 545-4600
                                               Facsimile:  (212) 545-4653

20                                             Co-Lead Counsel for Plaintiffs

21

22

23

24

25

26

27

28