# GIBSON, DUNN & CRUTCHER LLP

LAWYERS

A REGISTERED LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

One Montgomery Street  San Francisco, California 94104-4505
(415) 393-8200
www.gibsondunn.com

RBrass@gibsondunn.com

May 30, 2006

**VIA ECF AND HAND DELIVERY**

Direct Dial
(415) 393-8293
Fax No.
(415) 374-8429

Client No.
T 63440-00007

Hon. Joseph C. Spero
United States Magistrate Judge
Courtroom A, 15th Floor
United States District Court for the Northern District of California
450 Golden Gate Ave.
San Francisco, CA 94102

Re:  *In Re DRAM Antitrust Litigation*
     Master File No: M-02-1486-PJH (JCS)

Dear Judge Spero:

Having pursued the Dispute Resolution Procedures set forth in the Court's February 28, 2006 order, and having failed to reach a resolution, the parties submit this joint letter brief.

**Defendants' Position**

In January, Defendants took Rule 30(b)(6) depositions of representatives of each Plaintiff. At each deposition, Defendants asked questions concerning whether and how Plaintiffs re-sold the DRAM they purchased from Defendants. Asking such questions is appropriate and places no undue burden on Plaintiffs – defendants certainly are entitled to discover a fact that may entitle them to dismissal of a named plaintiff's claim. *See, e.g., Burkhalter v. MacFarms International Inc.*, 141 F.R.D. 144, 151 (N.D. Cal. 1991) (holding that a purchaser of an allegedly price-fixed product who re-sold that product at cost lacked standing.) Plaintiffs, however, were instructed by their counsel not to answer questions about Plaintiffs' contracts with their DRAM customers, about how Plaintiffs determined the amounts they charged, or about the amounts they charged in relation to what they paid for DRAM. Counsel objected not on the grounds of any privilege, but rather on the

basis that these questions concerned "downstream data."[1]

In addition to refusing to answer questions concerning whether and how Plaintiffs sold or re-sold DRAM, Plaintiffs have also failed to answer an interrogatory Defendants propounded requesting the identification of "all DRAM or DRAM products produced, sold, or manufactured by you during the Class Period. . . .," citing the self-same ground. *See* Plaintiffs' Responses to Defendants First Set of Interrogatories Number 17.

Defendants have met and conferred with Plaintiffs regarding this improper objection on several occasions. First, at each deposition where a Plaintiff was instructed not to answer questions about "downstream data," Defendants stated on the record their objection, noting that instructing witnesses to refuse to answer was improper. *Id.* The Court's February 27, 2006 Order specifically states that, "[d]uring deposition, counsel shall not instruct witnesses not to answer except on grounds of attorney-client privilege, work-product privilege, Fifth Amendment, violations of this Discovery plan, beyond the scope of 30(b)(6) topic for which the witness is designated, or any other applicable privilege that prevents the witness from testifying." ¶ B.6.c. Claiming a question seeks "downstream data" meets none of these exceptions.

The inappropriateness of Plaintiffs' counsel's instructions was then brought to Plaintiffs attention in a letter of Mr. Bergman dated February 22, 2006 to Ms. Fait and Mr. Bottini. (Exh 1.) Plaintiffs responded in a letter from Mr. Isquith dated March 2, 2006 that they would not answer the interrogatory that they deemed sought "downstream data" and that they would not answer the pending questions from the depositions. (Exh. 2.) Defendants reserved the right to bring this matter before your Honor in a letter of April 11, 2006 of Mr. Bergman to Mr. Isquith but chose not to do so at that time. (Exh. 3.) On May 17, 2006, Mr. Joel Sanders met with Mr. Bottini in person, seeking to resolve this dispute.

Plaintiffs' Reply brief in support of their motion for class certification tacitly concedes the appropriateness of the limited discovery on this topic that Defendants put forward but which remains unanswered. There, Plaintiffs assert that they do not have any "cost-plus" contracts with their customers. (Mem. n.18.) But Plaintiffs cannot refuse Defendants' questions on a proper topic yet also make such unsubstantiated claims to the Court on that same such subject. Furthermore, the limited deposition testimony Defendants were able to secure about Plaintiffs' DRAM sales suggests that several plaintiffs may indeed pass on the cost of DRAM on a cost-plus or at-cost basis.[2]

Simply requiring the answering of questions to which an inappropriate objection was interposed would not unduly burden Plaintiffs. The Court should therefore order Plaintiffs to immediately answer Interrogatory No. 17 and to make each Plaintiff available to complete their deposition to respond to the pending questions and any related follow-up questions.

---

[1] *See, e.g.,* Coraluzzi Dep. Tr. 106:23-110:15; Davidson Dep. Tr. 48:5-49:1; Grabowski Dep. Tr. 50:20-53:16, 161:20-163:6; Irwin Dep. Tr. 47:16-50:14; Lawson Dep. Tr. 24:4-25:19; Schwab Dep. Tr. 31:17-35:8; Valavanis Dep. Tr. 41:13-42:2.

[2] *See* Coraluzzi Dep. Tr. 54:20-56:10 (company used DRAM modules to repair clients' computers); Davidson Dep. Tr. 44:12-45:14 (company special orders memory for customers); Grabowski Dep. Tr. 14:17-25 (company described as an outsourced IT department); Irwin Dep. Tr. at 34:21-36:21 (company used DRAM in servicing clients' computers); Lawson Dep. Tr. 25:10-16 (company bought DRAM for resale).

**Plaintiffs' Position**

The far-reaching and burdensome discovery sought by defendants regarding every aspect pertaining to the named plaintiffs' resale of DRAM constitutes discovery of "downstream data" that is not allowed in direct purchaser antitrust actions.[3] *In re Vitamins Antitrust Litig.*, 198 F.R.D. 296, 301 (D.D.C. 2000) ("The fact remains that no court has ever allowed production of individualized downstream data ..."). As noted by another court: "Whether purchasers absorbed, passed on, or made a profit on the overcharges in comparison with the industry generally is irrelevant and investigations into such matters are proscribed ..." *In re Pressure Sensitive Labelstock Antitrust Litig.*, 226 F.R.D 492, 497-98 (M. D. Pa. 2005).[4]

Here, the broad-ranging discovery sought by defendants has absolutely no relevance to the issues in this litigation between the direct purchaser plaintiffs and defendants. The direct purchaser plaintiff's depositions were noticed and taken by defendants during the period in which discovery was limited to common liability issues. *See* February 27, 2006 Order, at p.2. Since "downstream data" is clearly only applicable in the indirect action, it was a violation of this Court's order for defendants to seek such discovery at the direct plaintiff's January 2006 depositions, and plaintiffs' counsel correctly instructed plaintiffs to not answer questions seeking such discovery. *See* February 27, 2006 Order, ¶B.5.c (counsel may instruct witness not to answer based on "violations of the Discovery Plan").[5]

Indeed, it is transparent that defendants' only reasons for seeking this highly improper discovery are to harass the direct plaintiffs and to sidetrack the discovery process by seeking burdensome discovery which is inadmissible in the direct purchaser action. Recognizing that a price-fixing conspiracy claim may not be defended on the ground that the purchaser passed on the higher cost to its customers (*see Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 489 (1968) and *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 745-46 (1977)), defendants instead claim that they need the requested discovery so that they "may determine whether a plaintiff may properly

---

[3]   Defendants seek not only all information regarding plaintiffs' resale of DRAM but also, through Interrogatory No. 17, the identification of "all DRAM or DRAM products *produced, sold, or manufactured* by you . . ." (emphasis added).

[4]   *Burkhalter Travel Agency v. MacFarms Internat'l, Inc.*, 141 F.R.D. 144 (N.D. Cal. 1991), the sole case cited by defendants, is not to the contrary. That decision arose in the context of a motion for summary judgment regarding the plaintiff's standing. It did not involve, as do all the subsequently-decided cases cited by plaintiffs, a discovery motion seeking downstream data. The court found that the plaintiff – a travel agency that had made only a single purchase of macadamia nuts from defendants during the five-year class period – lacked standing. 141 F.R.D at 150. The court did not order the plaintiff to produce downstream data. Even if it had, there would have been no burden involved since the plaintiff made a single purchase during the class period. The plaintiffs here, in contrast, made thousands of purchases.

[5]   In addition, the Order specifically states that counsel may instruct a witness not to answer on the basis that the questioning is "beyond the scope of 30(b)(6) topic for which the witness is designated." February 27, 2006 Order, at ¶B.6.c. The deposition notices directed to the plaintiffs were F.R.C.P 30(b)(6) notices since the plaintiffs are corporations. Plaintiffs properly objected to all topics in the deposition notices concerning downstream data. *See* Exhibit 4. Defendants never challenged these objections and thus questioning concerning such topics was the proper basis of an instruction not to answer at the depositions. In fact, it is defendants who have violated the February 27, 2006 Order. Paragraph B.6.a. required the parties to "meet and confer and submit a letter to the Court on or before March 3, 2006 identifying the 30(b)(6) topics, 30(b)(6) witnesses, and limitations on both party and non-party depositions for merits discovery in the Direct Purchaser and Indirect Purchaser actions." During the meet and confer sessions that ensued, defendants failed to raise any issues regarding the topics pertaining to downstream data that plaintiffs had objected to in the F.R.C.P. 30(b)(6) deposition notices served by defendants on the named plaintiffs. Moreover, they failed to raise any issues on this subject in the March 3, 2006 letter Joel Sanders submitted to the Court. *See* Exhibit 5.

represent the putative class" (*See* Defendants' Position, *supra*.). The relevancy of "downstream data" to class certification issues has been squarely addressed and rejected. *In re Pressure Sensitive Labelstock Antitrust Litig.*, 226 F.R.D. at 492, 494-98; *In re Plastics Additives Antitrust Litig.* 2004 WL 2743591, at *15-16 (E.D. Pa. 2004).[6] The relevancy of such discovery to the issue of whether any plaintiff had a "cost-plus" contract has also been rejected. *In re Pressure Sensitive Labelstock Antitrust Litig.*, 226 F.R.D. at 498. *See also In re Vitamins Antitrust Litig.*, 198 F.R.D. at 298-302.

Even if the requested discovery had some tangential relevance, which it does not, F.R.C.P. 26(b)(2)(iii) dictates that discovery shall be limited by the court if it determines that the burden or expense of the proposed discovery outweighs its likely benefit. The *Vitamins* court applied this standard to the issue of discovery of downstream data and held that even if there were some marginal relevance of the requested discovery, such relevance was clearly outweighed by "the need to advance this litigation rather than allow it to be stalled by overly broad and unduly burdensome discovery..." *In re Vitamins Antitrust Litig.*, 198 F.R.D. at 302. Here, the defendants have already obtained substantial discovery from each of the named plaintiffs. Eight plaintiffs were deposed in cities across the United States in January 2006, and such depositions occurred only after plaintiffs had responded to defendants' interrogatories and document requests. Plaintiffs produced every document and answered every question posed by defendants' counsel as to every aspect of their purchase of DRAM from defendants (from which documents and answers defendants can determine that plaintiffs' purchases were not pursuant to cost-plus contracts). As to the interrogatories, defendants take issue with only one response and do not contend that plaintiffs have not adequately responded to the other 18 interrogatories. Thus, defendants' motion to compel is without basis and should be denied.

Respectfully submitted,

Frank A. Bottini
*/s/ Francis A. Bottini Jr.*
WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP
750 B Street, Suite 2770
San Diego, CA 92101
Telephone: 619/239-4599

Co-Lead Counsel for
Direct Purchaser Plaintiffs

100013481_1.DOC

Rachel S. Brass
*/s/ Rachel S. Brass*
GIBSON, DUNN & CRUTCHER LLP
One Montgomery Street
San Francisco, CA 94104
Telephone: 415/393-8200

Counsel for Defendant
Micron Technology, Inc.

---

[6] The motion for class certification in this case was heard on May 17, 2006 by Judge Hamilton. As defendants note above, defendants "reserved the right to bring this matter before Your Honor in a letter of April 11, 2006 of Mr. Bergman to Mr. Isquith but chose not to do so at that time." Defendants' conduct in intentionally delaying bringing this discovery dispute to the Court until after Judge Hamilton has already conducted the class certification hearing belies any contention that the requested discovery is relevant to class certification issues.