KENNETH R. O'ROURKE (S.B. #120144)
DANIEL L. ALEXANDER (S.B. #214149)
PETER NEMEROVSKI (S.B. #226289)
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Telephone:     (213) 430-6000
Facsimile:     (213) 430-6407
korourke@omm.com

IAN SIMMONS
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
Telephone:     (202) 383-5300
Facsimile:     (202) 383-5414
isimmons@omm.com

Attorneys for Defendants Hynix Semiconductor Inc.
and Hynix Semiconductor America Inc.

**[Additional moving defendants and counsel listed
on last page]**

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| In Re Dynamic Random Access Memory (DRAM) Antitrust Litigation | Master File No. M-02-1486 PJH<br><br>MDL No. 1486 |
| This Document Relates to:<br><br>*Petro Computer Systems, Inc., et al. v. Micron Technology, Inc., et al.* (C 05-02472) | **DEFENDANTS' NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS RE: SECOND AND FOURTH CLAIMS FOR RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>Hearing Date: September 20, 2006<br>Time: 9:00 am.<br>Courtroom: 3, 17th Floor<br>Judge: Hon. Phyllis J. Hamilton |

LA2:808122.5

# TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS ...................... 1

INTRODUCTION ................................................................................................................. 2

ARGUMENT ........................................................................................................................ 4

    I.        RULE 12(C) STANDARD ................................................................................ 4

    II.      PLAINTIFFS LACK STANDING UNDER OHIO AND WEST VIRGINIA LAW BECAUSE THOSE STATES CONTINUE TO RECOGNIZE THE "DIRECT PURCHASER" REQUIREMENT OF *ILLINOIS BRICK CO. V. ILLINOIS* ........................................................................................................ 5

          A.     Ohio ............................................................................................... 6

          B.     West Virginia ................................................................................ 6

    III.     PLAINTIFFS' CLAIMS UNDER ALABAMA LAW SHOULD BE DISMISSED BECAUSE THEY ARE UNTIMELY, AND BECAUSE ALABAMA'S ANTITRUST STATUTES ONLY REGULATE ACTIVITIES THAT OCCUR WITHIN ALABAMA ......................................................... 8

    IV.     PLAINTIFFS LACK STANDING UNDER SOUTH DAKOTA LAW BECAUSE SOUTH DAKOTA'S ANTITRUST STATUTE ONLY APPLIES TO ACTS THAT AFFECT TRADE OR COMMERCE WHOLLY WITHIN SOUTH DAKOTA ............................................................................................ 9

    V.      DEFENDANTS ARE ENTITLED TO JUDGMENT ON THE PLEADINGS AS TO PLAINTIFFS' PENNSYLVANIA CLAIMS BECAUSE ANTITRUST DAMAGES ARE NOT AVAILABLE UNDER PENNSYLVANIA LAW ...................................................................................... 10

    VI.     PLAINTIFFS WHO PURCHASED PRODUCTS CONTAINING DRAM CANNOT SATISFY THE REQUIREMENTS FOR ANTITRUST STANDING TO ASSERT STATE-LAW ANTITRUST CLAIMS ......................... 10

          A.     The *Associated General Contractors* Test Should Apply To Determine Whether Plaintiffs Have Standing Under The Antitrust Laws Of Arizona, California, Kansas, Maine, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Mexico, North Carolina, North Dakota, South Dakota, and Wisconsin ...................................................... 11

          B.     Plaintiffs Who Purchased Products Containing DRAM Cannot Establish Antitrust Standing Under The *Associated General Contractors* Test ....................................................................... 15

          C.     Dismissal With Prejudice Based On The Pleadings Alone Is Appropriate Where The Complaint Shows That Plaintiffs Lack Standing ...................................................................................... 22

CONCLUSION ................................................................................................................... 23

LA2:808122.5

# TABLE OF AUTHORITIES

**Page**

**Cases**

2660 Woodley Rd. Joint Venture v. ITT Sheraton Corp.,
369 F.3d 732 (3d Cir. 2004)...................................................................................... 15

A&M Supply Co. v. Microsoft Corp.,
654 N.W.2d 572 (Mich. App. 2002) .......................................................................... 20

Abbott Labs. v. Durrett,
746 So. 2d 316 (Ala. 1999)......................................................................................... 9

Archer Daniels Midland Co. v. Seven Up Bottling Co. of Jasper, Inc.,
746 So. 2d 966 (Ala. 1999)......................................................................................... 9

Associated General Contractors of California Inc. v. California State Council of Carpenters,
459 U.S. 519 (1983)........................................................................................... passim

Beckler v. Visa U.S.A., Inc.,
No. 09-04-C-00030, 2004 WL 2115144 (N.D. Dist. Aug. 23, 2004)........................ 12, 13, 14, 18, 22

Bhan v. NME Hospitals, Inc.,
772 F.2d 1467 (9th Cir. 1985) .................................................................................. 21

Blue Shield of Virginia v. McCready,
457 U.S. 465 (1982).................................................................................................. 18

Bunker's Glass Co. v. Pilkington, PLC,
75 P.3d 99 (Ariz. 2003)....................................................................................... 11, 14

California State Council of Carpenters v. Associated General Contractors of California,
404 F. Supp. 1067 (N.D. Cal. 1975) .......................................................................... 22

Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,
467 U.S. 837 (1984)..................................................................................................... 7

Cholla Ready Mix, Inc. v. Civish,
382 F.3d 969 (9th Cir. 2004) ...................................................................................... 5

CNG Transmission Corp. v. Craig,
564 S.E.2d 167 (W. Va. 2002)..................................................................................... 7

Cornelison v. Visa U.S.A., Inc.,
No. 03-1350 (S.D. Circuit Ct. Sept. 28, 2004)..................................................... 13, 14

Crouch v. Crompton Corp.,
No. 02 CVS 4375, 03 CVS 2514, 2004 WL 2414027 (N.C. Super. Ct. Oct. 28, 2004)............. passim

Gray v. Marshall County Board of Education,
367 S.E.2d 751 (W. Va. 1988)................................................................................. 6, 7

Gutzwiller v. Visa U.S.A., Inc.,
No. C4-04-58, 2004 WL 2114991 (Minn. Dist. Ct. Sept. 15, 2004) ......................... 11, 12, 13, 14, 22

Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.,
896 F.2d 1542 (9th Cir. 1990) .................................................................................... 5

Hanover Shoe Co. v. United Shoe Machinery Corp.,
392 U.S. 482 (1968).................................................................................................... 5

Harrah's Vicksburg Corp. v. Pennebaker,
812 So.2d 163 (Miss. 2002)...................................................................................... 15

Hyde v. Abbott Labs., Inc.,
473 S.E.2d 680 (N.C. App. 1996) ............................................................................ 11

# TABLE OF AUTHORITIES
## (continued)

Page

*Illinois Brick Co. v. Illinois,*
431 U.S. 720 (1977) .................................................................. 5, 6, 7, 11

*Johnson v. Microsoft Corp.,*
834 N.E.2d 791 (Ohio 2005) ........................................................... 6

*Knevelbaard Dairies v. Kraft Foods, Inc.,*
232 F.3d 979 (9th Cir. 2000) ......................................................... 12

*Knowles v. Visa U.S.A., Inc.,*
No. Civ.A. CV-03-707, 2004 WL 2475284 (Me. Super. Oct. 20, 2004) ................... passim

*Mack v. City of Detroit,*
467 Mich. 186 (2002) ................................................................ 22

*Melnick v. Microsoft Corp.,*
No. CV-99-709 WL 1012261 (Me. Super. Aug. 24, 2001) .............................. 18

*Orr v. Beamon,*
77 F. Supp. 2d 1208 (D. Kan. 1999) ................................................ 14

*Peck v. Gen. Motors Corp.,*
894 F.2d 844 (6th Cir. 1990) ....................................................... 12

*R.C. Dick Geothermal Corp. v. Thermogenics, Inc.,*
890 F.2d 139 (9th Cir. 1989) (en banc) ........................................ 12, 17

*Repass v. Workers' Comp. Div.,*
569 S.E.2d 162 (W. Va. 2002) ........................................................ 7

*Sniffin v. Cline,*
456 S.E.2d 451 (W. Va. 1995) ........................................................ 7

*Stark v. Visa U.S.A., Inc.,*
No. 03-055030-CZ, 2004 WL 1879003 (Mich. Cir. Ct. July 23, 2004) ................. passim

*State v. Fullerton Lumber,*
152 N.W. 708 (S.D. 1915) ............................................................ 9

*Strang v. Visa U.S.A., Inc.,*
No. 03 CV 011323, 2005 WL 1403769 (Wis. Cir. Feb. 8, 2005) ...................... passim

*Stutzle v. Rhonepoulenc S.A.,*
No. 002768 Oct. Term 2002, 2003 WL 22250424 (Phila Cty. Sept. 26, 2003) ........... 10

*Vinci v. Waste Management, Inc.,*
36 Cal. App. 4th 1811 (1995) ...................................................... 14

*Weaver v. Cabot Corp.,*
No. 03 CvS 04760, 2004 WL 3406119 (N.C. Super. Ct. Mar. 26, 2004) ................. 19

*XF Enterprises Inc. v. BASF Corp.,*
47 Pa. D. & C.4th 147 (Phila. Cty. 2000) .......................................... 10

## Statutes

10 Maine Rev. Stat. Ann. § 1104(1) ................................................ 11

10 Maine Rev. Stat. Ann. § 1101 *et seq.* .......................................... 2

15 U.S.C.A. § 15 .................................................................... 6

15 U.S.C.A. § 15(a) ............................................................... 15

# TABLE OF AUTHORITIES
## (continued)

**Page**

Ala. Code § 6-2-38(l) .......................................................................................... 8

Ala. Code § 8-10-1 *et seq.* .............................................................................. 1, 8

Ariz. Rev. Stat. § 44-1408 ................................................................................ 15

Ariz. Rev. Stat. § 44-1412 ................................................................................ 15

Ariz. Rev. Stat. § 44-1401 *et seq.* .................................................................... 1

Cal. Bus. & Prof. Code § 16750(a) .................................................................. 11

Cal. Bus. & Prof. Code § 16700 *et seq.* ........................................................... 1

Kan. Stat. § 50-161(b) ...................................................................................... 11

Kan. Stat. Ann. § 50-101 *et seq.* ...................................................................... 2

Mich. Comp. Laws Ann. § 445.778(2) ............................................................ 11

Mich. Comp. Laws Ann. § 445.773 *et seq.* ...................................................... 2

Minn. Stat. § 325D.57 ...................................................................................... 11

Minn. Stat. § 325D.52 *et seq.* ........................................................................... 2

Miss. Code Ann. § 75-21-9 .......................................................................... 11, 15

Miss. Code Ann. § 75-21-1 *et seq.* ................................................................... 2

N.D.C.C. § 51-08.1-08(3) ................................................................................ 11

N.M. Stat. Ann. § 57-1-15 ................................................................................ 15

N.M. Stat. Ann. § 57-1-3 .................................................................................. 15

N.M. Stat. Ann. § 57-1-3(A) ............................................................................ 11

Neb. Rev. Stat. § 59-821 ............................................................................... 11, 15

Neb. Rev. Stat. § 59-829 .................................................................................. 15

Nebraska Rev. Stat. § 59-801 *et seq.* ............................................................... 2

Nev. Rev. Stat. § 598A.050 .............................................................................. 15

Nev. Rev. Stat. Ann. § 598A.210 ..................................................................... 15

Nev. Rev. Stat. Ann. § 598A.210(2) ................................................................ 11

Nev. Rev. Stat. Ann. § 598A *et seq.* ................................................................. 2

N.M. Stat. Ann. § 57-1-1 *et seq.* ...................................................................... 2

N.C. Gen. Stat. § 75-1 *et seq.* .......................................................................... 2

N.D. Cent. Code § 51-08.1-01 *et seq.* .............................................................. 2

Ohio Rev. Code Ann. § 1331.01 *et seq.* ........................................................ 1, 5

S.D. Code ¶ 13.1802 (1939) .............................................................................. 9

S.D. Rev. Code §§ 4353-4357 (1919) ................................................................ 9

S.D. Session Laws, ch. 305 § 1 (1977) .............................................................. 9

S.D.C.L. § 37-1-33 ............................................................................................ 11

S.D.C.L. Ann. § 37-1 *et seq.* .......................................................................... 1, 9

W. Va. Code § 47-18-16 ................................................................................. 6, 7

W. Va. Code § 47-18-20 .................................................................................... 8

W. Va. Code § 47-18-6 ...................................................................................... 7

W. Va. Code § 47-18-9 ................................................................................... 6, 8

## TABLE OF AUTHORITIES
### (continued)

Page

W. Va. Code St. R. § 142-9-1 (2002) ....................................................................... 7

W. Va. Code St. R. § 142-9-2 (2002) ....................................................................... 7

W. Va. Code § 47-18-1 *et seq.* ........................................................................... 1, 5

Wis. Stat. § 133.18(1)(a) .......................................................................................... 11

Wis. Stat. § 133.01 *et seq.* ...................................................................................... 2

### Rules

Fed. R. Civ. P. 12(c) .............................................................................................. 1, 4

LA2:808122.5

Defendants' Motion for Judgment on the Pleadings
Re: Second and Fourth Claims For Relief
Master File No. M-02-1486 PJH

1

## NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS

2

3    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

4            PLEASE TAKE NOTICE THAT, pursuant to Federal Rule of Civil Procedure 12(c),

5    Defendants Micron Technology, Inc., Micron Semiconductor Products, Inc., Infineon Technologies

6    AG, Infineon Technologies North America Corporation, Mosel Vitelic Corporation, Mosel Vitelic

7    Corporation USA, Nanya Technology Corporation, Nanya Technology Corporation USA, Elpida

8    Memory, Inc., Elpida Memory (USA), Inc., Hynix Semiconductor Inc., Hynix Semiconductor

9    America Inc., Winbond Electronics Corporation, Winbond Electronics Corporation America, Inc.,

10   and NEC Electronics America, Inc. ("Defendants") will and hereby do move for judgment on the

11   pleadings as to Plaintiffs' Second and Fourth Claims For Relief.  This motion shall be heard on

12   September 20, 2006, at 9:00 a.m., or as soon thereafter as it may be heard, in the courtroom of the

13   Honorable Phyllis J. Hamilton, United States District Judge, United States District Court, 450

14   Golden Gate Ave., San Francisco, California, 94102.

15           Based on the pleadings in this case, all Plaintiffs' claims under the following state laws are

16   barred as a matter of law:

17               1.   Alabama Code § 8-10-1 *et seq.* (Compl. ¶ 95)

18               2.   Ohio Revised Code Annotated § 1331.01 *et seq.* (Compl. ¶ 110)

19               3.   Pennsylvania Common Law (Compl. ¶ 111)

20               4.   South Dakota Codified Laws Annotated § 37-1 *et seq.* (Compl. ¶ 112)

21               5.   West Virginia Code § 47-18-1 *et seq.* (Compl. ¶ 115)

22   Therefore, Defendants respectfully request that the Court enter judgment on the pleadings in

23   Defendants' favor as to those claims.

24           In addition, as discussed in detail below, all plaintiffs who purchased products containing

25   dynamic random access memory ("DRAM") chips lack standing to assert claims under the following

26   state statutes:

27               1.   Arizona Revised Statutes § 44-1401 *et seq.* (Compl. ¶ 96)

28               2.   California Business and Professions Code § 16700 *et seq.* (Compl. ¶¶ 76-83, 97)

3.   Kansas Statutes Annotated § 50-101 *et seq.* (Compl. ¶ 100)

4.   10 Maine Revised Statutes Annotated § 1101 *et seq.* (Compl. ¶ 101)

5.   Michigan Compiled Laws Annotated § 445.773 *et seq.* (Compl. ¶ 102)

6.   Minnesota Statutes § 325D.52 *et seq.* (Compl. ¶ 103)

7.   Mississippi Code Annotated § 75-21-1 *et seq.* (Compl. ¶ 104)

8.   Nebraska Revised Statutes § 59-801 *et seq.* (Compl. ¶ 105)

9.   Nevada Revised Statutes Annotated § 598A *et seq.* (Compl. ¶ 106)

10. New Mexico Statutes Annotated § 57-1-1 *et seq.* (Compl. ¶ 107)

11. North Carolina General Statutes § 75-1 *et seq.* (Compl. ¶ 108)

12. North Dakota Century Code § 51-08.1-01 *et seq.* (Compl. ¶ 109)

13. Wisconsin Statutes § 133.01 *et seq.* (Compl. ¶ 116)

Therefore, Defendants respectfully request that the Court enter judgment on the pleadings in Defendants' favor as to those claims as well.

Defendants' motion is based upon this Notice of Motion; the accompanying Memorandum of Points and Authorities; the complete files and records in this action, including Plaintiffs' Class Action Complaint; oral argument of counsel; and such other and further matters as this Court may consider.

## **INTRODUCTION**

In this purported class action, Plaintiffs allege that Defendants and other unidentified co-conspirators engaged in a conspiracy to fix the prices at which they sold dynamic random access memory ("DRAM"), a type of computer memory chip.  Compl. ¶ 47.  Plaintiffs claim that as a result of the alleged conspiracy, they paid more for DRAM purchased "indirectly" from the Defendants than they would have paid in the absence of the alleged conspiracy, "including paying more for personal computers and other products in which DRAM is a component."  Compl. ¶ 74.  Plaintiffs allege that by engaging in this conspiracy, Defendants violated Section 1 of the Sherman Act, 43 state statutes in 34 states, and the common law of Pennsylvania.  Compl. ¶¶ 70-141.

Among the state laws supposedly violated by the Defendants are several states' antitrust laws. The claims under state antitrust laws are grouped together in Plaintiffs' Second and Fourth Claims for Relief. Compl. ¶¶ 76-83, 94-117.[1] This motion for judgment on the pleadings seeks dismissal of several of the claims asserted in Plaintiffs' Second and Fourth Claims For Relief alleging violations of state antitrust laws.[2] Judgment on the pleadings in favor of Defendants is appropriate for the following reasons:

*First*, the Ohio and West Virginia antitrust laws limit recovery to persons injured directly by the alleged violation, not indirectly, as Plaintiffs allege they were injured here. Indirect purchasers cannot recover under the antitrust laws of Ohio and West Virginia.

*Second,* Plaintiffs' claims under Alabama's antitrust laws should be dismissed both because the statute of limitations expired before Plaintiffs filed their Complaint, and because Alabama's antitrust laws do not regulate activities, such as those alleged here, that occur outside the geographic boundaries of the state.

*Third*, the South Dakota antitrust statute under which Plaintiffs purport to sue applies only to acts that affect wholly intrastate commerce in South Dakota. Plaintiffs do not assert that Defendants' actions affected trade or commerce wholly within South Dakota.

*Fourth*, Plaintiffs' claim under Pennsylvania law fails because antitrust damages are not available under Pennsylvania law. Accordingly, Plaintiffs cannot recover on their antitrust claims asserted under Pennsylvania common law.

*Fifth*, Plaintiffs who purchased "personal computers and other products in which DRAM is a component," Compl. ¶ 74, lack standing to sue under the antitrust statutes of at least fourteen states: Arizona, California, Kansas, Maine, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New

---

[1] Plaintiffs' California Cartwright Act claim is included in both the Second and Fourth Claims For Relief. Compl. ¶¶ 76-83, 97. The other state antitrust claims are set forth in the Fourth Claim For Relief. Compl. ¶¶ 94-117.

[2] Plaintiffs assert these claims only on behalf of the class members in the particular state whose antitrust law is being invoked. Compl. ¶ 117. The one exception is Plaintiffs' claim under the Cartwright Act in their Second Claim For Relief, which is asserted on behalf of all class members. Compl. ¶ 77. A separate, concurrently filed Motion for Judgment on the Pleadings addresses the

1  Mexico, North Carolina, North Dakota, South Dakota, and Wisconsin.  The derivative, remote, and

2  highly speculative injuries that these Plaintiffs claim to have sustained as indirect purchasers of

3  DRAM via purchases of other products containing DRAM chips do not satisfy the requirements for

4  antitrust standing set forth in *Associated General Contractors of California Inc. v. California State*

5  *Council of Carpenters*, 459 U.S. 519 (1983), as applied in these fourteen states.  This is because,

6  *inter alia*:

- This case involves allegations of price-fixing in sales to direct customers, not Plaintiffs, and not conduct with the intent to injure consumers who did not purchase DRAM from Defendants.

- Plaintiffs' claimed injuries are too remote from the alleged market restraint.

- Plaintiffs' damages claims are highly speculative, unmanageably complex, and likely to be duplicative of damages (if any) sustained by others.

- More directly affected victims of the alleged violations exist and have sought redress.

- Plaintiffs' claimed injuries are not the kinds of injuries to competition that the antitrust laws are designed to prevent because Plaintiffs were not participants in the relevant market.

18  Time and again, courts have applied the *Associated General Contractors* analysis to indirect

19  purchaser claims similar to those advanced by Plaintiffs here, concluding at the pleadings stage that

20  plaintiffs asserting such claims lack standing to sue for alleged antitrust violations.  This case should

21  be no different.

## ARGUMENT

### I.   RULE 12(C) STANDARD

After the pleadings are closed, any party may move for judgment on the pleadings.  Fed. R.

Civ. Pro. 12(c).  Judgment on the pleadings is appropriate where the moving party establishes on the

_____

claims in Plaintiffs' "Fifth Claim for Relief," which alleges violations of various state consumer protection and unfair competition laws.  Compl. ¶¶ 118-142.

Defendants' Motion for Judgment on the Pleadings
Re: Second and Fourth Claims For Relief
Master File No. M-02-1486 PJH

1   face of the pleadings that no material issue of fact exists and that it is entitled to judgment as a matter

2   of law. *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir.

3   1990). In considering a motion for judgment on the pleadings, "the allegations of the non-moving

4   party must be accepted as true." *Id.* However, the Court need not accept or consider "legal

5   conclusions cast in the form of factual allegations" or "allegations that are merely conclusory,

6   unwarranted deductions of fact, or unreasonable inferences." *Cholla Ready Mix, Inc. v. Civish*, 382

7   F.3d 969, 973 (9th Cir. 2004) (citations omitted)

8   **II.    PLAINTIFFS LACK STANDING UNDER OHIO AND WEST VIRGINIA LAW**
        **BECAUSE THOSE STATES CONTINUE TO RECOGNIZE THE "DIRECT**
9       **PURCHASER" REQUIREMENT OF *ILLINOIS BRICK CO. V. ILLINOIS*.**

10          Plaintiffs allege, *inter alia*, that Defendants violated Ohio's Valentine Act, Ohio Rev. Code

11  Ann. § 1331.01 *et seq.*, and West Virginia's Antitrust Act, W. Va. Code § 47-18-1 *et seq.* Compl. ¶¶

12  110, 115.   Plaintiffs cannot state a claim under Ohio or West Virginia law, however, because the

13  prohibition on indirect purchaser damages claims established by the Supreme Court in *Illinois Brick*

14  also applies to claims brought under the Ohio and West Virginia antitrust statutes.

15          In *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), the Supreme Court held that only direct

16  purchasers may pursue private actions for money damages under federal antitrust laws (subject to

17  certain narrow exceptions not relevant here). Because the earlier decision of *Hanover Shoe Co. v.*

18  *United Shoe Machinery Corp.*, 392 U.S. 482 (1968), barred a federal antitrust *defendant* from

19  asserting that the plaintiff simply "passed on" an overcharge to its own customers, the *Illinois Brick*

20  Court recognized that claims brought by indirect purchasers of an allegedly price-fixed product

21  "would create a serious risk of multiple liability for defendants." *Illinois Brick*, 431 U.S. at 730.

22  Permitting the use of pass-on theories would "transform treble-damages actions into massive efforts

23  to apportion the recovery among all potential plaintiffs that could have absorbed part of the

24  overcharge," thus "seriously [undermining]" the effectiveness of such lawsuits. *Id.* at 737. The

25  Court concluded that direct purchasers were in a superior position to enforce the antitrust laws by

26  recouping the "full extent of the overcharge paid by them." *Id.* at 746. The Court therefore held that

27  indirect purchasers could not recover damages under the federal antitrust laws. *Id.*

28

### A.    Ohio

The Ohio Supreme Court recently reiterated the application of the *Illinois Brick* direct

purchaser requirement to the Valentine Act and rejected the notion that Ohio law recognizes antitrust

claims brought by indirect purchasers. *Johnson v. Microsoft Corp.*, 834 N.E.2d 791 (Ohio 2005).

The *Johnson* court noted that "Ohio courts . . . have consistently interpreted the Valentine Act in

accordance with federal judicial construction of the federal antitrust laws." *Id.*  Accordingly, the

court held:

> [C]onsistent with long-standing Ohio jurisprudence, which has followed federal
> law in antitrust matters, we adopt and follow *Illinois Brick*'s direct-purchaser
> requirement and hold that ***an indirect purchaser of goods may not assert a***
> ***Valentine Act claim for alleged violations of Ohio antitrust law***.

*Id.* at 798 (emphasis added).  Because indirect purchasers cannot assert claims under the Valentine

Act, Defendants are entitled to judgment on the pleadings as to all Plaintiffs' Valentine Act claims.

### B.    West Virginia

Similarly, West Virginia's Antitrust Act provides that it shall be construed "in harmony with

ruling judicial interpretations of comparable federal antitrust statutes."  W. Va. Code § 47-18-16.  In

*Gray v. Marshall County Board of Education*, 367 S.E.2d 751 (W. Va. 1988), the West Virginia

Supreme Court of Appeals held that this harmonization rule requires that courts "apply the federal

decisional law interpreting the Sherman Act to our own *parallel* anti-trust statute." *Id.* at 755

(emphasis added).  The court specifically reasoned that because the section of the West Virginia

Antitrust Act it was interpreting "contains the same language as Section 1 of the federal Sherman

Act," it had to apply federal decisional law. *Id.* Here, the West Virginia statute on which Plaintiffs

rely is virtually identical to Clayton Act § 4, which the Supreme Court interpreted in *Illinois Brick*.

*Compare* W. Va. Code § 47-18-9 *with* Clayton Act § 4, 15 U.S.C.A. § 15.  This Court should

therefore apply federal case law, including *Illinois Brick*'s direct purchaser requirement, to

Plaintiffs' claims under the West Virginia Antitrust Act.  Because indirect purchasers have no

standing to sue for damages under federal law, Plaintiffs' indirect purchaser claims under the West

Virginia Antitrust Act must be dismissed.

Plaintiffs will likely argue that their standing to sue as indirect purchasers was conferred by a legislative rule in West Virginia. It is true that, contrary to the Antitrust Act's clear requirement that West Virginia law be construed in harmony with federal antitrust decisional law, the West Virginia Attorney General promulgated Legislative Rule Series 9 in 1990. W. Va. Code St. R. §§ 142-9-1, 9-2 (2002). The rule purports to allow "persons who are indirectly injured by violations of the West Virginia Antitrust Act to maintain an action for damages." W. Va. Code St. R. § 142-9-1. However, the Attorney General's rule is not binding on this Court, and it should not be followed because it clearly conflicts with the harmonization requirement of W. Va. Code § 47-18-16.

Under settled West Virginia law, "when the rules of an agency come into conflict with a statute . . . the statute must control." *Repass v. Workers' Comp. Div.*, 569 S.E.2d 162, 178 (W. Va. 2002). Agency rules and regulations "must faithfully reflect the intention of the Legislature, as expressed in the controlling legislation." *CNG Transmission Corp. v. Craig*, 564 S.E.2d 167, 172 (W. Va. 2002). In determining the validity of an administrative rule, West Virginia courts "first ask whether the Legislature has 'directly spoken to the precise [legal] question at issue.'" *Sniffin v. Cline*, 456 S.E.2d 451, 455 (W. Va. 1995) (alteration in original) (quoting *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842 (1984)). If the intention of the legislature is clear, "that is the end of the matter, and the agency's position only can be upheld if it conforms to the Legislature's intent." *Repass*, 569 S.E.2d at 179. If the legislature's intent is unclear, the Court should determine whether the rule "is based on a permissible construction of the statute." *Sniffin*, 456 S.E.2d at 455 (quoting *Chevron*, 467 U.S. at 843).

Here, the harmonization rule is unambiguous in requiring that the Antitrust Act "*shall* be construed liberally and in harmony with ruling judicial interpretations of comparable federal antitrust statutes." W. Va. Code § 47-18-6 (emphasis added). Section 4 of the Clayton Act, which the Supreme Court interpreted in *Illinois Brick*, is a "comparable federal statute" within the meaning of the harmonization rule. *See Gray*, 367 S.E.2d at 755. Significantly, West Virginia's Antitrust Act was adopted *after* the Supreme Court's decision in *Illinois Brick*. Rather than provide indirect purchasers with a right of action, as the legislatures in some states did by enacting *Illinois Brick* "repealers," the West Virginia legislature specifically directed the courts to construe W. Va. Code §

1    47-18-9 in accordance with federal law.  Because the rule would recognize a cause of action

2    specifically rejected in *Illinois Brick*, the rule is not in "harmony" with that "ruling judicial

3    interpretation[]."

4         The Attorney General's attempt to circumvent the *Illinois Brick* rule must also be rejected

5    because it exceeds the scope of the authority delegated to him.  Under West Virginia law, the

6    Attorney General is permitted to promulgate rules "as may be *necessary* for the enforcement and

7    administration of the [Antitrust Act]."  W. Va. Code § 47-18-20 (emphasis added).  Here, the rule is

8    quite clearly not "necessary" to the "enforcement and administration" of the Antitrust Act because it

9    contradicts the Antitrust Act's specific dictate that West Virginia harmonize its antitrust laws with

10   federal precedent.

11        Because indirect purchasers lack standing under Ohio and West Virginia law, Defendants are

12   entitled to judgment on the pleadings as to Plaintiffs' claims that Defendants violated Ohio's

13   Valentine Act and West Virginia's Antitrust Act.

14   **III.  PLAINTIFFS' CLAIMS UNDER ALABAMA LAW SHOULD BE DISMISSED**
         **BECAUSE THEY ARE UNTIMELY, AND BECAUSE ALABAMA'S ANTITRUST**
15       **STATUTES ONLY REGULATE ACTIVITIES THAT OCCUR WITHIN ALABAMA.**

16        Plaintiffs allege that Defendants violated Alabama Code § 8-10-1, which is known as the

17   Alabama Unfair Trade Practices Act ("AUTPA").  Compl. ¶ 95.  The statute of limitations for

18   claims under AUTPA is two years.  *See* Ala. Code § 6-2-38(l) ("All actions for any injury to the

19   person or rights of another not arising from contract and not specifically enumerated in this section

20   must be brought within two years.")  The Complaint alleges that "Plaintiffs did not discover . . . that

21   Defendants and their co-conspirators were violating the antitrust laws as alleged herein until ***shortly***

22   ***before*** class action litigation was commenced against the Defendants ***in 2002***."  Compl. ¶ 68

23   (emphasis added).  The Complaint was filed on June 17, 2005, which is more than two years after

24   plaintiffs concede that they knew of potential claims.  Therefore, Plaintiffs' claims under AUTPA

25   should be dismissed.

26        Even if Plaintiffs had timely filed their complaint, they still could not bring a claim under

27   AUTPA because that statute only applies to intrastate activities.  The Alabama Supreme Court has

28   held that Alabama's antitrust statutes regulate only "activities that occur 'within this state' -- within

1  the geographic boundaries of this state." *Abbott Labs. v. Durrett*, 746 So. 2d 316, 339 (Ala. 1999).

2  The court also stated: "We leave to the Legislature the policy decision of whether to expand the

3  reach of Alabama's antitrust statutes to activities that cross state boundaries." *Id.* at 339; *see also*

4  *Archer Daniels Midland Co. v. Seven Up Bottling Co. of Jasper, Inc.*, 746 So. 2d 966 (Ala. 1999)

5  (holding that Alabama's antitrust laws do not provide a cause of action for damages resulting from

6  an alleged conspiracy to control the prices of products shipped into Alabama from other states).

7       Here, Plaintiffs do not claim that any of Defendants' alleged "illegal conduct" occurred in

8  Alabama, and they allege that interstate commerce -- not intrastate commerce in Alabama -- was

9  affected. *See* Compl. ¶¶ 4, 47-67. Therefore, Plaintiffs cannot state a claim under Alabama's

10  antitrust laws.

11  **IV.    PLAINTIFFS LACK STANDING UNDER SOUTH DAKOTA LAW BECAUSE**
         **SOUTH DAKOTA'S ANTITRUST STATUTE ONLY APPLIES TO ACTS THAT**
12       **AFFECT TRADE OR COMMERCE WHOLLY WITHIN SOUTH DAKOTA.**

13       Plaintiffs allege that Defendants violated South Dakota's antitrust statute, South Dakota

14  Codified Laws Ann. § 37-1 *et seq.* Compl. ¶ 112. Like Alabama's antitrust laws, South Dakota's

15  antitrust laws apply only to acts that "affect trade or commerce wholly within the state." *State v.*

16  *Fullerton Lumber*, 152 N.W. 708, 712 (S.D. 1915), *overruled on other grounds*, *State v. Rude*, 162

17  N.W.2d 884 (S.D. 1968). Thus, S.D. Codified Laws § 37-1-3.1 prohibits "conspirac[ies] . . . in

18  restraint of trade," but only if the conspiracy affects wholly *intrastate* commerce. The intrastate

19  commerce requirement recognized in *Fullerton Lumber* has survived over ninety years and three

20  amendments to South Dakota's antitrust act. *See* S.D. Revised Code §§ 4353-4357 (1919); S.D.

21  Code ¶ 13.1802 (1939); S.D. Session Laws, ch. 305 § 1 (1977).

22       Here, Plaintiffs do not allege that Defendants' conduct affected wholly intrastate commerce

23  in South Dakota. Rather, they allege that Defendants' activities had "a substantial effect on the

24  foreign and interstate commerce of the United States." Compl. ¶ 4. Because South Dakota's

25  antitrust statute applies only to acts affecting "trade or commerce wholly within the state,"

26  Defendants are entitled to judgment on the pleadings as to Plaintiffs' claims under South Dakota's

27  antitrust laws.

28

**V.   DEFENDANTS ARE ENTITLED TO JUDGMENT ON THE PLEADINGS AS TO PLAINTIFFS' PENNSYLVANIA CLAIMS BECAUSE ANTITRUST DAMAGES ARE NOT AVAILABLE UNDER PENNSYLVANIA LAW.**

Pennsylvania does not have an antitrust statute. *See XF Enterprises Inc. v. BASF Corp.*, 47 Pa. D. & C.4th 147, 150-51 (Phila. Cty. 2000). With no antitrust statute to sue under, Plaintiffs vaguely allege that Defendants violated "Pennsylvania common law." Compl. ¶ 111. However, there is no authority in Pennsylvania -- common law or otherwise -- for the recovery of damages sustained as a result of alleged antitrust violations. *See XF Enterprises*, 47 Pa. D. & C.4th at 150 ("No court to date has held that a private remedy is available for damages under Pennsylvania's common law on antitrust violations."); *Stutzle v. Rhonepoulenc S.A.*, No. 002768 Oct. Term 2002, 2003 WL 22250424, at *2 (Phila Cty. Sept. 26, 2003).

In *XF Enterprises*, the plaintiff sought damages for an alleged violation of Pennsylvania's antitrust laws. The court concluded that "[w]ithout legislation similar to the Sherman Act, Pennsylvania common law lacks the damage provision necessary to give Pennsylvanians the cause of action which plaintiff seeks here." 47 Pa. D. & C.4th at 150-51. Like the Pennsylvania state courts in *XF Enterprises* and *Stutzle*, this Court should refuse Plaintiffs' invitation to create a private right of action for antitrust damages that has never before been recognized under Pennsylvania law.

**VI.   PLAINTIFFS WHO PURCHASED PRODUCTS CONTAINING DRAM CANNOT SATISFY THE REQUIREMENTS FOR ANTITRUST STANDING TO ASSERT STATE-LAW ANTITRUST CLAIMS.**

Plaintiffs claim they were injured because they paid more for DRAM purchased indirectly from Defendants than they would have paid in the absence of the alleged price-fixing conspiracy, "including paying more for personal computers and other products in which DRAM is a component as a result of higher prices paid for DRAM by the manufacturers of those products." Compl. ¶ 74. As discussed in detail below, Plaintiffs who purchased products containing DRAM cannot satisfy the requirements for antitrust standing.[3]

---

[3] In this Section, Defendants seek dismissal of the claims of Plaintiffs who purchased products containing DRAM for lack of standing. Defendants do not intend this argument to apply to Plaintiffs who purchased stand-alone DRAM, nor do Defendants concede that such Plaintiffs have standing.

**A.** **The *Associated General Contractors* Test Should Apply To Determine Whether Plaintiffs Have Standing Under The Antitrust Laws Of Arizona, California, Kansas, Maine, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Mexico, North Carolina, North Dakota, South Dakota, and Wisconsin.**

Plaintiffs allege, *inter alia*, that Defendants violated the antitrust statutes of Arizona, California, Kansas, Maine, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Mexico, North Carolina, North Dakota, South Dakota, and Wisconsin. *See* Compl. ¶¶ 76-83, 96-97, 100-109, 112, 116. Unlike Ohio and West Virginia, these fourteen states have "repealed" the *Illinois Brick* decision and do not categorically prohibit indirect purchasers from suing under their antitrust statutes.[4] However, the mere fact that a party claims to be an indirect purchaser does not automatically endow it with standing to sue under state antitrust statutes, even in states that have repealed *Illinois Brick*. The *Illinois Brick* decision addressed only the question of whether there should be a categorical bar on indirect purchaser suits. It did not address the separate, "analytically distinct . . . question of which persons have sustained injuries too remote to give them standing to sue." *Illinois Brick*, 431 U.S. at 728 n.7. Therefore, when a state "repeals" *Illinois Brick*, it removes the categorical prohibition on indirect purchaser suits; it does not resolve the question not addressed in *Illinois Brick* of whether the injuries suffered by specific indirect purchasers satisfy the requirements for antitrust standing.[5]

---

[4] *See* Cal. Bus. & Prof. Code § 16750(a); Kan. Stat. § 50-161(b); 10 Maine Rev. Stat. Ann. § 1104(1); Mich. Comp. Laws Ann. § 445.778(2); Minn. Stat. § 325D.57; Miss. Code Ann. § 75-21-9; Neb. Rev. Stat. § 59-821; Nev. Rev. Stat. Ann. § 598A.210(2); N.M. Stat. Ann. § 57-1-3(A); N.D.C.C. § 51-08.1-08(3); S.D.C.L. § 37-1-33; Wis. Stat. § 133.18(1)(a); *Bunker's Glass Co. v. Pilkington, PLC*, 75 P.3d 99 (Ariz. 2003); *Hyde v. Abbott Labs., Inc.*, 473 S.E.2d 680, 683 (N.C. App. 1996).

[5] *See, e.g., Knowles v. Visa U.S.A., Inc.*, No. Civ.A. CV-03-707, 2004 WL 2475284, at *3 (Me. Super. Oct. 20, 2004) ("the fact that the Maine legislature decided to overrule *Illinois Brick* on the issue of whether indirect purchasers may assert a remedy does not necessarily resolve the issue of standing"); *Stark v. Visa U.S.A., Inc.*, No. 03-055030-CZ, 2004 WL 1879003, at *3-*4 (Mich. Cir. Ct. July 23, 2004) (noting that the Michigan Antitrust Reform Act merely prevents an indirect purchaser's claim from being automatically barred, as it would be in federal court); *Gutzwiller v. Visa U.S.A., Inc.*, No. C4-04-58, 2004 WL 2114991, at *10 (Minn. Dist. Ct. Sept. 15, 2004) ("Despite the broad language of the Minnesota antitrust law . . . not every person claiming some remote or tangential injury from an antitrust violation can maintain a suit under the Minnesota antitrust laws."); *Strang v. Visa U.S.A., Inc.*, No. 03 CV 011323, 2005 WL 1403769, at *3 n.7 (Wis. Cir. Feb. 8, 2005) ("The critical issue then is not whether [plaintiff] is or is not an indirect purchaser;

1    Numerous courts in states with *Illinois Brick* repealers have dismissed indirect purchaser

2    suits for lack of standing.[6]  Thus, even in states that have repealed *Illinois Brick*, courts must still

3    determine whether alleged indirect purchasers have standing to sue.

4    The U.S. Supreme Court's decision in *Associated General Contractors of California, Inc. v.*

5    *California State Council of Carpenters* (*"AGC"*) has emerged as the template for analyzing antitrust

6    standing.  The Court in *AGC* established a multi-factor test for courts to use in determining whether

7    a plaintiff has antitrust standing.  *AGC*, 459 U.S. at 537-44.  The Ninth Circuit has articulated the

8    *AGC* factors as follows:

9        (1)    whether the alleged conspirators intended to injure plaintiffs;

10       (2)    the directness or indirectness of the asserted injury;

11       (3)    the character of the claimed damages, including the risk of duplicative recovery, the

12               complexity of apportionment, and the speculative nature of the damages;

13       (4)    the existence of other, more direct victims of the alleged violation; and

14       (5)    the nature of the plaintiff's claimed injury, and whether plaintiff was a participant in

15               the relevant market.

16   *See R.C. Dick Geothermal Corp. v. Thermogenics, Inc.*, 890 F.2d 139, 146 (9th Cir. 1989) (en banc)

17   (citing *AGC*, 459 U.S. at 537-44).  In applying this test, no single factor is dispositive.  Rather, "[t]he

18   court must balance the factors."  *R.C. Dick*, 890 F.2d at 146; *see also Peck v. Gen. Motors Corp.*,

19   894 F.2d 844, 846 (6th Cir. 1990).

20   Although *AGC* addressed standing under federal antitrust laws, 459 U.S. at 521, the Supreme

21   Court's analysis in that opinion is often applied in cases brought under state antitrust statutes.  In

22   several recent cases, courts applied the *AGC* analysis to dismiss at the pleadings stage cases alleging

---

25   it is whether she lacks standing . . . ."); *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 987
     (9th Cir. 2000) ("Antitrust standing is required under the Cartwright Act.").

26   [6] *See, e.g., Knowles*, 2004 WL 2475284 (Maine); *Stark*, 2004 WL 1879003 (Michigan); *Gutzwiller*,
27   2004 WL 2114991 (Minnesota); *Crouch v. Crompton Corp.*, No. 02 CVS 4375, 03 CVS 2514, 2004
     WL 2414027 (N.C. Super. Ct. Oct. 28, 2004); *Beckler v. Visa U.S.A., Inc.*, No. 09-04-C-00030, 2004
28   WL 2115144 (N.D. Dist. Aug. 23, 2004); *Strang*, 2005 WL 1403769, at *3-*5 (Wisconsin).

1   price-fixing of rubber chemicals and unlawful "tying" of credit and debit card services.[7] For

2   example, in *Crouch v. Crompton*, a North Carolina court applied *AGC* to dismiss the state antitrust

3   claims of a plaintiff who claimed injury from the purchase of tires containing allegedly price-fixed

4   rubber chemicals manufactured by the defendants. 2004 WL 2414027, at *18-*26. Specifically, the

5   *Crouch* court held:

- Plaintiff was not a participant in the relevant market because he purchased tires, and "the alleged price fixing was directed at the market for chemicals, not the market for tires." *Id.* at *24.

- The "directness" factor weighed against standing because of the length of the distribution chain, and because of the many factors affecting whether the alleged overcharge for rubber chemicals was passed through to purchasers of tires. *Id.*

- Other indirect purchasers, such as distributors and retailers, may have absorbed some of the price increase. *Id.*

- The damages claims were speculative and "exceptionally complex" due to the different manufacturing processes involved and the many external factors that affect the price of tires. *Id.* at *25.

17   Similarly, in *Strang v. Visa*, a Wisconsin court applied the *AGC* analysis and dismissed

18   plaintiff's state antitrust claims for lack of standing. 2005 WL 1403769, at *5. The *Strang* case

19   concerned allegations that Visa and MasterCard violated Wisconsin's antitrust laws by forcing

20   merchants to accept Visa and MasterCard debit cards if they wished to accept Visa and MasterCard

21   credit cards. *Strang*, 2005 WL 1403769, at *1. The plaintiff claimed she was indirectly injured

22   because merchants forced to pay debit card service fees as a result of this "tying" arrangement

23   passed those fees on to consumers in the form of higher prices for goods and services. *Id.* at *1. The

---

[7] *See, e.g.*, *Knowles*, 2004 WL 2475284, at *5-*8 (Maine); *Stark*, 2004 WL 1879003, at *2-*4 (Michigan); *Gutzwiller*, 2004 WL 2114991, at *5-*6 (Minnesota); *Crouch*, 2004 WL 2414027, at *18-*26 (North Carolina); *Beckler*, 2004 WL 2115144, at *4-*5 (North Dakota); *Cornelison v. Visa U.S.A., Inc.*, No. 03-1350, at 54 (S.D. Circuit Ct. Sept. 28, 2004) (transcript of motion hearing, attached as Ex. A); *Strang*, 2005 WL 1403769, at *3-*5 (Wisconsin).

1    court applied the *AGC* factors and concluded that the plaintiff lacked standing to maintain her action

2    because her claimed injuries were "derivative, remote, and highly speculative." *Id.* at *5.

3        In discussing the *AGC* factors, the *Strang* court emphasized that more direct victims of the

4    alleged violation existed:  "merchants are the class of individuals who are more directly injured by

5    the antitrust activities and in a better position to prosecute a claim based upon that activity; in fact

6    they have done so." *Id.* at *4.  Direct purchasers "encounter none of the daunting evidentiary

7    problems of proving any marginal effect of the excessive debit card fees vis-à-vis the multitude of

8    other pricing factors that impact the ultimate purchase price of any and all products that a Visa or

9    MasterCard merchant sells." *Id.*  The court was also concerned about duplicative recovery and

10   apportionment of damages:  "Assuming the plaintiff can overcome the daunting task of proving a

11   causal connection and quantifying the overarching injury caused by the prohibited conduct, there

12   remains the difficult process of determining a nonduplicative measure of damages between the

13   ultimate consumers and the merchants." *Id.* at *5.

14       In addition to North Carolina and Wisconsin, courts in California, Kansas, Maine, Michigan,

15   Minnesota, North Dakota, and South Dakota have applied the *AGC* test, or some variation of it, in

16   evaluating whether plaintiffs have standing under their respective states' antitrust statutes.[8]

17   Although courts in Arizona, Mississippi, Nebraska, Nevada, and New Mexico have not explicitly

18   considered whether the *AGC* test should be applied to claims under their respective states' antitrust

19   statutes, principles of statutory construction support doing so.[9]  In the absence of any authority on

20

21

---

22   [8] *See, e.g., Vinci v. Waste Management, Inc.*, 36 Cal. App. 4th 1811, 1814 (1995); *Orr v. Beamon*, 77
     F. Supp. 2d 1208, 1212 (D. Kan. 1999), *aff'd* 4 Fed. Appx. 647, 651 (10th Cir. 2001); *Knowles*, 2004
23   WL 2475284, at *5-*8 (Maine); *Stark*, 2004 WL 1879003, at *2-*4 (Michigan); *Gutzwiller*, 2004
     WL 2114991, at *5-*6 (Minnesota); *Beckler*, 2004 WL 2115144, at *4-*5 (North Dakota);
24   *Cornelison*, No. 03-1350, at 54 (South Dakota).

25   [9] In *Bunker's Glass*, the Arizona Supreme Court did not consider whether the plaintiff in that case
     satisfied the requirements for antitrust standing; it merely held that indirect purchasers generally are
26   not prohibited from suing under Arizona's antitrust statute.  75 P.3d at 110 ("we cannot know
     whether Plaintiffs have suffered [an antitrust] injury, as they were barred at the courthouse door from
27   attempting to show how and whether they have been injured by Defendants' allegedly anti-
     competitive activity").
28

1   point, courts construing state antitrust statutes rely on federal authority.[10]  Federal courts across the

2   country have applied the *AGC* test in analyzing antitrust standing.  *See 2660 Woodley Rd. Joint*

3   *Venture v. ITT Sheraton Corp.*, 369 F.3d 732, 741 (3d Cir. 2004) ("The *Associated General* test has

4   been regularly and consistently applied as the passageway through which antitrust plaintiffs must

5   advance.").  Also supporting the application of *AGC* here is the fact that the state antitrust statutes

6   under which Plaintiffs purport to sue are similar to section 4 of the Clayton Act, which was the

7   statute at issue in *AGC* itself.[11]

8        For these reasons, the test set forth in *AGC* should be applied here to determine whether

9   Plaintiffs have standing under the relevant state antitrust statutes.

### B.   Plaintiffs Who Purchased Products Containing DRAM Cannot Establish Antitrust Standing Under The *Associated General Contractors* Test.

11        In this case, the claims of plaintiffs who purchased products containing DRAM are similar to

12   the plaintiffs' claims in the rubber chemicals and credit card cases.  Like the plaintiffs in *Crouch* and

13   *Strang*, Plaintiffs here were not participants in the relevant market, which in this case is the market

---

15   [10] *See* Ariz. Rev. Stat. § 44-1412 (courts applying the Arizona Uniform State Antitrust Act "may use
16   as a guide interpretations given by the federal courts to comparable federal antitrust statutes");
     *Harrah's Vicksburg Corp. v. Pennebaker*, 812 So.2d 163, ¶¶ 29-40 (Miss. 2002) (noting applicability
17   of federal *Noerr-Pennington* doctrine to Mississippi antitrust claims, and relying heavily on federal
     interpretation the doctrine); Neb. Rev. Stat. § 59-829 ("When any provision of sections 59-801 to
18   59-831 [Nebraska's antitrust statute] . . . is the same as or similar to the language of a federal
     antitrust law, the courts of this state in construing such sections or chapter shall follow the
19   construction given to the federal law by the federal courts."); Nev. Rev. Stat. § 598A.050 ("The
     provisions of this chapter shall be construed in harmony with prevailing judicial interpretations of
20   the federal antitrust statutes."); N.M. Stat. Ann. § 57-1-15 ("the Antitrust Act shall be construed in
     harmony with judicial interpretations of the federal antitrust laws").
21

22   [11] *See, e.g.*, Ariz. Rev. Stat. § 44-1408 ("[a] person . . . injured in his business or property by a
     violation of this article may bring an action"); Miss. Code Ann. § 75-21-9 ("[a]ny person, natural or
23   artificial, injured or damaged by a trust and combine as herein defined, or by its effects direct or
     indirect, may recover"); Neb. Rev. Stat. § 59-821 ("Any person who is injured in his or her business
24   or property by any other person or persons by a violation of sections 59-801 to 59-831 . . . may bring
     a civil action . . . ."); Nev. Rev. Stat. Ann. § 598A.210 ("[a]ny person injured or damaged directly or
25   indirectly in his business or property by reason of a violation of the provisions of this chapter may
     institute a civil action"); N.M. Stat. Ann. § 57-1-3 ("any person . . . injured in his business or
26   property, directly or indirectly, by a violation of Section 57-1-1 or 57-1-2 NMSA 1978 may bring an
     action").  Section 4 of the Clayton Act states that "any person who shall be injured in his business or
27   property by reason of anything forbidden in the antitrust laws may sue therefor."  15 U.S.C.A. §
     15(a).
28

1   for DRAM.  As in *Crouch*, the distribution chain here is long and complicated, and many factors

2   affect whether the alleged overcharge for DRAM was passed through to purchasers of computers

3   and other products that contain DRAM.  As in *Crouch*, the universe of potential indirect purchaser

4   claimants includes not only Plaintiffs, but also upstream purchasers such as computer retailers or the

5   "wholesale distributors" mentioned in paragraph 45 of the Complaint, who may have absorbed some

6   of the alleged price increase.[12]  As in *Crouch*, calculating and apportioning damages here would be

7   exceptionally complex, and any economic analysis would be highly speculative.  *Id.*

8          Likewise, all of the factors that led the *Strang* court to dismiss the plaintiff's claims at the

9   pleading stage are present here.  More direct victims of the alleged violation -- direct purchasers of

10  DRAM -- exist and have sought redress.  Like the plaintiffs *Strang*, Plaintiffs in this case face

11  "daunting evidentiary problems" in attempting to prove any effect of the alleged price-fixing

12  conspiracy vis-à-vis the multitude of other pricing factors that impact the ultimate purchase price of

13  the various "products in which DRAM is a component" that Plaintiffs allegedly purchased.  Those

14  factors include the nature of supply and demand for the product purchased; the bargaining power of

15  the parties; the effect of geographic discrepancies on pricing; discounts and rebates offered by

16  manufacturers and retailers; the other costs and components in the manufacture of the derivative

17  product; and the amount of DRAM in a derivative product.  Finally, assuming Plaintiffs here could

18  prove a causal connection between the alleged conspiracy and the prices paid for products containing

19  DRAM, and assuming they could quantify their injuries, it would be extremely difficult to determine

20  a nonduplicative measure of damages between consumers like Plaintiffs and the upstream

21  manufacturers and retailers.

22          Thus, applying the *AGC* analysis to the claims of Plaintiffs who purchased products

23  containing DRAM unambiguously requires that these claims be dismissed for lack of standing:

24

25

---

26  [12] The court in *Crouch* noted in dicta that "[t]here could be other examples where a component, such
27  as a computer chip, is price-fixed, and its costs passed through directly to purchasers of the product
    in which it is incorporated."  2004 WL 2414027, at *23.  However, the *Crouch* court "express[ed] no
28  opinion on standing in that situation."  *Id.* at *23 n.41.

1.   **Defendants did not intend to injure purchasers of computers and other products containing DRAM.**

Plaintiffs do not allege anywhere in their Complaint that Defendants intended to injure these specific Plaintiffs, or purchasers of products containing DRAM generally. Even if Plaintiffs had made such a claim, "[a]n allegation of intentional injury is not 'a panacea that will enable any complaint to withstand a motion to dismiss.'" *R.C. Dick*, 890 F.2d at 146 (quoting *AGC*, 459 U.S. at 537). Furthermore, this case involves allegations of price-fixing in sales to direct customers, not Plaintiffs, and not conduct with the intent to injure consumers who did not purchase DRAM from Defendants. Therefore, this factor weighs against a finding of standing.

2.   **Plaintiffs' claimed injuries are too remote from the alleged market restraint.**

The "directness of injury" factor set forth in *AGC* examines the "chain of causation" between a plaintiff's alleged injury and the defendant's alleged anti-competitive conduct. *AGC*, 459 U.S. at 540. "[V]aguely defined links" in the chain of causation are insufficient to establish the directness of the injury. *Id.* In assessing the directness of the injury, a significant factor is whether the product actually purchased was the subject of the alleged restraint. *Id.* at 539.

Here, Plaintiffs' claims are undeniably remote and attenuated from any alleged antitrust violation. The direct impact of the alleged conspiracy did not fall on Plaintiffs. *See Stark*, 2004 WL 1879003, at *2 (noting that merchants who purchased debit card services from defendants suffered the direct impact of the alleged antitrust violation and characterizing indirect purchaser plaintiffs' injuries as "derivative and second-hand").

Furthermore, the claims of Plaintiffs who purchased products containing DRAM rest on the assumption that any illegal overcharge was actually passed on, in whole or part, through at least two separate chains of distribution: (1) from the manufacturers of DRAM to the "manufacturers of . . . products in which DRAM is a component," Compl. ¶ 74; and (2) from those manufacturers to consumers. If Plaintiffs purchased their computers from retail stores, which had purchased computers from computer manufacturers, there would be yet another level before the product containing DRAM even reached the Plaintiffs. The presence of additional resellers or other middlemen in the distribution chain compounds the problem. Even assuming that any injury passed

through each level of these distribution chains, the alleged injury would be unacceptably remote and tangential to any harm caused by the alleged antitrust violation.

### 3.   Plaintiffs' damages claims are highly speculative, unmanageably complex, and likely to be duplicative.

The Supreme Court in *AGC* explained that "it is appropriate . . . 'to consider whether a claim rests at bottom on some abstract conception or speculative measure of harm.'" *AGC*, 459 U.S. at 543 (quoting *Blue Shield of Virginia v. McCready*, 457 U.S. 465, 475 n.11 (1982)). Unduly speculative damages can result in two ways: (1) from the indirect causal connection between the alleged antitrust violation and the claimed injury; or (2) from the difficulty in evaluating the effects of the many independent factors -- aside from the initial overcharge far upstream from the product allegedly purchased by Plaintiffs -- on the price Plaintiffs paid. *Id.* at 542.

Here, speculative damages are a significant concern for both of the above reasons because of the attenuated connection between Plaintiffs' alleged injuries and Defendants' alleged antitrust violations. As discussed above, Plaintiffs and Defendants are far apart in the distribution chain. The claims of Plaintiffs who purchased products containing DRAM are premised on the contention that unnamed, unidentified third parties downstream from the alleged overcharges for DRAM passed on those overcharges when they set the prices of Plaintiffs' personal computers or other electronic products containing DRAM. *See Melnick v. Microsoft Corp.*, No. CV-99-709, 2001 WL 1012261, at *6 (Me. Super. Aug. 24, 2001) ("indirect purchasers must demonstrate that overcharges have been passed on to them"); *Beckler*, 2004 WL 2115144, at *3 (dismissing for lack of standing where plaintiffs claimed to have been overcharged "as a result of their ordinary, day-to-day purchases of an enormous variety of goods that these defendants *neither manufactured nor sold*") (emphasis added).

Assuming *arguendo* that there was an initial overcharge by Defendants to their direct customers, the amount of the assumed overcharge that has been passed on, if any, can be affected by numerous factors. As one court put it, "[t]o determine what portion of any overcharge was passed on by any given merchant, with respect to which products, and to which consumers is a task of monumental uncertainty and complexity." *Knowles*, 2004 WL 2475284, at *6.

The effects of any price-fixing of DRAM are further obscured by the fact that a memory chip is but one component used in the manufacturing process of the products Plaintiffs actually

1    purchased.  In *Weaver v. Cabot Corp.*, No. 03 CvS 04760, 2004 WL 3406119 (N.C. Super. Ct. Mar.

2    26, 2004), the court was confronted with an indirect purchaser claim in which the plaintiff alleged

3    that he had purchased tires that incorporated chemicals that had been price-fixed by the defendants.

4    In dismissing the plaintiff's claim, the court explained that allowing such a claim to proceed

> would put this Court in an impossible position of attempting to determine whether the
> alleged price-fixing by an oligopoly of an ingredient used to make tires had anything to
> do with the price paid by the Plaintiff when he bought the tires.  This Court believes that
> without some allegation and proof that the tire manufacturers themselves were an
> oligopoly and were fixing prices, that it would be impossible to show the price the
> Plaintiff paid was not set by the normal laws of supply and demand in our open economic
> system, and that even if it were possible to show that, there would be no way for the
> Court to, in any fair or just way, determine an amount the Plaintiff was damaged.

10   *Id.* at *1.  As in *Weaver*, the number of independent factors that could affect pricing decisions in the

11   distribution chain here is multiplied because DRAM is merely a single component in a myriad of

12   parts and processes that ultimately become the downstream products purchased by Plaintiffs.

13          Under these circumstances, Plaintiffs could, at best, show only a theoretical link between any

14   alleged overcharge for DRAM and the prices they paid for a different downstream product.  The

15   inherently speculative nature of the damages these Plaintiffs allegedly suffered, when coupled with

16   the other *AGC* factors, renders Plaintiffs' claims too speculative as a matter of law to warrant

17   standing.

18          The *AGC* Court also recognized a "strong interest" in "keeping the scope of complex

19   antitrust trials within judicially manageable limits."  459 U.S. at 543.  The concern is twofold:  "the

20   risk of duplicate recoveries on the one hand, or the danger of complex apportionment of damages on

21   the other."  *Id.* at 544.

22          Both problems are particularly present here.  Defendants risk duplicative liability because

23   Plaintiffs are seeking damages for the very same alleged misconduct that is at issue in the direct

24   purchaser cases.  *See Stark*, 2004 WL 1879003, at *3.  Plaintiffs' claims also raise the danger of a

25   complex, if not impossible, apportionment of damages because of the multiple levels in the

26   distribution chains, the differing extent to which any illegal overcharge may have been passed on

27   from one company to the next, the remote nature of Plaintiffs' alleged injuries, and the size of the

28   purported class.  *See A&M Supply Co. v. Microsoft Corp.*, 654 N.W.2d 572, 601-02 (Mich. App.

2002) (explaining the inherent difficulties in quantifying the amount of the alleged overcharge that may be passed on from a direct purchaser to an indirect purchaser). Multiple markets are involved, including separate markets for each of the various "products in which DRAM is a component" that Plaintiffs allegedly purchased. Compl. ¶ 74. Essentially, Plaintiffs would require the Court to determine the overcharge paid, if any, by millions of consumers who purchased *any* product containing *any* DRAM component, manufactured by *any* Defendant, during a period of over three years. This multitude of variables likely would result in calculation of "generalized" damages, which is "inherently incompatible with proving actual damages." *A&M Supply*, 654 N.W.2d at 597; *see also AGC*, 459 U.S. at 544 n.51 ("the task of disentangling overlapping damages claims is not lightly to be imposed upon potential antitrust litigants, or upon the judicial system").

### 4.    More directly affected victims of the alleged violation exist and have sought redress.

The Supreme Court in *AGC* recognized that when the claimed injury is remote from the alleged wrongdoing, it is appropriate to consider whether other, more directly affected purchasers could seek redress without implicating the problems inherent in a remote plaintiff's claims. *See* 459 U.S. at 541-42. In evaluating this factor, courts consider whether the alleged direct victims have "vindicated any interest in antitrust enforcement by suing the Defendants for the same alleged conduct." *Stark*, 2004 WL 1879003, at *2. Where other parties are better situated to pursue an antitrust claim, barring the claim of a "remote party" for lack of antitrust standing "is not likely to leave a significant antitrust violation undetected or unremedied." *AGC*, 459 U.S. at 542. That is the case here.

With respect to the alleged price-fixing of DRAM, there is litigation pending in this Court between direct purchasers and these same Defendants. The direct purchaser plaintiffs have already obtained settlements with three defendants -- Samsung, Hynix, and Infineon -- totaling $160 million. As noted in papers filed with the Court in connection with those settlements, prior to entering into those settlement agreements, Samsung, Hynix, and Infineon each settled claims with numerous individual direct purchasers of DRAM. Three direct purchasers of DRAM -- Sun, Unisys, and Honeywell -- have filed separate lawsuits against the DRAM manufacturers.

1    In addition, as a result of a United States Department of Justice investigation, four

2    Defendants have pled guilty to criminal antitrust violations and have agreed to pay penalties of $300

3    million (Samsung), $185 million (Hynix), $160 million (Infineon), and $84 million (Elpida).

4    Individual employees of these Defendants have agreed to pay criminal penalties totaling millions

5    more.

6    The direct purchasers' and governmental authorities' aggressive pursuit of these cases "puts

7    to rest any concern that unless remote plaintiffs are allowed to sue, the antitrust laws will remain

8    unenforced in this case." *Knowles*, 2004 WL 2475284, at *6. In sum, there are parties other than

9    Plaintiffs who are far better situated to pursue any antitrust claims against Defendants, and they have

10    done so.

11    **5.    Plaintiffs' claimed injuries are not the kinds of injuries to competition that the antitrust laws are designed to prevent because Plaintiffs were not participants in the relevant market.**

12

13    The central interest of antitrust prohibitions is to "protect[] the economic freedom of

14    participants *in the relevant market*." *AGC*, 459 U.S. at 538 (emphasis added). Furthermore, "[t]he

15    requirement that the alleged injury related to anticompetitive behavior requires, as a corollary,

16    that the injured party be a participant in the same market as the alleged malefactors." *Bhan v. NME*

17    *Hospitals, Inc.*, 772 F.2d 1467, 1470 n.3 (9th Cir. 1985).

18    Here, Plaintiffs claim they paid more for "personal computers and other products in which

19    DRAM is a component" than they would have paid in the absence of the alleged conspiracy. Compl.

20    ¶ 74. Plaintiffs who purchased computers and other products containing DRAM are not

21    "participants in the relevant market," which in this case is a market for computer memory chips, not

22    markets for computers and other products containing memory chips. *See Crouch*, 2004 WL

23    2414027, at *24 (where plaintiffs had purchased tires containing allegedly price-fixed rubber

24    chemicals, the court found that the "relevant market" factor "weighs slightly against standing"

25    because "the alleged price fixing was directed at the market for chemicals, not the market for tires").

26    Therefore, this factor also weighs against standing.

27

28

For the reasons discussed above, the remote, derivative, and highly speculative claims of Plaintiffs who purchased products containing DRAM clearly do not satisfy the test for antitrust standing set forth in *AGC*.

### C.    Dismissal With Prejudice Based On The Pleadings Alone Is Appropriate Where The Complaint Shows That Plaintiffs Lack Standing.

Where the complaint shows that plaintiffs cannot satisfy the requirements for antitrust standing, courts from the Supreme Court on down do not hesitate to dismiss with prejudice based on the pleadings alone. In *AGC*, the District Court concluded that the plaintiffs lacked standing and granted a motion to dismiss for failure to state a claim upon which relief can be granted. *California State Council of Carpenters v. Associated General Contractors of California*, 404 F. Supp. 1067 (N.D. Cal. 1975). The Ninth Circuit reversed, 648 F.2d 527 (9th Cir. 1980), but the Supreme Court ultimately concluded that the District Court was correct in concluding that the plaintiffs lacked standing and granting defendant's motion to dismiss. 459 U.S. at 545-46.

Furthermore, lower courts evaluating standing under the same state antitrust statutes at issue here have granted dismissals for lack of standing based on the pleadings. *See, e.g., Knowles*, 2004 WL 2475284 (granting motion to dismiss claims under Maine's antitrust statutes); *Stark*, 2004 WL 1879003 (granting motion for summary disposition[13] of Michigan Antitrust Reform Act claim); *Gutzwiller*, 2004 WL 2114991 (granting motion to dismiss claim under Minnesota antitrust law for failure to state a claim upon which relief can be granted); *Crouch*, 2004 WL 2414027 (granting motion to dismiss claims under North Carolina's antitrust statutes); *Beckler*, 2004 WL 2115144 (granting motion to dismiss claims under North Dakota's antitrust statutes); *Strang*, 2005 WL 1403769 (granting motion to dismiss claims under Wisconsin's antitrust statutes). Defendants therefore respectfully request that this Court follow the U.S. Supreme Court's opinion in *AGC* and the numerous state court cases applying it, and dismiss Plaintiffs' claims at the pleadings stage.

---

[13] A motion for summary disposition in Michigan is similar to motions to dismiss elsewhere; it tests the "legal sufficiency of the complaint on the basis of the pleadings alone." *Mack v. City of Detroit*, 467 Mich. 186, 193 (2002).

1

**<u>CONCLUSION</u>**

2    For the foregoing reasons, Defendants respectfully submit that this motion for judgment on

3  the pleadings should be GRANTED.  All Plaintiffs' claims based on the antitrust laws of Alabama,

4  Ohio, Pennsylvania, South Dakota, and West Virginia should be DISMISSED WITH PREJUDICE.

5  In addition, the claims brought under Arizona, California, Kansas, Maine, Michigan, Minnesota,

6  Mississippi, Nebraska, Nevada, New Mexico, North Carolina, North Dakota, and Wisconsin law by

7  all Plaintiffs who purchased products containing DRAM should be DISMISSED WITH

8  PREJUDICE.

9  DATED:  August 14, 2006                     Respectfully Submitted,

10                                             KENNETH R. O'ROURKE
                                               DANIEL L. ALEXANDER
11                                             PETER NEMEROVSKI
                                               O'MELVENY & MYERS LLP
12                                             400 South Hope Street
                                               Los Angeles, CA  90071
13                                             Telephone: (213) 430-6000
                                               Facsimile:  (213) 430-6407
14

15                                                 *s/Daniel L. Alexander*

16                                             _____
                                                   Daniel L. Alexander

17                                             Attorneys for Defendants Hynix Semiconductor
                                               Inc. and Hynix Semiconductor America Inc.,
18                                             signing on behalf of all Moving Defendants

19                                             Additional Moving Defendants and Counsel
                                               Listed On Next Page
20

21

22

23

24

25

26

27

28

1    Additional Moving Defendants and Counsel:

2

| | |
|---|---|
| Joel S. Sanders<br>GIBSON, DUNN & CRUTCHER LLP<br>One Montgomery Street<br>Montgomery Tower, 31st Floor<br>San Francisco, CA 94104<br>(415) 393-8200 (telephone)<br>(415) 986-5309 (facsimile)<br><br>Ronald C. Redcay<br>ARNOLD & PORTER LLP<br>777 S. Figueroa Street, 44th Floor<br>Los Angeles, CA 90017-2513<br>(213) 243-4002 (telephone)<br>(213) 243-4199 (facsimilte)<br><br>**Attorneys for Defendants Micron**<br>**Technology, Inc. and Micron**<br>**Semiconductor Products, Inc.** | Alton Arbisser<br>Julian Brew<br>Tanja Shipman<br>KAYE SCHOLER LLP<br>1999 Avenue of the Stars, Suite 1700<br>Los Angeles, CA 90067<br>(310) 788-1200 (facsimile)<br><br>**Attorneys for Defendants Infineon**<br>**Technolgies North America Corp. and**<br>**Infineon Technologies AG** |
| William M. Goodman<br>Andrea DeShazo<br>Raphael Goldman<br>TOPEL & GOODMAN<br>832 Sansome Street, 4th Floor<br>San Francisco, CA 94111<br>(415) 398-5030 (facsimile)<br><br>**Attorneys for Defendants Mosel Vitelic**<br>**Corporation and Mosel Vitelic**<br>**Incorporated** | James G. Kreissman<br>Harrison J. Frahn IV<br>Jason M. Bussey<br>SIMPSON THACHER & BARTLETT LLP<br>2550 Hanover Street<br>Palo Alto, CA 94304<br>(650) 251-5002 (facsimile)<br><br>**Attorneys for Defendants Elpida Memory**<br>**(USA), Inc. and Elpida Memory, Inc.** |

LA2:808122.5

Howard M. Ullman
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
(415) 773-5759 (facsimile)

Robert Freitas
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025-1021
(650) 614-7401 (facsimile)

**Attorneys for Defendants Nanya
Technology Corporation and Nanya
Technology Corporation USA**

Robert B. Pringle
Paul Griffin
Jonathan E. Swartz
THELEN REID & PRIEST LLP
101 Second Street, Suite 1800
San Francisco, CA 94105
(415) 371-1211 (facsimile)

**Attorneys for Defendant NEC Electronics
America, Inc.**

William S. Farmer, Jr.
COLLETTE ERICKSON FARMER
 & O'NEILL LLP
235 Pine Street, Suite 1300
San Francisco, CA 94104
(415) 788-6929 (facsimile)

Steven H. Morrissett
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER LLP
Stanford Research Park
3300 Hillview Avenue
Palo Alto, CA 94304-1203
(650) 849-6666 (facsimile)

**Attorneys for Defendants Winbond
Electronics Corporations, Winbond
Electronics Corporation America**

Defendants' Motion for Judgment on the Pleadings
Re: Second and Fourth Claims For Relief
Master File No. M-02-1486 PJH