KAYE SCHOLER LLP
Aton Arbisser, Bar Number 150496
Julian Brew, Bar Number 150615
Tanja Shipman, Bar Number 188948
Joshua Stambaugh, Bar Number 233834
1999 Avenue of the Stars, Suite 1700
Los Angeles, California 90067
Telephone: (310) 788-1000
Facsimile: (310) 788-1200

Attorneys for Defendants Infineon Technologies
North America Corp. and Infineon Technologies
AG.

*[Counsel for other Defendants appear on signature page]*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **In Re DRAM ANTITRUST LITIGATION** | Master File No. M-02-1786 PJH |
| | MDL. No. 1486 |
| This Document Relates to: | **DEFENDANTS' NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS RE: FIFTH CLAIM FOR RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES** |
| ***Petro Computer Systems, Inc., et al. v. Micron Technology, Inc., et al.*, Northern District of California, Case No. C 05 02472.** | **ORAL ARGUMENT REQUESTED** |

Hearing Date: September 20, 2006
Time: 9:00 a.m.
Courtroom: 3, 17th Floor
Judge: Hon. Phyllis J. Hamilton

KAYE SCHOLER LLP

Memorandum of Points and Authorities In Support Of Defendants' Motion for Judgment on the Pleadings Master File No. M-02-1786 PJH

23199778.DOC

## **TABLE OF CONTENTS**

Page

NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS ................... 1

INTRODUCTION ............................................................................................................ 2

SUMMARY OF ARGUMENT .......................................................................................... 3

ARGUMENT .................................................................................................................... 4

1.  Alaska Statute § 45.50.471 *et seq.* ............................................................... 4

2.  Arkansas Code § 4-88-101 *et seq..* ............................................................. 7

3.  Hawaii Rev. Stat. § 480 *et seq.* ................................................................. 10

4.  Idaho Code § 48-601 *et seq.* ...................................................................... 11

5.  Louisiana Rev. Stat. § 51:1401 *et seq.* ...................................................... 12

6.  Montana Code § 30-14-101 *et seq.* ............................................................ 13

7.  New York Gen. Bus. Law § 349 *et seq.* ..................................................... 14

8.  Oregon Rev. Stat. § 646.605 *et seq.* .......................................................... 18

9.  Rhode Island Gen. Laws § 6-13.1-1 *et seq.* ............................................... 21

10.  South Carolina Code Laws § 39-5-10 *et seq.* ............................................. 23

11.  Utah Code § 13-11-1 *et seq.* ...................................................................... 23

12.  West Virginia Code § 46A-6-101 *et seq.* ....................................................20

13.  Wyoming Statutes § 40-12-105 *et seq.* ......................................................21

CONCLUSION .............................................................................................................. 31

Memorandum of Points and Authorities In Support Of Defendants'
Motion for Judgment on the Pleadings
Master File No. M-02-1786 PJH

23199778.DOC                                         i

# TABLE OF AUTHORITIES

Page

## Cases

*Abbott Labs. v. Segura*,
   907 S.W.2d 503 (Tex. 1995)................................................................................5, 6

*Alaska Children's Servs. v. Williamson*,
   606 P.2d 786 (Alaska 1980) ...............................................................................5

*Benton v. Gunter*,
   29 S.W.3d 719 (Ark. 2000)................................................................................8

*Blewett v. Abbott Labs.*,
   938 P.2d 842 (Wash Ct. App. 1997)..................................................................5

*Board of Trustees for Little Rock Police Dep't Pension & Relief Fund v. Stodola*,
   942 S.W.2d 255 (Ark. 1997)..............................................................................8

*Bolden v. Watt*,
   719 S.W.2d 428 (Ark. 1986)..............................................................................8

*Clark v. Cassidy*,
   636 P.2d 1344 (Haw. 1981) ...............................................................................9

*Crawford v. F. Hoffman-La Roche, Ltd.*,
   No. Civ. 99-202-1 (Ark. Cir. Ct. 9/20/02) .......................................................7

*Cropp v. State Workmen's Comp. Comm'r*,
   236 S. E. 2d 480 (W. Va. 1977)........................................................................21

*Cunningham v. Bayer AG, et al.*,
   Index No. 0603820/00, slip op. (Oct. 15, 2002) ..................................12, 14

*Daraee v. Microsoft Corp.*,
   2000 WL 33187306 (Or. Cir. Ct., Jun. 27, 2000) ............................................15

*Dash v. Wayne*,
   700 F.Supp. 1056 (D. Haw. 1988) .....................................................................9

*Doll v. Major Muffler Centers, Inc.*,
   687 P.2d 48 (Mont. 1984) .................................................................................11

*ERI Max Entm't, Inc. v. Streisand*,
   690 A.2d 1351 (R.I. 1997) ........................................................................16, 17

*Fisher Broadcasting v. Department. of Revenue*,
   898 P. 2d 1333 (Or. 1995) ................................................................................15

*FTC v. Mylan Laboratories., Inc.*,
   99 F. Supp. 2d 1 (D.D.C. 1999)........................................................................21

*FTC v. Mylan Labs*,
   62 F. Supp. 2d 25 (D.D.C. 1999)........................................................................7

Memorandum of Points and Authorities In Support Of Defendants'
Motion for Judgment on the Pleadings
Master File No. M-02-1786 PJH

KAYE SCHOLER LLP

*Glod v. Baker*,
   899 So. 2d 642 (La. Ct. App. 2005).........................................................................10

*Goshen v. Mut. Life Ins. Co.*,
   774 N.E.2d 1190, 1195-96 (N.Y. 2002) ................................................................13

*Gunnells v. Healthplan Servs., Inc.*,
   348 F.3d 417 (4th Cir. 2003) .................................................................................18

*Herrig v. Herrig*,
   844 P.2d 487 (Wyo. 1992)...............................................................................22, 23

*Hindman v. Microsoft*,
   2004 WL 928283 at *2 (Haw. April 30, 2004)......................................................8

*Illinois Brick Co. v. Illinois*,
   431 U.S. 720 (1977)...........................................................................................3, 11

*In re Estate of Lewis*,
   614 S.E.2d 695 (W. Va. 2005)...............................................................................21

*In re Microsoft Corp. Antitrust Litig.*,
   127 F. Supp. 2d 702 (D. Md. 2001), *dismissed in part by*,
   127 F. Supp. 2d 728 (D. Md. 2001) (citing S.C. Code Ann. § 39-5-140) ...................18

*In re Microsoft Corp. Antitrust Litig.*,
   slip copy 2005 WL 3636795 (D. Md. 2005)..........................................................18

*In re: Pharm. Indus. Average Wholesale Price Litig.*,
   230 F.R.D. 61 (D. Mass. 2005).............................................................................23

*Leider v. Ralfe*,
   387 F. Supp. 2d 283 (S.D.N.Y. 2005) ...................................................................14

*Levine v. Abbott Labs.*,
   Index No. 117320/95, slip op. (N.Y. Sup. Ct. Nov. 20, 1996) ..................................5, 14

*Mack v. Bristol-Meyers Squibb Co.*,
   673 So. 2d 100 (Fla. Dist. Ct. App. 1996); *State v. Black*, 676 P.2d 963 (Wash. 1984) .................7

*Major v. Microsoft Corp.*,
   60 P.3d 511 (Okla. Civ. App. 2002) ...................................................................5, 6

*Morris v. Sears, Roebuck & Co.*,
   765 So. 2d 419 (4th Cir. 2000) .............................................................................10

*Osterman v. Sears, Roebuck & Co.*,
   80 P.3d 435 (Mont. 2003) .....................................................................................11

*Paltre v. General Motors Corp.*,
   Index No. 005014/2003, slip op. (N.Y. Sup. Ct. Nassau County Apr. 21, 2004)...............6, 12, 13

*Pan Energy v. Martin*,
   813 P.2d 1142 (Utah 1991)....................................................................................18

KAYE SCHOLER LLP

Memorandum of Points and Authorities In Support Of Defendants'
Motion for Judgment on the Pleadings
Master File No. M-02-1786 PJH

23199778.DOC         iii

KAYE SCHOLER LLP

*Robert's Haw. School Bus. Inc. v. Laupahoehoe Transp. Co. Inc.*,
   982 P.2d 853 (Haw. 1999) ..................................................................................................8

*Sadler v. Rexair, Inc.*,
   612 F. Supp. 491 (D. Mont. 1985) ....................................................................................11

*Sargent v. Cole*,
   598 S.W.2d 749 (Ark. 1980) .............................................................................................8

*Scully Signal Co. v. Joyal*,
   881 F. Supp. 727 (D.R.I. 1995) ........................................................................................16

*Sickles v. Cabot Corp.*,
   877 A.2d 267 (N.J. Super. Ct. App. Div. 2005) ...........................................................5, 6

*Smith v. Video Lottery Consultants*,
   858 P. 2d 11 (Mont. 1993) ..........................................................................................11, 12

*Sperry v. Crompton Corp.*,
   Index No. 17872/02, slip op.
   (N.Y. Sup. Ct. Nassau County Nov. 20, 2003) ..........................................................12, 13

*St. Patrick's Home for Aged & Infirm v. Laticrete Int'l, Inc.*,
   696 N.Y.S.2d 117 (N.Y. App. Div. 1st Dept. 1999) .......................................................13

*State ex rel. Wasden v. Daicel Chem. Indus., Ltd.*,
   106 P. 3d 428 (Idaho 2005) ............................................................................................6, 9

*Stutman v. Chemical Bank*,
   731 N.E.2d 608 (N.Y. 2000) .............................................................................................6

*Teller v. Bill Hayes, Ltd.*,
   630 N.Y.S.2d 769 (N.Y. App. Div. 2d Dep't 1995) ........................................................12

*Thunderbasin Land, Livestock & Investment Co. v. Laramie County*,
   5 P.3d 774 (Wyo. 2000) ....................................................................................................23

*UMWA v. Kingdon*,
   325 S.E.2d 120 (W. Va. 1984) .........................................................................................21

*Utah County v. Orem City*,
   699 P.2d 707 (Utah 1985) .................................................................................................18

*Valdez v. Dep't of Cmty. & Reg'l Affairs*,
   793 P.2d 532 (Alaska 1990) ...............................................................................................5

*W.M.F. v. Johnstone*,
   711 P.2d 1187 (Alaska Ct. App. 1986) ...............................................................................5

*Waddill v. Anchor Hocking, Inc.*,
   8 P.3d 200, 203 (Or. 2000), *reconsideration granted by, remanded by*,
   18 P.3d 1096 (Ore. 2001) ..................................................................................................15

*Wilson v. General Motors Corp.*,
   2006 WL 1767754, *8 (N.J. Super. Ct. App. Div. June 29, 2006) .....................................5

23199778.DOC           iv

Memorandum of Points and Authorities In Support Of Defendants'
Motion for Judgment on the Pleadings
Master File No. M-02-1786 PJH

KAYE SCHOLER LLP

**<u>Statutes</u>**

Alaska Stat. § 45.50.531(f) ..................................................................................6

Alaska Statutes § 45.50.471 *et seq.* ...............................................................1, 4

Ark Code § 4-88-107(a) .......................................................................................6

Ark Code § 4-88-107(a)(10) .................................................................................6

Ark. Code Ann. § 4-75-315 ..................................................................................7

Ark. Code Ann. § 4-75-315(b)(3)(C)(ii) ..............................................................7

Ark. Code Ann. §§ 4-75-301, *et seq.* ..................................................................7

Arkansas Code § 4-88-101 *et seq.* ..................................................................1, 6

Federal Rule of Civil Procedure 12(c) .................................................................1

Hawaii Revised Statutes § 480 *et seq.* .......................................................1, 8, 9

Idaho Code § 48-601 *et seq.* .........................................................................1, 9

Idaho Code § 48-603(18) ......................................................................................9

Idaho Code section 48-619 ...................................................................................9

La. Rev. Stat. Ann 51:1409(A) ..........................................................................10

Louisiana Rev. Stat. § 51:1409(E) .....................................................................10

Louisiana Revised Statutes § 51:1401 *et seq.* .............................................1, 10

Mont. Code Ann. § 30-14-102(1) .......................................................................11

Mont. Code Ann. § 30-14-133(1) ..................................................................10, 11

Mont. Code Ann. 30-14-205, *et seq.* .................................................................11

Montana Code § 30-14-101 *et seq.* ..............................................................1, 10

New York C.P.L.R. 901(b) .................................................................................13

New York General Business Laws § 349 *et seq.* .................................... passim

Ore. Rev. Stat. § 646.608 ...................................................................................14

Ore. Rev. Stat. § 646.608(1) ..............................................................................15

Ore. Rev. Stat. § 646.608(1)(a)-(eee) ...........................................................14, 15

Ore. Rev. Stat. § 646.608(1)(u) ..........................................................................14

Ore. Rev. Stat. § 646.608(4) ..............................................................................14

Memorandum of Points and Authorities In Support Of Defendants'
Motion for Judgment on the Pleadings
Master File No. M-02-1786 PJH

23199778.DOC                                    v

KAYE SCHOLER LLP

Ore. Rev. Stat. § 646.638(6) ..................................................................................16

Ore. Rev. Stat. § 646.648 ........................................................................................15

Ore. Rev. Stat. § 646.661 ........................................................................................15

Ore. Rev. Stat. § 646.879 ........................................................................................15

Ore. Rev. Stat. § 803.375 ........................................................................................15

Ore. Rev. Stat. § 815.410 ........................................................................................15

Ore. Rev. Stat. § 822.046 ........................................................................................15

Ore. Rev. Stat. §§ 646.705, *et seq.* ........................................................................14

Ore. Rev. Stat. §§ 746.05, *et seq.* ..........................................................................15

Ore. Rev. Stat. 646.725 ...........................................................................................15

Oregon Revised Statutes § 646.605 *et seq.* ................................................1, 14, 16

Rhode Island General Laws § 6-13.1-1 *et seq.* ..........................................1, 16, 17

S.C. Code Ann. § 39-5-140 ......................................................................................17

S.C. Code Ann. § 39-5-20 ........................................................................................18

South Carolina Code Laws § 39-5-10 *et seq.* ....................................................1, 17

Utah Admin. Code R152-11 .....................................................................................18

Utah Code § 13-11-1 *et seq.* .................................................................................2, 18

Utah Code § 13-11-19 (8) ........................................................................................20

Utah Code § 13-11-19(4)(a) .....................................................................................19

Utah Code Ann. § 13-11-4(1) .............................................................................18, 19

Utah Code Ann. § 13-11-5(1) ...................................................................................18

W. Va. Code § 46A-6-102 (2) ..................................................................................21

W. Va. Code § 46A-6-102 (A) .................................................................................20

W. Va. Code § 46A-6-102 (B) .................................................................................20

W. Va. Code § 46A-6-102 (C) .................................................................................20

W. Va. Code § 46A-6-102 (L) ..................................................................................20

W. Va. Code § 46A-6-106 .......................................................................................21

W. Va. Code section 46A-6-104 ..............................................................................20

Memorandum of Points and Authorities In Support Of Defendants'
Motion for Judgment on the Pleadings
Master File No. M-02-1786 PJH

23199778.DOC                                    vi

KAYE SCHOLER LLP

West Virginia Code § 46A-6-101 *et seq.* ....................................................................2, 20

Wyo. Stat. § 40-12-102 (a) (ii)..........................................................................................23

Wyo. Stat. § 40-12-102 (a)(ix)..........................................................................................23

Wyo. Stat. § 40-12-108(a) ................................................................................................23

Wyo. Stat. § 40-12-109.....................................................................................................24

Wyo. Stat. §§ 40-12-101, *et seq.*.......................................................................................22

Wyo. Stat. §§ 40-4-114, *et seq.*........................................................................................21

Wyoming Statutes § 40-12-105 *et seq.* .................................................................2, 22, 23

**<u>Other Authorities</u>**

Federal Trade Commission Act,
    15 U.S.C. § 45(a)(1).................................................................................................12

H.B. 1841,
    83rd General Assembly Reg. Sess. (Ark. 2001) .........................................................8

Ore. Admin. R. ch. 137, div. 20........................................................................................15

*Report of the Comm. on New York State Antitrust Law
    of the Antitrust Law Section of the
    New York State Bar Ass'n:  A Proposed New State Law Making Deceptive Acts or Practices
    Unlawful*,
    N.Y. St. B. A. Antitrust L. Symp. 114 (1968) ...........................................................12

Memorandum of Points and Authorities In Support Of Defendants'
Motion for Judgment on the Pleadings
Master File No. M-02-1786 PJH

23199778.DOC                              vii

KAYE SCHOLER LLP

## **NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT, on September 20, 2006 at 9:00 a.m., or as soon thereafter as the matter may be heard by the above entitled court, in Courtroom 3 of the United States Courthouse located at 450 Golden Gate Avenue, San Francisco, California 94102, pursuant to Federal Rule of Civil Procedure 12(c), Defendants Micron Technology, Inc., Micron Semiconductor Products, Inc., Infineon Technologies AG, Infineon Technologies North America Corporation, Mosel Vitelic Corporation, Mosel Vitelic Corporation USA, Nanya Technology Corporation, Nanya Technology Corporation USA, Elpida Memory, Inc., Elpida Memory (USA), Inc., Hynix Semiconductor Inc., Hynix Semiconductor America Inc., Winbond Electronics Corporation, Winbond Electronics Corporation America, Inc., and NEC Electronics America, Inc. ("Defendants") will and hereby do move for judgment on the pleadings as to Plaintiffs' Fifth Claim For Relief.

For the reasons discussed below, based on the pleadings in this case, all of Plaintiffs' claims under the following state laws are barred as a matter of law.[1]

1.      Alaska Statutes § 45.50.471 *et seq.*  (Compl. ¶ 120)

2.      Arkansas Code § 4-88-101 *et seq.*  (Compl. ¶ 121)

3.      Hawaii Revised Statutes § 480 *et seq.*  (Compl. ¶ 125)

4.      Idaho Code § 48-601 *et seq.*  (Compl. ¶ 126).

5.      Louisiana Revised Statutes § 51:1401 *et seq.*  (Compl. ¶ 128)

6.      Montana Code § 30-14-101 *et seq.*  (Compl. ¶ 130)

7.      New York General Business Laws § 349 *et seq.*  (Compl. ¶ 133)

8.      Oregon Revised Statutes § 646.605 *et seq.*  (Compl. ¶ 135)

9.      Rhode Island General Laws § 6-13.1-1 *et seq.*  (Compl. ¶ 136)

10.     South Carolina Code Laws § 39-5-10 *et seq.*  (Compl. ¶ 137)

---

[1]   Plaintiffs assert these claims, in each case, only on behalf of the Class Members in the particular state whose statute is being invoked.  (Compl. ¶ 142).  The only exception is Plaintiffs' claim under the Cartwright Act in their Second Claim for Relief, which is asserted on behalf of all class members, and which shall be addressed in a future motion.  Defendants are moving to dismiss all claims by any class members under these states' consumer protection laws.

Memorandum of Points and Authorities In Support Of Defendants'
Motion for Judgment on the Pleadings
Master File No. M-02-1786 PJH

23199778.DOC                    1

11.     Utah Code § 13-11-1 *et seq.*  (Compl. ¶ 138)

12.     West Virginia Code § 46A-6-101 *et seq.*  (Compl. ¶ 140)

13.     Wyoming Statutes § 40-12-105 *et seq.*  (Compl. ¶ 141)

Therefore, Defendants are entitled to judgment on the pleadings as to those claims.

This motion is based upon this Notice of Motion and accompanying Memorandum of Points and Authorities; the complete files and records in this action, including Plaintiffs' Class Action Complaint; oral argument of counsel; and such other and further matters as this Court may consider.

## **INTRODUCTION**

Plaintiffs allege that defendants and other unnamed co-conspirators participated in a conspiracy to fix prices at which they sold dynamic random access memory ("DRAM"), a type of computer memory chip.  (06/17/05 Class Action Complaint ("Compl.") ¶ 47).  The alleged price fixing was in sales of DRAM to large computer manufacturers and other commercial direct buyers. Plaintiffs claim these alleged increases were passed on to indirect purchasers of products containing DRAM resulting in their "paying more for personal computers and other products in which DRAM is a component."  *Id.* ¶ 74.  Plaintiffs allege violations of Section 1 of the Sherman Act, 43 state statutes in 34 states, and the common law of Pennsylvania.  *Id.* ¶¶ 70-141.

Plaintiffs' counsel originally filed separate lawsuits in dozens of different states, asserting claims under those states' laws, which are still pending.  After facing substantive and jurisdictional challenges in many states, plaintiffs' counsel filed a single complaint in this Court including a class action on behalf of consumers and businesses in all fifty states who purchased products containing DRAM.  Because many states do not allow indirect purchaser claims under their antitrust laws, or limit the enforcement of such claims to state law enforcement officials, plaintiffs seek to end run these prohibitions by pursuing the same claims under consumer protection statutes in their single Fifth Claim for Relief.

By this motion, defendants move to dismiss plaintiffs' attempt to seek relief under the consumer protection statutes, because those statutes do not authorize the claims plaintiffs purport to assert in this case.  In a separate motion, defendants seek dismissal of many of plaintiffs' purported claims under state antitrust laws based on lack of standing and other grounds.

Memorandum of Points and Authorities In Support Of Defendants'
Motion for Judgment on the Pleadings
Master File No. M-02-1786 PJH

23199778.DOC                                2

KAYE SCHOLER LLP

# SUMMARY OF ARGUMENT

Plaintiffs assert claims under consumer protection statutes of Alaska, Arkansas, Hawaii, Idaho, Louisiana, Montana, New York, Oregon, Rhode Island, South Carolina, Utah, West Virginia, and Wyoming. Each of those claims is insufficient as a matter of law and should be dismissed.

*First*, as explained in a separate motion for judgment on the pleadings, many states either follow the United States Supreme Court's decision in *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), and do not allow indirect purchasers to seek recovery under their antitrust laws, or limit recovery by indirect purchasers in other ways, such as allowing only state attorney general to sue. Plaintiffs should not be allowed to evade these limitations of the antitrust laws of Alaska, Arkansas, Hawaii, Montana, and New York by suing under consumer protection laws. Courts around the country have rejected attempts to use state consumer protection laws to sidestep limitations on indirect purchaser recovery under antitrust laws.

*Second,* the consumer protection laws of Arkansas, Idaho, Montana, New York, Oregon, Utah, and Wyoming are directed not at antitrust violations, but false advertising and deceptive conduct directed at consumers. Plaintiffs here allege price fixing, not false advertising. Price fixing is not an unlawful practice under those statutes, and courts in numerous states have consistently held that statutes with comparable language do not apply to price fixing claims like those here. Rhode Island and West Virginia's consumer protection laws likewise are directed at conduct that creates a likelihood of confusion or of misunderstanding regarding products sold to consumers, not price fixing. The consumer protection laws in these states are also limited to deceptive conduct in consumer sales. The alleged price fixing here was primarily in sales of DRAM to large computer manufacturers and other businesses, not consumers.

*Third,* the consumer protection statutes of Louisiana, Montana, New York, and South Carolina do not allow class actions. Plaintiffs are not residents of these states, and therefore cannot represent purported class members with claims under Louisiana, Montana, New York, or South Carolina law, but even residents of those states could not pursue representative claims.

*Finally*, the consumer protection statutes of several of these states are governed by statutes of limitation that expired long before this lawsuit was commenced. Consumer protection claims under

Memorandum of Points and Authorities In Support Of Defendants'
Motion for Judgment on the Pleadings
Master File No. M-02-1786 PJH

23199778.DOC                    3

Louisiana and Oregon law must be brought within one year, and, under Alaska, Idaho, Montana, Utah, and Wyoming law, within two years of the alleged violations. Plaintiffs allege antitrust violations through June 2002, and they admit they were aware of these allegations around the same time. Plaintiffs claims brought June 17, 2005 under these statutes are untimely.

<u>**ARGUMENT**</u>

Plaintiffs' purported class action claims under the consumer protection statutes of Alaska, Arkansas, Hawaii, Idaho, Louisiana, Montana, New York, Oregon, Rhode Island, South Carolina, Utah, West Virginia, and Wyoming should be dismissed.

**1.     Alaska Statute § 45.50.471 *et seq.***

Plaintiffs seek recovery on behalf of Alaska indirect purchasers under its Unfair Trade Practices and Consumer Protection Act, Alaska Stat. § 45.50.471, *et seq.* ("AUTPCPA"). Plaintiffs have not stated a claim under the AUTPCPA for at least two independent reasons:

*First,* plaintiffs cannot avoid the limitations on indirect purchaser claims under Alaska's antitrust law by asserting price fixing claims under the AUTPCPA. Only the Attorney General may "seek monetary relief for injury ***indirectly sustained*** for a violation" of the antitrust laws. Alaska Stat. § 45.50.577 (i) (emphasis added). The Legislature enacted this provision due to a concern that allowing private suits by indirect purchasers would "clog[] the courts":

> Alaska antitrust statutes currently allow a cause of action only for purchasers who buy directly from the person or manufacturer that violated the antitrust statutes. By allowing only the attorney general a cause of action on behalf of both direct and indirect purchasers, Alaska consumers, businesses, and governmental entities will have a remedy for redress of antitrust violations ***without clogging the courts with multiple lawsuits individually brought by those purchasers***.

(Transmittal Letter from Governor Murkowski to legislature recommending House bill No. 225 on March 26, 2003 to Speaker Cott – Alaska Legislature House Journal 03/28/03 (emphasis added)).

To allow private plaintiffs to pursue indirect purchaser antitrust claims under the guise of the AUTPCPA would conflict with and undermine the Legislature's specific decision to limit such claims to the state Attorney General, and could result in the same potential "clogging" of the courts

Memorandum of Points and Authorities In Support Of Defendants'
Motion for Judgment on the Pleadings
Master File No. M-02-1786 PJH

23199778.DOC                                    4

that the Legislature sought to prevent by limiting standing.[2]  Indeed, the Alaska Attorney General

has filed his own action to seek recovery on behalf of Alaska consumers.  The fact that plaintiffs

filed their Alaska law claim in federal court instead of Alaska state court does not alter this outcome.

Alaska has not enacted one set of statutes applicable in its state courts and another in federal court,

and to apply different standing rules to each would encourage forum shopping.

     Courts around the country have rejected attempts to use state consumer protection laws to

avoid limitations on indirect purchaser recovery under antitrust laws.  *See, e.g.*, *Wilson v. General

Motors Corp.*, 2006 WL 1767754, *8 (N.J. Super. Ct. App. Div. June 29, 2006); *Sickles v. Cabot

Corp.*, 877 A.2d 267, 277 (N.J. Super. Ct. App. Div. 2005) (allowing state consumer protection

claim would "essentially permit an end run around the policies allowing only direct purchasers to

recover under the Antitrust Act"); *Levine v. Abbott Labs.*, Index No. 117320/95, slip op. (N.Y. Sup.

Ct. Nov. 20, 1996) ("[a]llowing [indirect purchasers] to sue under [New York consumer protection

laws] on allegations that are virtually identical to the antitrust allegations . . . would essentially

permit an end run around the policies allowing only direct purchasers to recover under the antitrust

act."); *Major v. Microsoft Corp.*, 60 P.3d 511, 517-18 (Okla. Civ. App. 2002) (refusing to allow

plaintiff to avoid the bar on indirect purchaser suits "by recasting his claims of anticompetitive

conduct as a Consumer Protection Act claim"); *Abbott Labs. v. Segura*, 907 S.W.2d 503, 505-06

(Tex. 1995) (refusing to allow claims under Texas' Deceptive Trade Practices statute to create "an

end run around the policies allowing only direct purchasers to recover" under the state antitrust act);

*Blewett v. Abbott Labs.*, 938 P.2d 842, 846 (Wash Ct. App. 1997) (dismissing antitrust claim and

consumer protection claim as being "the same claim with a different label").

     *Second,* the AUTPCPA provides that "[a] person **may not commence** an action under this

section **more than two years after** the person discovers or reasonably should have discovered that

---

[2]  Statutes in Alaska that "are *in pari materia* [*i.e.*, deal with the same subject matter]. . . should be construed so as to be consistent with one another."  *Alaska Children's Servs. v. Williamson*, 606 P.2d 786, 789 (Alaska 1980); *see also W.M.F. v. Johnstone*, 711 P.2d 1187, 1189 (Alaska Ct. App. 1986) ("Alaska has a general policy of statutory construction that favors the reconciliation of statutes and court rules that are *in pari materia*.")  Where one statute specifically addresses particular conduct, it also governs over other more general statutes, encompassing the same conduct.  *See Valdez v. Dep't of Cmty. & Reg'l Affairs*, 793 P.2d 532, 533 (Alaska 1990).

Memorandum of Points and Authorities In Support Of Defendants'
Motion for Judgment on the Pleadings
Master File No. M-02-1786 PJH

23199778.DOC       5

KAYE SCHOLER LLP

the loss resulted from an act or practice declared unlawful by [the Act]."  Alaska Stat. § 45.50.531(f) (emphasis added).  The Complaint alleges that "Plaintiffs did not discover . . . that Defendants and their co-conspirators were violating the antitrust laws as alleged herein until ***shortly before*** class action litigation was commenced against the Defendants in ***2002***." (Compl. at ¶ 68 (emphasis added).)  The Complaint was filed on June 17, 2005, which is more than two years after plaintiffs concede that they knew of potential claims, and so this claim should be dismissed.

### 2.   Arkansas Code § 4-88-101 *et seq.*

Plaintiffs seek recovery on behalf of Arkansas indirect purchasers under the Arkansas Deceptive Trade Practices Act (the "ADTPA"), Ark. Code Ann. § 4-88-101, *et seq.*   This is an inappropriate vehicle for plaintiffs' claims for at least two independent reasons.

*First*, the ADTPA does not apply to disguised antitrust claims by indirect purchasers who did not buy from defendants.  The ADTPA prohibits certain specified deceptive acts, along with other "unconscionable, false, or deceptive act or practice[s]."  Ark Code § 4-88-107(a)(10).  All of the acts enumerated in the statute are deceptive practices directed at consumers.  Ark Code § 4-88-107(a).

Courts in states with similar statutes have held that, where a consumer protection statute addresses only "unconscionable" or "deceptive" acts, without also addressing "unfair competition," the statute does not apply to price fixing claims like those in this case.  *See, e.g.*, *State ex rel. Wasden v. Daicel Chem. Indus., Ltd.*, 106 P. 3d 428, 434-35 (Idaho 2005) (price fixing claim does not fall within comparable Idaho consumer protection law); *Sickles v. Cabot Corp.*, 877 A.2d 267, 277 (N.J. Super. Ct. App. Div. 2005) (consumer protection claim based on antitrust claims dismissed for failure to allege any deceptive or unconscionable conduct); *Stutman v. Chemical Bank*, 731 N.E.2d 608, 611-12 (N.Y. 2000) (New York consumer protection law); *Paltre v. General Motors Corp.*, Index No. 005014/2003, slip op. (N.Y. Sup. Ct. Nassau County Apr. 21, 2004) (same); *Abbott Labs. Inc. v. Segura*, 907 S.W.2d 503, 507, 509-510 (Tex. 1995) (indirect purchaser antitrust action may not be brought under state consumer protection statute); *see also Major v. Microsoft Corp.*, 60 P.3d 511, 517 (Okla. Civ. App. 2002) ("[T]his Court concludes that the [Consumer Protection Act] should not extend to anticompetitive conduct and that [plaintiff] should not be permitted under the law . . . to recast[] his claims of anticompetitive conduct as a Consumer Protection Act claim.")

Memorandum of Points and Authorities In Support Of Defendants' Motion for Judgment on the Pleadings Master File No. M-02-1786 PJH

23199778.DOC                                        6

KAYE SCHOLER LLP

By contrast, states whose courts have construed consumer protection statutes to encompass antitrust violations involve statutes that specifically prohibit "unfair methods of competition," as well as deceptive or unconscionable acts. *See, e.g.*, *Mack v. Bristol-Meyers Squibb Co.*, 673 So. 2d 100, 104 (Fla. Dist. Ct. App. 1996); *State v. Black*, 676 P.2d 963, 968 (Wash. 1984).

Plaintiffs do not allege any deception by defendants directed to plaintiffs, nor do they allege that they had any dealings whatsoever with defendants. Rather, plaintiffs allege that defendants fixed prices of DRAM sold to PC manufacturers and other direct purchasers who used the DRAM as a component in computers and other products that were then sold to consumers or to retailers who sold to consumers. Therefore, plaintiffs do not allege any deceptive practice directed at consumers in Arkansas as required to state a claim for relief under the ADTPA.[3]

*Second*, even if the ADTPA applied to antitrust claims generally, it should not be applied here to a claim by indirect purchasers who did not deal directly with any of the defendants, because the Arkansas legislature has determined that indirect purchasers should not be able to bring private lawsuits for damages for antitrust violations. Under the Arkansas antitrust statute, Ark. Code Ann. §§ 4-75-301, *et seq.*, only "[t]he Attorney General . . . may bring a civil action in the name of the state, as parens patriae ***on behalf of natural persons residing in this state***, to secure monetary relief as provided under this section for injury, ***directly or indirectly*** sustained by those persons because of any violation of this subchapter . . . ." Ark. Code Ann. § 4-75-315. This statute includes no private right of action, and affirmatively rejects any interpretation that it provides any additional remedies beyond attorney general enforcement. *Id.* § 4-75-315(b)(3)(C)(ii) ("Nothing in the provisions set forth in §§ 4-75-315 -- 4-75-319 shall be deemed to expand or create additional rights or remedies available to persons proceeding under any action instituted by one (1) or more persons or an entity

---

[3]   While no Arkansas appellate court has addressed the issue, an Arkansas trial court allowed an indirect purchaser antitrust claim to be brought under the ADTPA. *Crawford v. F. Hoffman-La Roche, Ltd.*, No. Civ. 99-202-1 (Ark. Cir. Ct. 9/20/02). A federal district court reached a similar result in *FTC v. Mylan Labs*, 62 F. Supp. 2d 25 (D.D.C. 1999). Neither decision is binding on Arkansas courts or this court and has essentially no reasoning for the decision. It also involved plaintiffs who indirectly purchased the same price fixed product, and not a different product in which it was just a component. The weight of authority from around the country holds that comparable consumer protection laws do not apply to claims of the type asserted in this case.

Memorandum of Points and Authorities In Support Of Defendants'
Motion for Judgment on the Pleadings
Master File No. M-02-1786 PJH

23199778.DOC                                              7

KAYE SCHOLER LLP

1   other than the Attorney General for violations of the provisions of this subchapter.")

2          In fact, the Arkansas Legislature rejected a proposed amendment that would have allowed

3   private plaintiffs to bring suit for treble damages. *See* Proposed Arkansas Fair Competition Act,

4   H.B. 1841, 83rd General Assembly Reg. Sess. (Ark. 2001). The Legislature's specific rejection of

5   an attempt to allow private claims for antitrust violations confirms that Arkansas law should not be

6   interpreted to allow the very same private remedy through the ADTPA.[4] Indeed, as discussed above,

7   courts around the country have consistently rejected attempts to use state consumer protection laws

8   to avoid antitrust law limitations on indirect purchaser recovery.

9          The Arkansas Attorney General has filed an action on behalf of Arkansas residents under

10  Arkansas antitrust laws. To simultaneously allow antitrust claims by Arkansas residents, especially

11  indirect purchasers, would nullify the Arkansas Legislature's decision to vest exclusive antitrust

12  enforcement authority in the Arkansas Attorney General.

13         **3.     Hawaii Rev. Stat. § 480 *et seq.***

14         Plaintiffs seek recovery on behalf of Hawaii indirect purchasers by claiming that defendants

15  "have engaged in unfair competition or unfair or deceptive acts or practices" in violation of Hawaii

16  consumer protection law, Hawaii Rev. Stat. § 480, *et seq.* (Compl. at ¶ 125).

17         Prior to June 28, 2002, however, Hawaii did not allow private antitrust lawsuits for "unfair

18  methods of competition" under Section 480-2. *See Robert's Haw. School Bus. Inc. v. Laupahoehoe*

19  *Transp. Co. Inc.*, 982 P.2d 853, 880-81 (Haw. 1999). Instead, only the Hawaii Attorney General

20  could bring suit on behalf of direct or indirect purchasers based on antitrust allegations. *See*

21  *Hindman v. Microsoft*, 2004 WL 928283 at *2 (Haw. April 30, 2004). While the Hawaii Legislature

22  enacted a new subsection (e) that allows "any person," and not just the Attorney General, to bring

23  such an action, this section was not made effective until June 28, 2002, after the events at issue in

---

24  [4]  Where "statutes relate to the same general subject matter, each one must be read in a manner
25  harmonious with the other, if possible." *Bolden v. Watt*, 719 S.W.2d 428, 429 (Ark. 1986).
     Courts must "reconcile statutes of the same general subject matter, construing them together if
26  possible, in order to implement legislative intent." *Sargent v. Cole*, 598 S.W.2d 749, 751 (Ark.
     1980). A general statute "must yield when there is a specific statute involving the particular
27  subject matter." *Benton v. Gunter*, 29 S.W.3d 719 (Ark. 2000); *see also Board of Trustees for*
     *Little Rock Police Dep't Pension & Relief Fund v. Stodola*, 942 S.W.2d 255, 258 (Ark. 1997).

28

Memorandum of Points and Authorities In Support Of Defendants'
Motion for Judgment on the Pleadings
Master File No. M-02-1786 PJH

23199778.DOC                                        8

KAYE SCHOLER LLP

this lawsuit.  *See* Notes accompanying Haw. Rev. Stat. § 480-2 (2003).  Indeed, the Hawaii Attorney General has now filed his own action on behalf of Hawaii residents.

"It is an established rule that 'no law has any retrospective operation, unless otherwise expressed or obviously intended.'"  *Clark v. Cassidy*, 636 P.2d 1344, 1346 (Haw. 1981).  Thus, a 1987 amendment to § 480-2 (d), addressing standing to sue for "unfair or deceptive acts or practices" under section 480-2, was not applied retroactively.  *Dash v. Wayne*, 700 F.Supp. 1056, 1059 (D. Haw. 1988).  Likewise, nothing in the amendment adding 480-2(e) suggests it was intended to apply retroactively to conduct taking place before the amendment.  To the contrary, the Legislature provided that it would not take effect until June 28, 2002.  *See* Notes accompanying Haw. Rev. Stat. § 480-2 (2003).

### 4.  Idaho Code § 48-601 *et seq.*

Plaintiffs seek recovery on behalf of Idaho indirect purchasers under the Idaho Consumer Protection Act, Idaho Code § 48-601, *et seq*. (the "CPA").  Plaintiffs' claim under the CPA should be dismissed for at least two independent reasons.

*First,* plaintiffs' claim fails because the Idaho Supreme Court has explicitly held indirect purchasers of price fixed products cannot sue under the CPA.  *State ex rel. Wasden v. Daicel Chem. Indus., Ltd.*, 106 P.3d 428, 434-35 (Idaho 2005).  *Wasden* involved a claim by the State of Idaho on behalf of indirect purchasers of sorbates food additives, based on an alleged conspiracy to fix the prices of sorbates.  Finding that none of the nineteen types of prohibited conduct listed in the statute included price fixing, the Court rejected the state's argument that indirect purchaser price fixing claims fell within the statute's prohibition on "any unconscionable method, act or practice in the conduct of trade or commerce, as provided in section 48-603C, Idaho Code."  *See* Idaho Code § 48-603(18).  The court concluded that this subsection was "designed to prohibit unconscionable 'sales conduct' that is ***directed*** at the consumer."  106 P. 3d at 435 (emphasis added).  Under *Wasden*., plaintiffs can state no claim under the CPA

*Second*, the CPA claim is untimely.  Idaho Code section 48-619 provides "[n]o private action may be brought under this act more than two (2) years after the cause of action accrues."  Plaintiffs allege that they "did not discover . . . that Defendants and their co-conspirators were violating the antitrust laws as alleged herein until ***shortly before*** class action litigation was commenced against

KAYE SCHOLER LLP

Memorandum of Points and Authorities In Support Of Defendants'
Motion for Judgment on the Pleadings
Master File No. M-02-1786 PJH

23199778.DOC                                    9

KAYE SCHOLER LLP

1   the Defendants in *2002*." (Compl. at ¶ 68.) The Complaint was filed on June 17, 2005, which is

2   more than two years after plaintiffs' claims arose in 2002. This claim should be dismissed.

3       **5.    Louisiana Rev. Stat. § 51:1401 *et seq.***

4       Plaintiffs seek recovery on behalf of Louisiana indirect purchasers under Louisiana's Unfair

5   Trade Practices and Consumer Protection Law, La. Rev. Stat. § 51:1401, *et seq.* (the "UTPCPL").

6   This claim should be dismissed for at least two independent reasons.

7       *First,* the UTPCPL does not allow class actions for damages. *See* La. Rev. Stat. Ann

8   51:1409(A) (plaintiffs "may bring an action individually but not in a representative capacity to

9   recover actual damages" under the consumer protection statute); *Morris v. Sears, Roebuck & Co.*,

10  765 So. 2d 419, 421 (4th Cir. 2000) (recognizing the UTPCPL "expressly prohibits a private class

11  action"). None of the plaintiffs is a Louisiana resident or claims to have bought affected goods in

12  Louisiana. Because named plaintiffs have no individual claim and cannot bring a representative

13  claim, the UTPCPL claim should be dismissed in its entirety.

14      *Second,* plaintiffs' UTPCPL claim is untimely. Louisiana Rev. Stat. § 51:1409(E) provides

15  that "[t]he action provided by this section shall be prescribed by one year running from the time of

16  the transaction or act which gave rise to this right of action." Plaintiffs filed this lawsuit more than a

17  year after they admit they knew of the alleged conduct. (Compl. at ¶ 68.) This claim should be

18  dismissed as untimely. *See Glod v. Baker*, 899 So. 2d 642, 646 (La. Ct. App. 2005).

19      **6.    Montana Code § 30-14-101 *et seq.***

20      Plaintiffs seek recovery on behalf of Montana indirect purchasers under the Montana Unfair

21  Trade Practices Act, Mont. Code Ann. § 30-14-101, *et seq.* ("MUTPA"). Plaintiffs' attempt to sue

22  under the MUTPA should be dismissed for at least three independent reasons.

23      *First,* Montana also does not allow private consumer protection claims to be brought as a

24  class action. *See* Mont. Code Ann. § 30-14-133(1) ("A consumer . . . may bring an individual but

25  not a class action . . . .") None of the plaintiffs is a Montana resident or claims to have bought

26  affected goods in Montana. Instead, plaintiffs seek to recover solely in a representative capacity on

27  behalf of a class that includes Montana residents. This claim should be dismissed.

28      *Second,* while plaintiffs do not specify which sections of the MUTPA they contend are

Memorandum of Points and Authorities In Support Of Defendants'
Motion for Judgment on the Pleadings
Master File No. M-02-1786 PJH

23199778.DOC                                    10

violated, only "consumers" may bring actions for "unlawful practices" in violation of section 103 of the MUTPA. *See* Mont. Code Ann. § 30-14-133(1). A "consumer" entitled to sue "means a person who purchases or leases goods, services, real property, or information primarily for personal, family, or household purposes." *Id.* § 30-14-102(1). Plaintiffs here include business that have no standing, and the remaining named plaintiffs do not allege that they purchased their products for "personal, family, or household purposes," so they also have not alleged facts establishing standing. (Compl. at ¶¶ 7-17). *See Doll v. Major Muffler Centers, Inc.*, 687 P.2d 48, 52 (Mont. 1984).

*Third*, to the extent they seek recovery under sections 30-14-205, *et seq.*, which address "unlawful restraints of trade," plaintiff indirect purchasers have no standing. While Montana courts have not squarely addressed indirect purchaser standing, the Montana Supreme Court has held "due weight" should be given to federal antitrust law when interpreting similar portions of the MUTPA. *See Smith v. Video Lottery Consultants*, 858 P. 2d 11, 13 (Mont. 1993) ("This section of the Unfair Trade Practices Act is very similar to § 2 of the Sherman Act, which prohibits the creation of a monopoly. Because the statutes are similar, we will give due weight to the federal courts' interpretation of this type of alleged antitrust violation"); *see also Sadler v. Rexair, Inc.*, 612 F. Supp. 491, 495 (D. Mont. 1985) (to same effect). For nearly thirty years, indirect purchasers have not had standing to sue under federal antitrust law. *See Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977). Giving "due weight" to this long-standing federal precedent likewise requires dismissal of the claims here.

*Fourth,* their MUTPA claim is untimely. "[C]laims brought under Montana's Unfair Trade Practices Act, § 30-14-101, *et seq.*, [MUTPA], are subject to the two-year time limitation set forth at § 27-2-211." *Osterman v. Sears, Roebuck & Co.*, 80 P.3d 435, 441 (Mont. 2003). Plaintiffs' claims were filed more than two years after plaintiffs admit they were aware of potential claims. (Compl. at ¶ 68.)

### 7.   New York Gen. Bus. Law § 349 *et seq.*

Plaintiffs seek to avoid the prohibition on class actions under New York's antitrust law, the Donnelly Act, by bringing their antitrust claim on behalf of New York indirect purchasers under New York's Consumer Protection Act, N.Y. Gen. Bus. Law § 349, *et seq.* ("NYCPA"). Plaintiffs' purported indirect purchaser antitrust class action under the NYCPA is improper and should be dismissed for several independent reasons:

Memorandum of Points and Authorities In Support Of Defendants'
Motion for Judgment on the Pleadings
Master File No. M-02-1786 PJH

23199778.DOC                                        11

*First*, section 349 prohibits "deceptive acts," and does not extend more broadly to unfair methods of competition. *See Teller v. Bill Hayes, Ltd.*, 630 N.Y.S.2d 769, 773 (N.Y. App. Div. 2d Dep't 1995) ("The typical violation contemplated by the statute involves an individual consumer who falls victim to misrepresentations made by a seller of consumer goods usually by way of false or misleading advertising."). In this respect, section 349 differs from Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1) ("FTCA"), which prohibits both "unfair methods of competition and . . . unfair or deceptive trade practices." 15 U.S.C. § 45(a)(1). Significantly, the legislative history shows that legislative choice to exclude unfair competition from the NYCPA was made consciously to avoid sweeping antitrust claims within the statute's coverage. *See Report of the Comm. on New York State Antitrust Law of the Antitrust Law Section of the New York State Bar Ass'n: A Proposed New State Law Making Deceptive Acts or Practices Unlawful*, N.Y. St. B. A. Antitrust L. Symp. 114, 128 (1968) (noting legislature purposely excluded the "unfair methods of competition" language from Gen. Bus. Law § 349 because it would cover antitrust violations, and "[s]uch concepts have no place in a straight-forward consumer protection law").

Thus, New York courts have held that antitrust claims like the price fixing claims asserted in this case do not come within the purview of the NYCPA. For example, in *Paltre v. General Motors Corp.*, Index No. 005014/2003, slip op. (N.Y. Sup. Ct. Nassau County Apr. 21, 2004), the court dismissed a section 349 claim against automobile manufacturers based on the defendants' alleged price-fixing, finding that the "conspiracy to inflate prices" and defendants' failure to inform New York consumers of that conspiracy, among other allegations, were not deceptive acts covered by Section 349. *Id.* at 15-16. The appellate court affirmed, because "the alleged misrepresentations were either not directed at consumers or *were not materially deceptive." Paltre v. General Motors Corp.*, 810 N.Y.S.2d 496, 498 (N.Y. App. Div. 2d Dep't 2006) (emphasis added); *see also Sperry v. Crompton Corp.*, Index No. 17872/02, slip op. (N.Y. Sup. Ct. Nassau County Nov. 20, 2003) (rejecting claim by tire purchasers who alleged price fixing in the sale of chemicals used for processing the rubber used to make the tires, because this was not the type of *deceptive* conduct covered by Section 349); *Cunningham v. Bayer AG, et al.*, Index No. 0603820/00, slip op. (Oct. 15, 2002) (rejecting claim by indirect purchasers of the antibiotic Cipro who alleged that defendant

KAYE SCHOLER LLP

Memorandum of Points and Authorities In Support Of Defendants'
Motion for Judgment on the Pleadings
Master File No. M-02-1786 PJH

23199778.DOC                                        12

1    manufacturers engaged in a worldwide conspiracy to suppress competition and increase prices by

2    entering into secret settlement agreements to keep generic Cipro off the market, because the mere

3    failure to tell consumers they were paying higher prices as a result of defendants' anticompetitive

4    agreements does "not state consumer-oriented deceptive acts for purposes of GBL § 349.").[5]

5         *Second,* Section 349 also is limited to deceptive practices in the "conduct of any business,

6    trade or commerce or in the furnishing of any service *in this state*."  Gen. Bus. Law § 349(a)

7    (emphasis added).  Section 349 applies only to "commercial misconduct occurring within New

8    York" that results in a "transaction in which the consumer is deceived in New York."  *Goshen v.*

9    *Mut. Life Ins. Co.*, 774 N.E.2d 1190, 1195-96 (N.Y. 2002).  The mere allegation that an inflated

10   price was charged to New York residents for goods sold by third parties to indirect purchasers does

11   not establish that deceptive conduct by any of the defendants took place in New York.  *Paltre*, slip

12   op. at 15.  To the contrary, because this is an indirect purchaser action, the New York purchases on

13   which the claims are based were not even from defendants, and the only alleged deceptive

14   transaction was the original sale to the direct purchaser.  Because no purported deception is alleged

15   to have taken place in New York as the statute requires, the section 349 claim should be dismissed.

16   *Paltre*, slip op. at 15; *Sperry*, slip op. at 5.

17        *Third,* plaintiffs do not allege any deception directed at them by defendants.  Indeed, they do

18   not allege that they had any contact with any defendant at all.  *See St. Patrick's Home for Aged &*

19   *Infirm v. Laticrete Int'l, Inc.*, 696 N.Y.S.2d 117 (N.Y. App. Div. 1st Dept. 1999) (holding that where

20   there is no allegation of deceptive action taken towards the ultimate consumer, the claims must be

21   dismissed).  In *Sperry*, the Court dismissed a Section 349 claim because defendants had no direct

22   dealings with plaintiffs and "[t]he conduct complained of by the plaintiff concerned private business

23   transactions between corporations [*i.e.*, the defendant manufacturers and the corporations to which

24   they sold directly] that cannot be construed as 'consumer oriented.'"  *Sperry v. Crompton Corp.*,

25   Index No. 17872/02, slip op. at 4 (N.Y. Sup. Ct. Nassau County Nov. 20, 2003).

26

27   [5]   As discussed above, courts in other states with consumer protection statutes even broader than
        New York's have likewise rejected attempts to bring antitrust claims under these statutes.

28

Memorandum of Points and Authorities In Support Of Defendants'
Motion for Judgment on the Pleadings
Master File No. M-02-1786 PJH

23199778.DOC                                    13

KAYE SCHOLER LLP

*Fourth*, New York C.P.L.R. 901(b) prohibits class actions "to recover a penalty, or a minimum measure of recovery created or imposed by statute." Gen. Bus. Law § 349(h) permits private plaintiffs to seek injunctive relief, "actual damages or fifty dollars, whichever is greater," and treble damages for willful or knowing violations.[6]  The Complaint alleged defendants knowingly engaged in the alleged conduct, and seeks treble damages and penalties under various states' laws, including the NYCPA.  (*See* Compl. ¶¶ 36, 47-69.)  New York courts have held that New York's consumer protection laws may not be used to avoid the Donnelly Act's prohibition on class actions for damages for antitrust violations.  *See Cunningham v. Bayer Corp.*, Index No. 603820/00, slip op. at 13 (N.Y. Sup. Ct. Oct. 17, 2002) (allowing section 349 claims as a class action "would undermine the bar on maintaining a class action under the Donnelly Act.")[7]

### 8.    Oregon Rev. Stat. § 646.605 *et seq.*

Plaintiffs seek recovery on behalf of Oregon indirect purchasers under the Oregon Unfair Trade Practices Act, Ore. Rev. Stat. § 646.605 *et seq.* ("OUTPA").  Plaintiffs' purported claim under the OUTPA should be dismissed for at least two independent reasons.

*First,* the OUTPA provides for a private right of action only for any person injured by a practice declared unlawful by Ore. Rev. Stat. § 646.608.  Unlawful trade practices are defined in section 646.608 to be acts that "cause [a] likelihood of confusion or of misunderstanding" as to a product, consist of "false or misleading representations," or violate a list of other specified provisions of the Oregon statutes.  *Id.* § 646.608(1)(a)-(eee).  None of the prohibited "unlawful trade practices" involves price fixing, and the antitrust statute that specifically deals with price fixing is not one of the specific statutes listed as defining unlawful practices.  *See id.* §§ 646.705, *et seq.*

The OUTPA also prohibits "any other unfair or deceptive conduct in trade or commerce," *See* Ore. Rev. Stat. § 646.608 (1)(u), *but* "[a]n action or suit may not be brought under subsection

---

[6]    *Leider v. Ralfe*, 387 F. Supp. 2d 283, 292-293 (S.D.N.Y. 2005), allowed a class action, but only where plaintiffs agreed to waive right to recovery of penalties.

[7]    Similarly, in *Levine v. Abbott Labs.*, Index No. 117320/95, slip op. (N.Y. Sup. Ct. Nov. 20, 1996), which predated the amendment to allow indirect purchaser recovery under New York's antitrust law, the court held that "[a]llowing [an indirect purchaser] to sue under [GBL § 349] on allegations that are virtually identical to the antitrust allegations . . . would essentially permit an end run around the policies allowing only direct purchasers to recover under the antitrust act." *Id.* at 7.

Memorandum of Points and Authorities In Support Of Defendants'
Motion for Judgment on the Pleadings
Master File No. M-02-1786 PJH

23199778.DOC                                    14

KAYE SCHOLER LLP

KAYE SCHOLER LLP

1    (1)(u) of this section unless the Attorney General has first established a rule . . . declaring the

2    conduct to be unfair or deceptive in trade or commerce." *Id.* § 646.608(4). None of the rules that

3    have been promulgated by the Oregon Attorney General pursuant to this statute relate in any way to

4    price fixing or anticompetitive conduct causing antitrust injury. *See* Ore. Admin. R. ch. 137, div. 20.

5    Thus, plaintiffs cannot bring a claim for alleged price fixing under the OUTPA.

6        *Second,* even without these specific provisions that preclude plaintiffs' claim under the

7    OUTPA, it would be inappropriate to read antitrust statute violations into the specific list of statutes

8    the Legislature defined as "unlawful trade practices" for which claims may be asserted under the

9    OUTPA. Oregon applies the "rule of statutory construction that the inclusion of one is the exclusion

10   of the other (*inclusio unius est exclusio alterius*)." *Fisher Broadcasting v. Department. of Revenue*,

11   898 P. 2d 1333, 1340 (Or. 1995); *see also Waddill v. Anchor Hocking, Inc.*, 8 P.3d 200, 203 (Or.

12   2000), *reconsideration granted by*, *remanded by*, 18 P.3d 1096 (Ore. 2001).

13       To determine whether there is a violation of the antitrust laws requires application of antitrust

14   statutes. *See* Ore. Rev. Stat. §§ 746.05, *et seq.* Where the Legislature intended to include violation

15   of a statute as an "unlawful trade practice" under the OUTPA, it listed the specific statute by citation

16   in section 646.608(1) of the OUTPA. The Legislature listed thirty-one (31) specific statutes in

17   section 646.608(1)(aa)-(eee),[8] but did not include the antitrust statutes in the list.

18       Plaintiffs have not sued under the Oregon antitrust statute, because indirect purchasers do not

19   have standing to sue for violations of Oregon's antitrust law, *see Daraee v. Microsoft Corp.*, 2000

20   WL 33187306 (Or. Cir. Ct., Jun. 27, 2000), and Oregon allows only private actions for equitable

21   relief, not damages, for violations of the antitrust laws. Ore. Rev. Stat. 646.725, 646.730. The

22   Legislature's decision not to allow indirect purchasers to sue for violations of the antitrust laws, and

23   its prohibition on any private lawsuits for damages further undermine any suggestion that the

24

25   _____

     [8]    The list of statutes includes: Ore. Rev. Stat. § 803.375 [false vehicle registration application]; §
26   815.410 [odometer tampering]; § 646.661 [regulating price lists and contracts used by health spas]; §
     646.859 [rental company's failure to post collision damage waiver notices]; § 759.290 [automatic
     dialing devices by telemarketers]; § 822.046 [vehicle dealers must inform potential buyers if vehicle
27   was used in the manufacturing of a controlled substance]; § 646.879 [failing to remove person from
     sweepstakes promotion upon request]; § 646.648 [misrepresentations by a manufactured dwelling
     dealer]. *See* Ore. Rev. Stat. §§ 646.608 (1) (aa), (cc), (hh), (ii), (ss), (yy), & (eee).

28

Memorandum of Points and Authorities In Support Of Defendants'
Motion for Judgment on the Pleadings
Master File No. M-02-1786 PJH

23199778.DOC                                    15

Legislature intended to allow those very claims to be asserted through the OUTPA.

*Third,* the OUTPA prohibits unfair or deceptive conduct in "trade or commerce."  Ore. Rev. Stat. 646.608 (1) (u).  "Trade" and "commerce" are defined as "advertising, offering or distributing, whether by sale, rental or otherwise, any real estate, goods or services[.]"  *Id.* § 646.605(8).  "Goods" are those which "are or may be obtained ***primarily for personal, family or household purposes*** . . . ."  *Id.* § 646.605(6) (emphasis added).  Plaintiffs allege price fixing in defendants' sale of DRAM to businesses that used the DRAM as a component in their products, some of which were sold to consumers.  Even if price fixing were included in the list of unlawful trade practices in the OUTPA, the sales involved in the alleged price fixing here were not of consumer goods.

*Fourth,* Ore. Rev. Stat. § 646.638(6) provides for a one year statute of limitations.  While the statute is tolled when the state Attorney General brings suit on behalf of the State, that provision is irrelevant to plaintiffs' claims, because the statute of limitations had already expired by the time the Oregon Attorney General filed his recent lawsuit.

### 9.    Rhode Island Gen. Laws § 6-13.1-1 *et seq.*

Plaintiffs seek recovery on behalf of Rhode Island indirect purchasers under Rhode Island's Unfair Trade Practices and Consumer Protection Act ("UTPCPA"), R.I. Gen. Laws § 6-13.1-1, *et seq*.  This claim should be dismissed for the following independent reasons:

*First*, the private right of action under the UTPCPA is available only to "[a]ny person who purchases or leases good or services *primarily for personal, family, or household purposes."*  R.I. Gen. Laws § 6-13.1-5.2 (a) (emphasis added).  Business entities have no standing to sue.  *See Scully Signal Co. v. Joyal*, 881 F. Supp. 727, 741 (D.R.I. 1995); *ERI Max Entm't, Inc. v. Streisand*, 690 A.2d 1351, 1354 (R.I. 1997).  Five of the named plaintiffs are business entities or purchased DRAM for resale.  (Compl. ¶¶ 7, 8, 12, 16, 17).  There is no allegation that the five remaining plaintiffs purchased DRAM "primarily for personal, family, or household purposes."  R.I. Gen Laws § 6-13.1-5.2.  In fact, the Complaint repeatedly alleges "Plaintiffs and the members of the Class have been injured in their *business and property* . . . ."  (Compl. ¶¶ 83,142 (emphasis added).)  Therefore, none of the named plaintiffs alleges facts giving him, her, or it standing to sue under the UTPCPA.  *See Streisand*, 690 A.2d at 1353-54; *see also Schroeder v. Lotito,* 577 F. Supp. 708, 717 (D. R.I. 1983)

Memorandum of Points and Authorities In Support Of Defendants'
Motion for Judgment on the Pleadings
Master File No. M-02-1786 PJH

23199778.DOC                16

*Second*, price fixing does not constitute "[u]nfair methods of competition and unfair or deceptive acts or practices" as defined in the UTPCPA. "Unfair methods of competition and unfair or deceptive acts or practices" are defined as nineteen specifically enumerated practices. R.I. Gen. Laws §§ 6-13.1-1(5)(i)-(xix). This list does not include price fixing, but includes practices such as "passing off," false advertising, false designations of origin, and other false statements concerning products. Price fixing does not resemble any of the activities described in section 6-13.1-1. Rhode Island has a separate statute addressing antitrust violations, R.I. Gen. Laws §§ 6-36-1, *et seq.*, but plaintiffs do not assert any claims pursuant to that statute.

In *ERI Max Entm't v. Streisand*, 690 A.2d 1351 (R.I. 1997), the Rhode Island Supreme Court analyzed claims under both the Rhode Island antitrust statute and the UTPCPA. The plaintiff video store in *Streisand* alleged that the defendants, Blockbuster, Barbara Streisand, and her record label, had engaged in unfair trade practices by entering into an exclusive agreement whereby a concert videotape would only be available at Blockbuster video stores. *Id.* at 1352. This agreement further prevented the plaintiff from purchasing the videotape for resale or rental, and forced consumers, including plaintiff's consumers, to purchase it only at Blockbuster video stores. *Id.* at 1353.

After holding that plaintiff had failed to state a claim under state or federal antitrust laws, the court considered whether plaintiff could assert its claims under the UTPCPA. The court held that plaintiff had not stated a UTPCPA claim, both because it was a corporation and had no standing to sue, and that even "[a]ssuming that plaintiff did have such standing, we conclude that the behavior complained of does not meet the definition of '[u]nfair methods of competition and unfair or deceptive acts or practices' set forth in § 6-13.1-1 (5) of the act." *Id.* at 1354.

Likewise, the activity alleged in this case, a "contract, combination, trust or conspiracy" to raise prices, does not fall within the definition of "unfair methods of competition and unfair or deceptive trade practices" under the UTPCPA, and the claim should be dismissed.

### 10.    South Carolina Code Laws § 39-5-10 *et seq.*

Plaintiffs seek recovery on behalf of South Carolina indirect purchasers under South Carolina's Unfair Trade Practices Act, South Carolina Code Ann. § 39-5-10, *et seq.* ("SCUTPA"). This class action claim should be dismissed because it is barred by the statute.

Memorandum of Points and Authorities In Support Of Defendants'
Motion for Judgment on the Pleadings
Master File No. M-02-1786 PJH

23199778.DOC                                        17

The SCUTPA does not permit plaintiffs to seek damages in a representative action. *See* S.C. Code Ann. § 39-5-140 ("Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by § 39-5-20 may bring an action individually, but not in a representative capacity, to recover actual damages."). None of the named plaintiffs is a South Carolina resident. Plaintiffs seek to recover through a representative action on behalf of non-party South Carolina residents. Plaintiffs' class action therefore should be dismissed. *See In re Microsoft Corp. Antitrust Litig.*, slip copy 2005 WL 3636795, *3 (D. Md. 2005); *In re Microsoft Corp. Antitrust Litig.*, 127 F. Supp. 2d 702, 727 (D. Md. 2001), *dismissed in part by*, 127 F. Supp. 2d 728 (D. Md. 2001) (citing S.C. Code Ann. § 39-5-140); *see also Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 423 (4th Cir. 2003) (noting that the district court refused to certify a class under SCUTPA because such cases must be brought individually)

### 11.   Utah Code § 13-11-1 *et seq.*

Plaintiffs seek recovery on behalf of Utah indirect purchasers under Utah's Consumer Sales Practices Act, Utah Code § 13-11-1, *et seq.* (the "UCSPA"). This claim should be dismissed for at least four independent reasons.

*First,* the UCSPA prohibits "deceptive" and "unconscionable" acts. Utah Code Ann. §§ 13-11-4(1) & 13-11-5(1). The UCSPA does not list antitrust violations such as price fixing in its prohibitions. The Utah Division of Consumer Protection has promulgated regulations specifying acts prohibited by the UCSPA, and they also do not include antitrust violations. *See* Utah Admin. Code R152-11. Utah has a separate antitrust statute that governs this type of conduct, and does not permit indirect purchasers to sue. Plaintiffs should not be allowed to end run limitations on recovery under Utah's antitrust statute by bringing a UCSPA claim for alleged antitrust violations.[9]

---

[9]   In Utah, "[s]tatutes are considered to be in pari materia and thus must be construed together when they relate to the same person or thing, to the same class of persons or things, or have the same purpose or object. If it is natural or reasonable to think that the understanding of the legislature or of persons affected by the statute would be influenced by another statute, then those statutes should be construed to be in pari materia, construed with reference to one another and harmonized if possible." *Utah County v. Orem City*, 699 P.2d 707, 709 (Utah 1985). "Well-established principles of statutory construction require that a more specific statute governs instead of a more general statute." *Pan*

(continued...)

Memorandum of Points And Authorities In Support Of Defendants'
Motion for Judgment on the Pleadings
Master File No. M-02-1786 PJH

23199778.DOC                                        18

1    As discussed above, courts in other states with similar statutes have held that a consumer

2    protection statute addressing only "unconscionable" or "deceptive" acts, without also addressing

3    "unfair competition," does not apply to antitrust claims like those at issue in his case.  By contrast,

4    states in which courts have construed consumer protection statutes to encompass antitrust claims

5    involve statutes that specifically prohibit "unfair methods of competition," as well as deceptive or

6    unconscionable acts.  This Court should not be the first to extend the UCSPA to antitrust claims by

7    indirect purchasers, and should follow the lead of courts around the country that have refused to

8    extend similar consumer protection laws to this type of claim.

9    *Second*, even if the UCSPA included price fixing, it would not apply to claims by these indirect

10   purchaser plaintiffs.  The UCSPA is limited to "unconscionable" or "deceptive" acts "by a supplier in

11   connection with a consumer transaction."  Utah Code § 13-11-4 (1).  Even if price fixing were deemed

12   an "unconscionable" or "deceptive" practice as plaintiffs contend, the only price fixing plaintiffs allege

13   was in connection with transactions with defendants' direct customers -- large manufacturers purchasing

14   DRAM for business purposes -- not consumers.

15   *Third*, Utah limits the availability of class actions for violations of the UCSPA to cases in

16   which the defendant has specific notice that its conduct would violate the UCSPA.  *See* Utah Code §

17   13-11-19(4)(a).  Specifically, a class action may be brought only where the claim is based on either:

18   (1) a violation of a rule promulgated by the state agency regulating consumer transactions under the

19   UCSPA, (2) conduct declared to violate the UCSPA by the final judgment of a court in a decision

20   made available for public dissemination by the agency, or (3) violation of a consent judgment.  *Id.*

21   None of these applies.  Rules promulgated by the Division of Consumer Protection

22   specifying deceptive practices under the UCSPA do not include price fixing or other antitrust

23   violations.  *See* Utah Admin. Code R152-11.  No final judgment of any Utah court has declared price

24   fixing to be a violation of the UCSPA, and the Division of Consumer Protection has certainly not

25   disseminated any such decision publicly.  Plaintiffs also do not allege that defendants' conduct

26   violated a consent judgment.  Therefore, plaintiffs cannot pursue this claim as a class action.

27

28   *Energy v. Martin*, 813 P.2d 1142, 1145 (Utah 1991) (citation omitted).

Memorandum of Points and Authorities In Support Of Defendants'
Motion for Judgment on the Pleadings
Master File No. M-02-1786 PJH

23199778.DOC                                    19

KAYE SCHOLER LLP

1   Because none of the named plaintiffs makes an individual claim under the UCSPA, this claim must

2   be dismissed.

3       *Fourth*, this claim is untimely.  The UCSPA provides that "an action under this section must

4   be brought **within two years** after occurrence of a violation of this chapter, or within one year after

5   the termination of proceedings by the enforcing authority with respect to a violation of this chapter .

6   . . ."  Utah Code § 13-11-19 (8) (emphasis added).  The Complaint was filed more than two years

7   after plaintiffs concede that they were aware of potential claims.  *See* Compl. ¶ 68.  The only

8   provision for tolling of this statute is if the state "enforcing authority" brings a suit on behalf of the

9   state, in which case the two year statute of limitations is tolled until one year after the termination of

10  the proceedings by the enforcing authority.  *See* § 13-11-19 (8).  That provision is irrelevant to

11  plaintiffs' claims, however, because more than two years had passed between the time that the

12  plaintiffs filed their claims and the Utah state Attorney General filed suit.

13      **12.    West Virginia Code § 46A-6-101 *et seq.***

14      Plaintiffs seek to recover on behalf of West Virginia indirect purchasers under the West

15  Virginia Consumer Credit and Protection Statute, W. Va. Code § 46A-6-101(1), *et seq.* ("WVCCP").

16  As set forth in a separate motion as to plaintiffs' state law antitrust claims, indirect purchasers have

17  no standing to sue under West Virginia's antitrust statute.  The WVCCP does not provide plaintiffs

18  with a way around this limitation for two independent reasons.

19      *First,* the WVCCP is part of the "Consumer Credit and Protection Act," under the subtitle of

20  "General Consumer Protection."  A separate subtitle governs antitrust violations.  The WVCCP declares

21  unlawful "unfair methods of competition and unfair or deceptive acts or practices,"  *See* W. Va. Code

22  section 46A-6-104, and includes a list of practices, all of which involve consumer deception, and none of

23  which is akin to antitrust violations. *See, e.g.,* § 46A-6-102 (A), (B), (C), & (L)) ("Passing off goods or

24  services as those of another;" "Causing likelihood of confusion or of misunderstanding as to the source,

25  sponsorship, approval or certification of goods or services;" "Using deceptive representations or

26  designations of geographic origin in connection with goods or services;" and "any other conduct which

27  *similarly creates a likelihood of confusion or of misunderstanding*") (emphasis added).

28      Plaintiffs' do not base their claims on conduct that "creates a likelihood of confusion or of

KAYE SCHOLER LLP

Memorandum of Points and Authorities In Support Of Defendants'
Motion for Judgment on the Pleadings
Master File No. M-02-1786 PJH

misunderstanding." Instead, they have sued for violations of the subtitle governing antitrust. No West Virginia court has held the WVCCP can be applied to create an alternative remedy for violations of the antitrust laws, with standing beyond that permitted by the Legislature.[10]

To construe the WVCCP to allow plaintiffs to avoid limits on standing under the antitrust statutes would violate the "accepted rule of statutory construction that where a particular section of a statute relates specifically to a particular matter, that section prevails over another section referring to such matter only incidentally." *Cropp v. State Workmen's Comp. Comm'r*, 236 S. E. 2d 480, 484 (W. Va. 1977); *see also UMWA v. Kingdo*n, 325 S.E.2d 120, 121 (W. Va. 1984). It also would violate the principle that "[s]tatutes which relate to the same persons or things, or to the same class of persons or things, or statutes which have a common purpose will be regarded in *pari materia* to assure recognition and implementation of the legislative intent." *In re Estate of Lewis*, 614 S.E.2d 695, 700 (W. Va. 2005). This Court should not extend the WVCCP to antitrust claims.

*Second*, plaintiffs have failed to allege that they purchased the goods at issue primarily for non-business purposes. The WVCCPA allows private causes of action only by "consumers" who have suffered an ascertainable loss as a result of an act or practice declared unlawful by the Act. *See* § 46A-6-106. A "consumer" is defined in the Act as "a *natural person* to whom a sale or lease is made in a consumer transaction . . . ." § 46A-6-102 (2) (emphasis added). The Act also defines a "consumer transaction" to be "a sale or lease to a natural person or persons for a personal, family, household or agricultural purpose." § 46A-6-102 (2).

Five out of ten of the named plaintiffs are business entities with no standing to sue under the WVCCP. *See* Compl. ¶¶ 7-17. The remaining named plaintiffs do not allege the purpose for which they made their purchases, so they have not alleged that they bought goods primarily for appropriate non-business uses, as required for standing under the WVCCP.

### 13. Wyoming Stat. § 40-12-105 *et seq.*

---

[10] While no West Virginia court has construed the WVCCP to include antitrust claims, a District of Columbia federal district court, on reconsideration, reversed itself and allowed a WVCCP claim by the West Virginia attorney general to proceed based on alleged antitrust violations. *FTC v. Mylan Laboratories., Inc.*, 99 F. Supp. 2d 1 (D.D.C. 1999). For the reasons discussed herein, that court's conclusion is not persuasive and should not be followed.

Memorandum of Points and Authorities In Support Of Defendants'
Motion for Judgment on the Pleadings
Master File No. M-02-1786 PJH

23199778.DOC                21

KAYE SCHOLER LLP

The Wyoming antitrust statute only allows indirect purchasers to ask a court to enjoin the prohibited conduct, not to recover damages, Wyo. Stat. §§ 40-4-114, *et seq.*, so plaintiffs instead seek to recover under Wyoming's consumer protection law, Wyo. Stat. §§ 40-12-101, *et seq.* ("CPA"). This claim should be dismissed for four independent reasons.

*First*, the CPA does not apply to price fixing. The CPA proscribes specified fraudulent marketing practices, such as false designation of origin or sponsorship, or the qualities of goods, none of which is akin to price fixing. Wyo. Stat. § 40-12-105. While it also includes a general provision prohibiting "unfair or deceptive acts or practices," Wyo. Stat. § 40-12-105(a)(xv), no court has ever extended the CPA to antitrust claims. To the contrary, the Wyoming Supreme Court has refused to extend the consumer protection statute to claims that do not involve "unscrupulous and fraudulent marketing practices." *See Herrig v. Herrig*, 844 P.2d 487, 495 (Wyo. 1992).

In *Herrig*, plaintiff brought a third party action against an insurer, alleging claims under the Insurance Code and CPA. The court held Wyoming's Insurance Code did not include an implied private right of action for an insured's violation of its unfair claims settlement practice provisions. The court then held that plaintiffs could not make the same claim under the CPA, refusing to extend the CPA broadly to claims distinct from the type of enumerated false marketing activities:

> Appellants assert that Farmers Insurance engaged in 'unfair or deceptive acts or practices' in violation of § 40-12-105(a)(xv) by failing to settle their third party claims immediately. Upon a review of the Wyoming Consumer Protection Act, we detect no evidence that the Wyoming Legislature intended to create a private cause of action for third-party claimants to sue a tort-feasor's liability insurer over settlement disputes. The Wyoming Consumer Protection Act was drafted primarily to protect consumers from unscrupulous and fraudulent marketing practices.

*Id.* at 495 (citations omitted). The court also found support for this conclusion in the fact that "[t]he Wyoming Legislature has addressed the problem of and remedies for unfair claims settlement or payment practices in the Wyoming Insurance Code." *Id.*

Like the unfair insurance claims practices at issue in *Herrig*, indirect purchaser price fixing claims do not fall within a reasonable reading of the phrase "unscrupulous and fraudulent marketing practices," and are of a very different nature from the practices listed in the CPA. Indeed, plaintiffs do not allege that they purchased any goods from defendants, only that they suffered indirect injuries

KAYE SCHOLER LLP

Memorandum of Points and Authorities In Support Of Defendants' Motion for Judgment on the Pleadings
Master File No. M-02-1786 PJH

23199778.DOC                    22

KAYE SCHOLER LLP

as a result of alleged price fixing in sales of DRAM to PC OEMs and other manufacturers.  Like insurance claims settlement practices, the Legislature also "addressed the problem of and remedies for" antitrust violations elsewhere and has limited private rights of actions for antitrust violations to injunctive relief and not damages.  *Id.*  To allow private antitrust plaintiffs to sue for damages under the CPA would conflict with the Legislature's decision to allow only injunctive relief for antitrust violations, and violate the fundamental principle that all parts of a statute are construed "in pari materia; and, in ascertaining the meaning of a given law, all statutes relating to the same subject or having the same general purpose, must be considered and construed in harmony." *Thunderbasin Land, Livestock & Investment Co. v. Laramie County*, 5 P.3d 774, 779 (Wyo. 2000).

*Second,* the CPA applies only to "unfair or deceptive" practices in "connection with a consumer transaction."  Wyo. Stat. Ann. § 40-12-105 (a).  "Consumer transaction" means "advertising, offering for sale, sale or distribution of any merchandise to an individual for purposes that are primarily personal, family or household."  *Id.* § 40-12-102 (a) (ii).  Defendants sold DRAM to computer OEMs and manufacturers, and are not alleged to have advertised or sold any goods for "primarily personal, family or household" purposes.  For this reason as well, the conduct on which plaintiffs base their claim does not fall within the CPA.

*Third,* plaintiffs have not stated a private claim for damages under the CPA.  The private remedy provision of the CPA states:  "A person ***relying on an uncured unlawful deceptive trade practice*** may bring an action under this act for the damages he has actually suffered as a consumer as a result of such unlawful deceptive trade practice."  Wyo. Stat. § 40-12-108(a) (emphasis added).  An "uncured unlawful deceptive trade practice" means a violation of the CPA as to which the consumer has given proper notice and an opportunity to cure to the alleged violator, and that the alleged violator has not cured.  Wyo. Stat. § 40-12-102 (a)(ix).

Plaintiffs did not comply with the notice requirements of the CPA, and therefore cannot bring this class action.  *See In re: Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 84 (D. Mass. 2005) (consumers must comply with special notice provisions to bring claims under the CPA).  Moreover, even if they did comply, plaintiffs have not alleged and cannot allege that they "relied on" any deceptive trade practice.  Plaintiffs had no direct dealings with defendants, and allege no

Memorandum of Points and Authorities In Support Of Defendants'
Motion for Judgment on the Pleadings
Master File No. M-02-1786 PJH

23199778.DOC                                   23

representations by defendants on which they relied in purchasing goods.  They allege an agreement to fix prices.  Even if price fixing were a "deceptive trade practice" under the CPA, none of the plaintiffs relied on any agreement between the DRAM suppliers in purchasing any goods.

*Fourth*, the claim is time barred.  Even if plaintiffs intend to comply with the notice provisions, they have not done so in a timely fashion.  To sue under the CPA, plaintiffs must give notice "***within one (1) year*** after the initial discovery of the unlawful deceptive trade practice, [or] (b) ***within two (2) years*** following such consumer transaction, whichever occurs first . . . ."  Wyo. Stat. § 40-12-109 (emphasis added).  The transactions at issue, as well as plaintiffs' discovery of the allegedly "unlawful" trade practices, occurred no later than 2002.  *See* Compl. ¶ 68.  This lawsuit was filed more than two years later, and these claims are now barred under the statute.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants' motion for judgment on the pleadings as to the Fifth Claim for Relief should be GRANTED, and all claims by Plaintiffs in the Fifth Claim for Relief under the state consumer protection laws of Alaska, Arkansas, Hawaii, Idaho, Louisiana, Montana, New York, Oregon, Rhode Island, South Carolina, Utah, West Virginia, and Wyoming, alleged in the Fifth Cause of Action, should be DISMISSED WITH PREJUDICE.

Dated:  August 14, 2006                 Respectfully submitted,


                                        *s/Julian Brew*
                                        _____
                                        Julian Brew

                                        KAYE SCHOLER LLP
                                        Aton Arbisser
                                        Julian Brew
                                        1999 Avenue of the Stars, Suite 1700
                                        Los Angeles, California  90067
                                        Telephone:  (310) 788-1000
                                        Facsimile:  (310) 788-1200

                                        Attorneys for Defendants Infineon
                                        Technologies North America Corp. and
                                        Infineon Technologies AG.

KAYE SCHOLER LLP

Memorandum of Points and Authorities In Support Of Defendants'
Motion for Judgment on the Pleadings
Master File No. M-02-1786 PJH

23199778.DOC                 24

Additional Defendants and Counsel:

| | |
|---|---|
| ROBERT B. PRINGLE<br>PAUL R. GRIFFIN<br>JONATHAN SWARTZ<br>Thelen Reid & Priest LLP<br>101 Second Street, Suite 1800<br>San Francisco CA 94105-3601<br><br>*Attorneys for Defendant NEC Electronics America, Inc.* | HARRISON J. FRAHN<br>SIMPSON THACHER & BARLETT LLP<br>2550 Hanover Street<br>Palo Alto, CA 94304<br><br>*Attorneys for Defendants Elpida Memory, Inc., and Elpida Memory (USA) Inc.* |
| WILLIAM M. GOODMAN<br>RAPHAEL M. GOLDMAN<br>Topel & Goodman, LLC<br>832 Sansome Street, 4th Floor<br>San Francisco, CA, 94111<br><br>*Attorneys for Defendants Mosel Vitelic Incorporated, and Mosel Vitelic Corporation* | KENNETH R. O'ROURKE<br>STEVEN H. BERGMAN<br>O'Melveny & Myers LLP<br>400 S. Hope Street<br>Los Angeles, CA 90071<br><br>IAN SIMMONS<br>O'Melveny & Myers LLP<br>1625 Eye Street, NW<br>Washington, D.C.  20006-4001<br><br>*Attorneys for Defendants Hynix Semiconductor, Inc. and Hynix Semiconductor America, Inc.* |
| RONALD C. REDCAY<br>Arnold & Porter<br>777 South Figueroa Street, 44th Floor<br>Los Angeles, CA  90017-2513<br><br>JOEL S. SANDERS<br>Gibson, Dunn & Crutcher LLP<br>One Montgomery Street<br>Montgomery Tower, 31st Floor<br>San Francisco, CA 94104<br><br>*Attorneys for Defendants Micron Technology, Inc. and Micron Semiconductor Products Inc..* | ROBERT E. FREITAS<br>HOWARD M. ULLMAN<br>Orrick, Herrington & Sutcliffe LLP<br>The Orrick Building<br>405 Howard Street<br>San Francisco, CA  94105<br><br>*Attorneys for Defendants Nanya Technology Corp., Nanya Technology Corp. USA* |

KAYE SCHOLER LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

STEVEN H. MORRISSETT
Finnegan, Henderson, Farabow, Garrett & Dunner LLP
700 Hansen Way
Palo Alto, CA  94304

WILLIAM FARMER, JR.
Collette, Erickson, Farmer & O'Neill LLP
235 Pine St., Ste. 1300
San Francisco, CA 94104

*Attorneys for Defendants Winbond Electronics Corp., Winbond Electronics Corp. America*

Memorandum of Points and Authorities In Support Of Defendants'
Motion for Judgment on the Pleadings
Master File No. M-02-1786 PJH

23199778.DOC                    26