GUIDO SAVERI (22349)
R. ALEXANDER SAVERI (173102)
GEOFFREY C. RUSHING (126910)
CADIO ZIRPOLI (179108)
SAVERI & SAVERI INC.
111 Pine Street, Suite 1700
San Francisco, CA 94111
Telephone: (415) 217-6810
Facsimile: (415) 217-6813
*guido@saveri.com*
*rick@saveri.com*

STEVE W. BERMAN (*pro hac vice*)
ANTHONY D. SHAPIRO (*pro hac vice*)
CRAIG R. SPIEGEL (122000)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

FRED TAYLOR ISQUITH (*pro hac vice*)
MARY JANE FAIT (*pro hac vice*)
WOLF, HALDENSTEIN, ADLER,
    FREEMAN & HERZ
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 545-4653

Co-Lead Counsel for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE DYNAMIC RANDOM ACCESS MEMORY (DRAM) ANTITRUST LITIGATION | Master File No. M-02-1486 PJH |
| | MDL No. 1486 |
| | **DECLARATION OF GUIDO SAVERI IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENTS WITH SAMSUNG, INFINEON, AND HYNIX** |
| This Document Relates To: | Time:  10:00 a.m. |
| All Direct Purchaser Actions | Date:  November 1, 2006 |
| | Judge: Hon. Phyllis J. Hamilton |
| | Courtroom:   3 |

I, Guido Saveri, declare:

1.      I am a partner with Saveri & Saveri, Inc., one of the co-lead counsel for Plaintiffs in this litigation.  I am a member of the Bar of the State of California and an attorney admitted to practice in the Northern District of California.

2.      I make this declaration in support of final approval of settlements with defendants Infineon, Samsung and Hynix.  Except as otherwise stated, I have personal knowledge of the facts stated below.

3.      On July 11, 2003, the parties entered into a Stipulation and Protective Order concerning the disclosure of confidential and highly confidential information.  Shortly thereafter, and pursuant to the Order Limiting the Scope of Discovery, defendants began producing copies of documents they had turned over to the Grand Jury in response to subpoenas.  The defendants' document production to the Direct Purchaser Plaintiffs was on a rolling basis.  To date, defendants have collectively produced over four million pages of documents from both domestic and foreign entities.  Many of the documents are in Korean, Japanese, Chinese, and German and have been translated prior to being indexed, analyzed, and databased.

4.      Plaintiffs' counsel dedicated numerous lawyers and paralegals, and considerable other resources (including third-party vendors and technical staff) to the thorough translation, analysis, electronic coding, and databasing of the documents produced by defendants.  During the first phase of the document review, document review teams consisting of five to twelve attorneys from various law firms gathered in a document depository to review the documents produced by defendants.  In total, plaintiffs counsel reviewed and analyzed thousands of boxes of defendants' productions to the Grand Jury.

5.      During the second phase of the document review, over 20 paralegals at three locations around the nation inputted and coded the relevant subjective and objective data from the attorney review into a single, consolidated database.  This consolidated database then provided plaintiffs the ability to run sophisticated queries regarding the documents and significant issues in the case.  Plaintiffs also organized certain "key" documents by subject matter category, and documents relating to more than 100 potential deponents were compiled in preparation for depositions.  These mammoth efforts proved to be

vital to plaintiffs' preparation of motions, meet and confer efforts, damage analysis, class certification, and to timely respond to the complex legal and factual issues that arose during litigation.  This kind of preparation and organization has allowed the Direct Purchaser Plaintiffs to avoid non-essential appearances before the Court.

6.    Plaintiffs' counsel frequently met and conferred with opposing counsel regarding perceived incompleteness in their document productions, and particularly about defendants' consistent and uniform refusal to produce documents they claimed were unrelated to the U.S. DRAM market.

7.    In addition to the review of documents produced to the Grand Jury, plaintiffs propounded separate Requests for Production of Documents and Interrogatories on all defendants.  Pursuant to Judge Spero's February 28, 2006 Discovery Plan Order, all parties were required to complete their productions and to supplement their interrogatories by March 15, 2006.  In response, plaintiffs have received and reviewed thousands of pages of additional documents..

8.    Through the diligent analysis of the documents and other evidence produced, plaintiffs identified more than 100 current and former employees of the defendants with knowledge of the relevant issues in this case.  As a result, plaintiffs have noticed the depositions of approximately 75 witnesses.  In July 2005, Plaintiffs also served notices of deposition pursuant to Rule 30(b)(6) on the domestic and foreign defendants. To date, plaintiffs have taken more than 90 depositions, as well as depositions pursuant to Rule 30(b)(6) for three groups of defendants.

9.    On December 7, 2005, plaintiffs filed a motion for Class Certification. On March 10, 2006, non-setting defendants filed their joint opposition. The Court Certified the class on June 5, 2006.

10.    On August 27, and 28, 2006 respectively, plaintiffs served on defendants the report of their experts Professor Roger G. Noll and Dr. Paul C. Liu. The deposition of Professor Noll was taken by defendants on September 25, 2006 and the deposition of Dr. Liu was taken by defendants on September 28, 2006.  On October 2, 2006 defendants filed six expert reports. The deposition of defendants' experts where taken thereafter.

11.    On May 11, 2006 the Court granted preliminary approval of the settlements with Infineon and Samsung. On May 17, 2006, the Court granted preliminary approval of the settlement with Hynix. On July 27, 2006 the Court issued an Order Approving Joint Notice to Class Regarding Class

Certification and Preliminary Approval of Class Action Settlements with the Samsung, Infineon and Hynix defendants. Pursuant to that order, Plaintiffs disseminated notice of the proposed settlements and the fairness hearing to the Class.

12.     The declaration of Charlene Young of the Rust Consulting, Inc., the Claim Administrator, describes the dissemination of the notice to the class and attaches as an exhibit the list of opt-outs from the class.

13.     Throughout 2005 and 2006, plaintiffs' counsel have worked extensively with consultants and experts in preparation for trial and all motions.

14.     I participated in all of the settlement negotiations with the Infineon defendants. Settlement negotiations began August, 2004. My firm and Cotchett, Pitre, Simon & McCarthy participated in the initial meetings on behalf of plaintiffs. At that time, plaintiffs had reviewed substantial numbers of the millions of pages of documents produced by defendants and thoroughly analyzed the relevant facts and legal theories in this litigation. Plaintiffs were well aware of the strengths and weaknesses of their case. These initial meetings were followed by others. Lawyers from the Hagens Berman Shapiro Sobol LLP and Wolf, Haldenstein, Adler, Freeman & Herz firms also participated in these meetings. The negotiations with Infineon were thorough and hard-fought. They were conducted at arms-length in the utmost good faith. We had several face to face meetings with Infineon's counsel and representatives, including a meeting attended by Infineon management personnel who had traveled from Germany for the meeting. During these meetings, the parties exchanged considerable information, and made detailed presentations about their views of the case. In addition, these negotiations were supplemented by telephone and email communications. At the end of this long process the parties reached a settlement; the final agreement was executed on September 2, 2005.

15.     It is my opinion that the Infineon Settlement is, in every respect, fair, adequate and reasonable and in the best interests of the class members. My opinion in this regard is based upon the knowledge gained from the extensive investigation and discovery conducted in this case to date, as described above, and my consultation with co-lead counsel and other lawyers representing plaintiffs herein, who are of the same opinion. My opinion is also based on my extensive experience in class action antitrust cases. I have practiced in this field for over 45 years and have been involved in

1   hundreds of settlements.  In my experience, a settlement which represents, as this one does, 10.53% of a

2   defendant's sales which remain in the case – i.e., which have not already been settled – is a very good

3   one.

4        16.    I also participated in all of the settlement negotiations with the Samsung defendants.

5   Settlement negotiations began June, 2005.  Again, plaintiffs had reviewed millions of pages of

6   documents produced by defendants and thoroughly analyzed the relevant facts and legal theories in this

7   litigation before the Samsung negotiations, and were, therefore, well prepared.  Lawyers from my firm,

8   Hagens Berman Shapiro Sobol LLP, Wolf, Haldenstein, Adler, Freeman & Herz, and Cotchett, Pitre,

9   Simon & McCarthy participated in the Samsung negotiations.  As with Infineon, the negotiations were

10   thorough and hard-fought. They too were conducted at arms-length in the utmost good faith. We had

11   several face to face meetings with Samsung's counsel, including a meeting attended by Samsung

12   management personnel who had traveled from Korea.  The parties exchanged considerable information,

13   and made detailed presentations about their views of the case.  In addition, these negotiations were

14   supplemented by telephone and email communications.  At the end of this long process the parties

15   reached a settlement; the final agreement was executed on February 24, 2006.

16        17.    It is my opinion that the Samsung Settlement is, in every respect, fair, adequate and

17   reasonable and in the best interests of the class members.  My opinion in this regard is based upon the

18   knowledge gained from the extensive investigation and discovery conducted in this case to date, as

19   described above, and my consultation with co-lead counsel and the other lawyers representing plaintiffs

20   herein, who are of the same opinion. The Samsung Settlement represents 12.33% of Samsung's

21   remaining sales in the case.  Again, based on my experience, that is an excellent recovery for the class.

22        18.    I participated in all of the settlement negotiations with the Hynix defendants.  Settlement

23   negotiations began in February, 2006.  At that time, plaintiffs had reviewed millions of pages of

24   documents produced by defendants, and thoroughly analyzed the relevant facts and legal theories in this

25   litigation.  Plaintiffs were well aware of the strengths and weaknesses of their case.  The negotiations

26   with Hynix were thorough and hard-fought. They were conducted at arms-length in the utmost good

27   faith.  We had a number of face to face meetings with Hynix's counsel and representatives, including a

28   meeting attended by Hynix management personnel who had traveled from Korea.  During these

meetings, the parties exchanged considerable information, and made detailed presentations about their views of the case.  In addition, these negotiations were supplemented by telephone and email communications.  At the end of this process the parties reached a settlement; the final agreement was executed on April 28, 2006.  Lawyers from my firm, the Hagens Berman Shapiro Sobol LLP firm, the Wolf, Haldenstein, Adler, Freeman & Herz firm, and the Cotchett, Pitre, Simon & McCarthy firm participated in the settlement meetings on behalf of plaintiffs.

19.     It is my opinion that the Hynix Settlement is, in every respect, fair, adequate and reasonable and in the best interests of the class members.  My opinion in this regard is based upon the knowledge gained from the extensive investigation and discovery conducted in this case to date, as described above and my consultation with co-lead counsel and the other lawyers representing plaintiffs herein, who are of the same opinion.  My opinion is also based on my extensive experience in class action antitrust cases.  In my experience, a settlement which represents, as this one does, 13.96% of a defendant's sales which remain in the case – i.e., which have not already been settled – is an excellent one.

20.     Attached as Exhibit A is a true and correct copy of a Transcript of Proceedings on June 21, 2005 in *In re Rubber Chemicals Antitrust Litigation*.

21.     Attached as Exhibit B is a copy of an order dated September 12, 2006 entered for Judge Martin J. Jenkins in the <u>Ruber Chemicals Antitrust Litigation</u>.


I swear under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed this *17* day of October, 2006, in San Francisco, California.

Guido Saveri

ram.627.wpd

DECLARATION OF GUIDO SAVERI IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENTS WITH SAMSUNG, INFINEON, AND HYNIX- Master File No. M-02-1486 PJH                                    -5-

# EXHIBIT A

PAGES 1 - 20

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE MARTIN J. JENKINS

IN RE:  RUBBER CHEMICALS ) COPY
ANTITRUST LITIGATION, ) C 04-1648 MJJ
)
) SAN FRANCISCO, CALIFORNIA
) TUESDAY, JUNE 21, 2005

TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

FOR PLAINTIFFS          GOLD, BENNETT, CERA & SIDENER, LLP
                        595 MARKET STREET, SUITE 2300
                        SAN FRANCISCO, CALIFORNIA  94105-2835
                  BY:   **PAUL F. BENNETT, ESQUIRE**
                        **STEVEN O. SIDENER, ESQUIRE**


                        SAVERI & SAVERI, INC.
                        ONE EMBARCADERO CENTER, SUITE 1020
                        SAN FRANCISCO, CALIFORNIA  94111
                  BY:   **GUIDO SAVERI, ESQUIRE**


                        GLANCY, BINKOW & GOLDBERG, LLP
                        455 MARKET STREET, SUITE 1810
                        SAN FRANCISCO, CALIFORNIA  94105
                  BY:   **SUSAN G. KUPFER, ESQUIRE**


(FURTHER APPEARANCES ON FOLLOWING PAGE)


*REPORTED BY:*  JOAN MARIE COLUMBINI, CSR 5435, RPR
                OFFICIAL COURT REPORTER, U.S. DISTRICT COURT

APPEARANCES (CONTINUED):


FOR DEFENDANT                    GIBSON, DUNN & CRUTCHER
FLEXSYS                          1050 CONNECTICUT AVENUE, NW
                                 WASHINGTON, D.C.  20036
                        BY:  D. JARRETT ARP, ESQUIRE

PROCEEDINGS; TUESDAY, JUNE 21, 2005

1

2

3      THE CLERK:  THE FIRST MATTER WILL BE CIVIL MATTER

4  NO. 04-01648, IN RE: RUBBER CHEMICALS ANTITRUST LITIGATION.

5      PARTIES MAY STEP FORWARD AND STATE YOUR APPEARANCES.

6      MR. BENNETT:  GOOD MORNING, YOUR HONOR.

7      PAUL BENNET AND MY PARTNER, STEVE SIDENER, FROM

8  GOLD, BENNETT, CERA & SIDENER, ON BEHALF OF THE CLASS.

9      MR. SAVERI:  GOOD MORNING, YOUR HONOR.

10     GUIDO SAVERI, SAVERI & SAVERI, ON BEHALF OF

11 PLAINTIFF CLASS.

12     THE COURT:  YOUR VOICE TAILED OFF AT THE VERY END.

13 I DON'T THINK THE REPORTER GOT IT.  I KNOW I DIDN'T.

14     MR. SAVERI:  GUIDO SAVERI.

15     THIS IS THE FIRST TIME, YOUR HONOR, I HAVE BEEN

16 ACCUSED OF NOT RAISING MY VOICE, BUT IT'S SAVERI & SAVERI,

17 GUIDO SAVERI, FOR THE PLAINTIFFS.

18     THE COURT:  THANK YOU.

19     MS. KUPFER:  GOOD MORNING, YOUR HONOR.

20     SUSAN KUPFER, GLANCY, BINKOW & GOLDBERG IN SAN

21 FRANCISCO FOR THE PLAINTIFFS.

22     MR. ARP:  GOOD MORNING, YOUR HONOR.

23     JARRETT ARP FROM THE GIBSON, DUNN FIRM ON BEHALF OF

24 THE FLEXSYS DEFENDANTS.

25     THE COURT:  OKAY.  THIS MATTER IS ON FOR APPROVAL OF

1  THE SETTLEMENT AS TO THE CLASS PLAINTIFFS WITH RESPECT TO THE

2  FLEXSYS DEFENDANTS.

3           HAS EVERYONE HERE STATED AN APPEARANCE?

4           MR. BENNETT:  I BELIEVE SO, YOUR HONOR.

5           THE COURT:  IS THERE ANYONE PRESENT IN THE COURTROOM

6  IN THE AUDIENCE THAT WISHES TO BE HEARD WITH RESPECT TO THE

7  APPROVAL IN THIS MATTER?

8           ALL RIGHT.  SO THERE IS NO AUDIBLE RESPONSE AND NO

9  OTHER INDICATION OF ANYONE ELSE WHO WISHES TO SPEAK TO THESE

10 ISSUES.  LET ME ASK JUST A FEW QUESTIONS.

11          ONE, DO YOU HAVE ANY -- I DON'T KNOW IF YOU

12 SUBMITTED A FINAL FORM OF JUDGMENT IN THE MATTER.  HAVE YOU?

13          MR. BENNETT:  I HAVE, BUT, YOUR HONOR, IN THE LAST

14 DAY THERE HAS BEEN CERTAIN CHANGES THAT WE HAVE AGREED TO WITH

15 THE FLEXSYS DEFENDANTS.

16          THE COURT:  DO YOU WANT TO GIVE THEM TO ME?

17          MR. BENNETT:  YES.  I WILL HAND UP AN ORIGINAL AND

18 ONE COPY.

19          THE COURT:  DO YOU WANT TO GO OVER IT?

20          MR. BENNETT:  YES, YOUR HONOR.

21          THE TEXT OF THE JUDGMENT, WHICH IS FIVE PAGES IN

22 LENGTH, WITH THE EXCEPTION OF PARAGRAPH 12, WHICH IS NEW, IS

23 NEWLY ADDED AT THE REQUEST OF THE FLEXSYS -- ONE OF THE

24 COMPANIES THAT OPTED OUT, WHICH IS PARKER HANNIFAN, AND THEY

25 HAVE PROVIDED A LETTER THIS MORNING SAYING THAT THEY ARE GOING

1    TO CONDITIONALLY WITHDRAW THEIR OPT OUT, ASSUMING THAT

2    PARAGRAPH 12 IS IN THE FINAL JUDGMENT.

3            ON BEHALF OF THE CLASS, WE HAVE NO OBJECTION TO THAT

4    PARAGRAPH REMAINING IN.  ESSENTIALLY, WHAT THAT SAYS IS WHAT

5    WAS INTENDED BY THE SETTLEMENT AGREEMENT, NAMELY, THAT IF YOU

6    OPT OUT OF THIS SETTLEMENT, THAT DOES NOT AFFECT YOUR RIGHTS

7    GOING DOWN THE ROAD AGAINST THE OTHER DEFENDANTS, WHETHER TO

8    STAY IN TO A CLASS OR TO LITIGATE.

9            THE COURT:  SO THERE'S JUST NO OPT OUT ON A

10   GOING-FORWARD BASIS; THEY'RE STILL LEFT TO THEIR OPTIONS WITH

11   RESPECT TO --

12           MR. BENNETT:  ANY OTHER SETTLEMENTS THAT COME ON OR

13   GOING FORWARD TO TRIAL.

14           THE COURT:  OKAY.  ANY OTHER CHANGE?

15           MR. BENNETT:  YES, THERE'S ONE OTHER CHANGE.

16           YESTERDAY WE GOT AN UNCONDITIONAL WITHDRAWAL OF AN

17   OPT OUT.  IT'S ON PAGE SEVEN OF EXHIBIT B.  THERE WAS A COMPANY

18   CALLED DUPONT -- DOW DUPONT ELASTOMERS THAT HAD OPTED OUT.

19   THEY SENT IN A LETTER WITHDRAWING THAT OPT OUT YESTERDAY.  SO

20   IT WAS ORIGINALLY NUMBER FOUR, AND IF YOU LOOK AT EXHIBIT B ON

21   PAGE SEVEN, THEIR NAME NO LONGER APPEARS.  SO THE OPT OUT --

22           THE COURT:  DUPONT DOW ELASTOMERS?

23           MR. BENNETT:  RIGHT.  IT NO LONGER APPEARS

24   BECAUSE --

25           THE COURT:  OKAY.

1   SO, BASICALLY, PARAGRAPH 12, WHICH IS A CONDITIONAL

2   OPT OUT ON THIS PARTICULAR SETTLEMENT, BUT DOES NOT EVINCE ANY

3   INTENT OR MAKE ANY BINDING STATEMENT WITH RESPECT TO FUTURE

4   SETTLEMENTS THAT THE COURT MAY HAVE PRESENTED TO IT, AND FOR

5   ALL INTENTS AND PURPOSES WILL REMAIN AS A MEMBER OF THE CLASS

6   GOING FORWARD WITH RESPECT TO WHAT REMAINS AFTER WE SEE WHERE

7   THE DUST SETTLES TODAY.

8        MR. BENNETT:  CORRECT.

9        THE COURT:  THEN THE OTHER IS THAT THERE'S AN

10  UNCONDITIONAL OPT OUT WITH RESPECT TO DUPONT.

11       MR. BENNETT:  NOT DUPONT.

12       THE COURT:  DOW ELASTOMER.

13       MR. BENNETT:  YES.  IT'S DDE, AS OPPOSED TO EI

14  DUPONT DE NEMOURS.  THEY ARE STILL AN OPT OUT.

15       THE COURT:  RIGHT.

16       MR. BENNETT:  AND, THEREFORE, PROPERLY LISTED.

17       THE COURT:  OKAY.

18       IF THE COURT IS SATISFIED WITH PARAGRAPH 12 ON THE

19  LIST OF OPT OUTS, THE PARKER HANNIFAN CORPORATION, BOTH THE

20  FLEXSYS DEFENDANTS AND THE CLASS WOULD SUGGEST THAT THE OPT OUT

21  THAT IS LISTED AS NUMBER SEVEN, STARTING ON PAGE TEN OF

22  EXHIBIT B AND CARRYING OVER TO PAGE 11, WOULD BE STRICKEN.

23       THE COURT:  WHICH WOULD REFERENCE PARAGRAPH 12?

24       MR. BENNETT:  THAT IS CORRECT.

25       THE COURT:  ANY OBJECTION TO THAT?

1   MR. ARP: NONE, YOUR HONOR. WE CONCUR.

2   MR. BENNETT: YOUR HONOR, PERHAPS IT WOULD HELP IF I

3   HANDED UP A LETTER FROM COUNSEL FOR PARKER HANNIFAN.

4   THE COURT: WE'LL MAKE IT PART OF THE RECORD.

5   MR. BENNETT: PART OF THE RECORD -- THAT I RECEIVED

6   THIS MORNING.

7   THE COURT: OKAY. ANYTHING --

8   MR. BENNETT: NO, THERE ARE NO OTHER CHANGES.

9   THE COURT: SO LET ME ASK YOU THEN JUST A COUPLE OF

10  QUESTIONS -- STRIKE THAT.

11  BEFORE I FORGET, LET'S GO TO EXHIBIT B.

12  WHAT, IF ANYTHING, DO YOU MAKE OF THE NUMBER OF

13  ENTITIES THAT ARE OPTING OUT OF THIS SETTLEMENT AS REFERENCED

14  IN PARAGRAPH B, NOW MODIFIED BY THE STRIKING OF THE PARKER

15  HANNIFAN CORPORATION -- WHAT, IF ANYTHING, DO YOU MAKE OF THE

16  NUMBER OF OPT OUTS WITH RESPECT TO THE ADEQUACY AND

17  REASONABLENESS OF THE SETTLEMENT IN THIS MATTER?

18  MR. BENNETT: WELL, YOUR HONOR, IT IS -- AS WE SET

19  FORTH IN OUR PAPERS, THREE MAJOR COMPANIES INDIVIDUALLY SETTLED

20  BEFORE THE CLASS SETTLED. AND IF YOU LOOK AT THE LIST OF THE

21  OPT OUTS, THE TWO CONTINENTAL ENTITIES, IT'S MY UNDERSTANDING,

22  CONTINENTAL NORTH AMERICA OPT OUTS, AS WELL AS CONTINENTAL

23  NON-NORTH AMERICA OPT OUT, HAD SETTLED PRIOR TO THE CLASS

24  SETTLEMENT.

25  THE COURT: OKAY. THAT IS THE BULK OF THE OPT OUTS,

1   IT LOOKS TO ME.

2           MR. BENNETT: IT'S A BULK OF THE COMPANIES. COOPER

3   TIRE, WHICH IS NUMBER THREE AND LIKEWISE --

4           THE COURT: ARE THESE SUBSIDIARIES OF --

5           MR. BENNETT: THE FIRST FIVE PAGES ARE ALL

6   CONTINENTAL OR CONTINENTAL AFFILIATES.

7           THE COURT: OKAY.

8           MR. BENNETT: THEN AT THE BOTTOM OF PAGE SIX, YOU

9   START WITH COOPER.

10          THE COURT: RIGHT.

11          MR. BENNETT: AND THAT COMPANY ITSELF HAD ALSO

12  SETTLED WITH FLEXSYS PRIOR TO THE TIME OF THE SETTLEMENT.

13          THE COURT: OKAY. IT IS MY UNDERSTANDING THAT EI

14  DUPONT HAS NOT SETTLED AND IS AN OPT OUT, BUT I DON'T KNOW FOR

15  SURE.

16          GOOD YEAR TIRE, THE NEXT LISTED OPT OUT, HAD SETTLED

17  WITH FLEXSYS PRIOR TO THE CLASS SETTLEMENT.

18          THE COURT: LOOKS LIKE MICHELIN, TOO.

19          MR. BENNETT: AND THE SAME THING IS TRUE FOR

20  MICHELIN.

21          THE COURT: OKAY.

22          MR. BENNETT: AND PARKER HANNIFAN IS THE ONE WE JUST

23  TALKED ABOUT.

24          THE COURT: IT WASN'T CLEAR, WHICH IS WHY I ASKED.

25          MR. BENNETT: RIGHT.

1    THE COURT:  LET ME ALSO ASK, IN THE SETTLEMENT

2  AGREEMENT ITSELF, THERE IS -- CAN YOU TURN TO THAT DOCUMENT?

3    MR. BENNETT:  I CAN.

4    THE COURT:  SPECIFICALLY, PARAGRAPH 20, SUBSECTION

5  (F), WHICH DISCUSSES A PROVISION IN THE DISTRIBUTION OF THE

6  SETTLEMENT FUND, JUST TO ORIENT YOU, AND IT REFLECTS THAT THE

7  FLEXSYS DEFENDANTS AND THE CLASS PLAINTIFFS, THAT UNDER THE

8  PROPOSED PLAN OF ALLOCATION OF A NET SETTLEMENT, IF ADJUSTMENTS

9  ARE MADE OR INCURRED, IT'S NOT PART OF THE AGREEMENT AND IT'S

10  TO BE CONSIDERED BY THE COURT SEPARATELY FROM THE ISSUES OF

11  FAIRNESS, REASONABLENESS AND THE ADEQUACY OF THE SETTLEMENT.

12    I JUST WANT TO HAVE A SENSE OF WHAT WE ARE REALLY

13  TALKING ABOUT HERE.  ARE WE TALKING ABOUT CLAIMS THAT GET

14  SUBMITTED AND THE EBB AND FLOW OF ADJUSTMENTS THAT ARE MADE TO

15  THAT?

16    MR. BENNETT:  WHAT WE ARE TALKING WITH IS PRECISELY

17  THAT.  IF YOU STEP BACK, FLEXSYS IS PAYING 18.5 MILLION DOLLARS

18  TO SETTLE THE CLAIMS OF WHAT REMAINS IN THE CLASS, AND YOU ARE

19  BEING ASKED TO DETERMINE THAT THAT IS FAIR, REASONABLE AND

20  ADEQUATE.

21    AFTER THAT PROCESS -- OR, ACTUALLY, THE PROCESS HAS

22  STARTED, WHERE CLAIM FORMS ARE SOLICITED FROM CLAIM MEMBERS,

23  AND THERE SOMETIMES IS DISPUTE, SOMETIMES THERE'S NOT DISPUTE,

24  BUT THERE'S BACK AND FORTH BETWEEN THE CLAIMS ADMINISTRATOR AND

25  A SPECIFIC CLAIMANT OVER WHAT THE SPECIFIC CLAIMANT IS ENTITLED

*JOAN MARIE COLUMBINI, CSR, RPR*
*OFFICIAL COURT REPORTER, USDC, 415-255-6842*

1  TO. IF THE CLAIMS ADMINISTRATOR AND THE CLAIMANT CANNOT WORK

2  THAT OUT CONSENTUALLY, THE ISSUE BEFORE THE MONIES ARE

3  DISTRIBUTED WOULD BE BROUGHT TO YOU FOR DETERMINATION IN THE

4  FORM OF A MOTION WHERE WE WOULD SEEK AUTHORIZATION TO

5  DISTRIBUTE THE MONEY, BUT WE WOULD POINT OUT THAT THERE IS A

6  DISPUTE BETWEEN THIS CLAIMANT, AND THE CLAIMANT WOULD BE GIVEN

7  NOTICE AND BE ABLE TO BE PRESENT AND PRESENT WHATEVER EVIDENCE

8  OR INFORMATION THAT IT HAS TO SUPPORT ITS CLAIM.

9        THE COURT: BECAUSE WHAT I WANTED TO MAKE SURE IS

10 THAT THIS -- THIS IS NOT AN ISSUE WITH RESPECT TO THE

11 GENERALIZED FOCUS OF THE PLAN OF ALLOCATION. THIS IS MORE OF A

12 PROVE UP ISSUE DOWNSTREAM AND SOME, AS I SAID, EBB AND FLOW OR

13 DISCUSSION WITH RESPECT TO WHAT MAY TRANSPIRE THERE. THAT

14 DOESN'T NECESSARILY EVINCE SOME CONCERN ABOUT -- FOR ME WHETHER

15 THE INDIVIDUAL CLASS MEMBERS WHO ARE SEEKING TO PROVE UP ARE

16 AFFORDED DUE PROCESS OR IN ANY WAY CHANGES THE PRO RATA

17 DISTRIBUTION. THIS IS JUST AN ISSUE OF WHETHER THEY HAVE

18 ACTUALLY ESTABLISHED THEIR CLAIM AND SOME DISPUTE, AND,

19 ULTIMATELY THE COURT WOULD BE THE ARBITER OF THAT?

20        MR. BENNETT: THAT IS CORRECT. AND FLEXSYS WOULD

21 NOT BE INVOLVED IN THAT PROCESS BECAUSE THE MONEY WOULD BELONG

22 TO THE CLASS.

23        THE COURT: USUALLY NOT.

24        MR. BENNETT: AND IT'S A QUESTION OF HOW MUCH SHOULD

25 GO TO WHICH CLASS MEMBERS.

1    THE COURT:  OKAY.

2         THEN IS THERE ANY CHANGE IN THE COSTS THAT ARE

3    PRAYED FOR?

4         MR. BENNETT:  NO, YOUR HONOR.

5         THE COURT:  I WANT TO MAKE SURE THAT THE -- OR THE

6    25 PERCENT BENCHMARK JUST ABOUT THE ATTORNEYS' FEES REALLY

7    STILL FOCUSES ON THE COMMON FUND AMOUNT OF THE SETTLEMENT HERE.

8         MR. BENNETT:  THAT IS CORRECT.

9         THE COURT:  NO CHANGES WITH RESPECT TO THAT?

10        MR. BENNETT:  THAT IS CORRECT, YOUR HONOR.

11        THE COURT:  OKAY.

12        MR. BENNETT:  AND THE AMOUNT OF COSTS THAT ARE

13   REQUESTED IS SOMETHING NORTH OF $692,000 IS ALSO THE -- REMAINS

14   THE SAME.  THERE'S NO CHANGES.

15        THE COURT:  AND TO DATE, NO OBJECTIONS EITHER WITH

16   RESPECT TO THE ATTORNEYS' FEES OR THE REASONABLENESS AND

17   ADEQUACY OF THE SETTLEMENT PROCEEDS?

18        MR. BENNETT:  THAT IS CORRECT.  AND THERE'S ALSO NO

19   OBJECTION TO THE GENERAL PLAN OF ALLOCATION.

20        THE COURT:  ANYBODY HAVE ANYTHING ELSE?

21        MR. ARP:  NOTHING HERE, YOUR HONOR.

22        MR. BENNETT:  YOUR HONOR, I HAVE PROPOSED FINAL

23   ORDERS ON BOTH THE APPROVAL OF THE PLAN OF ALLOCATION AND AN

24   ORIGINAL AND ONE OF EACH, IF THAT'S ENOUGH, AND THE SAME WITH

25   RESPECT TO THE FEE AND COST.

1    THE COURT: OKAY. SUBMITTED?

2    MR. BENNETT: SUBMITTED.

3    THE COURT: ALL RIGHT. THE COURT NOTES THE

4    FOLLOWING:

5        I HAVE READ BOTH THE PARTIES' BRIEFING AND

6    SUPPORTING DECLARATIONS WITH RESPECT TO THE PRELIMINARY

7    APPROVAL AND ALSO THE CLASS SETTLEMENT PLAN OF ALLOCATION AND

8    STATEMENT THEREIN OF REQUEST FOR INTERIM ATTORNEYS' FEES. AND

9    I HAVE READ AND CONSIDERED THE MEMORANDA SUBMITTED BY THE CLASS

10   PLAINTIFFS SEEKING APPROVAL OF THE SETTLEMENT HERE TODAY, FINAL

11   APPROVAL, AND APPROVAL OF THE PLAN OF ALLOCATION AND THE

12   INTERIM REQUEST FOR ATTORNEYS' FEES AND COSTS AND ASSOCIATED

13   EXHIBITS THERETO.

14       I HAVE INQUIRED WITH RESPECT TO THE CONCERNS THE

15   COURT HAD WITH RESPECT TO THE SETTLED AGREEMENT, PLAN OF

16   ALLOCATION, THE CONCERNS ARISING FROM THE SCOPE OF THE REQUEST

17   TO OPT OUT OF THE SETTLEMENT, PROPOSED SETTLEMENT, AND I NOW

18   MAKE THE FOLLOWING FINDINGS:

19       CLEARLY, APPROVAL OF THE SETTLEMENT AND THE PLAN OF

20   ALLOCATION REQUIRES THE COURT ENCOMPASS THE PROVISIONS OF RULE

21   23(E) THE COURT NOTES AND FINDS IT AUTHORIZED PRELIMINARY

22   APPROVAL OF THE PROPOSED SETTLEMENT ON MARCH 7 FOR THE FLEXSYS

23   DEFENDANTS ONLY, AND IN THAT PRELIMINARY APPROVAL, THE

24   CERTIFIED CLASS RELATED TO ALL PERSONS WHICH PURCHASED RUBBER

25   CHEMICALS AND/OR MISCELLANEOUS INCLUDED CHEMICALS EXEMPTED THAT

1  IS IN THE UNITED STATES DIRECTIVE FROM ANY OF THE DEFENDANTS,

2  AND IT EXEMPTED THE DEFENDANTS IN THIS MATTER AND OTHER

3  INDIVIDUALS.  IT ALSO INCLUDED ANY OF THEIR RESPECTIVE PRESENT

4  OR FORMER PARENTS, SUBSIDIARIES OR AFFILIATES AT ANY TIME

5  DURING THE PERIOD OF TIME MAY 1ST, '95 TO DECEMBER 31ST, 2001.

6        THE COURT FINDS NOTICE WAS GIVEN TO POTENTIAL CLASS

7  MEMBERS AS REQUIRED BY THE COURT IN PRELIMINARY APPROVAL OF THE

8  PROPOSED SETTLEMENT WITH THE FLEXSYS DEFENDANTS IN ACCORD WITH

9  LOCAL DUE PROCESS AND UNDER THE PROVISIONS OF RULE 23(E).

10       THE COURT NOTES THE PROPOSED SETTLEMENT IN SUMMARY

11 FORM AS REFLECTED IN THE FINAL JUDGMENT INVOLVES AN ALL CASH

12 PAYMENT OF $18,500,000 WHICH NOW SITS IN ESCROW.

13       THE JUDGMENT AND SETTLEMENT AGREEMENT INCLUDES A

14 MOST FAVORED NATION CLAUSE AND A COOPERATION CLAUSE INVOLVING

15 THE FLEXSYS DEFENDANTS AND THE CLASS PLAINTIFFS GOING FORWARD,

16 AND THE ATTENDANT BENEFITS OF THE COOPERATION IN TERMS OF COST

17 REDUCTION AND ACCESS TO IMPORTANT INFORMATION ARE SET FORTH

18 CLEARLY IN THE SETTLEMENT AGREEMENT.

19       THIS COURT IS COGNIZANT OF ITS DUTY REGARDING THE

20 APPROVAL OF CLASS SETTLEMENT AND NOTES IN DECIDING WHETHER TO

21 APPROVE THE SETTLEMENT, THIS COURT'S INTRUSION UPON WHAT

22 OTHERWISE IS A PRIVATE CONSENTUAL AGREEMENT NEGOTIATED BETWEEN

23 THE PARTIES TO A LAWSUIT IS LIMITED TO THE EXTENT NECESSARY TO

24 REACH A REASONABLE JUDGMENT AND THAT THE AGREEMENT IS NOT A

25 PRODUCT OF FRAUD, OVERREACHING OR COLLUSION BETWEEN THE

1   NEGOTIATING PARTIES AND THE SETTLEMENT IS AS IMPORTANT, FAIR,

2   REASONABLE AND ADEQUATE TO ALL CONCERNED.

3       THE COURT MUST LOOK TO THE SETTLEMENT IN ITS

4   ENTIRETY, AS OPPOSED TO ISOLATED PROVISIONS THEREOF, IN

5   DETERMINING THE FAIRNESS AND ADEQUACY THEREOF, AND I HAVE DONE

6   SO WITH RESPECT TO THIS MATTER.

7       THE BURDEN IS ON THE PROPONENT TO MEET THIS

8   STANDARD, AND THE COURT HAS CONSIDERED THE FOLLOWING FACTORS IN

9   REACHING ITS FINDINGS HERE THIS MORNING:

10      THE EXTENT OF THE DISCOVERY COMPLETED AND THE

11  STRENGTHS OF THE CASE.  THE LAWSUIT WAS BROUGHT BY DIRECT

12  PURCHASERS OF RUBBER CHEMICALS AND ALSO ASSOCIATED CHEMICALS

13  USED IN THE PRODUCTION IN THE VULCANIZATION OF RUBBER, AND THAT

14  THE ALLEGATIONS INCLUDED ASSERTIONS THAT THE DEFENDANTS

15  CONSPIRED TO FIX OR MAINTAIN PRICES OF AND ALLOCATE MARKETS FOR

16  RUBBER CHEMICALS SOLD IN THE UNITED STATES ALL IN VIOLATION OF

17  SHERMAN ACT, SECTION ONE, AND, AS A RESULT, THE MEMBERS OF THE

18  SETTLEMENT OF THE CLASS PAID MORE FOR RUBBER CHEMICALS THAN

19  OTHERWISE THEY WOULD HAVE SUSTAINED IN THE INJURY.

20      THE MOVING PARTY CHARACTERIZES THE CASE AS STRONG,

21  AND THE COURT, IN REVIEW OF THE DOCUMENTS BEFORE IT, THERE'S NO

22  REASON, FACTUAL REASON, TO DISPUTE THAT.  HOWEVER, THE COURT

23  NOTES THAT THE PLAINTIFF STILL BEARS THE RISK OF ESTABLISHING

24  BOTH LIABILITY AND ANTITRUST INJURY AND DAMAGES.  AND I NOTE

25  THAT IN ESTABLISHING AND MEETING THAT INTENDED BURDEN OF PROOF,

*JOAN MARIE COLUMBINI, CSR, RPR*
*OFFICIAL COURT REPORTER, USDC, 415-255-6842*

1 THERE HAS BEEN NO PLEA OR ACKNOWLEDGEMENT OF LIABILITY.

2     THE COURT ALSO NOTES THAT THE TASKS ASSOCIATED THAT

3 BRING THE PARTIES HERE TODAY FOR APPROVAL OF SETTLEMENT INVOLVE

4 THE FOLLOWING:

5     THE CASE IS IN THE DISCOVERY PHASE; HOWEVER,

6 NUMEROUS DOCUMENTS HAVE BEEN EXAMINED THAT RELATE TO IMPORTANT

7 AND SIGNIFICANT ISSUES, SUCH AS SALES AND PRICING DATA,

8 DEPOSITIONS HAVE BEEN TAKEN INCLUDING -- CONCERNING ELECTRONIC

9 DATA, REVENUE EARNED AND RUBBER CHEMICALS PRODUCED BY THE

10 DEFENDANTS, ALL OF WHICH PROVIDE A FACTUAL BACKDROP TO ASSESS

11 THE STRENGTH OF THE CASE, AND TO MAKE AN ASSESSMENT AS TO

12 WHETHER OR NOT THE SETTLEMENT IS FAIR, REASONABLE AND

13 APPROPRIATE.

14     WHILE THE COURT NOTED THAT COUNSEL CHARACTERIZES THE

15 CASE AS STRONG, THE COURT NOTES THAT THE SETTLEMENT ELIMINATES

16 THE ATTENDANT RISK ASSOCIATED WITH THE UNCERTAINTY OF FORMAL

17 LITIGATION AND AMENDING THE ATTENDANT BURDEN OF PROOF.

18     THE COURT ALSO NOTES THAT THE SETTLEMENT PROMOTES AN

19 ALL CASH PAYMENT TODAY, AND IT BODES WELL FOR THE CLASS

20 REGARDING ISSUES OF FINALITY AND THE INVOLVEMENT IN RISK

21 ASSOCIATED WITH THE LITIGATION OF THIS MATTER.

22     THE COURT NOTES THERE WILL BE SUBSTANTIAL TIMEFRAME

23 TO THE RESOLUTION OF THIS MATTER THAT IS STAYED OFF BY THE

24 SETTLEMENT IN THIS MATTER.  THE COURT HAS ALREADY CHARACTERIZED

25 THE SETTLEMENT BUT NOTES THERE ARE CONCRETE BENEFITS TO THE

1   CLASS MEMBERS THAT INCLUDE THE IMMEDIATE CASH PAYOUT, ACCOUNTS

2   FOR INEQUITY FROM PRIOR SETTLEMENTS, AS I DISCUSSED WITH

3   COUNSEL ON THE RECORD HERE TODAY, THROUGH THE MOST FAVORED

4   NATION CLAUSE, AND THE RECOVERY HERE IS AN EXCELLENT RECOVERY,

5   IN THE COURT'S VIEW, WEIGHING THE ATTENDANT RISK OF FORMAL

6   LITIGATION AND THE AMOUNT OF THE SETTLEMENT WHEN COMPARED TO

7   OTHER SIMILAR ANTITRUST CASES, AND NOTES THAT THE $18 MILLION

8   ALL CASH SETTLEMENT IS FOUR PERCENT OF THE FLEXSYS DEFENDANTS

9   SALES, AND THAT IS GREATER THAN OR EQUAL TO IN RELATIVE TERMS

10  TO THE COURTS'S VIEW THAT FIGURES ASSOCIATED AND SIMILAR

11  ANTITRUST CASES.

12         THE COURT NOTES THAT COUNSEL BEFORE THE COURT ARE

13  EXPERIENCED COUNSEL, AND NOT ONLY EXPERIENCED IN TERMS OF

14  LONGEVITY OF PRACTICE, BUT PARTICULARLY EXPERTISE IN ANTITRUST

15  MATTERS OF THIS NATURE.

16         FINALLY, THE COURT NOTES THAT NOTICE WAS REASONABLY

17  AND SEASONABLY GIVEN WITH RESPECT TO THE PROPOSED SETTLEMENT,

18  THE AMOUNT OF THE SETTLEMENT, THE COOPERATION ASPECTS OF THE

19  SETTLEMENT, AND TO DATE THERE HAVE BEEN NO OBJECTIONS IN THE

20  MATTER.

21         THE COURT FINDS ON THIS RECORD THAT THERE IS NO

22  FACTUAL BASIS TO FIND ANY COLLUSION, FRAUD OR OVERREACHING ON

23  THIS RECORD.  AND, MOREOVER, HAVING EXAMINED THE PLAN OF

24  ALLOCATION, THE COURT ALSO NOTES IT IS REASONABLE, FAIR AND

25  ADEQUATE IN THAT THE PROCEEDS ARE DISTRIBUTED ON A PRO RATA

1  BASIS, TIED TO THE DOLLAR AMOUNT OF EACH FLEXSYS CLASS MEMBER'S

2  QUALIFYING PURCHASES OF RUBBER AND/OR MISCELLANEOUS INCLUDED

3  CHEMICALS, AND THE CLASS MEMBERS HAVE BEEN SO INFORMED

4  REASONABLY AND SEASONABLY, AND THERE HAVE BEEN NO OBJECTIONS.

5           THE COURT ALSO MUST FIND THE SETTLEMENT PASSES

6  MUSTER UNDER RULE 23, SUBSECTION (A) AND SUBSECTION (B), AND

7  THE COURT NOTES THAT IT DOES.  THERE COULD BE NO ARGUMENT THAT

8  IT MEETS THE NUMEROSITY REQUIREMENT.  IT IS CLEAR THAT THERE

9  ARE ISSUES OF LAW, IN FACT, COMMON TO THE CLASS MEMBERS

10  INVOLVING THE LEGAL PRICE FIXING SCHEME THAT IMPACTS ALL

11  PURCHASES IN THE AFFECTED MARKET.

12           THE CLAIMS ARE TYPICAL, AS IS THE CLASS PLAINTIFFS

13  ALL ALLEGE THE SAME ANTITRUST VIOLATIONS ALLEGEDLY COMMITTED BY

14  THE FLEXSYS DEFENDANTS.

15           THE INTEREST OF THE CLASS MEMBERS ARE ADEQUATELY

16  REPRESENTED BY COUNSEL WHO ARE EXPERIENCED, AS I INDICATED, IN

17  THIS TYPE OF LITIGATION, AND THERE ARE NO ACTUAL OR APPARENT

18  CONFLICTS ON THIS RECORD THAT WOULD DEFEAT CERTIFICATION UNDER

19  THE CONFLICTS CONCERNED AND THE ADEQUACY OF REPRESENTATION

20  CONCERNED IN RULE 23(A).

21           ALL PLAINTIFFS WILL RECEIVE COMPENSATION BASED ON

22  THE PERCENTAGE OF THEIR INJURY WITH RESPECT TO THE TOTAL

23  INJURY, AND THERE IS NO FAVORED STATUS IN THE SETTLEMENT WITH

24  RESPECT TO ANY PARTICULAR MEMBER OF THE CLASS.

25           THE COURT ALSO NOTES THAT UNDER SECTION B(3) THERE

1   ARE COMMON QUESTIONS OF LAW AND FACT, AND THEY PREDOMINATE OVER

2   THE INDIVIDUAL QUESTIONS AND CLEARLY PROCEEDING AS A CLASS

3   ACTION SUPERIOR TO ALL THE MEANS OF ADJUDICATION.

4           SO THE COURT, BASED ON THIS RECORD, FINDS THAT THE

5   SETTLEMENT AND THE PLAN OF ALLOCATION IS FAIR, REASONABLE AND

6   ADEQUATE IN THIS MATTER AND ALSO FINDS -- NOW MOVES TO THE

7   ISSUE OF ATTORNEYS' FEES.

8           THE COURT NOTES THAT THE MATTER BROUGHT BEFORE THE

9   COURT TODAY, THE ALLEGATIONS OF THIS LAWSUIT ARE COMPLICATED,

10  THAT THE RESULT ACHIEVED IS EXCEPTIONAL, AS OUTLINED BY THIS

11  COURT ALREADY.  THE COURT ALSO NOTES THAT A REASONABLE FEE

12  UNDER THE COMMON FUND DOCTRINE IS THE NORMAL METHOD FOR

13  ASSESSMENT OF ATTORNEYS' FEES IN THIS MATTER, AND THE COURT

14  FINDS THAT THE FEE HERE IS REASONABLE AND FAIRLY COMPENSATES

15  COUNSEL FOR THE REASONABLE VALUE OF THEIR SERVICES IN THIS

16  MATTER.

17          THE RESULT ACHIEVED IS EXCELLENT AT FOUR PERCENT OF

18  THE ACTUAL SALES.  IT COMPARES FAVORABLY, AS I'VE INDICATED, TO

19  ANTITRUST CASES OF A SIMILAR NATURE.  IT NOTES THAT THE

20  COOPERATION PROVISION BENEFITS THOSE CLASS MEMBERS THAT ARE

21  SETTLING, AND CERTAINLY EVEN FUTURE CLASS MEMBERS WITH RESPECT

22  TO THE ONGOING LITIGATION.

23          THE COURT NOTES THAT THE RISK OF LITIGATION HAS BEEN

24  ELIMINATED FOR THESE SETTLING CLASS MEMBERS, BUT THAT THESE

25  RISKS HAVE BEEN BORNE BY COUNSEL BECAUSE OF THE CONTINGENCY FEE

1   REFERENCE THE LETTER FROM MR. EDMOND SEARBY, WHO IS COUNSEL FOR

2   PARKER HANNIFAN'S CORPORATION.  I INCORPORATE THAT LETTER BY

3   REFERENCE WITH RESPECT TO PROVISIONS OF PARAGRAPH 12 AND THE

4   CONDITIONAL OPT OUT.

5           MR. BENNETT:  SO YOU ARE STRIKING THE PARAGRAPH

6   NUMBER SEVEN, THE OPT OUT OF PARKER HANNIFAN?

7           THANK YOU, YOUR HONOR.

8           THE COURT:  THESE ARE THE FINAL JUDGMENTS AND THE

9   LETTER WE INCORPORATED.  THAT SHOULD BE KEPT TOGETHER IN THE

10  COURT'S COPIES.  AND HERE ARE SEVERAL COPIES OF THE ORDER WITH

11  RESPECT TO INTERIM FEES AND THE PLAN OF ALLOCATION.

12          SO YOU I'LL SEE DOWN THE ROAD.

13          MR. ARP:  CORRECT, YOUR HONOR.

14          MR. BENNETT:  THANK YOU, YOUR HONOR.

15          MR. SIDENER:  THANK YOU, YOUR HONOR.

16                  (PROCEEDINGS ADJOURNED.)

17

18

19

20

21

22

23

24

25

## CERTIFICATE OF REPORTER

I, JOAN MARIE COLUMBINI, OFFICIAL REPORTER FOR THE
UNITED STATES COURT, NORTHERN DISTRICT OF CALIFORNIA, HEREBY
CERTIFY THAT THE FOREGOING PROCEEDINGS IN C04-1648 MJJ, IN RE:
RUBBER CHEMICAL ANTITRUST LITIGATION, WERE REPORTED BY ME, A
CERTIFIED SHORTHAND REPORTER, AND WERE THEREAFTER TRANSCRIBED
UNDER MY DIRECTION INTO TYPEWRITING; THAT THE FOREGOING IS A
FULL, COMPLETE AND TRUE RECORD OF SAID PROCEEDINGS AS BOUND BY
ME AT THE TIME OF FILING.

THE VALIDITY OF THE REPORTER'S CERTIFICATION OF SAID
TRANSCRIPT MAY BE VOID UPON DISASSEMBLY AND/OR REMOVAL FROM THE
COURT FILE.

JOAN MARIE COLUMBINI, CSR 5435, RPR

FRIDAY, JUNE 24TH, 2005

# EXHIBIT B

FILED

NOV 1 2 2006

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE RUBBER CHEMICALS ANTITRUST LITIGATION | MDL Docket No. C-04-1648 MJJ |
| | Class Action |
| | [~~PROPOSED~~] ORDER GRANTING FINAL APPROVAL OF PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS |
| THIS DOCUMENT RELATES TO: ALL ACTIONS. | Date:    September 12, 2006 Time:    9:30 a.m. Place:   Courtroom of Hon. Martin J. Jenkins Courtroom 11, 19th Floor |

Plaintiffs' Motion for Final Approval of Proposed Settlement with the Bayer Defendants and Approval of the Plan of Allocation ("Motion") came on for hearing on September 12, 2006. The Court has considered the Motion, the supporting papers, the argument of counsel, and all other arguments presented at the hearing.  Due and adequate notice having been given to the Class, and good cause appearing, the Court hereby finds that:

1.       This Court has jurisdiction over the subject matter of the Motion and all matters relating thereto, including all members of the Class.

2.       Due and adequate notice of the proposed Plan of Allocation was provided to the Class.  The Notice of Settlement In Class Action And Hearing On Settlement Approval, Plan of Allocation, and Request for Attorneys' Fees ("Class Notice"), which sets forth the proposed Plan

[PROPOSED] ORDER GRANTING FINAL APPROVAL OF PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS - MDL Docket No. C-04-1648 MJJ                                                                                -1-

14599

1   of Allocation, was mailed to all members of the Class who could be reasonably identified and

2   was posted on the Claims Administrator's website.  In addition, a summary notice explaining

3   how to obtain the Class Notice was published in the national edition of *The Wall Street Journal*,

4   *Rubber & Plastics News*, and *Chemical Marketing Reporter*.  Notice of the Plan of Allocation

5   has been given in accordance with the Court's Order Granting Preliminary Approval of Proposed

6   Settlement With The Bayer Defendants, entered June 26, 2006.  The Class Notice adequately

7   advised the Class of the Plan of Allocation and their right to object to it.  Full and fair

8   opportunity was provided to the members of the Class to be heard regarding the proposed Plan of

9   Allocation and the notice requirements of Rule 23(e) of the Federal Rules of Civil Procedure and

10  due process have been satisfied.

11          3.      The objection filed by Rubber Specialties, Inc. is overruled.  The Court finds that

12  Rubber Specialties lacks standing to object because it is not a member of the Class.  *See Gould v.*

13  *Alleco, Inc.*, 883 F.2d 281, 284 (4th Cir. 1989).  Rather, the Court finds that Rubber Specialties is

14  an indirect purchaser of Rubber Chemicals.  Under controlling Supreme Court precedent (*see e.g.*

15  *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 728-279 (1977)), Rubber Specialties therefore could

16  not have been properly a member of the Class based on the federal claims asserted herein.

17  Rubber Specialties' rights and obligations are, in no way, impaired or affected, by this direct

18  purchaser Action or the settlement thereof with Bayer.

19          4.      The Plan of Allocation set forth in the Class Notice is, in all respects, fair,

20  adequate and reasonable to the Settlement Class.  Accordingly, the Court hereby grants final

21  approval of the  Plan of Allocation.

22  **IT IS SO ORDERED.**

23  Dated: September _12_, 2006

24                                              JUDGE MARTIN J. JENKINS
                                                UNITED STATES DISTRICT JUDGE

25

26

27

28

[PROPOSED] ORDER GRANTING FINAL APPROVAL OF PLAN OF ALLOCATION OF SETTLEMENT
PROCEEDS - MDL Docket No. C-04-1648 MJJ                                                                    -2-

4599