JOSEF D. COOPER (Cal. S.B. 53015)
TRACY R. KIRKHAM (Cal. S.B. 69913)
JOHN J. BOGDANOR (Cal. S.B. 215830)
COOPER & KIRKHAM, P.C.
655 Montgomery Street, 17th Floor
San Francisco, CA  94111
Telephone:    (415) 788-3030
Facsimile:    (415) 882-7040
jdc@coopkirk.com

Attorneys for Plaintiffs

(Additional Attorneys Listed on Signature Page)

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| In Re DYNAMIC RANDOM ACCESS MEMORY (DRAM) ANTITRUST LITIGATION | Case No.  M-02-1486-PJH<br><br>MDL No. 1486 |
| This Document Relates To: | |
| PETRO COMPUTER SYSTEMS, INC.; GARY PETERSEN; PAMELA UGLEM; DALE DICKMAN; MICHAEL JUETTEN; BLUMENTHAL & ASSOCIATES; HEATHER DELANEY; BEN STEWART; MELISSA BARRON; and JOHNSON & JENNINGS; and G.C.A. STRATEGIES, INC., | Case No. C-05-02472<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |
| Plaintiffs, | |
| v. | |
| MICRON TECHNOLOGY, INC.; MICRON SEMICONDUCTOR PRODUCTS, INC.; INFINEON TECHNOLOGIES AG; INFINEON TECHNOLOGIES NORTH AMERICA CORP.; HYNIX SEMICONDUCTOR, INC.; HYNIX SEMICONDUCTOR AMERICA, INC.; SAMSUNG ELECTRONICS CO., LTD.; | |

SAMSUNG SEMICONDUCTOR, INC.; )
MOSEL-VITELIC CORP.; MOSEL-VITELIC )
(USA) INC.; NANYA TECHNOLOGY )
CORPORATION; NANYA TECHNOLOGY )
CORPORATION USA, INC.; WINBOND )
ELECTRONICS CORPORATION; )
WINBOND ELECTRONICS )
CORPORATION AMERICA, INC.; ELPIDA )
MEMORY, INC.; ELPIDA MEMORY (USA) )
INC.; NEC ELECTRONICS AMERICA, )
INC., )
)
                    Defendants. )
_____ )

Plaintiffs, by their attorneys, bring this civil action for damages and injunctive relief on

behalf of themselves and all others similarly situated against the above-named defendants, and

demanding a trial by jury, complain and allege as follows:

## JURISDICTION AND VENUE

1.     This complaint is filed under Section 16 of the Clayton Act, 15 U.S.C. § 26, to

obtain injunctive relief for violations of Section 1 of the Sherman Act, 15 U.S.C. § 1, to recover

damages under state antitrust and consumer protection laws, and to recover the costs of suit,

including reasonable attorneys' fees, for the injuries that plaintiffs and all others similarly

situated sustained as a result of the defendants' violations of those laws.

2.     The Court has jurisdiction over the federal claim under 28 U.S.C. §§ 1331 and

1337.  The Court has jurisdiction over the state law claims under 28 U.S.C. § 1367 because those

claims are so related to the federal claim that they form part of the same case or controversy.

The Court also has jurisdiction over the state law claims under 28 U.S.C. § 1332 because the

amount in controversy for the Class exceeds $5,000,000, and there are members of the Class who

are citizens of a different state than the defendants.

3.     Venue is proper in this District under 15 U.S.C. § 22 and 28 U.S.C. § 1391

because defendants reside, transact business, or are found within this District, and a substantial

part of the events giving rise to the claims arose in this District.

FIRST AMENDED CLASS ACTION COMPLAINT

4.   The activities of the Defendants and their co-conspirators, as described herein, were within the flow of, were intended to, and did have a substantial effect on the foreign and interstate commerce of the United States.

## DEFINITIONS

5.   As used herein, the term "Dynamic Random Access Memory" ("DRAM") means the memory chip most commonly used in electronic devices, such as personal computers, around the world.  Memory chips are used to store data in a wide variety of computing and other electronic devices while the device is in operation.  DRAM includes, but is not limited to DRAM, Synchronous Dynamic Random Access Memory ("SDRAM") and Double-Data Synchronous Dynamic Random Access Memory ("DDR") chips.

6.   As used herein, the term "Class Period" means the time period beginning April 1, 1999 and continuing until at least December 31, 2002.

## THE PARTIES

A.   **The Plaintiffs**

7.   Plaintiff Petro Computer Systems, Inc., a California corporation, indirectly purchased DRAM from one or more of the Defendants during the Class Period, for use in manufacturing electronic devices for resale, and was injured as a result of Defendants' illegal conduct.

8.   Plaintiff Gary Petersen, a California resident, indirectly purchased DRAM from one or more of the Defendants during the Class Period, for use in manufacturing electronic devices for resale, and was injured as a result of Defendants' illegal conduct.

9.   Plaintiff Pamela Uglem, a Minnesota resident, indirectly purchased DRAM from one or more of the Defendants during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

10.  Plaintiff Dale Dickman, a Texas resident, indirectly purchased DRAM from one or more of the Defendants during the Class Period, for end use and not for resale, and was injured as a result of the Defendants' illegal conduct.

FIRST AMENDED CLASS ACTION COMPLAINT

11.  Plaintiff Michael Jeutten, a California resident, indirectly purchased DRAM from one or more of the Defendants during the Class Period, for end use and not for resale, and was injured as a result of the Defendants' illegal conduct.

12.  Plaintiff Blumenthal & Associates, a Massachusetts business entity, indirectly purchased DRAM from one or more of the Defendants during the Class Period, for end use and not for resale, and was injured as a result of the Defendants' illegal conduct.

13.  Plaintiff Heather Delaney, a New York resident, indirectly purchased DRAM from one or more of the Defendants during the Class Period, primarily for personal, family, or household purposes, and was injured as a result of the Defendants' illegal conduct.

14.  Plaintiff Ben Stewart, a New York resident, indirectly purchased DRAM from one or more of the Defendants during the Class Period, primarily for personal, family, or household purposes, and was injured as a result of the Defendants' illegal conduct.

15.  Plaintiff Melissa Barron, a California resident, indirectly purchased DRAM from one or more of the Defendants during the Class Period, for end use and not for resale, and was injured as a result of the Defendants' illegal conduct.

16.  Plaintiff Johnson & Jennings, Inc., a California corporation, indirectly purchased DRAM from one or more of the Defendants during the Class Period, for end use and not for resale, and was injured as a result of the Defendants' illegal conduct.

17.  Plaintiff G.C.A. Strategies, Inc. a California business entity, indirectly purchased DRAM from one or more of the Defendants during the Class Period, for end use and not for resale, and was injured as a result of Defendants' illegal conduct.

B.   **The Defendants**

18.  Defendant Micron Technology, Inc. is a Delaware Corporation with its principal place of business at 8000 South Federal Way, Boise, Idaho.  During the time period covered by this Complaint, Defendant Micron Technology, Inc. manufactured, sold and distributed DRAM throughout the United States.

19.   Defendant Micron Semiconductor Products, Inc. is a wholly owned and controlled subsidiary of defendant Micron Technology, Inc. with its principal place of business at 8000 South Federal Way, Boise, Idaho.   During the time period covered by this Complaint, Defendant Micron Semiconductor Products, Inc. sold and distributed DRAM to customers throughout the United States, including sales through its Crucial Technology division.   Micron Technology, Inc., Micron Semiconductor Products, Inc. and the Crucial Technology division are referred to collectively herein as "Micron."

20.   Defendant Infineon Technologies AG is a German corporation with its principal place of business at St. Martin-Str. 53, 81669, München, Germany.   During the time period covered by this Complaint, Defendant Infineon Technologies AG manufactured, sold and distributed DRAM throughout the United States.

21.   Defendant Infineon Technologies North America Corp. is a wholly owned and controlled subsidiary of Infineon Technologies AG with its principal place of business at 1730 North First Street, San Jose, California.   During the time period covered by this Complaint, Defendant Infineon Technologies North America Corp. sold and distributed DRAM to customers throughout the United States.   Infineon Technologies AG and Infineon Technologies North America Corp. are referred to collectively herein as "Infineon."

22.   Defendant Hynix Semiconductor, Inc. is a business entity organized under the laws of South Korea, with its principal place of business at SAN 136-1, Ami-Ri Bubal-eub, Ichon-si, Kyongki-do, Korea.   During the time period covered by this Complaint, Defendant Hynix Semiconductor, Inc. manufactured, sold and distributed DRAM to customers throughout the United States.

23.   Defendant Hynix Semiconductor America, Inc. is a wholly owned and controlled subsidiary of defendant Hynix Semiconductor, Inc. with its principal place of business at 3101 North First Street, San Jose, California.   During the time period covered by this Complaint, Defendant Hynix Semiconductor America, Inc. sold and distributed DRAM to customers

throughout the United States.  Hynix Semiconductor, Inc. and Hynix Semiconductor America, Inc. are referred to collectively herein as "Hynix."

24.  Defendant Samsung Electronics Co. Ltd. is a business entity organized under the laws of South Korea, with its principal place of business at Samsung Main Building 250-2 ga, Taepyung-ro Chung-gu, Seoul, Korea.  During the time period covered by this Complaint, Defendant Samsung Electronics Co. Ltd. manufactured, sold and distributed DRAM to customers throughout the United States.

25.  Defendant Samsung Semiconductor, Inc. is a wholly owned and controlled subsidiary of defendant Samsung Electronics Co. Ltd. with its principal place of business at 3655 North First Street, San Jose, California.  During the time period covered by this Complaint, Defendant Samsung Semiconductor, Inc. sold and distributed DRAM to customers throughout the United States.  Samsung Electronics Co. Ltd., and Samsung Semiconductor, Inc. are referred to collectively herein as "Samsung."

26.  Defendant Mosel-Vitelic, Corp. is a business entity organized under the laws of Taiwan, with its principal place of business at No. 19 Li Hsin Road, Hsinchu Science Based Industrial Park, Hsinchu, Taiwan, R.O.C..  During the time period covered by this Complaint, Defendant Mosel-Vitelic, Corp. manufactured, sold and distributed DRAM to customers throughout the United States.

27.  Defendant Mosel-Vitelic (USA), Inc. is a wholly owned and controlled subsidiary of Mosel-Vitelic Corp. with its principal place of business at 3910 North First Street, San Jose, California.  During the time period covered by this Complaint, Defendant Mosel-Vitelic (USA), Inc. sold and distributed DRAM to customers throughout the United States.  Mosel-Vitelic, Corp. and Mosel-Vitelic (USA), Inc. are referred to collectively herein as "Mosel-Vitelic."

28.  Defendant Nanya Technology Corporation is a business entity organized under the laws of Taiwan, with its principal place of business at HWA YA Technology Park, 669, Fu Hsing 3rd Rd., Kueishan, Taoyuan, Taiwan, R.O.C..  During the time period covered by this

FIRST AMENDED CLASS ACTION COMPLAINT

Complaint, Defendant Nanya Technology Corporation manufactured, sold and distributed DRAM to customers throughout the United States.

29.  Defendant Nanya Technology Corporation USA, Inc. is a wholly owned and controlled subsidiary of Nanya Technology Corporation with its principal place of business at 675 E. Brokaw Road, San Jose, California.  During the time period covered by this Complaint, Defendant Nanya Technology USA, Inc. sold and distributed DRAM to customers throughout the United States.  Nanya Technology Corporation and Nanya Technology Corporation USA, Inc. are referred to collectively herein as "Nanya."

30.  Defendant Winbond Electronics Corporation is a business entity organized under the laws of Taiwan, with its principal place of business at 4, Creaton Road, 111, Science-Based Industrial Park, Hsinchu, Taiwan, R.O.C.  During the time period covered by this Complaint, Defendant Winbond Electronic Corporation manufactured, sold and distributed DRAM to customers throughout the United States.

31.  Defendant Winbond Electronics Corporation America, Inc., is a wholly owned and controlled subsidiary of Winbond  Electronic Corporation with its principal place of business at 2727 North First Street, San Jose, California.  During the time period covered by this Complaint, Defendant Winbond Electronics Corporation America, Inc. sold and distributed DRAM to customers throughout the United States.  Winbond Electronics Corporation and Winbond Electronics Corporation America, Inc. are referred to collectively herein as "Winbond."

32.  Defendant Elpida Memory, Inc. is a business entity organized under the laws of Japan, with its principal place of business at Sumitomo Seimei Yaesu Bldg., 3F, 2-1 Yaesu 2-chome, Chuo-ku, Tokyo, Japan.  During the time period covered by this Complaint, Defendant Elpida Memory, Inc. manufactured, sold and distributed DRAM to customers throughout the United States.

33.  Defendant Elpida Memory (USA), Inc. is a wholly owned and controlled subsidiary of Elpida Memory, Inc. with its principal place of business at 2001 Walsh Avenue,

7

Santa Clara, California.  During the time period covered by this Complaint, Defendant Elpida Memory (USA) Inc. sold and distributed DRAM to customers throughout the United States. Elpida Memory, Inc. and Elpida Memory (USA), Inc. are referred to collectively herein as "Elpida."

34.  Defendant NEC Electronics America, Inc. ("NEC") is a wholly owned and controlled subsidiary of NEC Electronics Corporation, with its principal place of business at 2880 Scott Boulevard, Santa Clara, California and its manufacturing plant in Roseville, California.  During the time period covered by this Complaint, Defendant NEC sold and distributed DRAM to customers throughout the United States.

C.    **Co-Conspirators**

35.  Various others, presently unknown to Plaintiffs, participated as co-conspirators with the Defendants in the violations of law alleged in this Complaint and have engaged in conduct and made statements in furtherance thereof.

36.  The acts charged in this Complaint have been done by Defendants and their co-conspirators, or were authorized, ordered or done by their respective officers, agents, employees or representatives while actively engaged in the management of each Defendant's business or affairs.

37.  Each of the Defendants named herein acted as the agent or joint venturer of or for the other Defendants with respect to the acts, violations and common course of conduct alleged herein.  Each Defendant which is a subsidiary of a foreign parent acts as the sole United States agent for DRAM made by its parent company.

**CLASS ACTION ALLEGATIONS**

38.  Plaintiffs bring this suit as a class action pursuant Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of themselves and a Plaintiff Class ("the Class") composed of and defined as follows:

> All persons and entities residing in the United States who, from April 1, 1999 through December 31, 2002, purchased DRAM in the United States indirectly from the Defendants.  Specifically excluded from this Class are

FIRST AMENDED CLASS ACTION COMPLAINT

the Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

39. This action has been brought and may be properly maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure for the following reasons:

a.   The Class is ascertainable and there is a well-defined community of interest among the members of the Class;

b.   Based upon the nature of the trade and commerce involved and the number of indirect purchasers of DRAM, Plaintiffs believe that the members of the Class number in the thousands, and therefore is sufficiently numerous that joinder of all Class members is not practicable;

c.   Plaintiffs' claims are typical of the claims of the members of the Class because Plaintiffs indirectly purchased DRAM from one or more of the Defendants or their co-conspirators, and therefore Plaintiffs' claims arise from the same common course of conduct giving rise to the claims of the members of the Class and the relief sought is common to the Class;

d.   The following common questions of law or fact, among others, exist as to the members of the Class:

i.   whether Defendants formed and operated a combination or conspiracy to fix, raise, maintain or stabilize the prices of, or allocate the market for, DRAM;

ii.   whether the combination or conspiracy caused DRAM prices to be higher than they would have been in the absence of Defendants' conduct;

iii.   the operative time period of Defendants' combination or conspiracy;

9

iv.    whether Defendants' conduct caused injury to the business or property of Plaintiffs and the members of the Class;

v.    the appropriate measure of the amount of damages suffered by the Class;

vi.    whether Defendants' conduct violates Section 1 of the Sherman Act;

vii.    whether Defendants' conduct violates Sections 16720 and 17200 of the California Business and Professions Code;

viii.    whether Defendants' conduct violates the antitrust, unfair competition, and consumer protection laws of the other states as alleged below; and

ix.    the appropriate nature of class-wide equitable relief.

e.    These and other questions of law or fact which are common to the members of the Class predominate over any questions affecting only individual members of the Class;

f.    After determination of the predominate common issues identified above, if necessary or appropriate, the Class can be divided into logical and manageable subclasses;

g.    Plaintiffs will fairly and adequately protect the interests of the Class in that Plaintiffs have no interests that are antagonistic to other members of the Class and have retained counsel competent and experienced in the prosecution of class actions and antitrust litigation to represent themselves and the Class;

h.    A class action is superior to other available methods for the fair and efficient adjudication of this litigation since individual joinder of all damaged Class members is impractical.  The damages suffered by individual Class members are relatively small, given the expense and

10

FIRST AMENDED CLASS ACTION COMPLAINT

burden of individual prosecution of the claims asserted in this litigation. Thus, absent the availability of class action procedures, it would not be feasible for Class members to redress the wrongs done to them.  Even if the Class members could afford individual litigation, the court system could not.   Further, individual litigation presents the potential for inconsistent or contradictory judgments and would greatly magnify the delay and expense to all parties and to the court system.  Therefore, the class action device presents far fewer case management difficulties and will provide the benefits of unitary adjudication, economy of scale and comprehensive supervision by a single court;

i.      Defendants have acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole; and

j.      In the absence of a class action, Defendants would be unjustly enriched because they would be able to retain the benefits and fruits of their wrongful conduct.

40.   The Claims in this case are also properly certifiable under the laws of the State of California, and of the other individual states identified below in the Fourth and Fifth Claims for Relief.

### NATURE OF TRADE AND COMMERCE

41.   Throughout the period of time covered by this Complaint, Defendants and their co-conspirators engaged in the business of marketing and selling DRAM throughout the United States.

42.   DRAM is the dominant, most common form of memory chip. "Synchronous" DRAM chips are a high-speed, high-performance type of DRAM chip. "Random Access Memory" means that the data, stored in the form of 0s and 1s, can be accessed directly from any part of the memory, rather than having to proceed sequentially from some starting place.

FIRST AMENDED CLASS ACTION COMPLAINT

DRAM is called "dynamic" because it must have its storage cells refreshed or given a new electronic charge every few milliseconds.

43.   A DRAM chip is a large-scale integrated circuit with simple structures, and is fairly easy to manufacture.  Accordingly, DRAM is a commodity, with each Defendant's products being freely interchangeable with the products of another company.

44.   Worldwide sales of DRAM totaled approximately $14 billion in 2001, and increased to approximately $20 billion in 2003, with the United States accounting for a significant share of the market.  There are more than $5 billion of DRAM sales annually in the United States.  The top six manufacturers control over 90% of the market.  The Defendants are the largest manufacturers and sellers of DRAM in the United States market.  More than seventy percent (70%) of the DRAM market is controlled by Defendants Micron, Infineon, Hynix and Samsung and their wholly owned subsidiaries.  Within the last five years, the number of major DRAM manufacturers decreased from more than ten to just these four.  Defendants Mosel-Vitelic, Elpida, Nanya and Winbond are DRAM manufacturers with a substantial portion of the remaining 30% of the market.

45.   Manufacturers of electronic products and devices, and resellers of DRAM modules, such as the Plaintiffs and members of the Class, purchase DRAM from wholesale distributors, who in turn purchase DRAM directly or indirectly from the Defendants.  These electronic products and devices and DRAM modules are then sold, directly or indirectly, to consumers.

46.   California is the largest market in the world for DRAM and is the world wide center of the PC industry and other industries that depend upon the DRAM markets.  Statements concerning the prices and market conditions for DRAM were disseminated by defendants from and into California on a regular and continuous basis.

FIRST AMENDED CLASS ACTION COMPLAINT

## **DEFENDANTS' ILLEGAL CONDUCT**

47.  Defendants and their co-conspirators have engaged in a contract, combination, trust or conspiracy, the effect of which was to raise the prices at which they sold DRAM to artificially inflated levels.

48.  Defendants, through their officers, directors and employees, effectuated the aforesaid trust between themselves and their co-conspirators by, among other things:

    a.    participating in meetings and conversations, including through various trade associations and committees, to discuss the prices of DRAM in the United States;

    b.    agreeing, during those meetings and conversations, to charge prices at specified levels and otherwise to increase and maintain prices of DRAM sold in the United States;

    c.    issuing price announcements and quotations in accordance with the agreements reached; and

    d.    selling DRAM to various customers in the United States at non-competitive prices.

49.  Defendants' contract, combination, trust or conspiracy was centered in, carried out, effectuated and perfected mainly in the State of California.  Therefore, all members of the Class, whether or not California residents, are entitled to recover under California law, as well as the laws of their own states.

50.  Beginning at least as early as 1999, Defendants conspired to consolidate the DRAM market.  In October 1999, an earthquake in Taiwan, one of the principal locations for the manufacture of DRAM, caused a worldwide shortage of DRAM.  At approximately the same time, Micron entered into an agreement to supply DRAM to Compaq, one of the world's largest computer manufacturers.  Soon after the Micron/Compaq agreement, DRAM prices began to rise and continued to do so until the Fall of 2000, when a downward pricing trend began.

FIRST AMENDED CLASS ACTION COMPLAINT

51.   In 2001, the major DRAM manufacturers decided to further lower their prices. On information and belief, the purpose of these price cuts was to drive smaller DRAM manufacturers out of business, enabling the dominant DRAM manufacturers to consolidate their control of that market.  Because smaller DRAM manufacturers could not afford to match the price reduction of the large manufacturers, they were forced out of business.

52.   In approximately August 2001, NEC transferred its DRAM business to Elpida, an NEC and Hitachi joint venture.  Jim Sorgas, an Elpida Vice President, has acknowledged that large manufacturers appeared to drop DRAM prices in 2001 to gain market share.

53.   A news article on the DRAM industry reported that Defendant Mosel-Vitelic and other DRAM producers had met to discuss measures that could be taken to halt "the downward spiral of DRAM prices."   Defendant Mosel-Vitelic's Vice President Chang indicated in September 2001 that "a basis for understanding had been reached" between chip makers to "trim some production starting September."  Chang stated that all DRAM makers would have to agree for the plan to have the desired effect of raising prices.

54.   It has been reported in the press that an officer of DRAM manufacturer Mosel-Vitelic admitted that price fixing meetings occurred, and that an agreement had been reached between the major DRAM producers to push prices up by reducing supply.  According to press reports, Hynix and Samsung executives visited both Mosel-Vitelic and Nanya Technology executives to discuss these agreements.

55.   In December 2001, Micron acquired Dominion, a subsidiary of Toshiba and the sixth-largest DRAM manufacturer.

56.   Beginning at least as early as April 1999, Defendants failed to acknowledge that DRAM pricing was the result of their illegal conduct.

57.   In November 2001, the wholesale price of DRAM was less than $1 per chip. Beginning in December 2001, DRAM prices jumped dramatically as a result of Defendants' conspiracy.  In early 2002, DRAM prices contradicted normal market trends.  According to industry publications, the price of DRAM usually drops in the first quarter of the year.

However, and not surprisingly, after a number of Defendants met in Asia, the price of DRAM rose approximately 500% from the November 2001 low of less than $1 to nearly $5 in the first Quarter 2002.  This dramatic price increase coincided not only with Defendants' meetings, but also their exercise of market power, including their efforts to consolidate manufacturing, which artificially raised, inflated and sustained market prices.

58.   Defendants misled the public about the reason for price increases. For example, on December 18, 2001, Micron's Vice President of Sales, Michael W. Sadler stated during an analyst conference call:

> In the latter half of October we saw a significant uptake in demand and by the first quarter of November this demand strength resulted in sharp spot market price increases.  The robust demand environment has continued beyond the reporting period and today, market prices are trending up in both the [spot] market and with OEM customers.  The strengthening of the business in this particular timeframe was not unexpected as we are in the midst of the typical high point with respect to demand seasonality. . . .

59.   In reality, price increases in the DRAM market were the result of careful collaboration and manipulation by the DRAM manufacturers to "hide" the true availability of DRAM and to coordinate supply restraints of DRAM on the spot market in order to raise prices.  Sadler was plainly aware of this fact as he himself was a major player within the conspiracy.

60.   On September 20, 2001, for example, Infineon's Peter Schaefer sent an email to three of his superiors at Infineon.  In that email, Schaefer details discussion with Michael Sadler, in which Sadler told him in detail Micron's inventory and production levels, including Micron's future plans for DRAM production.  Specifically, Sadler told Schaefer that Micron "would consider taking supply out of the market if others do the same; either by reducing waferstarts or destroying all inventories."

61.   An October 8, 2001 Micron email tells of a meeting between Sadler and Samsung's Y.W. Lee.  Among the topics discussed during this meeting was December production reduction by Micron.

FIRST AMENDED CLASS ACTION COMPLAINT

62.   On October 24, 2001, Lionel Lim of Micron sent an internal email to a number of other Micron employees, telling them that he had "Talked to Sammy [Samsung] and they are still planning to limit their output to 8Millions per month."

63.   On November 9, 2001 Mike Ridling of Micron stated in an internal email: "We are limiting our customers volumes and we know that Samsung is doing the same."

64.   On November 13, 2001, Samsung noted internally that "[t]he recent increases in spot market pricing is due to Micron and Infineon intentionally withholding product from the spot market."  On that same day, Ron Mayhew of Elpida commented on how "Micron and all others have cut back production, but they also have inventory...Real demand has not changed."

65.   When the Hynix management team sought detailed information from Micron in November, 2001, two executives were specifically directed to contact Sadler for information related to sales, sales strategy, inventory, market forecast and other competitive information.

66.   In a December 2001 Elpida email, that Defendant admitted that demand did not cause the price increase:

> Unfortunately the dynamics are pretty much unrelated to true market forces.  There is no organic reason for prices to increase *i.e.*, demand increases. ***This is pure supply control.***  Suppliers are losing hundreds of millions of dollars.  As with any commodity business, the only way to fix that is [to] correct the supply demand balance.   Price increase cannot happen naturally without first reducing supply.  Since supply reduction takes time and actually ADDs cost (low factory utilization), price changes need to be forced to happen.   Kind of like an airplane just raising prices.  Seats are still there and some may be empty but need to get back in the black. (Emphasis added.)

67.   Defendants created the appearance of lower available inventory by withholding DRAM from their customers "inventory hubs."  Within a few days of each other in November 2001, Infineon and Micron executives, including Mike Sadler, instructed their people to pull inventory out of the inventory hubs so that their customers could not pull out product before

the next price increase, which Defendants were carefully planning for the next negotiation cycle.

68. On March 21, 2002, Micron held its second quarter 2002 conference call. During that call, Michael Sadler made the following statement about the past quarter, which was December 2001 thru February 2002: "With a strong demand and price recovery we have substantially depleted our finished goods inventory and are now at minimum levels to enable adequate performance. . . ."

69. Defendants attributed the price increase to an increase in demand, rather than their conspiracy. In January 2002, the *Economic Daily News* suggested that Nanya was colluding with Samsung to increase the prices of DRAM. In the *Taipei Times*, on January 30, 2002, Nanya denied the allegations. In an interview with Nanya Technology Corp.'s Vice President Moor Chen, Mr. Chen denied the allegations, stating that "Each company has its own selling strategy," Chen said. Chen attributed the price increase of over 25% since November to the increase in demand for DRAM because of Windows XP and Intel's new CPU chipset. Mr. Chen went on to say that most of the DRAM sold by Nanya goes to big customers such as Dell and IBM.

70. In fact, and contrary to Mr. Chen's public denial, the reason for the price increase to Dell, IBM and others was collusion with Samsung and other Defendants. For example, on January 2, 2002, in an internal Samsung email, Mike Bocian wrote, in reference to Dell SDRAM/DDR pricing, "Nanya confirmed they will be qualed next week and will quote $56."

71. In April 2002, Infineon reported that due to increased DRAM prices, revenues had increased 34% for the first quarter ended March 31, 2002, compared with revenues the previous quarter.

72. It has been reported in the press that an officer of DRAM manufacturer Mosel-Vitelic admitted that price fixing meetings occurred, and that an agreement had been reached between the major DRAM producers to push prices up by reducing supply. According to

press reports, Hynix and Samsung executives visited both Mosel-Vitelic and Nanya Technology executives to discuss these agreements.

73.   On April 30, 2002, Dell Computer's founder and Chief Executive Officer, Michael Dell, spoke at the Merrill Lynch "Hardware Heaven" conference.  During Michael Dell's presentation, he said, "I think we saw cartel-like behavior by a couple of DRAM suppliers."  As a result, Dell announced that it would widen its network of suppliers to try to defeat the anti-competitive conspiracy.

74.   Defendants quickly heard of Mr. Dell's comments.  On May 1, 2002, in an internal Samsung email forwarding an article about Mr. Dell's comments, Samsung's sales director wrote to his superiors, saying "This article has already made interesting reading at our key accounts.  I think SEC [Samsung] should have a story/response to tell our key customers. As you can see from Apple management email below, they will be looking for a response from us.  I am sure this will be a topic at our next round of customer visits."

75.   On June 18, 2002, Micron announced that it had received a subpoena from the DOJ in connection with an investigation into potential price-fixing in the DRAM market. Micron denied any knowledge of DRAM price-fixing.  Micron's Vice President of Corporate Affairs Kipp Bedard said that Micron "does not believe it has violated U.S. antitrust laws" and assured the public that "[t]he DRAM business is highly competitive."

76.   On June 25, 2002, Micron held its third quarter 2002 conference call.  During that call, Kipp Bedard of Micron lied about the reason for the price increases, despite knowing the Micron had been subpoenaed the week before.  In response to an analyst's question about the reason for the price increase, he said: "I can only speak from our standpoint, and we've had enough inventory to feed into the spot market while prices have been going up, so I don't think there have been a lot of orders in the spot market that we weren't able to fill.  So I—the only thing I contribute (sic) it to is demand."

77.   The misleading public statements created a likelihood of confusion with respect to the real reasons DRAM prices were rising.  By knowingly issuing public pronouncements that

were mere subterfuge, Defendants induced Plaintiffs' purchases of DRAM at prices that were artificially inflated.

78. In May 2002, the Taipei Times reported that a DRAM industry executive admitted that his company agreed with its competitors to fix DRAM prices. According to the article, the competitors agreed to set the floor price for DRAM at $3.

79. On June 18, 2002, defendant Micron announced it had received a subpoena issued by a federal grand jury sitting in the Northern District of California. The grand jury is reportedly gathering information in conjunction with an industry-wide United States Department of Justice probe into the anti-competitive agreements and practices of the DRAM market.

80. By June 20, 2002, defendants Samsung, Hynix and Infineon confirmed that they had received subpoenas from the federal grand jury sitting in the Northern District of California in connection with the Department of Justice's investigation of the anti-competitive agreements and practices of the DRAM market.

81. On September 12, 2003, defendant Elpida Memory announced it had received a subpoena from the federal grand jury sitting in the Northern District of California in connection with the Department of Justice's investigation of the anti-competitive agreements and practices of the DRAM market.

82. Published reports indicate that the Department of Justice's investigation is broad in scope and includes numerous DRAM makers including all of the defendants herein.

83. On or about December 17, 2003, Alfred P. Censullo, a Regional Sales Manager for defendant Micron Technology Inc., entered into a plea agreement with the government pursuant to which he agree to plead guilty to obstruction of justice in connection with the government's investigation of price-fixing in the DRAM market.

84. On or about September 14, 2004, defendant Infineon Technologies AG entered into a plea agreement with the government pursuant to which it agreed to plead guilty to conspiring to fix prices in the DRAM market from July 1, 1999 through June 15, 2002, to pay

19

a $160 million fine, and to cooperate with the government's ongoing investigation.  The plea agreement recited that the government agreed not to seek full restitution because of the ability of private plaintiffs to recover multiples of actual damages in civil litigation.  On October 20, 2004, a Judgment was signed by the district court adjudicating Infineon guilty of the offense of price fixing in violation of 15 U.S.C. § 1.

85.  In December 2004, four Infineon executives, T. Rudd Corwin, Peter Schaefer, Gunter Hefner, and Henrich Florian, pleaded guilty to the DRAM price-fixing conspiracy. Each was sentenced to jail, and each has paid a fine of $250,000.

86.  On or about April 20, 2005, defendant Hynix Semiconductor Inc. entered into a plea agreement with the government pursuant to which it agreed to plead guilty to conspiring to fix prices in the DRAM market from April 1, 1999 through June 15, 2002, to pay a $185 million fine, and to cooperate with the government's ongoing investigation.   The plea agreement recited that the government agreed not to seek full restitution because of the ability of private plaintiffs to recover multiples of actual damages in civil litigation.

## **ACTIVE CONCEALMENT**

87.  Throughout and beyond the conspiracy, Defendants and their co-conspirators affirmatively and actively concealed their unlawful conduct from Plaintiffs.  Defendants and their co-conspirators conducted their conspiracy in secret and kept it mostly within the confines of their higher-level executives.   Defendants and their co-conspirators publicly provided pre-textual and false justifications regarding their price increases.

88.  Defendants and their co-conspirators conducted their conspiracy in secret, concealed the true nature of their unlawful conduct and acts in furtherance thereof, and actively concealed their activities through various other means and methods to avoid detection.  Plaintiffs did not discover, and could not have discovered through the exercise of reasonable diligence, that Defendants and their co-conspirators were violating the antitrust

laws as alleged herein until shortly before class action litigation was commenced against the Defendants in 2002.

89. As a result of the active concealment of the conspiracy by Defendants and their co-conspirators, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## VIOLATIONS ALLEGED

### First Claim for Relief

### (Violation of Section 1 of the Sherman Act)

90. Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

91. Beginning at a time presently unknown to Plaintiffs, but at least as early as April 1, 1999, and continuing through at least December 31, 2002, the exact dates being unknown to Plaintiffs, Defendants and their co-conspirators entered into a continuing agreement, understanding, and conspiracy in restraint of trade to artificially raise, fix, maintain, and/or stabilize prices for DRAM in the United States, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

FIRST AMENDED CLASS ACTION COMPLAINT

92. In formulating and carrying out the alleged agreement, understanding, and conspiracy, the Defendants and their co-conspirators did those things that they combined and conspired to do, including but not limited to the acts, practices, and course of conduct set forth above, and the following, among others:

       a.     To fix, raise, maintain and stabilize the price of DRAM;

       b.     To allocate markets for DRAM among themselves;

       c.     To submit rigged bids for the award and performance of certain DRAM contracts; and

       d.     To allocate among themselves the production of DRAM.

93. The combination and conspiracy alleged herein has had the following effects, among others:

       a.     Price competition in the sale of DRAM has been restrained, suppressed, and/or eliminated in the United States;

       b.     Prices for DRAM sold by Defendants and their co-conspirators have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels throughout the United States; and

       c.     Those who purchased DRAM directly or indirectly from Defendants and their co-conspirators have been deprived of the benefits of free and open competition.

94. Plaintiffs have been injured and will continue to be injured in their business and property by paying more for DRAM purchased indirectly from the Defendants and their co-conspirators than they would have paid and will pay in the absence of the combination and conspiracy, including paying more for personal computers and other products in which DRAM is a component as a result of higher prices paid for DRAM by the manufacturers of those products.

95. Plaintiffs and the class are entitled to an injunction against Defendants, preventing and restraining the violations alleged herein.

FIRST AMENDED CLASS ACTION COMPLAINT

**Second Claim for Relief**

**(Violation of the California Cartwright Act)**

96.   Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

97.   Defendants' contract, combination, trust or conspiracy was centered in, carried out, effectuated and perfected mainly within the State of California, and Defendant's conduct within California injured all members of the Class throughout the United States.  Therefore, this claim for relief under California law is brought on behalf of all members of the Class, whether or not they are California residents.

98.   Beginning at a time presently unknown to Plaintiffs, but at least as early as April 1, 1999, and continuing thereafter at least up to and including December 31, 2002, Defendants and their co-conspirators entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce described above in violation of Section 16720, California Business and Professional Code.  Defendants, and each of them, have acted in violation of Section 16720 to fix, raise, stabilize and maintain prices of, and allocate markets for, DRAM at supra-competitive levels.

99.   The aforesaid violations of Section 16720, California Business and Professions Code, consisted, without limitation, of a continuing unlawful trust and concert of action among the Defendants and their co-conspirators, the substantial terms of which were to fix, raise, maintain and stabilize the prices of, and to allocate markets for, DRAM.

100. For the purpose of forming and effectuating the unlawful trust, the Defendants and their co-conspirators have done those things which they combined and conspired to do, including but in no way limited to the acts, practices and course of conduct set forth above and the following:

       a.      to fix, raise, maintain and stabilize the price of DRAM;

       b.      to allocate markets for DRAM amongst themselves;

  c.  to submit rigged bids for the award and the performance of certain DRAM

     contracts; and

  d.  to allocate amongst themselves the production of DRAM.

  101. The combination and conspiracy alleged herein has had, *inter alia*, the following effects:

  a.  price competition in the sale of DRAM has been restrained, suppressed

     and/or eliminated in the State of California and throughout the United

     States;

  b.  prices for DRAM sold by Defendants and their co-conspirators have been

     fixed, raised, maintained and stabilized at artificially high, non-

     competitive levels in the State of California and throughout the United

     States; and

  c.  those who purchased DRAM from Defendants and their co-conspirators

     have been deprived of the benefit of free and open competition.

  102. Plaintiffs and the other members of the Class paid supra-competitive, artificially inflated prices for DRAM.

  103. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and the members of the Class have been injured in their business and property in that they paid more for DRAM than they otherwise would have paid in the absence of Defendants' unlawful conduct. As a result of Defendants' violation of Section 16720 of the California Business and Professions Code, Plaintiffs seek treble damages and the costs of suit, including reasonable attorneys' fees, pursuant to Section 16750(a) of the California Business and Professions Code.

### **Third Claim for Relief**

### **(Violation of the California Unfair Competition Law)**

  104. Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

105. Defendants' business acts and practices were centered in, carried out, effectuated and perfected mainly within the State of California, and Defendant's conduct within California injured all members of the Class throughout the United States.  Therefore, this claim for relief under California law is brought on behalf of all members of the Class, whether or not they are California residents.

106. Beginning on a date unknown to Plaintiffs, but at least as early as April 1, 1999, and continuing thereafter at least up through and including December 31, 2002, Defendants committed and continue to commit acts of unfair competition, as defined by Sections 17200, *et seq.* of the California Business and Professions Code, by engaging in the acts and practices specified above.

107. This Claim is instituted pursuant to Sections 17203 and 17204 of the California Business and Professions Code, to obtain restitution from these Defendants for acts, as alleged herein, that violated Section 17200 of the California Business and Professions Code, commonly known as the Unfair Competition Law.

108. The Defendants' conduct as alleged herein violated Section 17200.  The acts, omissions, misrepresentations, practices and non-disclosures of Defendants, as alleged herein, constituted a common continuous and continuing course of conduct of unfair competition by means of unfair, unlawful and/or fraudulent business acts or practices within the meaning of California Business and Professions Code, Section 17200, *et seq.*, including, but not limited to, the following:

      a.      The violations of Section 1 of the Sherman Act, as set forth above;

      b.      The violations of Section 16720, *et seq.*, of the California Business and Professions Code, set above;

      c.      Defendants' acts, omissions, misrepresentations, practices and non-disclosures, as described above, whether or not in violation of Section 16720, *et seq.* of the California Business and Professions Code, and whether or not concerted or independent acts, are otherwise unfair,

25

unconscionable, unlawful or fraudulent;

d.    Defendants' act and practices are unfair to consumers of DRAM in the State of California and throughout the United States, within the meaning of Section 17200, California Business and Professions Code; and

e.    Defendants' acts and practices are fraudulent or deceptive within the meaning of Section 17200 of the California Business and Professions Code.

109. Plaintiffs and each of the Class members are entitled to full restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits which may have been obtained by Defendants as a result of such business acts or practices.

110. The illegal conduct alleged herein is continuing and there is no indication that Defendants will not continue such activity into the future.

111. The unlawful and unfair business practices of Defendants, and each of them, as described above, have caused and continue to cause Plaintiffs and the members of the Class to pay supra-competitive and artificially-inflated prices for DRAM.  Plaintiffs and the members of the class suffered injury in fact and lost money or property as a result of such unfair competition.

112. The conduct of Defendants as alleged in this Complaint violates Section 17200 of the California Business and Professions Code.

113. As alleged in this Complaint, Defendants and their co-conspirators have been unjustly enriched as a result of their wrongful conduct and by Defendants' unfair competition. Plaintiff and the members of the Class are accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits which may have been obtained by Defendants as a result of such business practices, pursuant to the California Business and Professions Code, Sections 17203 and 17204.

FIRST AMENDED CLASS ACTION COMPLAINT

**Fourth Claim for Relief**

**(Violation of State Antitrust and Unfair Competition Laws)**

114. Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

115. By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Alabama Code §§8-10-1 *et seq.*

116. By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Arizona Revised Stat. §§44-1401 *et seq.*

117. By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of California Bus. & Prof. Code §§16700 *et seq.* and Cal. Bus. & Prof. Code §§17200 *et seq.*

118. By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of District of Columbia Code Ann. §§28-4503 *et seq.*

119. By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Iowa Code §§553.1 *et seq.*

120. By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Kansas Stat. Ann. §§50-101 *et seq.*

121. By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Maine Rev. Stat. Ann. 10, §§1101 *et seq.*

122. By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Michigan Comp. Laws. Ann. §§445.773 *et seq.*

123. By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Minnesota Stat. §§325D.52 *et seq.*

124. By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Mississippi Code Ann. §75-21-1 *et seq.*

125. By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Nebraska Rev. Stat. §§59-801 *et seq.*

126. By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Nevada Rev. Stat. Ann. §§598A *et seq.*

127. By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of New Mexico Stat. Ann. §§57-1-1 *et seq.*

128. By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of North Carolina Gen. Stat. §§75-1 *et seq.*

129. By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of North Dakota Cent. Code §§51-08.1-01 *et seq.* By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Ohio Rev. Code Ann. §1331.01 *et seq.*  By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of the Pennsylvania common law.

130. By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of South Dakota Codified Laws Ann. §§37-1-3.1 *et seq.*  Part of the conspiracy to restrain trade or commerce took place in South Dakota because, *inter alia*, computer maker Gateway, Inc. was headquartered in South Dakota during the Class Period.

131. By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Tennessee Code Ann. §§47-25-101 *et seq.*

132. By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Vermont Stat. Ann. 9 §§2453 *et seq.*

133. By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of West Virginia §§47-18-1 *et seq.*

134. By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Wisconsin Stat. §§133.01 *et seq.*

135. By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Tennessee Code Ann. §§47-25-101 *et seq.*

136. By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Vermont Stat. Ann. 9 §§2453 *et seq.*

FIRST AMENDED CLASS ACTION COMPLAINT

137. By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of West Virginia §§47-18-1 *et seq.*

138. By reason of the foregoing, defendants have entered into agreements in restraint of trade in violation of Wisconsin Stat. §§133.01 *et seq.*

139. Class Members in each of the states listed above paid supra-competitive, artificially inflated prices for DRAM.  As a direct and proximate result of Defendants' unlawful conduct, such members of the Class have been injured in their business and property in that they paid more for DRAM than they otherwise would have paid in the absence of Defendants' unlawful conduct.

### Fifth Claim for Relief

### (Violation of State Consumer Protection and Unfair Competition Laws)

140. Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

141. Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection and unfair competition statutes listed below.

142. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Alaska Stat. §§45.50.471 *et seq.*

143. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Arkansas Code §4-88-101 *et seq.*

144. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of California Bus. & Prof. Code §17200 *et seq.*

145. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of District of Columbia Code §28-3901 *et seq.*

146. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Florida Stat. §501.201 *et seq.*

FIRST AMENDED CLASS ACTION COMPLAINT

147. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Hawaii Rev. Stat. §480 *et seq.*

148. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Idaho Code §48-601 *et seq.*

149. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Kansas Stat. §50-623 *et seq.*

150. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Louisiana Rev. Stat. §51:1401 *et seq.*

151. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 5 Maine Rev. Stat. §207 *et seq.*

152. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Montana Code §30-14-101 *et seq.*

153. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Nebraska Rev. Stat. §59-1601 *et seq.*

154. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of New Mexico Stat. §57-12-1 *et seq.*

155. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of New York Gen. Bus. Law §349 *et seq.*  Specifically,

    a.      Defendants engaged in trade or commerce in New York;

    b.      Defendants and their co-conspirators secretly agreed to raise prices by direct agreement on bids to customers located in New York and through artificial supply restraints on the entire DRAM market;

    c.      New York consumers were targets of the conspiracy;

    d.      the secret agreements were not known to New York consumers;

    e.      Defendants' omitted material information that made the statements which they made materially misleading, and also made materially misleading affirmative statements about the real cause of price increases;

FIRST AMENDED CLASS ACTION COMPLAINT

f.     Because of Defendants' unlawful trade practices in the State of New York, Plaintiffs and other class members who indirectly purchased DRAM have been injured because they have paid more for DRAM than they would have paid in the absence of Defendants' unlawful trade acts and practices.

156. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of North Carolina Gen. Stat. §75-1.1 *et seq.*

157. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Oregon Rev. Stat. §646.605 *et seq.*

158. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in connection with DRAM that was indirectly purchased primarily for personal, family, or household purposes in violation of Rhode Island Gen. Laws. §6-13.1-1 *et seq.* Specifically,

a.     Defendants engaged in trade or commerce in Rhode Island;

FIRST AMENDED CLASS ACTION COMPLAINT

    b.    as alleged herein, Defendants engaged in acts or practices that were unfair or deceptive to the consumer;

    c.    as alleged herein, Defendants used methods, acts or practices that were unfair or deceptive to natural persons purchasing DRAM for personal, family and household purposes;

    d.    Rhode Island consumers were injured by Defendants' actions.

159. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of South Carolina Code Laws §39-5-10 *et seq.*

160. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Utah Code §13-11-1 *et seq.*

161. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 9 Vermont §2451 *et seq.*

162. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of West Virginia Code §46A-6-101 *et seq.*

163. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Wyoming Stat. §40-12-105.

164. Class Members in the states listed above paid supra-competitive, artificially inflated prices for DRAM.  As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and the members of the Class have been injured in their business and property in that they paid more for DRAM than they otherwise would have paid in the absence of Defendants' unlawful conduct.

## **Sixth Claim for Relief**

### **(Unjust Enrichment and Disgorgement of Profits)**

165. Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

166. Defendants have been unjustly enriched through overpayments by Plaintiffs and Class members and the resulting profits.

FIRST AMENDED CLASS ACTION COMPLAINT

167. Under common law principles of unjust enrichment, Defendants should not be permitted to retain the benefits conferred via overpayments by Plaintiffs and Class members.

168. Plaintiffs seek disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiffs and Class members may seek restitution.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray:

A.     That the Court determine that the Sherman Act, state antitrust law, and  state consumer protection and/or unfair competition law claims alleged herein may be maintained as a class action under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure;

B.     That the unlawful conduct, contract, conspiracy or combination alleged herein be adjudged and decreed to be:

      a.     A restraint of trade or commerce in violation of Section 1 of the Sherman Act, as alleged in the First Claim for Relief;

      b.     An unlawful combination, trust, agreement, understanding, and/or concert of action in violation of the state antitrust laws identified in the Second and Fourth Claims for Relief herein;

      c.     Violations of the state consumer protection and unfair competition laws identified in the Third and Fifth Claims for Relief herein; and

      d.     Acts of unjust enrichment as set forth in the Sixth Claim for Relief herein.

C.     That Plaintiffs and the Class recover damages, as provided by federal and state antitrust laws, and that a joint and several judgment in favor of  Plaintiffs and the Class be entered against the Defendants in an amount to be trebled in accordance with such laws;

D.     That Defendants, their affiliates, successors, transferees, assignees, and the officers, directors, partners, agents, and employees thereof, and all other persons acting or claiming to act on their behalf, be permanently enjoined and restrained from in any manner: (1) continuing, maintaining, or renewing the conduct, contract, conspiracy or combination

alleged herein, or from entering into any other conspiracy alleged herein, or from entering into any other contract, conspiracy or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect; and (2) communicating or causing to be communicated to any other person engaged in the sale of DRAM, information concerning bids of competitors;

E.     That Plaintiffs be awarded restitution, including disgorgement of profits obtained by Defendants as a result of their acts of unfair competition and acts of unjust enrichment;

F.     That Plaintiffs and members of the Class be awarded pre- and post-judgment interest, and that that interest be awarded at the highest legal rate from and after the date of service of the initial complaint in this action;

G.     That Plaintiffs and members of the Class recover their costs of this suit, including reasonable attorneys' fees as provided by law; and

H.     That Plaintiffs and members of the Class have such other, further, and different relief as the case may require and the Court may deem just and proper under the circumstances.

## JURY TRIAL DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury for all issues so triable.

DATED:  June 28, 2007                    Respectfully submitted,


By _____

Terry Gross (103878)                     Francis O. Scarpulla (41059)
Adam C. Belsky (147800)                  Craig C. Corbitt (83251)
Monique Alonso (127078)                  Christopher T. Micheletti (136446)
GROSS & BELSKY LLP                       Judith Zahid (215418)
180 Montgomery Street, Suite 2200        Matthew R. Schultz (220641)
San Francisco, California 94104          Zelle, Hofmann, Voelbel, Mason & Gette LLP
Telephone: (415) 544-0200                44 Montgomery Street, Suite 3400
Facsimile:  (415) 544-0201               San Francisco, CA 94104
                                         Telephone:    (415) 693-0700
                                         Facsimile:    (415) 693-0770

34

| | |
|---|---|
| 1 | |

Michael P. Lehmann (77152)
FURTH LEHMANN, LLP
225 Bush Street, 15th Floor
Telephone: (415) 433-2070
Facsimile: (415) 982-2076

Robert Green (136183)
Jenelle Welling (209480)
GREEN WELLING LLP
235 Pine Street, 15th Floor
San Francisco, California 94104
Telephone: (415) 477-6700
Facsimile: (415) 477-6710

Steven J. Serratore (144252)
Scott Ames (146093)
SERRATORE & AMES
1880 Century Park East Suite 808
Los Angeles, California 90067
Telephone: (310 )552-9673
Facsimile: (310) 552-9740

Alan R. Plutzik (77785)
Daniel E. Birkhaeuser (136646)
BRAMSON, PLUTZIK, MAHLER
  & BIRKHAEUSER, LLP
2125 Oak Grove Road, Suite 120
Walnut Creek, California 94598
Telephone:  (925) 945-0200
Facsimile:   (925) 945-8792

Christine Bartholomew (221425)
FINKELSTEIN THOMPSON
601 Montgomery Street, Suite 655
San Francisco, California 94111
Telephone: (415) 398-8700
Facsimile:  (415) 398-8704

Douglas G. Thompson Jr. (46056)
Mila F. Bartos
FINKELSTEIN THOMPSON
1050 30th Street, N.W.
Washington, D.C. 20007
Telephone: (202) 337-8000
Facsimile:  (202) 337-8090

Josef D. Cooper (53015)
Tracy R. Kirkham (69913)
John J. Bogdanor (215830)
COOPER & KIRKHAM, P.C.
655 Montgomery Street, 17 Floor
San Francisco, CA 94111
Telephone: (415) 788-3030
Facsimile:  (415) 882-7040

Daniel J. Mogin (95624)
Lisa J. Frisella (216504)
Chad McManamy (225205)
THE MOGIN LAW FIRM, P.C.
110 Juniper Street
San Diego, California 92101-1502
Telephone: (619) 687-6611
Facsimile:  (619) 687-6610

Peter J. McNulty (89660)
Daniel S. Glaser (172056)
MCNULTY LAW FIRM
827 Moraga Drive
Bel Air, California 92101-1502
Telephone: (310) 471-2707
Facsimile:  (310) 472-7014

Mario N. Alioto (56433)
TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP
2280 Union Street
San Francisco, California 94123
Telephone: (415) 563-7200
Facsimile:  (415) 346-0679

Joseph M. Patane (72202)
LAW OFFICES OF JOSEPH M. PATANE
2280 Union Street
San Francisco, California 94123
Telephone: (415) 563-7200
Facsimile:  (415) 346-0679

FIRST AMENDED CLASS ACTION COMPLAINT

1  Richard L. Voelbel
   Richard M. Hagstrom
2  ZELLE, HOFMANN, VOELBEL,
   MASON & GETTE LLP
3  500 Washington Avenue South, Suite 4000
   Minneapolis, MN 55415
4  Telephone: (612) 339-2020
   Facsimile: (612) 336-9100
5
6  Richard G. Urquhart
   ZELLE, HOFMANN, VOELBEL,
7  MASON & GETTE LLP
   1201 Main Street, Suite 3000
8  Dallas, TX 75202
   Telephone: (214) 742-3000
9  Facsimile: (214) 760-8994

10 Attorneys for Plaintiffs and the Class
11
12
13
14
15
16
17 3169376v1
18
19
20
21
22
23
24
25
26
27
28

W. Timothy Needham (96542)
Lynnette D. Chen (172580)
JANSSEN, MALLOY, NEEDHAM, MORRISON &
   REINHOLTSEN, LLP
730 Fifth Street, P.O. Drawer 1288
Eureka, California 95501
Telephone: (707) 445-2071
Facsimile: (707) 445-8305

Alexander M. Schack (99126)
LAW OFFICES OF ALEXANDER M. SCHACK
11440 West Bernardo Court, Suite 300
San Diego, California 92127
Telephone: (858) 485-6535
Facsimile: (858) 485-0608

Ralph B. Kalfayan (133464)
KRAUSE, KALFAYAN, BENINK & SLAVENS
1010 Second Avenue, Suite 1750
San Diego, CA 92101
Telephone: (619) 232-0331
Facsimile: (619) 232-4019

FIRST AMENDED CLASS ACTION COMPLAINT
3169376v1

# CERTIFICATE OF SERVICE

## IN RE DYNAMIC RANDOM ACCESS MEMORY (DRAM)
## ANTITRUST LITIGATION SERVICE LIST
### Case No. M-02-1486 PJH
### MDL No. 1486

      I, C.P. Cusick, certify and declare under penalty of perjury that I: am a citizen of the United States; am over the age of 18 years; am employed by Zelle, Hofmann, Voelbel, Mason & Gette LLP, 44 Montgomery Street, Suite 3400, San Francisco, CA 94104, whose members are members of the State Bar of California and at least one of whose members is a member of the Bar of each Federal District Court within California; am not a party to or interested in the cause entitled upon the document to which this Certificate of Service accompanies; and that on July 9, 2007, I served a true and correct copy of the following document(s) in the manner indicated below:

FIRST AMENDED CLASS ACTION COMPLAINT

☒ **By USDC Live System-Document Filing System:** on all interested parties registered for e-filing.

☐ (BY ELECTRONIC MAIL) I caused such document(s) to be emailed to the offices and/or to attorneys of offices of the attached list named addressee(s).

Dated:  July 9, 2007

Signed  _C.P. Cusick_
C.P. Cusick