UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

In re DYNAMIC RANDOM ACCESS
MEMORY (DRAM) ANTITRUST
LITIGATION
_____/

This Document Relates to:

All Indirect Purchaser Actions
_____/

No. M 02-1486 PJH

**ORDER GRANTING MOTION
FOR LEAVE TO FILE SECOND
AMENDED COMPLAINT**

Plaintiffs' motion for leave to file a second amended complaint came on for hearing on August 15, 2007 before this court. Plaintiffs, the indirect purchaser class ("plaintiffs"), appeared through their counsel, Josef Cooper, Craig Corbett, Daniel J. Mogin, and Michael P. Lehmann. Defendants appeared through their counsel, Kenneth O'Rourke, Tim Martin, Joel Sanders, Michael W. Scarborough, Julian Brew, Paul R. Griffin, Ni'al Benjamin, and David C. Brownstein. Having read all the papers submitted and carefully considered the relevant legal authority, the court hereby GRANTS plaintiffs' motion, for the reasons stated at the hearing, and as follows.

**BACKGROUND**

The instant MDL action generally alleges a horizontal price-fixing conspiracy carried out by numerous defendants in the U.S. market for dynamic random access memory ("DRAM"). Plaintiffs are numerous indirect purchasers of DRAM. Defendants are either foreign corporations, or U.S. subsidiaries of foreign corporations, who manufacture and sell DRAM in the U.S.

On June 1, 2007, the court issued an order granting in part and denying in part defendants' motions for judgment on the pleadings ("JOP Order"). By way of their motions, defendants sought judgment as a matter of law with respect to numerous claims alleged in

plaintiffs' complaint. Specifically, defendants sought judgment with respect to (a) plaintiffs' second and fourth claims for relief, which alleged violations of the California Cartwright Act and 22 states' antitrust and unfair competition laws; and (b) plaintiffs' fifth claim for relief, which alleged violations of 22 states' consumer protection and unfair competition laws.

In its June 1 order, the court came to two overarching conclusions. First, the court held that plaintiffs lacked antitrust standing to assert their claims under both the California Cartwright Act and 13 specific state antitrust statutes, with respect to those claims based on purchases of products in which DRAM is a component. The court further granted defendants' motion for lack of standing with respect to 3 more state antitrust statutes, regardless whether those claims were based on purchases of non-component DRAM or products in which DRAM is a component. Second, the court held that plaintiffs' claims under various states' consumer protection statutes failed, on grounds that the claims were untimely, had procedural deficiencies, or else failed to state a valid claim for relief. See generally JOP Order.

The court granted leave to amend, but only as to three specific state laws – South Dakota, New York, and Rhode Island. See JOP at 62-63. The court stated that any additional amendments would not be permitted without prior leave of court. See id.

On June 28, 2007, plaintiffs filed a first amended complaint with respect to the limited issues upon which the court had granted leave to amend in its order. By way of the instant motion, plaintiffs now seek leave to file a second amended complaint, so that they can include additional amendments in their complaint.[1]

---

[1] Plaintiffs have also concurrently filed: (1) an expert declaration submitted by professors Thomas E. Kauper and Warren S. Grimes, addressing antitrust standing; (2) a request for judicial notice of various orders and decisions issued in other cases, all of which address indirect purchaser standing issues; and (3) a request for leave to file certain documents under seal. Defendants, for their part, have filed objections to the expert declarations. The court hereby: (1) SUSTAINS defendants' objection to the Kauper and Grimes declaration; (2) GRANTS the request for judicial notice; and (3) DENIES the request to file under seal. As stated at the hearing, the parties are furthermore instructed to meet and confer regarding an updated protective order, and shall submit an updated protective order no later than September 17, 2007.

**DISCUSSION**

A.   Legal Standard

Fed. R. Civ. P. 15(a) governs plaintiffs' request for leave to amend, and requires that leave be freely given "when justice so requires." See, e.g., DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 186 (9th Cir.1987)(leave to amend to be granted with "extreme liberality").  Leave to amend is thus ordinarily permitted unless the amendment is futile, would cause undue prejudice to the defendants, or is sought by plaintiffs in bad faith or with a dilatory motive.  Id.; see also Foman v. Davis, 371 U.S. 178, 182 (1962).

B.   Analysis

By way of their motion, plaintiffs primarily seek to overcome the standing deficiencies noted by the court in the JOP order, and which led the court to grant judgment in defendants' favor with respect to plaintiffs' Cartwright Act claims, and several state antitrust claims.  Central to the court's analysis in issuing its decision was the fact that, when analyzing standing pursuant to the factors enumerated by the Supreme Court in Associated General Contractors ("AGC"), plaintiffs had insufficiently alleged either antitrust injury or directness of the injury, among other factors.  See JOP Order at 13-18 (noting plaintiffs' failure to allege their participation in the market for DRAM, or that the prices paid for DRAM were directly traceable or distinguishable); see also Assoc. Gen. Contractors of Cal. v. Cal. State Council of Carpenters, 459 U.S. 519; Am. Ad Mgmt., Inc. v. Gen. Tel. Co., 190 F.3d at 1054-55 (setting forth AGC factors).  Plaintiffs therefore now rely on more than 170 new paragraphs' worth of allegations in their proposed Second Amended Complaint, in order to cure these deficiencies.

Among the new allegations are: further details regarding the specific devices purchased by each named plaintiff; allegations regarding the interrelatedness of the DRAM and computer markets; allegations that the price of DRAM is directly traceable down to the final price paid by plaintiffs; and explanations as to how plaintiffs' damages are also directly traceable.  See, e.g., Proposed SAC, ¶¶ 18-27, 11, 14, 48, 61, 69, 76, 78, 98, 100, 139-40.

3

For the most part, these additional allegations are not strictly "new." Rather, as defendants point out, the additional allegations simply provide new details with respect to plaintiffs' original claims. Nonetheless, the sole issue before the court is whether these allegations provide sufficiently new detail in order to allow them to go forward.

On balance, the court concludes that they do, for plaintiffs' new allegations do, in fact, address the deficiencies noted by the court with respect to antitrust injury and directness of the injury. In particular, by way of new allegations stating that the DRAM market and the personal computer market "are inextricably linked" and "different stages of a single supply chain," plaintiffs essentially allege what is tantamount to a single market theory. See, e.g., Proposed Second Amended Complaint ("SAC") at ¶¶ 75, 98, 139-40. As such, the alleged overlap between and interrelatedness of the DRAM and computer markets could mean that plaintiffs *are* participating in the DRAM market when they purchase DRAM as a component in computers. This, as plaintiffs argue, addresses the court's previous concern that the element of antitrust injury was not satisfied in view of plaintiffs' non-participation in the market for DRAM.

Similarly, plaintiffs now allege that DRAM "can be tracked and identified at any stage of distribution and use," and "follows a traceable physical chain from the Defendants to the OEMs, to the purchasers of computers and of DRAM modules." See SAC at ¶¶ 70, 73. Their allegations also clarify that the putative class is limited to module and computer purchasers only, and details the actual products purchased by each named plaintiff. See id. at ¶¶ 18-27. In the court's view, these allegations address the deficiencies noted in the JOP order with respect to plaintiffs' failure to allege or demonstrate that any injury tied to DRAM is directly traceable to plaintiffs. See, e.g., JOP Order at 17 ("plaintiffs' complaint sets forth no allegations that demonstrate that, within the final purchase price of a given product purchased by plaintiffs for "end use," the ultimate cost of the DRAM component is somehow directly traceable and/or distinguishable).

Defendants point out that, no matter how inextricably linked plaintiffs say the DRAM

4

and computer markets are, this is not the same as being able to demonstrate that the two markets are one, thereby preventing plaintiffs from ever being able to prove their participation in the actual market for DRAM itself. Similarly, even if plaintiffs *have* alleged that DRAM is directly traceable through the chain of supply, it is still not possible for plaintiffs to establish that DRAM prices are directly traceable through the same chain of supply, as required for them to establish direct injury.

While defendants' arguments are compelling, the question at this point is what plaintiffs are able to plausibly allege, not necessarily *prove*. See, e.g., Bell Atlantic Corp. v. Twombly, --- U.S. ---, 127 S. Ct. 1955, 1974 (2007)(plaintiff must allege "enough facts to state a claim to relief that is plausible on its face," not just conceivable). As such, even if plaintiffs cannot ultimately prove that the DRAM market and computer markets are actually analogous to a single market, or that DRAM prices themselves are directly traceable, it is enough that plaintiffs have here alleged as much.

Moreover, while defendants have noted, for example, plaintiffs' failure to cite to case law affirmatively demonstrating that "inextricably linked" markets have been treated as a single market for standing purposes, the court finds it more significant that defendants' have not cited to case law demonstrating that interrelated markets *cannot* be treated analogously to a single market. For without such case law, the court cannot say that as a matter of law, plaintiffs' allegations are clearly futile, and with no possibility of success. See, e g., Trentacosta v. Frontier Pac. Aircraft Indus., Inc., 813 F.2d 1553, 1561 (9th Cir. 1987)(futility standard on motions for leave to amend applies "only if it is *clear* that the complaint could not be saved by any amendment")(emphasis added).

Even if plaintiffs' claim of standing ultimately fails, therefore, in view of the liberal standards applicable to motions for leave to amend, the court finds that plaintiffs have at a minimum demonstrated that their proposed amendments are not clearly futile.

Further support for this conclusion is found by virtue of the fact that the Ninth Circuit itself has taken a liberal stance with respect to permitting leave to amend in order to

establish antitrust standing. Indeed, in at least one prior unpublished opinion, the Ninth Circuit overturned a district court's decision denying leave to amend with respect to antitrust standing, where it found that plaintiffs could have remedied deficiencies highlighted with respect to antitrust injury. Such a holding provides instructive guidance here.

In sum, then, given plaintiffs' additional allegations addressing the court's previously noted deficiencies with respect to two critical AGC factors – antitrust injury and directness of the injury – as well as the lack of any legal authority expressly prohibiting a finding of antitrust standing based on similar allegations, the court finds that plaintiffs have sufficiently established their entitlement to amend their complaint.

C. Conclusion

Accordingly, plaintiffs' motion for leave to file a second amended complaint is hereby GRANTED. The proposed second amended class action complaint shall immediately be filed in the public record. Defendants shall have 30 days from the date of this order – or until September 17, 2007 – to respond.

**IT IS SO ORDERED.**

Dated: August 17, 2007

_____
PHYLLIS J. HAMILTON
United States District Judge