1  KAYE SCHOLER LLP
   Aton Arbisser, Bar Number 150496
2  Julian Brew, Bar Number 150615
   Joshua Stambaugh, Bar Number 233834
3  1999 Avenue of the Stars, Suite 1700
   Los Angeles, California  90067
4  Telephone:  (310) 788-1000
   Facsimile:  (310) 788-1200
5
6  Attorneys for Defendants Infineon Technologies
   North America Corp. and Infineon Technologies
7  AG.

8  [Counsel for other Defendants appear on signature page]

9

10                  UNITED STATES DISTRICT COURT

11                NORTHERN DISTRICT OF CALIFORNIA

12  **In Re DRAM ANTITRUST LITIGATION**        Master File No. M-02-1486 PJH

13                                             MDL. No. 1486

14                                             Case No. C-05-02472

15  _____        [REDACTED VERSION]

16  This Document Relates to:                  Date:   January 16, 2008
                                               Time:   9:00 a.m.
17  *Petro Computer Systems, Inc., et al. v. Micron*   Place:  Courtroom
                                               Judge:  Honorable Phyllis J. Hamilton
18  *Technology, Inc., et al.*

19

20

21

22                   **DEFENDANTS' OPPOSITION**

23       **TO INDIRECT PURCHASER PLAINTIFFS' MOTION**

24                 **FOR CLASS CERTIFICATION**

25

26

27

28

KAYE SCHOLER LLP

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ................................................................................................... 1

II.   STATEMENT OF FACTS ..................................................................................... 2

      A.    Proposed Class Representatives.................................................................. 2

      B.    Defendants And The Distribution Of DRAM........................................... 3

III.  ARGUMENT .......................................................................................................... 4

      A.    Plaintiffs Cannot Show That Common Issues Predominate. ................... 6

            1.    Choice Of Law Is An Individual Issue That Precludes Class
                  Certification. ................................................................................... 6

                  a.    The Due Process And Full Faith And Credit Clauses Prohibit
                        Application Of California Law To Claims With No Connection
                        To California. ........................................................................ 7

                  b.    California Choice Of Law Rules Prohibit Extraterritorial
                        Application Of California Law To Plaintiffs' Claims. ................. 10

                        (1)    Conflicts Between The Antitrust Laws Of The Various
                               States And Those States' Interests In Applying Their
                               Laws To Their Residents' Claims Preclude Applying
                               The Cartwright Act To All Class Members. ..................... 12

                        (2)    Conflicts Between The Consumer Protection Laws Of
                               The Various States And Those States' Interests In
                               Applying Their Laws To Their Residents' Claims
                               Preclude Applying California's Consumer Protection
                               Laws To All Class Members.............................................. 14

                        (3)    Conflicts Between The Unjust Enrichment Laws Of
                               The Various States And Those States' Interests In
                               Applying Their Laws To Their Residents' Claims
                               Preclude Applying California's Unjust Enrichment
                               Laws To All Class Members.............................................. 16

                  c.    Plaintiffs Cite No Precedent Supporting Their Request To
                        Certify A Nationwide Class Of Indirect Purchasers Under
                        California Law. ..................................................................... 18

            2.    Fact Of Injury Is An Individual Issue That Precludes Class
                  Certification. ................................................................................... 18

                  a.    There Is No Presumption Of Injury In This Case. ...................... 19

                  b.    Plaintiffs Cannot Show Pass-on On A Classwide Basis............... 20

                  c.    Plaintiffs' Regression Analysis Cannot Prove Classwide
                        Impact. ................................................................................ 23

i

Page

d.  Episodic Price Communications Targeted At Specific OEMs
With Varying Effectiveness Do Not Provide Common Proof
Of Injury........................................................................................ 25

3.  There Are Additional Individualized Issues of Proof. ............................ 27

B.  A Class Should Not Be Certified Because Proposed Class Members Are
Not Readily Identifiable........................................................................... 28

C.  Plaintiffs Cannot Show That The Class Representatives Are Typical. ................ 29

1.  No Proposed Class Representative Is Typical Of Computer
Manufacturers, Distributors and Retailers. ................................................ 29

2.  There Is No Representative Of Residents Of Maine Or Tennessee.......... 29

D.  Plaintiffs Are Not Adequate Representatives Of The Class Because Of
Conflicts Among Class Members On The Pass-on Issue. .................................. 30

E.  Plaintiffs Have Not Demonstrated Superiority. ..................................................... 32

1.  Plaintiffs' Counsel Have Argued These Claims Should Be Adjudicated
In State Court. .................................................................................... 32

2.  The Proposed Class Presents Significant Manageability Issues. .............. 33

F.  Plaintiffs Have Not Shown That An Injunctive Relief Class Is Appropriate. ...... 34

IV.  CONCLUSION............................................................................................ 35

# TABLE OF AUTHORITIES

Page(s)

## CASES

*A&M Supply Co. v. Microsoft Corp.*,
2002 Mich. App. LEXIS 1247 (Aug. 27, 2002) ................................................ 19

*Acosta v. Trans Union, LLC*,
240 F.R.D. 564 (C.D. Cal. 2007) ................................................................. 30

*In re Activision Securities Litigation*,
621 F. Supp. 415 (N.D. Cal. 1985) ............................................................... 15

*In re Adobe Systems, Inc. Securities Litigation*,
139 F.R.D. 150 (N.D. Cal. 1991) ................................................................. 30

*In re Agricultural Chems. Antitrust Litig.*,
1995-2 Trade Cas. (CCH) P71 (N.D. Fla. 1995) .............................................. 5

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ...................................................................... 5, 8, 18

*Andrews v. American Tel. & Tel. Co.*,
95 F.3d 1014 (11th Cir. 1996) ...................................................................... 6

*Arabian v. Sony Electronics Inc.*,
2007 U.S. Dist. LEXIS 12715 (S.D. Cal. February 22, 2007) .......................... 6, 11

*Arno v. Club Med, Inc.*,
22 F.3d 1464 (9th Cir. 1994) ................................................................. 10, 16

*Ashley v. Archer Daniels Midland Co.*,
No. CV 95-336-R (Ala. Cir. Ct., DeKalb Co., Mar. 13, 1998) ........................... 19

*BWI Custom Kitchen v. Owens-Illinois, Inc.*,
191 Cal. App. 3d 1341 (1987) ................................................... 19, 20, 27, 34

*In re Baycol Prods. Litig.*,
218 F.R.D. 197 (D. Minn. 2003) ................................................................. 16

*Bell Atl. Corp. v. AT&T Corp.*,
339 F.3d 294 (5th Cir. 2003) ...................................................................... 18

*Berghausen v. Microsoft Corp.*,
765 N.E. 2d 592 (Ind. App. 2002) ....................................................... 12, 17, 18

*Betts v. Reliable Collection Agency, Ltd.*,
659 F.2d 1000 (9th Cir. 1981) .................................................................... 29

*Blackie v. Barrack*,
524 F.2d 891 (9th Cir. 1975) ....................................................................... 5

i

*Blades v. Monsanto,*
    400 F.3d 562, 566 (8th Cir. 2005) ...............................................................................18, 26

*Borden, Inc. v. Universal Indus. Corp.,*
    88 F.R.D. 708 (N.D. Miss. 1981) ..........................................................................................19

*In re Brand Name Prescription Drugs Antitrust Litig. (Price v. American Home Prods.),*
    1994 WL 663590 (N.D. Ill. Nov. 18, 1994) ..........................................................................19

*In re Bridgestone/Firestone Tires Prods. Liab. Litig.,*
    288 F.3d 1012 (7th Cir. 2002) .........................................................................................6, 14

*Brooke Group v. Brown & Williamson Tobacco Corp.,*
    509 U.S. 209 (1993).................................................................................................................5

*Californians for Disability Rights v. Mervyn's, LLC,*
    39 Cal. 4th 223 (Cal. 2006)............................................................................................14, 15

*Camp v. Ford Motor Co.,*
    537 F. Supp. 636 (C.D. Cal. 1982) ........................................................................................10

*Churchill Village, L.L.C. v. General Elec. Co.,*
    169 F. Supp. 2d 1119 (N.D. Cal. 2000)............................................................................7, 11

*In re Cipro Cases I & II,*
    121 Cal. App. 4th 402 (2004) ........................................................................................19, 20

*City of St. Paul v. FMC Corp.,*
    1990-2 Trade Cas. (CCH) P69, 1990 WL 259683 (D. Minn. Nov. 4, 1990) ..........................19

*Clay v. Am. Tobacco Co.,*
    188 F.R.D. 483 (S.D. Ill. 1999) .....................................................................................16, 17

*Clothesrigger, Inc. v. GTE Corp.,*
    191 Cal. App. 3d 605 (1987) .................................................................................................18

*In re Copper Antitrust Litig.,*
    196 F.R.D. 348 (W.D. Wis. 2000).........................................................................................28

*Crosby v. Social Security Administration,*
    796 F.2d 576 (1st Cir. 1986)....................................................................................................4

*In re Currency Conversion Fee Antitrust Litig.,*
    230 F.R.D. 303 (S.D.N.Y. 2004), *modified on other grounds*.................................................16

*In re DRAM Antitrust Litig.,*
    2006 U.S. Dist. LEXIS 8977 (N.D. Cal., March 1, 2006)......................................................27

*In re DRAM Antitrust Litig.,*
    2006 U.S. Dist. LEXIS 39841 (N.D. Cal., June 5, 2006) .........................................................5

*DeBremaecker v. Short,*
    433 F.2d 733 (5th Cir. 1970) ...................................................................................................4

*Derzon v. Appleton Papers,*
    No. 96-CV-3678, 1998 WL 1031504 (Wis. Cir. Ct., July 7, 1998) ..................................19, 31

KAYE SCHOLER LLP

ii

*Diamond Multimedia Sys., Inc. v. Sup. Ct.,*
  19 Cal. 4th 1036 (1999) ...................................................................................11

*Dukes v. Wal-Mart, Inc.,*
  474 F.3d 1214 (9th Cir. 2007) ...........................................................................4

*Dumas v. Albers Medical, Inc.,*
  2005 U.S. Dist. LEXIS 33482 (W.D. Mo. 2005) ...............................................28

*Durden v. Abbott Labs.,*
  No. CV 93-663 (Ala. Cir. Ct., Calhoun Co., Jan. 16, 1996) .............................19

*Edgar v. MITE Corp.,*
  457 U.S. 624 (1982) .....................................................................................10, 13

*Execu-Tech Business Sys., Inc. v. Appleton Papers, Inc.,*
  743 So. 2d 19 (Wis. Cir. Ct., July 7, 1998) ......................................................19

*Fischenich v. Abbott Labs.,*
  No. MC-94-6868 (Minn. Dist. Ct., Hennepin Co., May 26, 1995) ...................19

*Fish v. Microsoft Corp.,*
  Case No. 00-031126-NZ (Mich. Cir. Ct., Wayne Co., Apr. 8, 2004) ...............33

*Freeman v. Eastman Chemical,*
  172 S.W.3d 512 (Tenn. 2005) ..........................................................................17

*Gen. Tel. Co. of the Southwest v. Falcon,*
  457 U.S. 147 (1982) .....................................................................................5, 26

*Global Mineral & Metals Corp. v. Sup. Ct.,*
  113 Cal. App. 4th 836 (2003) ....................................................................5, 20, 27

*Godden v. Marigold Foods, Inc.,*
  No. C8-97-932 (Minn. Dist. Ct., Ramsey Co., Mar. 20, 2000) ........................33

*Grovatt v. St. Jude Med. Inc.,*
  425 F.3d 1116 (8th Cir. 2005) ..........................................................................14

*Hanlon v. Chrysler Corp.,*
  150 F.3d 1011, 1022 (9th Cir. 1998) ..................................................................7

*Harbin v. Johnson & Johnson Vision Prods.,*
  No. CV 94-2872 (Ala. Cir. Ct., Mobile Co., Sept. 12, 1995) ...........................19

*Healy v. The Beer Inst.,*
  491 U.S. 324 (1989) .........................................................................................10

*Howe v. Diversified Builders, Inc.,*
  262 Cal. App. 2d 741 (1968) .......................................................................11, 16

*Illinois Brick Co. v. Illinois,*
  431 U.S. 720 (1977) ...............................................................................13, 17, 18

KAYE SCHOLER LLP

iii

*J.P. Morgan & Co., Inc. v. Sup. Ct.,*
    113 Cal. App. 4th 195 (2003) ..........................................................8, 9, 27

*Johnson v. Microsoft Corp.,*
    834 N.E.2d 791 (Ohio 2005) ......................................................................16

*Karofsky v. Abbott Labs.,*
    1997 Me. Super. LEXIS (Oct. 15, 1997) ...................................................19

*Kearney v. Salomon Smith Barney, Inc.,*
    39 Cal. 4th 95 (2006) .................................................................................13

*Keating v. Philip Morris, Inc.,*
    417 N.W.2d 132 (Minn. Ct. App. 1987) ....................................................19

*Kerr v. Abbott Labs.,*
    1997-1 Trade Cas. (CCH) P71, 1997 WL 314419 .....................................19

*Lantz v. Am. Honda Motor Co.,*
    2007 U.S. Dist. LEXIS 34948, 2007); . Ill. 2007 .....................................14

*Ledesma v. Jack Stewart Produce,*
    816 F.2d 842 (9th Cir. 1987) .....................................................................10

*Lerwill v. Inflight Motion Pictures, Inc.,*
    582 F.2d 507 (9th Cir. 1978) .....................................................................30

*Lozano v. AT&T Wireless Services, Inc.,*
    2007 DJDAR 14749 (9th Cir. Sept. 20, 2007).........................................34

*Ludke v. Philip Morris, Inc.,*
    No. MC 00-1954, 2001 WL 1673791 .........................................................33

*McCarter v. Abbott Labs.,*
    No. CV 91-050 (Ala Cir. Ct., Shelby Co., Apr. 9, 1993) ..........................19

*McGhee v. Arabian American Oil Co.,*
    871 F.2d 1412 (9th Cir. 1989) ...................................................................10

*Melnick v. Microsoft Corp.,*
    No. CV-99-709, CV-99-752 .......................................................................19

*Mendoza v. Zickle Fruit Co.,*
    222 F.R.D. 439 (E.D. Wa. 2004) ...............................................................30

*In re Methionine Antitrust Litig.,*
    No. 00-1311, 2003 WL 22048232 (N.D. Cal. Aug. 26, 2003) ...................33

*In re Methionine Antitrust Litigation,*
    204 F.R.D. 161 (N.D. Cal. 2001)...............................................................31

*In re Microsoft Corp. Antitrust Litig.,*
    401 F. Supp. 2d 461 (D. Md. 2005)................................................16, 17, 18

*Minuteman, LLC v. Microsoft Corp.,*
    795 A.2d 833 (N.H. 2002) ..........................................................................12

KAYE SCHOLER LLP

*Molski v. Gleich,*
   318 F.3d 937 (9th Cir. 2003) ...................................................................34

*In re Multidistrict Vehicle Air Pollution,*
   538 F.2d 231 (9th Cir. 1976) ..................................................................34

*In re New Motor Vehicles Canadian Export Antitrust Litig.,*
   350 F. Supp. 2d 160 (D. Me. 2004) ........................................................17

*In re New Motor Vehicles Canadian Export Antitrust Litig. ("NMV II"),*
   235 F.R.D. 127 (D. Me. 2006) .................................................................30

*North Alaska Salmon Co. v. Pillsbury,*
   174 Cal. 1 (1916) ...................................................................................11

*Norwest Mortgage, Inc. v. Sup. Ct.,*
   72 Cal. App. 4th 214 (1999) ........................................................7, 8, 11, 15

*In re OSB Antitrust Litigation,*
   Case No. 06-826 (E.D. Pa. August 3, 2007) ...........................................19

*Offshore Rental Co. v. Continental Oil Co.,*
   22 Cal.3d 157 (Cal. 1978) ...............................................................11, 13

*Paul v. Intel,*
   476 F. Supp. 2d 452 (D. Del. 2007) ........................................................27

*In re Paxil Litig.,*
   218 F.R.D. 242 (C.D. Cal. 2003) ............................................................34

*People v. One 1953 Ford Victoria,*
   48 Cal. 2d 595 (1957) .............................................................................11

*Peridot, Inc. v. Kimberly-Clark Corp.,*
   No. MC 98-012686, 2000 WL 673933 ....................................................28

*Pfizer v. Sup. Ct.,*
   141 Cal. App. 4th 290 .............................................................................14

*In re Phenylpropanolamine (PPA) Products Liability Litig.,*
   214 F.R.D. 614 (W.D. Wash. 2003) ........................................................28

*Phillips Petroleum Co. v. Shutts,*
   472 U.S. 797 (1985) ....................................................................6, 7, 8, 9

*In re Pizza Time Theatre Litig.,*
   112 F.R.D. 15 (N.D. Cal. 1986) ......................................................8, 17, 18

*Poulos v. Caesar's World Inc.,*
   379 F.3d 654 (9th Cir. 2004) ....................................................................6

*Ren v. Philip Morris, Inc.,*
   No. 00-004035-CZ, 2002 WL 1839983 ...................................................33

KAYE SCHOLER LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

v

*Roberts v. Helm,*
  670 F. Supp. 1466 (N.D. Cal. 1987), *aff'd in part, rev'd in part on other grounds* ....................8

*Roberts v. Peat, Marwick, Mitchell & Co.,*
  857 F.2d 646 (9th Cir. 1988) ........................................................................................8

*Rodriguez v. Gates,*
  2002 U.S. Dist. LEXIS 10654 (C.D. Cal. 2002) ..............................................................4

*Rosack v. Volvo of Am. Corp.,*
  131 Cal. App. 3d 741 (1982) ........................................................................................19

*In re Seagate Technologies Sec. Litigation,*
  115 F.R.D. 264 (N.D. Cal. 1987) ..................................................................................8

*Serv. Employees Intern. Union Health & Welfare Fund v. Philip Morris Inc.,*
  249 F.3d 1068 (D.C. Cir. 2001) ....................................................................................17

*Simer v. Rios,*
  661 F.2d 655 (7th Cir. 1981) ........................................................................................4

*Southard v. Visa U.S.A., Inc.,*
  734 N.W.2d 192 (Iowa 2007) ........................................................................................17

*Spence v. Glock,*
  227 F.3d 308 (5th Cir. 2000) ........................................................................................6

*Sperry v. Crompton Corp.,*
  863 N.E.2d 1012 (N.Y. 2007) ........................................................................................17

*In re St. Jude Medical, Inc., Silzone Heart Valve Prod. Liab. Litig.,*
  425 F.3d 1116 (8th Cir. 2005) ........................................................................................6

*Standfacts Credit Services, Inc. v. Experian Information Solutions, Inc.,*
  405 F. Supp. 2d 1141 (C.D. Cal. 2005) ........................................................................8

*Standfast Credit Services, Inc. v. Experian Info. Solutions, Inc.,*
  405 F. Supp. 2d 1141 (C.D. Cal. 2005) ........................................................................15

*Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.,*
  171 F.3d 912 (3d Cir. 1999) ........................................................................................17

*Sugai Products v. Kona Kai Farms,*
  No. 97-00043.SPK, 1997 WL 824022 (D. Haw., November 19, 1997) ..........................31

*Szabo v. Bridgeport Machs., Inc.,*
  249 F.3d 672 (7th Cir. 2001) ........................................................................................5

*In re Terazosin Hydrochloride Antitrust Litig.,*
  160 F. Supp. 2d 1365 (S.D. Fla. 2001) ..........................................................................17

*Tidwell v. Thor Industries,*
  2007 U.S. Dist. LEXIS 21819 (S.D. Cal., March 26, 2007) ..........................................14

*United Egg Producers v. Bauer Intern. Corp.,*
  312 F. Supp. 319 (S.D.N.Y. 1970) ................................................................................31

KAYE SCHOLER LLP

vi

*United Phosphorus, Ltd. v. Angus Chem. Co.,*
   131 F. Supp. 2d 1003 (N.D. Ill. 2001), *aff'd* 322 F.3d 942 (7th Cir.)..................................27

*Valentino v. Carter-Wallace, Inc.,*
   97 F.3d 1227 (9th Cir. 1996) ...........................................................................................33

*In re Vitamins Antitrust Litig.,*
   259 F. Supp. 2d at 8-9.....................................................................................................27

*Washington Mutual Bank, FA v. Sup. Ct.,*
   24 Cal. 4th 906 (2001) ..............................................................................................6, 10

*Weisfield v. Sun Chem. Corp,*
   210 F.R.D. 136 (D.N.J. 2002), *aff'd* 84 F.3d.Appx. 257 (3d Cir. 2004).....................5, 18

*Weisgram v. Marley Co.,*
   528 U.S. 440 (2000) .........................................................................................................5

*Wershba v. Apple Computer, Inc.,*
   91 Cal. App. 4th 224 (2001) .................................................................................15, 17, 18

*Wilcox v. Archer-Daniels- Midland Co.,*
   No. 96-82473-CP (Mich. Cir. Ct., Ingham Co., Sept. 29, 1997) .....................................19

*Wood v. Abbott Labs.,*
   1997-2 Trade Cas. (CCH) P72, 1997 WL 824019 .........................................................19

*In re Worlds of Wonder Sec. Litig.,*
   1990 WL 61951 ...............................................................................................................8

*Zinser v. Accufix Research Inst., Inc.,*
   253 F.3d 1180 *amended,* 273 F.3d 1266 (9th Cir. 2001)......................................4, 6, 33

**STATUTES**

15 U.S.C. § 6a, Foreign Trade Antitrust Improvements Act ......................................................27

28 U.S.C. § 2283 ....................................................................................................................32

Ala. Code § 6-5-60 .................................................................................................................12

Alaska Stat. §§ 45.50.471(a), 45.50.501(a) .............................................................................12

Ark. Stat. Ann. § 4-88-104......................................................................................................12

Cal. Bus. & Prof. Code § 16720 ..............................................................................................11

Conn. Gen. Stat. §§ 42-110b, 42-110m ...................................................................................12

Fla. Stat. §§ 501.207, 501.213 ................................................................................................12

Haw. Rev. Stat. §§ 480-3, 480-14 ...........................................................................................12

Idaho Code § 48-108(2) ..........................................................................................................12

KAYE SCHOLER LLP

Page

La. Rev. Stat. Ann. §§ 51:128, 51-137, 51:1407, 1408 .................................................12

Mich. Comp. Laws Ann. § 445.778(2) ...........................................................................12

N.Y. Gen. Bus. Law § 340(6) .........................................................................................12

Ohio Rev. Code Ann. § 1331.01(B)(5); 15 Okl. Stat. § 756.1(c)(2);
    ORS §§ 646.775, 646.780........................................................................................12

Ohio Rev. Code Ann. § 1331.01(B)(5); 15 Okl. Stat. § 756.1(c)(2);
    S.C. Code Ann. § 39-5-50.........................................................................................12

R.I. Gen. Laws. § 6-36-12(g) .........................................................................................12

S.C. Code Ann. § 39-5-50 ..............................................................................................12

Utah Code Ann. § 76-10-918 ..........................................................................................12

Va. Code Ann. §§ 59.1-9.12, 59.1-9.15, 59.1-9.17.......................................................12

W. Va. Code § 46A-6-102 ..............................................................................................12

KAYE SCHOLER LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Defendants submit this brief in opposition to the Indirect Purchaser Plaintiffs' Motion for Class Certification (hereinafter, "Pls. Mot.").

## I.    INTRODUCTION

Plaintiffs repeatedly argue that having certified a direct purchaser class, this Court should certify an indirect purchaser class. But unlike direct purchaser classes, which are routinely certified, indirect purchaser classes are routinely *denied* certification. The contrast between the direct purchaser class and the proposed indirect purchaser class here could not be starker:

- Unlike direct purchasers, all of whom sought damages under the Clayton Act, indirect purchasers must sue under various state laws. While Plaintiffs purport to sue under California law on behalf of persons in all 50 states, Plaintiffs cite no case -- and Defendants know of none -- in which a nationwide indirect purchaser class was litigated under the antitrust laws of one state. Due process and choice of law rules, which require an individualized analysis, do not permit this Court to apply California law to all class members' claims.

- Unlike direct purchasers who would suffer injury from paying any overcharges from a marketwide price fixing conspiracy, indirect purchasers may not suffer injury from such a scheme. Putative class members here suffered injury only if the alleged overcharges were "passed on" by each of the intermediate resellers -- module manufacturers, computer manufacturers, wholesalers, distributors, and retailers -- which cannot be shown by common proof on a classwide basis.

- Unlike direct class members who are readily identifiable from their own and Defendants' records, members of the indirect class – defined to include only purchasers of *Defendants'* DRAM – are not readily identifiable. Most consumers and businesses do not have the computers or modules they purchased during the class period -- five to eight years ago -- and there are no records documenting whose DRAM was in the computer or module they purchased. There is no way to know who is and is not in the proposed indirect purchaser class.

1

KAYE SCHOLER LLP

- Unlike direct purchasers, all of whom shared an interest in proving they paid any alleged overcharge, indirect purchasers have an irreconcilable conflict regarding whether overcharges were passed on. Resellers of DRAM or sellers of products containing DRAM have an interest in showing they absorbed overcharges. End users have a diametrically opposing interest in showing overcharges were passed on to them. A single class cannot represent these conflicting interests.

For these reasons and many more set forth below, class certification should be denied.

## II.    STATEMENT OF FACTS[1]

### A.    Proposed Class Representatives.

Plaintiffs do not describe their nine class representatives -- and with good reason. The nine representatives highlight the problems with certifying an indirect purchaser class. They generally cannot identify who made the DRAM they purchased.[2] Often, they had no documentation of their purchases[3] and generally no longer have the computers or DRAM they purchased during the class period. (*E.g.*, Petro Depo. at 69). The representatives also made their purchases at various times during and after the class period, including during 2001 (when the alleged conspiracy was ineffective in raising prices) and after June 2002 (when the alleged conspiracy ended).[4]

---

[1]    All deposition excerpts (and attached deposition exhibits), lettered exhibits, and declarations in support of the Defendants' Opposition are attached to the Declaration of Aton Arbisser, except the Declaration of Defendants' expert Margaret E. Guerin-Calvert ("Calvert Report"), which is being submitted separately. All numbered exhibits are attached to the Declaration of Daniel Mogin filed in support of Plaintiffs' Motion.

[2]    11/09/06 Deposition of Heather Delaney ("Delaney Depo.") at 76-78 (knows one module was made by Hynix, but could be module purchased outside of class period); 03/02/07 Deposition of Dale Dickman ("Dickman Depo.") at 56-57; 09/28/06 Deposition of Michael Cox ("G.C.A. Depo.") at 79-90; *See* Exh. DD at ¶¶ D, E; 09/12/06 Deposition of Naomi Joy Lohnes ("JJ Depo.") at 52-53; 10/17/06 Deposition of Michael Juetten ("Juetten Depo.") at 36; 06/19/07 Deposition of Gary Petersen ("Petersen Depo.") at 87-89, 92 (knows he bought some DRAM manufactured by Micron and Samsung, but he does not know who manufactured most of the DRAM that he purchased); 07/19/07 Deposition of James Campbell ("Petro Depo.") at 64-65; 11/09/06 Deposition of Ben Stewart ("Stewart Depo.") at 83-84; 10/16/06 Deposition of Pamela Uglem ("Uglem Depo.") at 36-37, 49-50, 52-53.

[3]    *See, e.g.,* Delaney Depo. at 69-70; Uglem Depo. at 16-17, 50, 53.

[4]    *See, e.g.,* Delaney Depo. at 79-82 (purchased DRAM module in September 2002); JJ00001, JJ00005-00008 (purchases in 2001); Petersen Depo. at 13-15; Stewart Depo. at 50 (purchase in Summer 2003); Uglem Depo. at 51 (purchase in July 2002).

2

The class representatives generally did not know how much they paid for DRAM, particularly when it was merely part of a computer they purchased, and none had evidence that any of the intermediaries between them and the Defendants passed on any overcharges.[5] The two class representatives who were resellers generally resold the DRAM or computers they bought, sometimes with a percentage markup, and neither could describe any injury from alleged overcharges on DRAM. (*See* Petersen Depo. at 39-40, 130, 135-36; Petro Depo. at 39, 75-81, 95.)

At the same time, Plaintiffs have not proposed class representatives for huge portions of the proposed class. None of the class representatives is an original equipment manufacturer ("OEM"), computer distributor, or retailer. None is a resident of Maine, Tennessee, or dozens of other states where putative class members live. Several are not California residents and made their purchases outside of California.[6]

**B.      Defendants And The Distribution Of DRAM.**

Some of the Defendants entered guilty pleas stating that they engaged in episodic communications with competitors regarding the DRAM prices they charged to six specific OEMs "during certain periods of time" from April 1999 through June 2002, with "varying levels of effectiveness" in raising those prices. (*See* Exhs. 9-12.) Defendants manufactured as little as 70% of the DRAM sold in the U.S. during that period, with the rest made by a large number of other manufacturers. (Calvert Report ¶¶ 51-54.)

---

[5]   Delaney Depo. at 73-74, 79-80 (she has no documentation but believes the DRAM cost about $200); Dickman Depo. at 34-39 (best friend's brother ordered the computers, does not know how DRAM included in the computer was priced, and has no breakdown of cost); G.C.A. Depo. at 93-94; G.C.A. Stipulation at ¶ F; JJ Depo. at 47; Jutten Depo. at 33; Petersen Depo. at 135-36; Petro Depo. at 64-65; Stewart Depo. at 42; Uglem Depo. at 43.

[6]   Heather Delaney lives in New York and bought an Apple computer at the NYU bookstore and one DRAM module from "Mac Warehouse." Delaney Depo. at 70-73, 79-82, 105, 109. "Mac Warehouse" is operated by CDW Corporation, an Illinois Corporation based in Illinois. (*See* Exh. EE) Dale Dickman is a resident of Texas who acquired two Dell desktop computers. Dickman Depo. at 29-37. Ben Stewart is a New York resident who bought an Apple laptop from the "Mac Warehouse" website. Stewart Depo. at 9, 40-42, 51-52. Pamela Uglem is a Minnesota resident who believes she bought three computers from local retailers during the class period, but she only has a receipt for one of them. Uglem Depo. at 16-17.

1    While some of the Defendants had U.S. headquarters in California during the class period,

2  several had no offices or employees in California, and those who had offices in California

3  maintained offices and employees in other states to handle sales to some of their largest accounts,

4  including five of the six OEMs named in the pleas. (*See, e.g.*, Defendants' Declarations, Exh. M at

5  ¶¶ 3, 7-8; Exh. N at ¶¶ 5-7; Exh. O at ¶ 3; Exh. P at ¶¶ 7-9; Exh. Q at ¶¶ 4-7; Exh. R at ¶¶ 4-5.)

6  Pricing decisions generally were not made in California. (*See, e.g.*, Exh. M at ¶¶ 6, 9; Exh. N at

7  ¶¶ 4, 6; Exh. O at ¶¶ 3-4; Exh. P at ¶¶ 5-6; Exh. R at ¶ 15.)  Moreover, with one exception,

8  Defendants had no manufacturing facilities in California, and all of the Defendants' production and

9  output decisions were made outside California. (*See* Exh. M at ¶ 4; Exh. N at ¶ 3; Exh. O at ¶ 5;

10  Exh. P at ¶¶ 4-5; Exh. Q at ¶ 4; Exh. R at ¶ 3.)

11    Defendants generally sold their DRAM directly to OEMs or to module makers.  The module

12  makers then resold DRAM to OEMs, distributors, retailers, and end users.  The OEMs, in turn, sold

13  computers to distributors, retailers, and to end users.  Additional layers of distribution included

14  brokers, consultants and resellers of various kinds.  (Calvert Report at ¶¶ 28-34.)

## III.    ARGUMENT

16    Plaintiffs bear the burden of meeting each of the requirements of Rule 23(a) – numerosity,

17  common issues, typicality, and adequacy of representation – along with at least one requirement of

18  Rule 23(b). *See Dukes v. Wal-Mart, Inc.*, 474 F.3d 1214 (9th Cir. 2007); *Zinser v. Accufix Research

19  Inst., Inc.*, 253 F.3d 1180, 1186, *amended,* 273 F.3d 1266 (9th Cir. 2001).  For monetary relief,

20  plaintiffs must meet the requirements of Rule 23(b)(3), including proof that common issues

21  predominate and that the proposed class is superior to alternative means of adjudicating the

22  controversy.  In addition, the class must be sufficiently well defined that potential members and the

23  court readily can ascertain who is and is not in the class.[7]  A court must deny certification if any of

[7] *See Crosby v. Social Security Administration*, 796 F.2d 576, 580 (1st Cir. 1986) (class certification denied because identifying putative members posed an "insurmountable difficulty"); *Simer v. Rios*, 661 F.2d 655, 670 (7th Cir. 1981) ("Identification of the class [in the context of certification]. . . alerts the court and parties to the burdens that such a process might entail.  In this way the court can decide whether the class device simply would be an inefficient way of trying the lawsuit . . . Second, identifying the class insures that those actually harmed by defendants' wrongful conduct will be the recipients of the relief eventually provided."); *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970) ("It is
(continued...)

4

the requirements of Rule 23 is not met. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 622 (1997).

Rule 23 requires the Court to conduct a "rigorous analysis" and "probe behind the pleadings" to determine whether class treatment is appropriate. *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 160-61 (1982). As this Court has held, matters beyond the pleadings may be considered "to ascertain whether the asserted claims or defenses are susceptible of resolution on a class wide basis." *In re DRAM Antitrust Litig.*, 2006 U.S. Dist. LEXIS 39841, *27 (N.D. Cal., June 5, 2006). Nothing in Rule 23 requires the Court to accept as true the allegations of the complaint. *See, e.g., Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 675 (7th Cir. 2001) ("The proposition that a district judge must accept all of the complaint's allegations when deciding whether to certify a class cannot be found in Rule 23 and has nothing to recommend it.")[8]

Similarly, the opinions of plaintiffs' expert are not "facts" and, when unsupported by evidence, cannot establish the requirements of Rule 23. As the Supreme Court explained: "Expert testimony is useful as a guide to interpreting market facts, but it is not a substitute for them." *Brooke Group v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993). Expert testimony is of no value when it "is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable." *Weisgram v. Marley Co.*, 528 U.S. 440, 454 (2000) (quoting *Brooke Group*). Courts regularly deny class certification in antitrust cases where the plaintiffs rely on factually unsupported economic experts.[9]

---

elementary that in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable."); *Rodriguez v. Gates*, 2002 U.S. Dist. LEXIS 10654 (C.D. Cal. 2002) ("Requiring an objectively ascertainable class is important because without one, it will be unclear who is bound by the judgment and who has standing to enforce any resulting injunction against the defendant."); 5 Moore's Federal Practice, 23.21 [1], at 23-48 ("A class action is possible only when the class definition provides a court with tangible and practicable standards for determining who is and who is not a member of the class.").

[8]   To the extent that *Blackie v. Barrack*, 524 F.2d 891, 901 n.17 (9th Cir. 1975) (quoted in Plaintiffs' Motion for Class Certification ("Pls. Mot.") at 3 n.9) suggests that the allegations of the complaint must be accepted as true, it is no longer good law.

[9]   *See, e.g, Weisfeld v. Sun Chem. Corp.*, 84 Fed. Appx. 257, 262 (3rd Cir. 2004) (affirming denial of class certification); *In re Agricultural Chems. Antitrust Litig.*, 1995-2 Trade Cas. (CCH) P71, 197 (N.D. Fla. 1995) (denying class certification); *Global Minerals & Metals Corp. v. Sup. Ct.*, 113 Cal. App. 4th 836, 856-57 (2003) (vacating class certification).

A.    **Plaintiffs Cannot Show That Common Issues Predominate.**

To win certification under Rule 23(b)(3), Plaintiffs must demonstrate that issues subject to common, class-wide proof will predominate over issues that involve individualized proof. *Poulos v. Caesar's World Inc.*, 379 F.3d 654, 664 (9th Cir. 2004). Here, choice of law, impact of injury, liability, and various defenses will require individual proof for each class member.

1.    **Choice Of Law Is An Individual Issue That Precludes Class Certification.**

Plaintiffs seek to avoid individual issues arising from application of different states' laws to the claims by taking the unprecedented step of applying California law to claims by indirect purchasers in all fifty states, regardless of their individual circumstances. No court has ever certified an indirect purchaser class for litigation purposes under the antitrust laws of a single state.

Due Process requires that choice of law determinations be made for each class member, limits the application of one states' laws to other states' residents and prohibits use of a single state's laws in a multistate class merely to avoid individual issues. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985). This Court must then apply a "governmental interest" approach to decide which law to apply to each claim by each class member. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1187 (9th Cir. 2001) (*citing Wash. Mut. Bank v. Sup. Ct.*, 24 Cal. 4th 906 (2001). As shown below, there are substantial conflicts among the antitrust, consumer protection and unjust enrichment laws of the various states, and each state has an interest in applying its own law to claims of its residents. This Court would have to determine class member by class member "the law of the state whose interests would be 'most impaired' if its law were not applied." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1187 (9th Cir. 2001). Given these challenges, courts routinely refuse to certify nationwide classes relying on state law because of individual choice of law issues for each class member. *See, e.g., id.* at 1189 (holding that differences in state law "compound the disparities among class members from the different states").[10]

---

[10]    *See also In re St. Jude Medical, Inc., Silzone Heart Valve Prod. Liab. Litig.*, 425 F.3d 1116 (8th Cir. 2005); *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1018 (7th Cir. 2002); *Spence v. Glock*, 227 F.3d 308, 316 (5th Cir. 2000); *Andrews v. American Tel. & Tel. Co.*, 95 F.3d 1014, 1024-25 (11th Cir. 1996); *Arabian v. Sony Electronics Inc.*, 2007 U.S. Dist.

(continued...)

6

a.   **The Due Process And Full Faith And Credit Clauses Prohibit Application Of California Law To Claims With No Connection To California.**

"[A] California court's adjudication of non-resident's claims that lack a nexus with California raises significant due process problems." *Churchill Village, L.L.C. v. General Electric Co.*, 169 F. Supp. 2d 1119, 1126-27 (N.D. Cal. 2000) (citing *Shutts*, 472 U.S. at 810-811). Plaintiffs contend their claims meet the so-called "minimal" due process threshold of fairness and argue that "California is the state in which the *vast majority* of the conspiracy took place." Pls. Mot. at 12-14 (italics in original). But this mischaracterizes the law and the facts.

In *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985), the Supreme Court ruled that Kansas law could not be applied to a multistate class action, despite the defendant's many contacts with Kansas, because the claims of the many non-Kansas plaintiffs were too far removed from that state. It held that a forum state may not apply its own substantive law to the claims of a multistate class without violating the federal Due Process or the Full Faith and Credit Clauses unless the state has a "significant contact or significant aggregation of contacts to the claims asserted by *each member* of the Plaintiff class, contacts creating 'state interests,' in order to ensure that the choice of [its] law is not arbitrary or unfair."[11] *Id.* at 821-2. "When considering fairness in this context, an important element is the expectation of the parties." *Id.* at 823. Neither the non-California Plaintiffs nor non-California Defendants had any expectation that claims arising from sales of products outside of California that ultimately reached consumers residing outside of California would be uniformly subject to California law.

---

LEXIS 12715 (S.D. Cal. 2007) ("The Ninth Circuit has stated that 'class counsel should be prepared to demonstrate the commonality of substantive law applicable to all class members . . .'") (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998)).

[11] In this regard, Plaintiffs' statement that "[i]n *Shutts*, the court applied Kansas law even though only 3% of the plaintiffs and less than of [sic] 1% of the leases at issue had any connection with the state of Kansas" (Pls. Mot. at 13) is simply wrong. *Shutts* expressly found that application of Kansas law to adjudicate the claims of the proposed multistate class would exceed the limits of the due process clause and the full faith and credit clause. *Shutts*, 472 U.S. at 822-23.

7

Applying *Shutts*, the Court in *Norwest Mortgage, Inc. v. Superior Ct.*, 72 Cal.App.4th 214 (1999), held California's Unfair Competition Law ("UCL"), Business and Professions Code §§ 17200 *et seq.*, could not apply to non-residents' claims in a proposed nationwide class. Rejecting the argument that the defendant's presence in California was sufficient to justify the application of California law to all claims, the court emphasized that *Shutts* required that "***each member*** of the Plaintiff class" had to demonstrate sufficient contacts of their claims with California before the UCL could be invoked. *Id.* at 225 (emphasis in original).

Following from these holdings, *J.P. Morgan & Co., Inc. v. Sup. Ct.*, 113 Cal. App. 4th 195 (2003), refused to apply the Cartwright Act to price fixing claims by a nationwide class. The court concluded that plaintiffs failed to make "an adequate showing of ***their own significant contacts with California***, such that their claims predominantly arose here, and gave rise to a significant interest on the part of California in applying its laws to these classwide claims." *Id.* at 221 (emphasis added).

The facts presented here are similar to those presented in *Shutts*, *Norwest*, and *J.P. Morgan*. It is also undisputed that the majority of the class members live outside of California, did not suffer injury in California, and have claims with no connection to California.[12] Under *Shutts*, the applicability of California law remains an individual inquiry as to ***each*** claim of ***each*** putative class member, precluding resolution of the choice of law issue on a class-wide basis.[13]

---

[12] The cases Plaintiffs cite to argue that their claims satisfy *Shutts* (Pls. Mot. at 13, n. 26) are distinguishable because, in each case, all defendants had their principal place of business in California and all of the conduct at issue occurred in California. *See In re Seagate Technologies Sec. Litigation*, 115 F.R.D. 264, 272 (N.D. Cal. 1987) (all of the alleged conduct occurred in California); *In re Pizza Time Theatre Sec. Litig.*, 112 F.R.D. 15, 18 (N.D. Cal. 1986) (same); *In re Worlds of Wonder Sec. Litig.*, 1990 WL 61951 (same); *Roberts v. Helm*, 670 F. Supp. 1466 (N.D. Cal. 1987), *aff'd in part, rev'd in part on other grounds, Roberts v. Peat, Marwick, Mitchell & Co.*, 857 F.2d 646 (9th Cir. 1988) (same). By contrast, the claims of the out-of-state plaintiffs here bear no such connection California. In most cases, the purchases, as well as the manufacturing and pricing of DRAM, took place outside California.

[13] Plaintiffs seek to avoid a transaction by transaction analysis by alleging that the conspiracy was "centered" in California (Pls. Mot. at 14). Yet, "co-conspirator" liability is not a proper basis for applying California law. *See Standfacts Credit Services, Inc. v. Experian Information Solutions, Inc.*, 405 F. Supp. 2d 1141, 1147-8 (C.D. Cal. 2005) (rejecting non-California Plaintiffs' attempts to "piggyback" their UCL claims against non-California defendants on the in-state conduct of another defendant under a theory of co-conspirator liability); *see also J.P. Morgan*, 113 Cal. App. 4th at 222 (holding Cartwright Act cannot apply to out-of-state defendant despite alleged conduct of California defendants). Nor do the cases cited by Plaintiffs support this approach. *See* Pls. Mot. at 14-15. None of the cases
(continued...)

8

Most of the putative class members have no connection to California with the vast majority residing outside of California.[14]  Virtually all of those non-California claimants' purchases of DRAM and computers took place outside of California.[15]  Putative class representative Pamela Uglem is a good example.  During the class period she lived and worked in Minnesota.  (Uglem Depo. at 7-8.)  Her claims are based on computers she purchased from Best Buy in Blaine, Minnesota and a Gateway store in Roseville, Minnesota.  *Id.* at 39, 51, 54.  She does not know who manufactured the DRAM contained in the computers she purchased (nor where it was manufactured).  *Id.* at 36-37, 50-53.  She had no expectation at the time she made these purchases that California law would apply to any dispute she might have about the products she purchased.  *Id.* at 72-73.

Plaintiffs' cannot use the fact that the Defendants have sufficient contacts with California for personal jurisdiction (Pls. Mot. at 13) to "boot-strap" their claims for the purposes of the due process analysis.  *Shutts*, 472 U.S. at 821.  As the *Shutts* Court explained:

> [W]hile a State may . . . assume jurisdiction over the claims of a Plaintiff whose principal contacts are with other States, it may not use this assumption of jurisdiction as an added weight in the scale when considering the permissible constitutional limits on choice of substantive law . . . .  The issue of personal jurisdiction . . . in a class action is entirely distinct from the question of constitutional limitations on choice of law; the latter calculus is not altered by the fact that it may be more difficult or burdensome to comply with the constitutional limitations because of the *large number of transactions which the State proposes to adjudicate and which have little connection with the forum*."

*Id.* at 821 (emphasis added).  Thus, even the fact that a defendant is a California corporation and does business in California is not enough to satisfy the due process concerns implicated by the application of California law to non-resident Plaintiffs' claims.

---

cited involved an alleged conspiracy.  And in each of these cases, the court expressly found that the conduct at issue occurred in California.

[14]  According to the 2000 Census, 88% of the U.S. population resides outside California.

[15]  The class representatives overwhelmingly purchased DRAM and computers in the same state where they resided.  Those who purchased from out of state, often purchased from states other than California.  *See* Delaney Depo. at 70-73, 79-82, 105, 109; Dickman Depo. at 29-37; Stewart Depo. at 9, 40-42, 51-52; Uglem Depo. at 16-17, 39, 51, 54.

9

KAYE SCHOLER LLP

As discussed in the Statement of Facts, the conduct at issue here largely took place outside of California. Ultimate decisionmakers, including for production and pricing, generally were outside of California. Any price discussions among salespeople servicing the largest OEMs (e.g. Dell, Compaq, HP, IBM, and Gateway) would have occurred in their offices, which were generally outside of California. (*See generally* Exhs. M-R.)

Therefore, the claims of non-California Plaintiffs generally cannot be brought under California law. This Court cannot just apply California law to all claims merely to construct a common legal framework for class treatment and other states' interests cannot be ignored simply because it would help them certify a national class.

> **b.    California Choice Of Law Rules Prohibit Extraterritorial Application Of California Law To Plaintiffs' Claims.[16]**

Even where California's law may be constitutionally applied, California's governmental interest analysis requires a court to consider "conflict of laws claims and ascertain the most appropriate law applicable to the issues where there is no effective choice-of-law agreement." *Washington Mutual Bank, FA v. Sup. Ct.*, 24 Cal. 4th 906, 919 (2001).

Plaintiffs' asserted "presumption" of applying California law is overcome where, as here, foreign states have an interest in applying their law. *See Camp v. Ford Motor Co.*, 537 F. Supp. 636, 639 (C.D. Cal. 1982) ("[I]t is clear that there is no presumption against the application of the law of a foreign state to an issue once a party timely invokes that law . . . and shows that the application of that law will further an interest of the foreign state."). In fact, the Ninth Circuit, the California Supreme Court, and lower California courts regularly refuse to apply California law in favor of a

---

[16]   These conflicts would also constitute an impermissible burden on interstate commerce. It is well-settled that a "State has no legitimate interest in protecting nonresident" consumers. *Edgar v. MITE Corp.*, 457 U.S. 624, 644 (1982). Thus, "a statute that directly controls commerce occurring wholly outside the boundaries of a State exceeds the inherent limits of the enacting State's authority and is invalid regardless of whether the statute's extraterritorial reach was intended by the legislature." *Healy v. The Beer Inst.*, 491 U.S. 324, 336 (1989). "The Commerce Clause [ ] precludes the application of a state statute to commerce that takes place wholly outside of the State's borders, whether or not the commerce has effects within the States." *Edgar*, 457 U.S. at 643. Many Plaintiffs here are not residents of California, their alleged injuries were not sustained in California, and the alleged cause of their harm did not "emanate" from California.

KAYE SCHOLER LLP

foreign state's law under an appropriate "governmental interest" analysis.[17]

Moreover, this Court should presume that "the Legislature did not intend the statutes of this state to have force or operation beyond the boundaries of this state." *Norwest Mortgage, Inc. v. Sup. Ct.*, 72 Cal. App. 4th 214, 222 (1999) (citing *North Alaska Salmon Co. v. Pillsbury*, 174 Cal. 1, 4 (1916); *People v. One 1953 Ford Victoria*, 48 Cal. 2d 595, 598-9 (1957)); *see also Arabian v. Sony Electronics Inc.*, 2007 U.S. Dist. LEXIS 12715 (S.D. Cal. February 22, 2007) (*citing Diamond Multimedia Sys., Inc. v. Sup. Ct.*, 19 Cal. 4th 1036, 1060 (1999)) (noting a presumption against giving extraterritorial effect to California law); *Churchill Village, L.L.C. v. General Elec. Co.*, 169 F. Supp. 2d 1119, 1126-27 (N.D. Cal. 2000) (referencing "California's presumption against the extraterritorial application of its laws"). Courts "do not construe a statute as regulating occurrences outside of the state unless a contrary intention is clearly expressed or reasonably can be inferred from the language or purpose of the statute." *Norwest*, 72 Cal.App.4[th] at 222  No such intention exists here. Applying this presumption against extraterritorial application in *Norwest*, the Court of Appeal explicitly held that California's UCL does not apply to claims brought by non-resident Plaintiffs arising outside of California.

Similarly, the Legislature expressed no intent that the Cartwright Act apply to claims brought by non-California residents for injuries arising in other States. To the contrary, the Cartwright Act prohibits a combination "[t]o fix at any standard or figure, whereby its price to the public or consumer shall be in any manner controlled or established, any article or commodity of merchandise, produce or commerce intended for sale, barter, use or consumption *in this State*." Cal. Bus. & Prof. Code § 16720 (emphasis added).

---

[17] *See, e.g., Arno v. Club Med, Inc.*, 22 F.3d 1464 (9th Cir. 1994) (favoring French law over California law for many of plaintiff's claims); *McGhee v. Arabian American Oil Co.*, 871 F.2d 1412 (9th Cir. 1989); *Ledesma v. Jack Stewart Produce*, 816 F.2d 842 (9th Cir. 1987) (holding that Arizona's interests would be more impaired if the court failed to apply Arizona's law); *Offshore Rental Co. v. Continental Oil Co.*, 22 Cal.3d 157 (Cal. 1978) (applying Louisiana law over California law); *Howe v. Diversified Builders, Inc.*, 262 Cal. App. 2d 741, 747 (1968) (declining to apply California law against California defendants for injuries suffered in Nevada because "to do so would discriminate invidiously against California employers engaged in business in Nevada.").

1

> **(1)   Conflicts Between The Antitrust Laws Of The Various States And Those States' Interests In Applying Their Laws To Their Residents' Claims Preclude Applying The Cartwright Act To All Class Members.**

There are abundant and material conflicts between the antitrust laws of California and the other relevant states. Several states have completely barred suits by indirect purchasers.[18] For those states that allow claims by indirect purchasers, several authorize only the Attorney General of that state to bring such suits.[19] Some states, unlike California, have chosen to limit the damages in indirect purchaser suits to restitution.[20]

These other states have a compelling interest in applying their own enforcement regimes to their respective residents. States that have exclusively authorized their Attorneys General to bring suit for antitrust violations, for example, have an interest in not having California law supplant the authority of their chief law enforcement officials. By granting exclusive enforcement authority to their Attorneys General, these states have an interest in the uniform enforcement of their antitrust laws and in limiting claims to those in the public interest.[21]

---

[18] *Berghausen v. Microsoft Corp.*, 765 N.E.2d 595 (Ind. 2002) (holding that there is no Indiana law permitting indirect purchaser suit); *Minuteman, LLC v. Microsoft Corp.*, 795 A.2d 833 (N.H. 2002) (same under New Hampshire law); N.J.S.A. 56:9-1, 56:8-1-13; Tex. Bus. & Comm. Code § 15.04. There are other distinctions in other States as well. Alabama only permits indirect purchaser suits for intrastate conduct. Ala. Code § 6-5-60. Florida does not permit corporate indirect purchasers to bring suit. Fla. Stat. §§ 501.207, 501.213. New York does not permit indirect purchaser class actions. N.Y. Gen. Bus. Law § 340(6).

[19] *See* Alaska Stat. §§ 45.50.471(a), 45.50.501(a); Ark. Stat. Ann. § 4-88-104; Colorado Antitrust Act, C.R.S. § 6-4-111(2); Conn. Gen. Stat. §§ 42-110b, 42-110m; 6 Del. C. §§ 2108, 2113; Idaho Code § 48-108(2); 740 Ill. Comp. Stat. 10/7(2); K.R.S. 367.190 (Kentucky); La. Rev. Stat. Ann. §§ 51:128, 51-137, 51:1407, 1408; Md. Code Ann., Corn Law I & 11-209(b)(2)(ii); Ohio Rev. Code Ann. § 1331.01(B)(5); 15 Okl. Stat. § 756.1(c)(2); ORS §§ 646.775, 646.780 (Oregon); R.I. Gen. Laws. § 6-36-12(g); S.C. Code Ann. § 39-5-50; Utah Code Ann. § 76-10-918; Va. Code Ann. §§ 59.1-9.12, 59.1-9.15, 59.1-9.17; RCW 19.86.090 (Washington State); W. Va. Code § 46A-6-102.

[20] *See* Alaska Stat. §§ 45.50.471(a), 45.50.501(a); Ark. Stat. Ann. § 4-88-104; Conn. Gen. Stat. §§ 42-110b, 42-110m; Haw. Rev. Stat. §§ 480-3, 480-14; K.R.S. 367.190 (Kentucky); La. Rev. Stat. Ann. §§ 51:128, 51-137, 51:1407, 1408; Md. Code Ann., Corn Law I & 11-209(b)(2)(ii); Mich. Comp. Laws Ann. § 445.778(2); Ohio Rev. Code Ann. § 1331.01(B)(5); 15 Okl. Stat. § 756.1(c)(2); S.C. Code Ann. § 39-5-50; Utah Code Ann. § 76-10-918.

[21] Alaska, Arkansas, Colorado, Delaware, Idaho, Illinois, Louisiana, Maryland, Oklahoma, Oregon, South Carolina, Utah, Virginia, Washington, and West Virginia have adopted this approach.

12

Other states also have a compelling interest in applying their antitrust laws' prohibition on indirect purchaser suits. These states agree with the Supreme Court's determination that "antitrust laws will be ***more effectively enforced*** by concentrating the full recovery for the overcharge in the direct purchasers rather than by allowing every Plaintiff potentially affected by the overcharge to sue only for the amount it could show was absorbed by it." *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 735 (1977) (emphasis added). Applying California law to permit recovery by indirect purchasers in these states would undermine what they view as the most effective enforcement mechanism for antitrust enforcement by permitting a much wider range of potential plaintiffs to compete for settlement dollars with the direct purchasers. These states have also made a policy judgment as to the proper balance between the deterrence provided by their antitrust laws and their desire to avoid discouraging businesses from providing products and services in their state. Applying California law to claims of citizens of those states would likewise frustrate that careful balancing, to the detriment of other states. *See Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 123 (2006) ("Georgia has a legitimate interest in not having liability imposed on persons or businesses who have acted in Georgia in reasonable reliance on the provisions of Georgia law."); *Offshore Rental Co. v. Continental Oil Co.*, 22 Cal. 3d 157, 168 (1978) (recognizing a foreign state's "*vital interest*" in promoting investment and enterprise within its borders "among investors incorporated both in [the foreign state] *and elsewhere*") (emphasis added).

On the other hand, California has no interest in compensating non-resident consumers for injuries which occurred outside of California. *See Edgar*, 457 U.S. at 644. California does have an interest in compensating its own consumers for such injuries, but that interest is ***not*** impaired by limiting the application of California law to California consumers alone. To the extent that California has an interest in regulating unlawful conduct within its borders, that interest is fully vindicated through direct purchaser actions under federal and California law and indirect purchaser claims brought by California residents and the California Attorney General. Conversely, if California law is applied to the entire class here, then the enforcement regimes of many other states would be severely undermined.

KAYE SCHOLER LLP

(2) **Conflicts Between The Consumer Protection Laws Of The Various States And Those States' Interests In Applying Their Laws To Their Residents' Claims Preclude Applying California's Consumer Protection Laws To All Class Members.**

As demonstrated in the chart attached as Appendix A, the substantive elements of each state's consumer protection claims, as well as the available defenses, vary widely. Some states require plaintiffs to prove they relied on misrepresentations, while others do not. Some states require plaintiffs to prove that the defendant acted "knowingly," other states require proof that the defendant intended to deceive the consumer, and still others require the defendant to have acted "willfully." Some state laws require plaintiffs to prove an "ascertainable loss." California requires a plaintiff to prove "injury in fact." Other states require plaintiffs to prove "out of pocket" or "actual" damages. Some states also provide unique defenses to defendants, or provide for "safe harbors" of varying applicability and scope for conduct that is permitted by a state or federal regulatory body, such as Illinois. *See* 815 ILCS 505/10b(1).

Thus, "state consumer-protection laws vary considerably, and courts must respect these differences rather than apply one state's law to sales in other states with different rules." *Lantz v. Am. Honda Motor Co.*, 2007 U.S. Dist. LEXIS 34948, *11 (N.D. Ill. 2007) (citation omitted) (denying nationwide class under § 17200); *see also Tidwell v. Thor Industries*, 2007 U.S. Dist. LEXIS 21819, *23-24 (S.D. Cal., March 26, 2007) (denying nationwide class under California consumer protection law and rejecting outright plaintiffs' contention that "there is no material variance in the state consumer protection laws."). Courts have refused to certify nationwide classes under other states' consumer protection statutes due to these material differences in state law. *See Grovatt v. St. Jude Med. Inc.*, 425 F.3d 1116, 1121 (8th Cir. 2005) (refusing to certify nationwide class under Minnesota's consumer protection law); *In re Bridgestone/Firestone Tires Prods. Liab. Litig.*, 288 F.3d 1012, 1018 (7th Cir. 2002) (refusing to certify nationwide class under Indiana law).

While Plaintiffs argue that California has one of the most pro-consumer laws, that is no longer true. *See* Prop. 64, Gen. Elec. (Nov. 2, 2004), amending Bus. & Prof. Code § 17204. In fact, as demonstrated by Appendix A, unlike many other states, California requires a showing of actual damages, does not allow for additional penalties if the violations were willful or intentional, and may

14

require actual reliance upon any misrepresentations, *see Pfizer v. Sup. Ct.*, 141 Cal. App. 4th 290, *rev. granted*, 146 P.3d 1250 (Cal. 2006). Cal. Bus. & Prof. Code § 17200, *et seq.* has become less strict towards business practices and made broad consumer recovery more difficult. *See Californians for Disability Rights v. Mervyn's, LLC*, 39 Cal. 4th 223, 228, 229 (Cal. 2006), *appeal after remand, petition denied*, 2007 Cal. LEXIS 7703 (Cal. July 18, 2007) (California's unfair competition law "*previously authorized* any person acting for the interests of itself, its members or the general public to file a civil action for relief. . . . In Proposition 64 . . . the voters found and declared that the UCL's broad grant of standing had encouraged '[f]rivolous unfair competition lawsuits [that] clog our courts[,] cost taxpayers' and 'threaten[] the survival of small businesses,'" and that Prop. 64 intended to "limit such abuses" in claims by private attorneys, but noting that these limitations did not apply to claims brought under this chapter by the Attorney General.) Notably, the few California cases cited by plaintiff in which the court decided to apply California's consumer protection law under the "governmental interest" standard were *prior to* these significant changes to California's consumer protection law. *See Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224 (2001); *Norwest Mortgage v. Sup. Ct.*, 72 Cal. App. 4th 214 (1999).

For states that have enacted legislation with an *increased* level of deterrence, application of California law would mean *less protection for these state residents*, undermining the legislatures' intent to provide their consumers with greater protection. In contrast, applying foreign state law would not impair California's interest in regulating the conduct within its borders. Judge Patel recognized this potential impairment of other states' consumer protection laws many years ago, before § 17200 was recently stripped of its "most liberal" designation: "If defendants could show that California's consumer protection laws, for example, were less strict than those of another state with an interest in this action they would have a colorable argument that the interests of another state were stronger than those of California." *In re Activision Securities Litigation*, 621 F. Supp. 415, 430 (N.D. Cal. 1985); *see also California for Disability Rights*, 39 Cal. 4th 223, at 228-29. Thus, application of California law pursuant to some interest in taking control of the defendants who are California corporations or regulating some conduct within its borders would mean *less protection* for

KAYE SCHOLER LLP

1    consumers all over the country.[22]

2        Likewise, other states have provided a *decreased* level of deterrence and have an interest in

3    "reliably defining the duties and scope of liability of a [company] doing business within its borders."

4    *Arno v. Club Med Inc.*, 22 F.3d 1464, 1467 (9th Cir. 1994). With regard to states that choose to limit

5    liability, application of more liberal California law would frustrate these states' efforts to encourage

6    corporations to do business with their residents by limiting their liability exposure. In contrast, "no

7    California 'interest' would be promoted by impairing the ability of California corporations to

8    compete for business in other states by imposing upon them obligations to the residents of such

9    states which those states do not impose upon foreign corporations or their own domestic

10    corporations." *Howe v. Diversified Builders, Inc.*, 262 Cal.App.2d 741, 746 (1968).

11              **(3)    Conflicts Between The Unjust Enrichment Laws Of The Various**
                        **States And Those States' Interests In Applying Their Laws To**
12                      **Their Residents' Claims Preclude Applying California's Unjust**
                        **Enrichment Laws To All Class Members.**
13

14        As demonstrated in Appendix B, unjust enrichment elements and defenses vary widely from

15    state to state. *See, e.g., In re Currency Conversion Fee Antitrust Litig.*, 230 F.R.D. 303, 311-12

16    (S.D.N.Y. 2004), *modified on other grounds*, 2005 WL 1705285 (S.D.N.Y. 2005); *Clay v. Am.*

17    *Tobacco Co.*, 188 F.R.D. 483, 501 (S.D. Ill. 1999) (describing some of the myriad variations); *In re*

18    *Baycol Prods. Litig.*, 218 F.R.D. 197, 214 (D. Minn. 2003). These variations include fundamental

19    aspects of the claims like the definition of unjust enrichment, *see Clay*, 188 F.R.D. at 501, and

20    whether unjust enrichment is a remedy at law or at equity, *see Baycol*, 218 F.R.D. at 214 (comparing

21    Illinois and Minnesota case law). Given the significant variations, a nationwide "claim of unjust

22    enrichment is packed with individual issues." *E.g., Clay*, 188 F.R.D. at 501; *Currency Conversion*,

23    230 F.R.D. at 312 ("individual questions concerning the substantive laws of other states would

24    overwhelm any potential common issues"). These extensive variations establish a clear conflict

25    _____

26    [22]  This is particularly true when many of the named Defendants are not even California residents
          and the complaint "does not specifically allege any wrongful acts by [each defendant] that
27        occurred in California," *Standfast Credit Services, Inc. v. Experian Info. Solutions, Inc.*, 405
          F. Supp. 2d 1141, 1148 (C.D. Cal. 2005).

28

                                                    16

KAYE SCHOLER LLP

1   between California law and the laws of many other states.

2        Perhaps most dramatically, state law varies significantly in what relationship, if any, between

3   the parties is required to support an unjust enrichment claim.  Some states require privity between

4   the parties.  *See Johnson v. Microsoft Corp.*, 834 N.E.2d 791, 799 (Ohio 2005); *Microsoft*, 401

5   F. Supp. 2d at 465 (D. Md. 2005) (applying South Carolina law).  Other states apply a remoteness

6   analysis to unjust enrichment claims.  *See Steamfitters Local Union No. 420 Welfare Fund v. Philip*

7   *Morris, Inc.*, 171 F.3d 912, 937 (3d Cir. 1999) (finding unjust enrichment claims too remote to

8   recover under Pennsylvania law); *Serv. Employees Intern. Union Health & Welfare Fund v. Philip*

9   *Morris Inc.*, 249 F.3d 1068, 1076 n.6 (D.C. Cir. 2001) (same under D.C. law);  *Southard v. Visa*

10   *U.S.A., Inc.*, 734 N.W.2d 192, 199 (Iowa 2007) (same under Iowa law); *Sperry v. Crompton Corp.*,

11   863 N.E.2d 1012, 1018 (N.Y. 2007) (same under New York law).  Finally, some states require only

12   proof an overcharge was passed on to the plaintiff.  *See, e.g., Freeman Indus. v. Eastman Chem. Co.*,

13   172 S.W.3d 512, 525 (Tenn. 2005)  Some states require exhaustion of legal remedies, that may not

14   be shown by all class members through common proof.  *See, e.g., Freeman v. Eastman Chemical,*

15   172 S.W.3d 512, 526 (Tenn. 2005).

16        Finally, courts have relied upon the same policy considerations embodied in *Illinois Brick* to

17   bar unjust enrichment claims based on alleged anticompetitive conduct.  *See, e.g., In re Terazosin*

18   *Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365, 1380 (S.D. Fla. 2001)  ("The end payors'

19   unjust enrichment claim raises identical concerns" to those addressed in *Illinois Brick*); *see also In re*

20   *New Motor Vehicles Canadian Export Antitrust Litig.*, 350 F. Supp. 2d 160, 211 (D. Me. 2004) ("For

21   those states that have maintained the Illinois Brick prohibition on indirect purchaser recovery, I

22   conclude that it would subvert the statutory scheme to allow these same indirect purchasers to

23   secure, for the statutory violation, restitutionary relief at common law (or in equity)."); *In re*

24   *Microsoft Corp. Antitrust Litig.*, 401 F. Supp. 2d 461, 464 (D. Md. 2005) (applying South Carolina

25   law); *Berhausen v. Microsoft Corp.*, 765 N.E. 2d 592, 596 n.4 (Ind. App. 2002) (finding indirect

26   purchaser restitution claim barred by *Illinois Brick*).  As discussed above, it would undermine those

27   state's policies to permit their residents to recover under California law.

28

KAYE SCHOLER LLP

17

### c.    Plaintiffs Cite No Precedent Supporting Their Request To Certify A Nationwide Class Of Indirect Purchasers Under California Law.

Given the foregoing analysis, it should come as no surprise that Plaintiffs cannot cite one case in which a nationwide class of indirect purchasers was ever certified under the law of a single state.  The few nationwide state law classes Plaintiffs cite are readily distinguishable.  *In re Pizza Time Theatre Litig.*, 112 F.R.D. 15 (N.D. Cal. 1986), *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224 (2001), and *Clothesrigger, Inc. v. GTE Corp.*, 191 Cal. App. 3d 605 (1987), each involved claims by direct victims of deceptive practices by California-based businesses, where the deceptive marketing was prepared in California.  Moreover, *Wershba* involved a settlement class, so the choice of law issue was not even litigated in an adversary setting.  And *Clothesrigger* did not even certify a nationwide class, but merely directed the trial court to conduct a choice of law analysis before determining whether to certify a nationwide class under California law.  Indeed, the Court of Appeal in *Clothesrigger* recognized that on remand the trial court could conclude that any interest California may assert in applying its law -- the same deterrence arguments Plaintiffs make here -- could be outweighed by other states' interests.  *Id.* at 615.

In sum, due process requires that choice of law analysis be done for each class member and the government interest approach generally points to class members place of residence for the law governing their claims.  This creates individual issues inconsistent with class certification.

### 2.    Fact Of Injury Is An Individual Issue That Precludes Class Certification.

When a cause of action requires proof of fact of injury, and where injury cannot be shown on a classwide basis with common proof, certification should be denied.[23]  Plaintiffs have not demonstrated that injury -- sometimes referred to as "impact" or "fact of damage" -- can be shown with common proof on a classwide basis.  Proof is common only if "the same evidence will suffice

---

[23] *Amchem,* 521 U.S. at 623-25; *Blades v. Monsanto,* 400 F.3d 562, 566, 572 (8th Cir. 2005) (affirming denial of class certification where plaintiffs "cannot prove classwide injury with proof common to the class"); *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 302 (5th Cir. 2003) ("we have repeatedly held that where fact of damage cannot be established for every class member through proof common to the class, the need to establish antitrust liability for individual class members defeats Rule 23(b)(3) predominance"); *Weisfield v. Sun Chem. Corp,* 210 F.R.D. 136, 144 (D.N.J. 2002) ("Plaintiff must establish that each class member has, in fact, been injured by the alleged conduct."), *aff'd* 84 F.3d.Appx. 257 (3d Cir. 2004).

KAYE SCHOLER LLP

18

1    for each member to make a prima facie showing." *Blades v. Monsanto*, 400 F.3d at 566.

2            For indirect purchasers, injury requires proof that Defendants' alleged overcharges were

3    "passed on" to them by intermediate sellers. But the "pass-on" to any particular class member is

4    dependent on the pricing decisions made by the various intermediate sellers between the Defendants

5    and the class members. Courts throughout the country repeatedly have refused to certify indirect

6    purchaser classes because of the lack of common proof of "pass on" through various resellers.[24]

7            a.      **There Is No Presumption Of Injury In This Case.**

8            Plaintiffs seek to avoid this fundamental problem with their proposed class by invoking a

9    "presumption of injury" that some California intermediate appellate courts have described. This

10   "presumption" has never been endorsed by the California Supreme Court and no California Court of

11   Appeal has relied on the presumption to establish pass-on.[25]  At most, the "presumption" merely aids

[24] *A&M Supply Co. v. Microsoft Corp.*, 2002 Mich. App. LEXIS 1247 (Aug. 27, 2002)
(operating system); *Melnick v. Microsoft Corp.*, No. CV-99-709, CV-99-752 (Me. Super. Ct.
(operating system); *Execu-Tech Business Sys., Inc. v. Appleton Papers, Inc.*, 743 So. 2d 19
(Fla. Ct. App. Jan. 6, 1999); *Derzon v. Appleton Papers*, No. 96-CV-3678, 1998 WL 1031504
at 7-8 (Wis. Cir. Ct., July 7, 1998) (fax paper: "Constructing economic models in order to
reach generalized conclusion[s] about economic behavior is one thing; using such theories to
prove that *every* class member has suffered a loss *and the amount of that loss* is quite
another." (italics in original)); *Ashley v. Archer Daniels Midland Co.*, No. CV 95-336-R (Ala.
Cir. Ct., DeKalb Co., Mar. 13, 1998) (lysine); *Karofsky v. Abbott Labs.*, 1997 Me. Super.
LEXIS (Oct. 15, 1997) (prescription drugs); *Wilcox v. Archer-Daniels- Midland Co.*, No. 96-
82473-CP (Mich. Cir. Ct., Ingham Co., Sept. 29, 1997) (high-fructose corn syrup and citric
acid); *Wood v. Abbott Labs.*, 1997-2 Trade Cas. (CCH) P72,014, 1997 WL 824019 (Mich.
Cir. Ct. Sept. 11, 1997) (prescription drugs); *Kerr v. Abbott Labs.*, 1997-1 Trade Cas. (CCH)
P71,776, 1997 WL 314419 (Minn. Dist. Ct. Feb. 19, 1997) (prescription drugs); *Durden v.
Abbott Labs.*, No. CV 93-663 (Ala. Cir. Ct., Calhoun Co., Jan. 16, 1996) (infant formula);
*Harbin v. Johnson & Johnson Vision Prods.*, No. CV 94-2872 (Ala. Cir. Ct., Mobile Co.,
Sept. 12, 1995) (contact lenses); *Fischenich v. Abbott Labs.*, No. MC-94-6868 (Minn. Dist.
Ct., Hennepin Co., May 26, 1995) (infant formula); *In re Brand Name Prescription Drugs
Antitrust Litig.* (*Price v. American Home Prods.*), 1994 WL 663590 (N.D. Ill. Nov. 18, 1994)
(prescription drugs); *McCarter v. Abbott Labs.*, No. CV 91-050 (Ala. Cir. Ct., Shelby Co.,
Apr. 9, 1993) (infant formula); *City of St. Paul v. FMC Corp.*, 1990-2 Trade Cas. (CCH) P69,
283, 1990 WL 259683 (D. Minn. Nov. 4, 1990) (caustic soda and chlorine); *Keating v. Philip
Morris, Inc.*, 417 N.W.2d 132 (Minn. Ct. App. 1987) (cigarettes); *Borden, Inc. v. Universal
Indus. Corp.*, 88 F.R.D. 708, 710 (N.D. Miss. 1981) (sugar).

[25] *See BWI Custom Kitchen v. Owens-Illinois, Inc.*, 191 Cal. App. 3d 1341, 1352 n.8 (1987)
(depositions of middlemen established they passed on overcharges); *In re Cipro Cases I & II*,
121 Cal. App. 4th 402, 411 (2004) (Court of Appeal found there was substantial evidence of
common proof of classwide impact from brand name drug monopoly keeping generics off the
market); *Rosack v. Volvo of Am. Corp.*, 131 Cal. App. 3d 741 (1982) (involved no pass-on;
vertical price fixing cases where the class bought directly from alleged co-conspirators).

28

19

KAYE SCHOLER LLP

1   in showing direct purchasers were overcharged, but the Plaintiffs still must present proof that the

2   overcharges were passed on to them. *See, e.g., In re OSB Antitrust Litigation*, Case No. 06-826

3   (E.D. Pa. August 3, 2007) (refusing to apply presumption of injury to indirect purchasers).

4         Even courts endorsing a "presumption" have recognized it would not apply in cases like this

5   one. *First*, much of the proposed class, including the vast majority of module purchasers and class

6   representatives Petersen and Petro, resold DRAM and DRAM-containing products that they

7   purchased. The inclusion of resellers in a proposed class is incompatible with a presumption of

8   injury. *In re Cipro Cases I & II*, 121 Cal. App. 4th 402, 415-16 (2004). In *Global Mineral &*

9   *Metals Corp. v. Sup. Ct.*, 113 Cal. App. 4th 836, 857 (2003), the Court of Appeal vacated an order of

10   certification, in part because the class included resellers who may have profited from the increase in

11   the price of copper. *BWI Custom Kitchen v. Owens-Illinois, Inc.*, also recognized that pass-on by

12   resellers could negate their injury. 191 Cal. App. 3d 1341, 1353 (1987).

13         *Second*, there is no presumption of injury when the allegedly price-fixed product is merely a

14   component of a larger system. The presumption of injury applies only when "the effects of the

15   price-fixing were not obscured by substantially altering or adding to the item received from the

16   manufacturer." *BWI*, 191 Cal. App. 3d at 1352. Similarly, the *Cipro* case held that any

17   presumption applies only if the product reaches end users unchanged from its original sale. 121 Cal.

18   App. 4th at 416. Yet, here, the vast majority of Plaintiffs' proposed class purchased computers,

19   where DRAM was merely a small component, generally no more than 5 to 10% of the total cost.

20   (Calvert Report at ¶¶ 23-25; Stewart Depo. at 54; Delaney Depo. at 73-74.) There is no presumption

21   that any alleged overcharges on DRAM were "passed on" to class members.

22         **b.    Plaintiffs Cannot Show Pass-on On A Classwide Basis.**

23         Plaintiffs have failed to present a realistic methodology for proving pass-on by common

24   proof on a classwide basis in this case. As to those class members who resold any DRAM or DRAM

25   products they purchased, Plaintiffs make no effort to show any injury from the alleged overcharges.

26   Indeed, the representatives who resold DRAM testified that they generally passed on any costs to

27   their customers (Petersen Depo. at 39-40, 130, 135-36; Petro Depo. at 39, 75-81, 95), and Plaintiffs'

28   experts did no analysis of injury to resellers. (Bohn Depo. at 18:1-6; 20:4-13, 22:6-12)

1    As to end users, Plaintiffs rely entirely on their experts' "opinions" that computer OEMs,

2  module manufacturers and other resellers simply added a margin to their total cost of goods in

3  pricing their products to the next step in the chain or resellers.  But how OEMs and other

4  manufacturers priced is not a matter of expert opinion, but of fact.  Tellingly, despite years of

5  discovery, Plaintiffs present no evidence from OEMs or module manufacturers that they consistently

6  used this method of pricing.  Indeed, the evidence on this subject contradicts Plaintiffs' experts.

7    Plaintiffs' experts concede that the market for computers was highly competitive and for

8  much of the class period computer makers were losing money.  (Bohn Depo. 63:14-21)  In that

9  environment, where computer makers were not covering all of their costs, there is every reason to

10  believe that computer makers were not able to consistently pass-on their cost for DRAM.

11    The evidence fully supports that conclusion.

12

13

14

15                        REDACTED

16

17

18

19

20

21    Plaintiffs' expert Roger Bohn conceded that other OEMs were locked into their computer

22  prices for a variety of reasons, including advertised price or contracts with customers that did not

23  allow for changes in prices in response to changes in costs.  (See, e.g., Bohn Depo. 61:1-15, 138:19-

24  140:2)  Indeed, most PC OEMs set prices for a given model not based on current costs, but based on

25  forecasts of what DRAM and other components would cost for several months out.  (Bohn Depo. at

26  248:5-8.) [26]  Plaintiffs present no evidence on how DRAM prices influence those projections.  Bohn

27  [26]  Bohn's report describes Dell's practice, which allowed it to change its computer prices
28       rapidly in response to cost changes, but the very article Bohn relies upon noted that Dell's
                                                                              (continued...)

                                        21

1   concedes that the method of forecasting varies by OEM and Bohn does not know what the method is

2   in most cases. (*Id.* at 251:4-15.) He also concedes that OEMs who priced based on projections

3   would have absorbed unexpected cost increases. (*Id.* at 153:13-20.) At a minimum, this evidence

4   shows that injury must be determined on an individual basis and much of the class may have seen no

5   impact from alleged overcharges on DRAM.

6        Defendants' economist, Margaret E. Guerin-Calvert, explains that the cost of DRAM was a

7   minor part of the cost of the computer, so any alleged overcharges would have been an even tinier

8   part of the computer's cost. In the highly competitive environment in which computers were sold,

9   other forces of supply and demand, such as the desire to maintain a price point of $899, were likely

10  to outweigh the computer manufacturer's desire to pass-on DRAM costs to their customers.

11  Similarly, computer retailers or other resellers would have been buffeted by forces that would often

12  prevent them from recouping particular DRAM cost changes. (Calvert Report at ¶¶ 10-12, 23-25.)

13       There were many circumstances when OEMs or module makers would have absorbed cost

14  increases rather than passing them on. For example, Plaintiffs' expert conceded this would be the

15  case "if the price increase were viewed as transient" or "a one-time surcharge." (Bohn Depo. at

16  205:5-206:9.) Another scenario is a shortage of some critical input that limits the production of

17  computers, which happened from time to time during the class period. During those periods,

18  computer makers already were charging as much as the market would bear for their computers, and

19  could not pass-on any cost increase attributable to DRAM prices. (Calvert Report at ¶ 50.) The

20  reality is that computer prices were set in a different market than DRAM prices. Therefore,

21  computer prices would often remain unchanged in the face of dramatic upswings or collapses of

22  DRAM prices. (Calvert Report at ¶ 47, particularly graph at top of pg. 18.)

23       Determining which OEMs absorbed DRAM price changes and during what periods of time

24  requires an individualized analysis that cannot be done on a class-wide basis. Thus, Plaintiffs'

25  expert Bohn admitted that particular OEMs may have absorbed some price increases on DRAM and

26  

27      practice was ***unique*** in the industry and others did not have the flexibility to adjust PC prices
    to reflect changes in component costs. *See* Exh. GG at pg. 2; Bohn Depo. at 140-142.

28  

22

KAYE SCHOLER LLP

KAYE SCHOLER LLP

1  that without data from the OEMs he could not have to determine whether a particular OEM did pass

2  on specific price changes.  (Bohn Depo. at 221:21-222:3, 224:14-21)

3          Similarly, the sworn testimony of one of the largest module manufacturers, Viking

4  InterWorks ("Viking") confirms that module makers did not consistently pass on their costs to

5  customers. (*See* Viking Declaration, Exh. S at ¶¶ 6, 11, 13, 18-19.)  DRAM prices were too volatile

6  to adjust module prices for every movement in DRAM prices. (*See id.*)  In addition, Viking's sales

7  to OEMs were governed by contracts that precluded changing the price for specified periods.  Viking

8  also sometimes bought excess DRAM when it was priced low, so it could mitigate later price

9  increases. (*Id.* at ¶ 13.)  Simply put, while Viking generally sought to recover its costs of goods in

10  its module prices, it was not always able to do so. (*Id.* at ¶ 11.)  While the Viking testimony does

11  not prove that DRAM price changes are never passed on in higher module prices, it does show that

12  substantial portions of module purchasers suffered no impact, and thus any impact cannot be shown

13  on a class-wide basis.

14

15

16

17

18                      REDACTED

19

20

21

22

23          c.    **Plaintiffs' Regression Analysis Cannot Prove Classwide Impact.**

24          In attempting to prove that alleged overcharges on DRAM were passed on to the putative

25  classes, Plaintiffs also rely upon the regressions of their expert, Michael Harris.  Dr. Harris's

26  regressions do not provide common proof of classwide injury because his results make no economic

27  sense.  Harris endorses the standard economic theory of pass-on, which says that pass-on must fall

28  between 0% and 100%, depending upon the elasticity of the supply and demand curves. (*See*

23

1   Declaration of Michel Harris, filed in support of Pls. Mot., at 13 n.13.)  Yet, Harris estimates that on

2   average a $1 increase in DRAM prices resulted in more than $3 increase in computer prices -- more

3   than 300% pass-on. (Calvert Report at ¶ 65.)  This result is not only impossible under any economic

4   theory, it flies in the face of testimony that major computer companies could not raise prices in

5   response to cost increases and that computer companies (with the possible exception of Dell) were

6   losing money during this period.  (Declaration of Roger Bohn in support of Pls. Mot., at ¶ 36.)

7   Harris' estimated pass-on rates for modules sold by [ REDACTED ], while not as absurd as his

8   computer results, still are beyond the theoretical limit under his own theory. (Calvert Report ¶¶ 73-

9   74.)

10          For computers, there is no economic foundation for his two-step analysis.  He first step is

11  "hedonic modeling" -- estimating the values of various components of the computer that add up to

12  its price.  He claims hedonic modeling is used by the Bureau of Labor Statistics, but fails to mention

13  that the BLS abandoned hedonic modeling for PCs as unreliable.  (Harris Depo. at 85:11-13; BLS

14  Statistic Sheet, Exh. FF.)  As for his second step -- comparing the value of DRAM he estimated in

15  his first step with spot DRAM prices -- Harris can cite no support in the literature and Defendants'

16  expert knows of none supporting this as a test of pass-on.  (Harris Depo. 147:3-14; Calvert Report at

17  ¶ 62.)  Harris' regressions simply do not provide a reliable way of determining whether there has

18  been pass-on of alleged overcharges in computer prices.

19          Dr. Harris also examined only a subgroup of the desktop computers bought during part of the

20  class period, and did no analysis at all of other desktops, laptops, workstations, servers, or the rest of

21  the class period.  (Declaration of Michael Harris filed in support of Pls. Mot. at Exh. 3, pp. 4-5;

22  Harris Depo. at 54:18-22; 57:18-24.)  There is considerable evidence that the subset of computers

23  Dr. Harris studied operates differently than other computer markets.  (Calvert Report at ¶¶ 64-75.)

24          Even more fundamentally, regressions report only average results that by definition ignore

25  differences among class members and can disguise the fact that large segments of the class suffered

26  no pass-on at all.  They assume, rather than prove, common impact.  As the ABA Section of

27  Antitrust has explained in discussing the kind of regression Dr. Harris used:

28

KAYE SCHOLER LLP

24

> The reduced-form pricing equation assumes that a conspiracy has the same effect on every purchaser and focuses on an average effect, which may hide variation across class members. If one is attempting to test whether there is an impact on all members of a proposed class, however, *that assumption is not valid*, as it assumes the very proposition that is being tested.

ABA Section of Antitrust Law, Econometrics (2005), at pg. 22 (emphasis added). Indeed, Harris's own analysis shows that oftentimes the spot prices for DRAM and his estimate of the implicit value of DRAM in computers move in opposite directions. (Calvert Report at ¶ 71.) During those period which were more than a quarter of the time Harris studies -- DRAM cost changes were not being "passed on" by OEMs and retailers computer prices. Similarly, he averages results from various brands of computers, but his model reveals that the implicit value of DRAM -- the "price" of DRAM in the computer -- varied dramatically from manufacturer to manufacturer. (*Id.* at ¶¶ 67-68.) These regressions cannot establish that all class members suffered injury.

### d. Episodic Price Communications Targeted At Specific OEMs With Varying Effectiveness Do Not Provide Common Proof Of Injury.

Additional evidence in the record demonstrates that there is not common proof of classwide injury. The criminal pleas describe episodic communications with competitors regarding the DRAM prices some Defendants charged to six specific OEMs "during certain periods of time" from April 1999 through June 2002, with "varying levels of effectiveness" in raising those prices. (*See* Exhs. 9-12.) This does not meet the standards for common proof of classwide injury. *See, e.g., Blades v. Monsanto*, 400 F.3d at 566 (proof is common only if "the same evidence will suffice for each member to make a prima facie showing").

Plaintiffs' experts concede that only a conspiracy that restricted output would allow co-conspirators to raise prices across the board. (*See* Bohn Depo. 81:5-10.) In the absence of a conspiracy that restricts output, the injury would have to be shown customer-by-customer. As Plaintiffs' expert Bohn conceded, without an agreement to cut output, a conspiracy directed at some but not all OEMs would have reduced sales to those customers, resulting in excess supply and *lower* DRAM prices for the rest of the market. (*Id.* at 51:19-52:11.)

None of the pleas on which Plaintiffs rely includes an agreement to restrain output and, in fact, the Samsung plea states that output steadily *increased* during the class period. (Exh. 9 at

KAYE SCHOLER LLP

25

¶ 4(d).)  There also is no evidence of an output restraint that covers the entire period.  To the contrary, Plaintiffs' experts adopt the report of Roger Noll, the direct purchaser class's liability expert.  (Harris Depo. at 29:25-30:7; Bohn Depo. at 23:9-24:17.)  Noll claimed there was evidence of an output restraint only for a short period at the beginning of 2002.  (*See* 08/25/06 Expert Report of Roger Noll, Exh. T.)  At least as to one Defendant, this Court found no evidence of an output restraint even in that period.  (*See* 02/20/07 Order, Exh. U at pp. 18-20.)  This leaves much of the class unaffected by any output restraint, and thus unable to rely upon common proof of injury.[27]

Proof of classwide injury is further complicated by the fact that Plaintiffs' experts adopt the view that Defendants' prices were not above the competitive level from April through November 2001 and after June 2002.  (Harris Depo. at 30:11-25; Exh. T at pg. 5.)  But there is no common proof of which class members purchased competitively priced DRAM.  Plaintiffs apparently recognize that there is some lag between the time that Defendants sold the DRAM and the time class members made their purchases.  They have extended their class period to December 2002, some six months after the period covered by the pleas, but Dr. Harris uses a one month lag between sales by Defendants and end-user purchases of computers.  (Harris Declaration at Exhibit 3, pg. 10.)  Similarly, Bohn admits that the lag between Defendants' sales and Plaintiffs' purchases varies, but did not investigate the variance.  (Bohn Depo. at 52:23-53:14.)  In fact, one analyst reported lags from thirteen to seventy days.  (Calvert Report at ¶ 39.)  With a variable lag and no systematic way of addressing it, there is no common proof of impact at the outset of the class period in 1999, or in 2001 and 2002.

In sum, no presumption of injury applies to the class alleged here and Plaintiffs have not established that they can present common proof of classwide injury.  In the absence of common proof of injury, classwide issues will not predominate.

---

[27]  In seeking certification of a direct purchaser class, before discovery was closed, the direct plaintiffs relied on their *allegation* of a classwide output restraint.  Discovery here is closed and there is no evidence of an output restraint for at least the vast majority of the class period.  Plaintiffs should not be allowed to rely on an allegation that is against the weight of the evidence at this stage of the case.  *See Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 160-61 (1982) (endorsing "probing behind the pleadings" on class certification).

KAYE SCHOLER LLP

1 | **3.** **There Are Additional Individualized Issues of Proof.**

2 |      Additional individual issues are presented which apply to many, but not all of the proposed

3 | class members. ***First***, while Plaintiffs want to sweep into their class all purchasers of computers that

4 | contained Defendants' DRAM, a substantial portion of DRAM modules and computers was initially

5 | purchased and incorporated into these modules and computers outside of the U.S. (Calvert Report at

6 | ¶ 40.) As this Court already has ruled, sales by Defendants outside of the U.S. are not subject to the

7 | jurisdiction of this Court under the Foreign Trade Antitrust Improvements Act, 15 U.S.C. § 6a. *See*

8 | *In re DRAM Antitrust Litig.*, 2006 U.S. Dist. LEXIS 8977, 2006-1 Trade Cas. (CCH) P75,163 (N.D.

9 | Cal., March 1, 2006); *see also United Phosphorus, Ltd. v. Angus Chem. Co.*, 131 F. Supp. 2d 1003,

10 | 1014 (N.D. Ill. 2001), *aff'd* 322 F.3d 942 (7th Cir.) ("The FTAIA explicitly bars antitrust actions

11 | alleging restraints in foreign markets for inputs that are used abroad to manufacture downstream

12 | products that may later be imported into the United States."). It would undermine the FTAIA to

13 | permit indirect purchasers to recover under state law for sales that are beyond the reach of US

14 | antitrust law. *Paul v. Intel*, 476 F. Supp. 2d 452 (D. Del. 2007) (indirect purchasers cannot use state

15 | law antitrust and consumer protection claims to recover for foreign direct sales). The Court would

16 | have to conduct individual inquiries to determine whether the DRAM in each class members'

17 | computer was installed in the U.S.[28] And even if this Court permitted claims by those who

18 | purchased foreign DRAM, Plaintiffs cannot show a consistent impact of the alleged conspiracy on a

19 | world-wide basis.

20 |      ***Second***, the purchasers of DRAM modules are largely businesses that used the modules in

21 | making computers, which they in turn sold. These resellers are subject to a pass-on defense -- that

22 | any overcharge that was passed on to them was in turn passed on by them to their customers. *See*

23 | MICH. COMP. LAW § 445.778(2); *In re Vitamins Antitrust Litig.* 259 F. Supp. 2d at 8-9; *B.W.I.*

24 | *Custom Kitchen v. Sup. Ct.* (1987) 191 Cal. App. 3d 1341, 1353 (recognizing pass-on defense could

---

25 | [28] Plaintiffs cannot avoid the foreign sales issue under the FTAIA by redefining the class to
26 | exclude indirect purchasers of foreign DRAM. While DRAM is commonly imported with laptops and other computers, there is no way to identify readily which DRAM was imported
27 | and which DRAM was initially sold in the U.S. without examining each computer or reviewing the records of the OEM. (Bohn Depo. at 71:24-72:13.)

28 |

KAYE SCHOLER LLP

1  negate injury, but noting that the availability of the defense has not been decided in California); *see*

2  *also J.P. Morgan & Co. v. Sup. Ct.* (2003) 113 Cal. App. 4th 195, 213 n.10 ("issue of the availability

3  of a 'pass-on defense' in antitrust law still remains an open question in California"); *Global*

4  *Minerals & Metals Corp.* (2003), 113 Cal. App. 4th 836, 852 n.10 (same).  By its nature, a pass-on

5  defense would have to be decided on an individual basis.

6        These individual issues add to the individual questions of choice of law and impact to

7  prevent common issues from predominating, making class certification inappropriate.

8  **B.     A Class Should Not Be Certified Because Proposed Class Members Are Not Readily**
   **Identifiable.**

9

10       Plaintiffs define their proposed class to include only indirect purchasers of ***Defendants***'

11  DRAM, either in modules or in computers.  This proposed class should not be certified because there

12  is no way to identify whose DRAM -- Defendant or non-Defendant -- was purchased five to eight

13  years ago by most potential class members.

14       Courts have refused to certify indirect purchaser classes where it could not be readily

15  determined whether each of the potential class members purchased one of the defendants' products.

16  *See, e.g., Peridot, Inc. v. Kimberly-Clark Corp.,* No. MC 98-012686, 2000 WL 673933 at *5 (Minn.

17  Dist. Ct., Hennepin Co., Feb. 2, 2000) (refusing to certify a class of businesses alleging a price fixing

18  conspiracy among tissue manufacturers, in part, because some businesses purchased tissues from

19  suppliers other than the defendants).[29]  Ready identification of class members is critical to enable

20  potential class members to decide whether to join the class or opt out, to determine whether they

21  have standing to object, and whether they are bound by a judgment.

22       During the class period, Defendants did not make all of the DRAM in the marketplace.  Non-

---

23  [29]  *See also Dumas v. Albers Medical, Inc.*, 2005 U.S. Dist. LEXIS 33482 (W.D. Mo. 2005) (named
24  plaintiff testified he was unsure whether pills he received were sold by defendant); *In re Copper
    Antitrust Litig.*, 196 F.R.D. 348 (W.D. Wis. 2000) (difficulty in determining which copper products
25  were tied to copper futures exchanges and subject to the conspiracy); *In re Phenylpropanolamine
    (PPA) Products Liability Litig.*, 214 F.R.D. 614, 618 (W.D. Wash. 2003) (non-antitrust case:
26  proposed class were purchasers of cold remedies with specific ingredient, but named plaintiffs could
    not determine whether the products they bought contained the offending ingredient and "the
27  identification process would be fraught with uncertainty.").  Additional authorities are cited at
    footnote 7, *supra*.
28

KAYE SCHOLER LLP

1  defendants manufactured substantial quantities of DRAM, up to 30%. (Calvert Report at ¶ 52-53.)

2  While Plaintiffs' expert Roger Bohn stated that the manufacturer can be determined by physically

3  examining the DRAM inside a computer or laptop, he offers no practical method to determine the

4  DRAM manufacturer for modules or computers purchased five to eight years ago and which, in most

5  instances, are no longer available. The class representatives generally testified they did not know

6  who made the DRAM in the modules or computers they purchased. (*See* Fn. 2, *supra*).

7      The identity of class members was not a problem for direct purchasers because both the class

8  members and Defendants had records demonstrating the dates, types, amounts, and prices of DRAM

9  purchased from each of the Defendants. That information is not available for indirect purchasers,

10 thus precluding certification of an indirect purchaser class.

11 **C.   Plaintiffs Cannot Show That The Class Representatives Are Typical.**

12   **1.   No Proposed Class Representative Is Typical Of Computer Manufacturers,
13         Distributors and Retailers.**

14     The class encompasses computer manufacturers, distributors and retailers. Yet none of the

15 nine class representatives is a computer manufacturer, distributor or retailer. Petersen is a computer

16 consultant who supplies customers with computers and sometimes assembles the computers he

17 supplies, but neither he nor any other class representative is in the business of buying components in

18 bulk and assembling them into computers. (Petersen Depo. at 11-14, 18-21.) Nor do any of the

19 class representatives operate a business where they inventory computers and resell them either at

20 wholesale or retail. Accordingly, Plaintiffs are not typical of these substantial computer purchasers.

21   **2.   There Is No Representative Of Residents Of Maine Or Tennessee.**

22     Plaintiffs' alternative proposal to create subclasses of residents of California, Maine, and

23 Tennessee cannot be effected because Plaintiffs have failed to propose representatives who are

24 typical of claimants under Maine and Tennessee law. *See* Pls. Mot. at 30-32. Federal Rule of Civil

25 Procedure 23(c)(4) requires any subclass to satisfy independently all the class requirements of

26 Rule 23. *Betts v. Reliable Collection Agency, Ltd.*, 659 F.2d 1000, 1005 (9th Cir. 1981) ("[E]ach

27 subclass must independently meet the requirements of Rule 23 for the maintenance of a class action.

28 A failure to do so will either require the dismissal of the action with respect to the subclass or force

KAYE SCHOLER LLP

29

the action to proceed with regard to the members of the subclass on an individual basis.") Each subclass must have a named representative who is a member of the class or subclass. *Id.* at 1005 ("Of particular importance is that the court be certain that each subclass is adequately represented. [Named plaintiff is not] a member of the subclass he purported to represent. Consequently, the fundamental requirement that the representative plaintiff must be a member of the class he represents is completely lacking on the record before us.")

Named plaintiffs from California cannot represent a subclass of Maine or Tennessee residents because if they fail in their claim under California law, they will have no incentive to prove the claim for Maine or Tennessee residents. *See also, e.g., Acosta v. Trans Union, LLC*, 240 F.R.D. 564, 571-72 (C.D. Cal. 2007) (refusing to certify a settlement subclass of non-California residents because the named plaintiffs' California residence caused their interests to diverge from those of the subclass, making them inadequate subclass representatives). While Plaintiffs cite *NMV* II, 235 F.R.D. 127 (D. Me. 2006) as permitting certification of a multistate class, the court specifically found there was at least one representative for each state being certified. 235 F.R.D. at 131.

Plaintiffs' alternative request to certify statewide subclasses should be denied.[30]

**D.     Plaintiffs Are Not Adequate Representatives Of The Class Because Of Conflicts Among Class Members On The Pass-on Issue.**

The proposed class also cannot be certified because the named plaintiffs are not adequate class representatives, as required by Rule 23. As Plaintiffs concede, class representatives are not adequate where they have "disabling conflicts" or "antagonistic interests" to those of absent class members. *See, e.g., Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978) ("[R]epresentatives must not have antagonistic or conflicting interests with the unnamed members of the class."); *In re Adobe Systems, Inc. Securities Litigation*, 139 F.R.D. 150, 156 (N.D. Cal. 1991) ("[T]he test for adequacy of representation is merely whether or not plaintiffs . . . have any disabling

---

[30]   Plaintiffs cannot cure these defects by adding new representatives at this late stage in these proceedings. *See Mendoza v. Zickle Fruit Co.*, 222 F.R.D. 439, 444, 450 (E.D. Wa. 2004) (refusing to certify a proposed subclass for lack of subclass representatives, and refusing to add new representatives because of plaintiffs' failure to do so at an earlier stage of the litigation).

KAYE SCHOLER LLP

1   conflicts going to the heart of the controversy . . . .").

2       In this case, the proposed class representatives are inadequate because they seek to represent

3   at least two antagonistic interests: resellers and end users.  In fact, given the number of other steps in

4   the distribution chain for computers and modules, the conflicting interests are far more extensive.

5   Plaintiffs Gary Petersen and Petro Computer Systems each claim they purchased DRAM "for use in

6   manufacturing electronic devices for resale," while the remaining named plaintiffs allege that they

7   obtained DRAM "for end use and not for resale" or "for personal, family, or household purposes."

8   SAC ¶¶ 18-27.  These groups of plaintiffs and the class members they seek to represent are clearly

9   antagonistic because each can prevail only by discrediting the other's claim.  Resellers cannot prove

10  injury from the alleged conspiracy unless they prove that they absorbed overcharges, and did not

11  pass them on to end users in the form of higher prices.  At the same time, end consumers cannot

12  recover except by proving exactly the opposite: that resellers did not absorb overcharges and instead

13  passed them on to the consuming public.  They must reach into the resellers' pockets to recover.

14      In *In re Methionine Antitrust Litigation*, 204 F.R.D. 161 (N.D. Cal. 2001), Judge Charles

15  Breyer recognized this inherent antagonism between resellers and ultimate consumers in price fixing

16  litigation, and refused to certify a proposed class that included both.  Judge Breyer explained:

17          Defendants also challenge plaintiff's adequacy to serve as a class representative.
18          They argue that . . . because [plaintiff] admits that it passed on the higher price of
            methionine to its customers, . . . its interests conflict with other class members. [¶]
19          Plaintiff does appear to have a conflict with the class members to whom it resold
            methionine.  Plaintiff, as an intermediary, has an interest in proving that it absorbed
20          the costs of the increased price in methionine that it purchased from its suppliers,
            while those who purchased from plaintiff, or other similarly situated distributors,
21          have an interest in proving that all of the costs were passed on.

22  *Id.* at 167.[31]  Under settled legal principles, therefore, conflicts among the putative class members

23  and their proposed representatives render those representatives inadequate.

    ---

    [31]  *See also Sugai Products v. Kona Kai Farms*, No. 97-00043.SPK, 1997 WL 824022, *8-9 (D.
24      Haw., November 19, 1997) (conflict between sellers and resellers precluded certification);
        *United Egg Producers v. Bauer Intern. Corp.*, 312 F. Supp. 319, 321 (S.D.N.Y. 1970) (Where
25      named plaintiff's "economic interest . . . lies not with consumer interest but with suppliers[,]
        [m]anifestly, his first allegiance is not to consumers but to himself as a[] supplier[, and] [h]e
26      cannot, therefore, adequately represent the consumers because of his conflicting and divided
        interest."); *Derzon v. Appleton Papers*, No. 96-CV-3678, 1998 WL 1031504 (Wis. Cir. Ct.,
27      July 7, 1998) (denying certification because of conflict between resellers and end users).

28

KAYE SCHOLER LLP

**E.   Plaintiffs Have Not Demonstrated Superiority.**

Rule 23(b)(3) requires that Plaintiffs demonstrate that their proposed "class action is superior to other available methods for the fair and efficient adjudication of the controversy." Plaintiffs' counsel already have initiated numerous class actions throughout the various states, which could be tried individually or in a series of test cases. To determine whether the proposed national class action is superior to these alternatives, the Federal Rules prescribe four factors to address: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; [and] (D) the difficulties likely to be encountered in the management of a class action." FRCP 23(b)(3)(A)-(D). Plaintiffs' counsels' own admissions establish that the first three factors do not favor class certification here, and Plaintiffs have not demonstrated that the panoply of claims encompassed in the various classes are manageable.

**1.   Plaintiffs' Counsel Have Argued These Claims Should Be Adjudicated In State Court.**

Critically, Plaintiffs' counsel already have argued in numerous pleadings throughout the country that their claims should be heard in the state courts, and that a nationwide class action proceeding before this Court would not be superior to such treatment.

While the case has been pending, counsel for various class members has represented that those class members desire individually to control the prosecution of smaller class actions in the state courts. *See also*, *e.g.*, Briefs submitted in support of Plaintiffs' Motions to Lift Stays in numerous state courts, Exh. Y at 5 ("Plaintiffs have always maintained that it is in the best interests of Hawai'i indirect purchasers that a Hawai'i court -- not a federal court in California -- decide issues of Hawai'i law. . . . That is why Plaintiffs filed in Hawai'i . . . . Plaintiffs desire only to move forward with their claims in the original -- and proper -- court in which they were filed."); Exh. Z at 5:3-12 ("We would be delighted to be here [in Nebraska]. . . . The plaintiffs . . . filed their complaint here. They never filed a complaint anywhere else. They never sought to go anywhere else . . . .)

Further, this Court may not be able to enjoin numerous state class actions already pending

32

KAYE SCHOLER LLP

1  throughout the country.  *See* 28 U.S.C. § 2283 (Anti-Injunction Act, providing that federal courts

2  may not enjoin state court proceedings except in exceptional circumstances).  Finally, Plaintiffs'

3  counsel have repeatedly stated that it would be undesirable for a federal court in California to

4  adjudicate various state law claims, and a superior method would be to allow separate class actions

5  to proceed in the various states.[32]  Plaintiffs thus admit their nationwide class action is not the

6  superior method in this case.  *See* Fed. R. Civ. Proc. 23(b)(3)(C).

###  2.    The Proposed Class Presents Significant Manageability Issues.

8  Courts routinely reject indirect purchaser classes because the plaintiffs failed to demonstrate

9  that the proposed class action would be manageable.[33]  Given the inherent difficulties in a trial of a

10  nationwide class alleging violations of varying state laws and numerous individual issues of fact,

11  courts require putative class representatives to present a realistic trial plan in their moving papers.

---

[32]  *See, e.g.,*  Exh. W at 4 ("The complaint asserts claims under Hawai'i law on behalf of indirect purchasers who are residents of Hawai'i and there is no federal jurisdiction over the state claims, making this [Hawai'i] Court the most appropriate forum for hearing Plaintiffs' claims."); Exh. CC at 6 ("[T]he Nebraska State Court is the best forum to adjudicate Nebraska state law. . . . [T]he state court is in the best position and has the greatest expertise in deciding issues pertaining to state law.  This Court is the proper forum to apply and interpret Nebraska law.  Furthermore, federal courts should not decide state law issues if there is a pending state court action that can hear and adjudicate those claims."); Exh. V at 5 ("[T]he interests of judicial economy would be well served as this Court is the most appropriate forum for interpreting and applying Kansas law. . . . This is particularly true where, as here, the state courts will only have to consider their respective state claims, and not a multitude of extraterritorial claims emanating from different states."); Exh. BB at 7 ("This Court is the proper forum to interpret and apply Minnesota law."); Exh. X at 4 ("This Court is the proper forum to interpret and apply Montana law."); Exh. AA at 6 ("This Court is the proper forum to interpret and apply North Dakota law.").

[33]  *Godden v. Marigold Foods, Inc.*, No. C8-97-932, at 2-4 (Minn. Dist. Ct., Ramsey Co., Mar. 20, 2000) rejected a proposed class of consumers who bought milk at retail stores, emphasizing the complexity of the state's milk markets and distribution system. *Ludke v. Philip Morris, Inc.,* No. MC 00-1954, 2001 WL 1673791 (Minn. Dist. Ct., Hennepin Co., Nov. 21, 2001) refused to certify a class of retail purchasers of cigarettes because, the frequency of purchases of cigarettes, and absence of records of the purchases, made it impossible to determine damages by common proof or administer a claims process. *See also Fish v. Microsoft Corp.*, Case No. 00-031126-NZ (Mich. Cir. Ct., Wayne Co., Apr. 8, 2004) (regressions using retail data rejected as not adequately capturing market realities and only proving average harm to the class); *see also Ren v. Philip Morris, Inc.*, No. 00-004035-CZ, 2002 WL 1839983 (Mich. Cir. Ct., Wayne Co., Jun. 11, 2002).  Similarly, the court in *In re Methionine Antitrust Litig.*, No. 00-1311, 2003 WL 22048232, at 10 (N.D. Cal. Aug. 26, 2003) decertified an indirect purchaser class because the plaintiffs' expert was unable to offer a damages model that reflected the market dynamics.

---

33

KAYE SCHOLER LLP

1  *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001); *Valentino v. Carter-*

2  *Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). Plaintiffs submitted no such plan here, and have

3  not shown that treatment is superior to other alternatives. *See* Fed. R. Civ. Proc. 23(b)(3)(D).

4      This opposition brief highlights the dizzying array of claims that would be presented by

5  Plaintiffs. DRAM makes its way from the Defendants to end users through a wide array of

6  resellers -- from module makers to computer makers to distributors to retailers and, at each of these

7  stages, to consumers and business users. The products -- although narrowed to modules and

8  "computers" -- includes desktops, laptops, workstations, and servers and thus encompass numerous

9  DRAM products whose prices did not always move in concert. There is DRAM that was originally

10  sold domestically and DRAM imported from foreign markets. Different class members bought

11  DRAM as components, or as separately priced add-ons to computers, from target OEMs, non-target

12  OEMs, or retailers. And the alleged conspiracy encompasses more than three years, including long

13  periods when Plaintiffs' own experts believe that prices were not affected.

14      Compounding all of these problems, only a tiny fraction of the class will be able to document

15  their purchases. The parties and this Court will have to depend on the recollections -- to the extent

16  they even have them -- of consumers and businesses that made purchases as long as eight years ago

17  and do not even have the products at issue anymore, much less records documenting their purchase.

18  The California Court of Appeal in *BWI* permitted certification of an indirect purchaser class over an

19  objection of unmanageability only because the class consisted of businesses who would have records

20  of their purchases. 191 Cal. App. 3d at 1354. This class has no such records.

21  **F.**     **Plaintiffs Have Not Shown That An Injunctive Relief Class Is Appropriate.**

22      Recognizing that they face insurmountable hurdles in trying to certify a class seeking

23  monetary relief, Plaintiffs have tossed in a Rule 23(b)(2) class seeking injunctive relief under the

24  Clayton Act. But a Rule 23(b)(2) class is inappropriate where plaintiffs are primarily seeking

25  monetary relief. *Lozano v. AT&T Wireless Services, Inc.*, 2007 DJDAR 14749, 14753 (9th Cir. Sept.

26  20, 2007); *Molski v. Gleich*, 318 F.3d 937, 950 (9th Cir. 2003); *In re Paxil Litig.*, 218 F.R.D. 242,

27  247 (C.D. Cal. 2003). Here, Plaintiffs' primary objective clearly is monetary damages. Plaintiffs

28  define the class as those making purchases five to eight years ago and do not even allege that the

1    conspiracy is ongoing.  Plaintiffs' experts adopted the view that the alleged conspiracy ended in

2    2002 and an injunction to bar conduct that has ceased is highly unlikely to be the "predominant"

3    goal of the lawsuit.  *See Paxil*, 218 F.R.D. at 247-48 ("[T]he fact that some (perhaps most) of the

4    allegedly offending conduct has ceased . . . speaks to the 'essential goal' of this litigation.").

5    Moreover, an injunctive relief class is also inappropriate where, as here, Plaintiffs have not even

6    alleged that Defendants' anticompetitive activity is likely to recur.  *See In re Multidistrict Vehicle Air*

7    *Pollution*, 538 F.2d 231, 236-37 (9th Cir. 1976) (where "there are no ongoing violations to be

8    ended[,] . . . [an injunction] fails to serve any function of the antitrust laws.").

## IV.   **CONCLUSION**

10        For all of the foregoing reasons, Defendants respectfully submit that Plaintiffs' Motion for

11   Class Certification should be denied.

12   Dated:      September 28, 2007                KAYE SCHOLER LLP

13

14                                               By

15                                                  Aton Arbisser
                                                   Attorneys for Defendant Infineon
16                                                 Technologies North America Corp. and
                                                   Infineon Technologies AG

KAYE SCHOLER LLP

*Additional Defendants and Counsel:*

| | |
|---|---|
| ROBERT B. PRINGLE<br>PAUL R. GRIFFIN<br>JONATHAN SWARTZ<br>Thelen Reid Brown Raysman & Steiner LLP<br>101 Second Street, Suite 1800<br>San Francisco CA 94105-3601<br><br>*Attorneys for Defendant NEC Electronics America, Inc.* | HARRISON J. FRAHN<br>SIMPSON THACHER & BARLETT LLP<br>2550 Hanover Street<br>Palo Alto, CA 94304<br><br>*Attorneys for Defendants Elpida Memory, Inc., and Elpida Memory (USA) Inc.* |
| STEPHEN V. BOMSE<br>MICHAEL J. SHEPARD<br>DAVID C. BROWNSTEIN<br>Heller Ehrman LLP<br>333 Bush Street<br>San Francisco, CA 94104-2878<br><br>*Attorneys for Defendants Mosel Vitelic Inc., and Mosel Vitelic Corporation* | KENNETH R. O'ROURKE<br>STEVEN H. BERGMAN<br>O'Melveny & Myers LLP<br>400 S. Hope Street<br>Los Angeles, CA 90071<br><br>IAN SIMMONS<br>O'Melveny & Myers LLP<br>1625 Eye Street, NW<br>Washington, D.C. 20006-4001<br><br>*Attorneys for Defendants Hynix Semiconductor, Inc. and Hynix Semiconductor America, Inc.* |
| JOEL S. SANDERS<br>Gibson, Dunn & Crutcher LLP<br>One Montgomery Street<br>Montgomery Tower, 31st Floor<br>San Francisco, CA 94104<br><br>*Attorneys for Defendants Micron Technology, Inc., and Micron Semiconductor Products Inc.* | HOWARD M. ULLMAN<br>Orrick, Herrington & Sutcliffe LLP<br>The Orrick Building<br>405 Howard Street<br>San Francisco, CA 94105-2669<br><br>ROBERT FREITAS<br>Orrick, Herrington & Sutcliffe LLP<br>1000 Marsh Road<br>Menlo Park, CA 94025-1021<br><br>*Attorneys for Defendants Nanya Technology Corporation and Nanya Technology Corporation USA* |

# APPENDIX "A"

# APPENDIX A

# VARIATIONS IN
# STATE CONSUMER PROTECTION LAWS[1]

## I.      Reliance.

| Plaintiff Required to Prove Reliance | Reliance Not Required |
|---|---|
| Arizona<br>*Peery v. Hansen*, 585 P.2d 574, 577 (Ariz. App. 1978), Haskell v. Holeman, 803 F. Supp. 237, 242-43 (D. Ariz. 1992). | Arkansas<br>*State v. McLeod*, Clearinghouse No. 50,412 (Ark. Ch. Ct., Pulaski Cty. Nov. 23, 1993) |
| California (possibly)<br>*See Pfizer v. Sup. Ct.*, 141 Cal. App. 4th 290 (2006), *rev. granted*, 146 P.3d 1250 (Cal. 2006) | Connecticut<br>*Prishwalko v. Bob Thomas Ford, Inc.*, 636 A.2d 1383, 1388 (Conn. App. Ct. 1994) |
| Colorado<br>*Pauley v. Bank One Colorado Corp.*, 205 B.R. 272, 276 (D. Colo. 1997) | Delaware<br>*Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983) |
| District of Columbia<br>*Witherspoon v. Philip Morris Inc.*, 964 F. Supp. 455, 464 (D. D.C. 1997) | Idaho<br>*Kidwell v. Master Dist. Inc.*, 615 P.2d 116, 123 (1980) (does not specifically state reliance is unnecessary) |
| Georgia<br>*Delta Chevrolet v. Wells*, 371 S.E.2d 250, 251 (Ga. App. 1988) | Illinois<br>*Adler v. William Blair & Co.*, 648 N.E.2d 226 (Ill. App. Ct. 1995) |
| Indiana<br>Ind. Code 24-5-0.5.4(a) | Iowa<br>*State v. Hydro Mag, Ltd.*, 436 N.W.2d 617, 621 (Iowa 1989) |
| Minnesota<br>*Thompson v. American Tobacco Co.*, Inc., 189 F.R.D. 544 (D.Minn.1999) (if seeking to recover damages) | Maryland<br>*State v. Andrews*, 533 A.2d 282, 285 (Md. 1987) (in certain instances) |
| Pennsylvania<br>*Sexton v. PNC Bank*, 792 A.2d 602 (Pa. Super. 2002)<br>*Rizzo v. Michener*, 584 A.2d 973, 980 (Pa. Super. 1990) | Missouri<br>*Webster v. Areaco Inv. Co.*, 756 S.W.2d 633, 637 (Mo. App. Ct. 1988) |

---

[1]      While these charts of state law variations demonstrate significant differences among the laws of various states relating to the claims asserted by plaintiffs, they by no means constitute a complete analysis of the numerous variations in applicable state law.

| Plaintiff Required to Prove Reliance | Reliance Not Required |
|---|---|
| Texas<br>Tex. Bus. & Com. Code Ann. § 17.50(a)(1)(B) | Oregon<br>*Sanders v. Francis*, 561 P.2d 1003, 1006 (Or. 1971) (the reliance requirement depends on the particular unlawful practice alleged) |
| Vermont<br>VT. STAT. ANN., tit. 9, § 2461(b) | |
| Wyoming<br>WYO STAT. 40-12-108(a) | |

## II.    Level of Scienter Required.

| Defendant Acted Knowingly | Defendant Acted with Intent | Defendant Acted Wilfully | Plaintiff Not Required to Prove Intent |
|---|---|---|---|
| Alabama<br>Ala. Code § 8-19-13 | Delaware<br>Del. Code Ann. Tit. 6 §2513(a) (intent that others rely upon the misrep.) | Oregon<br>*Luedeman v. Tri-West Constr. Co.*, 592 P.2d 281, 282 (Or. Ct. App. 1979) | Alaska<br>*State v. O'Neill, Investigations, Inc.*, 609 P.2d 520 (Alaska 1980) |
| Arkansas<br>Ark. Code Ann § 4-88-107(a)(1) | Illinois<br>815 ILCS § 505/2; *Adler v. William Blair & Co.*, 648 N.E.2d 226, 233 (Ill. App. Ct. 1995) (intent that others rely upon a concealment or omission) | South Carolina<br>*Medlock v. Nest Egg Society Today, Inc.*, 348 S.E.2d 381, 383-84 (S.C. App. 1986) | California<br>*South Bay Chevrolet v. General Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 877 (1999) |
| Colorado<br>Colo. Rev. Stat. Ann. § 6-1-105(1)(e) | Kansas<br>*Porras v. Bell*, 857 P.2d 676, 677-78 (Kan. Ct. App. 1993) | | Connecticut<br>*Kellogs v. Key Bank of Maine*, 166 B.R. 504, 507 (D. Conn. 1994) |
| Idaho<br>Idaho Code § 48-603 | Kentucky<br>*Capitol Cadillac Olds, Inc. v. Roberts*, 813 S.W.2d 287, 291 (Ky. 1991) | | Maine<br>*Binnette v. Dyer Library Assoc.*, 688 A.2d 898, 906 (Me. 1996) |
| Indiana<br>Ind. Code 24-5-0.5-3(a) | Michigan<br>Mich. Comp. Laws § 445.903 (intent to deceive) | | Missouri<br>*Webster v. Areaco Inv. Co.*, 756 S.W.2d 633, 635 (App. Ct. 1988) |
| Kansas<br>Kan. Stat. Ann. 50-626(b)(1) | Minnesota<br>Minn. Stat. § 325F.69(1) (intent to induce reliance) | | Montana<br>*T&W Chevrolet v. Davial*, 641 P.2d 1368, 1371 (Mont. 1982) (do not need malice or fraud to recover exemplary damages) |
| Maryland<br>Md. Code Ann. Com. Law § 13-301 (for certain deceptive practices) | Nevada<br>Nev. Rev. Stat. § 598.0925 (intent to deceive required for general assertions re quality, value, etc. - no intent needed for assertion of fact.) | | Nebraska<br>*Selection Research, Inc. v. Murman*, 433 N.W.2d 526, 534 (Neb. 1989) |

| Defendant Acted Knowingly | Defendant Acted with Intent | Defendant Acted Wilfully | Plaintiff Not Required to Prove Intent |
|---|---|---|---|
| Nevada Nev. Rev. Stat. § 598.0915 | New Jersey N.J.S.A. § 56:8-2; (intent that others rely upon the omission) | | Nevada Nev. Rev. Stat. § 598.0925 (intent to deceive required for general assertions re quality, value, etc. - no intent needed for assertion of fact.) |
| New Jersey *Knapp v. Potampkin Motors Corp.*, 602 A.2d 302, 303 n.1 (N.J. Super. 1991) | Oklahoma *Central Plastics Co. v. Goodson*, 537 P.2d 330, 335-36 (Okla. 1975) (intent to injure) | | Ohio *Fletcher v. Don Foss of Cleveland, Inc.*, 628 N.E.2d 60, 62 (App. Ct. 1993) |
| New Mexico N.M. Stat. Ann. § 57-12-2(D) | South Dakota S.D. Laws § 37-24-6(1) (acted with knowledge or intent) | | Pennsylvania *Com. ex rel. Zimmerman v. Nickel*, 26 Pa. D. & C. 3d 115, 120 (Pa. Ct. Com. Pl. 1983). |
| Oklahoma Okla. Stat. Ann. tit. 15, § 753(5) | Utah Utah Code Ann. 13-11-4(2) (acted with knowledge or intent) | | Rhode Island *Foraste v. Brown Univ.*, 248 F. Supp. 2d 71, 81-82 (D.R.I. 2003). |
| Oregon OR Rev. Stat. § 646.605(9) | West Virginia W. Va. Code § 46A-6-102(7)(M) (intent to induce reliance) | | Tennessee *Smith v. Scott Lewis*, 843 S.W.2d 9, 11 (App. Ct. 1992); *Menuskin v. Williams*, 145 F.3d 755, 767-68 (6th Cir. 1998). |
| South Dakota S.D. Laws § 37-24-6(1) (acted with knowledge or intent) | Wisconsin Wis. Stat. § 100.18(1) (intent to induce members of the public into the transaction) | | Texas *Wagner v. Morris*, 658 S.W.2d 230, 233 (Tex. App. 1983) |
| Utah Utah Code Ann. 13-11-4(2) (acted with knowledge or intent) | | | Washington *Haner v. Quincy Farm Chemicals*, 649 P.2d 828, 831 (Wash. 1982) |
| Wyoming Wyo. Stat. § 40-12-105 | | | |

III.   **What Damages Plaintiff Must Prove; Some States Allow Additional Damages in Certain Circumstances.**

| Plaintiff Must Prove "Ascert-ainable Loss" | Plaintiff Must Prove "Actual Damages" | Treble Damages Without Def. Acting Wilfully or Intentionally | Treble Damages if Def. Acted Wilfully or Intentionally | Aggravating Circumstances Required for Treble Damages | Sanctions if Victim is Senior Citizen or Handicapped |
|---|---|---|---|---|---|
| Alaska Alaska Stat. § 45.50.531(a) (1996) | Colorado Colo. Rev. Stat. § 6-1-113(2)(a) | Alaska Alaska Stat. 45.50.531(a) | Alabama Ala. Code 8-19-10(a)(2) | North Carolina *Bartolomeo v. S.B. Thomas, Inc.*, 889 F.2d 530, 535 (4th Cir. 1989) | Arkansas Ark. Code Ann. § 4-88-201, -204 (discretionary sanction, 60+) |
| Arkansas Ark. Code Ann. § 4-88-113(a)(2)(A) (Michie 1995) | Connecticut Conn. Gen. Stat. § 42-110g(a) | District of Columbia D.C. Code Ann. 28-3905(k)(1) | Colorado Colo. Rev. Stat. § 6-1-113(2)(a) ("bad faith conduct") | New Jersey *D'Ercole Sales, Inc. v. Fruehaft Corp.*, 501 A.2d 990, 1001 (N.J. Super. 1985) | California Cal. Bus. & Prof. Code § 17206.1; Cal. Civ. Code § 1780(b) (discretionary sanction; 65+); |
| Connecticut Conn. Gen. Stat. Ann. § 42-110g(a) (West 1996) | Florida Fla. Stat. Ann. § 501.207(1)(c) | Hawaii Haw. Rev. Stat. 480-13(b)(1) | Connecticut Conn. Gen. Stat. § 42-110o(b) | | Florida Fla. Stat. Ann. § 501.2077(1)-(2) (mandatory sanction; 60+) |
| Idaho Idaho Code § 48-608 (Michie 1996) | Illinois 815 Ill. Comp. Stat. Ann. 505/10a(a) | Montana Mont. Code Ann. § 30-14-133 (1) | Georgia Ga. Code Ann. § 10-1-399(c) | | Illinois 815 Ill. Comp. Stat. Ann. 505/7(c) (discretionary sanction, 65+) |
| Kentucky Ky. Rev. Stat. Ann. § 367.220(1) (Baldwin 1996) | Indiana Ind. Code Ann. § 24-5-0.5-4(a) | North Carolina N.C. Gen. Stat. 75-16 | Louisiana La. Rev. Stat. 51:1409(a) | | Indiana Ind. Code Ann. §§ 24-5-0.25-2(a)(11), 24-5-0.5-4(h) (discret., treble damages, 65+) |
| Louisiana La. Rev. Stat. ANN. § 51:1409 (West 1996) | Massachusetts Mass. Ann. Laws ch. 93A, § 9(3), § 11 | Pennsylvania 73 Penn. Stat. § 201-9.2(a) | Massachusetts Mass. Ann. Laws Ch. 93A, §9(3) | | Iowa Iowa Code § 714.16A (discretionary sanction; 65+) |

| Plaintiff Must Prove "Ascertainable Loss" | Plaintiff Must Prove "Actual Damages" | Treble Damages Without Def. Acting Wilfully or Intentionally | Treble Damages if Def. Acted Wilfully or Intentionally | Aggravating Circumstances Required for Treble Damages | Sanctions if Victim is Senior Citizen or Handicapped |
|---|---|---|---|---|---|
| Mississippi Miss. Code Ann. § 75-24-15(1) (1996) | Missouri Mo. Rev. Stat. § 401.025(1) | Vermont Vt. Stat Ann. tit. 9, 2461(b) | New York N.Y. Gen. Bus. Law § 349(h) (limited to $1000) | | Minnesota Minn. Stat. § 325F.71(1)-(2) (discretionary sanction, 62+) |
| Missouri Mo. Ann. Stat. § 407.025 (Vernon 1996) | New Hampshire N.H. Rev. Stat. Ann. § 358-A:4-III-a (1995 & Supp. 1996) (actual damages required to obtain disgorgement) | | New Hampshire N.H. Rev. Stat. Ann. 358-A:10(I) (willfully or knowingly) | | Missouri Mo. Rev. Stat. § 407.020(5)-(6) (violation by a long-term care facility) |
| Montana Mont. Code Ann. § 30-14-133 (1995) | New York N.Y. Gen. Bus. Law § 349(h) | | North Dakota N.D. Cent. Code 51-15-09 | | New Jersey N.J.S.A. § 56:8-14, -14.2, -14.3, -15 (mandatory sanction, 60+) |
| New Jersey N.J.S.A. § 56:8-19 (West 1989) | Oklahoma Okla. Stat. tit. 15, § 761.1(A) | | South Carolina S.C. Code Ann. 39-5-140(a) (willfully or knowingly) | | Nevada Nev. Rev. Stat. Ann. § 598.0973 (1995) (discretionary sanction; 65+) |
| Oregon Or. Rev. Stat. § 646.638(1) (1995) | Pennsylvania Pa. Stat. Ann. tit. 73, § 201-9.2(a) | | Tennessee Tenn. Code Ann. § 47-18-109(a)(3) (willful or knowing) | | Texas Tex. Bus. & Com. Code § 17.47(c)(2) (discretionary sanction, 65+) |
| Pennsylvania 73 Pa. Stat. § 201-9.2(a) (1996) | Rhode Island R.I. Gen. Laws § 6-13.1-5.2(a) (punitive damages are discretionary) | | Texas Tex. Bus. & Com. Code §§ 17.50(b)(1) | | Wisconsin Wis. Stat. § 100.264 (discretionary sanction, 62+) |

| Plaintiff Must Prove "Ascert-ainable Loss" | Plaintiff Must Prove "Actual Damages" | Treble Damages Without Def. Acting Wilfully or Intentionally | Treble Damages if Def. Acted Wilfully or Intentionally | Aggravating Circumstances Required for Treble Damages | Sanctions if Victim is Senior Citizen or Handicapped |
|---|---|---|---|---|---|
| Rhode Island R.I. Gen. laws § 6-13.1-5.2(a) (1996) | South Carolina S.C. Code Ann. § 39-5-140(a) | | Virginia Va. Code Ann. § 59.1-204(A) | | |
| South Carolina S.C. Code Ann. § 39-5-140(a) (West 1995) | Texas Tex. Bus. & Com. Code § 17.50 (allows economic damages and/or damages for "mental anguish") | | | | |
| Tennessee Tenn. Code Ann. § 47-18-109(a)(1) (1996) | Virginia Va. Code Ann. § 59.1-204 | | | | |
| West Virginia W. Va. Code § 46A-6-106(a) | | | | | |

**Also: Additional Penalty if Violation was Willful or Intentional:**

| Florida Fla. Stat. Ann. § 501.2075 | Illinois 815 Ill. Comp. Stat. Ann. 505/7(a)-(b) | Indiana Burns Ind. Code § 24-5-0.5-4(g) | Maryland Md. Code Ann. Com. Law § 13-406(c) | Michigan Mich. Comp. Laws § 445.905(1) | Oklahoma Okla. Stat. tit. 15 § 761.1(B) (penalty if unconscionable) |
|---|---|---|---|---|---|

7

IV.    **Statutes of Limitations or Repose.**

| State | Statutory Limitations Period and Statute | Limitations or Repose |
|-------|------------------------------------------|-----------------------|
| Alabama | 1 year from discovery; but not more than 4 years from transaction<br>Ala Code 8-19-14 | From the statute itself |
| Alaska | 2 years from discovery<br>Alaska Stat. 45.50.531(f) | From the statute itself |
| Arizona | 1 year<br>*Richards v. Powercraft Homes, Inc.*, 678 P.2d 449, 450 (Ariz. 1984) | From the gen. statutes |
| Arkansas | 5 years from transaction<br>Ark Code Ann. 4-88-115 | From the statute itself |
| California | 4 years from the date the cause of action accrued<br>Cal. Bus. & Prof. Code § 17208 | From the statute itself |
| Colorado | 3 years from discovery or 3 years from the date of the occurrence<br>Colo. Rev. Stat. 6-1-115 | From the statute itself |
| Connecticut | 3 years from the date of the occurrence<br>Conn. Gen. Stat. § 42-110g(f) | From the statute itself |
| Delaware | 3 years from the date the cause of action accrued<br>Del. Code Ann. tit. 10, § 8106 | From the gen. statutes |
| District of Columbia | 3 years<br>D.C. Code § 12-301(8) | From the gen. statutes |
| Florida | 4 years from transaction or 2 years after last payment in a transaction, whichever is later<br>Fl. Stat. Ann. § 501.207(5) | From the statute itself |
| Georgia | 2 years from discovery or 2 years after the end of a proceeding brought by the attorney general<br>Ga. Code Ann. § 10-1-401 | From the statute itself |
| Idaho | 2 years from the date the cause of action accrued<br>Idaho Code § 48-619 | From the statute itself |
| Illinois | 3 years from the date the cause of action accrued; period is tolled during the period that a proceeding by the attorney general is pending, plus 1 year after<br>815 Ill Comp. Stat. Ann 505/10a(e) | From the statute itself |
| Iowa | 5 years from the date the cause of action accrued<br>Iowa Code § 614.1(4) | From the gen. statutes |
| Kansas | 3 years from transaction<br>Kan. Stat. Ann. 60-512 | From the gen. statutes |

| State | Statutory Limitations Period and Statute | Limitations or Repose |
|-------|------------------------------------------|------------------------|
| Kentucky | 2 years from date of the violation or 1 year after termination of a proceeding by the attorney general<br>Ky. Rev. Stat. Ann. § 367.220(5) | From the statute itself |
| Louisiana | 1 year from transaction<br>La. Rev. Stat. 51:1409(e) | From the statute itself |
| Maryland | 3 years from date of accrual<br>Md. Cts. & Jud. Proc. Code Ann. § 5-101 (also ann. to § 13-408) | From the gen. statutes |
| Mississippi | 3 years from date of accrual<br>Miss. Code Ann. § 15-1-49 | From the gen. statutes |
| Missouri | 5 years from discovery<br>*Albert v. Grant Thornton*, 735 F. Supp. 1443, 1447-48 (W.D. Mo. 1990)<br>Mo. Rev. Stat. § 516.120 (for fraud, tolled until discovery) | From the gen. statutes |
| Montana | 2 years from discovery (for fraud)<br>Mont. Code Ann. § 27-2-203 | From the gen. statutes |
| Nebraska | 4 years from transaction<br>Neb. Rev. Stat. § 87-303.10 | From the statute itself |
| Nevada | 3 years<br>Nev. Rev. Stat. § 11.190(3)(a) | From the gen. statutes |
| New Hampshire | 3 years<br>N.H. Rev. Stat. Ann. § 358-A:3 IV-a<br>*Zee-Bar, Inc. v. Kaplan*, 792 F. Supp. 895, 901 (D.N.H. 1972) | From the statute itself |
| New Jersey | 6 years<br>N.J.S.A. 2A:14-1; *Mirra v. Holland America Line*, 751 A.2d 138, 140 (N.J. Super. Ct. App. Div. 2000) | From the gen. statutes |
| New York | 6 years; if based on fraud, tolled until discovery<br>N.Y. Civ. Prac. L. & R. § 213(8) | From the gen. statutes |
| North Carolina | 4 years from transaction; period tolled during the pendency of an action by the attorney general<br>N.C. Gen. Stat. 75-16.2 | From the statute itself |
| Ohio | 2 years from transaction, or 1 year after the termination of a proceeding by the attorney general, whichever is later<br>Oh. Rev. Code Ann. § 1345.10(C) | From the statute itself |
| Oregon | 1 year from discovery; period tolled during pendency of action by the attorney general<br>Or. Rev. Stat. § 646.638(6) | From the statute itself |

| State | Statutory Limitations Period and Statute | Limitations or Repose |
|-------|------------------------------------------|-----------------------|
| Pennsylvania | 6 years<br>42 Pa. Con. Stat. § 5527(b)<br>*Gabriel v. O'Hara*, 534 A.2d 488, 495 (Pa. Super Ct. 1987) | From the gen. statutes |
| South Carolina | 3 years from transaction or discovery<br>S.C. Code Ann. § 39-5-150 | From the statute itself |
| South Dakota | 2 years from discovery<br>S.D. Codified LAWS § 37-24-33 | From the statute itself |
| Tennessee | 1 year from discovery; but not more than 5 years from transaction<br>Tenn. Code Ann. § 47-18-110 | From the statute itself |
| Texas | 2 years from discovery; tolled for 180 days if defendant knowingly causes the delay in filing<br>Tex. Bus. & Com. Code § 17.565 | From the statute itself |
| Utah | later of 2 years from transaction, or 1 year after conclusion of proceedings initiated by a public prosecutor.<br>Utah Code Ann. 13-11-19(8) | From the statute itself |
| Vermont | 6 years from the date the cause of action accrued<br>Vt. Stat. Ann. tit. 12, § 511 | From the gen. statutes |
| Virginia | 2 years from the date the cause of action accrued<br>Va. Code Ann. 59.1-204.1(A) | From the statute itself |
| Washington | 4 years from transaction; period tolled during the pendency of an action by the attorney general<br>Wash. Rev. Code Ann. 19.86.120 | From the statute itself |
| West Virginia | 2 years from the date the cause of action accrued<br>W.Va. Code § 55-2-12 | From the gen. statutes |
| Wyoming | 1 year from discovery; but not more than 2 years from transaction, whichever occurs first<br>Wyo. Stat. § 40-12-109 | From the statute itself |

## V.    Examples of Varying "Safe Harbor" and Other Defenses.

| Conduct Authorized or Permitted by Federal or State Law/Regulations | Conduct or transaction must occur primarily inside the state | Conduct must affect the people of the state | Plaintiff must be a "consumer" or the transaction must have been a "consumer transaction" | Plaintiff must be either a "consumer or a competitor" | Claims based on providing a prof. service | Bona Fide Error |
|---|---|---|---|---|---|---|
| Arkansas Ark. Code Ann. § 4-88-101 | Connecticut Conn. Gen. Stat. § 42-110a | Alabama Ala. Code § 8-19-3(8) | Alabama Ala. Code § 8-19-10 | Connecticut *Miller v. Guimaraes*, 829 A.2d 422 (Conn. App. 2003) | North Carolina N.C. Gen. Stat. § 75-1.1(b) | Florida Fla. Stat. Ann. § 501.207 (4) |
| California *Cel-Tech Comm., Inc. v. L.A. Cellular Tel. Co.*, 20 Cal.4th 163 (1999) | Massachu-setts Mass. Ann. Laws ch. 93A, § 11 | Georgia Ga. Code Ann. §§ 10-1-391, -392(a)(9) | Colorado Colo. Rev. Stat. § 6-1-113(1)(a) | Louisiana *Marine & Indus. Healthcare Servs., Inc. v. LaVie*, 2003 WL 1193677 (E.D. La. Mar. 12, 2003) | Texas Tex. Bus. & Com. Code § 17.49(c) | Michi-gan Mich. Comp. Laws § 445.911 (6) |
| Colorado Colo. Rev. Stat. § 6-1-106(1)(a) | Missouri Mo. Rev. Stat. § 407.020(1) | Illinois 815 Ill. Comp. Stat. Ann. 505/1(f) | District of Columbia *Indep. Comm. Network, Inc. v. MCI*, 657 F. Supp. 785, 787 (D.D.C. 1987) | | | Missouri Mo. Rev. Stat. § 407.100(6) |
| Georgia Ga. Code Ann. § 10-1-396 | New York N.Y. Gen. Bus. Law § 349(a) | Missouri Mo. Rev. Stat. § 407.010(7) | Georgia Ga. Code Ann. § 10-1-392(a)(2) | | | Texas Tex. Bus. & Com. Code § 17.506 |
| Illinois 815 Ill. Comp. Stat. Ann. 505/10b(1) | | North Carolina N.C. Gen. Stat. § 75-1.1(c) | Illinois 815 Ill. Comp. Stat. 505/1(e) | | | Virginia Va. Code Ann. § 59.1-207 |

| | | | | | |
|---|---|---|---|---|---|
| Indiana<br>Ind. Code Ann. §<br>24-5-0.5-6(1)-(2) | | Pennsylvania<br>Pa. Stat. Ann.<br>tit. 73, § 201-<br>2(3) | Indiana<br>Burns Ind. Code<br>Ann. § 24-5-0.5-<br>2(1) | | |
| Massachusetts<br>Mass. Ann. Laws<br>ch. 93A § 3 | | Rhode Island<br>R.I. Gen.<br>Laws § 6-<br>13.1-1(5) | Maryland<br>Md. Code Ann.<br>§ 13-101(c) | | |
| Michigan<br>Mich Comp.<br>Laws §<br>445.904(a) | | South<br>Carolina<br>S.C. Code<br>Ann. § 39-5-<br>10(b) | Minnesota<br>*Kovtovich v.*<br>*K-Mart Corp.*,<br>88 F. Supp. 2d<br>975, 985 n.4 (D.<br>Minn. 1999) | | |
| New York<br>N.Y. Gen. Bus.<br>Law § 349(d) | | Texas<br>Tex. Bus. &<br>Com. Code §<br>17. 45(6) | Missouri<br>Mo. Rev. Stat. §<br>407.025 | | |
| Oklahoma<br>Okla. Stat. tit. 15,<br>§ 754 | | West<br>Virginia<br>W.Va. Code<br>§ 46A-102(6) | New Jersey<br>*City Check*<br>*Cashing, Inc. v.*<br>*Nat'l State Bank*,<br>582 A.2d 809,<br>811 (N.J. Super.<br>Ct. App. Div.<br>1990) | | |
| Rhode Island<br>R.I. Gen. Laws §<br>6-13.1-4 | | | Oklahoma<br>Okla. Stat. tit.<br>15, § 752(2) | | |
| South Carolina<br>S.C. Code Ann. §<br>39-5-40(a) | | | Oregon<br>*Investigators,*<br>*Inc. v. Harvey*,<br>633 P.2d 6, 7-9<br>(Or. App. 1981);<br>*Graham v. Kold*<br>*Kist Bev. Ice.*<br>*Inc.*, 607 P.2d<br>759, 761 (Or.<br>App. 1979) | | |
| South Dakota<br>S.D. Cod. Laws §<br>37-24-10 | | | Pennsylvania<br>Pa. Stat. Ann. tit.<br>73 § 201-9.2(a) | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| Tennessee<br>Tenn. Code Ann.<br>§ 47-18-111(a)(1) | | | Rhode Island<br>R.I. Gen. Laws §<br>6-13.1-5.2(a)<br>*Scully Signal*<br>*Co. v. Joyal*, 881<br>F. Supp. 727,<br>741-45 (D.R.I.<br>1995) | | | |
| Texas<br>Tex. Bus. & Com.<br>Code § 17.49(b) | | | Tennessee<br>Tenn. Code Ann.<br>§ 47-18-103(2) | | | |
| Virginia<br>Va. Code Ann. §<br>59.1-199(A) | | | Texas<br>Tex. Bus. &<br>Com. Code §<br>17.45(4) | | | |
| Washington<br>Wa. Rev. Code<br>Ann. § 19.86.170 | | | Virginia<br>Va. Code Ann. §<br>59.1-198 | | | |
| | | | West Virginia<br>W. Va. Code §<br>46A-6-102(2) | | | |

**Other State-specific defenses:**
California
Cal. Bus. & Prof. Code § 17200 - does not provide for private action for damages
Texas
Tex. Bus. & Com. Code § 17.49(g) - statute excludes claims based on transactions or a series of transactions which exceed $500,000.00
Texas
Tex. Bus. & Com. Code § 17.45(4) - businesses with assets of $25 million or more, or businesses controlled by a business with assets of $25 million or more, are precluded from bringing claims under the statute

| | |
|---|---|
| California | "If the Legislature has permitted certain conduct or considered a situation and concluded no action should lie, courts may not override that determination. When specific legislation provides a 'safe harbor,' plaintiffs may not use the [California] general unfair competition law to assault that harbor." *Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 182 (1999). |
| Illinois | Excludes from liability "actions . . . specifically authorized by laws administered by any regulatory body or offices acting under statutory authority of this State or the United States." 815 Ill. Comp. Stat. 505/10b(1). |
| New York | "[I]t shall be a complete defense that the . . . act or practice is . . . subject to and complies with the rules and regulations of, and the statutes administered by, . . . any official department, division, commission or agency of the United States . . . ." N.Y. Gen. Bus Law. § 349(d). |

13

| Washington | "Nothing in this chapter shall apply to . . . transactions permitted by any . . . regulatory body or officer acting under statutory authority of this state or the United States . . . ." RCW 19.86.170. |

## VI.   Examples of Varying Notice Requirements imposed on Plaintiffs.

| Alabama | Notice to defendant required at least 15 days prior to the filing action. Ala. Code § 8-19-10(e) (2000). |
| California | Notice to attorney general required before any appellate briefs filed. Cal. Bus. & Prof. Code § 17209. No action for damages may be maintained for a violation of section 1770 unless defendant notified of the need for correction, repair, or replacement and is given opportunity to make such correction. Cal. Civ. Code § 1782(c) (2001). |
| Connecticut | Notice to attorney general required. Conn. Gen. Stat. Ann. § 42-110g(c) (1996). |
| Georgia | Notice to defendant required at least 30 days prior to the filing action, as well as notice to the administrator. Ga. Code Ann. § 10-1-399(b), (g) (2000). |
| Illinois | Notice to attorney general required. 815 Ill. Comp. Stat. Ann. 505/10a(d) |
| Indiana | Consumer must give supplier notice 6 months after discovery, 1 year after the transaction, or by the end of the warranty period, except for injunction actions brought by the state; notice must state full nature of deceptive act and actual damages (Ind. Code Ann. § 24-5-0.5-5); before private suit, have to give notice to supplier and 30 days to respond to an offer to cure the problem; if the supplier accepts the offer, then he gets a reasonable time to make the cure (§ 24-5-0.5-4). |
| Kansas | Notice "shall be given to the attorney general, but failure to do so" is not a defense. Kan. Stat. Ann. § 50-634(g) (2001). |
| Louisiana | "Upon commencement of any action ... the plaintiff's attorney shall mail copy of the petition to the attorney general" but failure to conform with this subsection does not effect any of plaintiffs rights under this subsection. La. Rev. Stat. § 51:1409B. |
| Maryland | The consumer protection division shall attempt conciliation between the parties. Md. Code Ann. Com. Law §13-402 |
| Massachusetts | Notice to defendant required at least 30 days prior to the filing action. Mass. Gen. Laws ch. 93A, § 9(3) (2000). |
| Michigan | Notice to attorney general required. Mich. Comp. Laws § 445.912(1) |
| Minnesota | Service of process shall be as in any other civil suit. Minn. Stat. § 325F.70(2). |

| Mississippi | "In any private action brought under this chapter, the plaintiff must have first made a reasonable attempt to resolve any claim through an informal dispute settlement program approved by the attorney general." Miss. Code Ann. § 75-24-15(2) (2000). |
|---|---|
| Missouri | Notice to attorney general required.  Mo. Rev. Stat. § 407.025(7). |
| Oklahoma | Notice shall be made in accordance with the statutes of this state.  Okla. Stat. tit. 15, § 759 |
| Oregon | Party bring action shall mail copy to attorney general.  Or. Rev. Stat. § 646.638(2) (1999). |
| Rhode Island | Notice to attorney general required.  R.I. Gen. Laws § 6-13.1-5.2(c). |
| South Carolina | Notice to attorney general required.  S.C. Code Ann. § 39-5-140(b). |
| Texas | Notice to defendant required at least 60 days prior to the filing action, unless cannot do so without exceeding the limitations period or if the claim is a counterclaim to an existing suit; must be written notice stating the specific complaint and the amount of damages and fees to be sought; settlement offers can be made during those 60 days.  Tex. Bus. & Com. Code § 17.505(a) (2001). |

# APPENDIX "B"

# APPENDIX B

# VARIATIONS IN
# STATE UNJUST ENRICHMENT LAWS[1]

## I.   States Vary in the Type of Relationship Between the Parties Required to Succeed in an Unjust Enrichment Claim.

| States Where Indirect Relationship is Potentially Sufficient to State a Claim. | States Where Courts Have Applied the Remoteness Doctrine to Preclude Claims Based on Attenuated Injuries.[2] | States Requiring a Showing of Direct Dealings Between the Parties to State a Claim.[3] |
|---|---|---|
| **California** (possibly)<br>*See Hirsh v. Bank of Am.*, 107 Cal. App. 4th 708, 722 (2003)[4] | **Alabama**<br>*See Cavalier Homes, Inc. v. Pfizer, Inc.*, No. CV 04 J 3512 J, 2005 WL 4111324, at *1 (N.D. Ala. Mar. 10, 2005) (dismissing unjust enrichment claims for failure to show injury was proximate result of alleged conduct) | **Idaho**<br>*See Hayden Lake Fire Prot. Dist. v. Alcorn*, 111 P.3d 73, 91 (Idaho 2005) (requiring a "cognizable legal relationship between the parties") |
| **Tennessee** (possibly)<br>*See Freeman Indus. v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005); *but see Perry v. Am. Tobacco Co.*, 324 F.3d 845, 851 (6th Cir. 2003) (dismissing Tennessee unjust enrichment claim on remoteness grounds) | **Connecticut**<br>*Ganim v. Smith & Wesson Corp.*, 780 A.2d 98, 118-30 (Conn. 2001) | **Ohio**<br>*See Johnson v. Microsoft Corp.*, 834 N.E.2d 791, 799 (Ohio 2005) (unjust enrichment could not be shown due to lack of economic transaction between parties) |

---

[1] While these charts of state law variations demonstrate significant differences among the laws of various states relating to the claims asserted by Plaintiffs, they by no means constitute a complete analysis of the numerous variations in applicable state law.

[2] This list reflects only those states with case law affirmatively stating that a remoteness analysis applies to unjust enrichment claims. Unjust enrichment claims might be properly dismissed on these grounds in other states, as well, though no case law was located on that issue.

[3] Although not listed in this chart, unjust enrichment claims based on alleged antitrust violations for states that have not repealed *Illinois Brick* are also limited to plaintiffs that purchased directly from defendants. *See, e.g., In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365, 1380 (S.D. Fla. 2001).

[4] Defendants have not located California case law addressing whether plaintiffs may recover for remote injuries on unjust enrichment grounds, but at least one court has suggested that such claims are barred under California law. *See Muehlbauer v. Gen. Motors Corp.*, 431 F. Supp. 2d 847, 856 (N.D. Ill. 2006) (finding that despite the ability to bring unjust enrichment claim based on indirect conferral of a benefit under *Hirsch*, "the connection between detriment and benefit may be too attenuated to support any conferral of benefit from plaintiffs to defendant").

| States Where Indirect Relationship is Potentially Sufficient to State a Claim. | States Where Courts Have Applied the Remoteness Doctrine to Preclude Claims Based on Attenuated Injuries.[2] | States Requiring a Showing of Direct Dealings Between the Parties to State a Claim.[3] |
|---|---|---|
| | **Delaware**<br>*Republic of Panama v. Am. Tobacco Co.*, Nos. Civ. A 05C-07-181-RRC, 05C-07-180-RRC, 2006 WL 1933740, at *8 (Del. Super. Ct. June 23, 2006), *aff'd on other grounds sub nom.*, *State of Sao Paulo of the Federative Republic of Brazil v. Am. Tobacco Co.*, 919 A.2d 1116, 1125-26 (Del. 2007) | **Pennsylvania**<br>*Stutzle v. Rhonepoulenc S.A.*, No. 002768 Oct. Term 2002, 2003 WL 22250424, at *1 (Pa. Cty. Sept. 26, 2003) |
| | **D.C.**<br>*Serv. Employees Int'l Union Health & Welfare Fund v. Philip Morris Inc.*, 249 F.3d 1068, 1076 n.6 (D.C. Cir. 2001) | **South Carolina** (possibly)<br>*See In re Microsoft Corp. Antitrust Litig.*, 401 F. Supp. 2d 461, 465 (D. Md. 2005) (requiring duty owed by defendant to plaintiff) |
| | **Illinois**<br>*See Muehlbauer v. Gen. Motors Corp.*, 431 F. Supp. 2d 847, 856 (N.D. Ill. 2006) (applying Illinois law) | |
| | **Iowa**<br>*Southard v. Visa U.S.A., Inc.*, 734 N.W.2d 192, 199 (Iowa 2007) | |
| | **Maryland**<br>*See State v. Philip Morris Inc.*, No. 96122017, 1997 WL 540913, at *17 (Md. Cir. Ct. 1997) (claimed benefit "too speculative and remote" to enable recovery) | |
| | **Massachusetts**<br>*Mass. Laborers' Health & Welfare Fund v. Philip Morris, Inc.*, 62 F. Supp. 2d 236, 246 (D. Mass. 1999) (applying Massachusetts law) | |
| | **Mississippi**<br>*Owens Corning v. R.J. Reynolds Tobacco Co.*, 868 So. 2d 331, 340-43 (Miss. 2004) | |
| | **New Jersey**<br>*N.J. Carpenters Health Fund v. Philip Morris, Inc.*, 17 F. Supp. 2d 324, 344 (D.N.J. 1998) (applying New Jersey law) | |
| | **New York**<br>*Sperry v. Crompton Corp.*, 863 N.E.2d 1012, 1018 (N.Y. 2007) | |

| States Where Indirect Relationship is Potentially Sufficient to State a Claim. | States Where Courts Have Applied the Remoteness Doctrine to Preclude Claims Based on Attenuated Injuries.[2] | States Requiring a Showing of Direct Dealings Between the Parties to State a Claim.[3] |
|---|---|---|
| | **Texas**<br>*See State v. Am. Tobacco Co.*, 14 F. Supp. 2d 956, 972 (E.D. Tex. 1997) (applying Texas law) | |
| | **Washington**<br>*See State v. Am. Tobacco Co., Inc,* No. 96-2-15056-8 SEA, 1997 WL 714842, at *6 (Wash. Super. June 6, 1997) | |

II.    **States Vary in the Defendant's Scienter Required to State a Claim for Unjust Enrichment.**

| States Where Defendants Must Have Some Scienter of the Benefit Conferred.[5] | States With No Scienter Requirement. |
|---|---|
| **Connecticut**<br>*CBS Surgical Group, Inc. v. Holt*, 426 A.2d 819, 821 (Conn. Super. Ct. 1981) (requiring "[a]n appreciation or knowledge" of benefit) | **Alaska**<br>*Alaska Sales & Serv. v. Millet*, 735 P.2d 743, 746-47 (Alaska 1987) (requiring "appreciation" of the benefit received, but finding element satisfied based on enhanced value of defendant's property) |
| **Florida**<br>*Townsend Contracting, Inc. v. Jensen Civil Constr., Inc.*, 728 So. 2d 297, 303 (Fla. Dist. Ct. App. 1999) (requiring benefit "knowingly" accepted) | **Arkansas** (possibly)<br>*See Servewell Plumbing, LLC v. Summit Contractors, Inc.*, 210 S.W.3d 101, 112 (Ark. 2005) (describing unjust enrichment elements, none of which involve scienter) |
| **Georgia**<br>*Reidling v. Holcomb*, 483 S.E.2d 624, 626 (Ga. Ct. App. 1997) (requiring receiving party "knew" of benefit) | **Arizona** (possibly)<br>*See Sierra Vista v. Conchise Enters., Inc.*, 697 P.2d 1125, 1131 (Ariz. Ct. App. 1984) (listing unjust enrichment elements, none of which involve scienter) |
| **Idaho**<br>*Aberdeen-Springfield Canal Co. v. Peiper*, 982 P.2d 917, 923 (Idaho 1999) (requiring "appreciation" of the benefit received) | **California** (possibly)<br>*See Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000) (listing unjust enrichment elements, none of which involve scienter), *but see Van de Kamp v. Bank of Am. Nat'l Trust & Savs. Ass'n*, 204 Cal. App. 3d 819, 855 (1988) (stating in dicta that "full appreciation of the facts" is required)[6] |
| **Illinois**<br>*Yugoslav-Am. Cultural Ctr., Inc. v. Parkway Bank & Trust Co.*, 763 N.E.2d 360, 367 (Ill. App. Ct. 2001) (requiring defendant "knowingly" accepted benefit) | **Colorado**<br>*DCB Constr. Co., Inc. v. Cent. City Dev. Co.*, 965 P.2d 115, 119-20 (Colo. 1998) |
| **Iowa**<br>*Iowa Waste Sys., Inc. v. Buchanan County*, 617 N.W.2d 23, 30 (Iowa Ct. App. 2000) (requiring that the defendant have an "appreciation of receiving the benefit") | **D.C.** (possibly)<br>*See News World Communications, Inc. v. Thompsen*, 878 A.2d 1218, 1222 (D.C. 2005) (listing unjust enrichment elements, none of which involve scienter) |

---

[5] Some courts require that the defendant "appreciated" the benefit conferred. For most states, it is unclear exactly what is meant by that phrase, but it is most often interpreted by courts as meaning knowledge or acquiescence. *See DCB Constr. Co., Inc. v. Cent. City Dev. Co.*, 965 P.2d 115, 119-20 (Colo. 1998). Thus, states requiring "appreciation" are generally listed here as requiring scienter. But some courts interpret it as meaning only that the benefit conferred is of value to the defendant. *See id.*

[6] A defendant's knowledge is sometimes discussed in determining whether retention of a benefit is unjust when the benefit was transferred to the defendant because of the plaintiff's mistake. *See First Nationwide Savs. v. Perry*, 11 Cal. App. 4th 1657, 1663 (1992). That is not an issue in this case.

| States Where Defendants Must Have Some Scienter of the Benefit Conferred.[5] | States With No Scienter Requirement. |
|---|---|
| **Kansas**<br>*J.W. Thompson Co. v. Welles Prods. Corp.*, 758 P.2d 738, 745 (Kan. 1988) (requiring "an appreciation or knowledge" of benefit) | **Hawaii** (possibly)<br>*See Small v. Badenhop*, 701 P.2d 647, 654 (Haw. 1985) (describing unjust enrichment elements, none of which involve scienter) |
| **Kentucky**<br>*Guar. Elec. Co. v. Big Rivers Elec. Corp.*, 669 F. Supp. 1371, 1380-81 (W.D. Ky. 1987) (requiring benefit result in an "appreciation" by the defendant) | **Indiana** (possibly)<br>*See Bayh v. Sonnenburg*, 573 N.E.2d 398, 408 (Ind. 1991) (listing unjust enrichment elements, none of which involve scienter) |
| **Maine**<br>*A.F.A.B., Inc. v. Town of Old Orchard Beach,* 610 A.2d 747, 749 (Me. 1992) (requiring "an appreciation or knowledge" of benefit) | **Louisiana** (possibly)<br>*Salley v. Colonial Marine Indus. Inc.*, 680 So. 2d 1242, 1252 (La. App. 1996) (listing unjust enrichment elements, none of which involve scienter) |
| **Maryland**<br>*County Comm'rs of Caroline County v. J. Roland Dashiell & Sons, Inc.*, 747 A.2d 600, 607 n.7 (Md. 2000) (requiring defendant have an "appreciation or knowledge" of benefit) | **Michigan**<br>*Franklin Bank, N.A. v. Zero Plus Advantage*, No. 212712, 2001 WL 682228, at *3 (Mich. App. Apr. 20, 2001) ("Michigan law does not require a showing of knowledge . . . to find that a party was unjustly enriched.") |
| **Minnesota**<br>*Service Master of St. Cloud v. GAB Bus. Servs., Inc.*, 544 N.W.2d 302, 306 (Minn. 1996) (requiring benefit be "knowingly" received) | **Mississippi** (possibly)<br>*See Dew v. Langford*, 666 So. 2d 739, 745 (Miss. 1995) (describing unjust enrichment elements, none of which involve scienter) |
| **Missouri**<br>*Graves v. Berkowitz*, 15 S.W.3d 59, 61 (Mo. Ct. App. 2000) (requiring defendant have "appreciation" of benefit) | **Nebraska** (possibly)<br>*See Kanne v. Visa USA, Inc.*, 723 N.W.2d 293, 302 (Neb. 2006) (listing unjust enrichment elements, none of which involve scienter) |
| **Nevada**<br>*Topaz Mut. Co. v. Marsh*, 839 P.2d 606, 613 (Nev. 1992) (requiring "appreciation" of benefit) | **New Jersey** (possibly)<br>*See VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 526 (N.J. 1994) (describing unjust enrichment elements, none of which involve scienter) |
| **New Hampshire**<br>*Kowalski v. Cedars of Portsmouth Condo. Ass'n*, 769 A.2d 344, 347 (N.H. 2001) (requiring unjust enrichment through wrongful acts or "passive acceptance") | **New York** (possibly)<br>*See Wiener v. Lazard Freres & Co.*, 672 N.Y.S.2d 8, 13 (N.Y. 1998) (describing unjust enrichment elements, none of which involve scienter) |
| **New Mexico**<br>*Romero v. Bank of the Southwest*, 83 P.3d 288, 296 (N.M. Ct. App. 2003) (requiring the defendant "knowingly benefits" at plaintiff's expense) | **North Dakota** (possibly)<br>*See Ritter, Laber & Assocs. v. Koch Oil, Inc.*, 680 N.W.2d 634, 642 (N.D. 2004) (describing unjust enrichment elements, none of which involve scienter) |
| **North Carolina**<br>*Booe v. Shadrick*, 369 S.E.2d 554, 556 (N.C. 1988) (requiring the defendant "consciously accepted" the benefit) | **Oklahoma** (possibly)<br>*See Dollar Rent A Car Sys. v. P.R.P. Enters.*, No. 01-cv-698-JHP-FHM, 2006 U.S. Dist. LEXIS 29857, at *71 (N.D. Okla. 2006) (describing unjust enrichment elements, none of which involve scienter) |
| **Ohio**<br>*Johnson v. Microsoft Corp.*, 834 N.E.2d 791, 799 (Ohio 2005) (requiring defendant have "knowledge" of benefit) | **Texas** (possibly)<br>*See Heldenfels Bros., Inc. v. Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992) (describing unjust enrichment elements, none of which involve scienter) |

| States Where Defendants Must Have Some Scienter of the Benefit Conferred.[5] | States With No Scienter Requirement. |
|---|---|
| **Oregon** *Edward D. Jones & Co. v. Mishler*, 983 P.2d 1086, 1101 (Or. Ct. App. 1999) (requiring defendant's "awareness" of benefit conferred) | **Vermont** (possibly) *See Winey v. William E. Dailey, Inc.*, 636 A.2d 744, 751 (Vt. 1993) (describing unjust enrichment elements, none of which involve scienter) |
| **Pennsylvania** *Wiernik v. PHH US Mortgage Corp.*, 736 A.2d 616, 622 (Pa. Super. Ct. 1999) (requiring defendant have "appreciation" of benefit) | **West Virginia** (possibly) *See Prudential Ins. Co. of Am. v. Couch*, 376 S.E.2d 104, 108 (W. Va. 1988) (describing unjust enrichment elements, none of which involve scienter) |
| **Rhode Island** *Narragansett Elec. Co. v. Carbone*, 898 A.2d 87, 99 (R.I. 2006) (requiring defendant have "appreciation" of benefit) | |
| **South Dakota** *Mack v. Mack*, 613 N.W.2d 64, 69 (S.D. 2000) (requiring defendant to be "cognizant" of benefit) | |
| **Tennessee** *Freeman Indus. LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005) (requiring defendant have "appreciation" of benefit) | |
| **Utah** *Am. Towers Owners Ass'n, Inc. v. CCI Mech., Inc.*, 930 P.2d 1182, 1192 (Utah 1996) (requiring defendant have an "appreciation or knowledge" of benefit) | |
| **Virginia** *Nossen v. Hoy*, 750 F. Supp. 740, 744-45 (W.D. Va. 1990) (applying Virginia law) (requiring defendant have knowledge of conferring of benefit) | |
| **Washington** *Bailie Communications, Ltd. v. Trend Bus. Sys., Inc.*, 810 P.2d 12, 18 (Wash. Ct. App. 1991) (requiring defendant have an "appreciation or knowledge" of benefit) | |
| **Wisconsin** *Puttkammer v. Minth*, 266 N.W.2d 361, 363 (Wis. 1978) (requiring defendant have an "appreciation or knowledge" of benefit) | |

**States**

| States Where Unjust Enrichment Is Considered an Action or Remedy at Equity.[7] | States Where Unjust Enrichment Is Considered an Action or Remedy at Law. | States Where it is Unclear Whether Unjust Enrichment is an Action or Remedy at Law or at Equity, or Where the Nature of the Claim is Based on the Circumstances of Each Case. |
|---|---|---|
| **Alaska**<br>*State, Dep't of Rev., Child Support Enforcement Div. v. Wetherelt*, 931 P.2d 383, 390 n.11 (Alaska 1997) | **Florida**<br>*Della Ratta v. Della Ratta*, 927 So. 2d 1055, 1060 (Fla. Ct. App. 2006) | **California**<br>*Compare McBride v. Boughton*, 123 Cal. App. 4th 379, 388 n.6 (2004) (describing restitution resulting from unjust enrichment as an "equitable remedy") *with Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 728 (2000) (restitutionary claim was "legal in nature" despite application of equitable principles) |
| **Arizona**<br>*City of Sierra Vista v. Conchise Enters., Inc.*, 697 P.2d 1125, 1131 (Ariz. Ct. App. 1984) | **Indiana**<br>*Nehi Beverage Co., Inc. of Indianapolis v. Petri*, 537 N.E.2d 78, 85 (Ind. Ct. App. 1989) | **Connecticut**<br>*Gagne v. Vaccaro*, 835 A.2d 491, 495-96 (Conn. App. Ct. 2003) (action can be either one in law or equity) |
| **Arkansas**<br>*First Nat'l Bank of Dewitt v. Cruthis*, 203 S.W.3d 88, 93-94 (Ark. 2005) | **Illinois**<br>*Partipilo v. Hallman*, 510 N.E.2d 8, 10-11 (Ill. App. Ct. 1987) | **Georgia**<br>*Hollified v. Monte Vista Biblical Gardens, Inc.*, 553 S.E.2d 662, 669 (Ga. Ct. App. 2001) ("The theory of unjust enrichment arises both at law and equity.") |
| **Colorado**<br>*Salzman v. Bachrach*, 996 P.2d 1263, 1265 (Colo. 2000) | **West Virginia**<br>*Realmark Devs., Inc. v. Ranson*, 588 S.E.2d 150, 153 (W.V. 2003) | **Maryland**<br>*Alternatives Unlimited, Inc. v. New Baltimore City Bd. of Sch. Comm'rs*, 843 A.2d 252, 279 (Md. Ct. Spec. App. 2004) (finding unjust enrichment is an action at law, but restitution through a constructive trust is an equitable remedy) |

---

[7]   Defendants are mindful that, in some States, the determination of whether an unjust enrichment claim arises at law or at equity is not always well-settled or clear from the case law. *See, e.g., Della Ratta v. Della Ratta*, 927 So. 2d 1055, 1060 n.2 (Fla. App. 2006) (explaining that action was at law and that prior case law discussing unjust enrichment as "equitable in nature" meant only that the claim is based on "fairness"). The cases listed herein all suggest that the State treats the claim as arising in equity, but courts in all States have not squarely addressed this issue.

| States Where Unjust Enrichment Is Considered an Action or Remedy at Equity.[7] | States Where Unjust Enrichment Is Considered an Action or Remedy at Law. | States Where it is Unclear Whether Unjust Enrichment is an Action or Remedy at Law or at Equity, or Where the Nature of the Claim is Based on the Circumstances of Each Case. |
|---|---|---|
| **D.C.**<br>*Jordan Keys & Jessamy, LLP v. St. Paul Fire & Marine Ins. Co.*, 870 A.2d 58, 62-64 (D.C. 2005) | | **Missouri**<br>*Blue Cross Health Servs., Inc. v. Sauer*, 800 S.W.2d 72, 75 (Mo. Ct. App. 1990) (action can be either one at law or at equity depending on circumstances of case) |
| **Idaho**<br>*Mannos v. Moss*, 155 P.3d 1166, 1173 (Idaho 2007) | | **Nebraska**<br>*Collection Bureau of Grand Island, Inc. v. Fry*, 610 N.W.2d 442, 446-48 (Neb. Ct. App. 2000) (whether unjust enrichment action is in law or equity depends on the circumstances of the case) |
| **Iowa**<br>*Iowa Waste Sys., Inc. v. Buchanan County*, 617 N.W.2d 23, 30 (Iowa Ct. App. 2000) | | **Ohio**<br>*Santos v. Ohio Bureau of Workers' Comp.*, 801 N.E.2d 441, 444 (Ohio 2004) (restitution has been available both in equity and in law as the remedy for an unjust enrichment of one party at the expense of another) |
| **Kansas**<br>*Haz-Mat Response, Inc. v. Certified Waste Servs. Ltd.*, 910 P.2d 839, 846-47 (Kan. 1996) | | **Texas**<br>*Harker Heights v. Sun Meadows Land, Ltd.*, 830 S.W.2d 313, 317 (Tex. App. 1992) (The law of restitution for unjust enrichment emerged both in law and in equity) |
| **Kentucky**<br>*Haeberle v. St. Paul Fire & Marine Ins. Co.*, 769 S.W.2d 64, 67 (Ky. Ct. App. 1989) | | **Wisconsin**<br>*CleanSoils Wis., Inc. v. Wisconsin Dep't of Transp.*, 599 N.W.2d 903, 909-10 (Wis. Ct. App. 1999) (whether unjust enrichment action is in law or equity depends on the circumstances of the case) |
| **Louisiana**<br>*Salley v. Colonial Marine Indus., Inc.*, 680 So. 2d 1242, 1251-52 (La. Ct. App. 1996) | | |
| **Maine**<br>*Aladdin Elec. Assocs. v. Town of Old Orchard Beach*, 645 A.2d 1142, 1144-46 (Me. 1994) | | |
| **Massachusetts**<br>*Keller v. O'Brien*, 683 N.E.2d 1026, 1029 (Mass. 1997) | | |

| States Where Unjust Enrichment Is Considered an Action or Remedy at Equity.[7] | States Where Unjust Enrichment Is Considered an Action or Remedy at Law. | States Where it is Unclear Whether Unjust Enrichment is an Action or Remedy at Law or at Equity, or Where the Nature of the Claim is Based on the Circumstances of Each Case. |
|---|---|---|
| **Michigan**<br>*Dean v. Michigan Dep't of Natural Res.*, 247 N.W.2d 876, 880 (Mich. 1976) | | |
| **Minnesota**<br>*Southtown Plumbing, Inc. v. Har-Ned Lumber Co.*, 493 N.W.2d 137, 140 (Minn. Ct. App. 1992) | | |
| **Mississippi**<br>*Union Nat'l Life Ins. Co. v. Crosby*, 870 So. 2d 1175, 1181-82 (Miss. 2004) | | |
| **Montana**<br>*Cate-Schweyen v. Cate*, 15 P.3d 467, 474 (Mont. 2000) | | |
| **Nevada**<br>*In re Wal-Mart Wage & Hour Empl. Practices Litig.*, 490 F. Supp. 2d 1091, 1125 (D. Nev. 2007) | | |
| **New Hampshire**<br>*Parsons Infrastructure & Tech. Group, Inc. v. Gilbane Bldg. Co.*, No. 05-cv-01-PB, 2005 U.S. Dist. LEXIS 27030, at *2 (D.N.H. Nov. 7, 2005) | | |
| **New Jersey**<br>*Nat'l Amusements, Inc. v. New Jersey Turnpike Auth.*, 619 A.2d 262, 267 (N.J. Super. Ct. Law. Div. 1992), *aff'd*, 645 A.2d 1194 (N.J. Super. Ct. App. Div. 1994) | | |
| **New York**<br>*Paramount Film Distrib. Corp. v. State*, 285 N.E.2d 695, 698 (N.Y. 1972) | | |
| **North Carolina**<br>*Hinson v. United Fin. Servs., Inc.*, 473 S.E.2d 382, 385 (N.C. Ct. App. 1996) | | |
| **North Dakota**<br>*Ritter, Laber & Assocs. v. Koch Oil, Inc.*, 680 N.W.2d 634, 642 (N.D. 2004) | | |

| States Where Unjust Enrichment Is Considered an Action or Remedy at Equity.[7] | States Where Unjust Enrichment Is Considered an Action or Remedy at Law. | States Where it is Unclear Whether Unjust Enrichment is an Action or Remedy at Law or at Equity, or Where the Nature of the Claim is Based on the Circumstances of Each Case. |
|---|---|---|
| **Oklahoma** *Dollar Rent A Car Sys. v. P.R.P. Enters.*, No. 01-cv-698-JHP-FHM, 2006 U.S. Dist. LEXIS 29857, at *71 (N.D. Okla. May 8, 2006) | | |
| **Oregon** *Osborne v. Nottley*, 136 P.3d 81, 83 (Or. Ct. App. 2006) | | |
| **Rhode Island** *Di Biasio v. Di Fazio*, 239 A.2d 719, 723 (R.I. 1968) | | |
| **South Carolina** *Barrett v. Miller*, 321 S.E.2d 198, 199 (S.C. Ct. App. 1984) | | |
| **Utah** *Five F, L.L.C. v. Heritage Savs. Bank*, 81 P.3d 105, 109 (Ut. Ct. App. 2003) | | |
| **Wyoming** *Jacoby v. Jacoby*, 100 P.3d 852, 856 (Wyo. 2004) | | |

**IV.** **States Vary in Whether the Unjust Enrichment Doctrine Requires that Plaintiffs Exhaust Remedies Against Parties With Whom They Are in Privity and/or Whether There Must Be No Other Available Remedy.**

| States Where Plaintiffs Must Prove They Have Exhausted Their Remedies Against Parties with Whom They Are in Privity. | States Where Plaintiffs Must Show They Lack Any Other Remedy or Have an Inadequate Remedy. | States Where There is No Requirement of Exhaustion or Lack of Other Remedies. |
|---|---|---|
| **Florida**<br>*See Commerce Partnership 8098 Ltd. Partnership v. Equity Contracting Co.*, 695 So. 2d 383, 388-90 (Fla. Ct. App. 1997) | **Arizona**<br>*Cmty. Guardian Bank v. Hamlin*, 898 P.2d 1005, 1008 (Ariz. Ct. App. 1995) | **D.C.** (possibly)<br>*See Jordan Keys & Jessamy, LLP v. St. Paul Fire & Marine Ins. Co.*, 870 A.2d 58, 62-63 (D.C. 2005) (discussing unjust enrichment elements, none of which involve this issue) |
| **Idaho**<br>*See Idaho Lumber, Inc. v. Buck*, 710 P.2d 647, 655 (Idaho Ct. App. 1985) | **California** (possibly)<br>*See Ramona Manor Convalescent Hosp. v. Care Enters.*, 177 Cal. App. 3d 1120, 1140 (1986) (requiring this showing for equitable unjust enrichment claim) | **Hawaii** (possibly)<br>*See Small v. Badenhop*, 701 P.2d 647, 654 (Haw. 1985) (describing unjust enrichment elements, none of which involve availability of other remedies) |
| **Kentucky**<br>*Guarantee Elec. Co. v. Big Rivers Electric Corp.*, 669 F. Supp. 1371, 1381 (W. D. Ky. 1987) (applying Kentucky law) | **Connecticut** (possibly)<br>*See United States Fid. & Guar. Co. v. Metro. Prop. & Liab. Ins. Co.*, 521 A.2d 1048, 1050 (Conn. App. Ct. 1987) (requiring this showing for equitable unjust enrichment claim) | **Indiana** (possibly)<br>*See Bayh v. Sonnenburg*, 573 N.E.2d 398, 408 (Ind. 1991) (listing unjust enrichment elements, none of which involve availability of other remedies) |
| **Oregon**<br>*See Tum-A-Lum Lumber v. Patrick*, 770 P.2d 964, 965 (Or. Ct. App. 1989) | **Delaware**<br>*Canter Fitzgerald, L.P. v. Cantor*, 724 A.2d 571, 585 (Del. Ch. 1998) | **Illinois**<br>*Partipilo v. Hallman*, 510 N.E.2d 8, 10-11 (Ill. App. Ct. 1987) |
| **Tennessee**<br>*Freeman Indus. v. Eastman Chem. Co.*, 172 S.W.3d 512, 526 (Tenn. 2005) | **Iowa**<br>*Iowa Waste Sys., Inc. v. Buchanan County*, 617 N.W.2d 23, 30 (Iowa Ct. App. 2000) | **Kansas** (possibly)<br>*See Haz-Mat Response, Inc. v. Certified Waste Servs. Ltd.*, 910 P.2d 839, 847 (Kan. 1996) (listing unjust enrichment elements, none of which involve availability of other remedies) |
| **Utah**<br>*See Commercial Fixtures & Furnishings, Inc. v. Adams*, 564 P.2d 773, 774 (Utah 1977) | **Louisiana**<br>*Salley v. Colonial Marine Indus., Inc.*, 680 So. 2d 1242, 1251-52 (La. Ct. App. 1996) | **Missouri** (possibly)<br>*See Zipper v. Health Midwest*, 978 S.W.2d 398, 412 (Mo. Ct. App. 1998) (discussing unjust enrichment elements, none of which involve availability of other remedies) |

| States Where Plaintiffs Must Prove They Have Exhausted Their Remedies Against Parties with Whom They Are in Privity. | States Where Plaintiffs Must Show They Lack Any Other Remedy or Have an Inadequate Remedy. | States Where There is No Requirement of Exhaustion or Lack of Other Remedies. |
|---|---|---|
| | **Massachusetts** *Santagate v. Tower*, 833 N.E.2d 171, 176 (Mass. App. Ct. 2005) | **Oregon** (possibly) *See Volt Servs. Group v. Adecco Empl. Servs., Inc.*, 35 P.3d 329, 337 (Or. Ct. App. 2001) (discussing unjust enrichment elements, none of which involve this issue) |
| | **Minnesota** *Service Master of St. Cloud v. GAB Bus. Servs., Inc.*, 544 N.W.2d 302, 305 (Minn. 1996) | **Rhode Island** (possibly) *See Narragansett Elec. Co. v. Carbone*, 898 A.2d 87, 99 (R.I. 2006) (discussing unjust enrichment elements, none of which involve this issue) |
| | **Nevada** *In re Wal-Mart Wage & Hour Empl. Practices Litig.*, 490 F. Supp. 2d 1091, 1125 (D. Nev. 2007) | **Texas** (possibly) *See Heldenfels Bros., Inc. v. Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992) (discussing unjust enrichment elements, none of which involve this issue) |
| | **New Hampshire** *Parsons Infrastructure & Tech. Group, Inc. v. Gilbane Bldg. Co.*, No. 05-cv-01-PB, 2005 U.S. Dist. LEXIS 27030, at *2 (D.N.H. Nov. 7, 2005) | |
| | **New Jersey** *Nat'l Amusements, Inc. v. New Jersey Turnpike Auth.*, 619 A.2d 262, 267 (N.J. Super. Ct. Law Div. 1992) | |
| | **New York** *Bongat v. Fairview Nursing Care Ctr., Inc.*, 341 F. Supp. 2d 181, 188-89 (E.D.N.Y. 2004) (applying New York law) | |
| | **North Carolina** *Jefferson Standard Insurance Co. v. Guilford County*, 34 S.E.2d 430, 434 (N.C. 1945) | |
| | **North Dakota** *Schroeder v. Buckholz*, 622 N.W.2d 202, 207 (N.D. 2001) | |
| | **Oklahoma** *Robinson v. Southerland*, 123 P.3d 35, 45 (Okla. Ct. App. 2005) | |
| | **South Carolina** *Barrett v. Miller*, 321 S.E.2d 198, 199 (S.C. Ct. App. 1984) | |

| States Where Plaintiffs Must Prove They Have Exhausted Their Remedies Against Parties with Whom They Are in Privity. | States Where Plaintiffs Must Show They Lack Any Other Remedy or Have an Inadequate Remedy. | States Where There is No Requirement of Exhaustion or Lack of Other Remedies. |
| --- | --- | --- |
| | **Vermont**<br>*Smith v. Thibault*, 168 A.2d 729, 731 (Vt. 1961) | |