1   GIBSON, DUNN & CRUTCHER LLP
    JOEL S. SANDERS, SBN 107234,
2   JSanders@gibsondunn.com
    G. CHARLES NIERLICH, SBN 196611,
3   GNierlich@gibsondunn.com
    JOSHUA D. HESS, SBN 244115,
4   Jhess@gibsondunn.com
    REBECCA JUSTICE LAZARUS, SBN 227330,
5   RJustice@gibsondunn.com
    One Montgomery Street, Suite 3100
6   San Francisco, California 94104
    Telephone: (415) 393-8200
7   Facsimile: (415) 986-5309

8   Attorneys for Defendants
    MICRON TECHNOLOGY, INC. AND
9   MICRON SEMICONDUCTOR PRODUCTS, INC.

10  [Additional counsel on signature page.]

11                  UNITED STATES DISTRICT COURT

12            FOR THE NORTHERN DISTRICT OF CALIFORNIA

13

14  | In Re DYNAMIC RANDOM ACCESS | Master File No.: M-02-1486-PJH |
15  | MEMORY (DRAM) ANTITRUST | |
    | LITIGATION | MDL NO. 1486 |
16  | | |
17  | | |

18  *This Document Relates to:*          **NOTICE OF MOTION AND MOTION TO**
                                         **DISMISS AMENDED COMPLAINT;**
19  STATE OF NEW YORK,                   **MEMORANDUM OF POINTS AND**
                                         **AUTHORITIES IN SUPPORT**
20           Plaintiff,

21         v.

22  MICRON TECHNOLOGY, INC., *et al.*,   **ORAL ARGUMENT REQUESTED**

23           Defendants.

24                                       Hearing Date:    January 16, 2008
       (Case No. C 06-6436 PJH)          Hearing Time:    9:00 a.m.
25                                       Location:        Courtroom 3, 17th Floor
                                         Judge:           Hon. Phyllis J. Hamilton
26

27

28

Gibson, Dunn &
Crutcher LLP

1

## NOTICE OF MOTION AND MOTION

2 TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3       PLEASE TAKE NOTICE that Defendants Micron Technology, Inc., Micron Semiconductor

4 Products, Inc., Infineon Technologies AG, Infineon Technologies North America Corporation, Hynix

5 Semiconductor Inc., Hynix Semiconductor America Inc., Mosel Vitelic Corporation, Mosel Vitelic

6 Inc., Nanya Technology Corporation, Nanya Technology Corporation USA, Elpida Memory, Inc.,

7 Elpida Memory (USA) Inc., and NEC Electronics America, Inc. ("Defendants") will and hereby do

8 move this Court for an Order dismissing certain portions of the Amended Complaint in the above

9 entitled action pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on

10 which relief may be granted.  Specifically, Defendants seek dismissal of Plaintiff's Sherman Act and

11 Donnelly Act claims to the extent they purport to claim recovery for entities other than the State of

12 New York.  Defendants also seek dismissal of Plaintiff's claim for damages on behalf of natural

13 persons pursuant to New York Executive Law 63(12).

14       This motion shall be heard on January 16, 2008, at 9:00 a.m., or as soon thereafter as the

15 matter may be called, in the courtroom of the Honorable Phyllis J. Hamilton, United States District

16 Judge, United States District Court, 450 Golden Gate Ave., San Francisco, California, 94102.

17       This motion is based upon this Notice of Motion; the accompanying Memorandum of Points

18 and Authorities; the complete files in these actions; argument of counsel; and such other and further

19 matters as this Court may consider.

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ............................................................................................. 1

II.  PROCEDURAL BACKGROUND ................................................................... 3

    A.   The Complaint and Defendants' Motion to Dismiss ........................... 3

    B.   The Court's August 31, 2007 Order ................................................... 5

    C.   The Amended Complaint ..................................................................... 7

III. STANDARD OF REVIEW .............................................................................. 9

IV.  ARGUMENT ................................................................................................... 9

    A.   Plaintiff's Claim Under the Sherman Act (First Claim) Should
        Be Dismissed......................................................................................... 9

        1.   Plaintiff's Amendment Of Its Claim Reaches Outside
            The Bounds Allowed By This Court's Order By
            Alleging A New Theory......................................................... 9

        2.   Plaintiff Has Not Adequately Alleged A Valid
            "Assignment" of The OEMs' Claims To The State............................ 10

        3.   The Amended Complaint Fails to Provide The
            Specificity Required As To The Government Entities
            Plaintiff Seeks to Represent ................................................. 11

    B.   Plaintiffs' Claims For Damages Under the Donnelly Act
        (Second and Third Claims) Should Be Dismissed, In Part,
        Because They Impermissibly Assert Claims of Governmental
        Entities ................................................................................................. 13

        1.   Plaintiff's Second Claim Should Be Dismissed With
            The Exception Of Its Claim For Civil Penalties .................................. 13

        2.   Plaintiff's Third Claim Should Be Dismissed Because It
            Provides No Independent Basis For A Claim ..................................... 14

    C.   Plaintiff's Claim for Damages On Behalf Of Natural Persons
        Under Executive Law 63(12) (Fourth Claim) Should Be
        Dismissed............................................................................................. 15

        1.   New York Law Bars Plaintiff's Claim Under Executive
            Law 63(12) Because It Is Too Remote From The
            Alleged Violation ................................................................. 16

         2.   Plaintiff's Claim Is Also Expressly Barred By The
            Sherman Act and the Donnelly Act ..................................... 17

V.   CONCLUSION ................................................................................................ 20

i

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

## CASES

Bell Atl. Corp. v. Twombly,
   127 S. Ct. 1955 (2007) ......................................................................................... 9, 11

Block v. North Dakota ex rel. Board of Univ. and School Lands,
   461 US. 273 (1983) .................................................................................................. 19

Blue Cross and Blue Shield v. Philip Morris USA,
   3 N.Y.3d 200 (N.Y. Ct. App. 2004) .................................................................... 16, 17

Brown v. General Services Administration,
   425 U.S. 820 (1976) ................................................................................................. 19

Ho v. Visa U.S.A.,
   16 A.D.3d 256 (N.Y. App. Div. 2005) .................................................................. 16, 17

Illinois Brick Co. v. Illinois,
   431 U.S. 720 (1977) ............................................................................................... 5, 17

Lefkowitz v. Colorado State Christian College of the Church of the Inner Power, Inc.,
   76 Misc. 2d 50 (N.Y. Sup. Ct. 1973) ................................................................... 16, 17

Morton v. Mancari,
   417 U.S. 535 (1974) ................................................................................................. 19

New York v. Daicel Chemical Industries, Ltd.,
   2007 N.Y. Slip. Op. 5827 (N.Y. App. Div. 2007) ..................................................... 16

New York v. Feldman,
   210 F. Supp. 2d 294 (S.D.N.Y. 2002) ...................................................................... 19

People v. American Motor Club, Inc.,
   582 N.Y.S.2d 688 (1st Dept. 1992) .......................................................................... 19

People v. Concert Connection, Ltd.,
   629 N.Y.S.2d 254 (2nd Dept. 1995) ......................................................................... 19

State of New York v. Cortelle Corp.,
   38 N.Y.2d 83 (N.Y. Ct. App. 1975) .......................................................................... 18

Stonite Products Co. v. Melvin Lloyd Co.,
   315 U.S. 561 (1942) ................................................................................................. 19

United States v. Beggerly,
   524 U.S. 38 (1998) ................................................................................................... 11

ii

# TABLE OF AUTHORITIES
[Continued]

Page(s)

## STATUTES

15 U.S.C. § 15 ................................................................................................. 5, 11

Fed. R. Civ. Pro. 15(a) ........................................................................................ 10

Gen. Bus. L. § 340(1) ............................................................................ 4, 7, 13, 14

Gen. Bus. L. § 340(5) ................................................................................ 4, 13, 14

Gen. Bus. L. § 340(6) ........................................................................................ 14

Gen. Bus. L. § 349 ...................................................................................... 16, 17

New York Executive Law 63(12) .................................................................. passim

Gibson, Dunn &
Crutcher LLP

Defendants' Motion to Dismiss Amended Complaint; Case No. C 06-6436 PJH; MDL No. 1486

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

In its second attempt to state a legally sufficient complaint against Defendants, Plaintiff has filed an Amended Complaint. This Amended Complaint is the result of this Court's August 31, 2007 Order ("Order") dismissing, in part, Plaintiff's federal and state antitrust claims. In that Order, this Court gave Plaintiff State of New York the opportunity to amend some of its claims to remedy certain defects. Specifically, the Court noted that Plaintiff could not prosecute claims of unnamed parties who otherwise would be members of classes – state and local governmental entities and natural persons – under the Sherman Act and New York's antitrust statute, the Donnelly Act, unless Plaintiff provided specific information concerning the entities it seeks to represent. Not only does the Amended Complaint fail to remedy the defects identified in the Court's Order with respect to these representative claims, Plaintiff attempts to skirt the Court's explicit instructions concerning the scope of its amendments, introducing new claims and theories and complying with only a portion of the requirements set forth by the Court. At bottom, the Amended Complaint does not address the issues raised by this Court in its Order and should be dismissed in part.

Indeed, one need look no further than the text of this Court's Order to see significant and incurable flaws with Plaintiff's Amended Complaint. Plaintiff has failed to meet almost every one of the Court's express requirements to correct the deficiencies in the original complaint. And even putting these substantial deficiencies aside, the Amended Complaint fails to provide a colorable basis for its claims under the Sherman Act and New York Executive Law 63(12).

- ***The Court's Order required Plaintiff to provide specific information about each of the government entities it seeks to represent for purposes of its Sherman Act and Donnelly Act claims, but the Amended Complaint does not provide that information.*** This Court directed Plaintiff to provide four pieces of information about each of the governmental entities it seeks to represent for purposes of its Sherman Act and New York's Donnelly Act claims, including allegations that: (1) "the government entities at issue have requested that the present action be instituted on their behalf" (Order at 9); (2) "identify the entities at issue" (*id.*); (3) identify "the nature of the purchases made by specific government entities" (*id.* at 10) and (4) state each entities' "indirect or direct purchaser

status." *Id.* at 12. The Amended Complaint does not meet any of these requirements. The Amended Complaint lists some "Requesting non-State public entities" who have purportedly requested that the State bring this action on their behalf, but does not provide any information about the nature of the purchases made by each of these entities or their indirect or direct purchaser status as directed by the Court's Order.

- ***The Court's Order permitted amendment only as specified in the Order or by leave of Court, but the Amended Complaint adds claims and modifies allegations in contravention of that Order.*** The Court's Order explicitly stated that amendment of Plaintiff's claims was permitted only as specified in the Order or by leave of Court. Order at 21. Plaintiff has not sought leave of Court to further amend its complaint and it has not complied with the limits placed on amendment by the Court's Order. First, the Court did not provide Plaintiff leave to add additional claims, but Plaintiff has now added a new claim under the Donnelly Act sections 340(1) and (6). Amend. Compl. at ¶¶ 94-100. Although the original complaint contained a Donnelly Act claim, it did not base its claims on subsection 6 of the Donnelly Act. Plaintiff's addition of this new claim is outside the bounds of the Court's Order.

Second, the Order authorized amendment of Plaintiff's Sherman Act claim only "in order to allow plaintiff to cure the deficiencies noted herein with respect to the requisite showing that must be made pursuant to the Donnelly Act authorization of representative claims on behalf of state government entities" Order at 10. Not only does Plaintiff's amended Sherman Act claim fail to cure these deficiencies as noted above, but it also attempts to justify its representative action by excising any mention of injury to the governmental entities who made purchases pursuant to the Centralized Contract and instead alleges the new factual theory that the State itself is the "owner" of these governmental entities' claims. Amend. Compl. at ¶ 86. This amendment also does not address the deficiencies noted by the Court with respect to Plaintiff's Donnelly Act claim. Instead, it is a transparent attempt to circumvent the Court's concerns regarding the Plaintiff's ability to assert claims on behalf of government entities other than the State. Such amendments are not only outside the bounds within which this Court permitted Plaintiff leave to amend, but are futile. The Court has already concluded that the Centralized Contract assignment clause cannot be the basis for Plaintiff's

Gibson, Dunn & Crutcher LLP

claims.  Order at 8.  Moreover, this semantic change does not change the fact that, as in the original Complaint, Plaintiff impermissibly seeks to recover on behalf of state entities and corporations, both of which are "excluded from the definition of a natural person," Order at 6, and thus excluded from the group on behalf of which the Clayton Act authorizes the Attorney General to bring claims.

- ● ***Plaintiff Has Not Adequately Alleged A Valid "Assignment" of The OEMs' Claims To The State.***  Even assuming that the Court were to allow Plaintiff to amend its Sherman Act claim, Plaintiff has failed to allege that a valid assignment of claims has taken place.  Indeed, it is difficult to see on what basis Plaintiff can recover damages for purchases made pursuant to contracts to which it is not a party.  Moreover, Plaintiff's allegations as to the claims implicated by the alleged assignment are woefully inadequate.  The Amended Complaint contains no allegations concerning which governmental entities used the Centralized Contract, for which purchases, or the amount of such purchases.  Because Plaintiff's new theory is based on purchases made by these government entities, the lack of such allegations is fatal to this claim.

- ● ***Plaintiff has not alleged a damage claim under New York Executive Law 63(12).***  Plaintiff's claim for damages on behalf of natural persons who indirectly purchased DRAM under New York Executive Law 63(12) is flawed because, under well-established New York precedent, Plaintiff's claims on behalf of indirect purchasers under Executive Law 63(12) are too remote to survive the pleading stage.  Moreover, Executive Law 63(12) does not provide an independent cause of action.  In order to bring a claim under Executive Law 63(12), Plaintiff must establish that it may assert a claim under another statute.  But the statutes Plaintiff seeks to use as a basis for recovery – the Sherman Act and the Donnelly Act – both prohibit the type of indirect purchaser damage claims Plaintiff seeks to assert under New York Executive Law 63(12).

## II.     PROCEDURAL BACKGROUND

### A.     The Complaint and Defendants' Motion to Dismiss

Plaintiff State of New York filed its original complaint in this action on July 13, 2006, alleging that, beginning in 1999, Defendants entered into a worldwide conspiracy designed to eliminate competition in the United States for dynamic random access memory (DRAM).  *See* Complaint at ¶ 2.  Plaintiff contended that this conspiracy caused damage to purchasers of DRAM-

containing products and DRAM memory chips. *Id.* at ¶ 5. Plaintiff's Complaint asserted four causes

of action against Defendants: (1) a federal antitrust claim for violation of Section 1 of the Sherman

Act; (2) a state antitrust claim for violation of a provision of New York's Donnelly Act, Gen. Bus. L.

§ 340(1) and (5); (3) a claim pursuant to New York Executive Law 63(12); and (4) a claim pursuant

to California's state antitrust statute, the Cartwright Act.

With respect to its Sherman Act claim, Plaintiff sought to bring an action for treble damages

and injunctive relief on behalf of itself, and as parens patriae and as authorized by law on behalf of

state and local government branches, departments, agencies, subdivisions and other entities that

purchased DRAM or DRAM-containing products directly or indirectly ("Government Entities"). *See,*

*e.g., Id.* at ¶¶ 81-86. With respect to its Donnelly Act, Executive Law 63(12) and Cartwright Act

claims, Plaintiff sought to bring an action on behalf of itself, and, as parens patriae and as authorized

by law on behalf of (a) the above-defined Government Entities and (b) natural persons in New York

who purchased DRAM or DRAM-containing products from defendants indirectly. *See, e.g., id.* at

¶¶ 87-92, 93-95, 96-101. Plaintiff's Donnelly Act claim sought treble damages, attorneys' fees, civil

penalties and injunctive relief. *Id.* at ¶ 92. Plaintiff's claim pursuant to 63(12) sought treble damages

and injunctive relief. *Id.* at ¶ 95. Plaintiff's claim under the Cartwright Act sought treble damages,

attorneys' fees and injunctive relief. *Id.* at ¶ 101.

Plaintiff alleged that its authority to bring an action on behalf of Government Entities other

than the State of New York stemmed from (1) certain assignment clauses contained in various

contracts entered into by the Government Entities; (2) the Donnelly Act; and (3) various provisions of

Executive Law 63. With respect to the assignment clauses, Plaintiff alleged that various Government

Entities made their purchases from OEMs pursuant to a contract entered into by New York State's

procurement agency, the Office of General Services, with the OEMs. Plaintiff further alleged that the

purchases by the Government Entities of DRAM-containing products from the OEMs pursuant to this

"Centralized Contract" were direct purchases of price-fixed DRAM because "[b]y virtue of the

assignment clause of the Centralized Contract, the State of New York, on behalf of all State Entities

that purchased DRAM or DRAM-containing products under the Centralized Contract, stands in the

1  shoes of the OEMs and other direct purchasers of price-fixed DRAM for purposes of alleging federal

2  and state antitrust claims." *Id.* at ¶¶ 73, 80.

3       Defendants filed a motion to dismiss certain portions of Plaintiff's claims. Specifically,

4  Defendants sought an order dismissing Plaintiff's Sherman Act claim to the extent it sought damages

5  based on indirect purchases or purchases of entities other than the State of New York. Defendants

6  also sought dismissal of Plaintiff's Donnelly Act claim to the extent it sought recovery for purchases

7  of entities other than the State of New York. Additionally, Defendants sought dismissal of Plaintiff's

8  claim pursuant to New York Executive Law 63(12) on the grounds that: (1) Plaintiff's claim was not

9  timely made; (2) that the section does not authorize the State to assert in the State's name damage

10  claims belonging to unnamed government entities; and (3) that the section did not authorize the claim

11  for treble damages. Finally, Defendants sought dismissal of Plaintiff's claim under the Cartwright

12  Act on the grounds that the Act does not authorize New York to assert claims on behalf of unnamed

13  state entities and natural persons and that the Act does not authorize actions by non-California state

14  agencies and political subdivisions.

15  **B.     The Court's August 31, 2007 Order**

16       On August 31, 2007, this Court issued an order granting in part and denying in part

17  Defendants' motion. With respect to Plaintiff's Sherman Act claim, the Court dismissed "all claims

18  seeking recovery on behalf of indirect purchasers" based on the holding in *Illinois Brick Co. v.*

19  *Illinois*, 431 U.S. 720 (1977) prohibiting such claims. Order at 5, 20. The Court also dismissed "all

20  representative claims on behalf of unnamed government entities," but granted leave to amend those

21  claims. *Id.* The Court held that the federal Clayton Act, 15 U.S.C. § 15, does not permit

22  representative claims on behalf of other government entities, and noted that, although the Clayton Act

23  allows a state attorney general to bring a parens patriae claim on behalf of natural persons, that

24  provision "does not include corporations, partnerships, or proprietorships" and "[b]y extension,

25  government entities are similarly excluded from the definition of natural person." *Id.* at 6. The Court

26  also rejected Plaintiff's attempt to prove it had standing to bring such representative claims by virtue

27  of the assignment clauses contained in various contracts entered into by the Government Entities in

28  question. In so holding, the Court stated that "plaintiff's representative claim brought on behalf of

1   government entities, if it is to go forward, cannot be rooted in the Centralized Contract assignment

2   clause." *Id.* at 8.

3        The Court then examined Plaintiff's attempt to establish standing to bring a representative

4   action under New York's Donnelly Act and concluded that "plaintiffs failure to allege either that the

5   governmental entities in question requested that plaintiff bring suit on their behalf, or to name or

6   identify the government entities in question, means that plaintiff's representative claim on behalf of

7   those government entities must be dismissed insofar as the Donnelly Act is concerned." *Id.* at 9.

8   Based on these findings, in granting Plaintiff leave to amend its claims, the Court stated that

9        Leave to amend is granted, however, in order to allow plaintiff to cure the deficiencies
    noted herein with respect to the requisite showing that must be made pursuant to the
10  Donnelly Act authorization of representative claims on behalf of state government
    entities. The court also notes that, given the general ambiguity in plaintiff's complaint
11  as to the specific entities on whose behalf plaintiff brings suit, and the direct or
    indirect nature of those entities' DRAM purchases, plaintiff must allege in any future
12  amendment, the nature of the purchases made by specific government entities. This
    will enable the court to determine with specificity the purchases and entities upon
13  which plaintiff's representative claims are stated.

14  Order at 10.

15       With respect to Plaintiff's Donnelly Act claim, the Court dismissed Plaintiff's claim for

16  monetary damages on behalf of natural persons with prejudice. *Id.* at 21. The Court also dismissed

17  Plaintiff's claim on behalf of governmental entities with leave to amend to allow plaintiff's to provide

18  the requisite specificity concerning these governmental entities, including "indirect or direct

19  purchaser status." *Id.* at 12, 21.

20       The Court granted Defendants' motion to dismiss Plaintiff's Executive Law 63(12) claim on

21  behalf of government entities and Plaintiff's request for treble damages with prejudice. *Id.* at 21. The

22  Court denied Defendants' motion to dismiss all of Plaintiff's Executive Law 63(12) claims on

23  timeliness and procedural grounds. *Id.* The Court also dismissed Plaintiff's Cartwright Act claim

24  with prejudice. *Id.*

25       The Order stated "Leave to amend is permitted only as specified herein. Amendment as to

26  additional matters is not permitted without leave of court." *Id.* The Order permitted Plaintiff leave to

27  amend Plaintiff's representative claims on behalf of unnamed government entities for purposes of its

28  Sherman Act and Donnelly Act claims. *Id.* at 20-21. Specifically, the Order directed Plaintiffs to

Gibson, Dunn &
Crutcher LLP

Defendants' Motion to Dismiss Amended Complaint; Case No. C 06-6436 PJH; MDL No. 1486

include allegations that: (1) "the government entities at issue have requested that the present action be instituted on their behalf" (*id.* at 9); (2) "identify the entities at issue" (*id.*); (3) "the nature of the purchases made by specific government entities" (*id.* at 10) and (4) each entities' "indirect or direct purchaser status." *Id.* at 12. The Order did not permit leave to amend as to any other matters.

## C.   The Amended Complaint

Plaintiff filed an amended complaint on October 1, 2007, which not only modified the claims made in the original complaint, in violation of this Court's Order, but also added additional claims and allegations. The Amended Complaint largely repeats the substantive allegations Plaintiffs had alleged in the original complaint. In it, Plaintiff asserts four causes of action: (1) a federal antitrust claim for violation of Section 1 of the Sherman Act (First Claim); (2) a state antitrust claim for violation of New York's Donnelly Act, § 340(1) and (5) (Second Claim); (3) a state antitrust claim for violation of a different section of New York's Donnelly Act, § 340(1) and (6) (Third Claim); and (4) a claim pursuant to New York Executive Law 63(12) (Fourth Claim).   The Amended Complaint indicates that Plaintiff brings claims

> on behalf of (a) the State itself, including all of its branches, departments, agencies or other parts thereof (the "State" or "New York") (all Claims); (b) the non-State entities listed on the attached Schedule A ("Requesting non-State Public Entities") (Third Claim and the First and Second Claims in the alternative); and (c) natural persons in New York who purchased DRAM or DRAM-containing products indirectly from Defendants or their co-conspirators (Fourth Claim).[1]

Amend. Compl. at ¶ 10.

Plaintiff seeks treble damages under its Sherman Act and Donnelly Act claims. *Id.* at ¶¶ 86, 92, 99. In addition, Plaintiff seeks attorneys' fees, injunctive relief and civil penalties in its sovereign

---

[1]   Although the Amended Complaint states that Plaintiff's Fourth Claim is brought on behalf of "natural persons in New York who purchased DRAM or DRAM-containing products indirectly," (Amend. Compl. at ¶ 10), the Fourth Claim seeks recovery "on behalf of all natural persons in New York who purchased DRAM-containing products or otherwise purchased DRAM indirectly." Amend. Compl. at ¶ 103. As such, it is not entirely clear whether Plaintiff seeks to bring its Fourth Claim on behalf of natural persons who were direct purchasers of DRAM. For the purposes of this motion, Defendants assume that Plaintiff seeks recovery only on behalf of natural persons who indirectly purchased DRAM (as pled in paragraph 103 of the Amended Complaint). Indeed, any claims of natural persons based on direct purchases of DRAM were released as part of the Direct Purchaser Class settlements.

7

1    capacity pursuant to its Donnelly Act claims. *Id.* at ¶¶ 92, 99. With respect to its claim under New

2    York Executive Law 63(12), Plaintiff seeks monetary damages and injunctive relief. *Id.* at 103.

3          The changes to the Amended Complaint consist largely of two alterations to the allegations

4    relating to the assignment of direct claims to the State. *See, e.g., id.* at ¶¶ 72-80. First, the Amended

5    Complaint attaches a list of entities referred to as "Requesting non-State Public Entities" which are

6    alleged to have requested that the State bring an action on their behalf. *See, e.g., id.* at ¶¶ 10, 86, 92,

7    99. Neither the Amended Complaint nor the list (Schedule A to the Amended Complaint) provides

8    any information concerning these "Requesting non-State Public Entities" other than their names.

9          Second, like the original Complaint, the Amended Complaint alleges that Government

10   Entities (both those who had explicitly requested that the State bring suit on their behalf and those

11   who had not so requested) made their purchases from OEMs pursuant to a contract entered into by

12   New York State's procurement agency, the Office of General Services. Plaintiff alleges that these

13   purchases by the Government Entities of DRAM-containing products pursuant to this "Centralized

14   Contract" gives rise to claims for <u>direct</u> purchases of price-fixed DRAM. Amend. Compl. at ¶ 73.

15   However, the Amended Complaint adds to the allegations concerning the assignment clause, alleging

16   that

17            As the language of the Assignment Clause provides, it is the "Contractor" (generally
             an OEM that has purchased DRAM and made it a component of a PC or other

18            DRAM-containing product) that assigns to "the State" the Contractor's antitrust claims
             against the DRAM manufacturer "for overcharges associated with" the contract (the

19            "Assigned Claims"). The State, accordingly, owns the Assigned Claims and is entitled
             to assert them. The scope of the claims that the OEM assigned is determined by the

20            extent of the purchases of DRAM-containing products made under the Centralized
             Contract by both the State and the non-State Public Entities.

21

22   *Id.* at ¶ 80. The State therefore appears to assert claims under the contract based on purchases by

23   *non-State* public entities.

24         With respect to its Sherman Act claim, the State alleges that "the State, as owner of the

25   Assigned Claims is entitled to recover treble damages, based on the injury suffered directly by OEMs

26   and other direct purchasers as a result of Defendants' illegal conduct." Amend. Compl. at ¶ 86. The

27   State asserts that these Assigned Claims result from purchases made by entities referred to as "non-

28   State Public Entities," which the Amended Complaint defines to refer to "all New York subdivisions,

1    counties, cities, towns, villages, local governmental units, school districts, and other public entities

2    created under New York law – not simply to Requesting non-State Public Entities." *Id.* at ¶ 10.

3    Plaintiff also alleges that "[t]o the extent that the Court is of the view that non-State Public Entities

4    must request the Attorney General to act on their behalf nonetheless, then the Requesting non-State

5    Public Entities, identified on Schedule A, have expressly so requested." *Id.* Plaintiff repeats the

6    same allegation in its second Donnelly Act claim. *Id.* at ¶¶ 92, 99.

### III.   STANDARD OF REVIEW

7

8         In order to survive a dismissal motion, a plaintiff must allege facts that raise his right to relief

9    "above the speculative level." *See, e.g., Bell Atlantic v. Twombly*, -- U.S. --, 127 S. Ct. 1955, 1964-65

10   (2007). It is the plaintiff's obligation to provide the "grounds" of his entitlement to relief," which

11   requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of

12   action will not do." *Id.* A plaintiff must allege "enough facts to state a claim for relief that is

13   plausible on its face," not just conceivable. *Id.* at 1974.

### IV.   ARGUMENT

14

### A.   Plaintiff's Claim Under the Sherman Act (First Claim) Should Be Dismissed

15

#### 1.   Plaintiff's Amendment Of Its Claim Reaches Outside The Bounds Allowed By This Court's Order By Alleging A New Theory

16

17        As an initial matter, Plaintiff's newly pled Sherman Act claim reaches outside the explicit

18   bounds set by the Court's Order. In allowing amendment, this Court made it clear that "[l]eave to

19   amend is permitted only as specified herein. Amendment as to additional matters is not permitted

20   without leave of court." Order at 21. The Order authorized amendment of Plaintiff's Sherman Act

21   claim "in order to allow plaintiff to cure the deficiencies noted herein with respect to the requisite

22   showing that must be made pursuant to the Donnelly Act authorization of representative claims on

23   behalf of state government entities." Order at 10.

24        Plaintiff's amendment goes beyond these bounds and seeks to eliminate the troublesome

25   representative component of its claim entirely and replaces it with a new theory. It excises any

26   mention of injury to the governmental entities who made purchases pursuant to the Centralized

27   Contract. Instead, the Amended Complaint alleges that, pursuant to the Centralized Contract

28

1   assignment clause, OEMs who have contracted with various non-State governmental entities (both

2   "requesting" and "non-requesting") have assigned their antitrust claims to the State. Amend. Compl.

3   at ¶¶ 72-73, 77-79. Thus, Plaintiff has altered its claim to allege that the OEMs have assigned their

4   claims directly to the State, even for purchases by non-State entities. As explained below, Plaintiff's

5   new theory cannot state a claim because it suffers from the same deficiencies identified previously by

6   the Court. But because Plaintiff has not sought leave to amend its claim to allege this new theory, the

7   Court should dismiss the claim on this ground alone. *See* Fed. R. Civ. Pro. 15(a) (requiring leave of

8   court to amend a pleading).

9        **2.    Plaintiff Has Not Adequately Alleged A Valid "Assignment" of The OEMs'**
                **Claims To The State**

10       Even if the Court allows Plaintiff to amend its claim in this manner, the Court's Order

11  dismissing the original complaint establishes that Plaintiff cannot proceed under this new theory. In

12  its Order, the Court rejected Plaintiff's attempt to prove it had standing to bring representative claims

13  by virtue of certain assignment clauses contained in various contracts entered into by the government

14  entities in question, concluding that "plaintiff's representative claim brought on behalf of government

15  entities, if it is to go forward, <u>cannot be rooted in the Centralized Contract assignment clause</u>." *Id.* at

16  8 (emphasis added).

17       Nevertheless, the Amended Complaint alleges that, pursuant to the Centralized

18  Contract assignment clause, OEMs who have contracted with various non-State governmental

19  entities (both "requesting" and "non-requesting") have assigned their antitrust claims to the

20  State. Amend. Compl. at ¶¶ 72-73, 77-79. Plaintiff has altered its claim to allege that the

21  OEMs have assigned their claims to the State. Plaintiff's allegations do not explain how the

22  State, which is not a party to these contracts, can assert damages claims resulting from

23  antitrust violations. And regardless of what words Plaintiff has excised from its allegations,

24  the basic facts pled remain the same – Plaintiff seeks to recover for contracts entered into by

25  various governmental entities who are indisputably not "the State" by virtue of the Centralized

26  Contract assignment clause. It does not matter whether Plaintiff explicitly pleads that it

27  represents various governmental entities or not. The Amended Complaint does not

28

Gibson, Dunn &
Crutcher LLP

Defendants' Motion to Dismiss Amended Complaint; Case No. C 06-6436 PJH; MDL No. 1486

1   demonstrate (any more than the original complaint) that any valid assignment has taken place

2   between the appropriate parties and should be dismissed. *See* Order at 7.

3          Moreover, even if a valid assignment had taken place, Plaintiff's allegations as to the

4   claims implicated by that assignment are woefully inadequate. For example, the Amended

5   Complaint contains no allegations concerning which governmental entities used the

6   Centralized Contract, for which purchases, or the amount of such purchases. *See, e.g.,*

7   Amend. Compl. at ¶ 73 (alleging that "The State and many non-State Public Entities made

8   their purchases from OEMs pursuant to contracts entered into by New York State's

9   procurement agency, the Office of General Services ("OGS"), with the OEMs (the

10  "Centralized Contract")).[2] Because Plaintiff's new theory is based on purchases made by

11  these government entities, the lack of such allegations is fatal to this claim. In short,

12  Plaintiff's new theory does not provide any information that would constitute "grounds of his

13  entitlement to relief." *Twombly*, 127 S.Ct. at 1964-65. Accordingly, the claim should be

14  dismissed.

15      **3.**    **The Amended Complaint Fails to Provide The Specificity Required As To The**
16              **Government Entities Plaintiff Seeks to Represent**

16         As a fall back position, Plaintiff also alleges that "[t]o the extent that the Court is of the view

17  that non-State Public Entities must request the Attorney General to act on their behalf nonetheless,

18  then the Requesting non-State Public Entities, identified on Schedule A, have expressly so

19  requested." Amend. Compl. at ¶ 86. In so doing, Plaintiff appears to be alleging the same

20  representative claim it advanced in its original complaint "just in case" the Court does not accept its

21  new assignment theory. Plaintiff's backup plan also fails because Plaintiff has failed to comply with

22  the requirements of the Court's Order.

23         In its Order, this Court recognized that the federal Clayton Act, 15 U.S.C. § 15, does not

24  permit representative claims on behalf of other government entities, and noted that, although the

---

2  Even if New York could allege that the OEMs assigned their claims directly to the State, it is
doubtful such claims even exist since the direct purchasers have settled their claims relating to
the conspiracy alleged here. *See, e.g., United States v. Beggerly*, 524 U.S. 38, 46 (1998)
(reiterating the importance of "rigid" adherence to the doctrine of res judicata).

Clayton Act allows a state attorney general to bring a parens patriae claim on behalf of natural persons, that provision "does not include corporations, partnerships, or proprietorships" and "[b]y extension, government entities are similarly excluded from the definition of natural person."  Order at 6.  Thus, Plaintiff's claim may only proceed if there is another basis for a representative action.  In its Order, this Court concluded that the Donnelly Act might provide such a basis if Plaintiff provided the necessary specificity concerning the entities it seeks to represent.  *Id.* at 8-9.  Plaintiff has failed to do so.

As this Court recognized in its Order, in order to bring an action for damages on behalf of any political subdivision or public authority of the State, the Donnelly Act requires that such entities "request" the Attorney General to bring such an action.  Order at 8 (citing N.Y. Gen. Bus. Law 342-b).  This Court's August 31, 2007 Order very clearly set forth what information Plaintiff was required to provide to amend its complaint to state a claim on behalf of governmental entities other than the State under the Sherman Act and the Donnelly Act.  *See, e.g., id.* at 10.  Plaintiff has failed to provide this information.  Instead, Plaintiff has attached a list (Schedule A) of the so-called "Requesting non-State public entities.," which Plaintiff alleges have requested that the State bring an action on their behalf.  *See, e.g.*, Amend. Compl. at ¶ 86.  Other than the list itself, the Amended Complaint provides no new information as to the nature of the purchases made by these "Requesting" government entities.  Most notably, Plaintiff fails to indicate whether any of the "Requesting non-State Public Entities" are direct or indirect purchasers of DRAM.  This deficiency is fatal to Plaintiff's claims given this Court's explicit direction that Plaintiff allege "the nature of the purchases made by specific government entities" (Order at 10) and "plaintiff's indirect or direct purchaser status must be provided."  Order at 12.  Indeed, the Amended Complaint fails to provide any specific information about the "Requesting non-State public entities" other than their names.  Plaintiff's failure to provide the information leaves Defendants and this Court with more, not less, ambiguity than the previous iteration of the complaint.  Accordingly, those claims should be dismissed.

**B.   Plaintiffs' Claims For Damages Under the Donnelly Act (Second and Third Claims) Should Be Dismissed, In Part, Because They Impermissibly Assert Claims of Governmental Entities[3]**

Plaintiff advances two separate claims under the Donnelly Act, one based upon § 340(1) and (5) (Second Claim) and the other based upon § 340(1) and (6) (Third Claim). Both claims should be dismissed.

**1.   Plaintiff's Second Claim Should Be Dismissed With The Exception Of Its Claim For Civil Penalties**

In its Second Claim, Plaintiff seeks treble damages on behalf of itself and on behalf of the Requesting non-State public entities. Amend. Compl. at ¶ 92. Plaintiff also seeks attorneys' fees, injunctive relief and civil penalties in its sovereign capacity. *Id.* at ¶¶ 92-93. As this Court noted, however, "while the Donnelly Act does provide express statutory authority for the State Attorney General to sue on behalf of 'any political subdivision or public authority of the State,' the Donnelly Act contemplates that these government entities must be specifically identified, and it must be affirmatively demonstrated that they have 'requested' that the Attorney General bring suit on their behalf." Order at 11. As discussed above, the Amended Complaint fails to provide the information required by this Court's Order concerning these entities.

In addition, because the State's claims based on § 340(1) and (5) are predicated on the State as "owner of the Assigned Claims," that claim contains the same deficiencies discussed above with respect to Plaintiff's Sherman Act claim, namely this Court has already held that the Centralized Contract assignment clause cannot serve as the basis for Plaintiff's Donnelly Act claims. *Id.* at 8. As such, Plaintiff's Second Claim under the Donnelly Act should be dismissed (with the exception of its claim for civil penalties).

---

[3]   In deference to the Court's August 31, 2007 Order denying Defendants' motion to dismiss Plaintiff's Donnelly Act claim for civil penalties (Order at 21), Defendants do not here seek dismissal again of this part of Plaintiff's claim. However, Defendants reserve the right to renew the arguments advanced on this point in their motion to dismiss the original complaint at the appropriate time.

### 2.   Plaintiff's Third Claim Should Be Dismissed Because It Provides No Independent Basis For A Claim

The Third Claim suffers from similar deficiencies, but is even more inscrutable.  This Claim seeks recovery under § 340(1) and (6), a new (and impermissible) addition to the Complaint.  As in Plaintiff's Second Claim, the Third Claim[4] seeks treble damages, but it also seeks recovery on this claim only on its own behalf and on behalf of the "Requesting non-State Public Entities."  Amend. Compl. at ¶ 99.  Despite the fact that the Court's Order did not grant Plaintiff leave to amend to add additional Donnelly Act claims, the Third Claim seeks recovery on different grounds than the Plaintiff's original Donnelly Act claim.  Like Plaintiff's unauthorized change to its Sherman Act claim, the Third Claim is clearly outside of the scope of amendment allowed by the Court's Order and should be dismissed on this ground alone.

But even if this amendment is allowed, the Third Claim should be dismissed because § 340(6) does not provide any independent basis for a claim.

Section 340(6) provides:

> In any action pursuant to this section, the fact that the state, or any political subdivision or public authority of the state, or any person who has sustained damages by reason of violation of this section has not dealt directly with the defendant shall not bar or otherwise limit recovery; provided, however, that in any action in which claims are asserted against a defendant by both direct and indirect purchasers, the court shall take all steps necessary to avoid duplicate liability, including but not limited to the transfer and consolidation of all related actions.  In actions where both direct and indirect purchasers are involved, a defendant shall be entitled to prove as a partial or complete defense to a claim for damages that the illegal overcharge has been passed on to others who are themselves entitled to recover so as to avoid duplication of recovery of damages.

This section does not contain any independent right of action.   In contrast to section 340(5), which refers to "an action to recover damages caused by a violation of this section", section 340(6) merely discusses the limits of recovery for violations of the Donnelly Act.  This claim therefore adds nothing beyond what is alleged in the Second Claim and does not provide a basis for relief.

---

[4]   Like the Second Claim, the Third Claim also seeks attorneys' fees, injunctive relief and civil penalties on behalf of the State in its sovereign capacity.

Gibson, Dunn & Crutcher LLP

Moreover, as discussed *supra*, because Plaintiff has not provided the requisite detail concerning these "Requesting non-State Public Entities", including the nature of their purchases, Plaintiff cannot state a claim on their behalf under the Donnelly Act.

## C.  Plaintiff's Claim for Damages On Behalf Of Natural Persons Under Executive Law 63(12) (Fourth Claim) Should Be Dismissed[5]

Plaintiff brings its damage claim under New York Executive Law 63(12) "on behalf of all natural persons in New York who purchased DRAM-containing products or otherwise purchased DRAM indirectly." Amend. Compl. at ¶ 103. Plaintiff bases its Executive Law 63(12) claim on alleged violations of: the Sherman Act, the Donnelly Act, "state antitrust laws throughout the United States" and N.Y. Exec. 63(12) itself. Amend. Compl. at ¶ 102. The Sherman Act and Donnelly Act, however, bar the very claim – a representative damage claim for indirect purchasers – that Plaintiff tries to assert. Moreover, New York law bars claims under consumer protection statutes, such as 63(12), where, as here, the injury is too remote from the alleged violation. These statutes therefore cannot support Plaintiff's claim under Executive Law 63(12).

As an initial matter, Plaintiff has alleged no basis for its nebulous claim that other states' antitrust laws may serve as a basis for a claim under Executive Law 63(12). Indeed, this Court expressly dismissed Plaintiff's attempt to base a claim on California's antitrust law, the Cartwright Act. *Id.* at 21. Moreover, this Court held that there is no broadly recognized common law parens patriae right to pursue monetary damages claims. *Id.* at 13. As such, Plaintiff's claim under Executive Law 63(12) must stand or fall based on whether Plaintiff may pursue representative damages claims on behalf of indirect purchasers under the Sherman Act, the Donnelly Act or Executive Law 63(12) itself.

---

[5]   In light of the Court's October 16, 2007 Order denying Defendants' Motion for Reconsideration of its ruling on the applicable statute of limitations for claims under 63(12), Defendants will not seek dismissal based on Plaintiff's failure to comply with the applicable statute of limitations for claims under Executive Law 63(12). However, Defendants reserve the right to renew the arguments advanced on this point in their motion to dismiss the original complaint as well as the motion for reconsideration at the appropriate time.

Gibson, Dunn & Crutcher LLP

### 1.   New York Law Bars Plaintiff's Claim Under Executive Law 63(12) Because It Is Too Remote From The Alleged Violation

Plaintiff's claim on behalf of "natural persons who purchased DRAM-containing products or otherwise purchased DRAM indirectly" fails because these indirect purchasers are too remote from the alleged violation. New York law does not permit claims under its general consumer protection statutes, including Executive Law 63(12), to recover for injuries suffered by persons who were not directly injured by the conduct at issue. *See, e.g., Blue Cross and Blue Shield v. Philip Morris USA*, 3 N.Y.3d 200, 207-208 (N.Y. Ct. App. 2004) (recognizing that General Business Law section 349 contains a remoteness bar to recovery); *Ho v. Visa U.S.A.*, 16 A.D.3d 256, 257 (N.Y. App. Div. 2005) (dismissing Gen. Bus. Law section 349 claim on grounds of remoteness); *New York v. Daicel Chemical Industries, Ltd.*, 2007 N.Y. Slip. Op. 5827, *3 (N.Y. App. Div. 2007) (upholding trial court's dismissal of Gen. Bus. Law section 349 claim on the ground that the indirect purchasers on whose behalf plaintiff sued were too remote from defendants' alleged wrongdoing to support such a claim). This doctrine has developed in connection with General Business Law 349, a general consumer protection statute as to which the New York courts have held Executive Law 63(12) is to be construed "in parallel." *See Lefkowitz v. Colorado State Christian College of the Church of the Inner Power, Inc.*, 76 Misc. 2d 50, 54 (N.Y. Sup. Ct. 1973). As such, the case law barring actions for "remote" or "indirect" injuries under General Business Law 349 applies equally to claims under Executive Law 63(12).

In *Blue Cross*, the New York Court of Appeals considered whether insurance companies could seek damages from tobacco companies whose alleged deceptive practices misled smokers, thereby increasing the smokers' medical costs, and, in turn, increasing the insurers' costs. 3 N.Y.3d 200. Even though the plaintiffs had undeniably paid the smokers' medical bills, and had thus been "injured," the Court of Appeals dismissed their claim under New York General Business Law section 349 based on its conclusion that such injuries were "too remote" and that plaintiffs had not been "directly injured." *Blue Cross*, 3 N.Y.3d at 207-208. Specifically, the Court held: "it is beyond dispute that section 349(h) permits an actually (nonderivatively) injured party to sue a tortfeasor. We

1  hold simply that what is required is that the party actually injured be the one to bring suit. Empire

2  was not directly injured in this sense." *Id.* at 207.

3      Likewise, in *Ho*, the New York court relied on *Blue Cross* to affirm the dismissal of a section

4  349 claim in an antitrust action. In *Ho*, as here, the plaintiffs alleged that they were indirectly

5  "injured" by the defendants' practices. The Court held that the section 349 claim "fail[ed] because of

6  the remoteness of [plaintiffs'] damages from the alleged injurious activity" and because "their

7  "injuries [were] too remote and derivative to countenance such a cause of action." 16 A.D.3d at 257

8  (citing *Blue Cross*, 3 N.Y.3d 200).[6]

9      The claims for which Plaintiff here seeks to recover involve, by definition, indirect purchases.

10  They are even more remote than typical indirect purchaser claims because they are not based on

11  purchases of the allegedly price-fixed product. Rather, they involve purchases of another product of

12  which DRAM is a component that accounted for a small fraction of the total cost. Like the claims of

13  the plaintiffs in *Ho* and *Blue Shield*, but even more attenuated, the indirect purchasers here were

14  "injured" only as a result of alleged overcharges that impacted them by virtue of the impact allegedly

15  felt by the direct purchasers of DRAM. These derivative claims stand in stark contrast to the claims

16  of direct purchasers of DRAM (which Plaintiff does not seek to represent with this claim) who would

17  be injured directly by any alleged overcharge. Thus, under settled New York precedent, the

18  "injuries" of the indirect purchasers are "too remote" to serve as a basis for claims under Executive

19  Law 63(12) and should be dismissed.

### 2.    Plaintiff's Claim Is Also Expressly Barred By The Sherman Act and the Donnelly Act

As this Court recognized in its Order, *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977) bars

recovery for indirect purchasers under the Sherman Act and the Donnelly Act does not provide for

---

6  Indeed, in *Ho*, the Court also dismissed a Donnelly Act claim on the same grounds, even though the Donnelly Act had already been amended to allow indirect purchaser claims. *Id.* Thus, it is clear that even when the underlying statute expressly allows for recovery by indirect purchasers, New York law bars recovery of remote, indirect or derivative damages. This conclusion with respect to the application of General Business Law section 349 is the same with regard to Executive Law 63(12). *See Lefkowitz*, 76 Misc. 2d at 54 (section 349 and Executive Law 63(12) must be construed "in parallel")

Defendants' Motion to Dismiss Amended Complaint; Case No. C 06-6436 PJH; MDL No. 1486

Gibson, Dunn & Crutcher LLP

1   representative or parens patriae actions for the recovery of monetary damages on behalf of natural

2   persons. Order at 5. Nevertheless, New York now asserts such claims through Executive Law

3   63(12), using the Sherman Act and the Donnelly Act as the base for its action. Executive Law 63(12)

4   is a law of general application, not an antitrust law. Moreover, it does not contain an independent

5   cause of action. *See, e.g., State of New York v. Cortelle Corp.*, 38 N.Y.2d 83, 85 (N.Y. Ct. App.

6   1975). Instead, as the court in *Cortelle* explained, 63(12) provides the Attorney General with

7   standing to seek redress and additional remedies for recognized wrongs based on the violation of

8   *other statutes*. *Id.* As set forth above, neither the Sherman Act nor the Donnelly Act allow the

9   Attorney General to pursue a representative action on behalf of indirect purchasers. Because

10  Plaintiff's claim under Executive Law 63(12) does not (and cannot) overcome this bar to recovery, it

11  should be dismissed.

12      Indeed, to allow Plaintiff to employ 63(12) to fashion a cause of action where the underlying

13  statute (the Donnelly Act) or the judicial interpretation of a law (*Illinois Brick*'s limitation of the

14  coverage of the Sherman Act) expressly <u>bars</u> it from obtaining damages would undercut the very laws

15  upon which liability is based. In its Order, this Court recognized the absurdity of such a result and

16  concluded that 63(12) does not authorize actions for monetary damages on behalf of natural persons

17  under the Donnelly Act because the Donnelly Act "specifically limits" claims by the Attorney

18  General "to those seeking injunctive relief, or civil penalties under the Act" and "expressly denies"

19  the Attorney General the authority to seek monetary damages on behalf of natural persons. Order at

20  14. This conclusion also holds true for the Sherman Act, which *Illinois Brick* expressly holds does

21  not allow indirect purchaser claims, as well as the "state antitrust laws throughout the United States,"

22  many of which also deny indirect purchasers the right to recovery consistent with *Illinois Brick*.

23      Plaintiff argues that the general authority provided by Executive Law 63(12) permits it to seek

24  relief expressly barred by the predicate statutes. But because neither the Sherman Act nor the

25  Donnelly Act can serve as a basis for Plaintiff's claims pursuant to Executive Law 63(12), Plaintiff's

26  contention, if accepted, would allow a law of general application to eclipse specific boundaries

27  established by statute and case law. Such a result cannot and should not be countenanced. It is an

28  accepted canon of statutory construction that "a precisely drawn detailed statute pre-empts more

18

1   general remedies." *Brown v. General Services Administration*, 425 U.S. 820, 834 (1976) (rejecting

2   an interpretation that would "drive out of currency" a narrowly aimed provision "with its rigorous . . .

3   time limitations" by permitting "access to the courts under other, less demanding statutes"); *see also*

4   *Block v. North Dakota ex rel. Board of Univ. and School Lands*, 461 US. 273, 284-286 (1983)

5   (adverse claimants to real property of the United States may not rely on "officer's suits" or on other

6   general remedies because the Quiet Title Act of 1972 is their exclusive recourse); *Stonite Products*

7   *Co. v. Melvin Lloyd Co.*, 315 U.S. 561 (1942) (venue in patent infringement cases is governed by a

8   statute dealing specifically with patents, not a general venue provision); *Morton v. Mancari*, 417 U.S.

9   535, 550-551 (1974) (rejecting plaintiffs' argument that the specific employment preference

10   authorized in the Indian Reorganization Act of 1934 was preempted by the anti-discrimination

11   provision contained in the Equal Employment Opportunity Act of 1972).

12       Plaintiff may cite *New York v. Feldman*, 210 F. Supp. 2d 294, 302-303 (S.D.N.Y. 2002) to

13   support its argument that Executive Law 63(12) may be used to circumvent the fact that the Attorney

14   General cannot recover damages on behalf of natural persons under the Donnelly Act. The *Feldman*

15   court concluded that 63(12) can be employed to seek damages for antitrust violations that would

16   otherwise be unavailable under the Donnelly Act based on its interpretation of two New York cases –

17   *People v. Concert Connection, Ltd.*, 629 N.Y.S.2d 254, 256 (2nd Dept. 1995) and *People v. American*

18   *Motor Club, Inc.*, 582 N.Y.S.2d 688, 692 (1st Dept. 1992).[7]  In both of these cases, the New York

19   courts considered whether the Attorney General could use 63(12) to pursue remedies that were not

20   explicitly provided for in the laws which established the underlying violation. Neither of the laws

21   considered in those cases contained provisions like those contained in the Donnelly Act that

22   specifically set forth the remedies the Attorney General is authorized to pursue. The *Feldman* Court

23   failed to consider this critical distinction, resulting in a badly reasoned opinion that is inconsistent

24

25       [7]   The *Feldman* Court also noted that " the New York Attorney General has often used section

26         63(12) to remedy antitrust violations." 210 F.Supp.2d at 300 (citing cases). However, these
      cases are inapposite for at least two reasons. First, none of these cases addresses the question

27         of whether the general powers granted to the Attorney General pursuant to Executive Law
      63(12) can overcome the specific remedies provided to the Attorney General by the Donnelly

28         Act (or the Sherman Act). Second, none of these cases upheld damage claims.

Gibson, Dunn &
Crutcher LLP

Defendants' Motion to Dismiss Amended Complaint; Case No. C 06-6436 PJH; MDL No. 1486

1    with this Court's reasoning.  Moreover, neither of the cases considered by *Feldman* were antitrust

2    cases.  As such, the Court should not rely on that decision.  In any event, *Feldman* is not binding on

3    this Court.

4            Indeed, it would be irrational and contrary to the statutory scheme of the Donnelly Act to

5    allow the Attorney General to bring a claim under Executive Law 63(12) based on a violation of the

6    Donnelly Act where the Act itself bars him from pursuing such an action.  As the Court recognized in

7    its Order, allowing such artful pleading would fly in the face of settled New York case law

8    counseling that, "where the Legislature has not been completely silent but has instead made express

9    provision for civil remedy, albeit a narrower remedy than the plaintiff might wish, the court should

10   ordinarily not attempt to fashion a different remedy, with broader coverage."  Order at 14 (citing

11   *People ex rel. Spitzer v. Grasso*, 836 N.Y.S.2d 40, 48 (N.Y. App. Div. 2007)).  Likewise, it would

12   undermine the judicial interpretation of the Sherman Act to allow a plaintiff to bring a representative

13   indirect purchaser action under Executive Law 63(12) that would be barred under the Sherman Act

14   alone.  Accordingly, the Court should dismiss the claim for damages under Executive Law 63(12)

15   because it cannot overcome the bar on Sherman Act indirect purchaser damage claims and the

16   Donnelly Act's statutory bar on representative damages claims by the Attorney General.

## V.    CONCLUSION

18           For the foregoing reasons, Defendants request that this Court dismiss Plaintiff's claims as set

19   forth herein.

21   DATED:  November 26, 2007              GIBSON, DUNN & CRUTCHER LLP
22                                          JOEL S. SANDERS
                                            G. CHARLES NIERLICH
23                                          JOSHUA D. HESS
                                            REBECCA JUSTICE LAZARUS


25                                          By:*/s/ Joel S. Sanders*
26                                                    Joel S. Sanders

27                                          Attorneys for Defendants
                                            MICRON TECHNOLOGY, INC. AND MICRON
28                                          SEMICONDUCTOR PRODUCTS, INC.

Gibson, Dunn &
Crutcher LLP

DATED:  November 26, 2007

O'MELVENY & MYERS LLP
KENNETH O'ROURKE
STEVEN BERGMAN


By: /s/  Kenneth O'Rourke
              Kenneth O'Rourke

Attorneys for Defendants
HYNIX SEMICONDUCTOR, INC. AND HYNIX
SEMICONDUCTOR AMERICA, INC.


DATED:  November 26, 2007

KAYE SCHOLER LLP
JULIAN BREW
ATON ARBISSER
JOSHUA STAMBAUGH


By: /s/  Julian Brew
              Julian Brew

Attorneys for Defendants
INFINEON TECHNOLOGIES NORTH AMERICA
CORP. AND INFINEON TECHNOLOGIES AG


DATED:  November 26, 2007

THELEN REID BROWN RAYSMAN &
STEINER LLP
ROBERT B. PRINGLE
PAUL R. GRIFFIN
JONATHAN SWARTZ


By: /s/  Robert B. Pringle
              Robert B. Pringle

Attorneys for Defendant
NEC ELECTRONICS AMERICA, INC.

Gibson, Dunn &
Crutcher LLP

Defendants' Motion to Dismiss Amended Complaint; Case No. C 06-6436 PJH; MDL No. 1486

1   DATED:  November 26, 2007          ORRICK HARRINGTON & SUTCLIFFE LLP
                                       ROBERT E. FREITAS
2                                      HOWARD ULLMAN

3

4                                      By: /s/ Howard M. Ullman
                                                Howard M. Ullman
5
                                       Attorneys for Defendant
6                                      NANYA TECHNOLOGY CORPORATION USA AND
                                       NANYA TECHNOLOGY CORPORATION
7

8

9   DATED:  November 26, 2007          HELLER EHRMAN LLP
                                       STEPHEN V. BOMSE
10                                     DAVID C. BROWNSTEIN
                                       SCOTT E. MORGAN
11

12

13                                     By: /s/ Stephen V. Bomse
                                                Stephen V. Bomse
14
                                       Attorneys for Defendant
15                                     MOSEL VITELIC INC. AND MOSEL VITELIC
                                       CORPORATION
16

17

18
    DATED:  November 26, 2007          SIMPSON THACHER & BARTLETT LLP
19                                     JAMES G. KREISSMAN
                                       HARRISON J. FRAHN
20                                     ISABELLE A. YOUNG

21

22
                                       By: /s/ Harrison J. Frahn
23                                              Harrison J. Frahn

24                                     Attorneys for Defendants
                                       ELPIDA MEMORY (USA) INC. AND
25                                     ELPIDA MEMORY, INC.

26

27                         **ATTESTATION OF FILING**

28       Pursuant to General Order No. 45, Section X(B) regarding signatures, I, Joel S. Sanders,

Gibson, Dunn &                            22
Crutcher LLP

Defendants' Motion to Dismiss Amended Complaint; Case No. C 06-6436 PJH; MDL No. 1486

1   hereby attest that concurrence in the filing of this Motion to Dismiss has been obtained from

2   Defendants Infineon Technologies AG, Infineon Technologies North America Corporation, Hynix

3   Semiconductor Inc., Hynix Semiconductor America Inc., Mosel Vitelic Corporation, Mosel Vitelic

4   Inc., Nanya Technology Corporation, Nanya Technology Corporation USA, Elpida Memory, Inc.,

5   Elpida Memory (USA) Inc., and NEC Electronics America, Inc. that have provided conformed

6   signatures above.

7

8   100313820_3.DOC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

Defendants' Motion to Dismiss Amended Complaint; Case No. C 06-6436 PJH; MDL No. 1486