1   ANDREW M. CUOMO
    Attorney General of the State of New York
2   JAY L. HIMES
    Bureau Chief, Antitrust Bureau
3   RICHARD L. SCHWARTZ
    JEREMY R. KASHA
4   Assistant Attorneys General
        Office of the New York Attorney General
5       120 Broadway, 26th Floor
        New York, New York 10271-0332
6       Tel: (212) 416-8262
        Fax: (212) 416-6015
7       Email: Jay.Himes@oag.state.ny.us
                Richard.Schwartz@oag.state.ny.us
8               Jeremy.Kasha@oag.state.ny.us
    Attorneys for Plaintiff State of New York
9
                    IN THE UNITED STATES DISTRICT COURT
10
                FOR THE NORTHERN DISTRICT OF CALIFORNIA
11
                          SAN FRANCISCO DIVISION
12

13   | In re DYNAMIC RANDOM ACCESS | Master File No. M-02-1486 PJH |
14   | MEMORY (DRAM) ANTITRUST | |
     | LITIGATION | MDL No. 1486 |
15   | | Case No. C 06-6436 PJH |
16

17   This Document Relates to:

18   STATE OF NEW YORK,            **NEW YORK'S OPPOSITION TO**
                                   **DEFENDANTS' SECOND MOTION TO**
                            Plaintiff,  **DISMISS**
19
            v.                     **ORAL ARGUMENT REQUESTED**
20
     MICRON TECHNOLOGY, INC., et al.,   Hearing Date:    February 27, 2008
21                                      Hearing Time:    9:00 a.m.
                            Defendants.  Location:       Courtroom 3,
22                                                        17th Floor
23                                       Judge:          Hon. Phyllis J.
                                                         Hamilton
24
25
26
27
28

# TABLE OF CONTENTS

Preliminary Statement ......................................................................................................... 1

   The State's Direct Purchaser Antitrust Claims ......................................................... 1

   The Indirect Purchaser Claim by the State and Requesting non-State Public Entities: ............. 2

   The State's New York Executive Law § 63(12) Claim ............................................ 3

Standard of Review ............................................................................................................. 3

Argument ............................................................................................................................. 4

I.    THE STATE'S DIRECT PURCHASER ANTITRUST CLAIMS PROPERLY INCLUDE THE OVERCHARGES THAT OEMS PAID, REGARDLESS OF WHETHER THE OEM RESOLD TO THE STATE OF NEW YORK OR TO A NON-STATE PUBLIC ENTITY. ..................................................................................................... 4

   A.   Under the Assignment Clause, the State Itself Owns All OEM Antitrust Claims. ......... 4

   B.   There is No Basis for Limiting the State's Antitrust Claim Ownership ....................... 7

II.   THE STATE'S THIRD CLAIM – AS AN INDIRECT PURCHASER UNDER THE DONNELLY ACT – IS LEGALLY SUFFICIENT AS TO BOTH THE STATE AND THE REQUESTING NON-STATE PUBLIC ENTITIES .............................................. 9

III.  THE STATE'S AMENDED COMPLAINT SATISFIES THE PLEADING REQUIREMENTS OF THE COURT'S AUGUST 31 ORDER. ................................ 10

IV.  NEW YORK EXECUTIVE LAW SECTION 63(12) ENTITLES THE STATE TO RECOVER DAMAGES ARISING FROM DEFENDANTS' ILLEGAL PRICE-FIXING .......................................................................................................... 12

   A.   Section 63(12) Authorizes the Attorney General to Seek Damages Independent of Any Right of Action Under the Predicate Statutory Violation ............................................. 13

   B.   Defendants' "Remoteness" Argument Does not Apply to the Attorney General's Section 63(12) Claim ............................................................................................. 15

Conclusion ......................................................................................................................... 20

NEW YORK'S OPPOSITION TO          i          3:06-CV-06436 PJH
DEFENDANTS' SECOND MOTION                     M:02-1486 PJH
TO DISMISS

# TABLE OF AUTHORITIES

**Cases**

*Bajorat v. Columbia-Breckenridge Dev. Corp.*, 944 F. Supp. 1371 (N.D. Ill. 1996)....................13

*Blue Cross and Blue Shield of New Jersey, Inc. v. Philip Morris USA, Inc.*,
   3 N.Y.3d 200, 818 N.E.2d 1140 (N.Y. Ct. App. 2004) ...............................................15, 16, 17

*CPC Int'l, Inc. v. McKesson Corp.*, 70 N.Y.2d 268, 514 N.E.2d 116 (1987) ............................. 13

*Federal Ins. Co. v. Arthur Anderson & Co.*, 75 N.Y.2d 366, 552 N.E.2d 870 (1990)................. 16

*FTC v. Mylan Labs., Inc.*, 62 F. Supp. 2d 25, *modified on other grounds*,
   99 F. Supp. 2d 1 (D.D.C. 1999) .............................................................................................13

*Gulfstream III Associates, Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 425
   (3rd Cir. 1993).......................................................................................................................4, 7

*Health Care Equalization Committee v. Iowa Medical Society*, 501 F. Supp. 970
   (D.Iowa. 1980), *aff'd on other points*, 851 F.2d 1020 (8th Cir. 1988)........................................7

*Hicks v. Bekins Moving & Storage Co.*, 87 F.2d 583 (9th Cir. 1937) ..............................................7

*Ho v. Visa USA*, 16 A.D.3d 256, 793 N.Y.S.2d 8 (1st Dep't 2005), aff'g, 2004-1
   Trade Cas. ¶74,384, 2004 WL 1118534 (Sup. Ct. N.Y. County 2004)...................................18

*Holder v. Archer Daniels Midland Co.*, 1999-1 Trade Cases ¶ 72,442
   (D.C. Super. Ct. Nov. 4, 1998) ..............................................................................................19

*In Re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297 (E.D. Mich. 2001) .......................................5

*In Re Cardizem CD Antitrust Litig.*, 200 F.R.D. 326 (E.D. Mich. 2001) .....................................19

*In re Felice*, 77 B.R. 376, 381 (D. Conn. 1987) ......................................................................... 14

*In re Fine Paper Litig.*, 632 F.2d 1081 (3rd Cir. 1980)................................................................. 4

*In re Fucilo*, Case No. 00-36261(CGM), 2002 Bankr. LEXIS 475, at *33

(S.D.N.Y. Jan. 24, 2002) .................................................................................14

*In re K-Dur Antitrust Litigation,* 338 F. Supp. 2d 517 ((D.N.J. 2004) ......................................5, 11

*Isidor Weinstein Inv. Co. v. The Hearst Corp.,* 303 F.Supp. 646 (N.D. Cal. 1969) .......................4

*Lorix v. Crompton Corp.,* 736 N.W.2d 619 (Minn. Sup. Ct. 2007)...............................................19

*New York v. Daicel Chemicals Industries, Ltd.,* 42 A.D.3d 301, 840 N.Y.S.2d 8
(1st Dep't 2007) ....................................................................................................19

*New York v. Feldman,* 210 F. Supp. 2d 294 (S.D.N.Y. 2002)................................................13, 15

*People v. American Motor Club, Inc.,* 179 A.D.2d 277, 582 N.Y.S.2d 688
(1st Dep't 1992) ....................................................................................................14

*People v. Elmhurst Milk & Cream Co.,* 116 Misc. 2d 140, 455 N.Y.S.2d 473
(Sup. Ct. Kings County 1982)....................................................................................14

*People v. World Interactive Gaming Corp.,* 185 Misc. 2d 852, 714 N.Y.S.2d 844
(Sup. Ct. N.Y. County 1999) .....................................................................................13

*State v. Citibank, N.A.,* 537 F. Supp. 1192 (S.D.N.Y. 1982) .......................................................14

*State v. Colo. State Christian Coll.,* 76 Misc. 2d 50, 346 N.Y.S.2d 482
(Sup Ct. N.Y. Co. 1973) ..........................................................................................17

*State v. Frink Am., Inc.,* 2 A.D.3d 1379, 770 N.Y.S.2d 225 (4th Dep't 2003) .......................13, 14

*State v. Justin,* 3 Misc. 3d 973, 779 N.Y.S.2d 717 (Sup. Ct. Erie County 2003) .........................13

*State v. Maiorano,* 189 A.D.2d 766, 592 N.Y.S.2d 409 (2d Dep't 1993).....................................12

*State v. Scottish-Am. Assoc., Inc.,* 52 A.D.2d 528, 381 N.Y.S.2d 671 (1st Dep't 1976)..............13

*States v. Socony-Vacuum Oil Co.,* 310 U.S. 150 (1940)............................................................15

*State v. Stevens,* 130 Misc. 2d 790, 497 N.Y.S.2d 812 (Sup. Ct. Oswego County 1985) ...........14

*State v. Winter,* 121 A.D. 2D 287, 503 N.Y.S.2d 384 (1st Dep't 1986).......................................14

*State of California v. Infineon Technologies AG*, No. C 06-4333 PJH, Order at 26

   (N.D. Cal. Aug. 31, 2007) .............................................................................................4

*United Copper Secruties Co. v. Amalgamated Copper Co.*, 232 F. 574 (2nd Cir. 1916) ................7

*Wiener v. Abrams,* 119 Misc. 2d 970, 464 N.Y.S.2d 919 (Sup. Ct. Kings County 1983) ........... 14

## **Statutes**

New York Insurance Law  § 2117 ........................................................................................... 14

New York State Executive Law  § 63(12) .......................................................................... passim

N.Y. Gen. Bus. L. § 340 ...................................................................................................... passim

N.Y. Gen. Bus. L. § 349 ...................................................................................................... passim

## **Other Authorities**

Ronald W. Cotterill, Leonard Egan, & William Buckhold, <u>Beyond Illinois Brick:</u>

   <u>The Law and Economics of Cost Pass Through in the ADM Price Fixing Case,</u>

   18 Rev. of Indus. Org. 45-52 (Feb. 2001) ...............................................................................17

**Preliminary Statement**

Defendants' motion to dismiss should be denied. The State's four-count amended complaint is straightforward and fully responsive to the Court's ruling on Defendants' first motion to dismiss (the "August 31 Order").

Briefly, the four pleaded claims are as follows:

Claims 1 and 2 – Federal and State antitrust: The State pleads federal and New York Donnelly Act antitrust claims as a *direct* purchaser, based on the Assignment Clause in the Centralized Contract. By operation of this clause, the State, as assignee, stands in the OEMs' shoes for purposes of alleging antitrust claims. (*See* A-Cmpt. ¶81-93)

Claim 3 – State antitrust: The State pleads a New York Donnelly Act claim as an *indirect* purchaser. This claim also includes that of all those non-State public entities who have expressly requested the State to proceed on their behalf ("Requesting non-State Public Entities"). These, too, are *indirect* purchaser claims. (*See id.* at ¶94-100)

Claim 4 – Executive Law § 63(12): The State brings this claim under the express authority of New York State law to recover damages and other relief on behalf of natural persons, based on Defendants' price-fixing – illegal activity undertaken in conducting their businesses. (*Id.* ¶101-103)

There is no merit to Defendants' motion to dismiss parts of Claims 1 and 2, and all of Claims 3 and 4.

**The State's Direct Purchaser Antitrust Claims:** New York's amended complaint clarifies the federal and state antitrust claims that the State asserts as a direct purchaser in Claims 1 and 2. As we discuss below, the State's antitrust claims as a direct purchaser include damages arising from assignments by the OEMs on sales they made to both the State itself, as well as to non-State public

entities – for example, counties, towns, school districts, and the like. In New York's original complaint, these latter entities were included in the term "State Entities." In the amended complaint, they are referred to separately as "non-State Public Entities" For clarity, we use that term here. (*Compare* Cmpt. ¶¶ 10 and 86 *with* A-Cmpt. ¶ 10.)

We have alleged throughout that the State owns both groups of claims because, under the Centralized Contract, the OEMs expressly assigned their federal and state antitrust claims "to the State." (*See* A-Cmpt. ¶ 80; Cmpt. ¶ 75-80.) The State, may, therefore, assert those claims that it owns. No request from any non-State Public Entity is needed.

Defendants object *only* to New York's asserted ownership of the OEM antitrust claims arising from the OEMs' sales to non-State Public Entities. They contend that the OEMs could not assign these antitrust claims to the State because New York is not a party to the sales that the OEMs made to the non-State Public Entities. Defendants, however, offer no authority to divest the State of its ownership of these claims assigned by the OEMs. Their argument is devoid of merit.

The language of the Centralized Contract is unambiguous in providing for an OEM assignment "to the State," whether the purchaser is the State itself or a non-State Public Entity. Thus, there is no basis to dismiss any part of the State's federal or state antitrust claims as a direct purchaser. Insofar as the Court may be of the view that, despite the contract language, the non-State Public Entity making the purchase from an OEM must request the State to act, then the State's two direct purchaser antitrust claims, alleged as Claims 1 and 2, include those of the Requesting non-State Public Entities. (*See* A-Cmpt. ¶¶ 86 and 92.)

**The Indirect Purchaser Claim by the State and Requesting non-State Public Entities:** In contrast to Claims 1 and 2, Claim 3 alleges an indirect purchaser claim, authorized under New York

state antitrust law. N.Y. Gen. Bus. L. § 340(6). Claim 3 arises independent of the Assignment Clause. Although Defendants assert that this is a "new" claim, in fact the State's original complaint sought to recover, under state antitrust law, for purchases made, both "directly and indirectly," from Defendants and their co-conspirators. (Cmpt. ¶¶ 10, 92). Pleading the indirect purchaser claim separately accords with the Court's August 31 Order, and enhances clarity.

**The State's New York Executive Law § 63(12) Claim:** Section 63(12) authorizes the Attorney General to secure monetary and equitable relief upon proof that any person engaged in repeated illegal activity in conducting business. Under settled case law, the Attorney General may sue whether or not the predicate statutory violation affords any civil right of action to anyone. Thus, a business violation of criminal statutes can provide the predicate for a § 63(12) claim. Here, Defendants' price-fixing, which violated both the criminal and civil provisions of federal and state antitrust law, provides the predicate illegality.

Defendants, however, seek dismissal of the § 63(12) claim, based on limitations in the civil remedies available under the antitrust laws themselves. This argument is meritless. The case law, which Defendants ignore, establishes that the statutory violation alone satisfies the illegality element of the Attorney General's claim. Similarly, the decisions that Defendants rely on to impose a "remoteness" gloss on § 63(12) have no application. These rulings arise in private litigation, or do not involve § 63(12) at all.

### Standard of Review

For purposes of this motion, New York adopts the standard of review set forth in the Court's August 31 Order, at 3.

1

**Argument**

2

I.    **THE STATE'S DIRECT PURCHASER ANTITRUST CLAIMS PROPERLY
      INCLUDE THE OVERCHARGES THAT OEMS PAID, REGARDLESS OF
      WHETHER THE OEM RESOLD TO THE STATE OF NEW YORK OR TO A
      NON-STATE PUBLIC ENTITY**

3

4

5

Defendants have twice moved to dismiss *part*, but not all, of the federal and state antitrust

6

claims that New York has pleaded. On each motion, Defendants have conceded the legal sufficiency

7

of the State's antitrust claims as a direct purchaser of DRAM. As defendants thus concede, New

8

York is entitled to plead these federal and state antitrust claims by virtue of the OEMs' assignment of

9

their claims "to the State" under the Assignment Clause in the Centralized Contract. (A-Cmpt. ¶

10

75.)[1]

11

12

A.    **Under the Assignment Clause, the State Itself Owns All OEM Antitrust
      Claims**

13

14

In short, Defendants do not dispute that the Assignment Clause is valid and operates to

15

permit New York to stand in the OEMs' shoes in pleading federal and state antitrust claims. Indeed,

16

"[i]t is the prevailing view in the federal courts that a treble damage antitrust claim is assignable."

17

18

*Isidor Weinstein Inv. Co v. The Hearst Corp.*, 303 F.Supp. 646, 649 (N.D. Cal. 1969) (citing

19

authorities); *Gulfstream III Associates, Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 425, 430 (3rd

20

Cir. 1993)("Under controlling federal law . . . antitrust claims are assignable")(citing *In re Fine*

21

*Paper Litig.*, 632 F.2d 1081, 1090 (3rd Cir. 1980) (citing authorities). This Court itself recognized

22

23

the validity of such assignments. *State of California v. Infineon Technologies AG.*, No. C 06-4333

24

25

26

27

[1] *See* Def. Notice of Motion, which seeks dismissal of the State's "Sherman Act and Donnelly Act claims to
the extent they purport to claim recovery for entities other than the State of New York." Although Defendants
later assert, inconsistently, that the State's Donnelly Act direct claim "should be dismissed (with the exception of
its claim for civil penalties)," Def. Mem. at 13, they offer no ground to dismiss the Donnelly Act direct claim,
based on the State's own purchases from the OEMs. There is none.

28

1   PJH, Order at 26 (N.D. Cal. Aug. 31, 2007) (holding legally sufficient claims asserted by Florida

2   under a contractual assignment clause).[2]

3
    What Defendants challenged, on their first motion to dismiss, was the extent to which the
4
    admittedly valid Assignment Clause permitted assertion of antitrust claims connected to purchases
5
6   made by public entities that do not constitute "the State" itself – those referred to here as "non-State

7   Public Entities." Defendants then argued that the State could not assert "representative claims" for

8   non-State Public Entities "without satisfying the procedural requirements and affording defendants
9
    the protections of Rule 23." Def. Mem. on First Dis. Motion at 2; *see also id.* at 9 ("the purported
10
11  claims of governmental entities other than the State should be dismissed"), 3 (New York sought "to

12  assert claims belonging to other entities").

13      As Defendants recognize on this second motion, the Court, in its August 31 Order,

14  "dismissed 'all representative claims on behalf of unnamed government entities'" with leave to
15
    replead as directed. Def. Mem. at 5 (quoting Order at 20). Specifically, the Court held that New
16
17  York had "provided no legal authority expressly authorizing plaintiff's representative claim under

18  the Sherman Act on behalf of the unnamed government entities alleged in plaintiff's complaint,"

19  Order at 10, and that "[t]he same analysis" rendered the State's claim under the Donnelly Act
20
    insufficient. *Id.* at 11.
21
22      On the first motion to dismiss, with hindsight, we recognize that we could have been more

23  helpful to the Court in explaining that the Assignment Clause operated to transfer the OEM's

24  antitrust claims – ***not*** claims of the non-State Public Entities. The State's original complaint itself

25

26  [2] *See also In re K-Dur Antitrust Litigation,* 338 F. Supp. 2d 517, 538 539 (D.N.J. 2004)("express assignments of
    antitrust claims from a direct purchaser to an indirect purchaser are permissible"); *In re Cardizem CD Antitrust*
27  *Litigation,* 200 F.R.D. 297, 304 (E.D. Mich. 2001) (same).

28  NEW YORK'S OPPOSITION TO                     5                    3:06-CV-06436 PJH
    DEFENDANTS' SECOND MOTION                                        M:02-1486 PJH
    TO DISMISS

did plead that, under the Assignment Clause, the State "stands in the shoes of the OEMs and other direct purchasers of price-fixed DRAM for purposes of alleging federal and state antitrust claims." (Cmpt. ¶ 80 (emphasis supplied); *see id.* ¶¶ 72-79.) Moreover, we stated explicitly in a discovery exchange, prior to this Court's August 31 Order: "The 'assignor' under the OGS centralized contracts is always the vendor (ie, the assignor is *not* the purchasing agency or governmental entity), and the assignee, under the OGS centralized contracts is always the State of New York (even for purchases by non-State public entities such as towns or counties)." (emphasis in original). Kasha Dec., Ex. A. Thus, the State sued to assert claims that the State itself owned, not as a "representative" for non-State Public Entities who did not own the claims.[3]

In any event, the State's amended complaint undertakes, in response to the Court's August 31 Order, to make this even clearer. Specifically, New York's amended complaint alleges that: (a) under the Assignment Clause, OEMs assign to the State federal and state antitrust claims (A-Cmpt. ¶¶ 73, 75, 80); (b) "[t]he State, accordingly, owns the Assigned Claims and is entitled to assert them" (*id.* ¶ 80); and (c) "the scope of the claims that the OEM assigned is determined by the extent of the purchases of DRAM-containing products made under the Centralized Contract by both the State and the non-State Public Entities." (*Id.* ¶ 80; *see also id.* ¶ 73.)

In sum, the federal and state antitrust claims that the State asserts as a direct purchaser, in Claims 1 and 2, are ones that the State itself owns, not that it alleges in a "representative" capacity for non-State Public Entities. The State owns these antitrust claims, whether the resale by the OEM giving rise to the OEM's assignment was made to the State itself or to a non-State Public Entity.

---

[3] Our brief on the first dismissal motion spoke in terms of the "purchases" of non-State Public Entities being assigned to the State – a shorthand way of describing that the OEM's assignment, in effect, transferred to the State antitrust claims for DRAM overcharges, regardless of whether the subsequent purchaser from the OEM was the State or a non-State Public Entity. NY Mem. on First Dis. Mot. at 3, 4. However, we also stated that the non-State public entities "expressly assigned their federal and state antitrust claims" to the State. *Id.* at 1.

NEW YORK'S OPPOSITION TO
DEFENDANTS' SECOND MOTION
TO DISMISS

6

3:06-CV-06436 PJH
M:02-1486 PJH

That is, and has been in both pleadings, the substance of the State's antitrust claims as a direct purchaser. Contrary to Defendants' assertion, this is not a "new" State theory.

### B.   There is No Basis for Limiting the State's Antitrust Claim Ownership

On this second dismissal motion, Defendants again argue that the State's antitrust claims, as direct purchaser, may not include Defendants' overcharges of the OEMs, where the OEMs resold under the Centralized Contract to non-State Public Entities. Def. Mem. at 10. But they cite *no* authority for the notion that the OEMs could not assign "to the State" antitrust claims associated with the OEMs' subsequent transactions with non-State Public Entities. They merely assert that the State "is not a party to these contracts," and, on Defendants' view, thus cannot "assert damages claims resulting from antitrust violations" in the resales that OEMs made to non-State Public Entities. Def. Mem. at 10; *see also id.* at 2.

So-called "non-party" status is not a recognized basis to extinguish an assignment. Quite the contrary. For example, in *Hicks v. Bekins Moving & Storage Co.*, 87 F.2d 583 (9th Cir. 1937), the Ninth Circuit upheld an antitrust claim assigned to the plaintiff by a shipper who was prevented from performing its contract by defendants' conspiracy. *See also United Copper Securities Co. v. Amalgamated Copper Co.*, 232 F. 574 (2nd Cir. 1916) (upholding antitrust claims assigned to a securities firm by stockholders of companies injured by a competitors' conspiracy); *Health Care Equalization Committee v. Iowa Medical Society*, 501 F. Supp. 970 (D.Iowa. 1980) (upholding an antitrust claim assigned to an association by individual chiropractors allegedly injured by boycott), *aff'd on other points*, 851 F.2d 1020 (8th Cir. 1988); *Gulfstream III*, 995 F.2d at 437 (noting that individual antitrust injuries may be aggregated via assignments to an association to prosecute the claims) (citing authorities).

In our situation, New York State officials negotiated the Centralized Contract, which affords the OEMs the benefits of pricing and other sales terms established on a statewide basis. (A-Cmpt. ¶¶ 73-78) The Centralized Contract thus reduces transaction costs when the OEMs do business with either the State itself, or with non-State Public Entities who are permitted to purchase under the Centralized Contract. The OEM assignments to the State further provide aggregation of antitrust claims to facilitate their efficient prosecution. Defendants cite no authority for the proposition that the OEMs are disabled from assigning to the State antitrust claims associated with the OEM's own supply transactions, which result in resales under the Centralized Contract.

Defendants further complain that the State's Sherman Act claims "excises any mention of injury to governmental entities who made purchases pursuant to the Centralized Contract." Def. Mem. at 9. Exactly the point: Claims 1 and 2 are direct claims that the OEMs have assigned. The injury that matters is that which Defendants' price-fixing inflicted on the OEMs in direct dealings – not the injury passed on to those who bought from the OEMs, regardless of whether that subsequent purchaser is the State or a non-State Public Entity.

There is no material difference between the State's federal antitrust claim as a direct purchaser, Claim 1, or its state antitrust claim as a direct purchaser, Claim 2. The Assignment Clause expressly covers each claim. (A-Cmpt. ¶ 75) Each claim is legally sufficient, and properly pleads that the State's claim includes overcharges to the OEMs, which are subsequently included in DRAM-containing product resold to both the State and non-State Public Entities.

Accordingly, for all purchases made under the Centralized Contract by either the State or by non-State Public Entities, the Assignment Clause is triggered. Under that provision the OEMs have assigned "to the State" their direct federal and state antitrust claims against Defendants. As the

owner of these assigned claims New York may properly assert them, regardless of the involvement of any non-State Public Entity. However, should the Court be of the view that non-State Public Entities need to request New York to act with respect to their own purchases, the non-State Public Entities listed in Schedule A have so requested. New York has alleged both the direct Sherman and Donnelly Act claims, in the alternative, on their behalf. [4]

## II. THE STATE'S THIRD CLAIM – AS AN INDIRECT PURCHASER UNDER THE DONNELLY ACT – IS LEGALLY SUFFICIENT AS TO BOTH THE STATE AND THE REQUESTING NON-STATE PUBLIC ENTITIES

Unlike federal antitrust law, Donnelly Act § 340(6) recognizes that indirect purchasers may seek treble damages as a matter of New York state law. Accordingly, Claim 3 in the State's amended complaint alleges a Donnelly Act antitrust claim, as indirect purchasers by the State on its own behalf and on behalf of all identified Requesting non-State Public Entities.[5] Claim 3 expressly alleges that Defendants' conspiracy injured "the State and the Requesting non-State Public Entities which purchased DRAM indirectly from Defendants and their co-conspirators . . . ." (A-Cmpt. ¶ 98) In this respect, Claim 3 is distinct from the State's two other antitrust claims, which invoke the Assignment Clause to establish direct purchaser status. (*Compare id.* ¶¶ 85 and 91 (alleging, in Claims 1 and 2, injury to "Defendants' customers, OEMs and other direct purchasers").

Defendants assert that this indirect state antitrust claim is "new" and "different." Def. Mem. at 14. That is not so. The Second Claim in New York's original complaint, pleaded under the Donnelly Act, sought to recover treble damages "[o]n behalf of all State Entities that purchased

---

[4] In a footnote, Defendants suggest that it is "doubtful" that New York's claims based on assignments from OEMS exist because Defendants have entered into settlements with direct purchasers. Def. Mem. at 11, n.2. But having previously assigned their antitrust claims to New York State, the OEMs no longer owned them, and could not divest New York State of its property.

[5] Claim 3 also includes the State's Donnelly Act civil penalties claim. (A-Cmpt. ¶ 100) The Court upheld this claim in its August 31 Order, and Defendants do not move against it.

NEW YORK'S OPPOSITION TO
DEFENDANTS' SECOND MOTION
TO DISMISS

9

3:06-CV-06436 PJH
M:02-1486 PJH

DRAM-containing products or DRAM, directly or indirectly, from Defendants or their co-conspirators . . . ." (Cmplt. ¶ 91); *see also id.* at ¶ 10 (alleging that the State sued on behalf of all State Entitics "that purchased DRAM or DRAM-containing products, directly or indirectly, from Defendants or their co-conspirators"). In amending, the State simply set forth its Donnelly Act indirect purchaser claim as a separate count.

Moreover, in conformity with the Court's August 31 ruling, the State limited those non-State Public Entities on whose behalf the claim is asserted to those who expressly requested the State to act. Hence, only *Requesting* non-State Public Entities are included on Claim 3.

Defendants also assert that Claim 3 should be dismissed because "§ 340(6) does not provide any independent basis for a claim." Def. Mem. at 14. Defendants trifle with the Court. Section 340(6), the State's *Illinois Brick* repealer, provides that the absence of direct dealing "shall not bar or otherwise limit recovery" by a person injured by a Donnelly Act violation. The law removes any indirect purchaser disability to invoking the Donnelly Act's provisions. Our amended complaint alleges expressly that Claim 3 arises under § 340 *et seq.* and references the substantive provision violated, § 340(1). (A-Cmplt. ¶¶ 94, 99) That is ample to plead an indirect purchaser claim under New York state law.

There is no basis to dismiss Claim 3.

### III.   THE STATE'S AMENDED COMPLAINT SATISFIES THE PLEADING REQUIREMENTS OF THE COURT'S AUGUST 31 ORDER

The amended complaint expressly identifies those on whose behalf each claim is asserted. Paragraph 10 alleges that all claims are asserted on behalf of the State itself, and that Claim 3 – the Donnelly Act indirect purchaser claim – is asserted on behalf of the Requesting non-State Public Entities as well. Paragraph 10 further alleges that the federal and state direct purchaser antitrust

claims – Claims 1 and 2 – are asserted, in the alternative, on behalf of the Requesting non-State Public Entities as well to the extent that the Court is of the view that these Entities have an interest in the claims, notwithstanding the Assignment Clause. (A-Cmpt. ¶¶ 10, 86, 92) Moreover, the amended complaint identifies each non-State Public Entity that has requested the State to assert claims on its behalf in Schedule A to its pleading. The name, geographic location, and zip code of each Requesting non-State Public Entity is provided.

The amended complaint further alleges that Claims 1 and 2 are direct purchaser claims (A-Cmpt. ¶¶ 73, 80, 85-86, 91-92), and that Claim 3 is an indirect purchaser claim. (A-Cmpt. ¶ 98) New York thus has satisfied the Court's instruction that "plaintiff's direct or indirect purchaser status must be provided." August 31 Order, at 7.

Defendants' argue, however, that the Assignment Clause allegations are not detailed enough because they do not specify "which governmental entities used the Centralized Contract, for which purchases, or the amount of such purchases." Def. Mem. at 11. But clearly, the details of specific purchases and their amounts go, at best, to calculating quantities of purchases and damages, not to pleading the validity of the assignment – which Defendants themselves do not challenge. In *K-Dur Antitrust Litigation*, 338 F. Supp. 2d at 540, the Court rejected a similar argument, ruling that "details supporting the validity of assignments can be left for later factual determination." (citing authorities) Indeed, New York has already produced to Defendants documents sufficient to show each of the OEMs or other firms that have assigned their direct antitrust claims to the State.

**IV.     NEW YORK EXECUTIVE LAW SECTION 63(12) ENTITLES THE STATE TO RECOVER DAMAGES ARISING FROM DEFENDANTS' ILLEGAL PRICE-FIXING**

The State's Fourth Claim is pleaded under N.Y. Executive Law § 63(12). This statute provides, in pertinent part, as follows:

> Whenever any person shall engage in repeated . . . *illegal acts* or otherwise demonstrate persistent . . . *illegality* in the carrying on, conducting, or transaction of business, the attorney general may apply, in the name of the people of the state of New York, for an order . . . directing restitution and *damages* . . . .

(Emphasis supplied). As the case law demonstrates, "Executive Law § 63(12) should be liberally construed in furtherance of its intended purpose" – protecting the public from illegal or fraudulent business conduct. *State v. Maiorano*, 189 A.D.2d 766, 767, 592 N.Y.S.2d 409 (2d Dep't 1993).

In its August 31 Order, the Court dismissed New York's initial § 63(12) claim only to the extent that it sought treble damages. Order, at 19-20. Accordingly, as re-pleaded, New York does not seek treble damages in this claim. Defendants now assert two grounds for dismissing New York's § 63(12) claim nonetheless.

First, they argue that the Attorney General may bring a § 63(12) claim only where the underlying statute providing the predicate "illegality" itself affords a private civil right of action. Def. Mem. at 18. The case law – none of which Defendants cite – expressly rejects this very argument. Second, Defendants contend that "remoteness" bars recovery of damages here. Again, however, none of the authorities on which Defendants rely arise under § 63(12), and their argument flies in the face of many decisions construing the statute.

A.    **Section 63(12) Authorizes the Attorney General to Seek Damages Independent of Any Right of Action Under the Predicate Statutory Violation**

Executive Law § 63(12) – which empowers the Attorney General to sue "any person" who "engage[s] in repeated . . . illegal acts" – invests the Attorney General with broad authority to assure the public's protection. The Attorney General may prove, as the predicate element for relief under § 63(12), "[v]iolations of State laws, as well as violations of Federal laws or regulations," or fraudulent conduct. *New York v. Feldman*, 210 F. Supp. 2d 294, 300 (S.D.N.Y. 2002) (internal quotation marks omitted; citing authorities); *see also State v. Frink Am., Inc.*, 2 A.D.3d 1379, 770 N.Y.S.2d 225 (4th Dep't 2003) (claim based on violations of N.Y. Labor Law §§ 191-c & 198); *State v. Scottish-Am. Assoc., Inc.*, 52 A.D.2d 528, 381 N.Y.S.2d 671 (1st Dep't 1976) (claim based on violation of federal Civil Aeronautics Board regulations); *People v. World Interactive Gaming Corp.*, 185 Misc. 2d 852, 714 N.Y.S.2d 844 (Sup. Ct. N.Y. County 1999) (claim based on federal and state criminal statutes).

Significantly, § 63(12) empowers the Attorney General to secure relief even where there is *no* private civil right of action under the predicate statute. By way of illustration, in *FTC v. Mylan Labs., Inc.*, 62 F. Supp. 2d 25, 49-50, *modified on other grounds*, 99 F. Supp. 2d 1 (D.D.C. 1999), the federal court upheld New York's authority to obtain relief under §63(12), even though such relief was not available under the federal Clayton Act. *See id.* at 43 (the state statutes are "broader than the Clayton Act in this regard").[6] Indeed, the *absence* of a private remedy under the predicate statute – or the inability of private parties to obtain complete relief – weigh *in favor of* the Attorney General's

---

[6] *Compare State v. Justin*, 3 Misc. 3d 973, 779 N.Y.S.2d 717 (Sup. Ct. Erie County 2003) (§ 63(12) claim based on Martin Act). *with CPC Int'l, Inc. v. McKesson Corp.*, 70 N.Y.2d 268, 514 N.E.2d 116 (1987) (no private right of action under the Martin Act); *World Interactive Gaming Corp.*, 185 Misc.2d 852, 714 N.Y.S.2d 844 (§ 63(12) claim based on the federal Wire and Travel Acts, both criminal statutes, and New York State criminal gaming law), *with Bajorat v. Columbia-Breckenridge Dev. Corp.*, 944 F. Supp. 1371, 1377-78 (N.D. Ill. 1996) (no private right of action under the Travel Act; citing authorities).

NEW YORK'S OPPOSITION TO
DEFENDANTS' SECOND MOTION
TO DISMISS

13

3:06-CV-06436 PJH
M:02-1486 PJH

ability to use § 63(12) – not against it.[7]

The courts similarly have rejected attempts to evade § 63(12) liability on the theory that the Attorney General should be restricted to the remedies or procedures set forth in the predicate statute – the very argument that Defendants' advance here.  For example, courts have granted restitution under § 63(12) for misconduct covered by other laws, regardless of whether those laws provided a restitution remedy. Thus, in *People v. American Motor Club, Inc.*, 179 A.D.2d 277, 283, 582 N.Y.S.2d 688 (1st Dep't 1992), defendants challenged a § 63(12) restitution award for persistent violations of New York Insurance Law § 2117, on the ground that § 2117 "does not have restitution as a remedy." The appellate court rejected the argument because the complaint "alleged that the violation of Insurance Law § 2117 itself constituted repeated and consistent illegality under Executive Law § 63(12), pursuant to which restitution is a permitted remedy." *Id*. at 283.[8]  Similarly, § 63(12) reaches activity that is unlawful under federal law, even where a specific federal agency has enforcement authority, or where federal law itself affords remedies.[9]

Consequently, here, the Attorney General may satisfy the § 63(12) predicate by alleging Defendants' repeated or persistent violations of § 1 of the Sherman Act, or of § 340(1) of the

---

[7] *See In re Fucilo*, Case No. 00-36261(CGM), 2002 Bankr. LEXIS 475, at *33 (S.D.N.Y. Jan. 24, 2002); *In re Felice*, 77 B.R. 376, 381 (D. Conn. 1987).

[8] *See also Frink Am., Inc.*, 2 A.D.3d at 1381 (in a § 63(12) proceeding based on state Labor Law violations, the Attorney General was authorized "to prosecute and seek redress beyond the remedies available to the Commissioner of Labor and individual employees"); *State v. Winter*, 121 A.D.2d 287, 288, 503 N.Y.S.2d 384  (1st Dep't 1986) (reversing lower court ruling that dismissed § 63(12) action for rent law violations, and rejecting the argument that a city agency had primary jurisdiction); *Wiener v. Abrams*, 119 Misc. 2d 970, 973, 464 N.Y.S.2d 919 (Sup. Ct. Kings County 1983) (declining to quash subpoenas issued under § 63(12) to investigate possible violations of a local rent law; although a separate "legislative scheme" of procedures and remedies was created, the local law did not vest "exclusive jurisdiction" in that law's remedial procedures).

[9] *See, e.g., State v. Stevens*, 130 Misc. 2d 790, 792, 497 N.Y.S.2d 812 (Sup. Ct.  Oswego County 1985) (§ 63(12) claim based on Federal Trade Commission regulations); *State v. Citibank, N.A.*, 537 F. Supp. 1192, 1195 (S.D.N.Y. 1982) (§ 63(12) claim based on Electronic Funds Transfer Act).

NEW YORK'S OPPOSITION TO
DEFENDANTS' SECOND MOTION
TO DISMISS

14

3:06-CV-06436 PJH
M:02-1486 PJH

Donnelly Act – each of which render price-fixing unlawful. *See United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150 (1940) (price-fixing among competitors is a *per se* Sherman Act violation); *People v. Elmhurst Milk & Cream Co.*, 116 Misc. 2d 140, 161, 455 N.Y.S.2d 473 (Sup. Ct. Kings County 1982) ("agreements among competitors to fix prices and allocate customers" are a *per se* Donnelly Act violation); *Feldman*, 210 F. Supp. 294 (upholding a § 63(12) claim based on a bid-rigging scheme that violated federal and state antitrust laws). The Attorney General's § 63(12) authority to sue is independent of whether the Legislature has created *any* private right of action under either federal or state antitrust law for either direct or indirect purchasers. The statute's overarching purpose is to confer authority on the Attorney General to protect the public from illegal or fraudulent business conduct, whether or not other rights of action exist.

**B.  Defendants' "Remoteness" Argument Does not Apply
to the Attorney General's Section 63(12) Claim**

Defendants' also urge this Court to import into the Attorney General's § 63(12) claim a "remoteness" element, based largely on *Blue Cross and Blue Shield of New Jersey, Inc. v. Philip Morris USA, Inc.*, 3 N.Y.3d 200, 818 N.E.2d 1140 (N.Y. Ct. App. 2004) – a decision in a private action arising under another New York statute altogether. This effort similarly fails.

In *Blue Cross*, a health insurer brought a derivative action against several tobacco companies under § 349 of the New York General Business Law ("GBL"), which bars deceptive practices. The insurer alleged that the defendants misled the public regarding cigarette smoking's harmful and addictive properties, and that, as a result, it incurred increased medical costs for its subscribers' smoking-related illnesses. The New York Court of Appeals rejected the insurer's § 349 claim because the insurer's injury was "too remote" from defendants' illegal conduct, and because the claim was derivative of its subscribers' injuries. *Id.* at 208. The Court, however, further noted that the

smokers themselves could sue for damages under § 349:

> [I]t is beyond dispute that section 349(h) permits an actually (non-derivatively) injured party to sue a tortfeasor. We hold simply that what is required is that the party actually injured be the one to bring suit. *Id.*

Moreover, the Court emphasized that it did not "leave [the insurer] without remedy," *id.*, because there remained a common law action for equitable subrogation. *Id.* at 206. *See, e.g., Federal Ins. Co. v. Arthur Anderson & Co.*, 75 N.Y.2d 366, 552 N.E.2d 870 (1990) (an equitable subrogee has those rights that the insured would have had against the tortfeasor for its wrongdoing).

Defendants' attempt to draw from *Blue Cross* a "remoteness doctrine" barring damages recovery for indirect purchases, and to engraft it to a different statutory context, is misguided for several reasons.

First, as we demonstrated above, § 63(12) authorizes suit by the Attorney General under statutorily prescribed circumstances. The developed body of case law under the statute confirms the Attorney General's authority to seek relief, including a monetary award, to protect the public from illegal business conduct, such as antitrust violations. *Blue Cross*, on the other hand, was a tort suit between private parties. It did not implicate the exercise of legislatively conferred authority by the Attorney General.

Second, even assuming, *arguendo*, that a "remoteness doctrine" could apply in some circumstance, the injury suffered by consumers here has at least as strong a nexus to defendants' price-fixing as that of the smokers in *Blue Cross* – who, as the Court of Appeals recognized, had a right to recovery under GBL § 349 although they did not buy cigarettes directly from the defendant tobacco companies. And so too did the insurer as a subrogee asserting the rights of its subscribers who smoked.

Like the smokers in *Blue Cross,* the consumers of PCs and other DRAM-containing products purchased Defendants' products indirectly. Moreover, in each scenario, the products were marketed using unlawful practices. Indeed, here, Defendants' practices were *per se* federal and state antitrust violations giving rise to criminal liability, not business frauds.

In addition, here the Defendants' unlawful practices are *more closely* connected to the injury to indirect DRAM purchasers than were the tobacco companies' practices in *Blue Cross.* First, the DRAM Defendants *intended* their unlawful conduct to increase the prices of DRAM, which were used in products that consumers eventually purchased. Second, it was foreseeable — indeed, inevitable — that ultimate consumers would bear the over-charges from Defendants' price-fixing because, as a matter of economics, intermediaries pass on their own increased input costs.[10]

Third, Defendants misinterpret *State v. Colo. State Christian Coll.,* 76 Misc. 2d 50, 346 N.Y.S.2d 482, (Sup Ct. N.Y. Co. 1973). The court there construed GBL § 349 to complement § 63 (12), thereby assuring comprehensive statutory authority to protect the public. More specifically, the court held that the Legislature intended that newly enacted GBL § 349 supplement §63(12), so as to provide protection against incipient fraud. Towards that end – protecting the public – the court said that "section 349 of the General Business Law deserves construction parallel to subdivision 12 of section 63 of the Executive Law." 346 N.Y. S. 2d at 488. Defendants take this statement out of context and attempt to draw from *Colo. State* a broad equivalency between the two statutes. Def. Mem. at 16, 17. n.6. But *Colo. State* plainly does not support Defendants' argument that limits imposed under GBL § 349 in private cases should be extended beyond their rationale to hobble the Attorney General's exclusive enforcement authority under § 63(12). That is not what *Colo. State*

---

[10] *See. e.g.,* Ronald W. Cotterill, Leonard Egan, & William Buckhold, Beyond Illinois Brick: The Law and Economics of Cost Pass Through in the ADM Price Fixing Case, 18 Rev. of Indus. Org. 45-52 (Feb. 2001).

1   teaches at all.

2       Finally, in § 340(6) of the New York Donnelly Act, the Legislature expressly recognized that

3   anticompetitive conduct injures indirect purchasers, and the Legislature thus confirmed their right to

4

5   sue and recover. The legislative judgment underlying this *Illinois Brick* repealer provision should

6   inform the Court's analysis of the circumstances in which the Attorney General may invoke its §

7   63(12) authority to protect the public. Recognizing the § 63(12) claim here as legally sufficient

8   advances the legislature's intent to afford redress for the benefit of indirect purchasers; importing

9

10  Defendants' remoteness element would not.

11      *Ho v. Visa USA*, 16 A.D.2d 256, 793 N.Y.S.2d 8 (1st Dep't 2005), *aff'g*, 2004-1 Trade Cas.

12  ¶74,384, 2004 WL 1118534 (Sup. Ct. N.Y. County 2004), also cited, is even further afield. Def.

13  Mem. at 16. There, customers alleged that Visa and MasterCard charged retailers excessive fees on

14

15  debit card transactions, thereby increasing the retailers' costs, and in turn the prices that all retail

16  customers paid. In holding the customers' injuries too remote, the court emphasized that the

17  customers never purchased the product of the two credit card companies, even indirectly, and the

18  court explicitly distinguished such cases. *See Ho*, 2004-1 Trade Cas. ¶74,384, at *2-3 (noting that

19

20  the injury was "far more indirect" than that of cigarette smokers, who "purchased the defendants'

21  product, though not directly from defendants").

22      The decision further noted that "there is no indication that [defendants] intended that the

23  prices of all consumer goods in those stores would be increased." *Id.* Finally, because plaintiffs'

24

25  theory was that the defendants increased the retailers' overhead, thus raising the price of every

26  product sold, any attempt to trace the fee overcharge to each retail sale, would, the court wrote, be

27  too "complex" and "speculative." *Id.* Thus, the court thought it infeasible to determine how much

28

NEW YORK'S OPPOSITION TO          18          3:06-CV-06436 PJH
DEFENDANTS' SECOND MOTION                     M:02-1486 PJH
TO DISMISS

of a retailer's increased overhead expense found its way into the final sale price of any particular item.

Here, by contrast, the consumer-public did buy the defendants' DRAM, either as components in computers and other electronic devices or as individual parts to add to such devices. Furthermore, defendants intended the price of DRAM to increase. And, they knew full well that their price-fixed overcharges would be borne by direct and indirect purchasers. The higher prices that indirect purchasers paid were "intended" in exactly the same way as were the higher prices that direct purchasers paid. Accordingly, the consumers' injuries in this case are not too remote, and can reasonably be proven by expert testimony. *Cf. Lorix v. Crompton Corp.*, 736 N.W.2d 619, 631-35 (Minn. Sup. Ct. 2007) (upholding state antitrust claim by consumer arising from price fixing a chemical component used to manufacture rubber); *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 326, 348-50 (E.D. Mich. 2001) (finding sufficient indirect purchaser class damages methodology); *Holder v. Archer Daniels Midland Co.*, 1999-1 Trade Cases ¶ 72,442 (D.C. Super. Ct. Nov. 4, 1998)(denying defendant's summary judgment motion on consumers' D.C. antitrust claims arising from price fixing a food ingredient).

Finally, *New York v. Daicel Chemicals Industries, Ltd.*, 42 A.D.3d 301, 840 N.Y.S.2d 8 (1st Dep't 2007), applied a remoteness analysis to the State's claim under GBL § 349. The ruling did not implicate the Attorney General's statutory authority under § 63(12), or consider the extensive body of case law under that statute.

Accordingly, Defendants' second basis for dismissal of the State's Fourth Claim is without merit.

1

## Conclusion

2

Defendants' motion to dismiss parts of the State's amended complaint should be denied in all

3

4

respects.

5

Dated: January 9, 2008

6

Respectfully submitted,

7

8

9

ANDREW M. CUOMO
Attorney General of the State of New York
Antitrust Bureau
By:_____ /s/ Richard L. Schwartz

10

11

JAY L. HIMES
Bureau Chief
RICHARD L. SCHWARTZ
JEREMY R. KASHA
Assistant Attorneys General
Antitrust Bureau
120 Broadway, 26th Floor
New York, New York 10271
Telephone: (212) 416-8284
*Counsel for Plaintiff State of New York*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28