UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re DYNAMIC RANDOM ACCESS MEMORY (DRAM) ANTITRUST LITIGATION _____/ <br><br> This Document Relates to: <br><br> State of New York v. Micron et al. (C 06-6436 PJH) _____/ | No. M 02-1486 PJH <br><br> **ORDER DENYING DEFENDANTS' MOTION TO DISMISS** |

Defendants' motion to dismiss plaintiff's complaint came on for hearing before this court on February 27, 2008. Plaintiff, the State of New York ("plaintiff State") acting through its Attorney General, appeared through its counsel, Richard L. Schwartz. Defendants appeared through their counsel, Steven Bergman, Tim Martin, Joel S. Sanders, Joshua Hess, David C. Brownstein, Jonathan Swartz, and Catherine Lui. Having read all the papers submitted and carefully considered the relevant legal authority, the court hereby DENIES defendants' motion to dismiss, for the reasons stated at the hearing, and as follows.

**BACKGROUND**

This action is part of a broader multidistrict litigation. Like various other plaintiffs in the MDL action, plaintiff State here generally alleges a horizontal price-fixing conspiracy in the U.S. market for dynamic random access memory ("DRAM"), carried out by numerous manufacturer defendants.

A.  Procedural History

Plaintiff State filed its original complaint against defendants on July 13, 2006. The original complaint asserted four causes of action against defendants: (1) a federal antitrust claim for violation of Section 1 of the Sherman Act; (2) a state antitrust claim for violation of

New York's Donnelly Act; (3) a claim pursuant to New York's Executive Law § 63(12), which allows the State Attorney General to enjoin "fraudulent or illegal acts" in the "carrying on, conducting or transaction of business"; and (4) a claim pursuant to California's state antitrust statute, the Cartwright Act. See, e.g., Complaint at ¶¶ 81-86, 87-92, 93-95, 96-101.

On February 7, 2007, the court heard defendants' motion to dismiss portions of the original complaint. Defendants specifically sought dismissal of (1) the Sherman Act claim to the extent it sought recovery on behalf of unnamed government entities and indirect purchasers; (2) plaintiff State's claim for a civil penalty under the Donnelly Act; (3) claims under New York's Executive Law § 63(12); and (4) the Cartwright Act claim.

The court granted the motion in part, and denied it in part, on August 31, 2007. First, with respect to the Sherman Act claim for relief, the court dismissed all claims seeking recovery on behalf of indirect purchasers, and dismissed all representative claims on behalf of unnamed government entities, although leave to amend these latter claims was granted. See August 31, 2007 Order ("August 31 Order") at 4-10. The court also dismissed plaintiff State's Donnelly Act claim on behalf of government entities on the same grounds as the Sherman Act claim, again with leave to amend. Id. at 11-12. Plaintiff State's Donnelly Act claim for monetary damages on behalf of natural persons was also dismissed. Id. at 12-15. With respect to plaintiff State's claim under New York Executive Law § 63(12), the court denied the motion to dismiss the claim on timeliness and procedural grounds, but dismissed plaintiff State's request for treble damages under the act, and all claims on behalf of government entities. Order at 17-20. Finally, the court dismissed with prejudice plaintiff State's Cartwright Act claim. Id. at 20. The court's order also made clear, in closing, that leave to amend would be permitted "*only* as specified [t]herein." Amendment as to additional matters would not be permitted without prior leave of court. Id. at 21-22.

B.   The Amended Complaint and Instant Motion

On October 1, 2007, plaintiff State duly filed its amended complaint. The amended

complaint once again asserts four causes of action, albeit slightly different ones than before. Those causes of action are: (1) a federal antitrust claim under the Sherman Act (First Claim for Relief); (2) a state antitrust claim under New York's Donnelly Act (Second Claim); (3) a second state antitrust claim under New York's Donnelly Act (Third Claim); and (4) a claim under New York's Executive Law § 63(12). See generally Amended Complaint ("Amended Complaint").

The Amended Complaint also clarifies that plaintiff State is bringing suit on behalf of: (a) the State itself, including all of its branches, departments, agencies or other parts thereof (as to all claims for relief); (b) the non-State entities listed on an attached Schedule A (referred to as the "Requesting non-State Public Entities")(as to the first, second, and third claims for relief);[1] and (c) natural persons in New York who purchased DRAM indirectly from defendants (as to the fourth claim for relief only). See Amended Complaint, ¶ 10.

Defendants now move to dismiss once again. They challenge all four claims, either in whole or in part.

**DISCUSSION**

A.  Legal Standard

　　A.  Legal Standard

In evaluating a motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. See, e.g., Burgert v. Lokelani Bernice Pauahi Bishop Trust, 200 F.3d 661, 663 (9th Cir. 2000)(citations omitted). In order to survive a dismissal motion, however, a plaintiff must allege facts that are enough to raise his/her right to relief "above the speculative level." See Bell Atlantic Corp. v. Twombly, --- U.S. ---, 127 S. Ct. 1955, 1964-65 (2007). While the complaint "does not

---

[1] The Amended Complaint refers to local entities who are not part of the State as "non-State Public Entities" throughout the amended complaint generally. This is a shift from the original complaint, which included these local entities and municipalities together with State entities within the definition of "State Entities."

3

need detailed factual allegations," it is nonetheless "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. In short, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face," not just conceivable. Twombly, 127 S. Ct. at 1974.

B.  Defendants' Motion to Dismiss

Resolution of defendants' motion to dismiss requires, in turn, resolution of the following issues: (1) whether plaintiff State's claim for damages on behalf of natural persons under Executive Law 63(12) should be dismissed; (2) whether plaintiff State's amended Sherman Act claim should be dismissed; and (3) whether plaintiff State's claims for damages under the Donnelly Act should be dismissed.

1.  Plaintiff State's Claim for Damages on Behalf of Natural Persons Under Executive Law 63(12)

Defendants seek dismissal of plaintiff State's claim under Executive Law § 63(12). See Amended Complaint, ¶ 103.[2] Specifically, defendants argue that (a) plaintiff's claim is barred under the Sherman Act and Donnelly Act – two of the predicate statutes claimed by plaintiff as a basis for plaintiff's claim for damages under Executive Law § 63(12); and (b) plaintiff State cannot otherwise recover on behalf of indirect purchasers under Executive Law § 63(12), because the indirect purchasers' injuries are too remote from the alleged violation.

Plaintiff responds with two arguments. First, plaintiff State contends that Executive Law § 63(12) authorizes the Attorney General to seek damages under the statute, independent of the remedies or procedures provided under any predicate statute, where – as here – the predicate law is a state or federal law or regulation that has been violated.

---

[2] In the August 31 Order, the court dismissed plaintiff's claim under Executive Law § 63(12), to the extent it sought relief on behalf of unnamed government entities, as well as plaintiff's claim for treble damages. The order did not address the viability of a claim on behalf of natural persons for regular damages.

4

Second, plaintiff State contends that defendants have misinterpreted the case law imposing remoteness limitations under New York General Business Law § 349, by concluding that such limitations also apply to Executive Law § 63(12).

With respect to the former issue, both parties preliminarily agree that § 63(12) comes into play where there is a predicate violation of some state or federal statute or regulation at issue. They further agree that plaintiff State alleges that the predicate violations include violations of the Sherman Act and the Donnelly Act, in addition to § 63(12).[3] The parties' disagreement is whether relief in the form of damages sought by plaintiff State pursuant to § 63(12) is permissible, in view of the fact that the predicate statutes – i.e., the Sherman Act and the Donnelly Act – would not allow such relief on behalf of the indirect purchasers on whose behalf plaintiff State brings suit. Plaintiff State points to case law that permits certain types of relief under § 63(12), even where the predicate laws themselves do not provide for the same relief. Defendants, by contrast, invoke contrary case law to point out that, regardless whether the predicate laws are silent as to a particular type of relief, § 63(12) cannot be used to obtain relief that is *expressly prohibited* by the predicate laws.

On balance, the court finds plaintiff State's argument more persuasive. The court is persuaded on this point by the reasoning expressed by the Southern District of New York in New York v. Feldman, 210 F. Supp. 2d 294, 302-03 (S.D. N.Y. 2002). In Feldman, the district court considered a motion to dismiss the Attorney General's claim for restitution under § 63(12), where the predicate statute for the claim was the Donnelly Act. In denying the motion to dismiss, the Feldman court held that "damages available under the Donnelly Act are irrelevant when proceeding under section 63(12) because New York courts have consistently held that restitution sought pursuant to section 63(12) is available for

---

[3] The Amended Complaint also contains a reference to defendants' alleged violations of "state antitrust laws throughout the United States." See Amended Complaint, ¶ 102. However, as defendants point out, this allegation is too vague and insubstantial to provide independent support for plaintiff's § 63(12) claim.

5

misconduct covered by other laws which do not provide for restitution." See id. at 302. While the Feldman court was considering a claim for restitution under § 63(12), and not damages, the Feldman court nonetheless allowed such a claim to go forward, despite the court's recognition that the Donnelly Act itself limits the Attorney General to injunctive relief and civil penalties in actions brought on behalf of natural persons, and does not permit damages (including restitution). Id. at 302, fn. 4. This holding is instructive here, and leads the court to conclude that, notwithstanding the Donnelly Act's prohibition on the Attorney General's pursuit of damages on behalf of natural persons, the Attorney General *may* seek such damages and restitution as are permitted by § 63(12), even though the § 63(12) claim is based on a violation of the Donnelly Act.

Defendants have noted the apparent contradiction in allowing such a claim to go forward under § 63(12), when a parens patriae damages claim cannot be asserted under the Donnelly Act itself. Indeed, the parties' arguments in connection with the first motion to dismiss alluded to this issue, when the parties debated whether § 63(12) could provide the Attorney General with authority to seek parens patriae damages under the Donnelly Act. See August 31 Order at 14-15. However, neither the parties – nor the court's order – actually addressed head-on the issue now before the court here – i.e., whether the Attorney General may recover on behalf of natural persons pursuant to the remedial scheme provided by § 63(12) specifically. And in addressing the issue here, defendants have cited no authority affirmatively holding that the remedies prescribed by § 63(12) are unavailable when a claim brought under § 63(12) is based on a predicate statute with a remedial scheme that prohibits the very remedies allowable under § 63(12). Accordingly, the court finds plaintiff State's claim for damages under § 63(12) permissible.

As to the latter issue raised by the parties – whether recovery on behalf of indirect purchasers under Executive Law § 63(12) is barred for remoteness – plaintiff ultimately has the better argument. The gist of defendants' argument is that New York state courts have firmly established that New York General Business Law § 349 – a consumer protection

statute – does not permit claims arising solely as a result of derivative injuries, and that since § 349 and Executive Law § 63(12) are to be construed in harmony with one another, the remoteness concerns applicable to a § 349 claim prohibit plaintiff State's indirect purchaser claims under Executive Law § 63(12). See, e.g., Lefkowitz v. Colorado State Christian College of the Church of the Inner Power, Inc., 76 Misc. 2d 50, 59 (N.Y. Sup. Ct. 1973); Blue Cross & Blue Shield v. Philipp Morris USA, 3 N.Y. 3d 200, 207 (N.Y. Ct App 2004); New York v. Daicel Chems., 42 A.D.3d 301 (1st Dept 2007).

As plaintiff State points out, however, defendants rely almost exclusively on case law that discusses claims brought pursuant to § 349, which plaintiff does not allege here. Moreover, defendants have failed to point to any case law that expressly states that the remoteness considerations applicable to § 349 claims applies to claims brought under § 63(12), let alone case law that affirmatively dismisses on remoteness grounds indirect purchaser claims brought under Executive Law § 63(12). In addition, New York's Donnelly Act – one of the predicate statutes for plaintiff State's § 63(12) claim – is an Illinois Brick repealer statute. As such, a finding of remoteness, based on the indirect purchaser status of the persons and entities whom plaintiff State represents does not follow.

In sum, the court DENIES defendants' request to dismiss plaintiff State's fourth claim for relief, on grounds that all relief sought on behalf of indirect purchasers is barred under either the predicate statutes, or on remoteness grounds.[4]

  2.  Amended Sherman Act Claim (First Claim for Relief)

In their first motion to dismiss, defendants challenged the viability of plaintiff State's Sherman Act claim, in part, based on the argument that plaintiff was impermissibly attempting to assert representative claims on behalf of state and local government entities, which plaintiff was not permitted to do under the Sherman Act. In its August 31 Order, the

---

[4] Defendants also argue, for the first time on reply, that plaintiff's claim for restitution on behalf of indirect purchasers should also be viewed as too remote, based on standing principles similar to those espoused by Assoc. Gen. Contractors of Cal. v. Cal. State Council of Carpenters, 459 U.S. 519, 535 (1983). As this is a new argument which plaintiff was not given an opportunity to brief in response, the court rejects the argument here.

7

court agreed with defendants on this point, noting that a State and its entities are considered "persons" capable of suing for damages under the Clayton Act only as long as such relief is requested via proprietary suits, and that the Clayton Act does not otherwise permit representative claims by the Attorney General "on behalf of" other government entities. See August 31 Order at 5-6.  While the court further noted that authority to bring a representative suit on behalf of the government entities in question *could* alternatively be rooted in state law authority, the court rejected plaintiff's argument that such authority existed by virtue of the assignment clause contained within the Centralized Contract.[5] Specifically, the court found that plaintiff had not cited any authority establishing that assignment of a federal antitrust claim from government entities to plaintiff State confers standing to bring a representative suit on behalf of those government entities, and under the alleged terms of the Centralized Contract, it was the OEMs who had assigned their claims to the State, not the government entities on whose behalf plaintiff purported to sue. See Order at 7-8.  The court allowed plaintiff State to amend its complaint, however, in order to re-state its Sherman Act claim to establish that plaintiff State's representative authority to assert claims on behalf of government entities could be rooted in the Donnelly Act.

Now, defendants claim that, while plaintiff has duly amended its Sherman Act claim following the court's August 31 Order, plaintiff State's amended allegations still fail to set forth any valid Sherman Act claim for purchases by the non-State Entities (i.e., local entities

---

[5] Plaintiff originally alleged that "various State Entities made substantial purchases" under a "Centralized Contract" between the State of New York and certain OEMs, that "all purchases of DRAM-containing products by State Entities, made pursuant to the Centralized Contract," were "direct, and not indirect, purchases of price-fixed DRAM," and that "by virtue of the Assignment Clause" contained within the Centralized Contract, "the State of New York, on behalf of all State Entities that purchased DRAM or DRAM-containing products under the Centralized Contract, stands in the shoes of the OEMs and other direct purchasers of price-fixed DRAM for purposes of alleging federal and state antitrust claims.  See Original Complaint, ¶¶ 73, 80.

and municipalities).[6]  According to defendants, this is because plaintiff State has altered its claim with new allegations that completely change plaintiff's theory of recovery.  In essence, plaintiff State now alleges for the first time that it may bring suit for purchases by the non-State Entities by virtue of the *OEMs*' direct assignments to the State under the Centralized Contract, not by virtue of the non-State Entities' direct assignments to the State.  This belated change of course in argument is prejudicial, claim defendants, and plaintiff State should not be permitted to take another bite at the apple by arguing that the Centralized Contract supports plaintiff State's Sherman Act claim.

Plaintiff State defends itself by stating that its allegations in the amended complaint are only meant to clarify that the State is seeking to bring direct purchaser claims that were assigned to it by the *OEMs themselves*, not by the non-State Public Entities.  Plaintiff admittedly recognizes "with hindsight," however, that it "could have been more helpful to the Court in explaining that the Assignment Clause operated to transfer the OEM's antitrust claims – not claims of the non-State Public Entities."  See Opp. Br. At 5:22-24.  At any rate, plaintiff continues, the direct assignments are purely a matter of contract under the Centralized Contract, and do not implicate any requirement that plaintiff meet any requirements of the Donnelly Act or otherwise in asserting a representative claim on behalf of government entities.

Defendants have a legitimate gripe.  Plaintiff State has drastically altered the scope of its argument.  In essence, plaintiff now argues that it does not assert a representative claim at all; rather, it simply asserts a straightforward proprietary claim against defendants, based on the OEMs' contractual assignment of their direct purchaser claims directly to the State.  To the extent that either State Entities or non-State Public Entities are at issue, plaintiff State asserts that they are actually irrelevant to plaintiff's ability to allege direct claims against defendants.

---

[6] Defendants note in footnote 1 to their reply brief that they are not choosing to challenge at this time, those Sherman Act claims premised on purchases by the State Entities.

9

This was not the argument that plaintiff State advanced on this issue the first time around. Indeed, a review of the papers filed by plaintiff State in opposition to defendants' first motion to dismiss confirms this conclusion. Moreover, were plaintiff State truly seeking to "clarify" here the same arguments made previously, plaintiff was surely made aware, upon receipt and review of the August 31 Order, that the court's understanding of plaintiff State's argument was entirely different than plaintiff's. Yet plaintiff never sought reconsideration of the court's order, and never sought leave to amend. In short, and based on the facts presented, the court is of the opinion that plaintiff State has, in fact, materially changed the premise of its arguments in support of its Sherman Act claim.

Notwithstanding this fact, the court will allow plaintiff State's arguments to stand, albeit grudgingly. For had plaintiff State made the same arguments the first time around, plaintiff State would have stated a viable claim, as the right to contractually assign antitrust claims is generally well-established. Accordingly, and for the reasons stated at the hearing on defendants' motion, defendants' motion to dismiss plaintiff State's Sherman Act claim on grounds stated herein, is DENIED.

The court will, however, take steps to alleviate any prejudice to defendants that might result from the court's ruling, particularly in view of the fact that discovery is closed. Specifically, the court hereby orders that discovery be re-opened, to allow defendants to discover the necessary information regarding plaintiff State's assignment theory, including the exact identity of any and all relevant contracts pursuant to which plaintiff State asserts a contractually assigned claim, the identity of any State and Non-State Entities subject to those contracts, and the details of all relevant transactions executed pursuant to such contracts. The re-opening of discovery is unilateral, and defendants are permitted the reasonable time necessary in order to effectuate the discovery they seek.

   3. <u>Plaintiff's Claim for Damages under the Donnelly Act</u>

Finally, defendants have also challenged plaintiff State's claims under the Donnelly Act, as stated in the second and third claims for relief, to the extent these claims seek

damages on behalf of government entities. The second claim for relief asserts a claim brought by the State in its proprietary capacity, as "owner of the assigned claims." See Amended Complaint, ¶ 92. The third claim for relief asserts a claim brought by the State on its own behalf, and on behalf of the non-State Public Entities. See id. at ¶¶ 98-99.

Beginning with plaintiff's second claim for relief, this claim asserts only a direct proprietary claim by the State. See id. at ¶ 92. This is permissible under the Donnelly Act. Indeed, defendants' only objections to this claim are based on the same objections that defendants raise regarding plaintiff's new "assignment clause" theory in connection with plaintiff State's Sherman Act claim. For the reasons already discussed above, however, the court will allow plaintiff State's amended arguments to proceed. Accordingly, the court DENIES defendants' motion to dismiss the second claim for relief.

With respect to the third claim for relief, defendants argue that plaintiff has failed to cure certain deficiencies highlighted by the court in its August 31 Order. Namely, the court's instruction to plaintiff State that it revise its allegations to state that the non-State Public Entities specifically requested that the Attorney General bring suit on their behalf, and that the plaintiff allege "the specific nature of the purchases made by the government entities" with respect to "the specific entities on whose behalf plaintiff brings suit, and the direct or indirect nature of those entities' DRAM purchases." See August 31 Order at 10.

The court is of the opinion, however, that plaintiff State has sufficiently cured these deficiencies. Plaintiff has attached Schedule A to the Amended Complaint, setting forth the non-State Public Entities on whose behalf the Attorney General brings suit (with address and zip code). In addition, plaintiff State has segregated its Donnelly Act claim into two claims for relief, in order to make clear that one is brought on behalf of the State as direct purchaser, and the other is brought in an indirect purchaser capacity. See Amended Complaint, ¶¶ 87-100. While true enough that plaintiff has not done a masterful job of alleging the specific types of products for which recovery is being sought, the court finds that plaintiff State's amendments comply with court's minimum instructions. See August 31

11

Order at 10. Accordingly, the court furthermore DENIES defendants' motion to dismiss plaintiff State's third claim for relief.

C. Conclusion

For the foregoing reasons, defendants' motion to dismiss is hereby DENIED.

**IT IS SO ORDERED.**

Dated: April 15, 2008

_____
PHYLLIS J. HAMILTON
United States District Judge