KENNETH R. O'ROURKE (S.B. #120144)
korourke@omm.com
STEVEN H. BERGMAN (S.B. #180542)
sbergman@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA  90071-2899
Telephone:   (213) 430-6000
Facsimile:    (213) 430-6407

MICHAEL F. TUBACH (S.B. #145955)
mtubach@omm.com
KATHERINE M. ROBISON (S.B. #221556)
krobison@omm.com
O'MELVENY & MYERS LLP
Embarcadero Center West
275 Battery Street
San Francisco, CA  94111-3305
Telephone:   (415) 984-8700
Facsimile:    (415) 984-8701

Attorneys for Defendants Hynix Semiconductor
Inc. and Hynix Semiconductor America Inc.

[Additional opposing parties and their counsel
are listed on the signature page]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re DYNAMIC RANDOM ACCESS MEMORY (DRAM) ANTITRUST LITIGATION | MDL No. 1486 Case No. M-02-01486 PJH (JCS) |
| ------------------------------------------------- | Case Nos: C-06-06436 PJH (JCS) (N.D. Cal.) 06-CV-5309 (S.D.N.Y.) |
| STATE OF NEW YORK, | |
|     Plaintiff, | Assigned to the Hon. Phyllis J. Hamilton |
|     v. | **DEFENDANTS' OPPOSITION TO NEW YORK'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS, OR IN THE ALTERNATIVE, FOR DISCOVERY** |
| MICRON TECHNOLOGY, INC., *et al.* | |
|     Defendants. | |
| | Date:  November 19, 2008 Time: 9:00 a.m. Place: Courtroom 3, 17th Floor |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................ 1

II.    FACTUAL BACKGROUND PERTINENT TO THIS MOTION .......................... 2

    A.     The Pleadings ........................................................................................ 3

    B.     Discovery ............................................................................................... 3

        1.     Discovery Cut-off .................................................................... 4

        2.     New York's Attempt to Obtain Discovery After the Discovery Cut-off ................................................. 5

III.   THIS COURT SHOULD DENY NEW YORK'S LATEST ATTEMPT TO REOPEN DISCOVERY ....................................................................................... 5

    A.     New York Has Failed to Diligently Pursue Discovery ............................ 6

        1.     New York Could Have Sought Discovery of Most of the Challenged Defenses Before July 16, 2007 ........................ 6

        2.     New York Was on Notice that Defendants Might Plead Defenses Unique to New York's Action ............................... 8

    B.     New York Failed to Preserve Its Rights .................................................. 10

IV.    DEFENDANTS HAVE PLED THEIR DEFENSES IN CONFORMITY WITH THE FEDERAL RULES ........................................................................... 11

    A.     Rule 8 Only Requires that Defenses Be Pled to Provide Plaintiff with Fair Notice of the Defenses ................................................................. 11

    B.     The Fair Notice Standard Still Applies Post-*Twombly* ............................... 12

    C.     The Defenses as Pled, Combined with the Extensive Discovery Record, Provide New York Fair Notice of the Defenses ........................... 13

        1.     No pass through .................................................................... 13

        2.     Overcharges Were Passed on to Other Parties ................................ 14

        3.     Actions of Third Parties Beyond a Defendant's Control ................. 14

        4.     Offset .................................................................................... 14

        5.     Foreign Conduct .................................................................. 15

        6.     Unclean Hands .................................................................... 15

        7.     Waiver/Estoppel .................................................................. 15

        8.     Voluntary Payments ............................................................ 15

        9.     Challenging Assignments .................................................... 16

        10.    Prior Settlements ................................................................. 16

        11.    Failure to Join Indispensable Parties .................................. 16

        12.    Failure to Mitigate Injuries ................................................. 17

        13.    Price Controlled by Plaintiff and/or Other Purchasers ................ 17

        14.    Comparative Fault of Plaintiff or Third Parties and Acquiescence ...................................................................... 18

**TABLE OF CONTENTS**
**(continued)**

| | | Page |
|---|---|---|
| 15. | Conflict of Interest | 18 |
| 16. | Increased Output and Lower Prices | 18 |
| 17. | Incorporation of Co-Defendant Defenses | 18 |
| V. | CONCLUSION | 19 |

# TABLE OF AUTHORITIES

**Page**

## CASES

*Am. Greyhound Racing, Inc. v. Hull*,
305 F.3d 1015 (9th Cir. 2002) ................................................................ 17

*Bell Atlantic Corp. v. Twombly*,
__ U.S. __, 127 S. Ct. 1955 (2007) ............................................ 11, 12, 13

*Board of Trs. of San Diego Elec. Pension Trust v. Bigley Elec.*,
*Inc.*, No. 07-CV-634-IEG, 2007 WL 2070355 (S.D. Cal. July 12, 2007) ............ 12, 13

*Claytor v. Computer Assoc. Int'l, Inc.*,
211 F.R.D. 665 (D. Kan. 2003) ............................................................ 5, 9

*Dupler v. Costco Wholesale Corp.*,
249 F.R.D. 29 (E.D.N.Y. 2008) ............................................................. 15

*Hernandez v. Balakian*,
No. 06-CV-1383, 2007 WL 1649911 (E.D. Cal. June 1, 2007) ................................ 13

*In re DRAM Antitrust Litigation*,
 MDL No. 1486, 2006 WL 515629 (N.D. Cal. Mar. 1, 2006),
*aff'd*, 538 F.3d 1107 (9th Cir. 2008) ...................................................... 15

*Marcin Eng'g, LLC v. Founders at Grizzly Ranch, LLC*,
219 F.R.D. 516 (D. Colo. 2003) ............................................................... 5

*Mattox v. Watson*,
No. 07-CV-5006-RGK, 2007 WL 4200213 (C.D. Cal. Nov. 15, 2007) .................... 12

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Arcturus Builders Inc.*,
159 A.D.2d 283 (N.Y. App. Div. 1990) ....................................................... 14

*Microsoft Corp. v. Worth*,
No. 3:06-CV-2213-G, 2007 WL 1975574 (N.D. Tex. July 5, 2007) ......................... 13

*National Enters. v. Caccia*,
662 N.Y.S.2d 164 (N.Y. App. Term 1997) ...................................................... 14

*Simon v. Shearson Lehman Bros., Inc.*,
895 F.2d 1304 (11th Cir. 1990) ............................................................... 16

*State Dept. of Health Services v. Superior Court*,
31 Cal. 4th 1026 (2003) .......................................................................... 17

*Stoffels ex rel. SBC Tel. Concession Plan v. SBC Commc'n, Inc.*,
No. 05-CV-0233-WWJ, 2008 WL 4391396 (W.D. Tex. 2008) ................................. 13

*U.S. v. Thornburg*,
82 F.3d 886 (9th Cir. 1996) .................................................................... 14

*Voeks v. Wal-Mart Stores, Inc.*,
No. 07-C-0030, 2008 WL 89434 (E.D. Wis. Jan. 7, 2008) ................................ 12

*Woodfield v. Bowman*,
193 F.3d 354 (5th Cir. 1999) ................................................................. 12

*Wyshak v. City Nat'l Bank*,
607 F.2d 824 (9th Cir. 1979) ................................................................. 12

**TABLE OF AUTHORITIES**
**(continued)**

Page

**STATUTES**

N.Y. Bus. Law § 340(6) ................................................................................................ 13

**RULES**

Fed. R. Civ. P. 12(c) ...................................................................................................... 2
Fed. R. Civ. P. 16(b)(4) ................................................................................................. 5
Fed. R. Civ. P. 19(a)(1)(A) .......................................................................................... 17
Fed. R. Civ. P. 19(a)(1)(B) .......................................................................................... 17
Fed. R. Civ. P. 8 ........................................................................................................... 11
Fed. R. Civ. P. 8(b) ........................................................................................................ 2
Civil L.R. 7-2(b)(3) ...................................................................................................... 11
Civil L.R. 7-4(a) ........................................................................................................... 11

**OTHER AUTHORITIES**

Thomas H. Palmer, TEACHER'S MANUAL (1840) ............................................................ 1

## OPPOSITION MEMORANDUM OF POINTS & AUTHORITIES

Defendants Hynix Semiconductor Inc., Hynix Semiconductor America Inc. (collectively "Hynix"), Micron Technology, Inc., Micron Semiconductor Products, Inc. (collectively "Micron"), Infineon Technologies AG, Infineon Technologies North America Corp. (collectively "Infineon"), Elpida Memory, Inc., Elpida Memory (USA), Inc. (collectively "Elpida"), Mosel Vitelic Corporation, Mosel Vitelic Incorporated (collectively "Mosel"), Nanya Technology Corporation, Nanya Technology Corporation USA (collectively "Nanya"), and NEC Electronics America, Inc. ("NEC") ("Defendants") respectfully submit this memorandum of points and authorities and the accompanying Declaration of Steven H. Bergman in Opposition to New York's Motion for Partial Judgment on the Pleadings, or in the Alternative, for Discovery ("Bergman Decl.").

## I.  INTRODUCTION

"*If at first you don't succeed, try, try again.*"

Thomas H. Palmer, TEACHER'S MANUAL (1840).

Having failed three times already, the State of New York is now back for the fourth time asking the Court to extend discovery beyond the July 16, 2007 discovery cut-off. For this try, New York has cloaked its attempt to reopen discovery as a Motion for Partial Judgment on the Pleadings that purports to attack various defenses alleged by Defendants. New York claims that discovery is necessary so it is not "blind-side[d]" by "newly asserted" defenses. (*See* NY JOP Motion (Docket No. 173-2) at 1, 2.) But, a party cannot be blind-sided by that which it chooses not to see.

New York's motion is premised on the fallacy that the first time it saw all of Defendants' defenses, including the 88 apparently being challenged here, was when Defendants answered the Amended Complaint on May 13, 2008. Yet, Defendants asserted almost all of these same defenses years earlier in the MDL litigation, long before New York's discovery cut-off on similar claims. That a few "new" defenses were raised concerning New York's assignment claim was no surprise when Defendants repeatedly

1  questioned the assignment claim in their own discovery. This Court should not be misled
2  by New York's latest device and should, again, deny New York's motion outright.

3         Even if New York's motion was not simply another attempt to reopen
4  discovery, the motion fails as a Motion for Partial Judgment on the Pleadings. New York
5  does not claim, as is required to prevail on a Rule[1] 12(c) motion, that assuming the truth
6  of the allegations, the purportedly challenged defenses fail as a matter of law. Nor can it,
7  as each of the challenged defenses is valid as a matter of law. Instead, New York claims
8  that each of the challenged defenses fails to plead sufficient facts to put New York on
9  notice of the nature of the defense in accordance with Rule 8(b). Even here, however,
10 New York's motion fails, as the defenses are pled in conformity with established pleading
11 practices and, given the extensive and voluminous discovery record developed over the
12 course of the six (6) years that this MDL has been pending, are sufficient to put New York
13 on notice of the nature of the alleged defenses.

14 **II.    FACTUAL BACKGROUND PERTINENT TO THIS MOTION**

15        The State of New York's action, which was filed on July 13, 2006, is one of
16 dozens of cases that have been coordinated for pre-trial purposes as part of *In re DRAM*
17 *Antitrust Litigation*, MDL No. 1486. New York itself began investigating the DRAM
18 market in anticipation of this lawsuit long before filing its original Complaint, issuing
19 Subpoenas Duces Tecum to the Defendants in November 2005. (*See, e.g.*, Bergman Decl.
20 ¶ 2 & Ex. A.) After New York filed suit in the Southern District of New York on July 13,
21 2006, the case was referred to the Judicial Panel on Multidistrict Litigation and transferred
22 to this Court to be coordinated with other cases pending in MDL No. 1486. (*See* Docket
23 No. 1.)[2]

24     **A.    The Pleadings**

25        New York's original Complaint alleged claims under the Sherman Act (15
26 U.S.C. § 1 *et seq.*), the Donnelly Act (N.Y. Gen. Bus. Law § 340 *et seq.*), New York

---

[1]    As used herein, "Rule" refers to a Federal Rule of Civil Procedure.
[2]    Unless otherwise indicated, Docket references are to the Docket for this action, Case No. C-06-06436 PJH.

1  Executive Law § 63(1), and California's Cartwright Act (Cal. Bus. & Prof. Code § 16720

2  *et seq.*).  New York sought recovery both as a direct purchaser (directly and by

3  assignment) and as an indirect purchaser.  Defendants responded with a Motion to

4  Dismiss that, among other things, challenged New York's claims under the Sherman Act

5  to the extent New York was not a direct purchaser.  (*See* Docket No. 3.)  In its opposition,

6  New York pointed to the assignment allegations made in the Complaint and claimed

7  standing as a direct purchaser by assignment.  (*See* Docket No. 13.)  Defendants' Motion

8  to Dismiss was granted in part and denied in part in an August 31, 2007 Order and New

9  York was granted leave to file an Amended Complaint.  (*See* Docket No. 72.)

10       New York filed its Amended Complaint on October 1, 2007.  (*See* Docket

11  No. 84.)  Defendants again moved to dismiss, and, among other things, challenged the

12  validity of New York's assignment claims.  (*See* Docket No. 102.)  At the hearing on the

13  Defendants' Motion to Dismiss, the Court expressed frustration with New York's

14  amended theory of relief under the assignment claims and re-opened discovery for

15  Defendants limited to this new theory.  (*See, e.g.*, Feb. 27, 2008 Civil Minutes (Bergman

16  Decl., Ex. L; Docket No. 125).)  The Court subsequently denied Defendants' Motion to

17  Dismiss on April 15, 2008.  (*See* Docket No. 138.)  Each defendant filed an answer to the

18  Amended Complaint on May 13, 2008.  (*See* Docket Nos. 144-151.)

19       **B.   Discovery**

20       Although discovery did not formally begin in this action until New York

21  filed its Complaint in July 2006, in reality, it began years earlier.  First, New York

22  received all of the discovery taken from 2002 to the present in the MDL.  (*See* Bergman

23  Decl. ¶ 4.)  Second, New York issued a Subpoena Duces Tecum to each defendant back in

24  November 2005.  (*See, e.g.*, Bergman Decl. ¶ 2 & Ex. A.)

25       After filing its Complaint in July 2006, New York waited six months to

26  propound discovery.  Even though Defendants propounded discovery regarding the

27  assignment claims, New York never did.  Defendants propounded document requests

28  addressing, among other things, New York's assignment claims on March 7, 2007.  (*See*

Bergman Decl., Ex. B.)  Similarly, Micron and Hynix propounded interrogatories regarding New York's assignment claim on March 7, 2007 and April 23, 2007, respectively.  (*See* Bergman Decl., Exs. C & E.)  Finally, on or about June 29, 2007, Hynix served a 30(b)(6) deposition notice on New York seeking, among other things, a person most knowledgeable regarding New York's assignment claim.  (*See* Bergman Decl., Ex. F.)

### 1.    Discovery Cut-off

The Court initially set a discovery cut-off of June 1, 2007.  At the request of New York and the plaintiffs in *State of California v. Infineon Technologies, AG, et al.*, Case No. 06-4333 PJH (N.D. Cal.), this Court extended the discovery cut-off 45 days to July 16, 2007.  (*See* Mar. 22, 2007 Civil Minutes (Docket No. 27).)  The July 16, 2007 discovery cut-off was confirmed in the Court's April 17, 2007 Case Management Order. (*See* Bergman Decl., Ex. D; Docket No. 32.)

On July 16, 2007, the State of New York made a motion to further extend the discovery cut-off by three months, and Defendants moved to enforce the discovery cut-off.  (*See* Docket Nos. 54 & 58.)  At the July 26, 2007 hearing, the Court stated repeatedly that it would not extend the discovery cut-off.  (*See* July 26, 2007 Hearing Tr. 36:3-4; 37:5-10; 46:8; & 46:15 (Bergman Dec., Ex. J).)  Following the July 26, 2007 hearing, this Court entered an Order denying New York's motion and refusing to extend the July 16, 2007 discovery cut-off.  (*See* July 26, 2007 Civil Minutes (Bergman Decl., Ex. H; Docket No. 64); July 26, 2007 Order ¶ 2 (Bergman Decl., Ex. I; Docket No. 65).) The Court also set an August 24, 2007 deadline for motions to compel in this action.  (*See* July 26, 2007 Order ¶ 3 (Bergman Decl., Ex. I; Docket No. 65).)

### 2.    New York's Attempt to Obtain Discovery After the Discovery Cut-off

Undeterred by this Court's July 26, 2007 Order, prior to filing this motion New York has not once, but twice, sought additional discovery from Defendants beyond August 24, 2007.  New York first moved to compel production of documents and

deposition testimony from Hynix in January of this year. Magistrate Judge Spero denied that motion, finding that New York had not pursued the discovery it sought with sufficient diligence. (*See* Feb. 11, 2008 Order (Bergman Decl., Ex. K; Docket No. 119).)

One month later, Magistrate Judge Spero denied New York's motion to compel against the Infineon defendants, finding the motion was untimely. (*See* Mar. 11, 2008 Order (Bergman Decl., Ex. M; Docket No. 130).)

## III.     THIS COURT SHOULD DENY NEW YORK'S LATEST ATTEMPT TO REOPEN DISCOVERY

This motion is New York's **fourth** attempt to reopen discovery in the **fourteen** months that have passed since the July 16, 2007 discovery cut-off. However, a motion to re-open discovery should be brought pursuant to Rule 16(b)(4). (*See, e.g.*, July 26, 2007 Hearing Tr. 5:11-16; 36:18-37:10 (Bergman Dec., Ex. J).) Yet, New York makes no reference to Rule 16 in its papers, likely because it recognizes that it cannot meet the "good cause" standard for reopening discovery under Rule 16(b)(4).

Good cause "requires a showing, among other things, that the party seeking the extension was diligent in its discovery efforts yet could not complete discovery by the court-ordered deadline." *Marcin Eng'g, LLC v. Founders at Grizzly Ranch, LLC*, 219 F.R.D. 516, 521 (D. Colo. 2003); *see also Claytor v. Computer Assoc. Int'l, Inc.*, 211 F.R.D. 665, 666 (D. Kan. 2003) (finding no good cause where plaintiff failed to explain why, in exercising due diligence, the proposed discovery could not have been completed by the discovery deadline). Because New York has not diligently pursued discovery it lacks "good cause" to reopen discovery. Therefore, the Court should deny this motion.

### A.     New York Has Failed to Diligently Pursue Discovery

Given the facts available in the record before the discovery cut-off, New York could have anticipated and timely propounded the discovery it now seeks. Inaction is not diligence. In fact, this Court has previously observed that New York did not diligently pursue discovery. (*See* July 26, 2007 Hearing Tr. 42:11 (referring to New York's first attempt to re-open discovery and stating "no diligence has been shown")

1    (Bergman Decl., Ex. J).)  Similarly, Judge Spero has already denied two motions to

2    compel discovery by New York in part because New York could not demonstrate that it

3    had diligently sought the discovery at issue.  (*See* Feb. 11, 2008 Order & Mar. 11, 2008

4    Order (Bergman Decl., Exs. K & M).)  The same is true with this motion.  As described in

5    detail below, given the facts in the record of this case and the MDL action, New York did

6    not diligently pursue discovery on issues it had notice of in advance of the July 16, 2007

7    discovery cut-off.  This lack of diligence is fatal to New York's motion.

8        **1.    New York Could Have Sought Discovery of Most of the
            Challenged Defenses Before July 16, 2007**

9            As noted above, this action has been coordinated with dozens of other cases

10   as part of MDL No. 1486.  The majority of those cases, like the New York case, include

11   indirect purchaser claims.  And all of the cases in this MDL base their claims on the same

12   alleged DRAM price-fixing claims.  Thus, there are similar allegations across all of the

13   cases in MDL No. 1486, including New York's action.  Indeed, in addition to similar

14   allegations, the parties are also the same, and some cases also alleged claims under New

15   York law.

16           These similarities are relevant here.  While New York calls them "newly

17   asserted affirmative defenses," a majority of these defenses were asserted in October 2005

18   in the indirect purchaser action in the DRAM MDL – *Petro Computer Systems, Inc. v.*

19   *Micron, et al*., Case No. M:02-cv-01486 (N.D. Cal.).  The overlap between the defenses

20   Defendants pled here and in *Petro Computer* is as follows:[3]

21

22

23

24

25

26

27

---
[3]        Exhibit N to the Bergman Declaration provides a side-by-side comparison of the
language of the challenged defenses and the *Petro Computer* defenses.

28

| Defendant[4] | Number of Defenses Challenged in this Motion | Number of those Challenged Defenses also contained in *Petro Computer* Answer |
|---|---|---|
| Micron | 4 | 3 |
| Infineon | 16 | 13 |
| Hynix | 12 | 10 |
| Mosel Vitelic | 13 | 13 |
| Elpida | 14 | 13 |
| Nanya Tech | 4 | 3 |
| Nanya Tech USA | 4 | 3 |
| NEC | 21 | 20 |
| **Totals:** | 88 | 78 |

As this chart shows, 78 of the 88 defenses challenged here were previously asserted in *Petro Computer*.  Each defendant to this action filed answers in *Petro Computer* in October 2005.  Not only is that before the discovery cut-off in this action, but it is before New York filed its Complaint.  New York not only had access to the defenses raised in *Petro Computer* long before it filed its Complaint but, given the similarity between the two cases, should have anticipated that these same defenses would be raised by Defendants here.  Thus, with reasonable diligence New York could have propounded discovery on a majority of the defenses that it calls "newly asserted" long before the July 16, 2007 discovery cut-off.  Its failure to do so precludes New York from obtaining relief in the form of further discovery.[5]

---

[4]     This chart divides the defendants as New York does in Richard L. Schwartz's declaration.  (Docket No. 173-2, at 2.)

[5]     If New York had propounded discovery towards these "anticipated" defenses, one or more Defendants could have objected under the work-product doctrine.  However, if that had occurred, New York would have preserved its right to the discovery when said Defendant or Defendants did answer.

**2.     New York Was on Notice that Defendants Might Plead Defenses Unique to New York's Action**

There are certain defenses that are unique to New York's case, and thus would not have been pled in the *Petro Computer* case.  These defenses relate to New York's assignment claim and defenses alleging prior settlement of assigned claims.[6]  But even with these defenses, New York's lack of diligence precludes re-opening discovery.

**a.     New York Was on Notice that Defendants Would Challenge New York's Assignment Claim**

New York cannot legitimately claim that it did not have notice that Defendants would challenge New York's assignment claim in advance of the discovery cut-off.  As discussed above, New York put assignment issues in play in opposition to Defendants' first Motion to Dismiss which was filed long before the July 16, 2007 discovery cut-off.

Similarly, the discovery Defendants propounded before the July 16, 2007 discovery cut-off was sufficient to put New York on notice that Defendants intended to challenge the validity of New York's assignment claims.  First, on March 7, 2007, Micron, on behalf of all Defendants, propounded requests for production which sought documents in New York's possession, custody or control from "ASSIGNING ENTITIES" and about New York's assignment claims.  (*See* Bergman Decl., Ex. B.)  On the same day, Micron propounded interrogatories on New York that also sought information related to "ASSIGNING ENTITIES."  (*See* Bergman Decl., Ex. C.)

Second, Hynix's Interrogatory No. 9, which was propounded on April 23, 2007, specifically sought information regarding New York's assignment claim.  (*See* Bergman Decl., Ex. E.)

---

[6]     Of the 10 defenses not also asserted by the Defendants in *Petro Computer*, only two do not concern the assignment and prior settlement.  Infineon added a pass-through and FTAIA defense in its New York answer.  However, New York cannot claim that it did not have notice of these two defenses because both of them were asserted by at least one of the Defendants in *Petro Computer*.

1    Finally, on June 29, 2007, Hynix served a Rule 30(b)(6) deposition notice

2    on New York requesting testimony in 15 categories – 10 of which concerned New York's

3    assignment claim.  (*See* Bergman Decl., Ex. F.)

4          Given this discovery, New York was on notice that Defendants might

5    challenge the validity of New York's assignment claim.  But even with the receipt of this

6    assignment-related discovery, New York did not seek discovery regarding Defendants

7    potential defenses to the assignment allegations.  If New York were being diligent in its

8    discovery efforts, it would have propounded discovery on the assignment issue at least at

9    one of these points, all of which occurred before the discovery cut-off.  The fact that New

10   York did not, shows that there is no good cause for its current request to reopen discovery.

11   *Claytor*, 211 F.R.D. at 666 (finding no good cause where plaintiff failed to explain why,

12   in exercising due diligence, the proposed discovery could not have been completed by the

13   discovery deadline).

14          **b.      The MDL Record Provided Enough Notice that**
              **Defendants Might Allege that Prior Settlements Preclude**
15          **New York's Claims**

16          New York also challenges the defense that its assignment claim is barred, in

17   whole or in part, because of prior settlements between Defendants and one or more

18   assignees.  Like the other defenses challenging the assignment clause, this was not pled in

19   *Petro Computer*.  But, if New York had acted diligently, it could have anticipated such a

20   defense.

21          Before New York filed its Complaint in July 2006, several of the defendants

22   herein had settled with the Direct Purchaser plaintiffs.  For example, Infineon settled in

23   September 2005, Samsung in February 2006, and Hynix in April 2006.  Each of the

24   settlement agreements were made public when the Direct Purchaser plaintiffs sought

25   approval of the settlements.  (*See* MDL Docket No. 773 (Infineon (Ex. A) & Samsung

26   (Ex. B) Settlements), MDL Docket No. 829-2 (Hynix Settlement).)

27          Paragraph 16 of the Hynix settlement agreement stated that Hynix had

28   previously settled claims with direct purchasers representing more than $1.75 billion of

Hynix's sales during the April 1999 to June 2002 class period.  (MDL Docket No. 829-2, ¶ 16 (Hynix Settlement).)  During discovery, New York received Hynix's sales data, and even a cursory review would show that Hynix had settled more than 2/3 of its sales before settling with the Direct Purchaser plaintiffs.  Although the names of these earlier, settling direct purchasers remained confidential, in October 2006 most of these entities, including several major OEMs, opted-out of the class settlement.  With these facts, New York had, at minimum, constructive notice of the potential that several of its alleged assignees had already settled with Defendants.  New York could have at least sought discovery regarding these settlements and how they may affect its claims.  But instead New York chose to forgo its opportunity for such discovery.  This absence of diligence means New York lacks "good cause" to reopen discovery as to prior settlements.

## B.   New York Failed to Preserve Its Rights

As discussed above, on July 16, 2007, New York moved to extend the discovery cut-off.  A hearing on this motion, and Defendants' motion to enforce the July 16, 2007 discovery cut-off, was held on July 26, 2007.  New York was present at the hearing and argued at the hearing.  (*See* July 26, 2007 Civil Minutes (Bergman Decl., Ex. H); July 26, 2007 Hearing Tr. (Bergman Decl., Ex. J).)  And, at that time, Defendants' initial Motion to Dismiss was pending and no Defendant had answered New York's Complaint.  Yet, New York never mentioned that it may need discovery regarding any "newly asserted" defenses contained in the answers Defendants would later file.

Tellingly, New York did argue that it merely sought discovery "*specific to its own allegations.*"  (*See* July 16, 2007 Schwartz Decl. ¶ 2 (emphasis added) (Bergman Decl., Ex. G).)  If New York recognized that discovery "specific to its own allegations" was appropriate, surely it should have recognized that Defendants would assert defenses specific to such allegations.  Given this record, New York should have at least attempted to preserve its right to seek discovery regarding still-to-be-pled defenses.  It did not.  This is further grounds to deny New York's (fourth) attempt to reopen discovery.

## IV. DEFENDANTS HAVE PLED THEIR DEFENSES IN CONFORMITY WITH THE FEDERAL RULES

New York's motion is not a traditional motion for judgment on the pleadings because New York does not claim that, if the facts alleged or implied are true, the defenses fail as a matter of law.  Instead, New York only argues that Defendants have not pled sufficient facts in support of the 88 defenses it apparently challenges.[7]  Therefore, if the Court grants the motion as to any defendant's defense, the proper remedy would not be to dismiss the defense, but to allow the defendant to amend its answer.[8]  Defendants request that if the Court grants any part of this motion, it order the proper remedy of amendment.  In any event, given the pleadings and discovery in both this case and the MDL action (which New York is a part of), Defendants' defenses – as written – provide New York with fair notice, which is all that is required under Rule 8 and *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955 (2007).

### A. Rule 8 Only Requires that Defenses Be Pled to Provide Plaintiff with Fair Notice of the Defenses

While New York tries to hold Defendants to a higher pleading standard, Rule 8 only requires that Defendants state their defenses in "short and plain terms."  As the language of Rule 8 shows, Defendants are not required to state every fact supporting each of their defenses.  In fact, courts have consistently applied a "fair notice" pleading requirement to defenses.  *See Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999); *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 827 (9th Cir. 1979).  Under this standard, a

---

[7]    New York's memorandum of points and authorities leaves much to be desired, as New York does not comply with Civil L.R. 7-4(a).  Although allegedly moving against 88 defenses, New York only discusses seventeen (17) defenses by way of example in its papers.  New York does not indicate if those 17 examples are representative of all 88 defenses allegedly at issue and, if so, which arguments apply to which defenses.

[8]    As a motion for judgment on the pleadings, New York's motion violates Civil L.R. 7-2(b)(3), by failing to provide a "concise statement of what relief or Court action" it seeks.  While New York states that it wants judgment on the pleadings on "certain of Defendants' affirmative defenses," New York does not actually identify a single defense in the Notice of Motion.  Instead, it refers the Court to the Declaration of Richard Schwartz that was filed concurrently with the motion.  In that declaration, buried on page 73 (out of nearly 300 pages), New York identifies by number the 88 different defenses that it claims are at issue in the motion.  Requiring the Court and Defendants to scour New York's papers to know what is at issue is not a "concise statement" of the desired relief or Court action.

defendant "must plead an defense with *enough* specificity or factual particularity to give the plaintiff 'fair notice' of the defense that is being advanced." *Woodfield*, 193 F.3d at 362 (emphasis added). The purpose of the rule is to avoid unfair surprise to the plaintiff; therefore, the level of specificity that is "enough" will depend on the defense asserted and the circumstances of the case. *Id*.; *Voeks v. Wal-Mart Stores, Inc.*, No. 07-C-0030, 2008 WL 89434, *6 (E.D. Wis. Jan. 7, 2008).

**B.     The Fair Notice Standard Still Applies Post-*Twombly***

The *Twombly* decision has not changed the "fair notice" pleading standard for defenses. In the recent case of *Voeks v. Wal-Mart Stores, Inc.*, the parties disagreed regarding whether the "*Twombly* standard" or the "'fair notice' standard" (from *Woodfield*) applied to defenses. 2008 WL 89434 at *6. The court found that, despite the parties' arguments to the contrary, the pleading requirements under these two standards are not materially different. *Id*. Rather, under *both* standards "*specific facts are not necessary*; the statement need only give the defendant *fair notice* of what the . . . claim is and the grounds upon which it rests." *Id*. (emphasis added). In fact, even after *Twombly*, many courts continue to apply the "fair notice" standard to defenses. *See, e.g.*, *Board of Trs. of San Diego Elec. Pension Trust v. Bigley Elec., Inc.*, No. 07-CV-634-IEG, 2007 WL 2070355, *2 (S.D. Cal. July 12, 2007) (applying "fair notice" standard to motion to strike defenses); *Mattox v. Watson*, No. 07-CV-5006-RGK, 2007 WL 4200213, *1 (C.D. Cal. Nov. 15, 2007) (same).

Of course, "[t]he degree of factual specificity required, if any, to provide the plaintiff with fair notice of the defense *depends on the specific case and the specific defense being pled*." *Voeks*, 2008 WL 89434 at *6 (emphasis added). Some defenses are so self-explanatory, that just pleading the name of the defense is sufficient to give the plaintiff "fair notice." *Woodfield*, 193 F.3d at 362; *see also Voeks*, 2008 WL 89434 at *6 (holding the defenses of statute of limitations, mistake, no damages, speculative damages, no sufficient intent, and standing were "largely self-explanatory" and thus "sufficiently pled to give the plaintiff fair notice"). This remains true after *Twombly*. *See Microsoft*

*Corp. v. Worth*, No. 3:06-CV-2213-G, 2007 WL 1975574, *1 (N.D. Tex. July 5, 2007) ("In some instances the mere naming of the defense will suffice."). For example, an defense that merely states "plaintiff failed to mitigate damages" is sufficient. *See Board of Trs. of San Diego Elec. Pension Trust*, 2007 WL 2070355 at *3; *Hernandez v. Balakian*, No. 06-CV-1383, 2007 WL 1649911, *6-8 (E.D. Cal. June 1, 2007). The statute of limitations is a similarly obvious and self-explanatory defense. *Stoffels ex rel. SBC Tel. Concession Plan v. SBC Commc'n, Inc.*, No. 05-CV-0233-WWJ, 2008 WL 4391396, *2 (W.D. Tex. 2008) ("Although Defendant's pleading is not a model of clarity, the [limitations] defense is largely self-explanatory and is sufficient to give plaintiffs fair notice of the defense being asserted."). As discussed below, given the record in this case and the MDL action together with the language of Defendants' defenses, New York has fair notice of the defenses at issue.

### C.   The Defenses as Pled, Combined with the Extensive Discovery Record, Provide New York Fair Notice of the Defenses

#### 1.   No Pass Through[9]

The Donnelly Act only allows recovery on behalf of persons who have sustained damages, and an indirect purchaser only sustains damages if the product overcharge, if any, was passed on to him. N.Y. Bus. Law § 340(6).[10] Here discovery has revealed that at least some direct purchasers (including Compaq and Viking) did not pass-on all overcharges. (*See, e.g.*, February 20, 2008 Expert Report of Margaret Guerin-Culvert in Opposition to Class Certification filed in *State of California v. Infineon Technologies, AG, et al.*, Case No. C-06-04333 ¶¶ 48, 51, 63, 71 (Cal. Docket No. 332-2).) As such, there is sufficient evidence in the record that, combined with the defense of no pass through, provides New York sufficient notice.

---

[9]   This defense is asserted by the following Defendants: Hynix (13th defense), Nanya (12th defense), Micron (12th defense), Infineon (33rd defense), Elpida (19th defense), Mosel (24th defense), and NEC (29th defense).

[10]   A plaintiff must show that it has suffered antitrust impact. For an indirect purchaser alleging price-fixing, that can only occur if the direct purchaser passed through all or part of the alleged overcharge.

1

###     2.     Overcharges Were Passed on to Other Parties[11]

2       As an alleged assignee, New York purportedly "stands in the shoes of the

3 assignor" and is subject to any and all defenses that Defendants could assert against the

4 assignors.  *See U.S. v. Thornburg*, 82 F.3d 886, 890 (9th Cir. 1996); *National Enters. v.*

5 *Caccia*, 662 N.Y.S.2d 164, 165 (N.Y. App. Term 1997).  Discovery in the MDL action

6 (which was provided to New York) shows that certain of the potential assignors either did,

7 or attempted to, pass-on any DRAM overcharge to their customers.  For any amount

8 passed-on, neither the assignors, nor New York as the assignee, can recover it.

9

###     3.     Actions of Third Parties Beyond a Defendant's Control[12]

10       A party cannot be held liable for the actions of third parties over whom it

11 had no control.  Each of these defenses alleges a lack of control over third parties.  New

12 York cannot claim it lacks sufficient notice that Defendants disclaim liability for the

13 actions of any such third parties.

14

###     4.     Offset[13]

15       New York settled with defendant Samsung who, as an alleged member of

16 the price-fixing conspiracy, is jointly liable with Defendants for New York's alleged

17 injuries.  *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Arcturus Builders Inc.*, 159

18 A.D.2d 283, 285 (N.Y. App. Div. 1990).  Other Defendants are entitled to an offset

19 against New York's recovery, if any, based on the prior settlement with Samsung.  Thus,

20 Defendants have adequately pled this defense.

21

###     5.     Foreign Conduct[14]

22       As this Court has previously ruled in this MDL proceeding, the FTAIA

23 prevents recovery for any extra-U.S. conduct that was neither directed to nor affected

24

25

26

27

28

---

[11]     This defense is asserted by the following Defendants: Infineon (44th defense), and NEC (27th defense).

[12]     This defense is asserted by the following Defendants: Hynix (23rd and 24th defenses), Infineon (11th defense), Elpida (12th and 24th defenses), Mosel (11th defense), and NEC (31st defense).

[13]     This defense is asserted by the following Defendants: Hynix (25th defense), Elpida (25th defense), and NEC (32nd defense).

[14]     This defense is asserted by the following Defendants: Hynix (26th defense), and Infineon (32nd and 43rd defense).

persons in the United States.  *See In re DRAM Antitrust Litig.*, MDL No. 1486, 2006 WL 515629 (N.D. Cal. Mar. 1, 2006), *aff'd*, 538 F.3d 1107 (9th Cir. 2008).  These defenses, which use this language, provide New York with notice that Defendants contest claims based on conduct that is outside the subject matter jurisdiction of this Court.

### 6.   Unclean Hands[15]

New York is seeking both injunctive relief and damages.  Unclean hands is a valid defense against a claim for injunctive relief, and this defense is sufficient to put New York on notice that these Defendants may raise New York's own actions as a defense. That is sufficient to survive New York's motion for judgment on the pleadings.

### 7.   Waiver/Estoppel[16]

New York is aware that it waited four (4) years after the Department of Justice served its subpoena to file its original Complaint.  Defendants are permitted to argue that said delay constitutes waiver, or that New York's actions estop it from seeking relief.[17]  That is sufficient to put New York on notice of the nature of this defense.

### 8.   Voluntary Payments[18]

New York does not argue, and cannot argue, that the voluntary payment doctrine is not a valid defense.  *See Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 38 (E.D.N.Y. 2008).  And New York's own Amended Complaint sets forth facts that, if proven, support this defense.  New York alleges that the DOJ issued its subpoena in June 2002.  (*See* Am. Compl. (Docket No. 84) ¶ 63.)  Yet, New York seeks damages for purchases through December 2002.  (*See id.* ¶ 79.)  Alleged overcharges, if any, paid on purchases made after New York was on notice of the possible price-fixing conspiracy are

---

[15]     This defense is asserted by the following Defendants: Hynix (32nd defense), Infineon (13th defense), Elpida (30th defense), and NEC (4th defense).
[16]     This defense is asserted by the following Defendants: Hynix (33rd defense), Infineon (10th defense), Elpida (30th and 39th defenses), Mosel (6th, 7th, and 25th defenses), and NEC (2nd defense).
[17]     These same facts support the laches defense asserted by Infineon (9th defense), Mosel (5th defense), and NEC (3rd defense).
[18]     This defense is asserted by the following Defendants: Hynix (49th defense), Infineon (29th and 39th defenses), Mosel (25th defense), and NEC (44th defense).

1   potentially unrecoverable as voluntary payments.  This is precisely what this defense

2   states, and thus it is adequately pled.

3                    **9.      Challenging Assignments**[19]

4              It is not clear why New York believes this defense is insufficient.  As the

5   party seeking to recover by assignment, New York has the burden of proving a valid

6   assignment.  S*ee Simon v. Shearson Lehman Bros., Inc*., 895 F.2d 1304, 1321 (11th Cir.

7   1990).  A defense to such a claim is that the assignment is invalid, which is what

8   Defendants allege in these defenses.  Additionally, given that Defendants moved to

9   dismiss New York's assignment claims and have sought discovery regarding those claims,

10  the record provides sufficient support for this defense.

11                   **10.     Prior Settlements**[20]

12             Given that New York had notice of the fact that several Defendants have

13  already settled with indirect purchasers, it cannot credibly claim that it does not

14  understand this defense.  Nor can New York claim that prior settlements are not a valid

15  defense to its claims.  Instead, New York wants to use its motion to obtain the discovery it

16  neglected to obtain in a timely manner.  This Court should not condone New York's

17  strategy.

18                   **11.     Failure to Join Indispensable Parties**[21]

19             As noted above, New York has the burden of proving valid assignments for

20  certain claims it alleges.  Defendants have taken extensive discovery regarding New

21  York's assignment claims, and asserted in prior motions that parties other than New York

22  are the appropriate parties to seek recovery.  Indeed, some of those parties have already

23  sought and/or received recovery.  Accordingly, to the extent that there has been antitrust

24  injury – which Defendants deny – New York has failed to join those more appropriate

25  _____

26  [19]   This defense is asserted by the following Defendants: Hynix (51st defense), and Elpida (42nd defense).

27  [20]   This defense is asserted by the following Defendants: Hynix (52nd defense), Nanya (15th defense), Micron (15th defense), Infineon (24th defense), and NEC (53rd defense).

28  [21]   This defense is asserted by the following Defendants: Infineon (7th defense), Elpida (9th defense), Mosel (4th defense), and NEC (21st defense).

1   parties in its Complaint.  Because this is a threshold issue designed to prevent the

2   "substantial risk" of double or multiple recovery, absent joinder, this Court may not be

3   able to "accord complete relief among the existing parties."  Fed. R. Civ. P. 19(a)(1)(A) &

4   (B); s*ee, e.g.*, *Am. Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015, 1022, 1027 (9th Cir.

5   2002).  New York has notice of these facts and, therefore, has notice of this defense.

6                          **12.      Failure to Mitigate Injuries**[22]

7                   This defense is self-explanatory and should provide New York with

8   sufficient notice.  *See Board of Trs. of San Diego Elec. Pension Trust*, 2007 WL 2070355

9   at *3 (holding defendant's mere allegation that "plaintiff failed to mitigate damages" was

10  sufficiently pled); *Hernandez*, 2007 WL 1649911 at *6-8 (same).  As a plaintiff, New

11  York is under a duty to mitigate its damages because "a person injured by another's

12  wrongful conduct will not be compensated for damages that the injured person could have

13  avoided by reasonable effort or expenditure."  *State Dept. of Health Services v. Superior*

14  *Court*, 31 Cal. 4th 1026, 1043 (2003).  It is proper to assert this defense in any case, and is

15  especially proper here since New York has not submitted any evidence that it mitigated its

16  damages, if any there be.

17                          **13.      Price Controlled by Plaintiff and/or Other Purchasers**[23]

18                  Defendants have sought extensive discovery on the issue of whether New

19  York and other plaintiffs in companion cases testing the theory of whether plaintiffs had

20  purchasing power sufficient to control the prices of DRAM and DRAM-containing

21  products and therefore establishing that Defendants' lacked the control to price-fix these

22  products.  This factual record clearly gives New York notice that Defendants would assert

23  this defense.

24

25

---

26  [22]      This defense is asserted by the following Defendants: Infineon (16th defense),
    Elpida (14th defense), Mosel (19th defense), and NEC (11th defense).
27  [23]      This defense is asserted by the following Defendants: Elpida (38th defense), Mosel
28  (16th defense), and NEC (34th defense).

### 14. Comparative Fault of Plaintiff or Third Parties and Acquiescence[24]

New York, and those on whose behalf New York purports to bring the Amended Complaint, had various sourcing options for DRAM, including the spot market. Nonetheless, they chose to purchase DRAM Defendants. This is sufficient to put New York on notice of the nature of these defenses.

### 15. Conflict of Interest[25]

The plain language of this defense is sufficient to give New York fair notice of the nature of the defense and Defendants' assertion that New York is an inadequate representative of those on whose behalf it purports to bring the Amended Complaint.

### 16. Increased Output and Lower Prices[26]

Defendants' expert reports in the MDL provide New York with sufficient notice of Defendants' assertion that the matters about which New York complains resulted in increased output and lower prices for DRAM. New York cannot credibly claim that it does not understand this defense.

### 17. Incorporation of Co-Defendant Defenses[27]

It is common practice in multi-party litigation for defendants to incorporate by reference other defenses asserted by co-defendants. This defense is designed to preclude a claim of waiver if a party seeks to amend to pursue a defense pled by a co-defendant. As it is clear from the straightforward language of this defense that the pleading defendant seeks to incorporate additional defenses asserted by its co-defendants, this defense need not be re-pled. The Court can simply decide, as a matter of law, if this form of pleading is proper.[28]

---

[24] This defense is asserted by NEC (22nd and 23rd defenses).
[25] This defense is asserted by NEC (28th defense).
[26] This defense is asserted by NEC (33rd defense).
[27] This defense is asserted by the following Defendants: Hynix (56th defense), Nanya (24th defense), Micron (21st defense), Infineon (45th defense), Elpida (46th defense), Mosel (42nd defense), and NEC (54th defense).
[28] The same is true of the defense reserving a defendant's right to assert any additional defenses applicable to the claims New York asserts. (*See* Nanya's 25th defense, Micron's 22nd defense, Infineon's 42nd defense, Elpida's 47th defense, Mosel's 41st defense, and NEC's 24th and 55th defenses).

1  **V.      CONCLUSION**

2          For the foregoing reasons, New York's Motion for Partial Judgment on the

3  Pleadings, or in the Alternative, for Discovery, should be denied.  Alternatively, if the

4  Court grants the motion as to any defense, Defendants request that the defendant(s) who

5  asserted that defense be given an opportunity to amend its answer to re-plead the defense.

6  Dated:  October 15, 2008                     O'MELVENY & MYERS LLP
                                                KENNETH R. O'ROURKE
7                                               MICHAEL F. TUBACH
                                                STEVEN H. BERGMAN
8                                               KATHERINE M. ROBISON

9

10                                              By: _____/Steven H. Bergman/_____
                                                        Steven H. Bergman
11
                                                Attorneys for Defendants
12                                              HYNIX SEMICONDUCTOR INC. and HYNIX
                                                SEMICONDUCTOR AMERICA INC.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Additional opposing Defendants and Counsel:

| | |
|---|---|
| Joel S. Sanders | Aton Arbisser |
| G. Charles Nierlich | Julian Brew |
| Joshua D. Hess | Joshua Stambaugh |
| GIBSON, DUNN & CRUTCHER LLP | KAYE SCHOLER LLP |
| One Montgomery Street | 1999 Avenue of the Stars, Suite 1700 |
| Montgomery Tower, 31st Floor | Los Angeles, CA 90067 |
| San Francisco, CA 94104 | (310) 788-1000 (telephone) |
| (415) 393-8200 (telephone) | (310) 788-1200 (facsimile) |
| (415) 986-5309 (facsimile) | |

**Attorneys for Defendants Micron Technology, Inc. and Micron Semiconductor Products, Inc.**

**Attorneys for Defendants Infineon Technologies North America Corp. and Infineon Technologies AG**

| | |
|---|---|
| Stephen V. Bomse | James G. Kreissman |
| David C. Brownstein | Harrison J. Frahn IV |
| ORRICK, HERRINGTON & | Gabriel N. Rubin |
| SUTCLIFFE LLP | SIMPSON THACHER & BARTLETT LLP |
| The Orrick Building | 2550 Hanover Street |
| 405 Howard Street | Palo Alto, CA 94304 |
| San Francisco, CA 94105-2669 | (650) 251-5000 (telephone) |
| (415) 773-5700 (telephone) | (650) 251-5002 (facsimile) |
| (415) 773-5759 (facsimile) | |

**Attorneys for Defendants Mosel Vitelic Corporation and Mosel Vitelic Incorporated**

**Attorneys for Defendants Elpida Memory (USA) Inc. and Elpida Memory, Inc.**

Howard M. Ullman
ORRICK, HERRINGTON &
SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
(415) 773-5700 (telephone)
(415) 773-5759 (facsimile)

Robert Freitas
ORRICK, HERRINGTON &
SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025-1021
(650) 614-7400 (telephone)
(650) 614-7401 (facsimile)

**Attorneys for Defendants Nanya
Technology Corporation and Nanya
Technology Corporation USA**

Robert B. Pringle
Paul R. Griffin
Jonathan E. Swartz
THELEN LLP
101 Second Street, Suite 1800
San Francisco, CA 94105
(415) 371-1200 (telephone)
(415) 371-1211 (facsimile)

**Attorneys for Defendant NEC Electronics
America, Inc.**

DEFENDANTS' OPP'N TO NY'S MOTION
FOR PARTIAL JOP OR DISCOVERY
MDL No. 1486, CASE No. C-06-06436 PJH

1

## ATTESTATION OF FILING

2       Pursuant to General Order No. 45 § X(B), I hereby attest that I have obtained

3   concurrence in the filing of Defendants' Opposition to New York's Motion for Partial

4   Judgment on the Pleadings, or in the Alternative, for Discovery from all of the Defendants

5   listed in the signature blocks above.

6

7                                            */Steven H. Bergman/*
                                             Steven H. Bergman

8                                            Attorneys for Defendants
                                             HYNIX SEMICONDUCTOR INC. and
9                                            HYNIX SEMICONDUCTOR AMERICA
                                             INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28