UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

In re DYNAMIC RANDOM ACCESS MEMORY (DRAM) ANTITRUST LITIGATION
_____/

This Document Relates to:

All Direct Purchaser Actions
_____/

No. M 02-1486 PJH

**ORDER DENYING MOTION TO TO MODIFY OR ENFORCE ORDER GRANTING FINAL APPROVAL OF SETTLEMENT**

Plaintiffs' motion to modify or in the alternative, to enforce, the court's prior order granting final approval of the settlement between plaintiffs and defendant Micron, came on for hearing on May 13, 2009 before this court. Plaintiffs, the direct purchaser class ("plaintiffs"), appeared through their class counsel, Guido Saveri and Anthony D. Shapiro. Defendant Micron Technology, Inc. ("Micron") appeared through its counsel, Joel Sanders. Having read all the papers submitted and carefully considered the relevant legal authority, the court hereby DENIES the motion, for the reasons stated at the hearing, and as follows.

**BACKGROUND**

In April 2007, the court granted final approval with respect to a settlement reached by the plaintiff class and defendant Micron in the underlying litigation. Currently, the parties are in the final stages of claims administration, with claim forms having been filed by eligible class members, and distribution of settlement monies to class members pending. Now, however, plaintiffs seek modification and/or enforcement of the court's order granting final approval of the settlement with Micron.

A.     Background Facts

The direct purchaser plaintiffs settled with Micron on January 9, 2007. After seeking and securing preliminary approval of the settlement, plaintiffs obtained final approval of the settlement on April 18, 2007. Under the terms of the settlement, and in exchange for

plaintiffs' release of certain antitrust claims against Micron, Micron agreed to pay $90,537,000 into a class settlement fund, an amount that equaled approximately 10.53% of Micron's total sales of DRAM to the class – excluding those class members who had either opted out of the class, or who had already negotiated a settlement with Micron. See Declaration of Anthony Shapiro ISO Mot. Modify Order Granting Final Approval of Settlement ("Shapiro Decl."), Ex. A, ¶ 16. Micron was also required, as part of the settlement, to provide plaintiffs with a list of those class members with whom it had settled, or who had opted out of the class. Id. In addition, the settlement provides that, if Micron settled with additional class members after the settlement's execution, the $90.537MM settlement fund would not be reduced. Id. Yet another provision states that the settlement fund would be plaintiffs' sole source of money for settlement and satisfaction against Micron. Id. at ¶ 20.

In October 2007, as part of the claim administration process following final approval of the settlement, a proof of claim form became available for class members. On November 5, 2007, Mr. Robert Morgan, president of Mega Comm Technologies, Inc. ("Mega Comm"), filed a claim form on Mega Comm's behalf, identifying approximately $41,000,000 in DRAM purchases made from defendant Micron during the class period (as well as additional DRAM purchases from defendants Infineon and NEC). See Declaration of Robin Niemiec ISO Mot. Modify Order Granting Final Approval of Settlement ("Niemiec Decl."), Ex. C.

However, as part of its compliance with the settlement agreement provision requiring Micron to supply class counsel with the names and addresses of those persons and entities with which it had reached individual settlements, Micron had previously identified Mega Comm as a class member with which it had reached an individual settlement. See Shapiro Decl., ¶¶ 11-12. Accordingly, on March 3, 2008, the claim administrator sent Mr. Morgan a "Notice of Claim Amount Adjustment" advising him that Mega Comm's claim was being reduced by the amount of approximately $41MM, in view of Mega Comm's settlement with

Micron.

After receiving the notice, Mr. Morgan contacted the claim administrator, and after a series of phone conversations and follow-up investigations involving plaintiffs' counsel and eventually Micron's counsel, Micron confirmed with class counsel that on May 24, 2006, it had entered into a purported settlement agreement with an individual named Charles Kenny, by which Micron asserts that it settled all claims based on Micron's sales of DRAM to Mega Comm during the class period. See Shapiro Decl., ¶ 14; see also Declaration of Michael Ridling ISO Def. Opp. Re Mot. Modify Order Granting Final Approval of Settlement ("Ridling Decl."), ¶¶ 5-7. Mr. Morgan, however, was unaware of any settlement agreement between Mega Comm and Micron.

Mr. Kenny, for his part, had been hired by Mega Comm in 1995 to purchase and sell memory products such as DRAM on Mega Comm's behalf. See, e.g., Shapiro Decl., Ex. E ("Kenny Decl."), ¶¶ 2, 5. In June 2000, Mr. Kenny formed a separate company called Strike One, and beginning in January 2001, Mega Comm used Strike One as an independent contractor to perform the same duties that Mr. Kenny had been performing as an employee – i.e., the purchase and sale of DRAM products for Mega Comm. See id. at ¶ 4; see also Declaration of Robert Morgan ISO Mot. Modify Order Granting Final Approval of Settlement ("Morgan Decl."), ¶ 8. Subsequently, in October 2002, a termination agreement was signed between Mega Comm and Strike One and Mr. Kenny, ending the business relationship between the parties. Kenny Decl., ¶ 6; Morgan Decl., ¶ 20.

B.   The Instant Motion

Plaintiffs now seek modification of the court's order granting final approval of the settlement between plaintiffs and Micron, in order to remedy Micron's exclusion of the amount of DRAM sales to class member Mega Comm from Micron's total reported DRAM sales to the class. By way of relief, plaintiffs request that the court modify its prior approval order to additionally include in the class settlement fund 10.53% of Micron's omitted DRAM sales to Mega Comm during the relevant time frame – a percentage amount plaintiffs claim

3

is consistent with the parties' settlement negotiations. Alternatively, plaintiffs seek enforcement of the settlement agreement between the parties, arguing that Micron breached its agreement to pay 10.53% of a properly calculated total amount of DRAM sales to all class members, as set forth in the agreement. Plaintiffs assert that modification or enforcement of the settlement is proper, either as an exercise of the court's inherent equitable powers, or pursuant to Federal Rules of Civil Procedure 23 and 60.

**DISCUSSION**

At the heart of plaintiffs' motion is plaintiffs' assertion that Micron's exclusion of its DRAM sales to Mega Comm from the represented amount of total DRAM sales to the class – and its subsequent failure to pay 10.53% of Mega Comm's DRAM purchases to plaintiffs – was erroneous, as it was premised on an unauthorized settlement agreement between Micron and Mega Comm's former employee and independent contractor, Mr. Kenny.

Micron, for its part, disputes plaintiffs' contentions, arguing that the express terms of the settlement agreement require only a flat payment of $90.537 MM, a provision with which Micron has fully complied. Plaintiffs' contrary attempt to demonstrate that Micron agreed to settle for a certain percentage of total DRAM sales to the class, Micron continues, is therefore irrelevant and off point, and neither modification nor enforcement is warranted. Micron furthermore contends that, since the settlement agreement with Mr. Kenny is valid, no misrepresentation of Micron's total DRAM sales to the class members – or corresponding breach of the settlement agreement – ever occurred at any rate. Even if it had, Micron argues that neither Federal Rules of Procedure 23 nor 60 provide the type of relief that plaintiffs request.

As a preliminary matter, the court notes that although plaintiffs' motion papers primarily seek modification of the court's prior order granting final approval of the settlement in question, plaintiffs shifted the focus of their arguments at the hearing. Now, plaintiffs primarily frame their request for relief as one to enforce – rather than modify – the settlement agreement previously approved by the court.

Regardless whether plaintiffs are seeking modification or enforcement of the settlement agreement, however, plaintiffs' request for relief is rooted in the same originating source – i.e., the actual settlement agreement between plaintiffs and Micron. Thus, the settlement agreement – and more specifically, the express provisions of the settlement agreement – is the starting point for the court's inquiry, for the court must determine as an initial matter the nature and scope of the agreement between the parties.

Turning to that agreement, the court is unpersuaded that, as plaintiffs posit, the language of the agreement even allows for the relief plaintiffs seek in the first instance. The agreement, for example, while expressly stating that the actual settlement amount that Micron agreed to pay was the flat amount of $90.537MM, *nowhere* expressly provides that the settlement amount was furthermore based on a percentage of total DRAM sales to the class minus settlement amounts. See, e.g., Shapiro Decl., Ex. A at ¶ 16. Plaintiffs even concede as much. Yet it would have been relatively easy for the parties to write Micron's promise to pay a percentage amount into the agreement, or even the additional requirement that any later-discovered omissions of class members' DRAM purchases from the represented amount of the total class members' DRAM purchases would require Micron to pay additional monies. After all, the settlement agreement currently contains a provision that explicitly states that the $90.537MM settlement fund provided by Micron would not be reduced in the event of future settlements with members of the class. See id.

In sum, the settlement agreement's explicit reference to a set $90.537MM settlement amount, and its omission of any reference to Micron's agreement to pay a corresponding percentage amount of total DRAM purchases made by the class, leads to the unremarkable and unambiguous conclusion that the settlement agreement sets forth a flat dollar amount to be paid by Micron, rather than a percentage amount of the total DRAM purchases made by the class.[1]

---

[1] Since there is no ambiguity as to the payment that the agreement requires of Micron, plaintiffs' argument that the court should consider parol evidence in order to determine the true meaning of the amount the parties settled for is unavailing, and the court declines to

In so finding, the court does not pass judgment on the correctness of plaintiffs' contrary belief that it settled with Micron for an amount corresponding with a percentage of total DRAM purchases made by the class. Indeed, as stated at the hearing on the matter, it is quite possible for plaintiffs to have intended the settlement amount to reflect a percentage amount of total DRAM purchases to the class, even as Micron took this into account but intended to settle for a flat amount. The question for the court, however, is what the settlement agreement itself discloses on its face. And here, the agreement is unambiguous in disclosing that the amount of the settlement fund was premised on a flat amount.

In sum, since the settlement agreement discloses the requirement that Micron pay $90.537MM into the settlement fund rather than a percentage amount of total DRAM purchases made by the class, there is no support in the agreement for the relief that plaintiffs seek – i.e., the payment of additional monies by Micron in an amount equal to a percentage amount of DRAM purchases made by Mega Comm. Thus, the motion must be denied.

This conclusion, however, begs an additional observation. For plaintiffs contend, as an alternative argument, that Micron has breached the settlement agreement by failing to properly represent the total amount of the class DRAM purchases from Micron, not just by failing to pay a percentage amount of the excluded Mega Comm DRAM purchases. Plaintiffs note, for example, that paragraph 16 of the settlement agreement provides, in addition to the flat settlement amount, that "[i]n reaching the present settlement, Plaintiffs relied upon Micron's representation that it had not separately entered into settlement agreements with class members whose total purchases during the Class Period amounted to approximately $859,800,000." See id. Thus, to the extent that Micron misrepresented the total amount of DRAM purchases to the class, plaintiffs contend that such a breach is

---

consider it, as the request is essentially for the court to consider the parol evidence to determine *if* there is an ambiguity.

6

actionable.

Plaintiffs have raised a potentially valid argument, though the remedy they seek is inappropriate. After all, since the settlement agreement expressly states that plaintiffs relied upon defendant's representation as to the accurate amount of total class DRAM purchases, a higher total purchase amount would likely have been a material factor for the negotiating parties. However, while a breach of the agreement *may* be argued in the event Micron misrepresented the total class purchase amount that plaintiffs relied on, such a misrepresentation can only be premised on proof of the invalidity of Micron's settlement with Mega Comm – a fact which has not yet been proven. As plaintiffs themselves note in reply, "whether the exclusion of Mega Comm was due to mistake (or something more sinister) is impossible to tell" – particularly since Micron has not submitted evidence of the settlement with Mr. Kenny, or anything other than 2 skimpy declarations (one of which, Mr. Kenny's, does not actually appear to have been e-filed). See, e.g., Pl. Reply Br. at 12:14-17; see also Declaration of Michael Ridling ISO Def. Opp. ("Ridling Decl."), ¶¶ 2-6. Thus, while the unproven fact of Micron's misrepresentation with respect to the amount of total DRAM purchases made by class members – which in turn depends on proof of the validity or invalidity of the Mega Comm settlement – is a prerequisite to determining the existence of any breach of the settlement agreement here, there is insufficient evidence before the court to enable it to reach a conclusion as to this issue.

To that end, the court is willing to conduct an evidentiary hearing in order to determine the separate and independent issue whether Micron misrepresented the fact of its settlement with Mega Comm and its total amount of all class members' DRAM purchases, thereby breaching the express provisions of the contract.[2] However, if the court

---

[2] On this point, the court acknowledges receipt of plaintiffs' letter dated May 13, 2009, requesting that the court order Micron to produce the alleged settlement agreement it executed with Mr. Kenny on Mega Comm's behalf. However, not only is plaintiffs' informal letter procedurally deficient as a means by which to request release of such a document, but this request is one that may be dealt with during the course of a further evidentiary hearing, should plaintiffs so desire.

7

1 were to do so, the parties should note that in the event that the evidence presented at such
2 a hearing were sufficient to persuade the court that a misrepresentation has, in fact, been
3 made, the proper result of such a finding would likely be rescission of the agreement – or
4 the grant of a request to vacate such agreement – *not* a re-writing of the settlement
5 agreement in order to grant plaintiffs additional monies not expressly set forth under the
6 terms of the agreement.  Material revisions to settlement agreements are not within the
7 province of the court's powers.  See, e.g., Jeff D. v. Andrus, 899 F.2d 753, 758 (9th Cir.
8 1989)("courts are not permitted to modify settlement terms or in any manner to rewrite
9 agreements reached by parties....  The court's power to approve or reject settlements does
10 not permit it to modify the terms of a negotiated settlement.").

11 In sum, therefore, while the court denies plaintiffs' request for modification and/or
12 enforcement of the settlement agreement as currently presented, it will allow plaintiffs the
13 opportunity to request a further evidentiary hearing in order to establish that Micron
14 misrepresented its settlement with Mega Comm and by extension, its total amount of all
15 class members' DRAM purchases.

**CONCLUSION**

17 For the foregoing reasons, the court hereby DENIES plaintiffs' motion.  In the event
18 plaintiffs wish to pursue an evidentiary hearing on the misrepresentation issue, however,
19 plaintiffs are instructed to file, no later than **June 12, 2009**, a request for an evidentiary
20 hearing, along with a list of witnesses and exhibits necessary for a full determination of the
21 issue, and a statement of the specific relief sought in light of the court's statements in this
22 order.  In the event such a request is filed, the court will thereupon determine and issue a
23 briefing schedule and hearing date.

24 **IT IS SO ORDERED.**

25 Dated: June 1, 2009

PHYLLIS J. HAMILTON
United States District Judge