GUIDO SAVERI (22349)
R. ALEXANDER SAVERI (173102)
GEOFFREY C. RUSHING (126910)
CADIO ZIRPOLI (179108)
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA 94111-5619
Telephone: (415) 217-6810
Facsimile: (415) 217-6813
*guido@saveri.com*
*rick@saveri.com*

ANTHONY D. SHAPIRO (*pro hac vice*)
GEORGE W. SAMPSON (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile No.: (206) 623-0594

FRED TAYLOR ISQUITH *(pro hac vice)*
MARY JANE FAIT *(pro hac vice)*
WOLF, HALDENSTEIN, ADLER, FREEMAN & HERZ
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 545-4653

Co-Lead Counsel for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE DYNAMIC RANDOM ACCESS MEMORY (DRAM) ANTITRUST LITIGATION | Master File No. M-02-1486 PJH<br>MDL No. 1486<br>**DIRECT PURCHASER PLAINTIFFS' MOTION FOR AN ORDER AUTHORIZING DISTRIBUTION OF SETTLEMENT FUND; MEMORANDUM IN SUPPORT THEREOF** |
| This Document Relates To:<br>All Direct Purchaser Actions | Time: October 28, 2009<br>Date: 9:00 a.m.<br>Judge: Hon. Phyllis J. Hamilton<br>Courtroom: 3, 3rd Floor |

# TABLE OF CONTENTS


I. Introduction ..... 1

II. Statement of Facts ..... 2

A. Background of the Settlements ..... 2

B. Notice to Class Members Regarding the Settlements ..... 3

C. The Claims Process ..... 4

D. Disputed Claims ..... 9

E. Reserving Funds in the Net Settlement Fund ..... 9

III. Argument ..... 10

IV. Conclusion ..... 12

# TABLE OF AUTHORITIES

## CASES

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) .......... 10

*In re Cendant Corp. Securities Litig*, 109 F.Supp.2d 235 (D.N.J. 2000) .......... 10

*In re Computron Software, Inc.*, 6 F.Supp.2d 313 (D.N.J. 1998) .......... 10, 11

*In re Lloyd's Am. Trust Fund Litig.*, 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) .......... 10

*In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104 (S.D.N.Y. 1997) .......... 11

*In re Vitamins Antitrust Litig.*, 2000 WL 1737867 (D.D.C. Mar. 31, 2000) .......... 10

## TREATISES

*Newberg on Class Actions*, § 11:33 (4th ed. Nov. 2005) .......... 11

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 28, 2009, at 9:00 a.m., or as soon thereafter as counsel can be heard, before the Honorable Phyllis J. Hamilton, United States District Judge, at the United States District Courthouse, 1301 Clay Street, Courtroom 3, 3rd Floor, Oakland, California, 94612, Direct Purchaser Plaintiffs will move this Court for an Order authorizing the distribution of settlement proceeds obtained in the Direct Purchaser Actions to class members who submitted a valid claim.

This Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities in Support thereof, the Declaration of Robin Niemiec in Support of Motion Authorizing Distribution of Settlement Fund, the Declaration of R. Alexander Saveri in Support of Direct Purchaser Plaintiffs' Motion for an Order Authorizing Distribution of Settlement Fund, the [Proposed] Order Granting Motion Authorizing Distribution of Settlement Fund, submitted herewith, as well as the complete files and records in this case.[1]

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Direct Purchaser Plaintiffs ("Plaintiffs") settled this action with all named defendants, except for Nanya Technology Corporation which was granted summary judgment, resulting in settlement proceeds of $325,997,000, plus accrued interest.[2] This Court has granted final approval

---

[1] After Plaintiffs file this Motion, all documents including the Notice of Motion and Motion, the Memorandum of Points and Authorities in Support thereof, the Declaration of Robin Niemiec in Support of Motion Authorizing Distribution of Settlement Fund, the Declaration of R. Alexander Saveri in Support of Direct Purchaser Plaintiffs' Motion for an Order Authorizing Distribution of Settlement Fund, and the [Proposed] Order Granting Motion Authorizing Distribution of Settlement Fund will be posted on the DRAM website (http://www.dramantitrustsettlement.com) monitored by the Claims Administrator.

[2] The settling defendants include: Infineon Technologies AG and Infineon Technologies North America Corp. ("Infineon"); Samsung Semiconductor, Inc. and Samsung Electronics Co. Ltd. ("Samsung"); Hynix Semiconductor, Inc. and Hynix Semiconductor America, Inc. ("Hynix."); Elpida Memory, Inc. and Elpida Memory (USA) Inc. ("Elpida"); NEC Electronics America, Inc. ("NEC"); Winbond Electronics Corporation and Winbond Electronics Corporation America ("Winbond"); Micron Technology, Inc. and Micron Semiconductor Products, Inc. ("Micron"); Mosel Vitelic Corp. and Mosel-Vitelic, Inc. ("Mosel"); and Nanya Technology Corporation USA ("Nanya USA") (collectively, "Settling Defendants").

to each of the settlement agreements and the time for appeal has expired. All settlement payments have been made and placed in an interest-earning escrow account. Notice of the settlements was sent to class members, and potential class members submitted claims to the settlement proceeds.

The Claims Administrator has completed an extensive, fair and reasonable review of each submitted claim. As of August 31, 2009, the Net Settlement Fund, which includes the settlement proceeds plus interest through that date, less Court-ordered attorneys' fees, costs and expenses, and incentive benefits to Class Representatives, amounts to approximately $245,472,196.10. (Decl. of R. Alexander Saveri in Support of Direct Purchaser Plaintiffs' Motion for an Order Authorizing Distribution of Settlement Fund ("Saveri Decl.") ¶2.) Plaintiffs recommend reserving sufficient funds in the Net Settlement Fund for the payment of federal and state taxes, claims administration costs, and the disputed claim of Kimball Electronics Tampa, Inc. f/k/a Reptron Electronics, Inc. ("Reptron") (*Id.* at ¶4.)

Pursuant to the settlement agreements, Plaintiffs request that the Court enter the Proposed Order, submitted herewith, which approves a *pro rata* distribution of the Net Settlement Fund, less funds reserved for taxes, claims administration costs and Reptron's claim, and authorizes payment of all claims approved by the Claims Administrator.

## II. STATEMENT OF FACTS

### A. Background of the Settlements

Plaintiffs brought this action alleging that, from April 1, 1999, to June 30, 2002, defendants unlawfully agreed to fix, raise, maintain and stabilize the prices of DRAM and/or to allocate among themselves major customers and accounts in violation of the federal antitrust laws. Plaintiffs further alleged that, as a result of defendants' unlawful conduct, they and members of the Certified Class paid more for DRAM than they would have in the absence of defendants' wrongful conduct. Defendants denied plaintiffs' allegations and asserted numerous affirmative defenses. In exchange for the release of Plaintiffs' claims, ten separate settlement agreements were reached with Settling Defendants. The settlements total $325,997,000. On November 1, 2006, April 18, 2007, and August 1, 2007, the Court held final approval hearings on the settlements, determined that each

settlement was fair, adequate and reasonable, approved each settlement, and dismissed the litigation with prejudice against Settling Defendants.[3] The Court also found that the notice given to the class regarding the settlements was the best notice practicable under the circumstances, and that such notice provided due and adequate notice of the proceedings and satisfied the requirements of due process. *See supra,* n.2. The judgments entered provide that the Court retains jurisdiction over disbursement of the settlement fund. *See id.*

**B. Notice to Class Members Regarding the Settlements**

The Claims Administrator mailed notice to class members and also created a settlement website, which contained the notice and a claim form. (Decl. of Robin Niemiec in Support of Motion to Modify Order Granting Final Approval of Class Settlement with Micron, Ex. A. (Dkt. No. 1952).) Notice occurred in three phases based on the timing of the settlements. (*Id.*) The first notice informed class members about Plaintiffs' settlements with Infineon, Hynix, and Samsung. (*Id.*) The second notice informed class members about Plaintiffs' settlements with Elpida, NEC, Winbond, and Micron. (*Id.*) The third notice informed class members of Plaintiffs' settlements with Mosel and Nanya USA. (*Id.*) Each of the three Notices informed class members that the plan of allocation provides for distribution of the Net Settlement Fund on a *pro rata* basis, based on the dollar amount each class member paid to defendants for direct purchases of DRAM from April 1, 2009, to June 30, 2002. (*Id.*) The deadline to submit a Proof of Claim was December 31, 2007.

---

[3] *See* Final J. of Dismissal With Prejudice as to Def. Samsung Electronics Co., Ltd. (Aug. 10, 2007) (Dkt. No. 1677); Final J. of Dismissal With Prejudice as to Def. Mosel Vitelic, Inc. (Aug. 1, 2007) (Dkt. No. 1664); Final J. of Dismissal With Prejudice as to Def. Mosel Vitelic Corp. (Aug. 1, 2007) (Dkt. No. 1663); Final J. of Dismissal With Prejudice as to Def. Nanya Technology Corporation USA (Aug. 1, 2007) (Dkt. No. 1662); Final J. of Dismissal With Prejudice as to Def. NEC Electronics America, Inc. (April 18, 2007) (Dkt. No. 1534); Final J. of Dismissal With Prejudice as to Defs. Winbond Electronics Corporation and Winbond Electronics Corporation America (April 18, 2007) (Dkt. No. 1536); Final J. of Dismissal With Prejudice as to Defs. Micron Technology, Inc., and Micron Semiconductor Products, Inc. through its Crucial Technology Division (April 18, 2007) (Dkt. No. 1535); Final J. of Dismissal With Prejudice as to Defs. Elpida Memory, Inc. and Elpida Memory (USA) Inc. (April 18, 2007) (Dkt. No. 1533); Final J. of Dismissal With Prejudice as to Defs. Hynix Semiconductor, Inc. and Hynix Semiconductor America Inc (Nov. 1, 2006) (Dkt. No. 1153); Final J. of Dismissal With Prejudice as to Def. Samsung Semiconductor, Inc. (Nov. 1, 2006) (Dkt. No. 1154); Final J. of Dismissal With Prejudice as to Def. Infineon Technologies AG and Infineon Technologies North America Corp. (Nov. 1, 2006) (Dkt. No. 1155) (collectively, "Final Approval Orders").

**C. The Claims Process**

Between September 28, 2007, and October 2, 2007, pursuant to the September 11, 2007, Order Approving Claim Form to be Provided to Class Members Regarding Distribution of Settlement Fund ("September 11 Order"), the Settlement Administrator mailed the Claim Form to 642,384 entities and electronically mailed a notification that Claim Forms were available ("E-mail Notification") to 417,430 entities. (Decl. of Robin Niemiec In Support of Motion Authorizing Distribution of Settlement Fund ("Niemiec Decl.") ¶¶ 4-6, Exs. A-B.)

Of the 417,430 E-mail Notifications sent, 20,224 e-mails were returned as undeliverable. (*Id.* at ¶7.) A total of 20,224 Claim Forms were mailed by standard first-class U.S. mail, postage prepaid, to the physical addresses of those records that had undeliverable e-mails. (*Id.*) Additional Claim Forms were mailed by standard first-class mail, postage prepaid, to 91 entities, at their request. (*Id.* at ¶8.) The United States Postal Services ("USPS") returned 1,774 Claim Forms as undeliverable with a forwarding address; the Claims Administrator re-mailed 1,774 Claim Forms to the forwarding addresses. (*Id.* at ¶9.)

The USPS returned 25,420 Claim Forms as undeliverable without forwarding addresses. (*Id.* at ¶10.) The Claims Administrator used a trace processing service to obtain updated addresses for Claim Forms returned as undeliverable. (*Id.* at ¶11.) The Claims Administrator received 15,677 updated addresses and subsequently re-mailed 15,677 Claim Forms to the updated addresses. (*Id.*)

The Claims Administrator responded to inquiries and communications from claimants and established a Post Office Box and a toll-free number. (*Id.* at ¶¶ 12-14.) The Claims Administrator also created and maintained a website (www.dramantitrustsettlement.com), which made available the Settlement Agreements, First, Second and Amended Preliminary Approval Orders, the Notices, Summary Notices and Claim Form. (*Id.* at ¶15.) In addition, a claimant could file its Claim Form on-line at the website from September 28, 2007, through December 31, 2007. (*Id.* at ¶16.)

The Claim Form was designed so that class members could easily fill out the information required. (*Id.* at ¶18.) Pursuant to the September 11, 2007 Order, class members had ninety (90)

days to file a Claim Form. (*Id.* at ¶20.) The Claim Form filing deadline was December 31, 2007. (*Id.*)

The Claims Administrator received and processed 19,821 Claim Forms. (*Id.* at ¶21.) The total value of claims received exceeded $6.8 billion. (*Id.* at ¶22.) For quality control purposes, each paper and on-line Claim Form submitted was given a unique claim number and entered into a database. (*Id.* at ¶¶ 23-24.) From January 1, 2008, to February 29, 2008, the Claims Administrator reviewed each submitted Claim Form that had been received by February 29, 2008, to determine whether it was valid and included all required information. (*Id.* at ¶25.)

For the claims received by February 29, 2008, the Claims Administrator initially determined that certain Claim Forms were missing information that was necessary to confirm the validity of the claim or a claimant's *pro rata* share. (*Id.* at ¶26.) Of the claims received by February 29, 2008, 19 Claim Forms were not signed, and 393 did not contain purchase information. (*Id.* at ¶29.) On March 3, 2008, a "Deficiency Letter" was sent to these claimants, advising them of the deficiency and requesting a correction within 30 days. (*Id.* at ¶30, Exs. C-D.)

From January 1, 2008, to February 29, 2008, the Claims Administrator reviewed each Claim Form to determine if they were duplicative. (*Id.* at ¶36.) The Claims Administrator identified 464 duplicate Claim Forms. (*Id.* at ¶37.) On March 3, 2008, the Settlement Administrator mailed a "Notice of Ineligibility" to those whose claims were determined to be ineligible because they were duplicative. (*Id.* at ¶¶ 38-39, Ex. E.) Claimants were given the opportunity to dispute this determination and provide proof in support of their position. (*Id.* at ¶38.) Forty (40) of the claimants provided proof that their claims were not duplicative. (*Id.* at ¶39.) After the March 3, 2008, mailing, two (2) claimants filed duplicate Claim Forms that were late. These claimants were called and/or emailed in regard to their duplicate status and it was confirmed by the claimant that a duplicate Claim Form was filed. Letters were sent to the individuals/entities confirming this determination. (*Id.* at ¶40.) As a result, a total of 426 claims were deemed ineligible because they duplicated another claim. (*Id.* at ¶41.)

Thirteen (13) claims were originally deemed ineligible as a result of information provided on their Claim Form or subsequent communications with the filing party. (*Id.* at ¶42.) These claimants were advised that their DRAM purchases were not from a named defendant as required. These claimants were notified of their ineligibility or adjusted claim amount by telephone, email and follow-up correspondence. (*Id.*)

All claims were subject to review and/or audit by the Claims Administrator. (*Id.* at ¶43.) All claims exceeding $1 million, which constituted 99.3% of the total dollar value of all claims, were audited. (*Id.*) In addition, random claims between $10,000 and $1 million were selected for audit. (*Id.*) In total, 589 claims were audited. (*Id.*)

For these 589 selected claims, the purchase data provided by defendants was compared to the purchase amounts submitted by the claimants. (*Id.* at ¶44.) If the Claim Form amount was greater than the purchase information provided by defendants, a "Notice of Claim Adjustment" letter was sent to the claimant on March 3, 2008. (*Id.*) Of the 589 claims selected for review, 521 were sent a Notice of Claim Adjustment letter. (*Id.*) The 521 claims totaled $6,169,617,180. (*Id.* at ¶45.)

If the claimant did not agree with the revised claim amount, they could provide additional documentation to support their claim within thirty (30) days of the Notice of Claim Adjustment. (*Id.* at ¶46.) If a claimant requested an extension of the deadline, the extension was granted. (*Id.* at ¶47.) The Claims Administrator received supporting documentation as late as March, 2009. (*Id.* at ¶48.) Five (5) Deficiency Letters were returned by the USPS as undeliverable without a forwarding address. (*Id.* at ¶49.) The Claims Administrator contacted each of these individuals by telephone and/or email to advise them of their deficiency status. (*Id.* at ¶49.)

Of the 521 Notice of Claim Adjustment letters mailed, 432 did not respond and their claims were adjusted accordingly. (*Id.* at ¶50.) Eighty-nine (89) claimants responded and submitted documentation. (*Id.*) The Claims Administrator reviewed documentation supplied by claimants in response to the Notice of Adjustment, which totaled in excess of $1.1 billion and was comprised of thousands of pieces of documentation in the form of invoices, cancelled checks, purchase orders,

spreadsheets, screen shots of computer images, packing slips, wire transfer confirmations, and other such documentation. (*Id.* at ¶ 52.) Fifty-nine (59) of the 432 failures to respond were adjusted to "$0" because the information provided by defendants showed no purchases of DRAM. (*Id.* at ¶51.) Thirteen (13) of the 89 responses were adjusted to $0 for failure to provide adequate documentation of DRAM purchases from a named defendant. (*Id.*) These claims were deemed ineligible. (*Id.*)

Of the documentation provided in response to the Notice of Claim Adjustments letter, some purchases, totaling in excess of $849 million, were deemed ineligible because they included: foreign purchases; purchases outside of the Class Period; purchases made from a company other than a defendant; or purchases that were not DRAM. (*Id.* at ¶55.) Several Claimants provided proof that was inadequate and subsequently rejected. This included: electronic data; screen shots of internal software; and internal spreadsheets listing purchases with no supporting documentation. (*Id.* at ¶57.)

From April 23, 2009, to August 31, 2009, "Final Claim Total Letters" were mailed to the 521 individuals and entities that received a Notice of Adjustment, regardless of whether they responded to the initial Notice of Adjustment letter. (*Id.* at ¶60.) The Final Claim Total Letters advised entities and individuals of the final value of their claim. (*Id.* at ¶61.) A total of 490 entities or individuals received one of three letters depending on whether they had failed to respond to the Final Claim Total Letter, responded and a decision was made in accordance with their documentation, or responded and accepted the Final Claim Total Letter amount. (*Id.*, Exs. G-I.)

In sum, after the completion of audits, document review, and communications with potential Class Members, and processing of late claims, the total purchases by all eligible claimants was $2,188,570,470.00, approximately $4.6 billion less than the original Claim Forms filed. (*Id.* at ¶68.) A total of 650 claims are ineligible. (*Id.* at ¶69, Ex. K.) They include:

- 37 claims that provided no purchase information on their Claim Form, and defendants did not have the claimant as purchasing DRAM during the class period;
- 426 duplicate claims;

- 80 claims deemed duplicate because they were filed in response to a deficiency letter and used to supplement the original claim;
- 6 claims that, as shown on the Claim Form or through follow-up communications, were not DRAM purchases from a named defendant;
- 2 claims that were subsequently withdrawn;
- 8 claims that were test claims by the Claims Administrator;
- 19 claims that were filed and not intended to be claims; and
- 72 claims that had purchase information on the Claim Form but defendants had a purchase amount of $0 and the individual or entity could not provide proof to support their claim.

(*Id.* at ¶¶ 42, 63, 69.)

Seven (7) claimants filed claims where it was determined that they previously settled with defendants for part or all of their claim. (*Id.* at ¶56.) Confirmation of settlement, including the date of the Settlement Agreement and the person who signed the Settlement Agreement on behalf of claimant was obtained from defense counsel and provided to the claimant. (*Id.*)

Mega Comm Technologies, Inc. ("Mega Comm") filed claims that total $46,506,623.00. (*Id.* at ¶70.) Defendant Micron, however, did not include Mega Comm's sales in the calculation of its settlement with Plaintiffs, maintaining that it separately settled the claims alleged in this action with an ex-employee of Mega Comm, Charles Kenny, and his company, Strike One, Inc. On July 16, 2009, Mega Comm moved to intervene, and for an order requiring Mega Comm's claim to be paid. (Mega Comm Technologies, Inc.'s Motion to Intervene (Dkt. No. 1986).) On August 21, 2009, this Court granted leave to intervene in these class action proceedings and ordered "that Mega Comm's claim based upon Micron direct purchases be paid." (Order Granting Mega Comm Technologies, Inc.'s Motion to Intervene and Ordering Paid Mega Comm's Claim Based Upon Micron Direct Purchases, at p.2 (Aug. 31, 2009).) Mega Comm's direct purchases from Micron, in the amount of $40,985,267.00, plus its other valid claims for purchases from the other defendants, are included in the distribution list. (Niemiec Decl. ¶70.)

After the completion of processing and auditing claims, there were 19,171 Claimants authorized for payment. (*Id.* at ¶72.) Attached as Exhibit L to the Niemiec Declaration is a schedule of claimants and their percentage of the Net Settlement Fund. The Claims Administrator prepared a list of 19,171 Authorized Claimants for distribution of the Net Settlement Fund on a *pro rata* basis based on the dollar amount each Class Member paid to Defendants for direct purchases of DRAM from April 1, 1999, through June 30, 2002. (*Id.* at ¶73.) The total purchases of all eligible claimants was $2,188,570,476.00. (*Id.*)

**D. Disputed Claims**

Kimball Electronics Tampa, Inc. f/k/a Reptron Electronics, Inc. ("Reptron") has claims for purchases of DRAM in the amount of $64,938,096.00. (Niemiec Decl. ¶71.) The claim is still pending. Jaco Electronics, Inc. ("Jaco") attempted to opt out of the settlements on behalf of Reptron, claiming that it acquired Reptron's DRAM claims by assignment. On June 23, 2009, Reptron moved to intervene in this action and seeks an order determining that it, not Jaco, owns its DRAM claims. (Dkt. No. 1968.) This hearing is currently scheduled for October 21, 2009. Reptron's claim has been included in the distribution list for the purpose of determining the *pro rata* distribution. (Niemiec Decl. ¶71.) Plaintiffs' Counsel will reserve Reptron's *pro rata* share of the Net Settlement Fund in escrow until its claim is resolved by the Court through appeal or the time to appeal has expired.

**E. Reserving Funds in the Net Settlement Fund**

As of August 31, 2009, approximately $245,472,196.10 remains in the Net Settlement Fund, which includes the settlement proceeds plus interest through that date, less Court-ordered attorneys' fees, costs and expenses, and incentive benefits to Class Representatives. (Saveri Decl. ¶2.) Plaintiffs recommend reserving sufficient funds in the Net Settlement Fund for the payment of state and federal taxes as they become due during the claims distribution period. (Saveri Decl. ¶4.) In addition, the Claims Administrator submitted a budget showing that approximately $165,000 should be reserved in the Net Settlement Fund for costs incurred since August 1, 2009, and for future claims administration costs, which include distributing, processing and tracing settlement

award checks, website updates and fees, communications with claimants, and FDIC charges. (*Id.*) Thus, Plaintiffs recommend distributing the Net Settlement Fund, less funds reserved for the payment of taxes, claims administration costs, and Reptron's *pro rata* share. (*Id.*)

## III. ARGUMENT

Plaintiffs request an order authorizing the distribution of the Net Settlement Fund to the approved valid claims in the amount set forth in Exhibit L of the Niemiec Declaration. Entry of an order approving a *pro rata* plan of allocation and permitting a distribution of the Net Settlement Fund to all approved claimants is proper and appropriate at this time. A *pro rata* distribution is determined by multiplying each claimant's percentage of the total valid claims (individual valid claimant purchases divided by total valid claims) times the Net Settlement Fund (approximately $245 million). This calculates each claimant's individual payment from the Net Settlement Fund. Attached as Exhibit L to the Niemiec Declaration is a spreadsheet of each valid claimant's *pro rata* percentage of the Net Settlement Fund.

Like final approval of a settlement agreement, a plan of allocation must be "fair, adequate and reasonable" to warrant court approval. *See In re Computron Software, Inc.,* 6 F.Supp.2d 313, 321 (D.N.J. 1998); *In re Cendant Corp. Securities Litig,* 109 F.Supp.2d 235, 245 (D.N.J. 2000); *see also Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1284-85 (9th Cir. 1992). A plan of allocation, like the one proposed here, that compensates class members based on the type and extent of their injuries is generally considered to be reasonable. *Computron Software, Inc.,* 6 F.Supp.2d at 321.

Courts have repeatedly found that *pro rata* distributions are "fair, adequate and reasonable." *See e.g., In re Vitamins Antitrust Litig.*, 2000 WL 1737867 at *6 (D.D.C. Mar. 31, 2000) ("Settlement distributions, such as this one, that apportion funds according to the relative amount of damages suffered by class members, have repeatedly been deemed fair and reasonable."); *In re Lloyd's Am. Trust Fund Litig.*, 2002 WL 31663577 at *19 (S.D.N.Y. Nov. 26, 2002) ("*pro rata* allocations provided in the Stipulation are not only reasonable and rational, but appear to be the fairest method of allocating the settlement benefits."); *In re PaineWebber Ltd. Partnerships*

*Litig.*,171 F.R.D. 104, 135 (S.D.N.Y. 1997) ("*pro rata* distribution of the Settlement on the basis of Recognized Loss will provide a straightforward and equitable nexus for allocation and will avoid a costly, speculative and bootless comparison of the merits of the Class Members' claims").

Distribution of the Net Settlement Fund, as set forth in Exhibit L of the Niemiec Declaration, is fair, adequate, and reasonable. The plan of distribution provides for a straight *pro rata* distribution to class members with valid claims (with no class members being favored over others). Like allocation plans previously approved by courts, this plan compensates class members based on the extent of their injuries. *See Computron Software, Inc.,* 6 F.Supp.2d at 321. Notice of this plan of distribution was provided to class members, and no objections to this plan were received. (Saveri Decl. ¶3.) Distribution of the Net Settlement Fund is appropriate at this time because final judgment has been entered and the time to appeal the settlement agreements has expired. *See Newberg on Class Actions*, § 11:33 (4th ed. Nov. 2005) ("settlement fund is usually not distributed until a final judgment has been entered and the appeal period has expired").

In addition, the proposed distribution is appropriate because the Claims Administrator has completed a fair, reasonable, and adequate review of the claims. First, the Claims Administrator established quality control measures to ensure that each claim was properly tracked and notified claimants of any deficiencies, including incomplete claim forms, duplicate claims, unsupported claim amounts, and claims that did not satisfy the class definition. (Niemiec Decl. ¶¶ 5-11.) If emails, claim forms, or deficiency letters were returned as undeliverable, the Claims Administrator attempted to obtain updated addresses and re-mailed the letters where possible. (*Id.*)

Second, claimants had every opportunity to cure any deficiencies by providing additional information or documentation. The Claims Administrator processed late claims and, if requested, extended the deadline to submit supporting documentation. (*Id.* at ¶47.) Additionally, where possible, the Claims Administrator used data provided by Class Counsel and Settling Defendants if a claimant could not locate supporting documentation regarding purchases. (*Id.* at ¶33.)

Third, the Claims Administrator and Class Counsel spent a significant amount of time working with claimants and/or their counsel to resolve claim disputes. (*Id.* at ¶¶ 58-59.)

Finally, the claims process resulted in significant savings to the Class. At the start of the claims process, the value for all claims received was in excess of $6.8 billion. (*Id.* at ¶22.) After the completion of audits, document review, communications with claimants, and processing late claims, the Claims Administrator determined that total purchases by eligible claimants was $2,188,570,476.00, approximately $4.6 billion less than the value of the original Claim Forms submitted. (*Id.* at ¶68.)

In sum, distributing the Net Settlement Fund on a *pro rata* basis to all approved claimants is fair, reasonable, and adequate.

## IV. CONCLUSION

For the foregoing reasons, Direct Purchaser Plaintiffs respectfully request an Order authorizing the distribution of the Net Settlement Fund as set forth in Exhibit L of the Niemiec Declaration.

Dated: September 15, 2009.

Respectfully submitted,

*/s/ R. Alexander Saveri*

Guido Saveri (22349)
R. Alexander Saveri (173102)
Geoffrey C. Rushing (126910)
Cadio Zirpoli (179108)
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA 94111
Telephone: (415) 217-6810
Facsimile: (415) 217-6813

Anthony D. Shapiro (*pro hac vice*)
George W. Sampson (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Fred Taylor Isquith *(pro hac vice)*
Mary Jane Fait *(pro hac vice)*
WOLF, HALDENSTEIN, ADLER,
FREEMAN & HERZ
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 545-4653

Ram.944

Co-Lead Counsel for Plaintiffs