```
GUIDO SAVERI (22349)
R. ALEXANDER SAVERI (173102)
GEOFFREY C. RUSHING (126910)
CADIO ZIRPOLI (179108)
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA 94111-5619
Telephone: (415) 217-6810
Facsimile: (415) 217-6813
guido@saveri.com
rick@saveri.com

ANTHONY D. SHAPIRO (pro hac vice)
GEORGE W. SAMPSON (pro hac vice)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile No.: (206) 623-0594

FRED TAYLOR ISQUITH (pro hac vice)
MARY JANE FAIT (pro hac vice)
WOLF, HALDENSTEIN, ADLER,
   FREEMAN & HERZ
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 545-4653

Co-Lead Counsel for Plaintiffs
```

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE DYNAMIC RANDOM ACCESS MEMORY (DRAM) ANTITRUST LITIGATION | Master File No. M-02-1486 PJH<br><br>MDL No. 1486<br><br>**DECLARATION OF ROBIN NIEMIEC IN SUPPORT OF MOTION AUTHORIZING DISTRIBUTION OF SETTLEMENT FUND** |
| This Document Relates To:<br><br>All Direct Purchaser Actions | Time: October 28, 2009<br>Date: 9:00 a.m.<br>Judge: Hon. Phyllis J. Hamilton<br>Courtroom: 3, 3rd Floor |

DECLARATION OF ROBIN NIEMIEC IN SUPPORT OF MOTION AUTHORIZING
DISTRIBUTION OF SETTLEMENT FUND – Master File No. M-02-1486 PJH

I, Robin Niemiec, declare:

1. I submit this Declaration in order to provide the Court and the parties to the above-captioned litigation with information regarding the dissemination and processing of the Proof of Claim Form ("Claim Form") and allocation and distribution of the Net Settlement Fund (the "Fund") to the Settlement Class. I am over 21 years of age and am not a party to this action.

2. Pursuant to the Order Approving Joint Notice to Class Regarding Class Certification and Preliminary Approval of Class Action Settlements with Samsung, Infineon and Hynix Defendants dated July 27, 2006 ("Preliminary Approval Order"), Rust Consulting, Inc. ("Rust") was appointed the Class Administrator. Complete Claim Solutions, LLC ("CCS"), a sister company of Rust, has overseen, among other things, the process of providing notice about the Settlement and Claim Forms to potential Class Members, process, evaluate and audit completed Claim Forms submitted to CCS ("Claims"), calculate the *pro rata* share for each Class Member who filed a valid Claim ("Claimants"), and distribute the Fund to the Claimants.

3. I am a Project Manager for CCS and have personal knowledge of the facts set forth herein, and if called as a witness, could and would testify competently hereto.

### *Dissemination of the Claim Form*

4. Pursuant to the September 11, 2007 Order Approving Claim Form to be Provided to Class Members Regarding Distribution of Settlement Fund ("September 11 Order"), CCS caused the Claim Form to be e-mailed and/or printed and mailed to potential Class Members. A copy of the Claim Form is attached as Exhibit A.

5. As a result of the mailings of the Notice of Pendency of Class Action and Partial Class Action Settlements on August 25, 2006, February 23, 2007 and June 5, 2007 and during the normal course of administration of the Samsung, Infineon, Hynix, Elpida, NEC, Winbond, Micron, Mosel and Nanya Settlements, the mailing list[1] for the Claim Form changed as a result of the following:

    a. CCS electronically scrubbed the data to ensure adequate formatting and to remove duplicative name and address records;

    b. CCS submitted the names and physical addresses to the United States Postal Service ("USPS") National Change of Address Service ("NCOA") to ensure

---

[1] The mailing list and information regarding the potential Class Members and their Claims are kept in a segregated database ("DRAM Database").

DECLARATION OF ROBIN NIEMIEC IN SUPPORT OF MOTION AUTHORIZING DISTRIBUTION OF SETTLEMENT FUND – Master File No. M-02-1486 PJH      2

adequate physical address formatting, obtain current physical addresses and qualify for postal discounts;

c. CCS updated Claimants' addresses pursuant to their written requests;

d. CCS updated Claimants' addresses as a result of receiving forwarding addresses from the USPS or addresses found through a trace processing service;

e. CCS added Claimants and their addresses, per their request for previous Notices;

f. CCS removed Claimants' names from the mailing list, per their written request;

g. CCS removed Claimants' names from the mailing list due to a failure to obtain a deliverable address during the administration of the Samsung, Infineon, Hynix, Elpida, NEC, Winbond, Micron, Mosel and Nanya Settlements and failure to receive a deliverable address prior to the Claim Form mailing in the current action; and

h. CCS removed the Claimants' names from the mailing list that Requested Exclusion from the Settlement.

6. Between September 28, 2007 and October 2, 2007, pursuant to the September 11 Order, CCS mailed the Claim Form, by standard first-class U.S. mail, postage prepaid, to 642,384 entities and electronically mailed a notification that Claim Forms were available ("E-mail Notification") to 417,430 entities. A copy of the E-mail Notification is attached as Exhibit B.

7. Of the 417,430 E-mail Notifications referred to in ¶ 6 above, 20,224 e-mails were returned as undeliverable. The names and physical addresses were forwarded to NCOA to ensure adequate physical address formatting, obtain current physical addresses and qualify for postal discounts. Between October 22, 2007 and October 25, 2007, 20,224 Claim Forms were mailed by standard first-class U.S. mail, postage prepaid, to the physical addresses of those records that had undeliverable e-mails.

8. As of August 31, 2009, additional Claim Forms were mailed by standard first-class mail, postage prepaid, to 91 entities, at their request.

9. As of August 31, 2009, the USPS returned 1,774 Claim Forms as undeliverable with a forwarding address. CCS subsequently re-mailed 1,774 Claim Forms to the addresses provided by the USPS.

10. As of August 31, 2009, the USPS returned 25,420 Claim Forms as undeliverable without forwarding addresses.

11. CCS utilized the services of a trace processing service seeking updated addresses for potential Class Members whose Claim Forms were returned as undeliverable. As a result, as of August 31, 2009, CCS received 15,677 updated addresses. CCS subsequently re-mailed 15,677 Claim Forms to the updated addresses received from the trace processing service.

12. CCS has acted as a repository for inquiries and communications from potential Class Members. To this extent, CCS established a Post Office Box, and a toll-free number (866-483-9938) ("hotline") to respond to potential Claimants' inquiries.

13. When calling the hotline, the caller is able to listen to a pre-recorded message, answering many frequently asked questions and is then prompted to press a telephone keypad number to either contact a live "telephone representative" to answer additional questions. The caller may also remain on the line without pressing the keypad and will be transferred to a representative.

14. Between September 28, 2007 and August 31, 2009, approximately 3,939 callers called the hotline of which 2,796 requested to speak with a live telephone operator.

15. A website, created and maintained by CCS, was readily accessible to potential Class Members at www.dramantitrustsettlement.com. Available on the website, for reviewing and or downloading, are: the Settlement Agreements, First, Second and Amended Preliminary Approval Orders, the Notices, Summary Notices and Claim Form. The website include an e-mail address through which, 2,603 individuals have requested information or have supplied mailing information between September 28, 2007 and August 31, 2009. Between September 28, 2007 and August 31, 2009, the website has received approximately 115,632 unique visitors.

16. In addition, a potential Claimant could file their Claim Form on line at the website during the period September 28, 2007 through December 31, 2007.

17. All Requests for Exclusions were noted in the Declaration of Charlene Young, re: Mailing and Publication of Notice and Report on Request for Exclusions dated October 10, 2006 filed with the Court on October 16, 2006.

### *Claims Processing Activities*

18. A Claim Form was designed so that the consumers could easily fill out the information required. The first two pages of the Claim Form describes the reimbursement eligibility requirements, provides detailed instructions for filling out the Claim Form and key definitions of terms and lists contact information for the Class Administrator for additional questions from potential Class Members.

DECLARATION OF ROBIN NIEMIEC IN SUPPORT OF MOTION AUTHORIZING          4
DISTRIBUTION OF SETTLEMENT FUND – Master File No. M-02-1486 PJH

19. Potential Class Members also had the opportunity to file a Claim online. Claimants could use their Claimant ID # (provided on the Notice)[2] or file online without using a Claimant ID #.

20. Pursuant to the September 11, 2007 Order, potential Class Members had ninety (90) days to file a Claim Form. The Claim Form filing deadline was December 31, 2007.

21. Through June 30, 2009, CCS received and processed 19,821 Claim Forms from potential Class Members. Of the Claim Forms received, filed and processed, 3,387 paper Claim Forms and 16,434 online Claim Forms were filed.

22. The value of total Claims received was in excess of $6.8 billion.

23. For quality control purposes, each paper Claim Form was sequentially stamped upon receipt with a unique "Claim Number." The paper Claim Forms were grouped in batches of fifty (50), each Claim was grouped in the order in which it was processed by CCS' mailroom staff, and each batch of Claims was numbered sequentially.

24. The online Claim Form was also given a unique "Claim Number" at the time the Claim was filed online and the Claim information, as well as any contact information, supplied by the potential Class Member was entered directly into the DRAM database.

25. Between January 1, 2008 and February 29, 2008, CCS reviewed each submitted Claim Form that had been received by February 29, 2008 to determine whether it was valid and included all required information.

26. For the Claims received by February 29, 2008, CCS initially determined that certain Claim Forms were missing information, in whole or in part, that was required to confirm the validity of such Claim and necessary to calculate a Claimant's *pro rata* share.

27. Between October 1, 2007 and November 29, 2007, CCS received "purchase data" from Class Counsel.[3] CCS uploaded and entered this information into the DRAM database.

28. The purchase data identified, per the Defendants, the amounts of DRAM purchased by all individuals or entities during the Class Period.

29. Of the Claims received by February 29, 2008, CCS determined that:
    a.    19 Claim Forms were not signed; and
    b.    393 did not contain purchase information.

---

[2] If a Claimant used their Claimant ID#, the name and address was pre-populated with an opportunity to modify the address.
[3] This information was provided by Defendants counsel in the form of a disc or a paper list.

DECLARATION OF ROBIN NIEMIEC IN SUPPORT OF MOTION AUTHORIZING DISTRIBUTION OF SETTLEMENT FUND – Master File No. M-02-1486 PJH      5

30.     On March 3, 2008, a "Deficiency Letter" was sent to the potential Class Member filing the Claim Form advising them of the deficiency and requesting a correction of the defect. The Deficiency Letters advised Claimants that unless the indicated deficiency was corrected within thirty (30) days, his or her Claim Form would be denied. Examples of the letters sent for failure to sign the Claim Form and filing a Claim Form that did not contain purchase information are attached as Exhibits C and D, respectively.

31.     Of the 19 failure to sign deficiency letters mailed, referred to ¶¶ 29-30 above, 15 potential Class Members responded. For the 4 Claims that remained deficient for a failure to sign the Claim Form, the condition was waived and did not render the Claim ineligible.

32.     Following the mailing of the failure to sign deficiency letters, late Claims were processed. Of the late Claims, there was an additional five (5) Claims that were deficient for failure to sign the Claim Form. Following a review of these Claims, it was determined that this condition was waived and no deficiency letter was sent. These Claims are included in the distribution.

33.     Of the 393 deficiency letters mailed for a failure to provide any purchase information, referred to above, 53 claimants responded and provided purchase information. For the 340 Claims that remained deficient for a failure to provide purchase information, 303 Claims:

- Requested that we used Defendant purchase data (115 Claims);
- Remained blank but Defendant's purchase data submissions were researched and the purchase information located was used as the Claim Form amount (160 claims); or,
- The original Claim Form filed was illegible and a Claim Form amount was subsequently determined (28 claims).

These 303 Claims were eligible, using the Defendant Amount or the amount originally provided as the Claim Form total. No Defendant purchase data could be found for the remaining 37 Claims and they are rendered ineligible.

34.     Following the mailing of the failure to provide purchase information letters, 12 blank Claim Forms were filed. An additional 8 claims supplied "$0" or "$1" on their Claim Form, as opposed to leaving it blank. Defendant data was found for these 20 Claims and the Defendant data was used as the Claim Form amount.

35.     Therefore, a total of 37 Claims are ineligible as a result of a failure to provide purchase information on their Claim Form.

36.     Between January 1, 2008 and February 29, 2008, CCS reviewed each submitted Claim Form to date to determine if any Claim Form was duplicative of any other Claim Form.

37.     CCS identified 464 duplicate Claim Forms.

38.     On March 3, 2008, CCS mailed a "Notice of Ineligibility" to claimants whose Claims were determined to be ineligible because they were duplicative of previously filed Claims. Claimants were given the opportunity to dispute this determination and provide proof in support of their position. An example of the Notice of Ineligibility is attached as Exhibit E.

39.     Each of the 464 Claims was sent a Notice of Ineligibility because of duplicative records. 40 of the claimants provided proof that the Claims were not duplicative. The remaining 424 Claims are rendered ineligible and denied.

40.     Subsequent to the March 3, 2008 mailing, two (2) Claimants filed duplicate Claim Forms that were late. These claimants were called and/or emailed in regard to their duplicate status and it was confirmed by the Claimant that a duplicate Claim Form was filed. Letters were sent to the individuals/entities confirming this determination.

41.     A total of 426 Claims are rendered ineligible as a result of being a duplicate to another Claim filed by the Claimant.

42.     Thirteen (13) Claims were originally deemed ineligible as a result of information provided on their Claim Form or subsequent communications with the filing party. The information they provided advised that their purchases were not DRAM purchased from a named Defendant as required. The Defendant data was researched and Claim amounts were located for seven (7) of these 13. These potential Class Members were notified of their ineligibility (6) or adjusted claim amount (7) via telephone, email and follow-up correspondence.

### *The Audit Process*

43.     All Claims were subject to review and/or audit by the Class Administrator. After consultation with Co-Lead counsel, it was determined that all claims exceeding $1 million would be audited. These claims constituted 99.3% of all dollars submitted by Claimants. In addition, random claims between $10,000 and $1 million were selected for audit. In total, 589 claims were included in the audit process.

44.     For these 589 selected Claims, the purchase data provided by the Defendants was compared to the purchase amounts submitted by the potential Class Member on the Claim Form. If the Claim Form amount was greater than the purchase information provided by the Defendant companies, a "Notice of Claim Adjustment" letter was sent to the potential Class Member on

March 3, 2008. Of the 589 Claims selected for review, 521 were sent a Notice of Claim Adjustment letter. An example of the Notice of Claim Adjustment is attached as Exhibit F.

45. Of the 521 Claims that were sent a Notice of Claim Adjustment letter, the total value of the Claims was $6,169,617,180.

46. If the potential Class Member did not agree with the revised Claim amount, they were told to supply adequate documentation to support their Claim within thirty (30) days of the Notice of Claim Adjustment.

47. If a potential Class Member requested an extension of the deadline in which to supply documentation, the extension was granted.

48. CCS received supporting documentation as late as March, 2009.

49. Five (5) Deficiency Letters were returned by the United States Postal Service as undeliverable without a forwarding address. CCS contacted each of these individuals via telephone and/or email to advise them of the deficiency status.

50. Of the 521 Notices of Claim Adjustment Letter mailed, referred to above, 432 did not respond and their Claims were adjusted accordingly. 89 Claimants responded and supplied documentation.

51. 59 of the 432 failures to respond outlined above, were adjusted to "$0" since no response was provided. 13 of the 89 responses were adjusted to $0 as a result of failing to provide adequate documentation of DRAM purchases from a named Defendant. Therefore, these 72 Claims are deemed ineligible because they did not provide proof that they purchased DRAM during the Class Period from one of the named Defendants.

52. Documentation supplied by Claimants in response to the Notice of Adjustment, which totaled in excess of $1.1 billion, was comprised of thousands of pieces of documentation in the form of invoices, cancelled checks, purchase orders, spreadsheets, screen shots of computer images, packing slips, wire transfer confirmations and other such documentation.

53. CCS reviewed the documentation supplied by the Claimants to confirm:
- the amount of the purchase;
- the date of the purchase;
- the type of purchase (ensure it was DRAM as defined by the Notice)
- who it was purchased from; and
- that it was "purchased in the United States."

54. Between March 17, 2008 and August 31, 2009, CCS:
- exchanged in excess of 6,032 emails with Claimants; and

DECLARATION OF ROBIN NIEMIEC IN SUPPORT OF MOTION AUTHORIZING DISTRIBUTION OF SETTLEMENT FUND – Master File No. M-02-1486 PJH    8

- communicated via telephone in excess of 2,796 times with Claimants.

55. Of the documentation, some purchases, totaling in excess of $849 million, were deemed ineligible because they included:

- foreign purchases;
- purchases outside of the Class Period;
- purchases made from a company other than a Defendant company; or
- purchases that were not DRAM.

56. Seven (7) potential Class Members filed Claims and it was determined that they had previously settled with the Defendants for a portion or all of their Claim. Confirmation of Settlement, including the date of the Settlement Agreement and the person who signed the Settlement Agreement on behalf of the potential Class Member was obtained from Defendants' counsel and provided to the potential Class Member.[4]

57. Several Claimants provided proof that was inadequate and subsequently rejected. This included:

- Electronic data;
- Screen shots of internal software; and,
- Internal spreadsheets listing purchases with no supporting documentation.

58. Throughout the entire process of reviewing documentation, CCS was in contact with the respective potential Class Members to advise if additional documentation was needed, they provided documentation that rendered the Claim ineligible or if certain purchases were deemed outside the definition of the Class as defined by the Court.

59. Several conference calls occurred between Class Counsel, the Class Administrator and/or the potential Class Member to determine eligible and ineligible Claims, in whole or in part.

60. Between April 23, 2009 and August 31, 2009 "Final Claim Total Letters" were mailed to the 521 individuals and entities that received a Notice of Adjustment, regardless if they had responded to the initial Notice of Adjustment letter. An additional two (2) letters were mailed to late claims that were subject to an audit, for a total of 523 letters.

61. The Final Claim Total Letters advised entities and individuals the determined final value of their Claim Form. 490 entities or individuals received one of three letters

---

[4] Due to confidentiality clauses, CCS could not obtain any additional information to confirm the existence of a previous Settlement Agreement. However, once this information was supplied to the Claimant, the existence of the Settlement Agreement was acknowledged.

DECLARATION OF ROBIN NIEMIEC IN SUPPORT OF MOTION AUTHORIZING    9
DISTRIBUTION OF SETTLEMENT FUND – Master File No. M-02-1486 PJH

depending on whether they had failed to respond to the Final Claim Total Letter, responded and a decision was made in accordance with their documentation or responded and accepted the Final Claim Total Letter amount. Examples of the Final Claim Total Letters are attached as Exhibits G, H and I, respectively.

62. 33 Claimants received personalized letters if their Claim was being denied in whole or in part as a result of a variety of reasons. Examples of these Final Claim Total Letters are attached as Exhibit J.

63. 80 late Claims were filed and received as a response to an ineligibility letter, deficiency letter or as a response to notice of adjustment letter. The information provided in these 80 Claims was used to supplement the original Claims. Therefore, the 80 subsequent Claims were deemed duplicate to the original Claims and are rendered ineligible.

64. An additional 29 Claims were rendered ineligible because:

- during the course of the settlement, they asked that their Claim be withdrawn (2 Claims);
- test Claims performed by CCS to ensure that the online Claim filing process was working properly (8 Claims); and
- 19 Claims were deemed not intended to be Claims as a result of information provided on the Claim Form (e.g. asked that their name be removed from mailing list or advised that they did not want to participate in this action).

65. Of the 521 Final Claim Total Letters mailed, referred to in ¶ 60 above, 11 were returned as undeliverable without a forwarding address.

66. CCS utilized the services of a trace processing service seeking updated addresses for Claimants whose Final Claim Total letter was returned as undeliverable, referred to in ¶ 65 above. As a result, as of August 31, 2009, CCS received 6 updated addresses. CCS subsequently re-mailed 6 Final Claim Total letters to the updated addresses received from the trace processing service.

67. As of August 31, 2009, the USPS returned eight (8) Final Claim Total letters as undeliverable with a forwarding address. CCS subsequently re-mailed 8 Final Claim Total letters to the addresses provided by the USPS.

68. After the completion of audits, document review, communications (email, USPS and telephone) with potential Class Members and processing of late Claims, the total purchases by all eligible Claimants was $2,188,570,476.00, approximately $4.6 billion less than the original Claim Forms filed.

DECLARATION OF ROBIN NIEMIEC IN SUPPORT OF MOTION AUTHORIZING DISTRIBUTION OF SETTLEMENT FUND – Master File No. M-02-1486 PJH                    10

69. After the completion of audits, document review, communications (email, USPS and telephone) with potential Class Members and processing of late Claims, there are 650 Claims that are ineligible. They include:

- 37 Claims that provided no purchase information on their Claim Form and the Defendants did not have the potential Class Member as purchasing DRAM during the class (as outlined in ¶¶ 33-35 above);
- 426 duplicate Claims (as outlined in ¶¶ 36-41 above);
- 80 Claims filed as a response to a deficiency letter (as outlined in ¶ 63 above);
- 6 Claims outlined, on the Claim Form or through follow-up communications, that the purchases that were not DRAM, as defined by the Settlement Agreement (as outlined in ¶ 42 above);
- 2 Claims were subsequently withdrawn (as outlined in ¶ 64 above);
- 8 Claims that were test Claims by CCS (as outlined in ¶ 64 above);
- 19 Claims that were filed and not intended to be Claims (as outlined in ¶ 64 above); and,
- 72 Claims that had purchase information on the Claim Form but the Defendants had a purchase amount of $0 and the individual or entity could not provide proof to support their Claim submission (as outlined in ¶ 51 above).

Please see Ineligible Claims Report attached as Exhibit K.

70. The Claims filed by Mega Comm Technologies, which total $46,506,623.00, have been included in the distribution list for *pro rata* payment. This total amount includes Mega Comm's direct purchases from Micron in the amount of $40,985,267.00, which were ordered to be paid by Order of the Court dated August 31, 2009.

71. Pursuant to instructions from Co-Lead Counsel, the Claim submitted by Reptron Electronics, in the amount of $64,938,096.00 has been included in the distribution list for the purpose of determining the *pro rata* distribution.

72. After the completion of audits, document reviews, communications (email, USPS and telephone) with Claimants and processing of late Claims, there were 19,171 Claimants authorized for payment. Please see schedule of Claimants and their percentage of the Net Settlement Fund attached as Exhibit L.

### *Allocation of the Net Settlement Fund*

73. CCS prepared and provided to Class Counsel, a list of 19,171 Authorized Claimants for distribution of the Net Settlement Fund on a *pro rata* basis among Class Members based on the dollar amount each Class Member paid to Defendants for direct purchases of DRAM from the Defendants during the period April 1, 1999 through June 30, 2002 and whose Claims are determined by CCS to be eligible to receive a distribution from the Net Settlement Fund. The total purchases by all eligible Claimants was $2,188,570,476.00  Please see schedule of Claimants and their percentage of the Net Settlement Fund attached as Exhibit L. To protect the privacy of these Claimants, their names have been redacted.

74. Included in the Authorized Claimants are 377 Claimants whose Claims were postmarked later than December 31, 2007, (or which were otherwise received after December 31, 2007) but who would otherwise be eligible to receive a distribution from the Net Settlement Fund ("Late Claims").

75. Upon approval of this Court, CCS intends to mail Authorized Claimants their *pro rata* portion of the Net Settlement Fund.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and that this declaration was executed on this 15 day of September, 2009.

_____
Robin Niemiec