Guido Saveri (22349)
R. Alexander Saveri (173102)
Cadio Zirpoli (179108)
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA 94111
Telephone: (415) 217-6810
Facsimile: (415) 217-6813
guido@saveri.com
rick@saveri.com
cadio@saveri.com

Anthony D. Shapiro (*pro hac vice*)
George W. Sampson (*pro hac vice*)
Ronnie S. Spiegel
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 8th Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
tony@hbsslaw.com
george@hbsslaw.com
ronnie@hbsslaw.com

Fred Taylor Isquith
WOLF, HALDENSTEIN, ADLER,
    FREEMAN & HERZ
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
isquith@whafh.com

Attorneys for Plaintiff Alan Preis

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| IN RE DYNAMIC RANDOM ACCESS MEMORY (DRAM) ANTITRUST LITIGATION | Master File No. M-02-1486 PJH MDL No. 1486 |
| This Document Relates to: | **DIRECT PURCHASER PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CERTIFICATION OF A SETTLEMENT CLASS AND PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS WITH MITSUBISHI, HITACHI, AND TOSHIBA; MEMORANDUM IN SUPPORT THEREOF** |
| *Preis et al. v. Hitachi, Ltd., et al.,* Case No. CV 10-0346 PJH | |
| | Time:      9:00 a.m. Date:      May 5, 2010 Judge:    Hon. Phyllis J. Hamilton Courtroom: 3 |

## <u>TABLE OF CONTENTS</u>

I. INTRODUCTION ............................................................................................................. 2

II. FACTUAL AND PROCEDURAL BACKGROUND ................................................. 3

III. THE RELATED ACTION ........................................................................................... 5

IV. THE TERMS OF THE SETTLEMENTS .................................................................. 6

  A. The Mitsubishi Settlement. ....................................................................................... 6

  B. The Hitachi Settlement. ............................................................................................. 8

  C. The Toshiba Settlement. ............................................................................................ 9

V. THE SETTLEMENTS SHOULD BE PRELIMINARILY APPROVED ................ 11

VI. THE PROPOSED NOTICE TO CLASS MEMBERS IS ADEQUATE ................. 13

VII. THE COURT SHOULD PROVISIONALLY CERTIFY THE
MITSUBISHI AND HITACHI SETTLEMENT CLASSES .................................... 14

  A. The Requirements of Rule 23 in the Context of the Settlement Class .................... 15

  B. The Requirements of Rule 23(a) Are Satisfied In This Case. ................................. 16

    1. The Class Is So Numerous That Joinder of All Members Is Impracticable. ....... 16

    2. This Case Involves Questions of Law and Fact Common to the Class. .............. 17

    3. The Claims of the Representative Party are Typical of the Claims of the Class. ............... 18

    4. The Representative Plaintiff Will Fairly and Adequately
Protect the Interests of the Class ............................................................................ 19

  C. The Proposed Class Satisfies The Requirements Of Rule 23(B)(3) ....................... 20

    1. Common Questions of Law and Fact Predominate Over Individual Questions ............... 20

    2. A Class Action Is Superior to Other Available Methods for the Fair and Efficient
Adjudication of this Case. ....................................................................................... 22

  D. The Court Should Appoint the Plaintiff's Current Counsel as Counsel for the Class ............. 23

IV. CONCLUSION ............................................................................................................ 23

1

**TABLE OF AUTHORITIES**

**CASES**

*Amchem Products, Inc. v. Windsor,*
  521 U.S. 591 (1997) ........................................................................ 15, 20, 22

*Blackie v. Barrack,*
  524 F.2d 891 (9th Cir. 1975) ................................................................ 16, 17

*Carnegie v. Household International, Inc.,*
  376 F. 3d 656 (7th Cir. 2004) .................................................................... 16

*Cf. Farley v. Baird, Patrick & Co., Inc.*
  1992 WL 321632 (S.D.N.Y. 1992) ............................................................... 23

*Churchill Village, L.L.C. v. General Elec.,*
  361 F.3d 566 (9th Cir. 2004) ..................................................................... 11

*Eisen v. Carlisle and Jacquelin,*
  417 U.S. 156 (1974) ................................................................................. 16

*Estate of Jim Garrison v. Warner Bros., Inc.,*
  1996 WL 407849 (C.D. Cal. June 25, 2006) ............................................. 18, 21

*Fisher Bros. v. Mueller Brass Co.,*
  630 F.Supp. 493 (E.D. Pa. 1985) ................................................................ 12

*Fisher Bros. v. Phelps Dodge Industries, Inc.,*
  604 F.Supp. 446 (E.D. Pa. 1985) ................................................................ 12

*Gabriella v. Wells Fargo Fin., Inc.,*
  2008 U.S. Dist. LEXIS 63118 (N.D. Cal. Aug. 4, 2008) .................................. 16

*Hanlon v. Chrysler Corp.,*
  150 F.3d 1011 (9th Cir. 1988) .............................................................. passim

*Harrington v. City of Albuquerque,*
  222 F.R.D. 505 (D.N.M. 2004) ................................................................... 23

*In re Cardizem CD Antitrust Litigation,*
  200 F.R.D. 326 (E.D. Mich. 2001) .............................................................. 21

*In re Cement and Concrete Antitrust Litigation,*
  1979 WL 1595 (D. Ariz. March 9, 1979) ...................................................... 21

*In re Chlorine & Caustic Soda Antitrust Litig.,*
  116 F.R.D. 622 (E.D. Pa. 1987) ................................................................. 19

*In re Citric Acid Antitrust Litig.,*
  1996 WL 655791 (N.D. Cal. 1996) ................................................. 15, 19, 20, 21

*In re Corrugated Container Antitrust Litigation,*
  643 F.2d 195 (5th Cir. 1981) ..................................................................... 14

*In re Flat Glass Antitrust Litig.*,
  191 F.R.D. 472 (W.D. Pa. 1999) ................................................................ 17, 18

*In re Initial Public Offering Securities Litigation*,
  226 F.R.D. 186 (S.D.N.Y. 2005) ..................................................................... 16

*In re Linerboard Antitrust Litigation*,
  321 F.Supp. 2d 619 (E. D. Pa. 2004) .............................................................. 12

*In re Lorazepam & Clorazeopate Antitrust Litigation*,
  202 F.R.D. 12 (D.D.C. 2001) ......................................................................... 20

*In re Methionine Antitrust Litig.*,
  Master File No. C-99-3491-CRB (N.D. Cal. Dec. 21, 2000) ........................... 15

*In re NASDAQ Market-Makers Antitrust Litigation*,
  169 F.R.D. 493 (S.D.N.Y. 1996) ..................................................................... 21

*In re Plastic Tableware Antitrust Litig.*,
  1995 WL 723175 (E.D. Pa. October 25, 1995) ............................................... 12

*In re Potash Antitrust Litigation*,
  159 F.R.D. 682 (D. Minn. 1995) ..................................................................... 21

*In re Relafen Antitrust Litig.*,
  231 F.R.D. 52 (D. Mass. 2005) ....................................................................... 16

*In re Rubber Chemicals Antitrust Litigation*,
  232 F.R.D. 346 (N.D. Cal. 2005) ............................................................. passim

*In re Shopping Carts Antitrust Litig.*,
  1983 WL 1950 (S.D.N.Y. Nov. 18, 1983) ....................................................... 12

*In re Sorbates Direct Purchaser Antitrust Litig.*,
  Case No. C 98-4886 MMC (N.D. Cal. Mar. 11, 2002) .................................... 15

*In re Sugar Industry Antitrust Litig.*,
  1976 WL 1374 (N.D. Cal. 1976) ........................................................... 16, 20, 21

*In re Tableware Antitrust Litigation*,
  484 F.Supp.2d 1078 (N.D. Cal 2007) ........................................................ 2, 11

*In re Vitamins Antitrust Litig.*,
  2001 WL 856292 (D.D.C. July 25, 2001) ........................................................ 11

*In Re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004) ........................................................................... 20

*In Re: Sodium Gluconate Antitrust Litig.*,
  Master File No. C 97-4142 CW (N.D. Cal. Sept. 24, 1998) ............................ 15

*Lerwill v. Inflight Motion Pictures, Inc.*,
  582 F.2d 507 (9th Cir. 1978) .................................................................... 19, 22

*Local Joint Executive Board of Culinary/Bartender Trust Fund v. Las Vegas*,
  244 F.3d 1152 (9th Cir. 2001) .................................................................. 20, 22

*Mularkey v. Holsum Bakery, Inc.,*
  120 F.R.D. 118 (D. Ariz. 1988)..................................................................... 21

*Northwestern Fruit Co. v. A. Levy & J. Zentner Co.,*
  116 F.R.D. 384 (C.D. Cal. 1986)................................................................... 23

*Officers for Justice v. Civil Service Com'n,*
  688 F.2d 615 (9th Cir. 1982)........................................................................ 12

*Oregon Laborers-Employers Health & Welfare Trust Fund v. Philip Morris, Inc.,*
  188 F.R.D. 365 (D. Ore. 1998)......................................................... 17, 18, 20

*Rutter & Wilbanks Corp. v. Shell Oil Co.,*
  314 F.3d 1180 (10th Cir. 2002)..................................................................... 12

*Tchoboian v. Parking Concepts,*
  2009 U.S. Dist. LEXIS 62122 (N.D. Cal. July 16, 2009) ............................. 16

*Van Bronkhorst v. Safeco Corp.,*
  529 F.2d 943 (9th Cir. 1976)........................................................................ 11

*Vasquez v. Coast Valley Roofing, Inc.,*
  670 F.Supp.2d 1114 (E.D. Cal. 2009)..................................................... 2, 11

*Wellman v. Dickinson,*
  497 F.Supp. 824 (S.D.N.Y. 1980).............................................................. 11

*Wilkerson v. Martin Marietta Corp.,*
  171 F.R.D. 273, 288-89 (D.Colo. 1997)...................................................... 12

**RULES**

Federal Rule of Civil Procedure 23 ..................................................... passim

**TREATISES**

5 *Moore's Federal Practice* (3d ed. 2003)...................................................... 13

Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* (4th ed. 2002) ...................... 12, 17

*Manual for Complex Litigation* (Fourth)..................................................... 2, 11

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on May 5, 2010, at 9:00 a.m., or as soon thereafter as counsel can be heard, before the Honorable Phyllis J. Hamilton, United States District Judge, at the United States District Courthouse, 1301 Clay Street, Courtroom 3, 3rd Floor, Oakland, California, 94612, Plaintiff Alan Preis ("Plaintiff") will move this Court for an Order: (i) granting preliminary approval of settlement agreements plaintiff has executed with defendants (1) Mitsubishi Electric Corporation and Mitsubishi Electric and Electronics USA, Inc. (collectively, "Mitsubishi"), (2) Hitachi, Ltd. ("Hitachi"), and (3) Toshiba America Electronic Components, Inc. and Toshiba Corporation (collectively, "Toshiba"); (ii) certifying Settlement classes for the Mitsubishi and Hitachi settlements, (iii) approving the manner and form of giving notice of the settlement agreements to class members; and (iv) establishing a timetable for publishing the class notice and a proposed Claim Form, lodging objections to the terms of the settlement agreements, if any, to the plan of allocation, to counsels' request for attorneys' fees, costs, and administrative costs, and holding a hearing regarding final approval of the settlement agreements.

This motion is based upon this Notice of Motion and Motion, the following Memorandum of Law, the Declaration of Guido Saveri ("Saveri Declaration") and the Proposed Order Preliminarily Approving Class Action Settlements with Mitsubishi, Hitachi, and Toshiba, the complete files and records in this action and the *DRAM* action, and such other written or oral arguments that may be presented to the Court.

The settlement agreements with Mitsubishi, Hitachi and Toshiba are attached as Exhibits A, B, and C, respectively, to the Saveri Declaration. The Long Form Notice and attached claim Form and General Instructions are attached to the Saveri Declaration as Exhibit D. The Short Form Notice (*Wall Street Journal*) is attached as Exhibit E to the Saveri Declaration.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

Plaintiff has entered into separate settlement agreements ("Settlement(s)") with defendants Mitsubishi Electric Corporation and Mitsubishi Electric and Electronics USA, Inc. ("Mitsubishi"), Hitachi, Ltd. ("Hitachi"), and Toshiba America Electronic Components, Inc. and Toshiba Corporation ("Toshiba") (collectively, "Settling Defendants"). Mitsubishi has agreed to pay $7,100,000 plus (1) a maximum of $400,000 for notice and administration costs, and (2) five percent of Mitsubishi's DRAM sales during the Class Period in excess of $142,000,000 to Class Members who remain in the Class following the deadline to opt out and who have not otherwise settled with Mitsubishi (Ex. A, Mitsubishi Settlement ¶¶ 6, 16, 19.) Hitachi has agreed to pay up to $11,500,000. (Ex. B, Hitachi Settlement ¶¶ 6, 16.) Toshiba has agreed to pay $9,250,000 plus a maximum of $400,000 for notice and administration costs. (Ex. C., Toshiba Settlement ¶¶ 6, 16.) These sums amount to approximately 5% for Toshiba, approximately 9 % for Hitachi subject to an opt out reduction, and approximately 5% for Mitsubishi, respectively, of Settling Defendants' sales of DRAM[1] to class members which remain in the case. The Settlements were achieved only after extensive arms-length negotiations and represent outstanding recoveries for the class. The Settlement Agreements release all named defendants from plaintiff's claims and, therefore, there are no non-settling defendants.

Through this motion, plaintiff seeks preliminary approval of each Settlement. The Court should grant preliminary approval of each Settlement because the Settlements easily satisfy the standard for preliminary approval – that is, they are within the range of possible approval to justify sending and publishing notice of the Settlements to class members and scheduling final approval proceedings. *See In re Tableware Antitrust Litigation*, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007); *Vasquez v. Coast Valley Roofing, Inc.*, 670 F.Supp.2d 1114, 1125 (E.D. Cal. 2009); *Manual for Complex Litigation* (Fourth) § 13.14 at 173 ("First, the judge reviews the proposal preliminarily

---

[1] "DRAM" means dynamic random access memory components, including without limitation, synchronous dynamic random access memory ("SDRAM"), Rambus dynamic random access memory ("RDRAM"), asynchronous dynamic random access memory ("ASYNC"), FPM DRAM, EDO DRAM, BEDO DRAM, and double data rate semiconductor devices and modules ("DDR").

to determine whether it is sufficient to warrant public notice and a hearing.  If so, the final decision on approval is made after the hearing.").  Accordingly, plaintiff seeks an order: (i) granting preliminary approval of each Settlement; (ii) certifying settlement classes, (iii) approving the manner and forms of giving notice to the Class and a proposed Claim Form; and (iv) establishing the following timetable for consummation of the Settlements.

If preliminary approval is granted, the proposed settlement class members will be notified of the terms of the Settlements and informed of their rights in connection therewith, including their right to appear and be heard at the final approval hearing.  The following is a proposed schedule:

| Date | Event |
| --- | --- |
| 21 Days[2] | Mailed notice sent to class members; |
| 25 Days | Summary notice published in Wall Street Journal; |
| 66 Days | Deadlines re opting out of the Mitsubishi and Hitachi class, objecting to the Settlements, plan of allocation, or to plaintiffs request for attorneys' fees, costs and administrative costs; |
| 80 Days | Deadline for filing list of any opt-outs with Court; |
| 96 Days | Deadline for filing briefing in support of Settlements, and request for attorneys' fees, costs and administrative costs; |
| 131 Days | Hearing on final approval of Settlements, Objections and plaintiffs request for attorneys' fees, costs and administrative costs. |

## II.    FACTUAL AND PROCEDURAL BACKGROUND

On January 25, 2010, Plaintiff filed a complaint on behalf of himself and all others similarly situated (the "Complaint"), which alleges an over-arching horizontal conspiracy among Settling Defendants and their co-conspirators[3] to fix prices for DRAM and to allocate markets and

---

[2] "___ Days" refers to the number of days after the Court enters the [Proposed] Order Granting Class Certification And Preliminary Approval Of Class Action Settlements With Mitsubishi, Hitachi, And Toshiba.
[3] The co-conspirators are Micron Technology, Inc. its wholly-owned subsidiary Micron Semiconductor Products, Inc. and Crucial Technology, Inc. a division (collectively "Micron"); Infineon Technologies AG and its wholly-owned subsidiary Infineon Technologies North America Corp.; Hynix Semiconductor, Inc. and its wholly-owned subsidiary Hynix Semiconductor America,

customers for the sale of DRAM in the United States from April 1, 1999 through June 30, 2002 (the "Class Period"). The Complaint alleges that Plaintiff and members of the Class are direct purchasers of DRAM from defendants and/or their subsidiaries and were injured because they paid more for DRAM than they would have absent defendants' illegal conspiracy. (Compl. ¶¶ 2, 60, 68-72, 78) Plaintiffs seek, among other things, treble damages pursuant to Sections 4 of the Clayton Act, 15 U.S.C. §§ 15 and 22. (Compl., Prayer for Relief, ¶¶ C, D.)

Settling Defendants are domestic and foreign entities that manufactured, marketed, and/or sold DRAM in the United States during the class period. (Compl. ¶¶ 8-15.) Each of the Co-Conspirators named in this action were named defendants in a related action in this District Court, captioned *In Re Dynamic Random Access Memory (DRAM)*, Master File No. M:02-cv-01486-PJH (the "Related Action" or "*DRAM*"). On June 15, 2006, Plaintiff entered into separate agreements with each of the Settling Defendants that tolled the statute of limitations with regard to any claims arising from or relating to *DRAM*.

Subsequently, Plaintiff obtained, reviewed, analyzed and coded discovery from Hitachi and Mitsubishi. Additionally, Plaintiff reviewed the material produced by previous settling defendants in the Related Action for evidence of Toshiba, Hitachi and Mitsubishi's involvement in the conspiracy. Counsel obtained waivers from the previous settling defendants pursuant to the terms of Protective Order in the Related Action to allow them to share relevant discovery with Toshiba, Hitachi and Mitsubishi. After reviewing the document production described above, as well as thoroughly considering the applicable law, Class counsel began settlement negotiations with Mitsubishi as early as November 2007. (Saveri Decl. ¶8.) The negotiations were vigorous and non-collusive. After numerous face to face meetings and many telephone conferences and other communications, the Mitsubishi Settlement was concluded in October 2008. (Saveri Decl. ¶8.)

---

Inc.; Samsung Electronics Co., Ltd. and its wholly-owned subsidiary Samsung Semiconductor, Inc.; Mosel-Vitelic Corporation and its wholly-owned subsidiary Mosel-Vitelic Corporation (USA); Nanya Technology Corporation USA, Nanya Taiwan; Winbond Electronics Corporation and its wholly-owned subsidiary Winbond Electronics Corporation America; Elpida Memory, Inc. and its wholly-owned subsidiary Elpida Memory (USA) Inc.; and NEC Electronics America, Inc. (collectively, "Co-Conspirators"). (Compl. ¶¶ 16-42.)

1    Negotiations with Hitachi were similarly protracted and difficult.  The first settlement

2    meeting occurred as early as May 2007.  (Saveri Decl. ¶6.)  Again, after numerous face to face

3    meetings and many telephone conversations, the Hitachi Settlement was concluded in June 2008.

4    (Saveri Decl. ¶6.)

5    Finally, the negotiations with Toshiba were also protracted and difficult.  The first

6    settlement meeting occurred as early as May 2007.  (Saveri Decl. ¶10.)  Again, after numerous face

7    to face meetings and many telephone conversations, the Toshiba Settlement was concluded on

8    December 2009.  (Saveri Decl. ¶10.)

9    Despite the Settlements, Settling Defendants maintain that they have meritorious defenses

10   to Plaintiff's claims.

11   **III.      THE RELATED ACTION**

12   In the Related Action, initial complaints were filed on or around June 21, 2002 in District

13   Courts across the country.  These cases were consolidated and transferred to the Northern District

14   of California by the Judicial Panel on Multidistrict Litigation.  The plaintiffs filed a Third

15   Consolidated Amended Complaint (the operative complaint) on June 30, 2005, which alleged a

16   horizontal conspiracy among the Co-Conspirators to fix prices for DRAM and to allocate markets

17   and customers for the sale of DRAM in the United States from April 1, 1999 through June 30,

18   2002.  The plaintiffs also alleged that they were injured because they paid more for DRAM than

19   they would have absent defendants' illegal conspiracy.  (Third Amended Complaint ("TAC") ¶65.)

20   On June 5, 2006, the Court certified the following litigated class:

21       All individuals and entities who, during the period beginning April 1, 1999 and
         continuing through June 30, 2002, purchased DRAM in the United States directly
22       from defendants or their subsidiaries.  Excluded from the class are defendants and
         their parents, subsidiaries, affiliates, all governmental entities, and co-
23       conspirators.

24   (Order Granting Motion for Class Certification, at p. 4 (June 5, 2006) (Hamilton, J.)("Class

25   Certification Order").)

26   After extensive discovery and numerous pre-trial motions, the class plaintiffs entered into

27   settlement agreements with each of the named defendants.

28

After notice to the class and a final settlement hearing, the Court granted final approval of all settlements reached and entered judgment dismissing each named defendant with prejudice. On October 28, 2009, the Court authorized distribution of the Settlement Funds. (Order Granting Direct Purchaser Plaintiffs' Motion for an Order Authorizing Distribution of the Settlement Fund (Oct. 28, 2009) (Hamilton, J.).)

## IV.   THE TERMS OF THE SETTLEMENTS

As explained in detail below, each Settlement provides for a release of class members' claims in exchange for a substantial cash payment. The Mitsubishi and Hitachi settlements request certification of a settlement class of direct purchasers of DRAM from defendants and their co-conspirators who will receive cash payments based on their valid submitted claims. The Toshiba Settlement Agreement provides for settlement of direct purchases from Toshiba, Hitachi and Mitsubishi that remained in the class previously certified in the Related Action.

### A.   The Mitsubishi Settlement.

In exchange for dismissal with prejudice and a release of all claims asserted in the Complaint, Mitsubishi has agreed to pay $7,100,000 plus (1) a maximum of $400,000 for notice and administration costs, and (2) five percent of Mitsubishi's DRAM sales during the Class Period in excess of $142,000,000 to Class Members who remain in the Class following the deadline to opt out and who have not otherwise settled with Mitsubishi (Ex. A, Mitsubishi Settlement ¶¶ 6, 16, 19.) Mitsubishi has agreed to pay $7,500,000 thirty five (35) business days from the date the motion for preliminary approval is filed.

The Mitsubishi class consists of:

> All individuals and entities who, at any time during the period beginning April 1, 1999 and continuing through June 30, 2002 (the "Class Period") purchased DRAM in the United States directly from Mitsubishi or any of its alleged co-conspirators, Elpida Memory, Inc., Elpida Memory (USA) Inc., Hynix Semiconductor, Inc., Hynix Semiconductor America, Inc., Infineon Technologies AG, Mosel-Vitelic, Inc., Mosel Vitelic Corp., NEC Electronics America, Inc., Nanya Technology Corporation USA, Samsung Electronics Company, Ltd., Infineon Technologies North America Corp., Micron Technology, Inc., Micron Semiconductor Products, Inc. through its Crucial Technology division, Samsung Semiconductor, Inc., Winbond Electronics Corporation, Winbond Electronics Corporation America, Hitachi Ltd.; Toshiba America Electronic Components, Inc., Toshiba

1
2
3

> Corporation and each of their parents, subsidiaries or affiliates. The definitions of Class and Class Period herein do not limit the scope of the Release provided in paragraphs 13-15 of this [Settlement] Agreement. Excluded from the Class are Mitsubishi and its alleged co-conspirators, their parents, subsidiaries, affiliates, and all governmental entities.

4
5
6
7
8
9
10
11
12

(Mitsubishi Settlement ¶ 1.) Upon the Settlement becoming final, Plaintiff and Class members will relinquish any claims they have against Mitsubishi based, in whole or in part, on matters alleged or that might have been alleged in this litigation. (Mitsubishi Settlement ¶¶13-15.) The release, however, excludes claims for product liability or breach of contract, indirect purchaser claims, or claims based on purchases of DRAM outside the United States. (Mitsubishi Settlement ¶15.) The Settlement becomes final upon: (i) the Court's approval of the Settlement pursuant to Rule 23(e) and the entry of a final judgment of dismissal with prejudice as to Mitsubishi; and (ii) the expiration of the time for appeal or, if an appeal is taken, the affirmance of the judgment with no further possibility of appeal. (Mitsubishi Settlement ¶11.)

13
14
15
16
17
18
19
20

The Settlement requires Mitsubishi to provide Plaintiff's Co-Lead Counsel with a list of Class Members with whom Mitsubishi has not settled, and the total amount of DRAM purchases that each listed Class Member made from Mitsubishi in the United States during the Class Period. (Mitsubishi Settlement ¶18.) In addition, Mitsubishi will provide Co-Lead Counsel for Plaintiff with a list of potential Class Members with whom Mitsubishi settled and the amount of purchases made by each potential Class Member during the class period. (Mitsubishi Settlement ¶20.) Co-Lead Counsel shall provide requests for exclusion to Mitsubishi as they are received. (Mitsubishi Settlement ¶22.)

21
22
23
24
25
26
27

Subject to the approval and direction of the Court, the Settlement payment, plus accrued interest thereon, will be used to: (i) make a distribution to Class members in accordance with a proposed plan of allocation to be approved by the Court at final approval based on the total dollar value of each Class members' DRAM purchases from defendants proportionate to the total claims filed; (ii) pay Class Counsel's attorneys' fees, costs, and expenses as may be awarded by the Court; and (iii) pay future costs incurred in the administration and distribution of the Settlement payments, including the payment of taxes on any interest earned. (Mitsubishi Settlement ¶¶ 25-27.)

28

**B.    The Hitachi Settlement.**

Hitachi has agreed to pay $11,500,000 to the Class in return for a dismissal with prejudice and release of itself and, *inter alia*, all of its respective past and present, direct and indirect, parents, subsidiaries, and affiliates. (Hitachi Settlement, ¶¶ 6,16.)  The Hitachi Settlement also authorizes the use of $500,000 of the settlement fund for notice and administrative costs. (Hitachi Settlement ¶19.)  Hitachi agrees to pay $5,750,000 fifteen (15) business days from the date the motion for preliminary approval is filed and the remaining $5,750,000 fifteen (15) business days from the date preliminary approval is granted. (Hitachi Settlement ¶16.)

The Hitachi class consists of:

> All individuals and entities who, at any time during the period beginning April 1, 1999 and continuing through June 30, 2002 (the "Class Period"), purchased DRAM in the United States directly from Hitachi or its alleged co-conspirators Elpida Memory, Inc., Elpida Memory (USA) Inc., Hynix Semiconductor, Inc., Hynix Semiconductor America, Inc., Infineon Technologies AG, Mosel-Vitelic, Inc., Mosel Vitelic Corp., NEC Electronics America, Inc., Nanya Technology Corporation USA, Samsung Electronics Company, Ltd., Infineon Technologies North America Corp., Micron Technology, Inc., Micron Semiconductor Products, Inc. through its Crucial Technology division, Samsung Semiconductor, Inc., Winbond Electronics Corporation, Winbond Electronics Corporation America, Mitsubishi Electric Corporation and  Mitsubishi Electric and Electronics USA, Inc.; Toshiba America Electronic Components, Inc., Toshiba Corporation and their parents, subsidiaries or affiliates.  The definitions of Class and Class Period herein do not limit the scope of the Release provided in paragraphs 13-15 of this [Settlement] Agreement.  Excluded from the class are Hitachi and its alleged co-conspirators, their parents, subsidiaries, affiliates, and all governmental entities.

(Hitachi Settlement ¶¶ 1,9,10.)  Like the Mitsubishi Settlement, Plaintiff and Class members will relinquish any claims they have against Hitachi based, in whole or in part, on matters alleged or that might have been alleged in this litigation, excluding claims for product liability or breach of contract, or indirect purchaser claims, or claims based on purchases of DRAM outside the United States. (Hitachi Settlement ¶¶13-15.)  The Settlement becomes final upon: (i) the Court's approval of the Settlement pursuant to Rule 23(e) and the entry of a final judgment of dismissal with prejudice as to Hitachi and related companies; and (ii) the expiration of the time for appeal or, if an appeal is taken, the affirmance of the judgment with no further possibility of appeal. (Hitachi Settlement ¶11.)

Hitachi has provided Co-Lead Counsel with the names and addresses of putative class members that are in its possession. (Hitachi Settlement ¶9.) Subject to the approval and direction of the Court, the Settlement payment, plus accrued interest thereon, will be used to: (i) make a distribution to Class members in accordance with a proposed plan of allocation to be approved by the Court at final approval based on the total dollar value of each Class members' DRAM purchases from the defendants proportionate to the total claims filed; (ii) pay Class Counsel's attorneys' fees, costs, and expenses as may be awarded by the Court; and (iii) pay future costs incurred in the administration and distribution of the settlement payments, including the payment of taxes on any interest earned. (Hitachi Settlement ¶¶ 20-22.)

Finally, the Hitachi Settlement requires Plaintiff to provide requests for exclusion from the Class to Hitachi as they are received. (Hitachi Settlement ¶18.) If Hitachi determines that valid and timely requests for exclusion have been made by Class Members representing, in total, between 25 percent and 50 percent of remaining sales, the settlement fund shall be reduced by the percentage of those exclusions. (Hitachi Settlement ¶18.) If Class Members representing more than 50 percent of remaining sales exclude themselves, Hitachi can terminate the Agreement, but cannot reduce the settlement amount by more than 50 percent. (Hitachi Settlement ¶18.)

C.      **The Toshiba Settlement.**

Toshiba has agreed to pay $9,250,000 to the Class in return for a dismissal with prejudice and release of itself and, *inter alia*, all of its respective past and present, direct and indirect, parents, subsidiaries, and affiliates. (Toshiba Settlement ¶¶ 6,16.) In addition, Toshiba has agreed to pay a maximum of $400,000 to be used for notice and administration costs. (Toshiba Settlement ¶6.) Toshiba agrees to pay $9,650,000 thirty (30) business days from the date a motion for preliminary approval is filed. (Toshiba Settlement ¶¶16, 18.)

The Toshiba class consists of:

> All individuals and entities who, at any time during the period beginning April 1, 1999 and continuing through June 30, 2002 (the "Class Period"), purchased DRAM in the United States directly from the Defendants (including their parents, subsidiaries and affiliates), or any of their alleged co-conspirators Elpida Memory, Inc., Elpida Memory (USA) Inc., Hynix Semiconductor, Inc., Hynix Semiconductor America, Inc., Infineon Technologies AG, Mosel-Vitelic, Inc., Mosel Vitelic Corp., NEC

Electronics America, Inc., Nanya Technology Corporation USA, Samsung Electronics Company, Ltd., Infineon Technologies North America Corp., Micron Technology, Inc., Micron Semiconductor Products, Inc. through its Crucial Technology division, Samsung Semiconductor, Inc., Winbond Electronics Corporation, Winbond Electronics Corporation America, Mitsubishi Electric Corporation, Mitsubishi Electric and Electronics U.S.A., Inc., Hitachi Ltd., and each of their parents, subsidiaries or affiliates, and who did not by October 3, 2006, request exclusion from the class certified in the Court's June 5, 2006 Order, settle or release their claims, and/or whose claims are not otherwise precluded.  Excluded from the Class are Defendants and their parents, subsidiaries, affiliates, all governmental entities, and alleged co-conspirators.  The definitions of Class and Class Period herein do not limit the scope of the Release provided in paragraphs 13-15 of this [Settlement] Agreement.

(Toshiba Settlement ¶¶ 1,9,10.)  Like the Mitsubishi and Hitachi settlements, Plaintiff and Class members will relinquish any claims they have against Toshiba based, in whole or in part, on matters alleged or that might have been alleged in this litigation, excluding claims for product liability or breach of contract, indirect purchaser claims, or claims based on purchases of DRAM outside the United States. (Toshiba Settlement ¶¶13-15.)  Additionally, the Toshiba Settlement is based on the litigated class that was previously certified in the Related Action and who did not previously request exclusion from that class, settle or release their claims, and/or whose claims are not otherwise precluded.  The Toshiba Settlement becomes final upon: (i) the Court's approval of the Settlement pursuant to Rule 23(e) and the entry of a final judgment of dismissal with prejudice as to Toshiba and related companies; and (ii) the expiration of the time for appeal or, if an appeal is taken, the affirmance of the judgment with no further possibility of appeal. (Toshiba Settlement ¶11.)

Toshiba has provided Class Counsel with the names and addresses of putative class members that are in its possession.  (Toshiba Settlement ¶9.)  Subject to the approval and direction of the Court, the Settlement payment, plus accrued interest thereon, will be used to: (i) make a distribution to Class members in accordance with a proposed plan of allocation to be approved by the Court at final approval based on the dollar value of each Class members' DRAM purchases proportionate to the total claims filed; (ii) pay Class Counsel's attorneys' fees, costs, and expenses as may be awarded by the Court; and (iii) pay future costs incurred in the administration and

distribution of the settlement payments, including the payment of taxes on any interest earned. (Toshiba Settlement ¶¶ 20-22.)

## V.  THE SETTLEMENTS SHOULD BE PRELIMINARILY APPROVED

The approval of class action settlements required by Federal Rule of Civil Procedure 23(e) is a two-step process. Preliminary approval requires only that the terms of the proposed settlement fall within the "range of possible approval." *See In re Tableware Antitrust Litigation*, 484 F.Supp.2d at 1079; *Vasquez*, 670 F.Supp.2d at 1125. It amounts to a determination that the terms of the proposed settlement warrant consideration by members of the class and a full examination at a final approval hearing. *Manual for Complex Litigation* (Fourth) § 13.14 at 173. After notice to the class, preliminary approval is followed by a review of the fairness of the settlement at final approval, and, if appropriate, a finding that it is "fair, reasonable and adequate." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1027 (9th Cir. 1988). Because it is provisional, courts grant preliminary approval where the proposed settlement lacks "obvious deficiencies" raising doubts about the fairness of the settlement. *See, e.g., In re Vitamins Antitrust Litig.,* 2001 WL 856292, at *4 (D.D.C. July 25, 2001) (quoting *Manual for Complex Litigation* (Third) §30.41).

It is well-recognized that "[v]oluntary out of court settlement of disputes is 'highly favored in the law' and approval of class action settlements will be generally left to the sound discretion of the trial judge." *Wellman v. Dickinson,* 497 F.Supp. 824, 830 (S.D.N.Y. 1980) (citation omitted).

> It hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits which are now an ever increasing burden to so many federal courts and which frequently present serious problems of management and expense.

*Van Bronkhorst v. Safeco Corp.,* 529 F.2d 943, 950 (9th Cir. 1976); *see also Churchill Village, L.L.C. v. General Elec.,* 361 F.3d 566, 576 (9th Cir. 2004).

The Settlements before the Court amply meet the requirements for preliminary approval. First, the consideration for each Settlement is substantial. The Mitsubishi Settlement provides for a cash payment of approximately 5% of its remaining sales to class members during the Class Period. (Saveri Decl. ¶7.) The payment required by the Hitachi Settlement is approximately 9% of remaining sales to class members during the Class Period subject to an opt out reduction. (Saveri

Decl. ¶9.) The Toshiba Settlement provides for a cash payment approximately 5% of its remaining sales to class members during the Class Period. (Saveri Decl. ¶11.) The Settlements therefore compare favorably to settlements finally approved in the *DRAM* litigation and other price-fixing cases. *See, e.g., In re Plastic Tableware Antitrust Litig.,* 1995 WL 723175, at *1 (E.D. Pa. October 25, 1995) (3.5% of sales); *In re Linerboard Antitrust Litigation,* 321 F.Supp. 2d 619, 627 (E. D. Pa. 2004) (1.62% of sales); *In re Shopping Carts Antitrust Litig.,* 1983 WL 1950, at *9 (S.D.N.Y. Nov. 18, 1983) (3% of sales); *Fisher Bros. v. Phelps Dodge Industries, Inc.,* 604 F.Supp. 446, 451 (E.D. Pa. 1985) (3% of sales); *Fisher Bros. v. Mueller Brass Co.,* 630 F.Supp. 493, 499 (E.D. Pa. 1985) (recoveries equal to .1%, .2%, 2%, .3%, .65%, .88%, and 2.4% of defendants' total sales).

In *Rubber Chemicals,* a horizontal price fixing case in which some of the defendants had entered guilty pleas in related criminal proceedings, Judge Jenkins, in the course of granting final approval, recently characterized a settlement payment of 4% of a defendant's sales as "an excellent recovery."

The Settlements were the product of intense and thorough arms-length negotiations by experienced and informed counsel. Each of the negotiations occurred over a span of many months and involved telephonic and face to face meetings. They were contested and conducted in the utmost good faith. Class counsel negotiated the Settlements based on their review and analysis of millions of pages of Settling Defendants' and their co-conspirators' documents, their own investigations, and the analysis of expert reports. Counsel's judgment that the Settlements are fair and reasonable is entitled to great weight. *Officers for Justice v. Civil Service Com'n,* 688 F.2d 615, 625 (9th Cir. 1982); *Rutter & Wilbanks Corp. v. Shell Oil Co.,* 314 F.3d 1180, 1188 (10th Cir. 2002); *Wilkerson v. Martin Marietta Corp.,* 171 F.R.D. 273, 288-89 (D.Colo. 1997). Indeed, there is generally "an initial presumption of fairness when a proposed class settlement, which was negotiated at arms' length by counsel for the class, is presented for court approval." Alba Conte & Herbert B. Newberg, 4 *Newberg on Class Actions* at 11.41 (4th ed. 2002).

In light of these risks, and the more than $27 million in cash payments provided by the Settlements Agreements, it is plain that the Settlements are worthy of preliminary approval. They provide substantial and certain benefits to the class members and they avoid the risks, delay and

expense of further litigation.  And while plaintiffs believe their case is strong, Settling Defendants have not conceded liability and would vigorously defend themselves at trial.

## VI.    THE PROPOSED NOTICE TO CLASS MEMBERS IS ADEQUATE

Class members are entitled to the "best notice practicable under the circumstances" of any proposed settlement before it is finally approved by the Court. Fed. R. Civ. P. 23(c)(2)(b).  The notice must state in plain, easily understood language:

- • the nature of the action,
- • the definition of the class certified,
- • the class claims, issues, or defenses,
- • that a class member may enter an appearance through counsel if the member so desires,
- • that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded, and
- • the binding effect of a class judgment on class members under Rule 23(c)(3).

*Id.*

Plaintiff proposes that a direct Long Form Notice in the form attached as Exhibit D to the Saveri Decl. ("Notice") be given by mail or email to each Class Member who may, by reasonable efforts, be identified.  The Settlements require Settling Defendants to provide lists of all their customers who are potential class members. (Mitsubishi Settlement ¶9; Hitachi Settlement ¶9; Toshiba Settlement ¶9.)  Attached to the Long Form of Notice is a proposed Claim Form and Instructions to be filed by any class member who intends to participate in the settlements.

In addition, Plaintiff proposes that a Summary Notice in the form attached as Exhibit E to the Saveri Decl. be published in the national edition of the Wall Street Journal, and that both notices, along with the settlement agreements, be posted on a website www.dramantitrustsettlement.com accessible to class members.  Such notice plans were previously approved in *DRAM* and are commonly used in class actions like this one and constitute valid, due and sufficient notice to class members, and constitute the best notice practicable under the circumstances.  *See* Order Approving Joint Notice, at p. 2; *see, e.g., 5 Moore's Federal Practice* (3d ed. 2003) at §23.63[8][a], §23.63[8][b]; Saveri Decl. ¶12.

The content of the proposed notices complies with the requirements of Rule 23(c)(2)(B). The Notice clearly and concisely explains the nature of the action and the terms of the Settlements.

It provides a clear description of who is a member of the class and the binding effects of class membership. It explains how to exclude oneself from the class (with the exception of the Toshiba class, whose class members have already had the opportunity to exclude themselves from the litigated class), how to object to the Settlements, how to obtain copies of papers filed in the case and how to contact Class counsel.

In addition, both the Short Notice and the Long Notice inform class members that plaintiff's counsel will request attorneys' fees in an amount of 25% of the total settlement fund, plus interest and expenses and cost of administration. (Short Notice p.4 ln.6., Long Notice p.5)

The Summary Notice also identifies class members and explains the basic terms of the Settlements and the consequences of class membership. It also explains how to obtain more information about the Settlements. The Summary Notice will be published after the Notice is mailed and e-mailed to class members.

Plaintiff proposes that class members share in the Settlements on a proportionate basis based on the total dollar value of each claimant class member's DRAM purchases from these defendants during the Class Period compared to the total dollar value of DRAM purchased by all class members who submit claims. Such a proposed plan of allocation is identical to that approved in *DRAM*. *See* Order Granting Direct Purchaser Plaintiffs' Motion for an Order Authorizing Distribution of the Settlement Fund (Oct. 28, 2009) (Hamilton, J.); *see also*, *In re Corrugated Container Antitrust Litigation*, 643 F.2d 195, 218-220 (5th Cir. 1981).

The content of the notices and the proposed plan of allocation fulfill the requirements of Rule 23 and due process. Accordingly, the Court should preliminarily approve both.

## VII.   THE COURT SHOULD PROVISIONALLY CERTIFY THE MITSUBISHI AND HITACHI SETTLEMENT CLASSES

The Court should provisionally certify the settlement classes required by the Mitsubishi and Hitachi Settlements. (Mitsubishi Settlement ¶1; Hitachi Settlement ¶1.) It is well-established that price-fixing actions like this one are appropriate for class certification and many courts, including this Court in *DRAM*, have so held. *See* Class Certification Order, at 4; *see, e.g.*, *In re Rubber Chemicals Antitrust Litigation*, 232 F.R.D. 346, 350 (N.D. Cal. 2005) (*"Rubber Chemicals"*); *In re*

*Citric Acid Antitrust Litig.*, 1996 WL 655791 (N.D. Cal. 1996) ("*Citric Acid*"); *In re Sorbates Direct Purchaser Antitrust Litig.*, Case No. C 98-4886 MMC (N.D. Cal. Mar. 11, 2002) (Order Granting Plaintiffs' Motion for Class Certification; Vacating Hearing (Chesney, J.)) ("*Sorbates*"); *In re Methionine Antitrust Litig.*, Master File No. C-99-3491-CRB (N.D. Cal. Dec. 21, 2000) (Order Granting Motion for Class Certification (Breyer, J.)) ("*Methionine*"); *In Re: Sodium Gluconate Antitrust Litig.*, Master File No. C 97-4142 CW (N.D. Cal. Sept. 24, 1998) (Order Granting Class Certification) (Wilken, J.)) ("*Sodium Gluconate*").

### A.   The Requirements of Rule 23 in the Context of the Settlement Class

Rule 23 provides that a court must certify an action as a class action where, as here, plaintiffs satisfy the four prerequisites of Rule 23(a), and one of the three criteria set forth in Rule 23(b). Rule 23(a) provides that a class may be certified if:

> (1)   the class is so numerous that joinder of all members is impracticable;
>
> (2)   there are questions of law or fact common to the class;
>
> (3)   the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4)   the representative parties will fairly and adequately protect the interests of the class.

Plaintiff also must satisfy Rule 23(b)(3), which provides that "an action may be maintained as a class action" if:

> the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

The Rule 23(b)(3) "manageability" requirements, however, need not be satisfied in order to certify a class in the settlement context: "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997) *In re Relafen Antitrust Litig.,* 231 F.R.D. 52, 68 (D. Mass. 2005) (same).  As Judge Posner has explained, manageability concerns that might preclude

certification of a litigated class may be disregarded with a settlement class "because the settlement might eliminate all the thorny issues that the court would have to resolve if the parties fought out the case." *Carnegie v. Household International, Inc.,* 376 F. 3d 656, 660 (7th Cir. 2004) (citing *Amchem,* 521 U.S. at 620; *see also In re Initial Public Offering Securities Litigation,* 226 F.R.D. 186, 190, 195 (S.D.N.Y. 2005)(settlement class may be broader than litigated class because settlement resolves manageability/predominance concerns).

A Rule 23 determination is procedural and does not concern whether a plaintiff will ultimately prevail on the substantive merits of his or her claims. *Eisen v. Carlisle and Jacquelin,* 417 U.S. 156, 177-78 (1974); *Tchoboian v. Parking Concepts,* 2009 U.S. Dist. LEXIS 62122, *5 (N.D. Cal. July 16, 2009); *Gabriella v. Wells Fargo Fin., Inc.,* 2008 U.S. Dist. LEXIS 63118, *7 (N.D. Cal. Aug. 4, 2008). In ruling on a motion for class certification, the substantive allegations in plaintiffs' complaint must be accepted as true. *Blackie v. Barrack,* 524 F.2d 891, 901 (9th Cir. 1975); *Rubber Chemicals,* 232 F.R.D. at 350. Therefore, the only issue on a motion for class certification is whether plaintiff is asserting a claim which, assuming its merit, will satisfy the requirement of Rule 23. *Eisen,* 417 U.S. at 178 (quoting *Miller v. Mackey Int'l, Inc.,* 452 F.2d 424, 427 (5th Cir. 1971)).

**B.    The Requirements of Rule 23(a) Are Satisfied In This Case.**

**1.  The Class Is So Numerous That Joinder of All Members Is Impracticable.**

The first requirement for maintaining a class action under Rule 23 is that the class be so numerous that joinder of all members would be "impracticable." Fed. R. Civ. P. 23(a)(1). To satisfy this prerequisite, Plaintiff need not allege the precise number or identity of class members. *Rubber Chemicals,* 232 F.R.D. at 350 ("Plaintiffs do not need to state the exact number of potential class members, nor is a specific number of class members required for numerosity."); *In re Sugar Industry Antitrust Litig.,* 1976 WL 1374 at *12 (N.D. Cal. 1976) (same). Rather, a finding of numerosity may be supported by common sense assumptions. *Rubber Chemicals,* 232 F.R.D. at 350; *Citric Acid,* 1996 WL 655791 at *3.

Courts have not defined the exact number of putative class members that is required for class certification but have generally found that the numerosity requirement is satisfied when class

members exceed forty. Alba Conte & Herbert B. Newberg, 6 *Newberg On Class Actions* §18:4

(4th ed. 2002); *see also Oregon Laborers-Employers Health & Welfare Trust Fund v. Philip*

*Morris, Inc.*, 188 F.R.D. 365, 372-73 (D. Ore. 1998). Geographic dispersal of plaintiffs may also

support a finding that joinder is "impracticable." *Rubber Chemicals*, 232 F.R.D. at 350-51.

      In this case, Settling Defendants' customer lists indicate that the Class contains hundreds of

members dispersed across the country. Thus, the proposed Class readily satisfies the numerosity

requirement of Rule 23.

         **2.  This Case Involves Questions of Law and Fact Common to the Class.**

      The second requirement for class certification under Rule 23 is that "there are questions of

law or fact common to the class." Fed. R. Civ. P. 23(a)(2). A court must assess if "the class is

united by a common interest in determining whether a defendant's course of conduct is in its broad

outlines actionable." *Blackie*, 524 F.2d at 902. This requirement, however, is easily met: it is

satisfied by the existence of a single common issue. *In re Flat Glass Antitrust Litig.*, 191 F.R.D.

472, 478 (W.D. Pa. 1999).

      The commonality requirement is readily satisfied here. "Courts consistently have held that

the very nature of a conspiracy antitrust action compels a finding that common questions of law

and fact exist." *Rubber Chemicals*, 232 F.R.D. at 351 (quoting *In re Sugar Industry*, 1976 WL

1374 at *13)(internal quotations omitted).

      Here, there are numerous questions of law and fact common to the Class which are at the

heart of this case. They include:

    (1)      whether Settling Defendants and their Co-Conspirators
conspired to raise, fix, stabilize or maintain the prices of
DRAM sold in the United States;

    (2)      whether the alleged conspiracy violated Section 1 of the
Sherman Act;

    (3)      the duration and extent of the conspiracy;

    (4)      whether Settling Defendants' conduct caused prices of
DRAM to be set at artificially high and non-competitive
levels; and

(5) whether Settling Defendants' conduct injured Plaintiffs and other members of the Class and, if so, the appropriate class-wide measure of damages.

These issues constitute a common core of questions focusing on the central issue of the existence and effect of the alleged conspiracy and plainly satisfy the commonality requirement of Rule 23(a)(2). *Estate of Jim Garrison v. Warner Bros., Inc.*, 1996 WL 407849, at *2 (C.D. Cal. June 25, 2006)(Plaintiffs' allegations "which constitute the classic hallmark of antitrust class actions under Rule 23 . . . are more than sufficient to satisfy the commonality requirement"); *Flat Glass*, 191 F.R.D. at 479 ("[g]iven plaintiffs' allegation of a § 1 conspiracy, the existence, scope and efficacy of the alleged conspiracy are certainly questions that are common to all class members.")

### 3. The Claims of the Representative Party are Typical of the Claims of the Class.

The third requirement for maintaining a class action under Rule 23(a) is that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon,* 150 F.3d at 1020. "Typicality determines whether a sufficient relationship exists between the injury to the named Plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Oregon Laborers-Employers*, 188 F.R.D. at 373-74 (internal quotations and citations omitted).

Courts have generally found the typicality requirement to be satisfied in horizontal price-fixing cases. As explained in *In re Chlorine & Caustic Soda Antitrust Litig.*:

> Plaintiffs seek to recover treble damages from defendants measured by the alleged overcharge resulting from defendants' conspiracy to fix prices. In order to prevail on the merits in this case the plaintiffs will have to prove the same major elements that the absent members of the class would have to prove. Those elements are a conspiracy, its effectuation and resulting damages. As such, the claims of the plaintiffs are not antagonistic to and are typical of the claims of the other putative class members.

116 F.R.D. 622, 626 (E.D. Pa. 1987); *see also Rubber Chemicals,* 232 F.R.D. at 351; *Citric Acid,* 1996 WL 655791 at *3 ("The alleged underlying course of conduct in this case is defendants'

1  conspiracy to fix the price of citric acid and to allocate customers among themselves . . . The legal

2  theory that plaintiffs rely on is antitrust liability.  Because plaintiffs and all class members share

3  these claims and this theory, the representatives' claims are typical of all.").

4      Plaintiff here alleges a conspiracy to fix, raise, maintain and stabilize the price of DRAM.

5  Class members' claims are based on the same legal theories.  Plaintiff would have to prove the

6  same elements that absent members would have to prove: the existence, scope, and efficacy of the

7  conspiracy.  The typicality requirement of Rule 23(a)(3) is plainly satisfied.

8      ### 4. The Representative Plaintiff Will Fairly and Adequately Protect the
9      Interests of the Class.

10     The fourth requirement of Rule 23 mandates that the representative plaintiff fairly and

11 adequately represent the class.  Fed. R. Civ. P. 23(a)(4).  The adequacy requirement consists of two

12 separate inquiries.  First, the representative plaintiff must not possess interests which are

13 antagonistic to the interests of the class.  Second, plaintiff must be represented by counsel of

14 sufficient diligence and competence to fully litigate the claim.  *Hanlon*, 150 F.3d at 1020; *Lerwill*

15 *v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).

16     The representative plaintiff here meets both aspects of the adequacy test.  There are no

17 actual or potential conflicts of interest between the representative plaintiff and the members of the

18 class.  Plaintiff, as well as each member of the class, were overcharged for DRAM and have a

19 mutual interest in establishing liability and recovering damages.  The gravamen of the claims

20 against defendants is a price-fixing conspiracy that artificially raised the prices charged to every

21 Class member, each of whom directly purchased DRAM from one or more of the defendants

22 during the Class Period. Defendants, therefore, allegedly injured plaintiff and the Class members in

23 the same manner.  Plaintiff seeks relief substantially identical to that sought by every other Class

24 member.  Accordingly, the interests of the representative plaintiff and the putative class members

25 in recovering the overcharges are the same.

26     Moreover, Plaintiff has retained highly capable and well-recognized counsel with extensive

27 experience in antitrust cases.  Plaintiff's counsel have successfully prosecuted numerous antitrust

28 class actions on behalf of injured purchasers throughout the United States.  Plaintiff's counsel are

1    capable of, and committed to, prosecuting this action vigorously on behalf of the Class.  Plaintiff's

2    counsel's prosecution of this case, and, indeed, the Settlements, amply demonstrate their diligence

3    and competence.

4           The named plaintiff satisfies the requirements of Rule 23(a)(4).

5    **C.      The Proposed Class Satisfies The Requirements Of Rule 23(B)(3)**

6           Once it is determined that the proposed class satisfies the requirements of Rule 23(a), a

7    class must be certified under Rule 23(b)(3) if "the court finds that the questions of law or fact

8    common to the members of the class predominate over any questions affecting only individual

9    members, and that a class action is superior to other available methods for the fair and efficient

10   adjudication of the controversy."  "Judicial economy and fairness are the focus of the

11   predominance and superiority requirements."  *Oregon Laborers-Employers*, 188 F.R.D. at 375.

12   Plaintiff's claims meet these requirements.

13
     **1.      Common Questions of Law and Fact Predominate Over Individual
14              Questions**

15          As the United States Supreme Court has noted, predominance is a test that is "readily met"

16   in antitrust cases.  *Amchem Prods.,* 521 U.S. at 625; *see also In Re Warfarin Sodium Antitrust*

17   *Litig.*, 391 F.3d 516, 528 (3d Cir. 2004).  The overwhelming weight of authority holds that in

18   horizontal price-fixing cases, the predominance requirement is readily satisfied.

19          In determining whether common questions predominate in a price fixing case, "the focus of

20   this court should be principally on issues of liability."  *In re Sugar Industry,* 1976 WL 1374 at *22;

21   *Citric Acid,* 1996 WL 655791 at *6; *see also Local Joint Executive Board of Culinary/Bartender*

22   *Trust Fund v. Las Vegas*, 244 F.3d 1152, 1163 (9th Cir. 2001); *Hanlon*, 150 F.3d at 1022

23   ("common nucleus of facts and potential legal remedies dominates this litigation").  Common

24   questions need only predominate; they do not need to be dispositive of the litigation as a whole.  *In*

25   *re Lorazepam & Clorazeopate Antitrust Litigation*, 202 F.R.D. 12, 29 (D.D.C. 2001); *In re*

26   *Cardizem CD Antitrust Litigation*, 200 F.R.D. 326, 339 (E.D. Mich. 2001); *In re Potash Antitrust*

27   *Litigation*, 159 F.R.D. 682, 693 (D. Minn. 1995).  The predominance standard is met "unless it is

28   clear that individual issues will overwhelm the common questions and render the class action

valueless." *In re NASDAQ Market-Makers Antitrust Litigation*, 169 F.R.D. 493, 517 (S.D.N.Y. 1996).

In section 1 Sherman Act class cases, the existence of a conspiracy has been recognized as the overriding issue common to all plaintiffs. As the court acknowledged in *Rubber Chemicals*: "the great weight of authority suggests that the dominant issues in cases like this are whether the charged conspiracy existed and whether price-fixing occurred." 232 F.R.D. at 353 (quoting *Citric Acid*, 1006 U.S. Dist. Lexis 16409, at *21); *see also In re Cement and Concrete Antitrust Litigation*, 1979 WL 1595, at *2 (D. Ariz. March 9, 1979)("the asserted nationwide price fixing conspiracy presents questions of law and fact common to the class members which predominate over any questions affecting only individual members"); *In re Sugar Industry*, 1976 WL 1374, at *23 ("It is the allegedly unlawful horizontal price-fixing arrangement among defendants that, in it its broad outlines, comprises the predominating, unifying common interest as to these purported Plaintiff representatives and all potential class members"); *Mularkey v. Holsum Bakery, Inc.*, 120 F.R.D. 118, 122 (D. Ariz. 1988). Courts in this district and elsewhere have held that this issue alone is sufficient to satisfy the Rule 23(b)(3) predominance requirement. *See, e.g., Rubber Chemicals*, 232 F.R.D. at 353; *Citric Acid*, 1996 WL 655791, at *8.

Furthermore, courts have uniformly found predominant common questions of law or fact with respect to the existence, scope, and effect of the alleged conspiracy. *See In re Citric Acid*, 1996 WL 655791, at *6 (common questions include whether there was a conspiracy, whether prices were fixed pursuant to the conspiracy, and whether the prices plaintiffs' paid were higher than they should have been); *Estate of Jim Garrison*, 1996 WL 407849, at *3 ("Antitrust price fixing conspiracy cases by their nature deal with common legal and factual questions of the existence, scope and effect of the alleged conspiracy." (citation omitted)); *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. at 518.

Common issues relating to the existence and effect of the conspiracy predominate over any questions arguably affecting only individual Class members because they are the central issue in the case and proof is identical for every member of the Class. If separate actions were to be filed by each Class member, each would have to establish the existence of the same conspiracy and

would depend on identical evidence, and each would prove damages using identical "textbook" economic models. These issues pose predominant common questions of law and fact.

Finally, as explained above, the Court need not concern itself with questions of the manageability of a trial because the Settlements dispose of the need for a trial with regard to Settling Defendants, along with any "thorny issues" that might arise. *See Amchem,* 521 U.S. at 620; *Carnegie,* 376 F. 3d at 660.

### 2. A Class Action Is Superior to Other Available Methods for the Fair and Efficient Adjudication of this Case.

Rule 23(b)(3) provides that certification of a case is appropriate if class treatment "is superior to other available methods for the fair and efficient adjudication of the controversy." It sets forth four factors to be considered: (1) the interest of members of the class in individually controlling the prosecution of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by members of the class; (3) the desirability of concentrating the litigation of the claims in a particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3). Prosecuting this action as a class action is clearly superior to other methods of adjudicating this matter.

The alternative to a class action – many duplicative individual actions – would be inefficient and unfair. "Numerous individual actions would be expensive and time-consuming and would create the danger of conflicting decisions as to persons similarly situated." *Lerwill,* 582 F.2d at 512. Further, it would deprive many class members of any practical means of redress. Because prosecution of an antitrust conspiracy case against economically powerful defendants is difficult and expensive, class members with all but the largest claims would likely choose not to pursue their claims. *See Local Joint Executive Board of Culinary/Bartender Trust Fund,* 244 F.3d at 1163. Most class members would be effectively foreclosed from pursuing their claims absent class certification. *Hanlon,* 150 F.3d at 1023 ("many claims [that] could not be successfully asserted individually ... would not only unnecessarily burden the judiciary, but would prove uneconomic for potential plaintiffs"); *Northwestern Fruit Co. v. A. Levy & J. Zentner Co.,* 116 F.R.D. 384, 389 (C.D. Cal. 1986)("Multiple lawsuits . . . would be costly and inefficient, and the exclusion of every

class member that cannot afford separate representation would be neither 'fair' nor an 'adjudication' of their claims.").

The proposed class satisfies the requirements of Rule 23(b)(3).

**D.    The Court Should Appoint the Plaintiff's Current Counsel as Counsel for the Class.**

Fed. R. Civ. P. 23(c)(1)(B) states that "[a]n order certifying a class action … must appoint class counsel under Rule 23(g)." Rule 23(g)(1)(C) states that "[i]n appointing class counsel, the court (i) must consider: [1] the work counsel has done in identifying or investigating potential claims in the action, [2] counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, [3] counsel's knowledge of the applicable law, [4] the resources counsel will commit to representing the class."

The law firms of Saveri & Saveri, Inc., Hagens Berman Sobol Shapiro LLP, and Wolf Hadelstein Adler Freeman & Herz LLP seek to be appointed as Counsel for the Class. These firms are willing and able to vigorously prosecute this action and to devote all necessary resources to obtain the best possible result. The work done to date, as well as the work done in the related *DRAM* action, supports the conclusion that they should be appointed as Class Counsel for purposes of the Settlements. *See, e.g., Harrington v. City of Albuquerque*, 222 F.R.D. 505, 520 (D.N.M. 2004). Each firm meets the criteria of Rule 23(g)(1)(C)(i). *Cf. Farley v. Baird, Patrick & Co., Inc.* 1992 WL 321632*5 (S.D.N.Y. 1992) ("[c]lass counsel's competency is presumed absent specific proof to the contrary by defendants").

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully submits that the Court should grant preliminary approval to the Settlements, conditionally certify the settlement Class, and order that

///

///

///

///

///

1    notice be given to the Class and a hearing on final approval be scheduled according to the schedule

2    set forth above.

3    Dated: March 31, 2010.                          Respectfully submitted,

4                                                    /s/ Guido Saveri

5                                                    Guido Saveri (22349)
                                                     R. Alexander Saveri (173102)

6                                                    Geoffrey C. Rushing (126910)
                                                     Cadio Zirpoli (179108)

7                                                    SAVERI & SAVERI, INC.
                                                     706 Sansome Street

8                                                    San Francisco, CA  94111
                                                     Telephone:  (415) 217-6810

9                                                    Facsimile:  (415) 217-6813

10                                                   Anthony D. Shapiro (*pro hac vice*)

11                                                   George W. Sampson (*pro hac vice*)
                                                     Ronnie S. Spiegel

12                                                   HAGENS BERMAN SOBOL SHAPIRO LLP
                                                     1918 8th Avenue, Suite 3300

13                                                   Seattle, Washington  98101
                                                     Telephone: (206) 623-7292

14                                                   Facsimile: (206) 623-0594

15                                                   Fred Taylor Isquith (*pro hac vice*)

16                                                   Mary Jane Fait (*pro hac vice*)
                                                     WOLF, HALDENSTEIN, ADLER,

17                                                     FREEMAN & HERZ
                                                     270 Madison Avenue

18                                                   New York, NY  10016
                                                     Telephone:  (212) 545-4600

19                                                   Facsimile: (212) 545-4653

20                                                   Co-Lead Counsel for Plaintiffs

21   Ram.969

22

23

24

25

26

27

28