Guido Saveri (22349)
Cadio Zirpoli (179108)
SAVERI & SAVERI, INC.
111 Pine Street, Suite 1700
San Francisco, CA  94111-5619
Telephone:  (415) 217-6810
Facsimile:  (415) 217-6813
guido@saveri.com
cadio@saveri.com

Anthony D. Shapiro (*pro hac vice*)
George W. Sampson (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone:  (206) 623-7292
Facsimile:  (206) 623-0594
tony@hbsslaw.com
george@hbsslaw.com

Fred Taylor Isquith (*pro hac vice*)
WOLF, HALDENSTEIN, ADLER,
   FREEMAN & HERZ, LLP
270 Madison Avenue
New York, NY  10016
Telephone:  (212) 545-4600
Facsimile:  (212) 545-4653
isquith@whafh.com

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE DYNAMIC RANDOM ACCESS MEMORY (DRAM) ANTITRUST LITIGATION | Master File No. M-02-1486PJH<br><br>MDL No. 1486<br><br>DIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION, MOTION AND MEMORANDUM OF LAW IN SUPPORT OF ORDER APPROVING *CY PRES* DISTRIBUTION OF RESIDUAL SETTLEMENT FUNDS |
| This Document Relates to:<br><br>ALL DIRECT PURCHASER ACTIONS | Date:   September 5, 2012<br>Time:   9:00 a.m.<br>Judge:  Hon. Phyllis J. Hamilton<br>Ctrm:   3, 3rd Floor |

DIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION,
MOTION AND MEMORANDUM OF LAW IN SUPPORT OF
ORDER APPROVING *CY PRES* DISTRIBUTION OF RESIDUAL SETTLEMENT FUNDS
M-02-1486PJH  MDL No. 1486
001621-12  517097 V1

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on September 5, 2012, at 9:00 a.m., or as soon thereafter as counsel can be heard, before the Honorable Phyllis J. Hamilton, United States District Judge, at the United States District Courthouse, 1301 Clay Street, Courtroom 3, 3rd Floor, Oakland, California 94612, Direct Purchaser Plaintiffs will move this Court for an Order authorizing *cy pres* distribution of residual settlement funds obtained in the Direct Purchaser Action to Computers for Youth.

This Motion is based upon this Notice of Motion and Motion, the Memorandum of Law in Support thereof, the Declaration of Robin Niemiec in Support of Direct Purchaser Plaintiffs' Motion Approving *Cy Pres* Distribution of Residual Settlement Funds, the Declaration of Anthony D. Shapiro in Support of Direct Purchaser Plaintiffs' Motion in Support of Order Approving *Cy Pres* Distribution of Residual Settlement Funds, the [Proposed] Order Granting Motion to Approve *Cy Pres* Distribution of Residual Settlement Funds, submitted herewith, as well as the complete files and records in this case.

**MEMORANDUM OF LAW**

Direct Purchaser Plaintiffs ("Plaintiffs") and their counsel ("Class Counsel") respectfully submit this Memorandum of Law in support of their motion for an order approving *cy pres* distribution of residual settlement funds to a reputable non-profit organization, Computers for Youth.

## I.     INTRODUCTION

In 2007, after nearly five years of litigation, this case was resolved. Plaintiffs entered into settlement agreements with all Defendants (except Nanya Technology Corporation, which was granted summary judgment). The Court granted final approval of the settlements and the case proceeded smoothly through all stages of claims administration. All costs and fees were paid, all valid claims were determined by the claims administrator, settlement monies were distributed *pro rata* to all class members that presented valid claims, and all outstanding disputes regarding claims were resolved and paid. However, as is sometimes the case with large class settlements, residual monies remain in the class settlement fund currently totaling $1,513,308.87. None of the settlement agreements address how such monies shall be distributed and none contain reversionary provisions directing that any surplus monies be returned to defendants. In this case, it is not economically feasible to undertake a second *pro rata* distribution to class members (as the costs of distribution would exceed the amount of payment to most class members). Accordinly, Plaintiffs seek the next best distribution, *cy pres* distribution of the residual monies to a technology education non-profit, Computers for Youth.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs brought this action alleging that from April 1, 1999, to June 30, 2002, Defendants unlawfully agreed to fix, raise, maintain and stabilize the prices of Dynamic Random Access Memory ("DRAM") and/or to allocate among themselves major customers and accounts in violation of the federal antitrust laws. Plaintiffs further alleged that, as a result of Defendants' unlawful conduct, they paid more for DRAM than they otherwise would have absent such conduct. Plaintiffs settled with all Defendants (except Nanya Technology Corporation, which was dismissed

1    on summary judgment) for a total amount of $325,997,000, plus accrued interest.  *See* Declaration

2    of Anthony D. Shapiro in Support of Direct Purchaser Plaintiffs' Motion Approving *Cy Pres*

3    Distribution of Residual Settlement Funds ("Shapiro Decl.") at ¶ 2.

4    　　　　The Court gave final approval to the settlements on November 1, 2006, April 18 2007, and

5    August 1, 2007, finding them to be fair reasonable and adequate, and dismissed the action with

6    prejudice.  *See* Dkt. Nos. 1153-55, 1533-36, 1662-64, 1677.  The Court also found that due and

7    adequate notice of the settlements had been provided to the class.  *Id.*  In the final approval orders,

8    the Court retained jurisdiction for purposes of supervising and approving any matters relating to the

9    administration of the settlements.  *See id.*

10   　　　　On August 16, 2007, the Court approved payment of attorneys' fees to Class Counsel in the

11   amount of 25% of the settlement fund, reimbursement of costs and expenses ($4,270,551.16), and

12   class representative incentive awards to the ten class representatives in this case in the amount of

13   $10,000 each ($100,000 total).  *See* Dkt. No. 1682.  These amounts were paid out of the

14   settlement fund, leaving a remainder of $245,472,196.10.  Shapiro Decl. at ¶ 3.

15   　　　　On October 28, 2009, the Court authorized *pro rata* distribution of the remainder of the

16   settlement fund to all class members whose claims had been approved by the Claims

17   Administrator, Robin Niemiec of Rust Consulting, Inc. ("Rust"), less funds reserved for the

18   payment of federal and state taxes, claims administration costs, and the disputed claim of Kimball

19   Electronics Tampa, Inc. f/k/a Reptron Electronics, Inc. ("Reptron") (Dkt. No. 2010).  With the

20   reserved amounts deducted, the total in the settlement fund to be distributed to class members *pro*

21   *rata* was $244,800,235.81.   Declaration of Robin Niemiec in Support of Direct Purchaser

22   Plaintiffs' Motion Approving *Cy Pres* Distribution of Residual Settlement Funds ("Niemiec

23   Decl.") at ¶ 2.

24   　　　　Rust notified potential class members of the settlement, received claims, and determined

25   that 19,171 claims were eligible for payment.  Niemiec Decl. at ¶ 2.  Distribution checks were

26   mailed on or about December 11, 2009, via wire or check to class members, totaling

27   $244,800,235.81 (approximately 11.3% of the dollar amount the class member paid for DRAM

28

DIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION,
MOTION AND MEMORANDUM OF LAW IN SUPPORT OF
ORDER APPROVING *CY PRES* DISTRIBUTION OF RESIDUAL SETTLEMENT FUNDS – 3
M-02-1486PJH  MDL No. 1486
001621-12  517097 V1

from the Defendants during the Class Period).  Niemiec Decl. at ¶ 2.

After distribution, 1,171 of the checks issued went uncashed (totaling $73,382.15).  Niemiec Decl. at ¶ 9.  Rust researched and updated mailing addresses and contacted many of these claimants via telephone in an effort to get them their portion of the settlement award.   Niemiec Decl. at ¶¶ 9-14.  All class members have had an opportunity to submit their claims and Rust has received no further reissue requests.  *Id.*  In addition, excess monies from what was reserved for taxes and administrative costs, also remain in the settlement fund.  *Id.* at ¶ 15.  In sum, now that all eligible claims have been paid and reserved monies have been adjusted, a total of $1,513,308.87 in residual monies remains in the settlement fund.[1]  *See id.* at ¶ 19.

### III.    ARGUMENT

**A.    The Settlement Agreements do not Provide for Distribution of Residual Funds**

The district court has the inherent equitable authority to resolve any issues that are not covered by the terms of the settlement agreements.  *See* MANUAL FOR COMPLEX LITIGATION, FOURTH § 21.66, at 334 (Federal Judicial Center 2004).  None of the settlement agreements in this case address the distribution of residual funds.  Nor do they contain any reversionary provisions directing any funds back to defendants.  Shapiro Decl. at ¶ 5.

**B.    A Second *Pro Rata* Distribution is not Economically Feasible**

As a result of the first *pro rata* distribution, claimaints received checks in proportion to their loss – with a handful of large purchasers and thousands of comparatively smaller purchasers receiving payments.  Given the size and composition of the class and the small amount of residual monies, the cost of calculating *pro rata* shares, printing and mailing checks, and administering a second distribution would substantially dilute the residual fund and, in most cases, the costs of distribution would far exceed the amount of payment for most class members.  *See* Shapiro Decl. at ¶¶ 6-7.  In addition, such an attempt at distribution would almost certainly result in yet another unclaimed amount, requiring yet another distribution of an even smaller amount.  *Id.*

---

[1] All claims administration costs have been paid and Rust has agreed not to charge any additional fees with respect to the residual fund.  However, Plaintiffs have agreed to pay the outstanding bank charges to Rust in the amount of $3,174.91.  Niemiec Decl. at ¶ 18.

"When modern, large-scale class actions are resolved via settlement, money often remains in the settlement fund even after initial distributions to class members have been made because some class members either cannot be located or decline to file a claim." *Klier v. Elf Atochem N. Am., Inc.*, 658 F.3d 468, 475 (5th Cir. 2011). In large class actions such as this one where substantial administrative costs attend the distribution of settlement funds, courts recognize that there comes a point when the cost of making an additional *pro rata* distribution to class members exceeds the amount available for distribution and turn to *cy pres* distribution. *Id.*; *see also* 2 Herbert B. Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS § 10.17 (4th ed. 2002) ("NEWBERG") ("When all or part of the common fund is not able to be farily distributed to class members, the court may determine to distribute the unclaimed funds with a *cy pres* … approach.").

Furthermore, where settlement agreements do not provide direction for the use of residual funds, as is the case here, "*cy pres* comes on stage to rescue the objectives of the settlement when the agreement fails to do so." *Klier*, 658 F.3d at 475-476.

**C.    *Cy Pres* Distribution is the Next Best Distribution for the Residual Funds in this Case**

The Ninth Circuit has repeatedly recognized that "federal courts frequently use the *cy pres* doctrine 'in the settlement of class actions where the proof of individual claims would be burdensome or distribution of damages costly.'" *See Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038 (9th Cir. 2011); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1309 (9th Cir. 1990). The Ninth Circuit has further explained that a *cy pres* award must qualify as "the next best distribution" to giving funds directly to class members. *Dennis v. Kellogg*, 2012 U.S. App. LEXIS 14385, at *11 (9th Cir. July 13, 2012) (quoting *Six Mexican Workers*, 904 F.2d at 1305).

As explained above, a second *pro rata* distribution is not economically feasible in this case and the settlement agreements do not address the scenario of distribution of residual funds. Accordingly, Plaintiffs propose the "next best distribution," *cy pres* distribution.

**D.    Computers for Youth is an Appropriate *Cy Pres* Recipient of the Residual Funds**

The Ninth Circuit has explained the guidelines for district courts evaluating *cy pres* awards. "The district court's choice among distribution options should be guided by the objectives of the

1   underlying statute and the interests of the silent class members." *Nachshin*, 663 F.3d at 1039; *Six

2   Mexican Workers,* 904 F.2d at 1307.  There should also be a "driving nexus between the plaintiff

3   class and the *cy pres* beneficiary" and must not benefit a group "too remote from the plaintiff

4   class."  *Id.* at *12 (quoting *Nachshin*, 663 F.3d at 1038 and *Six Mexican Workers*, 904 F.2d at

5   1308, respectively); *see also Lymburner v. United States Fin. Funding, Inc.*, 2011 U.S. Dist.

6   LEXIS 92899, at *10-11 (N.D. Cal. Aug. 19, 2011) (where a *cy pres* distribution is warranted, the

7   law generally favors distributing unclaimed funds for a purpose as near as possible to the legitimate

8   objectives underlying the lawsuit).

9   Section 1 of the Sherman Act seeks to prohibit actors in the market from conspiring to fix

10   prices.  In this case, the alleged conspiracy caused class members to pay prices for DRAM that

11   were higher than they would have paid absent the alleged conspiracy and had the market been

12   allowed to operate freely.  While one interest of class members is to recover the amounts that they

13   overpaid, there is also the larger societal interest in making sure that the market operates fairly,

14   including the goals of access and affordability to technology and the products which drive that

15   technology, such as DRAM.

16   Computers for Youth (http://cfy.org) is a top-rated, nationally recognized non-profit

17   organization, with the purpose of giving students in low-income communities, along with their

18   teachers and families, the ability to access digital learning and to improve educational outcomes.  It

19   is based in New York, but operates nationally and has offices in major cities around the U.S.  Class

20   Counsel has no connection or relationship with Computers for Youth or its administration.  *See*

21   Shapiro Decl. at ¶ 9.  In sum, Computers for Youth is an appropriate recipient for the residual

22   funds.  *Cy pres* distribution to Computers for Youth is in accordance with the guidelines set forth

23   by the Ninth Circuit and does not trigger any of the concerns posed by the *cy pres* recipients in

24   *Kellogg* and *Nachshin*.[2]

---

[2] *See e.g., Kellogg*, 2012 U.S. App. LEXIS 14385, at *15-18 (reversing approval of settlement agreement which provided for *cy pres* distribution to a charity that was completely divorced from the purposes of the statute and the interests of the class); *Nachshin*, 663 F.3d at 1040 (ruling that proposed *cy pres* distributions did not comport with Ninth Circuit standards because, while they were made on behalf of a nationwide class, they were distributed to geographically isolated and substantively unrelated charities).

# IV. CONCLUSION

WHEREFORE, Purchaser Plaintiffs respectfully request that the Court enter an order approving distribution of the residual funds to Computers for Youth and payment of outstanding bank fees to Rust Consulting in the amount of $3,174.91.  Plaintiffs submit herewith a proposed order.

Dated:  July 25, 2012

                        HAGENS BERMAN SOBOL SHAPIRO LLP


                        /s/ Anthony D. Shapiro
Anthony D. Shapiro (*pro hac vice*)
George W. Sampson (*pro hac vice*)
Ronnie S. Spiegel
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
Telephone:  (206) 623-7292
Facsimile:  (206) 623-0594
tony@hbsslaw.com
george@hbsslaw.com
ronnie@hbsslaw.com

Guido Saveri (22349)
R. Alexander Saveri (173102)
Cadio Zirpoli (179108)
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA  94111-1730
Telephone:  (415) 217-6810
Facsimile:  (415) 217-6813
guido@saveri.com
rick@saveri.com
cadio@saveri.com

Fred Taylor Isquith (*pro hac vice*)
WOLF, HALDENSTEIN, ADLER,
   FREEMAN & HERZ, LLP
270 Madison Avenue
New York, NY  10016
Telephone:  (212) 545-4600
Facsimile:  (212) 545-4653
isquith@whafh.com