THE HONORABLE CHARLES B. RENFREW (Ret.)
633 Battery Street
San Francisco, CA 94111
Telephone:  (415) 397-3933
Facsimile:  (415) 397-7188

SPECIAL MASTER

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| In re DYNAMIC RANDOM ACCESS MEMORY (DRAM) ANTITRUST LITIGATION | Master File No. M-02-1486-PJH |
| | MDL No. 1486 |
| _____ | Case No. C 06-4333 PJH |
| This document relates to: | Case No. C 06-6436 PJH |
| **ALL INDIRECT PURCHASER ACTIONS** | **REPORT AND RECOMMENDATIONS OF SPECIAL MASTER** |
| and | **PART II: NOTICE PROGRAMS, CLAIMS PROCEDURES AND PROCESSING** |
| *State of California et al. v. Infineon Technologies AG, et al.* | Judge:   Honorable Phyllis J. Hamilton |
| and | |
| *State of New York v. Micron Technology, Inc., et al.* | |

Report and Recommendations of Special Master re Notice Programs and Claims Procedures

# **TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................................... 1

II.     THE REFERENCE TO THE SPECIAL MASTER ................................................ 2

III.    SUMMARY OF THE SPECIAL MASTER'S FINDINGS AND
        RECOMMENDATIONS ......................................................................................... 2

IV.     BACKGROUND ..................................................................................................... 3

V.      THE PROPOSED INDIRECT PURCHASER CLASS NOTICE
        PROGRAM, CLAIM FORM AND CLAIMS PROCESSING PLAN ..................... 3

        A.   Proposed Class Notice Program ................................................................... 3

        B.   Proposed Forms of Notice ............................................................................ 6

        C.   Proposed Claim Form .................................................................................. 10

        D.   Proposed Claims Processing Methodology ................................................ 11

VI.     THE PROPSED GOVERNMENT PURCHASER NOTICE
        PROGRAM AND CLAIMS PROCESSING ........................................................ 15

        A.   The Government Purchaser And Oregon Notice Plans ............................... 15

        B.   Government Purchaser Claims Processing And Oregon
             Distribution Plan Issues ............................................................................. 20

VII.    FINDINGS OF FACT AND CONCLUSIONS OF LAW
        REGARDING THE ADEQUACY OF THE NOTICE PLANS
        AND OF THE CLAIMS PROCESSING PROTOCOLS FOR
        THE INDIRECT PURCHASER SETTLEMENT CLASS ..................................... 20

        A.   The Indirect Purchaser Settlement Class Notice Program
             Provides the Best Notice Practicable Under the Circumstances ................ 22

        B.   The Proposed Notice Forms For the Indirect Purchaser Settlement Class
             Adequately Explain Class Members' Rights ............................................... 24

        C.   The Indirect Purchaser Settlement Class Claims Processing
             Protocols are Fair Reasonable and Adequate .............................................. 25

        D.   The Government Purchaser Class Notice Program
             Provides the Best Notice Practicable Under the Circumstances ................ 27

VIII.   CONCLUSION ........................................................................................................30

1

2

3

## TABLE OF AUTHORITIES

__Cases__

4

*Adoma v. Univ. of Phoenix, Inc.*
   No. CIV. S-10-0059, 2010 WL 4054109 (E.D. Cal. Oct. 15, 2010) ................................... 23

*Eisen v. Carlisle & Jacquelin (Eisen IV)*
   417 U.S. 156, 174 (1974) ................................................................. 22

*Faught v. Am. Home Shield Corp.*
   668 F.3d. 1233 (11th Cir. 2011) ........................................................ 25

*Grannis v. Ordean*
   234 U.S. 385 (1914) ...................................................................... 20

*Holmes v. Cont'l Can Co.*
   706 F.2d 1144 (11th Cir. 1983) ......................................................... 25

*In re Gypsum Antitrust Cases*
   565 F.2d 1123, 1125 (9th Cir. 1977 ..................................................... 24

*In re Music CD Minimum Advertised Price Antitrust Litigation*
   216 F.R.D. 197 (D. Me. 2003) ...................................................... 3, 28

*In re Online DVD Antitrust Litigation*
   U.S. Dist. LEXIS 55951 (N.D. Cal. Apr. 20, 2012) ........................................ 28

*In re Tableware Antitrust Litigation*
   484 F. Supp.2d 1078 (N.D. Cal. 2007) ................................................... 22

*In re Victor Technologies Securities Litigation*
   792 F.2d 862, 865 (9th Cir. 1986) ...................................................... 22

*In re Wal-Mart Stores, Inc. Wage and Hour Litigation*
   No. 06-02069 SBA, 2008 WL 1990806 (N.D. Cal. May 5, 2008) ...................................... 23

*Milliken v. Meyer*
   311 U.S. 457 (1940) ...................................................................... 20

*Mullane v. Central Hanover Bank & Trust Co.*
   339 U.S. 306, 314 (1950) ................................................................. 20

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Pierce v. Rosetta Stone Ltd.*
  2013 U.S. Dist. LEXIS 63856 (N.D. Cal. May 3, 2013) ..................................... 25

*Phillips Petroleum Co. v. Shutts*
  472 U.S. 797 (1985) ........................................................................................... 29

*Priest v. Board of Trustees of Town of Las Vegas*
  232 U.S. 604 (1914) ........................................................................................... 20

*Roller v. Holly*
  176 U.S. 398 (1900) ........................................................................................... 20

*Villegas v. J.P. Morgan Chase & Co.*
  2012 WL 5878390  (N.D Cal. Nov. 21, 2012) ................................................... 24

*Wal-Mart v. Dukes*
  131 S. Ct. 2541 (2011) ................................................................................ 27, 29

**Statutes**

Fed. R. Civ. P. 23 ...................................................................................... *passim.*

Oregon Rev. Stat. §646.775(2)(a) ...................................................................... 16

### I.   INTRODUCTION

1.      This Report and Recommendation arises in the context of various class actions and *parens patriae* actions brought on behalf of indirect purchasers of DRAM which have resulted in proposed global settlements totaling $310,720,000 plus injunctive relief ("Settlements"). These Settlements resolve the claims brought against the Defendants[1] in this litigation on behalf of all indirect purchasers of DRAM in the United States during the period January 1, 1998 through December 31, 2002.

2.      In preparation for the administration of the Settlements, counsel for the proposed Indirect Purchaser Settlement Class and the Attorneys General, in conjunction with experts in the areas of class notice and claims administration, have developed notice programs for the Indirect Purchaser Settlement Class ("Indirect Purchaser Class Notice Program") and the Government Purchaser Settlement Classes ("Government Purchaser Notice Program") to notify those class members of the settlement of their claims.

3.      The Indirect Purchaser Class Notice Program consists of an extensive publication campaign to notify class members of the Settlements and to provide information and forms that will enable class members to file a claim to a share of the Settlement proceeds and understand how their claims will be processed and paid.  Insofar as the Attorneys' General's *parens patriae* claims are concerned, there is no need for a separate notice program because (a) certain states have no notice requirement; and (b) with respect to those states that do require notice, the Indirect Purchaser Plaintiff Class Program informs individuals and businesses about these claims and meets all standards applicable to those claims.

---

[1]  The settling parties and the claims asserted in the litigation are discussed in the Report and Recommendations of Special Master Part I re Settlement Class Certification, Settlement Fund Allocation and Distribution, filed January 8, 2013 (Dkt. No. 2132) ("Report Part I")

4.     This Report and Recommendation addresses the adequacy of the Notice Programs and claims procedures.

## II.     THE REFERENCE TO THE SPECIAL MASTER

5.     The subject matter of the reference to the Special Master is contained in multiple orders entered by this Court in the above-captioned actions. The reference to the Special Master from this Court covers the following issues: (1) certification of the proposed settlement classes; (2) the necessity of establishing any subclasses; (3) a fair, reasonable and adequate plan of allocation and distribution of the settlement proceeds to members of the settlement classes; (4) the form of notice, plan for dissemination of notice and appropriate claim forms and claims procedures; and (5) a fair, reasonable and appropriate award of attorneys' fees and reimbursement of expenses.

6.     The first Report and Recommendation, Part I, filed with the Court on January 8, 2013, covered issues one through three: class certification, the necessity for subclasses, and the plan of allocation and distribution of settlement proceeds.  This Report and Recommendation, Part II, will address the fourth issue: notice plans and claims processing procedures and related forms. Part III, to be filed separately, will cover the last issue: the award of fair and reasonable attorneys' fees to plaintiffs' and class members' counsel and reimbursement of expenses.

## III.     SUMMARY OF THE SPECIAL MASTER'S FINDINGS AND RECOMMENDATIONS

7.     The forms of notice to members of the Indirect Purchaser Settlement Class and the Government Purchaser Settlement Classes, the plans for dissemination of said notice, and the claim forms and claims procedures for the Indirect Purchaser Settlement Class all meet the requirements of Fed. R. Civ. P. 23 and the requirements of due process.

Report and Recommendations of Special Master re Notice Programs and Claims Procedures

They also meet any standards applicable to the Attorneys' General's *parens patriae* claims.  The Special Master recommends that they be adopted by this Court.

## IV.  BACKGROUND

8.  For a full case background, see the Report and Recommendations of Special Master Part I re: Settlement Class Certification, Settlement Fund Allocation and Distribution, filed January 8, 2013 (Dkt. No. 2132) ("Report Part I").

## V.  THE PROPOSED INDIRECT PURCHASER CLASS NOTICE PROGRAM, CLAIM FORM AND CLAIMS PROCESSING PLAN

### A.  Proposed Class Notice Program

9.  The referral order of this Court states that the Special Master shall consider the forms of notice to the Indirect Purchaser Settlement Class.  The Reference Order does not expressly incorporate the Attorneys' General's *parens patriae* claims.  However, it is my understanding that a proposed form of notice that satisfies the statutory and constitutional due process adequacy standards applicable to the Indirect Purchaser Settlement Class will also satisfy those statutory and constitutional adequacy standards applicable to the *parens patriae* claims with respect to those states that have notice requirements, so long as the proposed form of notice also references and discusses those claims.[2]  My findings as to the adequacy of the proposed forms of notice applicable to the Indirect Purchaser Settlement Class thus also apply to those Attorneys' General *parens patriae* claims where notice is required.

10.  Plaintiffs have retained Kinsella Media, LLC ("KM") to design and implement a comprehensive class notice program.

---

[2] *See In re Music CD Minimum Advertised Price Antitrust Litigation*, 216 F.R.D. 197, 202-03 & n.10 (D. Me. 2003).

11.   KM is an advertising and legal notification firm in Washington, D.C. that specializes in the design and implementation of class action and bankruptcy notification programs. The firm has developed and directed some of the largest and most complex national notification programs in the country in antitrust, consumer fraud, mass tort and product liability litigation.[3]

12.   KM is recognized by both state and federal courts as an expert in legal notification.  Spearheading the notice program development in this in this litigation was KM Vice President Shannon R. Wheatman, PhD.  Prior to joining KM, Dr. Wheatman played an integral part in the development at the Federal Judicial Center (www.fjc.gov) of the illustrative, "model" forms of notice, designed to satisfy the plain language requirements of Federal Rule of Civil Procedure 23(c)(2). This research formed the basis for her doctoral dissertation, *The Effects of Plain Language Drafting on Layperson's Comprehension of Class Action Notices* (2001) (Ph.D. dissertation, University of Georgia).[4]

13.   She has published extensively, writing in the areas of class notice and claims administration.[5] KM developed a comprehensive notice program with the goal of informing as many class members as possible about the settlement in this case and how it will affect their rights.[6]

---

[3] *See* Declaration of Shannon R. Wheatman, Ph.D. on Adequacy of Notice Plan ¶ 4 ("Wheatman Decl."). A copy of the Wheatman Declaration, which includes copies of the proposed distribution plan, long and short form notices and the paper claim form, is Exhibit 53 in the Appendix hereto.  For clarity, all exhibits to the entire Report and Recommendations are being number sequentially beginning with those in the Appendix to Part I.

[4] Wheatman Decl., ¶6.

[5] *Id.* at ¶ 7.

[6] *Id.* at 10.

Report and Recommendations of Special Master re Notice Programs and Claims Procedures

14. KM and Dr. Wheatman designed the Class Notice Program to reach unknown class members in all levels of the DRAM distribution channels, including consumers who are beneficiaries of the *parens patriae* actions.[7]

15. After analysis of the composition of the proposed Indirect Purchaser Settlement Class, KM determined that the Class Notice Program should include the following components:

- Paid Media Notice in the United States;

- Earned media outreach through a national press release;

- Search engine advertising for the duration of the notice period;

- Providing a toll free number and a text messaging short-code to receive information via text; and

- A Settlement Website.[8]

16. To develop the Paid Media Notice component, KM engaged in an analysis of the target audience most likely to contain purchasers of DRAM containing products. KM then chose media vehicles to provide notice based on the reach and frequency of specific media for that target audience.[9] Based on the age and demographics most representative of those who purchased DRAM products, KM determined the target audience to be adults 25 years of age or older who are responsible for business purchases of items like computers and printers, individuals who own a personal computer, and

---

[7] *Id.* at 8.

[8] KM Notice Program, *In re DRAM Antitrust Litigation* ("KM Notice Program")*,* at 5-7.  A copy of the KM Notice Program is attached as Exhibit 1 to the Wheatman Declaration and as Exhibit 54 in the Appendix hereto.

[9] KM Notice Program at 8.

Report and Recommendations of Special Master re Notice Programs and Claims Procedures

individuals who own a computer printer or a video game system.[10]  KM then analyzed the type of media that the target audience uses.[11]

17.     The Paid Media Notice will include advertising in consumer magazines and newspapers, on network and cable television, and in online media.[12]  KM estimates that the Paid Media Notice portion of the notice program alone will reach an estimated 84.2% of adults age 25 or older an average of 3.5 times.[13]

18.     An Earned Media component will also be used to support the Paid Media program and provide additional notice to class members.  KM will distribute a national multimedia news release to the media, to websites, to databases and online services, and to journalists-only portals nationwide. Additionally, KM will work with the participating Attorneys General to create and disseminate state specific news releases from those offices.[14]

**B.     Proposed Forms of Notice**

19.     KM created a Publication Notice and a Detailed Notice for this case.[15]  The notices effectively communicate information about the settlements and carry a settlement information phone number and website address for potential class members to request or access further information and file a claim.[16]  Both notices were drafted by KM to be

---

[10] *Id.* at 9.

[11] *Id.* at 12-13.

[12] *Id.* at 14-28.

[13] *Id.* at 28.

[14] *Id.* at 29.

[15] Wheatman Decl., ¶¶26-30.

[16] *Id.*

Report and Recommendations of Special Master re Notice Programs and Claims Procedures

compliant with Fed. R. Civ. P. 23 and with the Federal Judicial Center's illustrative class action notices.[17]

20.     The Publication Notice is a single page of information for class members about the settlement and their rights.[18]  It is designed to convey the required information in a plain and understandable manner, as well as to be appealing to the eye and to motivate class members to access the hotline, text service or website for additional information and to file an online claim.  The Publication Notice describes the claims made in the lawsuit, defines the class, summarizes the settlement and the process for determining claims, provides information about how to make a claim, discusses the binding nature of the settlement and the right to request exclusion, and informs the class about the fairness hearing and the right to retain one's own counsel. The Publication Notice has a toll-free number to call for more information, a number to text to receive more information, and the web address of the DRAM claims website.[19]

21.     The Detailed Notice, which is available to class members online or on paper by request, provides extensive information about the case, the settlement, and class members' rights.[20] In addition, information from the Detailed Notice also appears in various pages and pop-up windows on the website.  The cover page of the Detailed Notice explains that settlements totaling $310 million were reached in class action lawsuits involving the sale of DRAM between January 1, 1998 and December 31, 2002

---

[17] *Id.*

[18]  A copy of the Publication Notice is Exhibit 7 to the Notice Program and is attached as Exhibit 55 in the Appendix hereto.

[19] *Id.*

[20]  A copy of the Detailed Notice is Exhibit 6 to the Notice Program and is attached as Exhibit 56 in the Appendix hereto.

Report and Recommendations of Special Master re Notice Programs and Claims Procedures

and contains a chart showing the legal rights and options of a class member in the settlement.[21]

22.    The Detailed Notice goes on to provide more extensive information about the lawsuit, DRAM and the devices that contain DRAM, and how a class action works. It also explains the involvement of the various state Attorneys General and the doctrine of *parens patriae*, and states that a separate notice will be mailed to government entities where that is required by state law.[22] A plain language definition of the class is provided, and it directs potential class members to www.DRAMclaims.com for the specific class definition.[23]

23.    The Detailed Notice shows the contribution of each Defendant to the Settlement Fund. It explains that the Attorneys General and Class Counsel who prosecuted the litigation will seek attorneys' fees from the Fund and that 1/9[th] of the Fund will be allocated to pay the claims for governmental entity purchases of DRAM containing products.  The Notice informs members of the Indirect Purchaser Settlement Class that (assuming counsel are awarded the benchmark fee) approximately $200 million will be available for distribution to class members.[24]

24.    It provides a detailed description of how Settlement Funds will be distributed based on the number of valid claims filed and the number and type of DRAM devices each claimant purchased. The Detailed Notice also describes the method for

---

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] *Id.*

Report and Recommendations of Special Master re Notice Programs and Claims Procedures

getting benefits from the settlement by submitting a Claim Form online or mailing a paper Claim Form.[25]

25.    The Detailed Notice explains the claims distribution methodology.  Class members are informed that the amount for each claim will depend on the number and type of DRAM containing products that a claimant purchased during the Class Period and that the amount each class member will recover cannot be known until all claims are received.[26]

26.    The Detailed Notice informs class members that if they stay in the class or Attorneys General actions, they are giving up their right to separately sue the Defendants for any claims they may have relating to this case. It then provides the process for excluding oneself from the class and the deadline for doing so. Class members are also informed about how to object to or comment on the settlement and the deadline for doing so.[27]

27.    The Detailed Notice lists the law firms representing the class in this case and states that class members do not need to separately pay Class Counsel because Class Counsel, along with the Attorneys General, will request attorneys' fees be awarded by the Court from the settlement proceeds.[28]

28.    Finally, the Detailed Notice provides information about the Fairness Hearing that will be held by the Court, the date on which the hearing will occur, and

---

[25] *Id.*

[26] *Id.*

[27] *Id.*

[28] *Id.*

Report and Recommendations of Special Master re Notice Programs and Claims Procedures

explains that class members are not required to be at the hearing but that they may request permission to speak at the hearing by writing to the Court.[29]

### C.    Proposed Claim Form

29.    Based on recent experience, it is reasonably predicted that most of the class members who file claims will complete the Claim Form online at the Settlement website, www.DRAMclaims.com. The Claim Form page on the website begins by stating that the claimant must submit a claim form in order to get money from the Settlement. This page also provides a link to click on to view the eligibility requirements.[30]

30.    The online Claim Form asks the class member to select from a menu of the most common categories of DRAM containing products, the type of DRAM containing products they purchased during the class period and to enter the number of those products they purchased.[31]  If claimants purchased more than 10,000 units of DRAM modules, they are asked to give the number of megabytes of DRAM on the modules.[32] If claimants purchased a product that is not listed, they select the "Other" category and a window opens that requests a description of product and the amount of DRAM in megabytes that the product contained.[33]  These are the only situations in which claimants must report the amount of DRAM, as opposed to the number of DRAM

---

[29] *Id.*

[30] A screen shot of each of the pages of the planned website discussed herein is attached as Exhibit 57 in the Appendix hereto.

[31] *Id.*

[32] *Id.*

[33] *Id.*

Report and Recommendations of Special Master re Notice Programs and Claims Procedures

containing products that they purchased.  For claims based on the purchase of a server, the price paid for the server is also requested.[34]

31.     After the information about the claimants' purchases is recorded, the Claim Form opens a window that asks whether the claimant is an individual or a business and obtains the claimant's contact information. Finally, the claimant must certify that the information they have given is correct.[35]  Class members may elect to submit a paper claim form and instructions for obtaining one are contained in both the Publication and Detailed Notices.[36]  Both the paper and online claim forms require the submission of the same information and certification.

**D.     Proposed Claims Processing Methodology[37]**

32.     Class Counsel (with the agreement of the Attorneys General) retained Jonathan Schwartz from Nathan Associates, an economic and financial consulting firm, to assist in developing a methodology for valuing claims by computing a claim value based upon information about the various DRAM containing products that were purchased by members of the Indirect Purchaser Settlement Class.  Because of the diversity of the DRAM-containing products in which DRAM was purchased during the class period and because it is likely that most class members would not know the exact DRAM content of those products, Class Counsel and the Attorneys General determined that the claims processing protocol should permit claimants to report their purchases by

---

[34] *Id.*

[35] *Id.*

[36] A copy of the proposed paper claim form is attached as Exhibit 58 in the Appendix hereto.

[37] In the Report Part I, the Special Master recommended that the Court adopt the proposed distribution and allocation plan. *See* Report Part I at ¶¶ 24, 201-292.  The proposed Claims Processing Plan covers certain aspects of the proposed distribution and allocation plan that deal with the valuing of individual purchase claims in the *pro rata* distribution.

product.  Mr. Schwartz was engaged to develop a means of translating those product purchases into a "DRAM value" for each claim.  Class counsel and the Attorneys General concluded that this protocol would best implement the *pro rata* distribution to which the parties had previously agreed in a manner that would encourage the submission of the highest practicable number of claims from persons in all sectors of the Indirect Purchaser Settlement Class – individuals and small businesses as well as large and small retailers and resellers.  Mr. Schwartz has a master's degree in economics and is a Chartered Financial Analyst. He has spent 11 years working for consulting firms providing economic analysis regarding class certification and liability and damages in large antitrust class action matters.[38]

33.     In a *pro rata* distribution, each claimant's share is the fraction that the value of his individual claim bears to the total value of all claims.  To determine the claim value for any individual claim, it is necessary to fix a claim value for each DRAM containing product purchased.  This is achieved by converting all DRAM containing products to a common unit that measures the value of its DRAM content.  In the methodology developed for this distribution, that unit is called a "computer equivalent unit" ("CEU"). One CEU is the average MBs of DRAM in a desktop computer during the Class Period. Thus, each reported purchase of a computer is valued at one CEU in the claims processing methodology.  No distinction is made between desktop and laptop computers.  Other DRAM containing products are also assigned a CEU value based on their average DRAM content in relation to the average DRAM content of a computer.[39] For example, portable media players like iPods were calculated to contain .10 CEU based

---

[38] *See* Declaration of Jonathan Schwartz, ¶¶ 1-2 ("Schwartz Decl.").  A copy of the Schwartz Declaration is attached as Exhibit 59 in the Appendix hereto.

[39] *Id.* at ¶¶ 10-15 & 23-42.

Report and Recommendations of Special Master re Notice Programs and Claims Procedures

on their DRAM content during the Class Period. This means that portable media players contained about 1/10 the amount of DRAM as a personal computer, so claims based on the purchase of these devices will be valued at 1/10 the value of a claim based on the purchase of a personal computer.[40]   The following is a chart showing the CEU value of common DRAM containing products:

| Computer Equivalent Units of Qualifying Products | |
| --- | --- |
| Category | Computer Equivalent Units |
| Computers - Laptops or Desktops | 1.00 |
| Printers | 0.05 |
| Memory Modules | 0.67 |
| Graphics Cards | 0.33 |
| Video Game Consoles | 0.10 |
| DVD Players | 0.05 |
| Personal Digital Assistants (PDAs) | 0.10 |
| MP3 Players | 0.10 |
| TiVo/Digital Video Recorders | 0.33 |
| Point of Sale Systems | 1.00 |

The CEU value of computer servers, for which claimants are required to state the purchase price, will be calculated at a rate of 1 CEU per $2,300 of server cost.  Claims for large quantities of modules and for products not listed above must be made in megabytes that will be converted to CEUs at the following rates:

| MBs of DRAM per CEU | |
| --- | --- |
| Year | MBs of DRAM |
| 1998 | 59 |
| 1999 | 68 |
| 2000 | 73 |
| 2001 | 153 |
| 2002 | 321 |

---

[40] *Id.* at ¶¶ 16-21, 36

34.     The dollar value of the CEUs in any individual claim will depend on the total number of CEUs represented by all of the valid claims submitted and the amount of money to be distributed.[41]

35.     Following the development of the above CEU values for DRAM containing products and the values for converting purchases reported in megabytes to CEUs, Mr. Schwartz's work was circulated to counsel for all parties, including the Attorneys General, Allocation Counsel for the reseller members of the proposed Indirect Purchaser Settlement Class and counsel for putative class member, Celestica.  At Celestica's behest, Mr. Schwartz's methodology was peer reviewed by Dr. Russell W. Mangum, who had previously submitted a report to the Special Master on the issue of the pass-through of damages by EMS resellers such as Celestica.[42]  After review, all parties agreed that the Schwartz methodology provides a fair, reasonable and adequate basis for determining the distribution values of DRAM modules and various DRAM containing devices purchased during the class period.

36.     All claimants will use the same claim form and each form will be given a CEU value using the same methodology. After the close of the claims period, and after all claim forms are audited (as necessary) and all timely, valid claim forms are valued, each claimant will be allocated a portion of the settlement fund based on the adjusted *pro rata* formula described below.

37.     In addition to a pro rata distribution, the agreed-upon distribution plan provides that a minimum recovery amount of $10 will be paid to all valid claimants,

---

[41] *See id.* at ¶¶ 10-15.

[42] *See* Letter to Special Master dated May 22, 2013, from Class Counsel, a copy of which is attached as Exhibit 60 in the Appendix hereto.

provided less than 5 million small claims are received.  A small claim is defined as a claim that in a pure *pro rata* computation (claim's CEU value/total of all claims' CEU values x money available for distribution) would be less then $10.  After such claims are identified and increased to $10, payments for the balance of all valid claims will be paid *pro rata* from the distribution funds remaining.

38.     If there are more than 5 million small claims, no checks will be issued to these claimants and instead there will be a $40 million *cy pres* distribution for the benefit of consumers. The plan of distribution also provides that a minimum of $25 million be directed for the benefit of small claimant consumers.  Therefore, if there are fewer than 2.5 million small claims, the difference between the total of the $10 payments for these claimants and $25 million will be reallocated *pro rata* to these claims.   If there are so few small claims that this reallocation would result in a recovery on small claims above the cap of single estimated damages, any excess over the cap will be distributed *cy pres*. As discussed in the Report Part I, these *cy pres* distribution provisions are only triggered by the receipt of an unexpectedly large or unexpectedly small number of small claims, or for the disposition of the residue of uncashed checks following an initial distribution.[43]

## VI.   THE PROPOSED GOVERNMENT PURCHASER NOTICE PROGRAM AND CLAIMS PROCESSING

### A.   The Government Purchaser and Oregon Notice Plans

39.     Government Purchaser Plaintiffs who are part of the proposed nationwide settlement classes[44] must be notified of the settlements, as well as the proposed plans of allocation and distribution, and have an opportunity to opt-out as provided by Rules

---

[43] Report Part I.

[44] The Settlement Classes of Government Purchaser Plaintiffs, as well as the proposed plans of allocation and distribution, are addressed in the Report Part I.  As discussed therein at ¶¶ 279-280, only certain states are representing some or all of their government purchasers as a class.

23(c)(2) and 23(e) and the Due Process Clause.  In addition, Government Purchaser

Plaintiffs in Oregon must also be notified of the settlements, and have an opportunity to

opt-out, under Oregon state law.[45]  Staff for the Oregon Attorney General has informed

the Special Master through Class Counsel for the Government Purchaser Plaintiffs

Settlement Classes that Oregonian law does not impose different requirements for notice

purposes than the Due Process Clause requires.[46]

40.     The Attorneys General in the Class States, and Non-Class State Oregon,

plan to notify these Government Purchaser Plaintiffs by the following methods: (1)

providing posts and links on the Attorneys General's web sites in these states; (2) e-

mailing or mailing notice to Government Purchaser Plaintiffs when they already have e-

mail or mail addresses in their possession, or, when such e-mail or mail addresses are not

readily available, through associations in each of the Class States representing counties,

cities, special districts, and K-12 school districts;[47] (3) providing posts and links on a

---

[45]  OR. REV. STAT. §646.775 (2)(a); see Letter to Special Master from Oregon Attorney General (May 20, 2013) ("Oregon Letter"), a copy of which is attached as Exhibit 61 in the Appendix hereto.  In Class Counsel's initial submission to the Special Master regarding notice, Class Counsel mentioned Idaho as a second Non-Class State for which notice was required.  However, Class Counsel has now informed the Special Master that Non-Class State Idaho no longer believes that notice to its government entities is required.  Letter to Special Master from Class States (May 20, 2013) ("Class States Letter"), a copy of which is Exhibit 62 to the Appendix hereto.  The Special Master will defer to the Attorney General of Idaho in this regard.

[46]  Oregon Letter..  In order for the Special Master to approve Oregon's proposed form of notice to its government entities, the Special Master must, under Oregon law, also approve the proposed distribution plan of the Oregon Attorney General as complying with that law.  Id.  Having reviewed that distribution plan, and receiving no objections from any party involved in these settlement proceedings, the Special Master approves the proposed distribution plan as complying with the requirements of Oregon law.

[47]  Originally, Class Counsel for the Government Purchaser Plaintiffs Classes Emilio E. Varanini proposed that political subdivisions in California be notified of these settlements via e-mail notice from associations that represent various sub-groups of California political subdivisions.  See Letter to Special Master from Class States (Jan. 20, 2012) a copy of which is attached as Exhibit 63 in the Appendix hereto.  See also, Fifth Supplemental Declaration of Emilio E. Varanini IV In Support of Notice Plan and Proposed Form of Notice, dated May 20, 2013, ("Fifth Varanini Decl.") at ¶ 3, a copy of which is attached as Exhibit 64 in the Appendix hereto.  However, Class Counsel has now informed the Special Master that, as a result of notice plans proposed in conjunction with settlements in other price-fixing cases in state court involving classes of

---

dedicated web site; and (4) providing a telephone number which Government Purchaser Plaintiffs in the Class States can use to call Class Counsel.[48]   The Government Purchaser Plaintiffs in the Class States, as well as those in Oregon, will also have the benefit of receiving notice indirectly of these settlements through the proposed notice to Indirect Purchaser Plaintiffs, which will mention that the settlements include claims made by Government Purchaser Plaintiffs.[49]

41.    The proposed form of notice to the Settlement Classes of Government Purchaser Plaintiffs, and the similar proposed form of notice to Non-Class State Oregon, communicate the following information to class members and to government entities in the State of Oregon:  (1) a brief explanation of the case, the claims, and the settlements— including the monetary and non-monetary benefits of those settlements; (2) who is included in these settlements, including those Government Purchaser Plaintiffs who are in the Settlement Classes and those who are represented by Non-Class State Oregon; (3) a statement that the District Court will exclude a Government Purchaser Plaintiff from the Settlement Classes (or, insofar as Oregonian government entities are concerned, from the Settlements) if that Government Purchaser Plaintiff so requests; (4) a procedure for requesting exclusion or, in the case of Government Purchaser Plaintiffs who are members of the Settlement Classes, objecting by a deadline; (5) a statement indicating the judge will bind all non-excluded class members as well as all non-excluded government entities

---

government entities in 2012 and 2013, Class State California has obtained the e-mail addresses of its political subdivisions.  Class States Letter,.. Accordingly, Class State California will use these e-mail addresses to notify directly its political subdivisions.  *Id.*

[48] Oregonian state agencies and political subdivisions will be encouraged to call the Oregon Attorney General.   Oregon Letter.

[49] *See, e.g.,* Class States Letter; Oregon Letter..

17

Report and Recommendations of Special Master re Notice Programs and Claims Procedures

in Non-Class State Oregon; and (6) a statement that any non-excluded class member may enter an appearance by counsel.[50]

42.     These proposed notices further inform Government Purchaser Plaintiffs in the Settlement Classes, and those government entities in Non-Class State Oregon, that counsel in this case will be requesting attorneys' fees and costs and that such requests will *not* exceed 30% in total of all of the settlement funds.[51]  And they provide various means by which class members and others can obtain further information about the case, the claims at issue, and the settlements, including web site addresses and telephone numbers.[52]

43.     These proposed notices do not detail the allocation and distribution plans or claims processes for Government Purchaser Plaintiffs in each Class State or in Non-Class State Oregon.  This is because those allocation and distribution plans vary widely from state to state depending upon local conditions, and are otherwise so detailed, that the proposed Notice Form would be too long and difficult to parse otherwise.[53]  Even for Oregon itself, given its proposed distribution plan, the proposed Notice form would be too long and difficult to parse if it had to spell out what each government entity in that State would be receiving.

44.     However, the proposed Notice form for the Class States explains generally the following: what percentage of settlement funds were reserved for state and local government entities being represented by Class and Non-Class States; how those

---

[50] *See* Exh. A to Class States Letter (Proposed Form of Notice to Government Purchaser Plaintiffs in Settlement Classes); Exh. A to Oregon Letter (Proposed Form of Notice to Oregon government entities).

[51] *See id.*

[52] *See id.*

[53] *See, e.g.,* Class States Letter.

settlement funds reserved for state and local government entities were allocated among Class States and Non-Class States; and how the Class States have proposed different distribution plans for the Government Purchaser Plaintiffs in the Settlement Classes according to the funds available pursuant to the allocation plan and local conditions.[54]   It directs interested Government Purchaser Plaintiffs to the proposed distribution plans for their Class States set out in the Special Master's Report and Recommendation, Part I, and otherwise provides contact information for them to follow up with the Attorneys General for their respective States.[55]   The proposed form of Notice for Oregon government entities is very similar.[56]

45.     Government Purchaser Plaintiffs Class Counsel drafted this notice based on his experience with notice plans for other settlements involving classes of non-state, non-federal government entities in order to comply with Federal Rule of Civil Procedure 23 and Due Process requirements.[57]   He then ran the notice by the notice experts hired to craft the notice for the Indirect Purchaser Plaintiff Settlement Class, who offered no substantive changes to the notice and have otherwise approved the notice as sufficing for Rule 23 and Due Process purposes.[58]   The proposed notice for Oregon government entities was drafted to track very closely the language used for the proposed form of notice for the Government Purchaser Plaintiff Classes.[59]

---

[54] *Id.*

[55] *See* Exh. A to Oregon Letter (Proposed Form of Notice to Government Purchaser Plaintiffs in Settlement Classes).  The fairness and adequacy of the proposed allocation and distribution plans were addressed in the Special Master's Phase I Report and Recommendation, and that discussion will not be repeated here.

[56] *Id.*

[57] *See, e.g.,* Class States Letter,  Fifth Varanini Decl. at ¶ 3.

[58] *Id.* at ¶ 4.

[59] Oregon Letter.

Report and Recommendations of Special Master re Notice Programs and Claims Procedures

**B.** **Government Purchaser Claims Processing and Oregon Distribution Plan Issues**

46.     The distribution plan for the Indirect Purchaser Settlement Class, which the Special Master recommended for adoption by the Court in Part I of this Report, left open the claims valuation and processing issues discussed above.  In contrast, the distribution plans proposed by the various Class States that were the subject of the Special Master's findings of fact and conclusions of law in Part I left open no claims valuation or processing issues.  Accordingly, separate findings and recommendations are not required here.

47.     Oregon set forth its own distribution plan, separate from the Class States.[60] Under Oregon law, the Court must approve the proposed distribution plan of the Oregon Attorney General as complying with that law.  Having reviewed that distribution plan, and receiving no objections from any party involved in these settlement proceedings, the Special Master finds that the proposed distribution plan complies with the requirements of Oregon law.

## VII.   FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING THE ADEQUACY OF THE NOTICE PLANS AND OF THE CLAIMS PROCESSING PROTOCOLS FOR THE INDIRECT PURCHASER SETTLEMENT CLASS

48.     Pursuant to the referral orders of this Court, the Special Master was asked to review the proposed notice plans and forms in order to ensure that settlement class members will adequately be informed about the settlements and their rights.[61]

49.     Under due process, all interested parties must be given notice of the final disposition of a case that may affect their rights in a manner reasonably calculated under

---

[60]  Oregon Letter.

[61] *See, e.g.,* Docket No. 1787.

the circumstances to reach them. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (citing *Milliken v. Meyer*, 311 U.S. 457 (1940), *Grannis v. Ordean*, 234 U.S. 385 (1914), *Priest v. Board of Trustees of Town of Las Vegas*, 232 U.S. 604 (1914), *Roller v. Holly*, 176 U.S. 398 (1900)).  This general requirement is reflected in the requirements of Rule 23.

50.     Rule 23 requires that clear and understandable notice be given in a reasonable manner to all class members who would be bound by a proposed settlement. *See* Fed. R. Civ. P. 23. Where, as in this case, the class is certified under Rule 23(b)(3), the more detailed provisions of Rule 23(c)(2)(B) apply: "[T]he Court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."

51.     The focus of the plans as to the Indirect Purchaser Plaintiffs and the Government Purchaser Plaintiffs is to provide sufficiently broad national coverage in reaching as many members of the Indirect Purchaser Class and the Government Purchaser Classes as is reasonably feasible so as to provide them with opportunities to learn about their legal rights concerning the Settlements and to object or opt-out. However, due to the differences in size and the ability to ascertain the identity of the individual members, this Report will separately discuss compliance with Rule 23 by the Indirect Purchaser Settlement Class Notice program and forms and by the Government Purchaser Settlement Classes Notice program and forms.[62]

---

[62] Though the notice to Oregon government entities need only comply with Due Process requirements, the language used in the notice closely tracks the language used in the notice to the Government Purchaser Plaintiffs Classes.

Report and Recommendations of Special Master re Notice Programs and Claims Procedures

**A.      The Indirect Purchaser Settlement Class Notice Program Provides the Best Notice Practicable Under the Circumstances**

52.      The Special Master concludes that the proposed Class Notice Program provides "the best notice that is practicable under the circumstances." *See* Fed. R. Civ. P. 23(c)(2)( B). Notice that is "reasonably certain to inform those affected" satisfies this due process requirement. *See In re Victor Technologies Securities Litigation*, 792 F.2d 862, 865 (9th Cir. 1986) (quoting *Eisen v. Carlisle & Jacquelin (Eisen IV)*, 417 U.S. 156, 174 (1974)).

53.      In this case, identification of individual class members could not be accomplished through reasonable effort. In the Report Part I, the Special Master found that it was not necessary for the record to contain the precise number of putative class members, and noted that Plaintiffs filed declarations stating that the number of indirect purchasers of DRAM in the United States during the class period is in the tens of millions.[63] Defendants do not have a list of potential class members, and it is not practicable to develop such a list when common sense dictates that it would encompass a significant portion of the adult population of the United States. Therefore, notice by publication is the only reasonable method for informing the Indirect Purchaser Settlement Class of the settlement. *See In re Tableware Antitrust Litigation*, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007).

---

[63] Report Part I (Dkt. No. 2132) at ¶ 118, citing Declaration of Josef D. Cooper in Support of Preliminary Approval of Class Action Settlements with Samsung and Winbond Defendants, filed October 10, 2007 (Dkt. No. 1747-9) at ¶ 12 and Declaration of Blake L. Harrop in Support of Preliminary Approval of Class Action Settlements with Samsung and Winbond Defendants, filed October 10, 2007 (Dkt. No. 1747-10) at ¶ 9.

54.     Plaintiffs' Notice Program consists of publication notice through a Paid Media program and an Earned Media program, as well as a website, toll free phone line, and text messaging short code.[64]

55.     Notice by publication is appropriate when the identity and location of class members cannot be ascertained through reasonable effort. *See In re Wal-Mart Stores, Inc. Wage and Hour Litigation*, No. 06-02069 SBA, 2008 WL 1990806, at *2 (N.D. Cal. May 5, 2008). Additionally, several courts have held that establishing a website is an appropriate method of providing class members with notice and information. *See, e.g.*, *Adoma v. Univ. of Phoenix, Inc.*, No. CIV. S-10-0059, 2010 WL 4054109, at *2 (E.D. Cal. Oct. 15, 2010) (website sufficient for providing case documents and contact information consistent with Federal Judicial Center's model class notice).

56.     Here, KM has created an extensive targeted Notice Program that will reach an estimated 84.2% of those most likely to be class members, adults age 25 or older, an average of 3.5 times.[65] The Publication Notice will be published in national and local newspapers, consumer magazines, on major television networks as well as cable networks, and online through banner advertisements.[66] Additionally, KM will engage in an Earned Media program and disseminate press releases that will likely generate additional media coverage of the Settlement.[67] These media programs, along with the supporting telephone information line, text messaging information, and Settlement

---

[64] *See* KM Notice Program.

[65] *Id.* at 28.

[66] *Id.* at 14.

[67] *Id.*

Website will provide the widest notice practicable to those in all parts of the country who are likely to be class members.

57.     This extensive publication and media campaign is the best practicable method under the circumstances for notifying class members of the settlement benefits and the release of their claims. It is impossible to identify all potential class members, but notice via publication as created and implemented by KM is reasonably certain to reach most class members and is therefore in compliance with due process and Rule 23.

**B.     The Proposed Notice Forms For the Indirect Purchaser Settlement Class Adequately Explain Class Members' Rights**

58.     Under Rule 23(c)(2)(B), a class action notice

> must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests an exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). The purpose of such notice is to "present a fair recital of the subject matter of the suit and to inform all class members of their opportunity to be heard." *In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1125 (9th Cir. 1977) (citations omitted).

59.     If a notice complies with the requirements of Rule 23(c)(2)(B), the notice will generally be approved by the Court. *See Villegas v. J.P. Morgan Chase & Co.*, 2012 WL 5878390, at *8 (N.D. Cal. Nov. 21, 2012). Here, the proposed Publication Notice and Detailed Notice meet the requirements of Rule 23.

60.     The Notice Program addresses each of Rule 23's requirements in a clear and easily understood manner. The Publication Notice covers each of the areas of

information specifically required by Rule 23, and refers readers to the website and other sources for obtaining the extensive information contained in the Detailed Notice.[68]  The Detailed Notice, the salient information from which is set forth on the pages of the website, describes the claims made in the lawsuits, names the defendants, and provides a class definition.[69] It describes the Settlement, breaks down the amount in the Settlement Fund by defendant, and gives further information on requesting exclusion from the Settlement Class or objecting to the settlement and/or participating in the Fairness Hearing.[70]  It also provides a clear and concise explanation of how to submit a claim and how a claimant's recovery will be determined.[71]

61.     Class members are also informed that electing to remain in the class removes any right to independently sue the Defendants for related claims.[72]

62.     The Detailed Notice also informs class members of the identity of Class Counsel, how Class Counsel will be paid, and of class members' right to retain their own lawyer to represent them in these proceedings at their own expense.[73]

C.     **The Indirect Purchaser Settlement Class Claims Processing Protocols Are Fair, Reasonable and Adequate**

63.     The proponents of a class action settlement "bear the burden of developing a record demonstrating that the settlement distribution is fair, reasonable and adequate." *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1147 (11th Cir. 1983), *accord*, *Faught v. Am.*

---

[68] *See* Exhibit 3.

[69] *See* Exhibit 4.

[70] *Id.*

[71] *Id.*

[72] *Id.*

[73] *Id.*

Report and Recommendations of Special Master re Notice Programs and Claims Procedures

*Home Shield Corp.*, 668 F.3d 1233, 1239 (11th Cir. 2011). *See also, Pierce v. Rosetta Stone Ltd.*, 2013 U.S. Dist. LEXIS 63856 (N.D. Cal. May 3, 2013). In Part I of this Report, the Special Master discussed the voluminous record upon which the parties relied in negotiating the modified *pro rata* distribution that was recommended to and approved by the Special Master. A *pro rata* distribution pays claims on the basis of the relative amounts of DRAM purchased by each claimant.

64. However, since most claimants will be able to ascertain the identity of the products containing DRAM that they purchased during the class period far more readily than the amount of DRAM (i.e., megabytes of memory) in those products, the Special Master concludes that the most fair and reasonable claims methodology would be one that allows claimants to report their DRAM purchases by providing the identity and number of DRAM containing products purchased during the class period. The claims methodology would then supply the means by which the relative DRAM content of the products class members purchased could be estimated and used to compute each claimant's share of the settlement distribution.

65. As part of the development of the Claims Processing Program here, the parties developed a methodology for determining the relative amounts of DRAM purchased by class member claimants from information that can be readily and easily supplied on a clear and understandable Claim Form. This methodology and its factual underpinnings and underlying assumptions was reviewed and approved by counsel representing each of the major constituencies within the proposed Indirect Purchaser Settlement Class. The Special Master likewise has independently reviewed the Schwartz methodology and finds it to be a fair, reasonable and adequate means of valuing each claimant's DRAM purchases for the purpose of computing each claimant's share of the distribution of the settlement proceeds.

66.     The Special Master further finds that the proposed Claim Form in both its online and paper formats is clearly written in plain English and should be easy for claimants to understand and submit, and that the Claims Processing Instructions clearly and adequately communicate to potential claimants that they will receive their appropriate *pro rata* share of the Settlement based on the number and type of DRAM containing products they purchased during the Class Period.

**D.     The Government Purchaser Class Notice Program Provides the Best Notice Practicable Under the Circumstances**

67.     Pursuant to the referral orders of the District Court, the Special Master was asked to review the proposed notice plans and forms in order to ensure that government purchaser settlement class members were adequately informed about these settlements and their rights.[74]  Here, the class members are known and, although quite numerous,[75] can be reached by notice either directly or through associations that comprise various sub-groups of class members in individual Class States.

68.     Rule 23 and Due Process principles require Class States to use "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."[76]  A proposed notice plan must therefore provide for notice "in a reasonable manner to all class members who would be bound by the proposed settlement."[77]  Because Oregon follows Due Process principles in requiring it to notify its government entities of settlements it reaches on their behalf, and

---

[74] *See, e.g.,* Docket No. 1787.

[75] The issue of the numerosity of the Government Purchaser Plaintiffs who are members of the Settlement Classes is addressed in the Special Master's Phase I Report and Recommendation.  That discussion will not be repeated here.

[76] FED. R. CIV. P. 23(e); *see Wal-Mart v. Dukes*, 131 S. Ct. 2541, 2558 (2011).

[77] FED. R. CIV. P.  23(e).

Report and Recommendations of Special Master re Notice Programs and Claims Procedures

those entities are known albeit numerous, the applicable standards do not differ for it insofar as its notice plan is concerned.

69. The proposed notice plans here of e-mailing or mailing notice, supplemented by posting the notice on web sites with links and phone numbers, was developed in large part from a similar notice plan approved by this Court in *In re Online DVD Antitrust Litigation*.[78] Insofar as it includes such items as press releases by Attorneys General for the Class States and Oregon, it also reflects the experience of the Attorneys General as to the positive effects of such releases on ensuring the dissemination notice in cases such as *In re Music CD Antitrust Litigation*.[79] Class Counsel has estimated based on his experience in representing Government Purchaser Plaintiffs that notice shall be received by almost 100% of Government Purchaser Plaintiffs,[80] and the Special Master finds that estimate to be credible. Though the Attorneys General generally cannot guarantee that every Government Purchaser Plaintiff will receive the requisite notice (e.g., instances may exist in which an e-mail address for a Government Purchaser Plaintiff can quickly become out of date even if recently obtained), the law does not require that each class member actually receive notice.[81]

70. Consequently, after having reviewed materials from *In re Online DVD Antitrust Litigation* provided by Counsel for the Government Purchaser Plaintiffs

---

[78] *See, e.g.,* Class States Letter to Special Master, Part I Appendix, Exhibit 45 (including materials provided in *In re Online DVD Antitrust Litigation* to the Court as well as a description of the notice plan proposed in that case). That estimate included the State of Oregon and neither Oregon nor Class Counsel have provided any supplemental briefing to indicate that this estimate was incorrect.

[79] *Id.* The proposed dissemination of notice to the Indirect Purchaser Plaintiff Settlement Classes also incorporates the issuance of press releases by Attorneys General due to their potentially positive effect on the dissemination of notice to potential class members.

[80] *See, e.g., id.*, Fourth Suppl. Decl. of Emilio E. Varanini at 3 ¶ 7.

[81] *See, e.g., Mullane*, 339 U.S. at 319.

Report and Recommendations of Special Master re Notice Programs and Claims Procedures

Settlement Classes and the declaration of counsel for the Government Purchaser Plaintiffs Settlement Classes,[82] the Special Master finds that the proposed notice plans of the Government Purchaser Plaintiffs Settlement Classes and Oregon satisfy Due Process and, insofar as the Settlement Classes are concerned, also satisfy Rule 23.   The Special Master thus recommends that the District Court adopt the proposed plans for notice by the Government Purchaser Plaintiffs of the Settlement Classes and Non-Class State Oregon.

71.    Turning to the proposed notice forms, Due Process requires at a minimum that the notice inform class members in the Government Purchaser Plaintiffs Settlement Classes (or government entities in Oregon) of the pendency of the action and of their rights, including their ability to opt-out of the settlements.[83]   It also requires that class members be provided with a means in that notice by which they can, in a reasonable amount of time, request their exclusion from the settlement or by which they can object.[84] The Special Master finds that the proposed forms of notice comply with these Due Process requirements.

72.    Earlier in this Report and Recommendation, the Special Master discussed the requirements imposed by Federal Rule of Civil Procedure 23(c)(2)(B) on the form of notice for class members, and he incorporates that discussion here.   As the Special Master pointed out, if a notice complies with the requirements of Rule 23(c)(2)(B), the notice

---

[82] *See, e.g., Class States Letter to Special Master*, Part I Appendix, Exhibit 45 (including materials provided in *In re Online DVD Antitrust Litigation* to the Court as well as a description of the notice plan proposed in that case).

[83] *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); *accord Wal-Mart*, 131 S. Ct. at 2559.

[84] *Shutts*, 472 U.S. at 812, 814.  Oregonian law does not provide a means by which government entities being represented by their Attorney General may object to the settlements (as opposed to opting-out, which is permitted).  The Special Master is aware of no case law that required Oregon as a matter of constitutional law to afford to its government entities the ability to object (as opposed to opting-out) of a settlement that its Attorney General agreed to in a *non-class action*.

will generally be approved by the Court.  The Special Master finds the proposed form of notice also complies with Rule 23(c)(2)(B).  Accordingly, the Special Master also recommends that the District Court find the proposed form of notice for Government Purchaser Plaintiffs in the Class States and Non-Class State Oregon complies with the Due Process Clause and Rule 23.

## VIII.  CONCLUSION

For the above-stated reasons, the Special Master finds that the Indirect Purchaser and Government Purchaser Class Notice Programs satisfy the requirements of Fed. R. Civ. P. 23 and due process and recommends that these notice programs be implemented upon preliminary approval of the Settlement.  The Special Master further finds that the claims processing procedures outlined above are fair, reasonable and adequate and recommends that they be adopted by the Court upon final approval of the settlements.


DATED:  June 24, 2013                    /s/ Charles B. Renfrew
                                         Hon. Charles B. Renfrew (Ret.)
                                         Special Master

---

Report and Recommendations of Special Master re Notice Programs and Claims Procedures