Exhibit 69

1  KAMALA D. HARRIS
   Attorney General of California
2  KATHLEEN FOOTE
   Senior Assistant Attorney General
3  EMILIO E. VARANINI
   Deputy Attorney General
4  State Bar No. 163952
     455 Golden Gate Avenue, Suite 11000
5    San Francisco, CA 94102-7004
     Telephone: (415) 703-5908
6    Fax: (415) 703-5480
     E-mail: Emilio.Varanini@doj.ca.gov
7
   *Attorneys for Plaintiffs*
8  State of California *et al.*

9
                    UNITED STATES DISTRICT COURT
10                NORTHERN DISTRICT OF CALIFORNIA
                         OAKLAND DIVISION
11

12 | In re DYNAMIC RANDOM ACCESS | Master File No. M-02-1486-PJH |
   | MEMORY (DRAM) ANTITRUST | |
   | LITIGATION | MDL No. 1486 |
13 | | |
   | | Case No. C 06-4333 PJH |
14 | This document relates to: | Case No. C 06-6436 PJH |

15    **ALL INDIRECT PURCHASER
      ACTIONS**                        **DECLARATION OF CHAIR OF
16                                     MULTISTATE GROUP, AND
   and                                 LIAISON COUNSEL, FOR
17                                     ATTORNEYS GENERAL IN
   *State of California et. al. v. Infineon*   **SUPPORT OF THE JOINT MOTION
18 *Technologies AG, et al.*          FOR ATTORNEYS' FEES AND THE
                                       ATTORNEYS GENERAL'S MOTION
19                                     FOR COSTS**
   and
20
   *State of New York v. Micron Technology,*
21 *Inc., et al.*
                                       Judge: Honorable Phyllis J. Hamilton
22
                                       Special Master: Hon. Charles B. Renfrew
23

24 **Background of Declarant**

25 1.  Since 2005, I have been lead counsel for California in the above-entitled actions as

26 well as liaison counsel and chair for the Attorneys General's multistate group in *State of*

27 DECLARATION OF EMILIO E. VARANINI,                    MASTER FILE NO. M-02-1486 PJH
   CHAIR AND LIAISON COUNSEL                             CASE NOS. C-06-4333 PJH; C-06-6436
28
                                      1

1   *California et al. v. Infineon Technologies et al.* and *State of New York v. Micron*

2   *Technology, Inc., et al.*   I am admitted to the bar for the Northern District of California

3   and make this declaration on behalf of the application of the Attorneys General for fees

4   and costs.  I can testify competently to the facts set forth herein if called to testify.

5

6   **Introduction: Scope of Work**

7   2. The time and expenses reported by the Attorneys General as attached to the joint

8   petition for fees and the Attorneys General's petition for costs were incurred for the direct

9   benefit of governmental entities in all of their States and natural persons in two-thirds of

10  their States, and corporate entities in four States.  In addition, the Attorneys General and

11  the Indirect Purchaser Plaintiffs worked closely together in the litigation of other aspects

12  of this matter.   The attorneys prosecuting this litigation on behalf of their respective

13  Attorneys General, such as myself, are among the most experienced government antitrust

14  litigators in the country, with decades of experience in prosecuting antitrust and

15  consumer actions on behalf of the states.  Generally speaking, the Attorneys Generals'

16  contribution to the litigation and settlement of the case can be broken down as follows.

17

18  *Pre-Complaint Investigation and Filing of Complaint*

19  3. Prior to the filing of the multistate complaint in the *Infineon* and *Micron* actions in the

20  summer of 2006, the Attorneys General started their investigation of this matter by

21  drafting and serving investigative subpoenas, securing from the Defendants the

22  production of millions of pages of documents and data that they previously produced to

23  the federal grand jury, and reviewing the plea agreements between certain Defendants

24  and the United States Department of Justice.  The Attorneys General also started

25  investigating and collecting records of the purchases of DRAM-containing equipment by

26

27

28  DECLARATION OF EMILIO E. VARANINI,                    MASTER FILE NO. M-02-1486 PJH
    CHAIR AND LIAISON COUNSEL                             CASE NOS. C-06-4333 PJH; C-06-6436

                                        2

1  their government entities.  At the same time, the Attorneys General selected a liability

2  and damages expert, Dr. Kenneth Flamm, to aid them in the review and possible

3  prosecution of the case.  It is important to note at the onset that the group of Attorneys

4  General involved in this matter was extremely large, reflecting the importance of this

5  matter to their States.  Although currently there are 33 States involved in this matter,

6

7  early settlements with two of the Defendants, Samsung and Winbond, involved 44 States.

8  4.  As the Attorneys General engaged in an initial review of this matter, and drafted

9  investigative subpoenas that were issued under the authority of the State of Washington[1]

10  (so that the documents and data obtained could be shared among all the Attorneys

11  General), the Attorneys General reached out to the Indirect Purchaser Plaintiffs to ensure

12  the efficient coordination of the ensuing litigation.

13

14  5.  The Attorneys General also worked to set up an internal structure for the efficient

15  coordination of their investigative, litigation, and settlement efforts.  Ultimately, this

16  structure involved the designation of a Chair of the multistate group of Attorneys General

17  to set the agenda for the Executive and Multistate Committees, which is myself, the

18  designation of a liaison counsel with lead counsel powers,[2] which is the State of

19  California with myself serving as lead counsel, the designation of additional co-lead

20

21

22

23  [1] A couple of the to-be Plaintiff States, such as the State of New York and the State of Florida, issued their
own investigative subpoenas because of the requirements of their own state laws.  However, the Attorneys

24  General worked closely together to harmonize their subpoenas and ensure a single production of the
requested documents and data.

25  [2] In addition to serving as the point of contact between the Attorneys General and the District Court, the
liaison counsel also served as the point of contact between the Attorneys General on the one hand and the

26  Defendants and Direct and Indirect Purchaser Plaintiffs on the other hand.

27

28  DECLARATION OF EMILIO E. VARANINI,                    MASTER FILE NO. M-02-1486 PJH
CHAIR AND LIAISON COUNSEL                              CASE NOS. C-06-4333 PJH; C-06-6436

1    counsel which are currently the States of Florida, Illinois, and Oregon, the execution of a

2    multistate cost-sharing agreement, and the formation of several working committees.

3    6. Those committees are described in more detail as follows: First, an Executive

4    Committee was formed, which ultimately consisted of the States of Arizona, California,

5

6    Florida, Illinois, Maryland, New York, Oregon, Pennsylvania and Washington. The

7    Executive Committee reflects the diversity of the Attorneys General involved in this

8    matter as well as this matter's intrinsic importance.[3] The role of the Executive Committee

9    was to make key investigative, litigation, and settlement recommendations to the

10   multistate group and, in conjunction with co-lead and liaison counsel, to engage in the

11   week-to-week management and coordination of investigative, litigation, and settlement

12

13   issues in this case. The Executive Committee also had the responsibility to form other

14   committees as needed to aid it in its work; such committees included a Discovery

15   Committee, a Complaint Committee, an Expert Committee, a Finance Committee, and a

16   Fees Committee. The District Court in the *Infineon* and *Micron* matters approved the

17   role of the Executive Committee, and of the co-lead and liaison counsel, in its case

18   management order [Docket # 138].[4]

19   7. Second, a Multistate Committee was formed, consisting of all of the States involved in

20

21   the investigation, and subsequent litigation, of the *Infineon* and *Micron* matters above.

22   [3] There has been some fluctuation in the composition of the Executive Committee, especially early in the
     investigation and litigation of the case. However, for nearly the entire length of this case, the composition
23   of the Executive Committee has been as described above.

24   [4] The State of New York filed its own complaint, separate from that of the other Attorneys General, in the
     *Micron* matter above. Though the New York Attorney General pursued a number of New York-specific
25   issues, the New York Attorney General also worked in conjunction with the other Attorneys General on
     issues of mutual benefit, and coordinated its efforts with those of the other Attorneys General in efficient
26   and effective ways through the committees discussed above.

27

28   DECLARATION OF EMILIO E. VARANINI,                          MASTER FILE NO. M-02-1486 PJH
     CHAIR AND LIAISON COUNSEL                                   CASE NOS. C-06-4333 PJH; C-06-6436

                                                  4

1  The role of the Multistate Committee was to make key investigative, litigation, policy,

2  and settlement decisions at the staff level (certain decisions had to be made on a final

3  basis at the Attorney General level such as the filing of a complaint or the acceptance of

4  settlement terms) based on recommendations from the Executive Committee and to

5

6  otherwise provide feedback to the Executive Committee, to co-lead/liaison counsel, and

7  to other committees, in their exercise of day-to-day or week-to-week control of the case.

8  Meetings of the Multistate Committee were held, until recently, on a weekly or bi-weekly

9  basis.  The Executive Committee was tasked with timely reporting of issues and needs to

10  the Multistate Committee so that investigative, litigation, and settlement issues could be

11  coordinated and addressed in an effective and efficient way.  The District Court in the

12

13  *Infineon* and *Micron* matters approved the role of the Multistate Committee in its Case

14  Management Order [Docket # 138].[5]

15  8.  Third, as referenced above, a number of specific committees were formed to ensure

16  the coordination and efficient handling of investigative and litigation issues.  Those

17  committees include the Discovery Committee, to coordinate and manage offensive and

18  defensive investigation and litigation; the Expert Committee, to coordinate and manage

19  the use of our expert on liability, damage, class and settlement issues; the Complaint

20  Committee, to coordinate the drafting and filing of the complaint in the *Infineon* matter;

21

22  the Finance Committee, to scrutinize carefully and approve when necessary the

23  expenditure of funds in this case; and the Fees Committee, which tracked, scrutinized,

24

25  [5] As with the Executive Committee, the composition of the Multistate Committee has fluctuated over time, especially early in the investigation and litigation of the *Infineon* and *Micron* matters.  However, for most of the duration of the litigation and settlement of these matters, the Multistate Committee has consisted of 33 States.

26

27

28  DECLARATION OF EMILIO E. VARANINI,          MASTER FILE NO. M-02-1486 PJH
   CHAIR AND LIAISON COUNSEL                   CASE NOS. C-06-4333 PJH; C-06-6436

5

1    and reduced when appropriate the hours submitted by individual Attorneys General to

2    ensure strict compliance of the time reported with case law and the National Association

3    of Attorneys' General protocol requirements.[6] The role played by individual Attorneys

4    General on these committees, or on assignments made by these committees, is described

5    

6    in the declarations of individual Attorneys General. While those descriptions will not be

7    repeated here, it should be noted that every effort was made by the Executive Committee,

8    by co-lead counsel, and by myself, to avoid unnecessary, inefficient, or duplicative work

9    in the *Infineon* and *Micron* matters by individual Attorneys General.

10   9. The Attorneys General's participation in settlement negotiations were handled by *ad*

11   *hoc* groups of Attorneys General in conjunction with the Executive Committee. The

12   finalization and execution of settlement agreements was handled by myself with the *ad*

13   *hoc* assistance of other Attorneys General as described in the attached declarations. The

14   declarations of individual Attorneys General set out their roles insofar as settlement

15   

16   negotiation and drafting are concerned. Every effort was made insofar as settlement

17   negotiation and drafting was concerned to ensure effective coordination and avoid

18   unnecessary duplication of effort both within the multistate group and with class

19   counsel.[7]

20   10. Prior to the filing of the multistate complaint in the *Infineon* action, the States of

21   California and Illinois led settlement negotiations with Samsung for the multistate group.

22   

23   

24   ---

[6] Those protocol requirements are attached hereto as Exhibit A.

25   [7] Though, as noted below, the *ad hoc* group charged with negotiating the Multi-Defendant Settlement Agreement was larger than the groups charged with negotiating the other settlement agreements, the size of that group was justified by the fact that this settlement agreement had to be hammered out with what was the largest single group of Defendants over the course of several mediations.

26   

27   

28   DECLARATION OF EMILIO E. VARANINI,          MASTER FILE NO. M-02-1486 PJH
     CHAIR AND LIAISON COUNSEL                   CASE NOS. C-06-4333 PJH; C-06-6436

1   This effort included joint work to determine the percentage of purchases of DRAM-

2   containing equipment made by government entities.

3   *Preparing the Case against the Defendants*

4   11. In preparing their case for trial, the Attorneys General engaged in the following

5   additional tasks as set out in their individual declarations: (a) Drafted and served a second

6   round of discovery subpoenas on all Defendants which were designed to elicit narrative

7   statements explaining their role in the conspiracy, isolated those documents most

8   probative of illicit information exchanges from the millions of pages of documents

9   produced as part of the grand jury database, and provided information buttressing the

10   existence of phone calls involving such illicit information exchanges;[8] (b) Further

11   developed the case against the Defendants and the work already done by the Indirect

12   Purchaser Plaintiffs by continuing review of the grand jury documents as well as

13   supplemental document productions, interviewing additional former employees of the

14   Defendants, and conducting additional depositions of a number of employees of the

15   Defendants; (c) Developed theories of liability against the Defendants, beyond those

16   already developed by the Direct and Indirect Purchaser Plaintiffs, such as output

17   signaling—where Defendants signaled to each other that output should be limited,

18   followed by actual throttling of output— or agency liability against Defendant Nanya

19   Taiwan; (d) Further developed the case regarding impact and damages by conducting

20   interviews of witnesses at Sun and Hewlett-Packard, by conducting additional

21   depositions of resellers and other intermediaries such as Ingram Micro, SMART

---

26   [8] This included drafting a protective order.

DECLARATION OF EMILIO E. VARANINI,            MASTER FILE NO. M-02-1486 PJH
CHAIR AND LIAISON COUNSEL                     CASE NOS. C-06-4333 PJH; C-06-4436

7

1    Technologies, and Kingston, and negotiating for data from various retailers such as Best

2    Buy; (e) Conducted expert discovery, including expert reports and testimony involving

3    Dr. Flamm in connection with the California and New Mexico governmental entity class

4    motion–reports and testimony which served as an essential foundation for his opinion on

5
6    pass-on which was relied on by the Attorneys General in the settlement allocation

7    proceedings, and for use of the full-time employee ("FTE") method that was used in

8    allocating settlement funds to government entities for Class and Non-Class States as part

9    of settlement allocation proceedings; and (f) Litigated vigorously and successfully *City of*

10   *Los Angeles et al. v. Infineon Technologies et al.* No. CGC-08-480561 (San Francisco

11   Super. Ct. complaint filed Oct. 3, 2008) as well as the *Micron* matter filed by the State of

12
13   New York, and certain state-specific matters such as the motion to strike affirmative

14   defenses filed by the State of Florida.

15   12.    *City of Los Angeles* is the case that the State of California filed in the California

16   Superior Court on behalf of 97 California local government entities after the District

17   Court declined to certify a class of local government entities. The State of California

18   faced and prevailed on a number of motions brought by Defendants to defeat its claims.

19   Additionally, California was able to develop additional evidence against Defendants.

20
     *Creation of Supplemental Databases and Development of Order of Proof*
21
22   13. As set out in the individual declarations of the Attorneys General, the Attorneys

23   General took the database furnished by the Indirect Purchaser Plaintiffs and collectively

24   created supplemental and extensive databases and document repositories. The need for

25   such supplemental databases followed from supplemental document and data productions

26   to the Attorneys General, from supplemental depositions and interviews taken by the

27

28   DECLARATION OF EMILIO E. VARANINI,                    MASTER FILE NO. M-02-1486 PJH
     CHAIR AND LIAISON COUNSEL                             CASE NOS. C-06-4333 PJH; C-06-6436

                                              8

1    Attorneys General, and from the need to cull the information contained in the millions of

2    pages of the grand jury database and the sizeable number of depositions taken by the

3    Direct and Indirect Purchaser Plaintiffs.  The Attorneys General also prepared for trial by

4    creating an order of proof for the case.   All of this was begun while the Attorneys

5
     General were coordinating their efforts with the Indirect Purchaser Plaintiffs but
6
7    continued apace when the case of the Indirect Purchaser Plaintiffs was stayed while

8    awaiting a decision from the United States Court of Appeals of the Ninth Circuit on the

9    District Court's AGC Order.

10   *Governmental Entity Discovery and Defending against Motions to Dismiss*

11   14. As set out in individual declarations of the Attorneys General, the Attorneys General

12
     vigorously opposed extensive discovery efforts by the Defendants aimed at the
13
14   government entities they represented, as well as comprehensive efforts by the Defendant

15   to dismiss many of their claims.  Opposing these efforts required not just substantial

16   communication and coordination between Attorneys General and the represented

17   government entities, but also among the Attorneys General to ensure a consistent and

18   coordinated strategy and to ensure that sufficient resources were available.  Ultimately,

19
     insofar as this discovery was concerned, the Attorneys General successfully persuaded
20
21   the District Court to limit and narrow that discovery.  However, even then, the Attorneys

22   General still had to defend depositions across the nation and answer interrogatories.  And,

23   insofar as the motions to dismiss were concerned, the Attorneys General successfully

24   preserved the vast majority of the Attorneys General's cases, thus making it clear to

25   Defendants that they could not obtain the dismissal of the claims before trial no matter

26

27

28   DECLARATION OF EMILIO E. VARANINI,                    MASTER FILE NO. M-02-1486 PJH
     CHAIR AND LIAISON COUNSEL                              CASE NOS. C-06-4333 PJH; C-06-6436

1   what occurred in the Ninth Circuit insofar as the Indirect Purchaser Plaintiffs were

2   concerned.

3   *Duties Specific to Settlements and to Settlement Allocation*

4   15.  As set out in their individual declarations, the Attorneys General substantially

5   prepared for, and then participated vigorously in, all of the settlement negotiations and

6   mediations, as well as devoted substantial time in the drafting of the actual terms of the

7   settlement agreements in a co-equal role with Indirect Purchaser Plaintiff Counsel.  The

8   Attorneys General also played a significant role in the settlement allocation proceedings

9   in front of the Special Master, making multiple submissions on legal and factual points

10  relevant to allocation issues.  Thus, the role played by the Attorneys General in settlement

11  (and in the active litigation of the case as described in the preceding paragraphs) not only

12  has been instrumental in securing the $310 million in settlement proceeds, but also in

13  ensuring that end-users obtain their fair share of those proceeds on an equitable basis in

14  allocation proceedings.

15  *Other Work*

16  16.  The Attorneys General also played other important roles in this case.  For example,

17  the State of California attempted to challenge the judgment-sharing agreement of the

18  Defendants with the support of the Attorneys General.  Though California was ultimately

19  unsuccessful in this challenge, California was able to obtain the terms of the judgment-

20  sharing agreement and understanding those terms informed the joint settlement strategy

21  of the Indirect Purchaser Plaintiffs and the Attorneys General.  As referenced above,

22  California also did substantial research and legal writing, of direct benefit to the

23  Attorneys General's case, when it filed amicus briefs on antitrust standing issues in a

DECLARATION OF EMILIO E. VARANINI,                    MASTER FILE NO. M-02-1486 PJH
CHAIR AND LIAISON COUNSEL                             CASE NOS. C-06-4333 PJH; C-06-6436

1    number of federal class action price-fixing cases pending in California: *See, e.g.,* Cal.

2    Atty. Gen. Amicus Brief re: Antitrust Standing in Support of Opposition to Motion to

3    Dismiss, *In re Flash Memory Antitrust Litig.,* No. C 07-0086-SBA (N.D. Cal., filed Apr.

4    30, 2008); State of California Amicus Brief re: Antitrust Standing in Support of

5    Opposition to Motion to Dismiss, *In re TFT-LCD (Flat Panel) Litig.,* No. M-07-1827 SI

6    (N.D. Cal., filed Apr. 12, 2008); Cal. Atty. Gen. Amicus Brief in Support of Opposition

7    to Motion to Dismiss, *In re DRAM Antitrust Litig.,* M-02-1486 PJH, (N.D. Cal., filed July

8

9    5, 2007).[9]

10   *Government Entity-Related Work*

11   17. The Attorneys General engaged in work relating to government entity claims that

12   was very important to the resolution of this case. The Attorneys General conducted an

13   exhaustive survey of their government entities' purchasing of DRAM and DRAM-

14   containing products that formed the backbone of their claims for damages and for their

15

16   allocation of settlement proceedings. Due to their collective efforts in securing a more

17   than sufficiently high level of participation in this expert-designed survey (which

18   required hiring additional specialized survey experts to organize and, in some cases,

19   collect the data), the Attorneys General obtained statistically significant and reliable

20   results. And the Attorneys General then successfully defended their survey experts, and

21   their government entities, against discovery requests and in depositions. This led to the

22

23   favorable result of obtaining an 11% increase in the total settlement to compensate

24   represented government entities.

25

26   [9] California also filed an amicus curiae brief in this matter when the AGC Order of the District Court was appealed to the Ninth Circuit.

27

28   DECLARATION OF EMILIO E. VARANINI,                    MASTER FILE NO. M-02-1486 PJH
     CHAIR AND LIAISON COUNSEL                            CASE NOS. C-06-4333 PJH; C-06-6436

**Contemporaneous Recording and Submission, as well as Other Practices, Regarding Attorney and Paralegal Time**

18. In addition to the requirements for the contemporaneous recording and submission of time imposed by state processes as described in their individual declarations and by the protocol of the National Association of Attorneys' General (Exhibit A), the Attorneys General put into place a supplemental process to ensure that time their attorneys and paralegals expended in the *Infineon* and *Micron* matters was contemporaneously recorded and submitted. This process involved repeated reminders on Executive Committee and Multistate Committee calls that time be contemporaneously recorded as well as a process by which such time was submitted on a periodic basis to the State of Hawaii, which tracked that time. Generally, the Attorneys General contemporaneously recorded and submitted the time they expended in the *Infineon* and *Micron* matters.

19. Before they submitted that time (which was through August 2010) to the Fees Committee, the Attorneys General generally reviewed it to ensure that they were not reporting duplicative time or other time not allowed by case law or by the protocol of the National Association of Attorneys General, such as the time expended by attorneys and paralegals in reporting their time or the attendance of additional attorneys without separate responsibilities on conference calls. Once this time was submitted to the Fees Committee, the Fees Committee engaged in further review of time for all the States to ensure that the reported time submitted in support of the fee petition would include only time permitted by both case law and the protocol of the National Association of Attorneys General.

20. The Attorneys General have continued since August 2010 to ensure that their time spent on this case is reported on a contemporaneous basis. For those who chose to claim that time, they included the time spent on this case from September 2010 through December 2012 in this declaration and in their individual declarations. In preparing their declarations, the Attorneys General, as described in their individual declarations, reviewed their post-August 2010 time, i.e., from September 2010 through December 2012, internally to ensure that their reported time for that period complied with the case law and with the protocol of the National Association of Attorneys General.[10]  The Attorneys General are not including time spent on this case since December 2012, even though that time is substantial and involves such matters as drafting the notices and claims forms, and are not including time spent in preparing this declaration, in preparing individual declarations on fees and costs, or in otherwise having reported and submitted their fees and costs. They will not be requesting compensation for any time going forward even though time will be spent in the drafting of motions for preliminary and final approval.

**Methodology for Calculating The Attorneys General's Attorneys' Fees**

21. Pursuant to the case of *Theme Productions, Inc. v. North American Marketing*, 731 F.Supp.2d 937 (N.D. Cal. 2010), the Attorneys General calculated their attorneys' fees by taking the amount of hours spent by each attorney or paralegal, multiplying that by the hourly rate for that attorney or paralegal based on years of experience in 2012-2013 as set out in the Laffey index, and adding 9% for the cost-of-living differential between the

---

[10] There was double-checking of the time reported for this period, albeit on a spot basis, to ensure consistency.

DECLARATION OF EMILIO E. VARANINI,
CHAIR AND LIAISON COUNSEL

MASTER FILE NO. M-02-1486 PJH
CASE NOS. C-06-4333 PJH; C-06-6436

13

D.C. area where the Laffey index is calculated and the Northern District of California where the work relevant to this case was performed. The Attorneys General respectfully believe that this method of calculating attorneys' fees, which yields a modest result that under-rewards senior counsel (see *id.*), is appropriate for constitutional law officers charged with representing the interests of their States and with obtaining a favorable result for the taxpayer without unduly burdening their States' general budgets.

**Calculation of Attorneys' Fees**

22. Using the methodology described in paragraph 21, the total lodestar for the Attorneys General is $31,390,686.85. This amounts to approximately 77,400 hours of attorney and paralegal time. The composition of this lodestar is broken out in more detail in the individual declarations of the Attorneys General. The Indirect Purchaser Plaintiffs and Attorneys General together are seeking only 25% of the total settlement funds as a fee award. Consequently, the Attorneys General are, in effect, subjecting themselves to a negative multiplier in this case. In other words, the requested fees of $77,680,000 for the Indirect Purchaser Plaintiffs and the Attorneys General produced by the percentage-of-the-recovery method is equivalent to lodestar with a negative multiplier of approximately 0.86%. This ensures that the maximum benefit from the settlements goes to end-users and government entities, while still compensating their States for the substantial expenditures of time and resources of experienced counsel in this case.

**Costs Incurred**

23. The Attorneys General seek reimbursement for a total of $5,483,468.69 in out-of-pocket costs advanced in the prosecution of the litigation. These cost fall into two categories – those advanced and carried by individual States for the benefit of all of the

1   Attorneys General and those advanced and carried by the multistate cost sharing fund for

2   the benefit of all of the Attorneys General.   The Attorneys General reported all costs to

3   the State of Hawaii, as well as to the Fees Committee.

4   24.   Out of pocket costs advanced by individual states total $2,719,427.73.  These costs

5   are broken out in the individual declarations of the Attorneys General.  In general, these

6   costs include travel costs incurred by individual Attorneys General, outside of the

7   multistate cost-share, to defend or take depositions, attend court hearings and proceedings

8   before the Special Master, or attend strategy or settlement conferences with the Indirect

9   Purchaser Plaintiffs.   They also include hiring court reporters for and requesting

10  transcripts of depositions, often on an expedited basis. These are the kind of expenses that

11  routinely can be reimbursed as costs in litigation or in settlement.  *See, e.g., Conservation*

12  *Law Foundation, Inc. v. Patrick*, 767 F.Supp.2d 244 (D. Mass. 2011).

13  25.   Of the total reported in the previous paragraph, California, with the approval of, and

14  for the benefit, the Attorneys General, also incurred a specific category of out-of-pocket

15  costs, amounting to amount to $2,139,546.37, that were also reported to Hawaii and to

16  the Fees Committee.  Those costs included the hiring of a specialized group of paralegals

17  and attorneys experienced in complex litigation to assist in such matters as (a) in the

18  organization and review of the millions of pages of documents of discovery provided in

19  this case, (b) in the culling of said documents into a more manageable number for trial;

20  (c) in the creation of cross-indexing Internet-accessible databases of depositions and

21  documents to streamline the accessibility of information for discovery and trial purposes;

22  and (d) to provide assistance in obtaining procurement information re: DRAM-containing

23  products from Californian government entities for purposes of the survey and the class

DECLARATION OF EMILIO E. VARANINI,                    MASTER FILE NO. M-02-1486 PJH
CHAIR AND LIAISON COUNSEL                              CASE NOS. C-06-4333 PJH; C-06-6436

1   motion.   This work benefited the class and multistate effort generally, , and California

2   specifically, and is compensable as costs in a common fund settlement case such as this

3   one. *See, e.g., In re Qwest Communication Intern. Securities Litigation*, 625 F.Supp.2d

4   1143, 1154 (D. Colo. 2009) (reasonable costs can be awarded from common fund since

5   beneficiaries of fund should share costs of creation of fund); *New England Health Care*

6   *Employees Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 635 (W.D. Ky.

7   2006) (under settlement common fund doctrine, plaintiffs could recover all reasonable

8   out-of-pocket expenses incurred in connection with litigation including expenses

9   involved with production of documents and expenses involved with maintenance of an

10   electronic database); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 535-536 (E.D.

11   Mich. 2003) (reasonable expenses can, and customarily are, awarded from common fund

12   such as expenses involved with production of documents especially where expenses are

13   routinely billed to paying clients); *In re Businessland Securities Litig.*, 1991 WL 427887,

14   *3 (N.D. Cal. 1991) (paralegal costs could be recovered as costs as part of award of fees

15   and costs from common fund because "paralegal services are to be encouraged and law

16   firms should recover at least for their expenses"); Fed. R. Civ. P. 24(h) ("in a certified

17   class action, the parties may award reasonable attorney's fees and *nontaxable* costs [costs

18   that cannot be recovered in litigation] that are authorized by law or the parties'

19   agreement"); *cf. In re Online DVD Rental Antitrust Litigation*, 2012 WL 1414111 (N.D.

20   Cal. 2012) (Hamilton, J.) (holding electronic discovery production costs recoverable as

21   *taxable* costs); *SEC v. Kirkland*, 2008 WL 3981434 (M.D. Fla. 2008) (contract paralegal

22   work which included "factual investigation . . . including locating and interviewing

23   witnesses; . . ., and document production," could be compensated as *taxable* costs);

1   2   3   4   5   6   7   8   9   10   11   12   13   14   15   16   17   18   19   20   21   22   23   24   25   26   27   28

DECLARATION OF EMILIO E. VARANINI,                        MASTER FILE NO. M-02-1486 PJH
CHAIR AND LIAISON COUNSEL                                 CASE NOS. C-06-4333 PJH; C-06-6436

16

1   *Chapman v. Pac. Tel. & Tel. Co.*, 456 F.Supp. 77 (C.D. Cal. 1978) (paralegal costs

2   recoverable as *taxable* costs under certain precedent; even if other precedent could be

3   read as stating that these costs cannot be recovered as *taxable* costs, they are alternatively

4   recoverable as part of attorneys' fees because paralegals "promote economy and

5   efficiency in connection with litigation involving voluminous documents and extensive

6   pretrial discovery, requiring indexing and digesting of large amounts of information");

7   

8   *Computer Statistics, Inc. v. Blair*, 418 F. Supp. 1339, 1351-52 (C.D. Tx. 1976)

9   (paralegal fees could be recovered as taxable costs in antitrust case). In total, these out-

10   of-pocket costs amount to $2,139,546.37 as set out in the individual declaration of the

11   California Attorney General.

12   26.    For the benefit of the Court, a chart breaking out state-by-state the specific out-of-

13   pocket costs incurred by each State follows:

14   

15   

16   

17   

18   

19   

20   

21   

22   

23   

24   

25   

26   

27   

28

1

2

| State | Amount |
|---|---|
| Arizona | $ 1,934.59 |
| Arkansas | $ 5,369.60 |
| California | $ 2,550,692.07 |
| Colorado | $ - |
| Florida | $ 33,972.10 |
| Hawaii | $ 1,157.80 |
| Idaho | $ 1,496.11 |
| Illinois | $ 14,942.84 |
| Iowa | $ - |
| Louisiana | $ - |
| Maine | $ - |
| Maryland | $ 6,084.68 |
| Massachusetts | $ 3,706.90 |
| Michigan | $ - |
| Minnesota | $ - |
| Mississippi | $ 2,730.56 |
| Nebraska | $ - |
| Nevada | $ 456.67 |
| New Mexico | $ 873.50 |
| New York | $ 43,651.75 |
| North Dakota | $ 1,295.78 |
| Oklahoma | $ - |
| Oregon | $ 16,580.52 |
| Pennsylvania | $ 2,502.71 |
| Rhode Island | $ - |
| South Carolina | $ 3,391.46 |
| Tennessee | $ 813.50 |
| Utah | $ 6,053.80 |
| Virginia | $ 998.30 |
| Washington | $ 15,229.45 |
| West Virginia | $ 967.46 |
| Wisconsin | $ 2,525.58 |
| Cost Share | $ 2,764,040.90 |
| Total | $ 5,483,468.63 |
| Total Ex-Cost Share | $ 2,719,427.73 |

26.    Finally, as shown above, the Attorneys General created a multistate cost-share
fund, as described in more detail in the cost-share declaration of the Commonwealth of
Pennsylvania (the administrator of that fund), from which were paid out expenses
incurred by the experts of the Attorneys General and, in certain cases, travel and court

reporter costs as described in the preceding paragraph. These costs can be reimbursed

and amount to $ 2,764,040.90 as described in the cost-share declaration submitted by the

cost-share administrator, Commonwealth of Pennsylvania. Correspondingly, the total

out-of-pocket costs incurred by the Attorneys General amount to $5,483,468.63.

27.     All of the expenses incurred by the Attorneys General were reasonable and

necessary to the prosecution of the case.

Dated: August 5, 2013                              Respectfully Submitted,

                                                   KAMALA D. HARRIS
                                                   Attorney General of California


                                                   EMILIO E. VARANINI
                                                   Deputy Attorney General
                                                   *Attorneys for Plaintiffs*

DECLARATION OF EMILIO E. VARANINI,                    MASTER FILE NO. M-02-1486 PJH
CHAIR AND LIAISON COUNSEL                              CASE NOS. C-06-4333 PJH; C-06-6436

19