GUIDO SAVERI (22349)
R. ALEXANDER SAVERI (173102)
CADIO ZIRPOLI (179108)
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA 94111-5619
Telephone: (415) 217-6810
Facsimile: (415) 217-6813
guido@saveri.com
rick@saveri.com
cadio@saveri.com

ANTHONY D. SHAPIRO (pro hac vice)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
tony@hbsslaw.com

Class Counsel for the Settlement Classes

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE DYNAMIC RANDOM ACCESS MEMORY (DRAM) ANTITRUST LITIGATION | Master File No. M-02-1486 PJH<br><br>MDL No. 1486<br><br>**DIRECT PURCHASER PLAINTIFFS' MOTION TO AUTHORIZE DISTRIBUTION OF SETTLEMENT FUND; MEMORANDUM IN SUPPORT THEREOF** |
| This Document Relates To:<br><br>*Preis v. Hitachi, Ltd., et al.,*<br>Case No. CV 10-0346 PJH | Time:      9:00 a.m.<br>Date:      March 26, 20014<br>Judge:     Hon. Phyllis J. Hamilton<br>Courtroom: 3, 3rd Floor |

MOTION TO AUTHORIZE DISTRIBUTION OF SETTLEMENT FUND – Master File No. M-02-1486 PJH

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

I.  Introduction ................................................................................................................1

II.  Statement of Facts ......................................................................................................2

      A.  Background of the Settlements ...........................................................................2

      B.  Notice to Class Members Regarding the Settlements .........................................3

      C.  The Claims Process ............................................................................................4

      D.  Reserving Funds in the Net Settlement Fund ....................................................8

III.  Argument ....................................................................................................................8

IV.  Conclusion ...............................................................................................................10

# TABLE OF AUTHORITIES

## CASES

*Class Plaintiffs v. City of Seattle,*
955 F.2d 1268 (9th Cir. 1992) ............................................................................ 8

*In re Cendant Corp. Securities Litig,*
109 F.Supp.2d 235 (D.N.J. 2000) ....................................................................... 8

*In re Computron Software, Inc.,*
6 F.Supp.2d 313 (D.N.J. 1998) ........................................................................ 8, 9

*In re Lloyd's Am. Trust Fund Litig.,*
2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) ................................................... 9

*In re PaineWebber Ltd. Partnerships Litig.,*
171 F.R.D. 104 (S.D.N.Y. 1997) ........................................................................ 9

*In re Vitamins Antitrust Litig.,*
2000 WL 1737867 (D.D.C. Mar. 31, 2000) ......................................................... 9

## TREATISES

*Newberg on Class Actions*, § 11:33 (4th ed. 2002) ............................................. 9

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on March 26, 2014, at 9:00 a.m., or as soon thereafter as counsel can be heard, before the Honorable Phyllis J. Hamilton, United States District Judge, at the United States District Courthouse, 1301 Clay Street, Courtroom 3, 3rd Floor, Oakland, California, 94612, Plaintiff Alan Preis ("Plaintiff") will move this Court for an Order authorizing the distribution of settlement proceeds to class members who submitted a valid claim.

This Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities in Support thereof, the Declaration of Robin Niemiec in Support thereof, the Declaration of R. Alexander Saveri in Support thereof, the [Proposed] Order Granting Motion to Authorize Distribution of Settlement Fund, submitted herewith, as well as the complete files and records in this case.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

Plaintiffs, including Alan Preis, both individually and on behalf of a settlement class of direct purchasers of DRAM ("Class") that purchased DRAM in the United States at any time during the period beginning April 1, 1999 through June 30, 2002 settled this action with defendants Mitsubishi Electric Corporation and Mitsubishi Electric and Electronics USA, Inc. ("Mitsubishi"), Hitachi, Ltd. ("Hitachi"), and Toshiba America Electronic Components, Inc. and Toshiba Corporation ("Toshiba") (collectively, "Settling Defendants") resulting in settlement proceeds of $37,222,200, plus accrued interest. This Court has granted final approval to each of the settlement agreements and the time for appeal has expired.  All settlement payments have been made and placed in an interest-earning escrow account.  Notice of the settlements was sent to class members, and potential class members submitted claims to the settlement proceeds.

There was an earlier phase of this litigation, captioned *In Re Dynamic Random Access Memory (DRAM) Antitrust Litigation*, Master File No. M:02-cv-01486-PJH ("DRAM I"). In DRAM I, direct purchaser plaintiffs alleged the same conspiracy as alleged by Plaintiffs here, but

1   against different defendants. In DRAM I, there were settlements resulting in proceeds of

2   $325,997,000. Rust Consulting, Inc., the claims administrator in the present action (the "Claims

3   Administrator"), was also the claims administrator that oversaw the claims process for DRAM I.

4   The Court approved the proposed distribution in DRAM I, and authorized claimants have received

5   their *pro rata* settlement proceeds. Dkt. 2010. All settlement funds in DRAM I have been

6   distributed and the accounts closed.

7        In the present action, the Claims Administrator has completed an extensive, fair and

8   reasonable review of each submitted claim.  As of December 31, 2013, the Net Settlement Fund,

9   which includes the settlement proceeds plus interest through that date, less Court-ordered

10  attorneys' fees, costs and expenses amounts to approximately $27,977,213.  Declaration of R.

11  Alexander Saveri in Support of Direct Purchaser Plaintiffs' Motion for an Order Authorizing

12  Distribution of Settlement Fund ("Saveri Decl.") ¶2.  Plaintiffs recommend reserving sufficient

13  funds in the Net Settlement Fund for the payment of federal and state taxes, and claims

14  administration costs. *Id.* at ¶4.

15       Pursuant to the settlement agreements, Plaintiffs request that the Court enter the Proposed

16  Order, submitted herewith, which approves a *pro rata* distribution of the Net Settlement Fund, less

17  funds reserved for taxes, claims administration costs, and authorizes payment of all claims

18  approved by the Claims Administrator.

19  **II.   STATEMENT OF FACTS**

20      **A.   Background of the Settlements**

21       On January 25, 2010, Plaintiff filed a complaint on behalf of himself and all others

22  similarly situated (the "Complaint"), which alleges an over-arching horizontal conspiracy among

23  Settling Defendants and their co-conspirators[1] to fix prices for DRAM and to allocate markets and

[1] The co-conspirators are Micron Technology, Inc., its wholly-owned subsidiary Micron Semiconductor Products, Inc., and Crucial Technology, Inc., a division of Micron Technology, Inc.; Infineon Technologies AG and its wholly-owned subsidiary Infineon Technologies North America Corp.; Hynix Semiconductor, Inc. and its wholly-owned subsidiary Hynix Semiconductor America, Inc.; Samsung Electronics Co., Ltd. and its wholly-owned subsidiary Samsung Semiconductor, Inc.; Mosel-Vitelic Corporation and its wholly-owned subsidiary Mosel-Vitelic Corporation (USA); Nanya Technology Corporation USA, Nanya Taiwan; Winbond Electronics Corporation and its wholly-owned subsidiary Winbond Electronics Corporation America; Elpida

1    customers for the sale of DRAM in the United States from April 1, 1999 through June 30, 2002

2    (the "Class Period").  The Complaint alleges that Plaintiff and members of the Class are direct

3    purchasers of DRAM from defendants and/or their subsidiaries and were injured because they paid

4    more for DRAM than they would have absent defendants' illegal conspiracy.  Compl. ¶¶ 2, 60, 68-

5    72, 78.  Plaintiffs seek, among other things, treble damages pursuant to Sections 4 of the Clayton

6    Act, 15 U.S.C. §§ 15 and 22.  Compl., Prayer for Relief, ¶¶ C, D.

7            Settling Defendants are domestic and foreign entities that manufactured, marketed, and/or

8    sold DRAM in the United States during the class period.  Compl. ¶¶ 8-15.  Each of the Co-

9    Conspirators named in this action were named defendants in DRAM I.  On June 15, 2006, Plaintiff

10   entered into separate agreements with each of the Settling Defendants that tolled the statute of

11   limitations with regard to any claims arising from or relating to DRAM.  The settlements total

12   $37,222,200.  On October 27, 2010 the Court held final approval hearings on the settlements,

13   determined that each settlement was fair, adequate and reasonable, approved each settlement, and

14   dismissed the litigation with prejudice against Settling Defendants.  Dkt. Nos. 2095-97.  The Court

15   also found that the notice given to the class regarding the settlements was the best notice

16   practicable under the circumstances, and that such notice provided due and adequate notice of the

17   proceedings and satisfied the requirements of due process.  *Id.*, *See also* Dkt. No. 2093.  The

18   judgments entered provide that the Court retains jurisdiction over disbursement of the settlement

19   fund.  *See Id.*

20           **B.      Notice to Class Members Regarding the Settlements**

21           The Claims Administrator designed a two page claim form ("Claim Form") that was mailed

22   to potential class members and was also available online.  Declaration of Robin Niemiec in Support

23   Motion Authorizing Distribution of Settlement Fund ("Niemiec Decl.") ¶¶ 4-5, 11.  The notice

24   informed class members that the plan of allocation provides for distribution of the Net Settlement

25   Fund on a *pro rata* basis, based on the dollar amount each class member paid to defendants for

26   direct purchases of DRAM from April 1, 1999, to June 30, 2002.  *Id.* at ¶ 6. The deadline to submit

27
     Memory, Inc. and its wholly-owned subsidiary Elpida Memory (USA) Inc.; and NEC Electronics
     America, Inc. (collectively, "Co-Conspirators"). (Compl. ¶¶ 16-42.)
28

1    a Claim Form was December 3, 2010. *Id.* at ¶ 13.

2        **C.    The Claims Process**

3        On June 23, 2010, pursuant to the May 12, 2010 Order Granting Class Certification and

4    Preliminary Approval of Class Action Settlements with Mitsubishi, Hitachi, and Toshiba

5    ("Preliminary Approval Order"), the Settlement Administrator mailed the Notice and Claim Form

6    to 668,758 entities and electronically mailed a summary of the notice with a link to file a claim

7    online to 392,776 entities ("Email Notice"). Niemiec Decl. ¶ 5.

8        Of the 392,776 Email Notices sent, 65,080 e-mails were returned as undeliverable. *Id.* at ¶

9    7.  A total of 65,080 Claim Forms were mailed by standard first-class U.S. mail, postage prepaid,

10   to the physical addresses of those records that had undeliverable e-mails. *Id.* Additional Claim

11   Forms were mailed by standard first-class mail, postage prepaid, to 49 entities, at their request. *Id.*

12   at ¶ 8.  The United States Postal Services ("USPS") returned 2,983 Claim Forms as undeliverable

13   with a forwarding address; the Claims Administrator re-mailed 2,983 Claim Forms to the

14   forwarding addresses. *Id.* at ¶ 9.

15       The USPS returned 94,553 Claim Forms as undeliverable without forwarding addresses.

16   *Id.* at ¶ 10.  The Claims Administrator used a trace processing service to obtain updated addresses

17   for Claim Forms returned as undeliverable. *Id.* The Claims Administrator received 52,237

18   updated addresses and subsequently re-mailed 52,237 Claim Forms to the updated addresses. *Id.*

19       The Claims Administrator responded to inquiries and communications from claimants and

20   established a Post Office Box and a toll-free number. *Id.* at ¶ 11.  The Claims Administrator also

21   created and maintained a website (www.dramantitrustsettlement.com), which made available the

22   Settlement Agreements, First, Second and Amended Preliminary Approval Orders, the Notices,

23   Summary Notices and Claim Form. *Id.* In addition, a claimant could file its Claim Form on-line at

24   the website from June 23, 2010 through February 28, 2010. *Id.*

25       The Claim Form was designed so that class members could easily fill out the information

26   required. *Id.* at ¶ 4.  Pursuant to the May 12, 2010 Order, the Claim Form filing deadline was

27   December 3, 2010. *Id.* at ¶ 13.

28

1    The Claims Administrator received and processed 9,283 Claim Forms. *Id.* at ¶ 14. The

2    total value of claims received exceeded $3.9 billion. *Id.* at ¶ 15. For quality control purposes, each

3    paper and on-line Claim Form submitted was given a unique claim number and entered into a

4    database. *Id.* at ¶¶ 16-17. The Claims Administrator reviewed each submitted Claim Form to

5    determine whether it was valid and included all required information. *Id.* at ¶ 18.

6    The Claims Administrator reviewed each Claim Form to determine if they were

7    duplicative. *Id.* at ¶ 21. The Claims Administrator identified 42 duplicate Claim Forms. *Id.* at ¶

8    22. Beginning February 24, 2011, the Settlement Administrator mailed a "Notice of Ineligibility"

9    to those whose claims were determined to be ineligible because they were duplicative. *Id.* at ¶ 23,

10   Ex. B. Claimants were given the opportunity to dispute this determination and provide proof in

11   support of their position. *Id.* at ¶ 38. One of the claimants provided proof that their claim was not

12   duplicative, and that claim was rendered eligible. *Id.* at ¶ 23.

13   As a result of communications with claimants, two (2) claims were deemed ineligible as

14   their DRAM purchases were not from the Defendants as required. *Id.* at ¶ 25. These claimants

15   were notified of their ineligibility by letter mailed on March 29, 2012. *Id.*, Ex. C.

16   After excluding ineligible Claims, the Claims Administrator determined that certain Claim

17   Forms were missing information that was required to confirm the validity of the claim or to

18   calculate a claimant's *pro rata* share. *Id.* at ¶ 26. Of the claims received, one (1) Claim Form was

19   not signed, and 121 did not contain purchase information. *Id.* at ¶ 27. Beginning February 18,

20   2011 "Deficiency Letters" were sent to these claimants, advising them of the deficiency and

21   requesting a correction within 30 days. *Id.* at ¶ 28, Exs. D-E. For the Claimant that failed to sign

22   the Claim Form, after consultation with Class Counsel, the condition was waived and the claim

23   was rendered eligible. *Id.* at ¶ 29.

24   Between April 13, 2011 and November 1, 2011, Rust received purchase data from Class

25   Counsel and entered this information into the DRAM-Additional Settlements database. The

26   purchase data identified, per the Defendants, the amounts of eligible DRAM purchased by all

27   individuals or entities during the Class Period ("Defendant Data"). *Id.* at ¶ 30. For the Claims that

28

1    were deficient for a failure to provide purchase information, Rust researched the Defendant Data

2    and if Defendant Data was available, that Defendant Data was used as the Claim Form amount. *Id.*

3    at ¶ 31.  Of the deficiency letters mailed for a failure to provide any purchase information, referred

4    to above, 12 responded and provided purchase information or Defendant Data was located and

5    used as the Claim Form Amount. *Id.* at ¶ 32.  A total of 109 Claims are ineligible as a result of a

6    failure to provide purchase information on their Claim Form. *Id.* at ¶ 33.

7          All claims were subject to review and/or audit by the Claims Administrator.  *Id.* at ¶ 35.

8    All claims exceeding $100,000.00, which constituted 99% of the total dollar value of all claims,

9    were audited.  *Id.*  In total, 63 claims were audited. *Id.*

10         For these 63 selected claims, a Request for Additional Information letter was sent to these

11   claimants beginning on February 18, 2011 requesting that they provide proof to support their

12   claim. *Id.* at ¶ 36, Ex. F.  If a Claimant requested an extension of the deadline in which to supply

13   documentation, the extension was granted. *Id.* at ¶ 37.

14         Of the 63 Notice of Claim Adjustment letters mailed, 36 did not respond. A Final Request

15   for Additional Information letter was sent to these 36 Claimants requesting that they provide proof

16   to support their Claim.  *Id.* at ¶ 38, Ex. G.

17         After processing all of the responses for the Request for Additional Information and Final

18   Request for Additional Information letters, 27 Claimants did not respond and 36 Claimants

19   responded. *Id.* at ¶ 39. Of those that did not respond, Rust reviewed the Defendant Data and if

20   Defendant Data existed for a non-responding Claimant, their Claim was updated accordingly.

21   Four of the 27 Claimants that did not respond to the request for proof had Defendant Data and

22   their Claims were updated accordingly. *Id.* at ¶ 40. The remaining 23 Claims that failed to

23   respond were rendered ineligible. *Id.* at ¶ 41.

24         The Claims Administrator reviewed documentation supplied by claimants in response to the

25   Request for Additional Information and Final Request for Additional Information, which was

26   comprised of thousands of pieces of documentation in the form of invoices, cancelled checks,

27   purchase orders, spreadsheets, screen shots of computer images, packing slips, wire transfer

28

1    confirmations, and other such documentation. *Id.* at ¶ 42.

2            Some purchases, totaling in excess of $627 million, were deemed ineligible because they

3    included: foreign purchases; purchases outside of the Class Period; purchases made from a

4    company other than a defendant; or purchases that were not DRAM.  Also, purchases from Toshiba

5    were deemed ineligible if the Claimant had originally excluded itself from the settlement class in

6    DRAM I. *Id.* at ¶ 45, Toshiba Settlement Agreement ¶ 1.  Several Claimants provided proof that

7    was inadequate and subsequently rejected.  This included: electronic data; purchase orders;

8    affidavits; screen shots of internal software; and, internal spreadsheets listing purchases with no

9    supporting documentation. Niemiec Decl. ¶ 46.

10           Throughout the entire process of reviewing documentation, Rust was in contact with the

11   Claimants via telephone, email, and correspondence to advise them if additional documentation

12   was needed, if the documentation they provided rendered the Claim ineligible, or if certain

13   purchases were deemed outside the definition of the Class as defined by the Court. *Id.* at ¶ 45.

14   Several conference calls occurred between Class Counsel, the Claims Administrator, and/or the

15   Claimants to determine eligible and ineligible Claims, in whole or in part. *Id.* at ¶ 46.

16           In sum, after the completion of audits, document review, and communications with

17   potential Class Members, and processing of late claims, the total purchases by all eligible claimants

18   was $390,753,135, approximately $3.5 billion less than the original Claim Forms filed. *Id.* at ¶ 52.

19   In other words, the Claims Administrator rejected approximately 90% of the submitted claims.

20           After the completion of processing and auditing claims, there were 664 Claimants

21   authorized for payment. *Id.* at ¶ 53.  Attached as Exhibit I to the Niemiec Declaration is a schedule

22   of claimants (with names omitted for privacy) and their percentage of the Net Settlement Fund.

23   The Claims Administrator prepared a list of the 664 Authorized Claimants for distribution of the

24   Net Settlement Fund on a *pro rata* basis based on the dollar amount each Class Member paid to

25   Defendants for direct purchases of DRAM from April 1, 1999, through June 30, 2002. *Id.* at ¶ 53.

26   The total purchases by all eligible claimants are $390,753,135. *Id.*

27

28

MOTION TO AUTHORIZE DISTRIBUTION OF SETTLEMENT FUND – Master File No. M-02-1486 PJH

1    **D.    Reserving Funds in the Net Settlement Fund**

2    As of January 28, 2013, approximately $27,977,213 remains in the Net Settlement Fund,

3    which includes the settlement proceeds plus interest through that date, less Court-ordered

4    attorneys' fees, costs and expenses, Saveri Decl. ¶ 2.  Plaintiffs recommend reserving sufficient

5    funds in the Net Settlement Fund for the payment of state and federal taxes as they become due

6    during the claims distribution period.  Saveri Decl. ¶ 4.  In addition, the Claims Administrator

7    submitted a budget showing that approximately $160,288.70 should be reserved in the Net

8    Settlement Fund for costs incurred since May 1, 2011, and for future claims administration costs,

9    which include distributing, processing and tracing settlement award checks, website updates and

10   fees, communications with claimants, and FDIC charges.  Niemiec Decl. ¶¶ 49-50.  Thus, Plaintiffs

11   recommend distributing the Net Settlement Fund, less funds reserved for the payment of taxes and

12   claims administration costs.  Saveri Decl. ¶ 4.

13   **III.    ARGUMENT**

14   Plaintiffs request an order authorizing the distribution of the Net Settlement Fund to the

15   approved valid claims in the amount set forth in Exhibit I of the Niemiec Declaration.  Entry of an

16   order approving a *pro rata* plan of allocation and permitting a distribution of the Net Settlement

17   Fund to all Approved Claimants is proper and appropriate at this time.  A *pro rata* distribution is

18   determined by multiplying each claimant's percentage of the total valid claims (individual valid

19   claimant purchases divided by total valid claims) times the Net Settlement Fund (approximately

20   $28 million).  This calculates each claimant's individual payment from the Net Settlement Fund.

21   Attached as Exhibit I to the Niemiec Declaration is a spreadsheet of each valid claimant's *pro rata*

22   percentage of the Net Settlement Fund.

23   Like final approval of a settlement agreement, a plan of allocation must be "fair, reasonable

24   and adequate" to warrant court approval.  *See In re Computron Software, Inc.*, 6 F.Supp.2d 313,

25   321 (D.N.J. 1998); *In re Cendant Corp. Securities Litig,* 109 F.Supp.2d 235, 245 (D.N.J. 2000); *see*

26   *also Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1284-85 (9th Cir. 1992).  A plan of

27   allocation, like the one proposed here, that compensates class members based on the type and

28

1    extent of their injuries is generally considered to be reasonable. *Computron Software, Inc.*, 6

2    F.Supp.2d at 321.

3         Courts have repeatedly found that *pro rata* distributions are "fair, adequate and reasonable."

4    *See e.g., In re Vitamins Antitrust Litig.*, 2000 WL 1737867 at *6 (D.D.C. Mar. 31, 2000)

5    ("Settlement distributions, such as this one, that apportion funds according to the relative amount

6    of damages suffered by class members, have repeatedly been deemed fair and reasonable."); *In re*

7    *Lloyd's Am. Trust Fund Litig.*, 2002 WL 31663577 at *19 (S.D.N.Y. Nov. 26, 2002) ("the *pro rata*

8    allocations provided in the Stipulation are not only reasonable and rational, but appear to be the

9    fairest method of allocating the settlement benefits."); *In re PaineWebber Ltd. Partnerships Litig.*,

10   171 F.R.D. 104, 135 (S.D.N.Y. 1997) ("a pro rata distribution of the Settlement on the basis of

11   Recognized Loss will provide a straightforward and equitable nexus for allocation and will avoid a

12   costly, speculative and bootless comparison of the merits of the Class Members' claims"). This

13   Court previously approved a *pro rata* distribution for funds from the settlements in the DRAM I.

14   Dkt. 2010.

15        Distribution of the Net Settlement Fund, as set forth in Exhibit I of the Niemiec

16   Declaration, is fair, adequate, and reasonable. The plan of distribution provides for a straight *pro*

17   *rata* distribution to class members with valid claims (with no class members being favored over

18   others). Like allocation plans previously approved by courts, this plan compensates class members

19   based on the extent of their injuries. *See Computron Software, Inc.*, 6 F.Supp.2d at 321. Notice of

20   this plan of distribution was provided to class members, and no objections to this plan were

21   received. Saveri Decl. ¶ 3. Distribution of the Net Settlement Fund is appropriate at this time

22   because final judgment has been entered and the time to appeal the settlement agreements has

23   expired. *See Alba Conte & Herbert B. Newberg, Newberg on Class Actions*, § 11:33 (4th ed. 2002)

24   ("The settlement fund is usually not distributed until a final judgment has been entered and the

25   appeal period has expired.").

26        In addition, the proposed distribution is appropriate because the Claims Administrator has

27   completed a fair, reasonable, and adequate review of the claims. The Claims Administrator

28

1    established quality control measures to ensure that each claim was properly tracked and notified

2    claimants of any deficiencies, including incomplete claim forms, duplicate claims, unsupported

3    claim amounts, and claims that did not satisfy the class definition. Niemiec Decl. ¶¶ 16-23. If

4    emails, claim forms, or deficiency letters were returned as undeliverable, the Claims Administrator

5    attempted to obtain updated addresses and re-mailed the letters where possible. *Id.* at ¶¶ 7-10.

6         Claimants had every opportunity to cure any deficiencies by providing additional

7    information or documentation. The Claims Administrator processed late claims and, if requested,

8    extended the deadline to submit supporting documentation. *Id.* at ¶¶ 37, 54. Additionally, where

9    possible, the Claims Administrator used data provided by Class Counsel and Settling Defendants if

10   a claimant could not locate supporting documentation regarding purchases. *Id.* at ¶¶ 30-31.

11        Finally, the claims process resulted in significant savings to the Class. At the start of the

12   claims process, the value for all claims received was in excess of $3.9 billion. *Id.* at ¶ 15. After the

13   completion of audits, document review, communications with claimants, and processing late

14   claims, the Claims Administrator determined that total purchases by eligible claimants was

15   $390,753,135, approximately $3.5 billion less than the value of the original Claim Forms

16   submitted. *Id.* at ¶ 52. In other words, the Claims Administrator rejected approximately 90% of the

17   submitted claims.

18        In sum, distributing the Net Settlement Fund on a *pro rata* basis to all Approved Claimants

19   is fair, reasonable, and adequate.

20   **IV.    CONCLUSION**

21        For the foregoing reasons, Direct Purchaser Plaintiffs respectfully request an Order

22   authorizing the distribution of the Net Settlement Fund as set forth in Exhibit I of the Niemiec

23   Declaration.

24

25   Dated:  February 13, 2014                   Respectfully submitted,

26                                               /s/ R. Alexander Saveri
27                                               Guido Saveri (22349)
                                                 R. Alexander Saveri (173102)
28

MOTION TO AUTHORIZE DISTRIBUTION OF SETTLEMENT FUND – Master File No. M-02-1486 PJH

1

2

3

Cadio Zirpoli (179108)
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA 94111
Telephone: (415) 217-6810
Facsimile: (415) 217-6813

4

5

6

7

Anthony D. Shapiro (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Class Counsel for the Settlement Classes

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28