1  JOSEF D. COOPER (53015)
   TRACY R. KIRKHAM (69912)
2  COOPER & KIRKHAM, P.C.
   357 Tehama Street, Second Floor
3  San Francisco, CA 94103
   Telephone:    (415) 788-3030
4  Facsimile:    (415) 882-7040
   E-mail: jdc@coopkirk.com
5  Co-Lead Counsel for Indirect-Purchaser Plaintiffs

6  KAMALA D. HARRIS
   Attorney General of the State of California
7  KATHLEEN FOOTE (65819)
   Senior Assistant Attorney General
8  EMILIO E. VARANINI (163952)
   455 Golden Gate Avenue, Ste. 11000
9  San Francisco, CA 94102
   Telephone:    (415) 703-5908
10 Facsimile:    (415) 703-5480
   E-mail: Emilio.Varanini@doj.ca.gov
11 Attorneys for the State of California On Behalf of All Attorneys General
   Plaintiffs' Class Counsel

12               **UNITED STATES DISTRICT COURT**
                **CENTRAL DISTRICT OF CALIFORNIA**
13                **SAN FRANCISCO DIVISION**

| | |
|---|---|
| 14  IN RE: DYNAMIC RANDOM ACCESS MEMORY (DRAM) ANTITRUST LITIGATION | Case No. M-02-1486-PJH MDL No. 1486 |
| 15 | DECLARATION OF AMY L. LAKE OF RUST CONSULTING, INC., NOTICE AND CLAIMS ADMINISTRATOR |
| 16  This Document Relates to: | |
| 17  ALL INDIRECT PURCHASER ACTIONS | Hearing Date: May 18, 2016 Time: 9:00am |
| 18  and | Courtroom: 3, 3rd Floor The Honorable Phyllis J. Hamilton |
|     *State of California et al. v. Infineon Technologies AG, et al.* | |
| 19 | |
| 20  *State of New York v. Micron Technology Inc., et al.* | Case No. C 06-4333 PJH |
| 21 | Case No. C 06-6436 PJH |
|     *State of California et al. v. Samsung Electronics Co., Ltd., et al.* | Case No. C 07-1347 PJH |
| 22 | Case No. C 07-2589 PJH |
| 23  *State of California et al. v. Winbond Electronics Co.* | Case No. C 12-5213 PJH |
|     | Case No. C 12-5214 PJH |
| 24  *Petro Computer Systems, Inc. v. Hitachi, Ltd.* | Case No. C 12-5215 PJH |

| | |
|---|---|
| 1 | *Petro Computer Systems, Inc. v. Mitsubishi* | Case No. C 12-5230 PJH |
| 2 | *Electric Corporation, et. al.* | Case No. C 12-5229 PJH |
| 3 | *Petro Computer Systems, Inc. v. Toshiba Corporation, et. al.* | Case No. C 12-5231 PJH |

*Petro Computer Systems, Inc. v. Mitsubishi Electric Corporation, et. al.*

Case No. C 12-5230 PJH
Case No. C 12-5229 PJH
Case No. C 12-5231 PJH

*Petro Computer Systems, Inc. v. Toshiba Corporation, et. al.*

*State of California et al., v. Toshiba Corporation et al.,*

*State of California et al., v. Mitsubishi Electric Corporation, et. al.*

*State of California et al., v. Hitachi, Ltd.*

I, AMY LAKE, declare and state that:

    1.    I am a Client Services Director for Rust Consulting, Inc. ("Rust") responsible for supervising the settlement services provided by Rust for this matter.  As a Client Services Director, I provide project team leadership and coordinate with class counsel and other parties as needed.

    2.    I am over 21 years of age and am not a party to these actions.  I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently to the facts set forth in this Declaration.

    3.    I submit this Declaration in order to provide information regarding the claim processing, and the allocation and distribution of the Net Settlement Fund to class members in the above captioned litigation.

**Claims Processing Activities**

    4.    In order to facilitate the processing of claims, Rust entered all claims submitted in the DRAM Settlement into a proprietary database ("Database").  Each claim was coded with a unique "Claim Number" based on when the claim was received and processed.

1    5.     Rust recorded in the Database relevant information for each claim, including:

2    name, address, telephone number, email address, Claimant's responses to the Eligibility

3    Questions[1] and the number and type of DRAM products purchased.

4    6.     As of the initial August 1, 2014 deadline to submit Claims, Rust had received

5    444,480 online claim forms and 5,499 paper claim forms for a total of 449,979 claims.

6    7.     Rust continued to receive claims after the initial August 1, 2014 deadline, and

7    processed those claims contemporaneously with the earlier filed claims.  As the claims process

8    neared completion, it became apparent that any additional claims would prolong the claims

9    process. After consulting with Indirect Purchaser Plaintiffs' counsel and the Attorneys

10   General, Rust alerted Claimants that it would not process claims submitted after July 1, 2015.

11   Thereafter, the settlement website homepage (through which the vast majority of claims were

12   received) stated:

13       "The deadline to submit claims has passed. We are no longer accepting
         online claim forms for the DRAM Indirect Antitrust Litigation. Counsel will
14       recommend to the Court that claims submitted after July 1, 2015 not be
         accepted."
15

16   8.     In June 2015, a mass email was sent to all agents providing filing services for

17   claimants stating that July 8, 2015 was the deadline to correct or resolve claims that had been

18   submitted but had outstanding deficiencies.  The email text is attached as Exhibit A.

19   9.     By July 1, 2015, Rust had received a total of 469,487 claims.  After coding and

20   processing these claims, Rust determined that 456,842 claim forms were submitted by

21   individuals and 12,645 claim forms were submitted by businesses.

22

23   [1] The "Eligibility Questions" were included on the Court-approved claim form and had to be answered
     in the affirmative to establish class membership.  These questions were designed to confirm that a
24   claimed purchase: (1) was made in the United States or any of its territories (2) was made indirectly;
     and (3) was a product containing DRAM purchased for the Claimant's own use or for resale during the
     Class Period.

Declaration of Amy L. Lake, MDL No. 1486

10.    As of April 30, 2016, an additional 68 claims asserting 316,400.15 CEU purchases were filed after July 1, 2015.  To avoid delay, these claims were not audited and are not recommended for inclusion.

11.    Rust will publish information about any hearing related to distribution on the settlement website so that Claimants may file an objection if they so choose.  Unless noted otherwise, all additional information provided in this Declaration pertains to the Claims submitted by July 1, 2015, which are deemed timely filed.

**Initial Claim Screening**

12.    As part of its initial screening, Rust identified deficient or ineligible claims and sent letters to class members alerting them to the unique problem(s) associated with their claims. Claimants were provided an opportunity to correct or explain any deficiencies or determinations of ineligibility.  A sample of the deficiency letter sent is included as Exhibit B. The initial screening process involved considerable communication with class members and the issuance of thousands of pieces of correspondence.  Claimants that were identified as potential duplicates received letters indicating a response was necessary in order for multiple claims to be paid.  See Exhibit C.

13.    After completing the initial screening process, Rust determined that approximately 23,586 claims were ineligible for one or more of the following reasons:

    a.    Claim was duplicative;

    b.    Claim was missing material information;

    c.    Claim was filed by a non-eligible governmental entity;

    d.    Claim was voluntarily withdrawn;

    e.    Claimant did not respond to deficiency letter or email.

**Audit Process**

14.    In addition to the initial screening for the above referenced deficiencies and ineligibilities, Rust undertook substantial further efforts to verify the legitimacy of claims. In performing this analysis, Rust considered both the quantitative and qualitative data underlying the claims.

15.    For business claimants, Rust considered the relevant business types, sectors, and employee levels to ensure that the quantity of DRAM claimed was reasonable. The business Claimants were grouped based on size and, after due consideration was given to the scale of the business and other factors, large or aberrant claims were audited.

16.    Any business subject to audit was asked to provide proof that the purchases claimed fell within the class definition by documenting: (1) the number of products purchased that contained DRAM; (2) the date of each purchase; (3) the vendor purchased through; (4) the brand, make, model number or other similar description for each product purchased; (5) for any server purchases, the total amount paid; (6) for large memory module purchases, the megabytes purchased by year; and (7) for products listed in Table 3 of the claim form, the DRAM content in megabytes.

17.    Additionally, businesses subject to audit were required to provide an affidavit averring: (1) that the report or spreadsheet had been reviewed and reflects only purchases that meet the class definition of eligible DRAM purchases within the Class Period (January 1, 1998 through December 31, 2002); (2) to the nature of the program(s) and software used to generate the supporting documentation; (3) that the underlying transactions were entered contemporaneously at the time of purchase; (4) that no data had been manipulated; and (5) that all products claimed were purchased in the United States, including Puerto Rico, the Northern

Declaration of Amy L. Lake, MDL No. 1486

1   Mariana Islands, and the territories; or from a seller located in the United States, including

2   Puerto Rico, the Northern Mariana Islands, and the territories.

3       18.     Rust also sent audit letters to individuals with large or aberrant claims,

4   requesting proof that the purchases fell within the class definition by documenting: (1) the type

5   and number of products and the year of purchase; (2) a description of how the Claimant used

6   the products; (3) a statement confirming those products were purchased for personal use; and

7   (4) a statement affirming under penalty of perjury that the information provided in the claim

8   form and the details contained in the response were true and correct.

9       19.     Claimants that failed to respond to audit letters were deemed ineligible.

10      20.     Audit letters were mailed to a total of 5,390 businesses and individuals of

11  which 757 responded and 4,633 did not.  A sample of the audit letter is included as Exhibit D.

12      21.     In addition, Rust retained Nathan Associates Inc. ("Nathan") to assist in the

13  auditing process by analyzing numerous complex financial and technical issues, particularly

14  those related to large business claims.  Nathan sought to verify that the type and number of

15  DRAM products claimed were supported by contemporaneous records.  Nathan reviewed more

16  than 1,000 files submitted by more than 200 of the largest claimants. Often the review process

17  involved multiple phone calls with the Claimant and the review of significant additional

18  technical supporting documentation provided by the Claimant, including tax returns, financial

19  statements, expert reports, and large excel files. The review process involved substantial back

20  and forth, often with large business Claimants staffed with their own experts in finance,

21  accounting, and technology.

22      22.     In cases where the Claimant had partial data to support the claim, such as where

23  data was only retained for part of the conspiracy period, Nathan analyzed and tested the

24  Claimant's extrapolation methods to ensure they were reasonable.  Among other things,

6

Declaration of Amy L. Lake, MDL No. 1486

1    Nathan verified that the Claim was consistent with the Claimant's overall business operations.

2    For example, the CEUs claimed were compared with the Claimant's total purchases, sales, or

3    revenues reported on its tax forms or with other financial documents to ensure the claim made

4    economic sense.  Claimants' corporate histories and mission statements along with their

5    product and service offerings were sometimes checked to verify that the type and volume of

6    CEUs claimed were not outside reasonable expectations for such enterprises during the class

7    period.

8          23.     To further verify claims, Nathan sometimes looked at the business operations of

9    competitors in the same market segment.  Comparing businesses in the same industry allowed

10   for the creation of benchmark levels of DRAM purchases that could reasonably be expected of

11   such businesses.  For example, in cases where the claimant knew only the dollar sales for a

12   particular line of business, Nathan verified the allocation of sales to eligible products based on

13   an analysis of the business. Nathan sometimes examined the relevant market shares of

14   businesses during the class period to confirm the propriety of some DRAM claims.  Because

15   DRAM containing product industries are sometimes volatile, market shares of various

16   claimants sometimes shifted dramatically during the class period, requiring various

17   adjustments.

18         24.     For unusual or specialized DRAM containing products not listed on the claim

19   form, Nathan conducted market and industry research to determine an appropriate CEU value.

20   Additionally "spec sheets" or other internal documents shedding light on the DRAM content

21   of those products were requested.   These products included industrial robotics and cellphone

22   towers, among others.

23

24

25.     After a thorough review in conjunction with Nathan, Rust either accepted the claim as submitted, accepted the claim subject to certain adjustments, or denied all or portions of the claim.

### Final Claim Totals

26.     After analyzing the claims and supporting documentation, communicating with numerous Claimants, and processing all claims, Rust determined that 445,553 Claimants were eligible to receive benefits from the Settlement.

27.     Rust further determined that those Claimants had validly claimed a total of 217,387,799 CEUs.  *See* Riveros Declaration at ¶9.  As a result of the auditing process, the total CEUs approved represented less than half the total CEUs claimed.  This substantial reduction improves the per CEU recovery of all approved claims.

### Allocation of the Settlement Fund

28.     Under the plan of distribution, there are two separate groups: the "Small Claimants" and the "Large Claimants."  Claimants with less than 11.37 CEUs are deemed Small Claimants and all others are Large Claimants.  Riveros Dec. at ¶9.

29.     There are approximately 443,321 Small Claimants claiming 1,564,951 CEUs. Given the number of CEUs claimed by Small Claimants, the $25 million set aside for Small Claimants will be exhausted without the need for a *cy pres* distribution.  Riveros Dec. at ¶¶ 10-13. Small Claimants will receive approximately $15.97 per CEU and an average payment of $56.  Riveros Dec. at ¶¶ 10, 13.

30.     Large Claimants will receive approximately $0.77 per CEU with an average payment of $74,460. Riveros Dec. at ¶14.

31.     Upon approval of this Court, Rust intends to mail all eligible Claimants their respective shares of the Settlement Fund.

Declaration of Amy L. Lake, MDL No. 1486

## Administrative Fees and Expenses

32.     The cost for the claims administration and auditing thus far is $1,787,071.  The parties have been provided detailed invoices for services throughout Rust's engagement in the project.  Below is a summary of the costs incurred through April 24, 2016.  A statement of Rust's invoices is attached as Exhibit E.

a. $432,620 in project planning, set-up, management and reporting; technical consulting, and database loading and maintenance over a project duration spanning more than four years.

b. $269,198 in class member support services, including the handling of 19,653 calls to a toll-free number with customer service representatives, the creation and maintenance of the settlement website, mailing over 280,000 letters to prompt claim filing, approximately 900 additional notices sent upon request, and processing undeliverable mail.

c. $331,398 in claims processing and auditing, including the capture of mailed claim forms and loading of electronically filed claims; the mailing, processing, and analysis related to 5,390 audited claims; the handling of a deficiency process involving more than 29,000 records in various review categories, the handling of over 14,000 email communications concerning claims, and correspondence with filing service agencies who represent more than 11,000 claims.

d. $304,150 for the retained services of Nathan, Inc., to complete the final claim validation reporting and calculation.

e. $449,705 in expenses including postage, toll-free number charges, data and physical record storage, and other miscellaneous expenses including PO Box rental, and photocopy and printing charges.

33.     Future expenses to complete the claims administration and issue payment to Claimants is estimated at $1,173,754.  Attached as Exhibit F is a copy of Rust's estimate for future fees and expenses, which includes finalizing the calculations for claim payments, printing and mailing of checks to claimants, the handling of reissue requests and research of undeliverable checks, coordination with the claim filing agencies concerning their payments, claimant support through the toll-free number and website, the ongoing processing of incoming mail, issuing reminders to cash claim checks, bank account management and expenses, as well as the project management and technical consulting activities required for the distribution and remainder of the project.

34.     I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 4th day of May, 2016 in Minneapolis, Minnesota

*Amy L Lake*

Amy L. Lake

Declaration of Amy L. Lake, MDL No. 1486

# Exhibit A

From:   DRAM Indirect Claims Administrator

Subject:   DRAM Indirect Settlement Claim Final - Audit Request

Dear Claimant:

This email is to inform you that your CLAIM SUBMISSION for the DRAM Indirect Class Action Settlement has one or more of the following deficiencies listed below.  In order for your claim to remain valid, you must resolve these deficiencies on or before July 8, 2015.  If a resolution is not received before the deadline, the claim will be invalid and ineligible for payment under the settlement.

Deficiencies:
- No products listed on claim
- No contract
- Placeholder
- Missing business size
  - Small = 1-10 employees
  - Medium = 11-50 employees
  - Large = 51 +

If you have any questions please call the Claims Administrator at 1-800-589-1425 or email dramclaimstpf@rustconsulting.com

Thank you,
Claims Administrator

# Exhibit B

DRAM CLAIMS
C/O RUST CONSULTING, INC.
P.O. BOX 8097
FARIBAULT, MN 55021-9497

<<DATE>>

**IMPORTANT LEGAL MATERIALS**

<<compute_0007>>
<<compute_0008>>
<<compute_0009>><<compute_0010>>
<<compute_0011>>
<<compute_0012>>, <<compute_0013>> <<compute_0014>>

**RESPONSE DUE DATE: POSTMARKED BY DECEMBER XX, 2014**

**Claim No. «clm_no»**

Dear Claimant:

We received and processed the Claim Form you filed in the Dynamic Random Memory (DRAM) Indirect Settlements. However, the claim was not signed. Please sign below and return this notice to the address above by the Response Due Date.  Your signature below will be treated as the proper execution of your previously submitted Claim Form.

FAILURE TO RESPOND TO THIS LETTER MAY RESULT IN THE DISALLOWANCE OF YOUR CLAIM.

If you have any questions, please call us toll-free at 1-800-589-1425.

Sincerely,

DRAM Indirect
Claims Administrator

I (we) declare under penalty of perjury under the laws of the United States of America, that the information provided in the above-referenced Claim Form is true and correct.

_____        _____
Claimant Signature                                                                      Date

_____
Print Name of Claimant or Capacity of Person Signing

SIGN

# Exhibit C

DRAM Claims
c/o Rust Consulting, Inc.
P.O. Box 8097
Faribault, MN 55021-9497

## IMPORTANT LEGAL MATERIALS

 – 0000000001

FOR OFFICIAL USE ONLY

12

Page 1 of 1

September 21, 2015

RESPONSE DUE DATE: POSTMARKED BY OCTOBER 5, 2015

Claim N█████████

Dear Claimant:

We have received claim ████████ you filed for the DRAM Indirect Class Action. Your claim has been chosen for an audit because it appears that it may be a duplicate claim (a number of claims have been filed with the same address by what appears to be the same person).

Only one claim per person can be accepted for the settlement. If the claims are not duplicates, please provide an explanation and any documentation supporting your position. Further auditing may be required. Your response must be returned with a copy of this letter to the address below by October 5, 2015.

If no response is received by the due date, you will only be credited for the claim with the highest value. If your address requires an update from the mailing address on file, please submit that information with your response.

If you have any questions, please call us toll-free at 1-800-589-1425.

Sincerely,

DRAM Indirect
Claims Administrator

DRAM Claims
P.O. Box 8097
Faribault, MN 55021-9497





# Exhibit D

DRAM Claims
c/o Rust Consulting, Inc.
P.O. Box 8097
Faribault, MN 55021-9497
1-800-589-1425

| FOR OFFICIAL USE ONLY |
| :-: |
| 07 |

## IMPORTANT LEGAL MATERIALS

 – 0000000001

Page 1 of 4

June 24, 2015

RESPONSE DUE DATE: POSTMARKED BY 07/15/2015

**REQUEST FOR MORE INFORMATION   *  *  *  *   Claim No.** ▮▮▮▮▮▮▮

Dear Claimant:

We have received and processed the Proof of Claim you submitted in the DRAM Indirect Class Action. Your Proof of Claim has been chosen for an audit because you submitted a claim as an individual purchasing for your own use and have claimed a number of computers or other DRAM-containing products that is significantly higher than the range which is the statistical norm for individual purchasers.

An audit is a request for adequate proof to support the purchase of the products you listed on your Proof of Claim.  To comply with this audit, you will need to provide documentation to support the purchases you claimed.  Your response must be returned to the address listed above by **07/15/2015.**

Please review the attached letter, and complete and return a copy with your supporting purchase documentation.  Adequate documentation may consist of receipts showing your purchases, cancelled checks, credit card statements, and/or other documentation supporting your claim.  (You may redact or "black out" information pertaining to unrelated transactions or personal information.)

If you do not have purchase documentation, you may submit a written statement providing the following information: 1) the type and number of products and the year of purchase, 2) a description of how you used the products, 3) a statement confirming these products were purchased for personal use, and 4) a statement affirming under penalty of perjury that the information provided in your Claim Form and the details contained in your response are true and correct.

**All supporting documentation submitted as part of this audit will be reviewed to determine eligibility,** however, you should be aware that further information may be requested, and without purchase documentation, there is no guarantee that your claim will be accepted.  **If you do not respond by the above Response Due Date, your claim may be denied or modified.**

If you have any questions, please call us toll-free at 1-800-589-1425.

Sincerely,

DRAM Indirect
Claims Administrator







---

**DRAM SETTLEMENT CLAIM FORM CONFIRMATION**

The following product purchases were indicated in your Proof of Claim Submission. Please verify the products claimed and make corrections if needed. Return this form along with supporting purchase documentation in the form of 1) proof of purchase or 2) a written statement as described in the letter on the reverse side of this page. If providing a written statement you must enclose a copy of this form and your signature with the following language: "I affirm under penalty of perjury that the information in this statement is true and correct."

| Product Type | Number Purchased as Provided in your Proof of Claim Form | Corrected Information Number Purchased | Indicate Type of Proof Provided |
|---|---|---|---|
| Computers – Laptops or Desktops | 5 purchased | _____ purchased | ☐ Proof of purchase<br>☐ Written statement |
| Printers | 2 purchased | _____ purchased | ☐ Proof of purchase<br>☐ Written statement |
| Stand-alone Graphics Cards | 5 purchased | _____ purchased | ☐ Proof of purchase<br>☐ Written statement |
| Video Game Consoles | 2 purchased | _____ purchased | ☐ Proof of purchase<br>☐ Written statement |
| DVD Players | 2 purchased | _____ purchased | ☐ Proof of purchase<br>☐ Written statement |
| Personal Digital Assistants | 2 purchased | _____ purchased | ☐ Proof of purchase<br>☐ Written statement |
| MP3 Players | 3 purchased | _____ purchased | ☐ Proof of purchase<br>☐ Written statement |
| TiVo/DVRs | 2 purchased | _____ purchased | ☐ Proof of purchase<br>☐ Written statement |
| Point of Sale Systems | 0 purchased | _____ purchased | ☐ Proof of purchase<br>☐ Written statement |
| Servers | 2 purchased<br>5,000.00 spent | _____ purchased<br>_____ spent | ☐ Proof of purchase<br>☐ Written statement |

| If you purchased 10,000 memory modules <u>or fewer</u>, provide the total number of memory modules purchased. | | | |
|---|---|---|---|
| Year | Modules Purchased as Provided in your Proof of Claim Form | Corrected Information on Memory Modules Purchased | Indicate Type of Proof Provided |
| 1998-2002 | 22 purchased | _____ purchased | ☐ Proof of purchase<br>☐ Written statement |

| If you purchased <u>more than</u> 10,000 memory modules, provide the total MBs of DRAM purchased per year. | | | |
|---|---|---|---|
| Year | MB Purchased as Provided in your Proof of Claim Form | Corrected Information on MB Purchased | Indicate Type of Proof Provided |
| 1998 | MB | _____ MB | ☐ Proof of purchase<br>☐ Written statement |
| 1999 | MB | _____ MB | ☐ Proof of purchase<br>☐ Written statement |
| 2000 | MB | _____ MB | ☐ Proof of purchase<br>☐ Written statement |
| 2001 | MB | _____ MB | ☐ Proof of purchase<br>☐ Written statement |
| 2002 | MB | _____ MB | ☐ Proof of purchase<br>☐ Written statement |



The following products were indicated in your Proof of Claim Submission. Please verify the products claimed and make corrections on page 4 if needed. Please include the reference number for those products corrected. Provide supporting documentation as detailed on page 2 of this notice.

| REF # | Product Type | Number Purchased | Year Purchased | Total DRAM Content (MB) | Indicate Type of Proof Provided if no corrections required |
|---|---|---|---|---|---|
| 1 | ROUTER | 1 | 2000 | 64 MB | ☐ Proof of purchase <br> ☐ Written statement <br> ☐ Amending Claim Below |
| 2 | | | | MB | ☐ Proof of purchase <br> ☐ Written statement <br> ☐ Amending Claim Below |
| 3 | | | | MB | ☐ Proof of purchase <br> ☐ Written statement <br> ☐ Amending Claim Below |
| 4 | | | | MB | ☐ Proof of purchase <br> ☐ Written statement <br> ☐ Amending Claim Below |
| 5 | | | | MB | ☐ Proof of purchase <br> ☐ Written statement <br> ☐ Amending Claim Below |
| 6 | | | | MB | ☐ Proof of purchase <br> ☐ Written statement <br> ☐ Amending Claim Below |
| 7 | | | | MB | ☐ Proof of purchase <br> ☐ Written statement <br> ☐ Amending Claim Below |
| 8 | | | | MB | ☐ Proof of purchase <br> ☐ Written statement <br> ☐ Amending Claim Below |
| 9 | | | | MB | ☐ Proof of purchase <br> ☐ Written statement <br> ☐ Amending Claim Below |
| 10 | | | | MB | ☐ Proof of purchase <br> ☐ Written statement <br> ☐ Amending Claim Below |
| 11 | | | | MB | ☐ Proof of purchase <br> ☐ Written statement <br> ☐ Amending Claim Below |
| 12 | | | | MB | ☐ Proof of purchase <br> ☐ Written statement <br> ☐ Amending Claim Below |
| 13 | | | | MB | ☐ Proof of purchase <br> ☐ Written statement <br> ☐ Amending Claim Below |
| 14 | | | | MB | ☐ Proof of purchase <br> ☐ Written statement <br> ☐ Amending Claim Below |

Products containing DRAM that were not captured in Tables 1 and 2 of your Proof of Claim Submission.



| | TABLE 3 | | | | |
|---|---|---|---|---|---|
| | CORRECTED PRODUCTS | | | | |
| REF # From Above | Product Type | Number Purchased | Year Purchased | Total DRAM Content (MB) | Indicate Type of Proof Provided |
| | | | | | ☐ Proof of purchase<br>☐ Written statement |
| | | | | | ☐ Proof of purchase<br>☐ Written statement |
| | | | | | ☐ Proof of purchase<br>☐ Written statement |
| | | | | | ☐ Proof of purchase<br>☐ Written statement |
| | | | | | ☐ Proof of purchase<br>☐ Written statement |
| | | | | | ☐ Proof of purchase<br>☐ Written statement |
| | | | | | ☐ Proof of purchase<br>☐ Written statement |
| | | | | | ☐ Proof of purchase<br>☐ Written statement |
| | | | | | ☐ Proof of purchase<br>☐ Written statement |
| | | | | | ☐ Proof of purchase<br>☐ Written statement |
| | | | | | ☐ Proof of purchase<br>☐ Written statement |
| | | | | | ☐ Proof of purchase<br>☐ Written statement |
| | | | | | ☐ Proof of purchase<br>☐ Written statement |
| | | | | | ☐ Proof of purchase<br>☐ Written statement |

(If you require additional space, please attach extra pages in the same format as above.  Sign and print your name on each additional page.)

**Sign and Date**

By signing below, I (we) affirm that the corrected information provided in this Claim Form Confirmation and all attachments is true and correct.

Signature: _____   Date: ____ ____ / ____ ____ / ____ ____ ____ ____

Print Name: _____

# Exhibit E



**RUST**
CONSULTING
a SourceHOV company

DATE:        4/27/16
MATTER #:        829100

**DRAM INDIRECT: STATEMENT OF ACCOUNT**

OUTSTANDING INVOICES:

| Date | Invoice # | Amount | Payments | Balance |
|---|---|---|---|---|
| 12/13/12 | 128641 | 39,409.63 | | 39,409.63 |
| 02/21/13 | 138027 | 47,714.03 | | 47,714.03 |
| 03/26/13 | 138125 | 14,049.57 | | 14,049.57 |
| 04/26/13 | 138196 | 2,889.28 | | 2,889.28 |
| 05/28/13 | 138286 | 186.55 | | 186.55 |
| 06/24/13 | 138347 | 2,557.66 | | 2,557.66 |
| 07/30/13 | 138451 | 441.45 | | 441.45 |
| 08/14/13 | 138492 | 346.90 | | 346.90 |
| 09/30/13 | 138661 | 275.61 | | 275.61 |
| 10/25/13 | 138748 | 381.92 | | 381.92 |
| 11/13/13 | 138772 | 276.61 | | 276.61 |
| 12/19/13 | 138864 | 275.61 | | 275.61 |
| 01/13/14 | 138934 | 734.76 | | 734.76 |
| 02/28/14 | 148046 | 5,849.38 | | 5,849.38 |
| 03/31/14 | 148126 | 44,180.57 | | 44,180.57 |
| 04/14/14 | 148173 | 91,012.78 | | 91,012.78 |
| 05/02/14 | 148255 | 144,610.42 | | 144,610.42 |
| 06/10/14 | 148342 | 24,180.88 | | 24,180.88 |
| 07/18/14 | 145240 | 49,167.92 | | 49,167.92 |
| 08/26/14 | 145676 | 31,813.48 | | 31,813.48 |
| 09/09/14 | 145718 | 56,201.85 | | 56,201.85 |
| 10/31/14 | 146263 | 224,374.36 | | 224,374.36 |
| 11/25/14 | 146500 | 53,667.02 | | 53,667.02 |
| 02/10/15 | 15022 | 173,392.75 | | 173,392.75 |
| 04/30/15 | 15695 | 75,108.61 | | 75,108.61 |
| 06/03/15 | 151377 | 40,388.29 | | 40,388.29 |
| 06/11/15 | 15920 | 52,959.23 | | 52,959.23 |
| 07/24/15 | 155307 | 51,747.70 | | 51,747.70 |
| 08/13/15 | 155434 | 50,763.38 | | 50,763.38 |
| 09/22/15 | 155770 | 41,236.72 | | 41,236.72 |
| 10/16/15 | 155998 | 271,646.13 | | 271,646.13 |
| 11/18/15 | 156262 | 32,342.71 | | 32,342.71 |
| 12/14/15 | 156461 | 56,994.48 | | 56,994.48 |
| 01/15/16 | 156721 | 9,197.26 | | 9,197.26 |
| 02/17/16 | 16158 | 21,033.21 | | 21,033.21 |
| 03/29/16 | 16585 | 9,450.76 | | 9,450.76 |
| 04/20/16 | 16692 | 30,078.40 | | 30,078.40 |
| 04/27/16 | 16861 | 36,133.50 | | 36,133.50 |

| Total Amount Due | | | $ | 1,787,071.37 |
|---|---|---|---|---|

**PAYMENT TERMS: NET DUE UPON RECEIPT**

**WIRE INFORMATION**
ACCOUNT #: 8093434387
ABA/ROUTING # WIRE or ACH: 111014325
BANK: BANK OF TEXAS, DALLAS, TX 75225
BANK CONTACT: MAYRA LANDEROS  214.987.8817
REFERENCE: INVOICE NUMBER

**PAYMENT MAILING ADDRESS:**
P O BOX 142589
DRAWER #9051
Irving, TX 75014-2589

# Exhibit F



**RUST**
C O N S U L T I N G
a Source HOV company

**PREPARED FOR:**
*DRAM Indirect*
**April 15, 2016**
*Using custom versions of distribution materials*

**PREPARED BY:**
**Amy Lake**
**507.333.4307**
alake@rustconsulting.com

**PROPOSAL
SUMMARY**

| | | |
|---|---|---|
| Estimated Class Size | | 445,259 |
| Estimated Filing Rate | | |
| | | |
| Project Cost | | |
| Class Data Management | | |
| Website | | 7,450 |
| Claims Processing | | 59,535 |
| Call Center | | 330,860 |
| Distribution and Tax Reporting | | 653,408 |
| Fees | | 62,500 |
| Expenses | | 60,000 |
| | | |
| **Total Cost to Complete Project** | | $1,173,754 |

THANK YOU FOR
CONSIDERING RUST
CONSULTING AS YOUR
SETTLEMENT
ADMINISTRATOR. WE
APPRECIATE THE
OPPORTUNITY TO
SUBMIT THIS
PROPOSAL.

**SETTLE WITH
THE BEST**

**EXPERTS IN YOUR PRACTICE AREA**
Our experienced staff is organized to meet your needs. Our practice
areas include antitrust, consumer, finance, insurance and healthcare,
labor and employment, product liability, securities, and government
services.

**DATA SECURITY**
Our internal data and system security practices meet or exceed today's
exacting industry standards. We have received system accreditation under the
Federal Information Security Management Act (FISMA), comply with and
adhere to Safe Harbor Principles, and undergo an annual SSAE 16 SOC 1
Type II Report audit of our data security and information technology controls
designed to demonstrate our substantial level of data and system security.

**OUR APPROACH MEETS YOUR NEEDS**
Our client-focused, problem-solving approach minimizes costs,
maximizes results and ensures excellence from start to finish. Avoid
unplanned costs and delays by consulting with us before the
settlement is complete.

The information contained in this document is considered confidential information, trade secrets and other proprietary information of Rust Consulting, Inc. and disclosure to the public is
restricted.  This information is not to be disclosed under any Freedom of Information Act, Public Records Act or similar law or regulation, as adopted by any jurisdiction without the prior
written consent of Rust Consulting, Inc.

PREPARED FOR:
*DRAM Indirect*
**April 15, 2016**
*Using custom versions of distribution materials*

PREPARED BY:
Amy Lake
507.333.4307
alake@rustconsulting.com



**STANDARD HOURLY RATES (Subject to Change)**

| | |
|---|---|
| Vice President | $260-350 |
| Senior Project Administrator | $195-215 |
| Project Manager | $95-184 |
| Technical Consultant | $98-247 |
| Call Center/Processing Manager | $173 |
| Call Center/Processing Supervisor | $98 |
| Customer Service Representative (CSR) | $54 |
| Processor | $56 |
| Other | $56-247 |

PRIVILEGED AND CONFIDENTIAL (PAGE 2 OF 4)



PREPARED FOR:
*DRAM Indirect*
April 15, 2016
*Using custom versions of distribution materials*

PREPARED BY:
Amy Lake
507.333.4307
alake@rustconsulting.com

## Website

| ONGOING WEBSITE MANAGEMENT | VOLUME | | RATE ($) | TOTAL ($) |
|---|---|---|---|---|
| Draft and Post Website Updates | 10 | Hours | 160 | 1,600 |
| Monthly Maintenance/Hosting | 18 | Months | 325 | 5,850 |
| | | | SUBTOTAL | $7,450 |

## Claims Processing

| CORRESPONDENCE | | | | |
|---|---|---|---|---|
| Receipt | 516 | Pieces | 1.00 | 516 |
| Process | 26 | Hours | 100 | 2,579 |

| VALIDATION | | | | |
|---|---|---|---|---|
| Finalize validation of claims | 75 | Hours | 140 | 10,500 |
| Finalize reconciliation and verification of claims | 30 | Hours | 140 | 4,200 |
| Prepare final claims information to prepare for distribution | 15 | Hours | 140 | 2,100 |
| Additional Nathan, Inc. Invoices | | | | 39,000 |

| PROCESS DEFICIENT CLAIM FORMS | | | | |
|---|---|---|---|---|
| Ongoing processing of late claims | 200 | Claims | 0.50 | 100 |
| Generate Rejection Letter and Mail | 200 | Letters | 2.70 | 540 |
| | | | SUBTOTAL | $59,535 |

## Call Center

| | | | | |
|---|---|---|---|---|
| Draft Scripting, Coordination and Reports | 10 | Hours | 160 | 1,600 |
| Call Center Management - Blended Rate | 361 | Hours | 125 | 45,131 |
| Escalations and Claims Research | 181 | Hours | 125 | 22,566 |
| CSR Training | 80 | Hours | 54 | 4,331 |
| Telephone Support | 3,610 | Hours | 54 | 194,967 |
| Interactive Voice Response (Automated Q&A) | 61,894 | Minutes | 0.55 | 34,042 |
| 800# Charges | 235,198 | Minutes | 0.12 | 28,224 |
| | | | SUBTOTAL | $330,860 |

## Distribution and Tax Reporting

| FUND DISTRIBUTION PREPARATION | | | | |
|---|---|---|---|---|
| Finalize Declaration | 30 | Hours | 160 | 4,800 |
| Manage Wire Transfers and Third Party Filer Payments | 38 | Hours | 160 | 6,080 |

| FUND DISTRIBUTION | | | | |
|---|---|---|---|---|
| CASS/NCOA/LACS Processing | 1 | One-Time Fee | 2,004 | 2,004 |
| Fund Distribution Coordination and Reports | 64 | Hours | 160 | 10,240 |
| Create Distribution Files, Quality Control | 90 | Hours | 180 | 16,200 |
| Coordination of letterhead and signature customization | 100 | Hours | 180 | 18,000 |
| Print and Mail Payments (customized to each state) | 445,406 | Payments | 0.30 | 133,622 |
| Postage - Award Payments | 445,406 | Payments | 0.44 | 195,979 |
| System Charges Banking Activities - per check[1] | 445,406 | Payments | 0.20 | 89,081 |
| Generate wire transfers | 24 | Hours | 180 | 4,320 |
| Account Reconciliation | 36 | Hours | 180 | 6,480 |
| System Charges Banking Activities | 12 | Months | 225 | 2,700 |



PREPARED FOR:
**DRAM Indirect**
April 15, 2016
*Using custom versions of distribution materials*

PREPARED BY:
Amy Lake
507.333.4307
alake@rustconsulting.com

**REISSUE PROCESSING/BANKING**

| | VOLUME | | RATE ($) | TOTAL ($) |
|---|---|---|---|---|
| Manage Reissue Process, Resolve Issues | 45 | Hours | 125 | 5,625 |
| Receive Undeliverable Payments and Update Database | 18,262 | Payments | 1.00 | 18,262 |
| Address Trace | 17,816 | Traces | 0.25 | 4,454 |
| Process Reissue Requests | 4,454 | Requests | 3.50 | 15,589 |
| Print and Mail Reissue Payments (minimum $250/batch) | 18,262 | Payments | 1.50 | 27,392 |
| Postage | 18,262 | Payments | 0.49 | 8,948 |

**REMINDER TO CASH CHECK**

| | VOLUME | | RATE ($) | TOTAL ($) |
|---|---|---|---|---|
| Prepare Draft and Coordinate Mailing (assumes generic letterhead) | 3 | Hours | 140 | 420 |
| Create Mail File, Quality Control | 5 | Hours | 180 | 900 |
| Print and Mail Reminder Postcards (40%) | 178,162 | Postcards | 0.06 | 10,690 |
| Postage - Reminder Postcards | 178,162 | Postcards | 0.29 | 51,667 |

**SUPPLEMENTAL DISTRIBUTION**

| | VOLUME | | RATE ($) | TOTAL ($) |
|---|---|---|---|---|
| Prepare reconciliation and allocate remaining funds | 20 | Hours | 140 | 2,800 |
| Create Distribution Files, Quality Control | 36 | Hours | 180 | 6,480 |
| Print and Mail Payments (customized to each state) | 2,500 | Payments | 1.38 | 3,450 |
| Postage - Award Payments | 2,500 | Payments | 0.49 | 1,225 |

**TAX REPORTING**

| | VOLUME | | RATE ($) | TOTAL ($) |
|---|---|---|---|---|
| Annual Fee -QSF Income Tax Reporting | 2 | Years | 2,000 | 4,000 |
| Individual Income Tax Reporting (1099) | 1 | Years | 2,000 | 2,000 |
| | | | **SUBTOTAL** | **$653,408** |

◢ Fees[2]

| | VOLUME | | RATE ($) | TOTAL ($) |
|---|---|---|---|---|
| Project Management - Blended Rate | 165 | Hours | 160 | 26,400 |
| Staff - Blended Rate | 100 | Hours | 100 | 10,000 |
| Technical Consulting - Blended Rate | 145 | Hours | 180 | 26,100 |
| | | | **SUBTOTAL** | **$62,500** |

◢ Expenses

| | VOLUME | | RATE ($) | TOTAL ($) |
|---|---|---|---|---|
| Other Charges and Out-of-pocket Costs[3] | 15 | Months | 4000 | 60,000 |
| | | | **SUBTOTAL** | **$60,000** |

Total Estimated Cost          $1,173,754

1. Check Processing Charge includes bank activities (electronic clearing, exchange of positive pay files, payment voiding, and online portal usage) and positive pay file review including exception handling. Exceptions occur when the check number and amount shown on payments presented to the bank do not match the original payment file and may arise from check scanning errors, fraud attempts, etc.

2. Fees are estimated and will be billed on actual time expended based on the rates found in the current standard Hourly Rates. The rates included in the estimate are a blended estimate of the rates listed above.

3. Out-of-Pocket Expenses: Includes post office box rental, overnight shipments, postage, labels, travel, long distance, data storage and other miscellaneous charges and expenses.

PRIVILEGED AND CONFIDENTIAL (PAGE 4 OF 4)